IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| | ) | Civil Action No. 04-1278 |
| Plaintiff/Counter-Defendant. | ) | |
| | ) | Hon. Kent A. Jordan |
| vs. | ) | |
| | ) | REDACTED VERSION |
| PECHINEY PLASTIC PACKAGING, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

PECHINEY'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Pechiney Plastic Packaging, Inc. ("Pechiney") hereby opposes the Motion of

Plaintiff/Counter-Defendant Cryovac, Inc. ("Cryovac") for Leave to File an Amended Complaint

("Motion for Leave"). Cryovac's proposed Amended Complaint alleges two additional counts:

Count II, tortious interference with contract, and, Count III, tortious interference with

prospective contractual relations. The tortious interference with contract claim is purportedly

based on a written four-year supply agreement between Cryovac and National Beef Packaging

Company, LLC ("National Beef") dated January 14, 2004. Because the only writing alleged to

be the January 14, 2004 supply agreement is not a valid and enforceable contract, Cryovac's

Motion should be denied on the grounds of futility as to Count II, tortious interference with

contract.

## I.    STATEMENT OF FACTS

For decades, Cryovac and Pechiney have been direct competitors in the packaging

market. Recently, Cryovac has faced competition from Pechiney in a segment of the market

related to flexible, "bone-in," fresh red meat packaging, a market segment that requires specially

designed packaging to handle razor sharp bone-in cuts of meat. This segment of the market has long been dominated by Cryovac's TBG® patchbags. In 2003, Pechiney launched its ClearShield™ flexible packaging products – award-winning,[1] state-of-the-art, bone-in, fresh red meat packaging products.

In September 2004, aware of the market's increasing acceptance of ClearShield™ as a competitive alternative to Cryovac's patchbags, Cryovac filed the original one-count complaint alleging infringement of a single claim in Cryovac's U.S. Patent No. 4,755,419 ("the '419 patent"). Pechiney denies infringing any valid claim of the '419 patent and counterclaimed that the '419 patent was invalid in view of extensive prior art. Cryovac filed the present motion to amend its complaint to add tortious interference allegations based on Pechiney's purported interference with Cryovac's relationship with National Beef, a major Midwestern beef processor that, at one point or another in these companies' long histories, has been a customer of both Cryovac and Pechiney.

After Cryovac's motion was served, counsel for Pechiney requested from counsel for Cryovac a copy of the "written four-year supply agreement" referred to in paragraph 14 of the proposed Amended Complaint. *See* DECL. OF STEVEN R. TRYBUS, ¶ 2 and Exhibit A. What Cryovac produced was not a legally binding contract, but rather

, that, at best, could be considered an expression of National Beef's intent to contract. The entirety of the          reads:

---

[1]    In February 2005, the Flexible Packaging Association awarded Pechiney a Silver Award in Technical Innovation for ClearShield™ as part of the Association's "2005 Flexible Packaging Achievement Awards." *See* http://www.flexpack.org/ACHIEV/2005_cfe/2005_winners.htm.

*See* DECL. OF STEVEN R. TRYBUS, ¶¶ 3-4 and Exhibit B (emphasis added).

## II.     ARGUMENT

The document asserted to be the supply agreement between Cryovac and National Beef cannot reasonably be characterized as a valid and enforceable contract.  For this reason, Cryovac's tortious interference with contract count is futile and for that reason its motion to amend its complaint should be denied.

### A.     Leave to Amend Should Not Be Granted Where The Proposed Amendment Would Be Futile

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend the complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Rolo v. City Investing Co. Liquidated Trust*, 155 F.3d 644, 654 (3d Cir. 1998)(denying leave to amend). However, this Court has the discretion to deny leave to amend if an amendment would be futile. *See, e.g., In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004)(denial of leave to amend primarily on futility grounds not an abuse of discretion); *see also Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).  Where, as here, the proposed amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief can be granted, leave to amend is rightfully denied.  *Alpharma*, 372 F.3d at 153-54; *Oran*, 226 F.3d at 291; *Massarsky v.*

*General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)("trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss"); *see also Messelt v. Security Storage Co.*, 11 F.R.D. 342, 344 (D. Del. 1951) ("amendment may not be permitted if it is obviously and palpably insufficient as a matter of law").

