IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED PUBLIC COPY** |
| | ) | |
| v. | ) | C.A. No.: 04-1278-KAJ |
| | ) | |
| PECHINEY PLASTIC PACKAGING INC., | ) | ~~CONFIDENTIAL —~~ |
| | ) | ~~FILED UNDER SEAL~~ |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION
## FOR LEAVE TO FILE AN AMENDED COMPLAINT

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
  *Attorneys for Plaintiff Cryovac, Inc.*

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Michael J. Flibbert
Courtney B. Meeker
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
 (202) 408-4000

Dated: April 5, 2005

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................. 1

ARGUMENT ..................................................................................................... 2

I.    CRYOVAC'S PROPOSED PLEADING UNAMBIGUOUSLY
      ALLEGES THE EXISTENCE OF A CONTRACT AND
      THEREFORE STATES A LEGALLY SUFFICIENT CLAIM FOR
      TORTIOUS INTERFERENCE WITH CONTRACTUAL
      RELATIONS ............................................................................................ 2

II.   BECAUSE THE COMPLAINT STATES A CLAIM ON ITS FACE,
      PECHINEY IMPROPERLY ATTEMPTS TO ARGUE THE
      MERITS OF THE CAUSE OF ACTION. ............................................. 4

      A.    Pechiney Invites Error by Asking the Court to Look Behind
            the Pleadings. .............................................................................. 4

      B.    Nothing in the January 14, 2004 E-Mail Precludes Findings
            that the Parties Formed a Binding Contract. .............................. 6

      C.    At Least a Genuine Issue of Material Fact Exists as to
            Whether a Contract Was Formed on January 14, 2004,
                                                              ................... 9

      D.    The Cryovac/National Beef Agreement Was Not Vague or
            Indefinite. ................................................................................. 12

III.  IF THE COURT CONSIDERS THE JANUARY 14, 2004 E-MAIL
      AND CONVERTS PECHINEY'S OPPOSITION TO A MOTION
      FOR SUMMARY JUDGMENT, CRYOVAC REQUESTS NOTICE
      SO THAT IT CAN PRESENT ALL EVIDENCE THAT EXISTS ON
      THE ISSUE. ......................................................................................... 13

CONCLUSION ................................................................................................ 15

WP3:1099812.2                                                              000030.1245

# TABLE OF AUTHORITIES

Page

Cases

Agere Sys. Guardian Corp. v. Proxim, Inc.,
  190 F. Supp. 2d 726 (D. Del. 2002) ............................................................................... 3

Anchor Motor Freight v. Ciabattoni,
  716 A.2d 154 (Del. 1998) ................................................................................... 9, 11

Bugg v. Bugg,
  249 S.E.2d 505 (S.C. 1978) ................................................................................... 11

Dykes v. Southeastern Pa. Transp. Auth.,
  68 F.3d 1564 (3d Cir. 1995) ................................................................................... 4

Gill v. Delaware Park, LLC,
  294 F. Supp. 2d 638 (D. Del. 2003) ........................................................................... 3

Glassman v. Computervision Corp.,
  90 F.3d 617 (1st Cir. 1996) ................................................................................... 2

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997) ................................................................................... 2, 4

In re Donald J. Trump Casino Sec. Litig.,
  7 F.3d 357 (3d Cir. 1993) ................................................................................... 4

In re NAHC, Inc. Sec. Litig.,
  306 F.3d 1314 (3d Cir. 2002) ................................................................................... 2

In re Rockefeller Ctr. Props., Inc. Sec. Litig.,
  184 F.3d 280 (3d Cir. 1999) ................................................................................... 14

Industrial America, Inc. v. Fulton Indus., Inc.,
  285 A.2d 412 (Del. 1971) ................................................................................... 7

Jame Fine Chems. Co. v. Hi-Tech Pharmacal Co., Inc.,
  44 Fed. Appx. 602 (3d Cir. 2002) ................................................................................... 6

Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,
  2003 U.S. App. LEXIS 7690 (3d Cir. 2003)
  (reversing 201 F.R.D. 337 (D. Del. 2001)) ................................................................................... 6

