IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC. | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Civil Action No. 04-1278-KAJ |
| | ) | |
| v. | ) | Hon.  Kent A. Jordan |
| | ) | |
| PECHINEY PLASTIC PACKAGING, INC. | ) | |
| | ) | |
| Defendant/Counter-Plaintiff | ) | |
| | ) | |

## AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant/Counter-Plaintiff Pechiney Plastic Packaging, Inc. ("Pechiney"), hereby

submits its Amended Answer and Affirmative Defenses to the Complaint filed by

Plaintiff/Counter-Defendant Cryovac, Inc. ("Cryovac"), and its Counterclaims against Cryovac

for declaratory judgment.

## NATURE OF THE ACTION

1.      This action relates to Cryovac's U.S. Patent No. 4,755,419 directed to coextruded
multiple layer oriented films in packaging materials.

**ANSWER:**    Pechiney admits that this action relates to U.S. Patent No. 4,755,419.  Pechiney

denies the remaining allegations set forth in paragraph 1 of the Complaint.

## PARTIES AND JURISDICTION

2.      Cryovac is a Delaware corporation having a place of business at 100 Rogers
Bridge Road, Bldg. A, Duncan, South Carolina 29334.  Cryovac is engaged in the business of
researching, developing, manufacturing, and selling packaging products, including coextruded
multiple layer oriented films, in the United States.

417995                                    1

**ANSWER:**    Pechiney admits the allegations set forth in paragraph 2 of the Complaint.

3.        Pechiney is a Delaware corporation having its principal place of business at 8770 West Bryn Mawr Avenue, Chicago, Illinois 60631. Pechiney is engaged in the business of manufacturing and selling packaging products, including infringing coextruded multiple layer oriented films, in the United States.

**ANSWER:**    Pechiney admits that it is a Delaware corporation having its principal place of business at 8770 West Bryn Mawr Avenue, Chicago, Illinois 60631 and that Pechiney is engaged in the business of manufacturing and selling packaging products, including coextruded multiple layer oriented films, in the United States.  Pechiney denies the remaining allegations set forth in paragraph 3 of the Complaint.

4.        This patent infringement action arises under the patent laws of the United States, Title 35, United States Code.

**ANSWER:**    Pechiney admits that the claims alleged in the Complaint against Pechiney are for infringement arising under the patent laws of the United States, Title 35, United States Code, but Pechiney denies it has committed any act of infringement.

5.        This Court has jurisdiction over the subject matter of this case under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**    Pechiney admits the allegations set forth in paragraph 5 of the Complaint, except that Pechiney denies committing any acts violating any rights of Cryovac on which jurisdiction, as alleged, is dependent.

6.        Venue properly lies in this judicial district under 28 U.S.C. §§ 1391 and 1400.

417995                                                2

**ANSWER:**     Pechiney admits the allegations set forth in paragraph 6 of the Complaint, except

that Pechiney denies committing any acts violating any rights of Cryovac on which venue, as

alleged, is dependent.

      7.     This Court has personal jurisdiction over Pechiney.

**ANSWER:**     Pechiney admits the allegations set forth in paragraph 7 of the Complaint, except

that Pechiney denies committing any acts of infringement complained of by Cryovac in this

District or elsewhere.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 4,755,419

      8.     On July 5, 1988, United States Letters Patent No. 4,755,419 ("the '419 patent"),
entitled "Oxygen Barrier Oriented Shrink Film," was duly and legally issued to W.R. Grace &
Co.-Conn. by the United States Patent and Trademark Office.  The '419 patent was assigned to
Cyrovac, dated effective March 21, 1988, and since that time Cyrovac has been and remains the
owner of the '419 patent.  A copy of the '419 patent is attached hereto as Exhibit A.

**ANSWER:**     Pechiney admits that the United States Patent Office issued U.S. Patent No.

4,755,419 on July 5, 1988 and that W.R. Grace & Co., Cryovac Div. appears as the Assignee on

the face of the patent.  Pechiney further admits that a copy of the '419 patent is attached as

Exhibit A to the Complaint.  Pechiney denies the remaining allegations set forth in paragraph 8

of the Complaint.

