Redacted Version Filed
      10/13/05

**JENNER&BLOCK**

October 4, 2005

Jenner & Block LLP          Chicago
One IBM Plaza               Dallas
Chicago, IL 60611           Washington, DC
Tel 312-222-9350
www.jenner.com

## VIA HAND DELIVERY AND E-MAIL

Honorable Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325
Lockbox 10
Wilmington, DE 19801

Steven R. Trybus
Tel 312 923-8907
Fax 312 923-8407
strybus@jenner.com

**REDACTED VERSION**

Re:    **Cryovac, Inc. v. Pechiney Plastic Packaging, Inc., C.A. 04-1278-KAJ**

Dear Judge Jordan:

Pechiney Plastic Packaging, Inc. ("Pechiney") submits this letter pursuant to ¶ 3e of the Court's December 14, 2004, Scheduling Order in the above-referenced case. The telephone conference regarding this discovery dispute is scheduled for October 6, 2005 at 3:30 p.m. (EDT).

<u>Nature of the Dispute:</u>  Pechiney is seeking relief as a result of Cryovac's failure to answer in good faith: (i) document request numbers 79-82 in Pechiney's Fifth Set of Requests for the Production of Documents (Nos. 79-86)(Ex. 1); and (ii) Pechiney's Sixth Set of Interrogatories (Nos. 38-41)(Ex. 2)(collectively, the "discovery"). Cryovac has objected to this discovery on grounds that it is irrelevant, unduly burdensome and untimely under the Scheduling Order.

<u>Pechiney's Position:</u>  Pechiney has served narrowly focused discovery that goes straight to the heart of Cryovac's tortious interference claims—namely, whether Cryovac and National Beef were parties to a contract obligating National Beef to buy its plastic packaging from Cryovac and, if so, whether Pechiney could possibly have had knowledge that National Beef was bound in that fashion. Moreover, Pechiney's discovery is unquestionably timely, sparked as it was by revelations first made during the August 17, 2005, deposition of a top Cryovac executive, Mr. James A. Mize, and timely served only two days thereafter, on August 19, 2005.

    *A.*    *The Discovery is Highly Relevant.*

In order to prevail on its claim for tortious interference with a contract, Cryovac must prove: (1) the existence of a binding contract between Cryovac and National Beef that required National Beef to buy packaging from Cryovac; (2) Pechiney's actual knowledge of that contract; and (3) that Pechiney intentionally interfered with the contract. Pechiney and National Beef have both denied that Cryovac ever had a binding contract with National Beef because the alleged contract failed to include a statutorily required quantity term in violation of Section 2-201 of Delaware's Uniform Commercial Code and is, therefore, unenforceable. *See* 6 DEL. CODE ANN. tit. 6, §2-201(1) (2004) and Official Comment 1 (Ex. 3). Instead, both Pechiney and National Beef agree

Honorable Kent A. Jordan
October 4, 2005
Page 2

**JENNER&BLOCK**

that the document Cryovac provided National Beef was simply a price list intended to entice National Beef to purchase Cryovac packaging by offering quantity discounts. Nothing in this price list required National Beef to buy a single item from Cryovac.

During Mr. Mize's deposition on August 17,

**REDACTED**

Pechiney served
the disputed discovery two days later.

The disputed discovery could scarcely be of greater relevance to the issues involved in Cryovac's tortious interference claims. Pechiney should be entitled to see whether Cryovac's purportedly binding "agreement" with National Beef has the same material features as Cryovac's admittedly non-binding     **REDACTED**

  B. *The Discovery Was Timely Served.*

The Court's Scheduling Order set a discovery cut-off of August 19, 2005. (Order at ¶ 3(c).) Pechiney served the disputed discovery on August 19, 2005, by e-mail and first class mail. Cryovac's objection that the discovery is untimely under the Court's Scheduling Order is without merit for three reasons.

First, the discovery requests were triggered by events occurring after the discovery cutoff date. Obviously, Pechiney could not have served discovery directed at the revelations made in the Mize deposition until the deposition took place on August 17, 2005. Second, Pechiney originally noticed Mr. Mize's deposition for April 14, 2005 (Ex. 5), but the deposition was delayed at Cryovac's request until August 17, 2005. Cryovac should not be permitted to profit by its own deposition delays. Third, when it serves its interests to do so, even Cryovac recognizes that August 19, 2005, was not an unassailable cutoff date because Cryovac itself served discovery on Pechiney (Ex. 6) for which responses were not due until well after August 19, 2005. Pechiney, unlike Cryovac, fulfilled its obligations by timely responding to that additional discovery.

  C. *The Discovery Is Narrowly Tailored and Not Burdensome.*

Pechiney's discovery is narrowly focused on discovering the differences, if any, between Cryovac's binding and non-binding flexible packaging agreements, as first disclosed by Mr. Mize in his August 17 deposition. Although Pechiney's document production request is not so limited, Pechiney would, in the spirit of compromise, be willing to accept five (5) representative samples each from Cryovac of a:

   **REDACTED**    binding agreements; all for the sale of fresh red meat packaging products. Requiring Cryovac to produce a few representative exemplars of non-

Honorable Kent A. Jordan
October 4, 2005
Page 3

**JENNER&BLOCK**

binding **XXXX** or **XXX** agreements can hardly be called unduly burdensome for a billion dollar corporation seeking over seventy million dollars in damages.

For all of these reasons, Pechiney asks that Cryovac be compelled to answer document request numbers 79-82 in Pechiney's Fifth Set of Requests for the Production of Documents and Things and the interrogatories in Pechiney's Sixth Set of Interrogatories (Nos. 38-41).

Very truly yours,

Steven R. Trybus

Attachments (Exs. 1-6)

cc:    John W. Shaw
       Ford F. Farabow
       Donald R. Cassling