### B.     Cryovac's Tortious Interference With Contract Claim Could Not Withstand A Motion To Dismiss

Cryovac's proposed Count II, for tortious interference with contract, does not state a claim upon which relief can be granted and, therefore, dismissal would be proper under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Corning, Inc. v. SRU Biosystems, LLC*, 292 F. Supp. 2d 583, 586 (D. Del. 2003) ("A Rule 12(b)(6) motion tests legal sufficiency."). Under settled law,[2] the first element of a tortious interference with contract claim is a valid contract. *Gill v. Delaware Park, LLC*, 294 F. Supp. 2d 638, 645 (D. Del. 2003). Even construing the evidence in a light most favorable to Cryovac,[3] there is no valid and enforceable contract

---

[2]     Under Delaware law, the law of the state with the most significant relationship to the occurrence and parties governs with respect to tort claims. *See, e.g., Travelers Indem. Co. v. Lake*, 594 A.2d 38 (Del. 1991). However, the relevant law of contract formation and tortious interference with contract is essentially the same in any of the potential states having the "most significant relationship" to the occurrence and parties, namely Delaware, Kansas, Missouri, South Carolina, or Illinois. *See, e.g., Ayres v. AG Processing Inc.*, 345 F. Supp. 2d 1200, 1210 (D. Kan. 2004); *Steel Benders, Inc. v. H.R. Braner Eng'g, Inc.*, 1988 U.S. Dist. LEXIS 711, *7-8 (D. Kan. Jan. 27, 1988); *Community Title Co. v. Roosevelt Federal Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. 1990); *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. 1988); *Todd v. South Carolina Farm Bureau Mut. Ins. Co.*, 336 S.E.2d 472, 473 (S.C. 1985); *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. Ct. App. 1997); *Cress v. Rec. Serv., Inc.*, 341 Ill. App. 3d 149, 175 (Ill. App. Ct. 2003); *Chicago Limousine Serv., Inc. v. City of Chicago*, 335 Ill. App. 3d 489, 495 (Ill. App. Ct. 2002). Accordingly, the resolution of Cryovac's Motion for Leave does not depend upon a choice of law determination.

[3]     On a motion to dismiss, a court must accept as true all allegations and must draw all factual inferences in the light most favorable to the non-moving party. *Corning*, 292 F. Supp. at 583-84; *see also Langford v. City of Atlantic City*, 235 F.3d 845 (3d Cir. 2000). Here, the analysis is conducted as if Pechiney has moved to dismiss and thus, all inferences are drawn in favor of Cryovac.

between Cryovac and National Beef and, so, Cryovac's cause of action for tortious interference with contract fails at the outset.

A contract consists of an offer, acceptance and consideration and "comes into existence if a reasonable person would conclude, based on the objective manifestations of assent and the surrounding circumstances, that the parties intended to be bound to their agreement on all essential terms." *Telephone & Data Sys., Inc. v. Eastex Cellular L.P.*, 1993 Del. Ch. LEXIS 182, *35 (Del. Ch. Aug. 27, 1993); *see also Murphy v. State Farm Ins. Co.*, 1997 U.S. Del. Super. LEXIS 219, *8 (Del. Super. Ct. June 13, 1997); *Gillenardo v. Connor Broadcasting State Co.*, 1999 Del. Super. LEXIS 530, *11 (Del. Super. Ct. Oct. 27, 1999). The              simply cannot reasonably be characterized as a valid and enforceable contract for at least three reasons.[4]

First, the Wilkerson e-mail does not indicate any manifestation of assent that Cryovac and National Beef intended to be bound by their agreement. It is signed by neither party (neither electronic nor hand-written signatures). It does not consist of any binding "offer" or "acceptance" by National Beef or by Cryovac and does not set forth any consideration. To the contrary, the words state only that National Beef                a contract with Cryovac. DECL. OF STEVEN R. TRYBUS, Exhibit B (emphasis added). Indeed, the overall nature of the              leads to the inevitable conclusion that a binding agreement had not yet been reached.

Second, the              was conditional and subject to: (1) the                 and                being worked out between the parties, (2)                , and (3)                 . When parties

---

4    Although this document is extraneous to the pleadings, it is "integral to or explicitly relied upon in the complaint" and may be considered here. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426, *quoting Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (3d Cir. 1996).