Justofin v. Metropolitan Life Ins. Co.,
  372 F.3d 517 (3d. Cir. 2004) ................................................................................... 10

ii

Loppert v. WindsorTech, Inc.,
   865 A.2d 1282 (Del. Ch. 2004) ................................................................ 7, 8, 10

Lum v. Bank of America,
   361 F.3d 217 (3d Cir. 2004) ........................................................................... 2

Miller v. Beneficial Management Corp.,
   844 F. Supp. 990 (D.N.J. 1993) ..................................................................... 2

Miller v. Newsweek, Inc.,
   660 F. Supp. 852 (D. Del. 1987) .................................................................... 7

Rannels v. S.E. Nichols, Inc.,
   591 F.2d 242 (3d Cir. 1979) ........................................................................... 2

Rose v. Bartle,
   871 F.2d 331 (3d Cir. 1989) ......................................................................... 14

Transamerican Steamship Corp. v. Murphy,
   1989 Del. Ch. LEXIS 13 (Del. Ch. Feb. 14, 1989) ...................................... 11

Universal Prods. Co. v. Emerson,
   179 A. 387 (Del. 1935) ................................................................................. 10

Van Le v. Five Fathoms, Inc.,
   1992 WL 471246 (D.N.J. Aug. 14, 1992) ...................................................... 2

**Statutes**

6 Del. C. § 2-204(1) ............................................................................................ 7

6 Del. C. § 2-204(3) .......................................................................................... 12

6 Del. C. § 2-206(1) ............................................................................................ 9

6 Del. C. § 2-206(1)(a) ...................................................................................... 11

**Other Authorities**

Restatement (Second) of Conflict of Laws, § 145(2) ......................................... 3

Uniform Commercial Code, § 2-204(1) ............................................................... 6

Uniform Commercial Code, §2-204(3) .............................................................. 12

WP3:1099812.2                                                    000030 1245

## INTRODUCTION

Plaintiff Cryovac, Inc.'s ("Cryovac") motion for leave to file an amended complaint seeks to add two causes of action – tortious interference with contractual relations and tortious interference with prospective contractual relations.

Defendant Pechiney Plastic Packaging, Inc.'s ("Pechiney") answering brief concedes that Cryovac's tortious interference with prospective contractual relations claim is proper. Cryovac has therefore asked Pechiney to consent to adding this claim to the case immediately; Pechiney has not yet responded.

As to Cryovac's other proposed cause of action – tortious interference with contractual relations – Pechiney agrees that the motion to amend was not made:

- To cause delay;

- With dilatory motive;

- In bad faith; or

- To prejudice Pechiney.

Pechiney's only argument against this cause of action is that, <u>on the merits and as a matter of law</u>, Cryovac cannot prevail in front of a jury.

Pechiney's argument misstates the law and improperly invites the Court to use an incomplete evidentiary record to decide against Cryovac on the merits. Even if Pechiney is permitted to go beyond the pleadings, however, when the facts surrounding the Cryovac and National Beef contract are considered at least a genuine issue of material fact exists that would permit this claim to go to a jury. Thus, where a proposed pleading meets the standards of Rule 12(b)(6) – as it does here – the motion to amend should be granted.

## ARGUMENT

I.    **CRYOVAC'S PROPOSED PLEADING UNAMBIGUOUSLY ALLEGES THE EXISTENCE OF A CONTRACT AND THEREFORE STATES A LEGALLY SUFFICIENT CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS._____**

Pechiney correctly states the law for evaluating a motion to amend (see D.I. 50 at 3-4), but it fails to apply that law correctly. A motion to amend may be denied as futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). See also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."). Moreover, "'given the liberal standard applied to the amendment of pleadings, courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" Miller v. Beneficial Management Corp., 844 F. Supp. 990, 1001 (D.N.J. 1993) (quoting Van Le v. Five Fathoms, Inc., 1992 WL 471246, at *2 (D.N.J. Aug. 14, 1992)) (emphasis added).

"In reviewing for futility, the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996). Under Rule 12(b)(6), the court must accept all well-pleaded allegations as true and must draw all factual inferences in the light most favorable to the pleading party. Lum v. Bank of America, 361 F.3d 217, 223 (3d Cir. 2004). In so doing, the court must apply the notice pleading standards of Federal Rule of Civil Procedure 8(a). Rannels v. S.E. Nichols, Inc., 591 F.2d 242, 243 (3d Cir. 1979). Under Rule 8(a), the pleading party need only make a short and plain statement of its cause of action; detailed facts to support the allegation are not required. Id. at 245.