      9.     The '419 patent discloses and claims certain coextruded multiple layer oriented
films.

**ANSWER:**     Pechiney admits that the '419 patent discloses certain coextruded multiple layer

oriented films, but denies that the claims of the '419 patent require only coextruded multiple

layer oriented films and further denies that any of the claims of the '419 patent are valid.

417995                                          3

10.    Subsequent to the issuance of the '419 patent, Pechiney has made, used, offered to sell, and sold coextruded multiple layer oriented films in the United States, including food packaging bags sold under the tradename "ClearShield."

**ANSWER:**    Pechiney admits the allegations set forth in paragraph 10 of the Complaint.

11.    Pechiney has infringed at least claim 11 of the '419 patent under 35 U.S.C. § 271(a). Pechiney's infringing activities include its manufacture, use, offer for sale, and sale of its "ClearShield" bags in the United States subsequent to the issuance of the '419 patent.

**ANSWER:**    Pechiney denies the allegations set forth in paragraph 11 of the Complaint.

12.    Pechiney has no license or other authorization to use the inventions described and claimed in the '419 patent.

**ANSWER:**    Pechiney admits that it does not have a license or other authorization to use the

'419 patent, but denies that such a license or authorization is required.  Further answering,

Pechiney denies that any patentable inventions are described or claimed in the '419 patent and

further denies any and all remaining allegations set forth in paragraph 12 of the Complaint.

13.    Cryovac has been damaged in an amount not yet determined as a consequence of the infringing activities of Pechiney complained of herein. Cyrovac has also been irreparably harmed by Pechiney's patent infringement. Cryovac will continue to suffer damages and irreparable harm until this Court permanently enjoins Pechiney from further infringement of the '419 patent.

**ANSWER:**    Pechiney denies the allegations set forth in paragraph 13 of the Complaint.

## AFFIRMATIVE DEFENSES

Pechiney asserts the following affirmative defenses:

### First Affirmative Defense
### (No Direct Infringement)

As a first and separate affirmative defense, Pechiney has not infringed and is not

infringing any valid and enforceable claim of the '419 patent.

### Second Affirmative Defense
### (No Contributory Infringement)

As a second and separate affirmative defense, Pechiney has not contributed to and is not contributing to the infringement of any valid and enforceable claim of the '419 patent.

### Third Affirmative Defense
### (No Induced Infringement)

As a third and separate affirmative defense, Pechiney has not induced and is not inducing the infringement of any valid and enforceable claim of the '419 patent.

### Fourth Affirmative Defense
### (File Wrapper Estoppel)

As a fourth and separate affirmative defense, upon information and belief and by reason of proceedings in the United States Patent and Trademark Office during the prosecution of the application that resulted in the '419 patent, as shown by its file history, and by reason of the amendment, cancellation or abandonment of claims, and the admissions and other statements made therein by or on behalf of the patentee, Cryovac is estopped from claiming a construction of the '419 patent that would cause any valid or enforceable claim thereof to cover or include any product manufactured, used, sold, or offered for sale by Pechiney.

### Fifth Affirmative Defense
### (35 U.S.C. § 101 et seq.)

As a fifth and separate affirmative defense, upon information and belief, the claims of the '419 patent are invalid because they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. § 101 et seq.

417995

**Sixth Affirmative Defense**
**(Failure to State a Claim)**

As a sixth and separate affirmative defense, upon information and belief, the Complaint and each purported claim alleged therein fails to state facts upon which relief can be granted against Pechiney.

**Seventh Affirmative Defense**
**(Unenforceablity)**

As a seventh and separate affirmative defense, upon information and belief, the claims of the '419 patent are unenforceable by virtue of Cryovac's inequitable conduct before the United States Patent & Trademark Office ("USPTO") during the prosecution of U.S. Patent Application Serial No. 06/842,600 ("the '600 application"), which resulted in the issuance of the '419 patent.