Case 1:04-cv-01278-KAJ    Document 53    Filed 04/05/2005    Page 6 of 8

contemplate execution of a written agreement as a condition precedent to being bound, no valid contract arises until the agreement is executed. *See, e.g., Transamerican Steamship Corp. v. Murphy*, 1989 Del. Ch. LEXIS 13, *3-4 (Del. Ch. Feb. 14, 1989); *see also Bugg v. Bugg*, 249 S.E.2d 505 (S.C. 1978).

, it cannot be deemed to be a valid and enforceable contract. *Transamerican*, 1989 Del. Ch. LEXIS at *7-8.

Third,                is hopelessly vague and indefinite as to the parties mutual obligations. In order for a contract to be binding and enforceable, the terms must be sufficiently definite and certain so that a court can determine what the agreement was and what conduct constitutes a breach. *See, e.g., Ayers v. Jacobs & Crumplar, P.A.*, 1997 Del. Super. LEXIS 521, *10 (Del. Super. Ct. Dec. 19, 1997)("For an agreement to result in a legally binding contract, it must be reasonably definite and certain in its terms."). This purported "contract" is neither definite nor certain with respect to at least the following essential terms:

      (i)

      (ii)

      (iii)

---

5      Under the Delaware's Uniform Commercial Code, although a required writing need not contain all the material terms, one that must be expressly stated is quantity. DEL. CODE ANN. tit. 6 § 2-201 (2005); *see also Olefins Trading, Inc. v. Hang Yang Chem. Corp.*, 9 F.3d 282, 285 (3d Cir. 1993)(applying New Jersey law); *Silver Clam, Inc. v. American Original Corp.*, 1991 U.S. Dist. LEXIS 2385, *11-12 (D. Del. Feb. 28, 1991)(applying Maryland law); *Evco Distributing, Inc. v. Commercial Credit Equip. Corp.*, 627 P.2d 374, 381 (Kan. Ct. App. 1981); *Howard Constr. Co., v. Jeff-Cole Quarries, Inc.*, 669 S.W.2d 221, 227 (Mo. Ct. App. 1983); *Forms World of Ill., Inc. v. Magna Bank, N.A.*, 334 Ill. App. 3d 1107, 1112 (Ill. App. Ct. 2002).

Lacking not only these terms but numerous other critical contract elements, a court would have

no way of assessing whether or when a breach occurred based on                    alone

and, accordingly, it is not a valid and enforceable contract.

Absent a valid and enforceable contract, there can be no claim for tortious interference

with contractual relations.

## III.    CONCLUSION

For all of the reasons set forth herein, Pechiney respectfully requests that this Court deny

Cryovac's motion for leave to amend. Cryovac's proposed Count II, tortious interference with

contract, is not a viable claim; amending the Complaint to include this claim would be futile.

Respectfully submitted,

PECHINEY PLASTIC PACKAGING, INC.


Dated: May 5, 2005                        By:    */s/ N. Richard Powers*
                                                   N. Richard Powers

N. Richard Powers (#494)
Rudolf E. Hutz (#484)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: (302)888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Malinowski (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312)222-9350

## CERTIFICATE OF SERVICE

I, N. Richard Powers, an attorney, hereby certify that I caused true and correct copies of

the Redacted Version of the Declaration of Steven R. Trybus to be served on:

> John W. Shaw, Esq.
> Karen E. Keller, Esq.
> YOUNG, CONAWAY, STARGATT,
>  & TAYLOR, LLP
> The Brandywine Building, 17th Floor
> 1000 West Street
> Wilmington, Delaware 19801
> Fax: (302) 576-3334
>
> Ford F. Farabow, Esq.
> Joann M. Neth, Esq.
> Michael J. Flibbert, Esq.
> Courtney B. Meeker, Esq.
> FINNEGAN, HENDERSON, FARABOW,
>  & GARRETT & DUNNER, LLP
> 1300 I Street, N.W.
> Washington, D.C. 20005-3315
> Fax:  (202) 408-4400

This 5th day of May, 2005 via hand delivery and federal express.

> _/s/ N. Richard Powers_
> N. Richard Powers