2

Pechiney challenges only one element of Cryovac's proposed cause of action for tortious interference with contractual relations – the existence of a contract.[1] Paragraph 14 of Cryovac's proposed amended complaint, however, clearly alleges the existence of a contract:

D.I. 47 at Exh. A ¶14 (emphasis added).

This allegation should be more than sufficient to defeat Pechiney's futility challenge. For example, in <u>Agere Sys. Guardian Corp. v. Proxim, Inc.</u>, 190 F. Supp. 2d 726 (D. Del. 2002), the court rejected a futility challenge to a claim for breach of contract because the proposed pleading "alleged a contract." <u>Id.</u> at 738. In so doing, the court acknowledged that while "on the merits, [the claimant] will have to prove that there was a contractual relationship between the parties . . ., that does not mean that the claim, as alleged, is futile." <u>Id.</u> (citations omitted).

Pechiney cites no examples of a court evaluating a motion to dismiss or a motion to amend in which the court looked behind a well-pleaded allegation of tortious interference with contractual relations to determine if a contract in fact existed. The only case that Pechiney does cite, <u>Gill v. Delaware Park, LLC</u>, 294 F. Supp. 2d 638, 645 (D. Del. 2003), actually supports the amendment in this case. In <u>Gill</u>, the court granted the motion to dismiss a claim for tortious interference with contractual relations because "plaintiff's complaint <u>is defective on its face as it fails to allege the existence of a valid contract</u>." <u>Id.</u> at 645 (emphasis added). Here, of course, the

---

[1]    Cryovac agrees with Pechiney that Delaware law can be used for resolution of its motion to amend, but cannot take a binding position as to the correct choice of law analysis for its proposed causes of action at this time. Because the most significant relationship test is a fact-based inquiry, the best time to make a binding choice of law decision is following discovery. <u>See</u>, <u>Restatement (Second) of Conflict of Laws</u>, § 145(2) (listing the facts to be considered in a choice of law analysis).

000030 1245

complaint is not defective on its face – it alleges the existence of a binding agreement.

## II. BECAUSE THE COMPLAINT STATES A CLAIM ON ITS FACE, PECHINEY IMPROPERLY ATTEMPTS TO ARGUE THE MERITS OF THE CAUSE OF ACTION.

### A. Pechiney Invites Error by Asking the Court to Look Behind the Pleadings.

Pechiney's attempt to look behind the pleadings is incorrect as a matter of law. In the Third Circuit, a party seeking dismissal on Rule 12(b)(6) grounds may rely on documents outside the pleadings only where the documents are "undisputedly authentic" and where the rights asserted turn on the written language used to express those rights. See In re Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993). Thus, in a securities case that alleges material misrepresentations were made in written documents, the written documents may be considered on a Rule 12(b)(6) motion because the cause of action stems from what was said in the documents. See, e.g., id. (permitting reference to the prospectus "[b]ecause the complaint directly challenged the prospectus").

The reason for the rule is described in the case Pechiney cites to support an inquiry into National Beef's January 14, 2004 e-mail:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). See also Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1567 (3d Cir. 1995) (reviewing terms of a collective bargaining agreement where the cause of action "gr[e]w[] out of an alleged violation of the CBA").

WP3.1099812.2

000030.1245

Here, there are two problems with Pechiney's attempt to use National Beef's January 14, 2004 e-mail to support its challenge to the sufficiency of the complaint. <u>First</u>, the complaint alleges that "a binding four-year supply agreement" was formed between Cryovac and National Beef on January 14, 2004, D.I. 47 at Exh. A ¶14, but the complaint does not allege that a written agreement was signed on January 14. Thus, when Pechiney requested a copy of the "written four year supply agreement," Cryovac provided the writing that evidenced the parties' agreement. Pechiney never disclosed that the purpose of its request was to support the assertion that no contract in fact existed.