Specifically, Cryovac engaged in the following inequitable conduct:

a)     Examiner Thomas J. Herbert, the Examiner for the '600 application, issued an Office Action on May 8, 1987 ("May 8, 1987 Office Action") rejecting claims 1-23 of the '600 application under 35 U.S.C. § 103 as being unpatentable over Sheptak in view of Mueller.

b)     Mr. Mark B. Quatt, the prosecuting attorney for the '600 application, filed an Amendment on May 22, 1987 ("May 22, 1987 Amendment") in response to the May 8, 1987 Office Action. In the May 22, 1987 Amendment, Mr. Quatt argued:

> Claims 1, 6, and 14 have been amended to clarify that:
> (1)     at least seven layers are claimed; and that
> (2)     these layers are symmetrically arranged.
> Sheptak only teaches five layers, symmetrically arranged (14) and the overall eight layer structure (S) of the reference is assymetric.

417995                                          6

If, as the Examiner has argued, it would be obvious to employ the outer layers of Mueller at the outer layers in Sheptak, one of two structures would result. In the first, the outer layers 15 of five-layer film 14 of Sheptak would have the blends disclosed in Mueller. The second possibility would be that one of the layers 15 (adjacent the porous mass of glass fibers comprising batt 13) and layer 20 would be the "outer" layers of Mueller.

In either hypothetical, an oriented coextruded film having at least seven layers arranged symmetrically is not achieved.

A copy of the May 22, 1987 Amendment is attached as Ex. A.

c)     As the result of the May 22, 1987 Amendment and an agreement to cancel non-elected claims and to change the dependency of claim 5, the Examiner issued a Notice of Allowability on July 24, 1987 ("July 24, 1987 Notice of Allowability") allowing all the claims of the '600 application.

d)     Prior to Cryovac filing the May 22, 1987 Amendment, Examiner Edith Buffalow, the Examiner for a copending Cryovac application, U.S. Serial No. 06/938,945 ("the '945 application"), issued an Office Action on May 12, 1987 ("May 12, 1987 Office Action for the '945 application") listing U.S. Patent No. 4,572,854 ("the '854 patent") to Dallmann as one of the references cited. The May 12, 1987 Office Action for the '945 application was addressed to Mark B. Quatt, the same attorney prosecuting the '600 application. A copy of the '854 patent is attached as Ex. B.

e)     On August 12, 2005, Pechiney deposed Mr. Quatt. Mr. Quatt admitted during his deposition that

REDACTED

417995                                          7

REDACTED

(Quatt Dep. Tr., pg. 214, ll. 2-6). A copy of excerpts from Mr. Quatt's deposition is attached as Ex. C.

        f)      The '854 patent discloses an oriented coextruded film having at least seven layers arranged symmetrically.

        i)      The '854 patent discloses an oriented film:

> The biaxial stretching of the film may be performed simultaneously or in steps. In the preferred biaxial, step-wise stretching process, stretching is initially carried out longitudinally by means of heated rolls and transversely thereafter with a stenter [sic] and then the film is heat-set.

('854 patent, col. 7, ll. 21-26.)

        ii)      The '854 patent discloses a coextruded film:

> The film according to the present invention produced by coextruding layers B, C, D, C (B optional), or A, B, C, D, C, (B and A optional) …

('854 patent, col. 6, ll. 48-50.)

        iii)      The '854 patent discloses a film having at least seven layers arranged symmetrically:

> The production of a seven-layer film is appropriately carried out with the use of a three-layer die. In the case of a symmetric film structure, the melts of the polymers for layers B, C, and D may be extruded through the center channel and the melts for the outer sealing layers A simultaneously through the outer channels onto a chill roll.

('854 patent, col. 7, ll. 10-16; *see also* Figure 6 of the '854 patent illustrating a seven layer film with corresponding layers A/A, B/B and C/C having the same thickness.)