Indeed, after Cryovac forwarded the January 14, 2004 e-mail, Pechiney remained silent. Even though the proposed amended complaint plainly alleges that Cryovac and National Beef had been negotiating the contract over two months, Pechiney did not ask whether any additional information existed. D.I. 47 at Exh. A ¶14. Pechiney did not ask why Cryovac alleged that a "binding four-year supply agreement existed." And Pechiney did not ask if there was any other evidence of the binding agreement described in paragraph 14.

Unsurprisingly, more evidence of the negotiations between Cryovac and National Beef and the contractual terms does in fact exist. <u>See</u> Declaration of Jeffrey Gardner (the "Gardner Decl.") ¶¶ 2-3 (attached). The January 14, 2004 e-mail is, therefore, not an undisputedly authentic representation of the contract, and it is improper to rely on that e-mail as the only and undisputedly authentic evidence of the contract that Pechiney interfered with.

<u>Second</u>, Pechiney's tortious interference with the Cryovac/National Beef contract does not stem from the terms of the Cryovac/National Beef contract. Thus, in contrast to the situations where it is proper to consider materials extraneous to the complaint in a Rule 12(b)(6) analysis, it is improper for Pechiney to ask the Court to examine the facts about whether a contract in

5

fact existed before permitting the amendment. The Court of Appeals has rejected similar arguments. Compare Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 2003 U.S. App. LEXIS 7690, at *13 (3d Cir. April 23, 2003) (holding that plaintiff "is not required to have extensive proof at the complaint stage") reversing 201 F.R.D. 337 (D. Del. 2001); and Jame Fine Chems. Co. v. Hi-Tech Pharmacal Co., Inc., 41 Fed. Appx. 602 (3d Cir. 2002).

*    *    *

While it is improper to consider the January 14, 2004 e-mail in the context of evaluating whether the proposed pleading states a claim upon which relief may be granted, for completeness Cryovac will also demonstrate why Pechiney's legal analysis of the existence of the contract is wrong.

B.  **Nothing in the January 14, 2004 E-Mail Precludes Finding that the Parties Formed a Binding Contract.**

According to Pechiney, the "Wilkerson e-mail does not indicate a manifestation of assent that Cryovac and National Beef intended to be bound by their agreement." D.I. 50 at 5.

Under § 2-204(1) of the UCC, however:

> A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

UCC § 2-204(1). The January 14, 2004 e-mail meets this standard.

Applying § 2-204(1), for example, the Delaware District Court has found that a binding contract for the sale of goods resulted from a telephone discussion between the contracting parties which was strikingly similar to the e-mails exchanged in this case:

> The uncontroverted evidence demonstrates that a valid and enforce-able contract was formed during the initial telephone conversation between Miller and Dwyer.
>
> Miller's own deposition testimony suggests this result. Miller testi-fied that Dwyer telephoned him and asked to review the Shapiro neg-

6

atives for possible publication in a story that Newsweek was consid-
ering running on Shapiro. . . .  Miller accepted this offer with an en-
thusiastic "why certainly." . . .  The parties then set many of the im-
portant terms of the contract.  The parties agreed as to the quantity of
negatives, time, place, and manner of delivery, and even the price
Newsweek would pay in the event it purchased the use of one or
more negatives. . . .  The Court finds that this conversation mani-
fested a clear and unambiguous intention on the part of both parties to
enter into a binding agreement.  Nothing more is required for a valid
and enforceable contract to exist under Article II.  *See Del. Code Ann.*
tit. 6, § 2-204(1).

Miller v. Newsweek, Inc., 660 F. Supp. 852, 856 (D. Del. 1987).  The e-mails exchanged between

Cryovac and National Beef have a similar tone and tenor.  See also Gardner Decl. ¶ 3 (stating that

ʼ. Pechiney cites no

case to the contrary.

The Delaware common law of contracts reinforces the UCC analysis.  To determine

whether a course of communications resulted in the formation of a contract under Delaware common

law, the parties' "overt manifestation of assent – not subjective intent – controls."    Industrial

America, Inc. v. Fulton Indus., Inc., 285 A.2d 412, 415 (Del. 1971).  According to the Delaware

Court of Chancery, the test is:

> Whether a reasonable negotiator in the position of one asserting the
> existence of a contract would have concluded, in that setting, that the
> agreement reached constituted agreement on all of the terms that the
> parties themselves regarded as essential and thus that that agreement
> concluded the negotiations . . .