417995

8

g)      Cryovac could not have made the argument "an oriented coextruded film having at least seven layers arranged symmetrically is not achieved" in its May 22, 1987 Amendment had Cryovac disclosed the '854 patent to Examiner Herbert.

h)      Mr. Quatt disclosed the '854 patent in a copending Cryovac application, U.S. Serial No. 06/834,694 ("the '694 application") by filing an Information Disclosure Statement on January 12, 1988 ("January 12, 1988 IDS for the '694 application"). The '694 application resulted in the issuance of U.S. Patent No. 4,746,562 ("the '562 patent"). Cyrovac alleges in this litigation that the '562 patent does not disclose an oriented film. Claim 11 of the '419 patent claims "An oriented coextruded film having at least seven layers arranged symmetrically...." Since the '854 patent discloses an oriented coextruded film having seven layers arranged symmetrically, the '854 patent is more material to the patentability of the claims of the '600 application than it was to the claims of the '694 application. Thus, Mr. Quatt's citation of the '854 patent during the prosecution of the '694 application is proof of the materiality of the '854 patent to the '600 application.

i)      The '854 patent is not listed in the '419 patent as one of the "References Cited" and there is no indication in the prosecution history of the '600 application that Cyrovac ever disclosed the '854 patent prior to the time the '419 patent issued.

j)      Mr. Quatt, during his deposition, ·

REDACTED

417995                                    9

(Quatt Dep. Tr., pg. 217, ll. 8-13).          **REDACTED**

there is sufficient proof of intent so that the failure to cite the '854 patent in view of the arguments made during prosecution constitutes inequitable conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Pechiney prays for the following relief:

A.      The entry of judgment dismissing the Complaint with prejudice;

B.      For a judgment declaring that Pechiney has neither infringed, actively induced infringement, nor contributorily infringed any valid claim of the '419 patent;

C.      For a judgment declaring that the claims of the '419 patent are each invalid;

D.      For a judgment declaring that the claims of the '419 patent are each unenforceable;

E.      For a judgment declaring this an exceptional case under Title 35, United States Code Section 285 and awarding Pechiney its reasonable attorney fees;

F.      For an award of costs and interest to be assessed against Cryovac; and

G.      For such other and further relief as the Court may deem just and proper.

## **COUNTERCLAIMS**

Pechiney Plastic Packaging, Inc. ("Pechiney") hereby submits these Counterclaims against Cryovac and alleges as follows:

417995                              10

## NATURE OF THE ACTION

1.      Pursuant to Rule 13 of the Federal Rules of Civil Procedure, and for its counterclaims against Cryovac, Inc., Pechiney seeks (a) a judgment declaring that the claims of the '419 patent are invalid and/or not infringed by any product made and/or sold by Pechiney; (b) a judgment that each of the claims of the '419 patent are unenforceable; and (c) injunctive relief and damages for Cryovac's violations of the Lanham Act, and for Cryovac's violations of the Illinois Deceptive Trade Practices Act, injurious falsehood and unfair competition.

## THE PARTIES

2.      Pechiney is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 8770 West Bryn Mawr Avenue, Chicago, IL 60631.

3.      Upon information and belief, Cryovac, Inc. ("Cryovac") is a Delaware corporation having a place of business at 100 Rogers Bridge Road, Bldg. A, Duncan, South Carolina 29334.

## JURISDICTION AND VENUE

4.      This counterclaim arises under the patent laws of the United States of America, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Additionally, Pechiney's counterclaim to render the patent-in-suit unenforceable based on inequitable conduct arises under the patent laws of the United States of America, Title 35 of the United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. This court has subject matter jurisdiction of these counterclaims under 28 U.S.C. §§ 1331 and 1338(a).

417995                                11

5.    Pechiney's remaining counterclaims arise under the Lanham Act, 15 U.S.C. § 1125(a), under Illinois' Deceptive Trade Practices Act and under state common law for injurious falsehood and unfair competition.

6.    The Court has subject matter jurisdiction over Pechiney's Lanham Act pursuant to 15 U.S.C. § 1121(a) and over Pechiney's state law claims by virtue of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.    Cryovac is subject to personal jurisdiction in this judicial district by virtue of Cryovac filing its Complaint in this case in this judicial district.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## COUNT I

### Declaratory Judgment of Non-infringement
### of U.S. Patent No. 4,755,419 (28 U.S.C. §§ 2201-02)

9.    Pechiney incorporates and reallges all allegations set forth in paragraphs 1-13 of its Answer, its Affirmative Defenses and paragraphs 1-8 of the Counterclaims as if fully set forth herein.