Loppert v. WindsorTech, Inc., 865 A.2d 1282, 1285 (Del. Ch. 2004).

WP3:1099812.2                                                                                                    000030.1245

Loppert involved an exchange of e-mails related to the only issue that separated the parties from reaching a settlement agreement.[2] At the end of the e-mail exchange, Loppert agreed with the other side's position and stated, "[w]e have a deal." Id. The other side responded, "good – I'll let the company know." Id. The parties then agreed to reduce the terms of the agreement to a signed writing and disputes arose during that process that led to a motion to enforce the agreement.

According to the court, any reasonable person reviewing the Loppert correspondence would know that "the negotiation of the settlement agreement was concluded" when agreement was reached on the final issue. Id. at 1285-86. The allegations of the complaint and the January 14, 2004 e-mail mirror the facts of Loppert

Gardner Decl. ¶ 3 (emphasis added).

All of these statements would permit a fact-finder to conclude on the merits that "reasonable negotiator[s]" in the position of the parties believed an agreement had been reached.

Finally, the cases Pechiney cites on this topic are not helpful because they all stem from a post-discovery procedural posture (two of the cases were summary judgment opinions after discovery; the other was a post-trial opinion) – something that Pechiney seeks to deny in this case.

---

[2]     Nothing in the Loppert opinion suggests that the court applied special rules to the case because it involved a settlement agreement; rather, the court applied Delaware contract law without limitation or qualification.

C.  **At Least a Genuine Issue of Material Fact Exists as to Whether a Contract Was Formed on January 14, 2004,**

Pechiney next contends that the cause of action must fail because the January 14, 2004 Wilkerson e-mail was allegedly "conditional and subject to" a separate written agreement. D.I. 50 at 5-6. Nothing in the e-mail, however, suggests the characterization that Pechiney seeks to have the court infer.

In fact, nothing in Delaware law makes the sale of goods conditional and subject to the existence of a signed writing unless the parties expressly state such a requirement. Section 2-206(1) of the Delaware UCC, for example, provides that:

> Unless otherwise unambiguously indicated by the language or cir-cumstances
>
> (a)  an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances.

6 Del. C. § 2-206(1). Thus, absent an unambiguous indication to the contrary, merely contemplating a signed written memorial of a contract does not make the signed written memorial a condition precedent to contract formation.

Delaware common law is the same. According to the Delaware Supreme Court:

> There is no enforceable contract if the parties do not intend to be bound before a formal written agreement is drafted and signed. The fact that the parties intend to execute a formal agreement, however, is not dispositive. <u>The question is whether the parties positively agree that there will be no binding contract until the formal document is executed.</u>

<u>Anchor Motor Freight v. Ciabattoni</u>, 716 A.2d 154, 156 (Del. 1998) (emphasis added). The parties' intent is a question of fact for the factfinder. <u>Id.</u> Normally questions of intent cannot be resolved at

WP3.1099812 2

000030.1245

the pleading stage or on summary judgment. <u>Justofin v. Metropolitan Life Ins. Co.</u>, 372 F.3d 517, 523-24 (3d. Cir. 2004).

There are many examples of this rule in application that would support a jury finding in favor of Cryovac on this point – let alone being sufficient to sustain a pleading under Rule 12(b)(6) standards. For example, the court in <u>Loppert</u> held:

> Where all the substantial terms of a contract have been agreed on, and there is nothing left for future settlement, the fact, alone, that it was the understanding that the contract should be formally drawn up and put in writing, did not leave the transaction incomplete and without binding force, in the absence of a <u>positive agreement</u> that it should not be binding until so reduced to writing and formally executed.

<u>Loppert</u>, 865 A. 2d at 1287   (quoting <u>Universal Prods. Co. v. Emerson</u>, 179 A. 387, 394 (Del. 1935)) (emphasis in original).

The court then held that the following statements did not constitute the "positive agreement" only to be bound by a signed writing that is required by Delaware law:

> "We are not willing to put the Delaware litigation on hold while we discuss settlement. Any discussions will need to proceed in parallel with the litigation."
>
> – and –
>
> "Since we have not yet signed up the deal, we will also be expecting your answer today."