10.    Upon information and belief, Cryovac is the owner by assignment of the '419 patent, which issued July 5, 1988.

11.    On September 20, 2004, Cryovac filed a Complaint against Pechiney alleging that Cryovac owns the '419 patent and alleging that Pechiney infringes the '419 patent.

12.    There is an actual and justiciable controversy between Pechiney and Cryovac concerning whether Pechiney infringes any valid and enforceable claim of the '419 patent.

417995

13.     Pechiney does not infringe any valid and enforceable claim of the '419 patent and therefore is entitled to a declaratory judgment that it has not infringed, contributed to the infringement of or induced the infringement of, and is not infringing, contributing to the infringement of or inducing the infringement of any valid and enforceable claim of the '419 patent asserted by Cryovac.

14.     Upon information and belief, Pechiney is entitled to a declaratory judgment that the claims of the '419 patent are invalid because they fail to meet one ore more of the conditions for patentability set forth in 35 U.S.C. 101 et seq.

## COUNT II

### Declaratory Judgment of Invalidity
### of U.S. Patent No. 4,755,419 (28 U.S.C. §§ 2201-02)

15.     Pechiney incorporates and realleges all allegations set forth in paragraphs 1-13 of its Answer, its Affirmative Defenses and paragraphs 1-8 of the Counterclaims as if fully set forth herein.

16.     Upon information and belief, Cryovac is the owner by assignment of the '419 patent, which issued July 5, 1988.

17.     On September 20, 2004, Cryovac filed a Complaint against Pechiney alleging that Cryovac owns the '419 patent and alleging that Pechiney infringes the '419 patent.

18.     There is an actual and justiciable controversy between Pechiney and Cryovac concerning whether Pechiney infringes any valid and enforceable claim of the '419 patent.

417995

13

19.     Upon information and belief, Pechiney is entitled to a declaratory judgment that the claims of the '419 patent are invalid because they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. 101 et seq.

## COUNT III

### Declaratory Judgment of Unenforceability
### of U.S. Patent No. 4,755,419 (28 U.S.C. §§ 2201-02)

20.     Pechiney incorporates and realleges all allegations set forth in paragraphs 1-13 of its Answer, its Affirmative Defenses and paragraphs 1-8 of the Counterclaims as if fully set forth herein.

21.     On information and belief, Cryovac engaged in inequitable conduct before the USPTO during the prosecution of the '600 application.  The prosecution of the '600 application resulted in the issuance of the '419 patent.

22.     Specifically, for the same reasons discussed above in Defendant's Seventh Affirmative Defense, Cryovac engaged in inequitable conduct during the prosecution of the '600 application.

23.     Upon information and belief, Cryovac is the owner by assignment of the '419 patent, which issued July 5, 1988.

24.     On September 20, 2004, Cryovac filed a Complaint against Pechiney alleging that Cryovac owns the '419 patent and alleging that Pechiney infringes the '419 patent.

25.     There is an actual and justifiable controversy between Pechiney and Cryovac concerning whether Pechiney infringes any valid and enforceable claim of the '419 patent.

417995                                    14

26.     Upon information and belief, Pechiney is entitled to a declaratory judgment that the claims of the '419 patent are unenforceable by virtue of Cryovac's inequitable conduct before the United States Patent & Trademark Office ("USPTO") during the prosecution of U.S. Patent Application Serial No. 842,600 ("the '600 application"), which resulted in the issuance of the '419 patent, for the reasons discussed above in Defendant's Seventh Affirmative Defense to the Complaint filed by Cryovac.

## COUNT IV
### (Lanham Act, 15 U.S.C. § 1125(a)(1)(B))

27.     Pechiney and Cryovac are direct competitors in the business of selling plastic shrink-wrap bags to meat packagers.  In March 2003, Pechiney introduced the ClearShield bag, which was designed to compete with Cryovac's bone-in fresh red meat shrink bags.