<u>Id.</u> at 1286-87. According to the court, these <u>communications</u> expressed nothing more than the parties' interest to memorialize their already existing agreement. <u>Id.</u> at 1288. In other words, Delaware law requires an express and unambiguous statement that a signed writing is a condition precedent to contract formation.

There is no indication in the National Beef e-mail that a "positive agreement" existed such that National Beef would not be bound until a written memorial of the agreement was executed. In fact, after negotiations spanning two months (proposed amended complaint ¶14) and a written

10

confirmation stating that "

" a reasonable business person in the position of the contracting parties

would expect such a positive statement if National Beef intended to be legally bound only <u>after</u> a

written document was executed.

Thus, it is insufficient under Delaware law for Pechiney to assert – with no factual

support – that the mere fact Cryovac and National Beef contemplated a signed writing precludes a

jury from finding that a valid contract between the two parties ever existed.  <u>See Anchor Motor</u>

<u>Freight</u>, 716 A.2d at 156 ("The fact that the parties intend to execute a formal agreement, however, is

not dispositive.").  Likewise, nothing in the January 14, 2004 National Beef e-mail or other

circumstances "unambiguously indicate[s]" that no contract would come into existence until the

parties signed a written agreement.  6 Del. C. § 2-206(1)(a) ("Unless otherwise unambiguously

indicated by the language or circumstances an offer to make a contract shall be construed as inviting

acceptance in any manner and by any medium reasonable in the circumstances.").

Finally, the two cases Pechiney cites on this point are not helpful.  Neither case

mentions the UCC or the sale of goods.  Pechiney relies on <u>Transamerican Steamship Corp. v.</u>

<u>Murphy</u>, 1989 Del. Ch. LEXIS 13, *3-4 (Del. Ch. Feb. 14, 1989), a case decided nine years before

<u>Anchor Motor Freight</u>, that makes no mention of the "positive agreement" requirement.  <u>Bugg v.</u>

<u>Bugg</u>, 249 S.E.2d 505 (S.C. 1978), involved an attempt to enforce an oral agreement for the division

of property between a divorcing couple and actually stated the same standard as <u>Anchor Motor</u>

<u>Freight</u> – an oral agreement is enforceable unless "the parties intended not to be bound until the

written contract is executed."  <u>Bugg</u>, 249 S.E.2d at 507.  The <u>Bugg</u> court also recognized what

Pechiney attempts to avoid here – that this question is one that must be determined on the

"surrounding facts and circumstances of each particular case."  <u>Id.</u>

D.    **The Cryovac/National Beef Agreement Was Not Vague or Indefinite.**

Pechiney's last argument is that Cryovac should not be permitted to plead a cause of action for tortious interference with contractual relations because the agreement "is hopelessly vague and indefinite." D.I. 50 at 6. With this argument, Pechiney is attempting to contradict the parties' own words to avoid scrutiny of its conduct.

<u>First</u>, the written evidence demonstrates that National Beef and Cryovac understood the terms of their agreement. National Beef stated it intended '

' No reasonable person in the position of the contracting parties could understand this to mean that National Beef intended to sign an agreement that had no identified price, no identified quantity, and no identified products, as Pechiney would have the Court infer. To the contrary, National Beef and Cryovac had been discussing the terms of their agreement in December 2003 and January 2004 and all material terms had been agreed by the date of the January 14, 2004 e-mail exchange. Gardner Decl. ¶ 2.

<u>Second</u>, § 2-204(3) plainly states that a contract for the sale of goods can come into existence even though some contract terms remain to be finalized:

> Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

6 Del. C. § 2-204(3). Thus, although National Beef's e-mail

If any material term such as price, quantity or identification of the goods were still at issue, deciding where and when to sign the written memorial would make no sense. Indeed, Cryovac responded to National Beef that it –

12

000030.1245

This response further demonstrates that a contract was formed and that no material terms (let alone price, quantity, or identification of the goods) remained at issue.  Gardner Decl. ¶ 2-3.

Drawing all inferences in favor of Cryovac as the non-moving party provides ample basis for a reasonable fact-finder to conclude that a contract existed between National Beef and Cryovac.  And at a minimum, a genuine issue of material fact exists as to the existence of this contract.  Any way the question is phrased, however, Cryovac's pleading is adequate.