28.     The ClearShield bag allowed Pechiney to effectively compete for packaging business in the fresh red meat marketplace, including both beef and pork, a segment of the market traditionally dominated by Cryovac.  For example, Cryovac had 96% of the market for shrink bags for packaging bone-in beef and 90% of the market for shrink bags for packaging bone-in pork. (Robert Taylor Dep. Tr., ppg. 131-32.)  A true and correct copy of an excerpt from Robert Taylor's deposition is attached as Ex. D.

29.     On information and belief, Cryovac has made false and misleading statements regarding ClearShield to Pechiney's customers and potential customers for the purpose of shutting down Pechiney's production and sale of the ClearShield product.  Cryovac's statements

417995                                              15

falsely impugned the quality of the ClearShield product as well as Pechiney's ability to meet the needs of its current and potential customers.

30.     On March 2, 2004,

REDACTED

A true and correct copy of this presentation is attached hereto as Ex. E.

31.

REDACTED

417995                                      16

**REDACTED**

(March 2, 2004 Presentation, at CR004-002719, Ex. E.)

32.     On information and belief, Cryovac, knew or should have known that the statements made

were false.  At the very least, Cryovac acted with reckless disregard for whether these statements were true.

33.     Approximately two months later, in May of 2004,

**REDACTED**

(May 2004 Presentation, at CR004-002744).  A true and correct copy of this May 2004 presentation is attached hereto as Ex. F.

34.     In August of 2004,

**REDACTED**

A true and correct copy of this August 2004 presentation is attached hereto as Ex. G.

35.     On information and belief, Cryovac's sales representatives followed instructions and conveyed to customers these false statements, or their equivalent, concerning of Pechiney's ClearShield products.

**REDACTED**

417995                                     17

36.    On information and belief, Cryovac's regional and national account sales representatives followed                    instructions and conveyed to customers the false statements

REDACTED                concerning                    Pechiney's ClearShield products.

37.    Cryovac knew or should have known that its statement

REDACTED                        was false.  At the very least, Cryovac acted with reckless disregard for whether the statement                                was true.

38.    In his deposition, Jeffery Gardner, Vice President of Sales and Marketing for North America, testified that I                    REDACTED                            (*See* Gardner Dep. Tr. at 179, ll. 9-11.)  A true and correct copy of the deposition transcript of Jeffery Gardner is attached hereto as Ex. H.

39.    By June 25, 2003,


REDACTED


(Market Share Survey.)  A true and correct copy of the "market share survey" is attached hereto as Ex. I.


(*Id.* at CR006-009315.)                    REDACTED


417995                                18

REDACTED

(*Id.*)

40.

REDACTED

A true and correct copy of this report is attached hereto

as Ex. J.

41.    In his October 24, 2003 report,

REDACTED                                                  (*See*

Ex. J.)

(*See id.*)

42.    During his deposition, Mize was asked

REDACTED

417995                              19

Mize Dep. Tr. at 153-160.)  A true and correct copy of the James

Mize deposition transcript is attached hereto as Ex. K.

    43.    On information and belief, Cryovac, knew or should have known that its

statement regarding Pechiney's bone-in fresh meat bags

was false.  At the very least, Cryovac acted with reckless disregard for whether the statement

    **REDACTED**        in reference to Pechiney's bone-in fresh red meat shrink

bags was truthful.

    44.

    45.                       **REDACTED**

A true and correct copy

of these notes is attached hereto as Ex. L.

    46.    On information and belief, Cryovac, knew or should have known that its

statement that             **REDACTED**           was

false.  At the very least, Cryovac acted with reckless disregard for whether this was true.  (*See*

Ex.s E, F, G.)

    47.

                  **REDACTED**

417995

' (*See* Ex. J.)                                  **REDACTED**


(*See* Ex. L.)

48.    On information and belief, Cryovac, knew or should have known that its

statement that Cryovac's sales representatives should

                                                **REDACTED**               was false.  At the

very least, Cryovac acted with reckless disregard for whether its statement that Pechiney's

shortcomings i                                                          was true.