**III.   IF THE COURT CONSIDERS THE JANUARY 14, 2004 E-MAIL AND CONVERTS PECHINEY'S OPPOSITION TO A MOTION FOR SUMMARY JUDGMENT, CRYOVAC REQUESTS NOTICE SO THAT IT CAN PRESENT ALL EVIDENCE THAT EXISTS ON THE ISSUE.**

Because Pechiney has undertaken to "prove" that no contract existed between Cryovac and National Beef on what is, in essence, a motion to dismiss, Pechiney has placed Cryovac in an untenable position.  If Cryovac relies solely on its pleadings and presents no additional information to the Court, Cryovac risks the Court reviewing just the January 14, 2004 e-mail and denying Cryovac's motion as to its proposed tortious interference with contract claim (Pechiney did not present any argument as to why Cryovac's proposed Count III should not be part of the case).  On the other hand, to fully counter Pechiney's motion with all of the available evidence in the five days permitted to draft and file reply briefs is a Herculean task before full discovery has occurred.[3]

Fortunately, the Federal Rules of Civil Procedure do not require Cryovac to elect between these two alternatives.  Federal Rule of Civil Procedure 12(b) provides that before the Court

---

[3]     It is also not viable to seek an extension of time to assemble this material, as any delay in responding will likely delay resolution of the motion; while the motion is pending, Pechiney is expected to refuse to permit discovery relevant only to this cause of action.

can consider matters extraneous to the pleadings – such as the record concerning the existence of a

contract between Cryovac and National Beef – and enter judgment against Cryovac, the Court must

provide express notice to Cryovac and a full and complete opportunity to build a record.  According

to the Third Circuit, in these circumstances a district court must provide a:

> "reasonable opportunity" to present all material relevant to a sum-
> mary judgment motion. Fed. R. Civ. P. 12(b).  The parties can take
> advantage of this opportunity only if they have "notice of the conver-
> sion." Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989).  In Rose, we
> held that notice must be "unambiguous" and must "fairly apprise[]"
> the parties that the court intends to convert the motion.  Id. at 341-42.
> We acknowledged that notice need not be express to meet these
> standards but recommended that District Courts provide express
> notice when they intend to convert a motion to dismiss.  See id. at
> 342.[11]  We also suggested that notice might be provided through the
> court's orders or at a hearing.  See id. at 341-42.
>
> [11]  We reaffirm this recommendation because express notice is
>     easy to give and removes ambiguities.

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287-88 (3d Cir. 1999).

In In re Rockefeller Ctr. Props., Inc. Sec. Litig., the court of appeals found that failure

to give express notice of conversion was error.  Id. at 288.  The district court's opinion was vacated

and the court of appeals remanded for reconsideration as either a pure Rule 12(b)(6) motion or as a

converted summary judgment motion on a full evidentiary record.

14

## CONCLUSION

As to plaintiff's proposed cause of action for tortious interference with prospective contractual relations, Pechiney provides no opposition. This portion of plaintiff's motion to amend should be granted without delay.

As to plaintiff's proposed cause of action for tortious interference with contract, plaintiff Cryovac, Inc. respectfully submits that the preceding discussion demonstrates that its pleading more than states a claim and that, even on a limited pre-discovery record, plaintiff's claim should proceed to a jury. Accordingly, plaintiff requests that its motion to amend be granted in full.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

_Michele Sherretta_

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
*Attorneys for Plaintiff Cryovac, Inc.*

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Michael J. Flibbert
Courtney B. Meeker
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
(202) 408-4000

Dated: April 5, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2005, I caused to be electronically filed a true and correct copy of a notice of the foregoing sealed document with the Clerk of the Court using CM/ECF, which will send notification that such notice is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE  19899

I further certify that on April 5, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY FEDERAL EXPRESS

> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_Michele Sherretta_

Michele Sherretta (No. 4651)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
msherretta@ycst.com

Attorneys for Plaintiff Cryovac, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2005, I caused to be electronically filed a true and correct copy of a notice of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such notice is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE  19899

I further certify that on April 12, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

### BY FEDERAL EXPRESS

> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Michele Sherretta (No. 4651)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
msherretta@ycst.com

Attorneys for Plaintiff Cryovac, Inc.

WP3:1045421.1                                                                          63527.1001