49.



                                **REDACTED**


                                                    A true and correct copy

of this memorandum is attached hereto as Ex. M.

50.    In his deposition, Mize admitted



                        **REDACTED**                    (Ex. K, at 185.)



                                                                (*Id.* at

417995                              21

209-210.)  Additionally, Mr. Mize admitted that,

*(Id.* at

210-211.)  Finally, Mr. Mize admitted          REDACTED

(*Id.* at 211.)

51.    On information and belief, Cryovac's motivation and purpose for making these
false statements concerning Pechiney's ClearShield products was to maintain and/or expand its
96% share of the market for shrink bags for bone-in fresh beef, and its 90% share of the market
for shrink bags for bone-in fresh pork.  As a result, Cryovac acted willfully and with malice in
making these statements.

52.    On July 19, 2004,


                              REDACTED


A true and correct copy of this email is attached hereto as Ex. N.

53.    Beginning in 2001, Excel, another major customer of red meat bone-in shrink
bags, began discussions with Pechiney concerning Excel's interest in a bag that would be
superior to Cryovac's bone-in fresh red meat bag in clarity and performance.  Based on these
discussions, Excel agreed to serve as Pechiney's development partner for ClearShield bags.  This
agreement allowed Pechiney to use Excel's plants to run tests on its ClearShield bags in a
commercial setting.

417995                                        22

54.    In August of 2003, after Pechiney believed it had obtained a deal with Excel for the ClearShield bags, Cryovac used its dominance in the meat packaging market to obtain a

**REDACTED**                  with Excel for Cryovac's bone-in fresh red meat bags and many other meat packaging products.

55.    On information and belief, Cryovac offered these deep discounts to keep Pechiney from selling ClearShield to Pechiney's development partner, Excel, pursuant to a Cryovac plan to reduce or eliminate any chance Pechiney had to successfully market and sell its ClearShield bag. On information and belief, Cryovac was following this same plan when it made false and disparaging comments regarding ClearShield to deprive Pechiney of sales of this product.

56.

**REDACTED**

A true and correct copy of this email memorandum is attached hereto as Ex. O.

57.

**REDACTED**

417995                              23

REDACTED

(Ex. O.) Emphasis supplied.

58.    On March 31, 2004,

REDACTED

(See Ex. O.)

59.

REDACTED

A true and correct copy of Mr. Prosser's July 1, 2004 letter is attached hereto as Ex. P.

60.    On information and belief, customers were deceived by Cryovac's false statements regarding ClearShield. At the very least, Cryovac's false statements were likely to deceive a substantial portion of the intended audience.

417995                                    24

61.     Cryovac's statements relating to ClearShield were material.

**REDACTED**

62.     Both Pechiney's ClearShield bags and the competing Cryovac bags travel in interstate commerce.

63.     On information and belief, Pechiney has been damaged and will continue to be damaged in terms of lost sales and loss of goodwill as a result of Cryovac's false and misleading statements.

## COUNT VI
### (Illinois Deceptive Trade Practices Act, 815 ILCS § 510/2(8))

64.     Pechiney repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 to 8 and 27 to 63 above.

65.     Section 2 of the Illinois Deceptive Trade Practices Act ("IDTPA") provides, among other things, that a "person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he . . . disparages the goods, services or business of another by false or misleading representation of fact." 815 ILCS § 510/2(8).

66.     On information and belief, Cryovac, through its agents, has violated the IDTPA by willfully making false and misleading derogatory statements of fact to Pechiney's customers and prospective customers. These false and misleading statements related to

**REDACTED**

417995                                  25

67.     On information and belief, Cryovac's false statements disparaging Pechiney and its ClearShield product have deceived Pechiney's current and potential customers.  At the very least, customers are likely to be confused or deceived by Cryovac's false statements.

68.     Cryovac's violations of the IDTPA have caused, and will continue to cause, irreparable harm to Pechiney's business reputation, injury to its goodwill and pecuniary damages.

## COUNT VI
### (Injurious Falsehood)

69.     Pechiney repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 to 8 and 27-68 above.

70.     Cryovac's false statements pertaining to ClearShield have a direct affect on Pechiney's economic interests.

71.     Cryovac's false statements

**REDACTED**                                are of an injurious character.

72.     Cryovac's statement                                is false.  On information and belief, Cryovac has made statements                                that are also false.

73.     On information and belief Cryovac has made these false statements to third parties - - namely customers and potential customers of Pechiney.

74.     It is foreseeable that customers would rely on Cryovac's statements

**REDACTED**                    when making purchasing decisions.

417995                                26

75.     On information and belief, customers or potential customers to whom Cryovac's statements were made understood these statements to be disparaging Pechiney's products.

76.     On information and belief, customers or potential customers to whom Cryovac's statements were made understood these statements to be related to Pechiney's ability to serve as the customer or potential customer's supplier of shrink wrap bags for bone-in beef.

77.     On information and belief Pechiney has been damaged and will continue to be damaged in terms of lost sales and having to lower prices as a result of Cryovac's false statements.

78.     On information and belief, Cryovac had knowledge that the statements it made to current and potential Pechiney customers were false. At the very least, Cryovac acted with reckless disregard as to the truth of the statements it made to current and potential Pechiney customers.

## COUNT VII
### (Unfair Competition)

79.     Pechiney repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 to 8 and 27-78 above.

80.     On information and belief, consistent with its strategic plan to maintain its 90% + share of the market, Cryovac has made false and misleading statements relating to Pechiney's services and Pechiney's ClearShield product.

81.     On information and belief, Cryovac knew or should have known that its statements relating to ClearShield were false and misleading. On information and belief, Cryovac also acted with reckless disregard for whether its statements were true.

417995                                          27

82.     On information and belief, Cryovac's false and misleading statements deceived Pechiney's customers and potential customers.  At the very least,  Cryovac's false and misleading statements were likely to deceive customers and potential customers.

83.     Cryovac's false and misleading statements were material.

84.     On information and belief, Pechiney has been damaged as a result of Cryovac's false and misleading statements.  Additionally, Pechiney is likely to continue to be damaged as a result of Cryovac's disparaging statements.

## PRAYER FOR RELIEF

WHEREFORE, Pechiney prays for the following relief:

A.     For a judgment declaring that Pechiney has neither infringed, actively induced infringement, nor contributorily infringed any claim of the '419 patent;

B.     For a judgment declaring the claims of the '419 patent invalid;

C.     For a judgment declaring the claims of the '419 patent unenforceable;

D.     For a judgment declaring this an exceptional case under Title 35, United States Code Section 285 and awarding Pechiney its reasonable attorney fees;

E.     For injunctive relief preventing Cryovac from falsely disparaging Pechiney's ClearShield products;

F.     For an award of treble damages under the Lanham Act;

G.     For an award of attorney's fees, costs and prejudgment interest;

H.     For damages in an amount to be determined at trial; and

417995

I.    For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

PECHINEY PLASTIC PACKAGING, INC.

Dated: September 20, 2005

By: *N. Richard Powers* / jmm

N. Richard Powers (Del. Bar No. 494)
Rudolf E. Hutz (Del. Bar No. 484)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: 302.888.6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Tel: 312.222.9350

*Attorneys for Defendant/Counter-Plaintiff Pechiney*
*Plastic Packaging, Inc.*

417995

## CERTIFICATE OF SERVICE

I, Jaclyn M. Mason, Esq., certify that I caused a copy of the foregoing **AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** to be served on the following on September 20, 2005, in the manner indicated:

**VIA HAND DELIVERY:**
John W. Shaw, Esq.
Karen E. Keller, Esq.
YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street'
Wilmington, Delaware 19801
Fax: (302) 576-3334

**VIA FEDERAL EXPRESS:**
Ford F. Farabow, Esq.
Joann M. Neth, Esq.
Michael J. Flibbert, Esq.
Courtney B. Meeker, Esq.
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1300 I Street, N.W.
Washington, D.C. 20005-3315
Fax: (202) 408.4400

Jaclyn M. Mason, Esq.

417995