REDACTED VERSION – PUBLICLY FILED

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                                    )
                                                  )
          Plaintiff/Counter-Defendant,  )
                                                  )
     v.                                           )          Civil Action No. 04-1278-KAJ
                                                  )
PECHINEY PLASTIC PACKAGING INC.,     )          **CONFIDENTIAL –**
                                                  )          **FILED UNDER SEAL**
          Defendant/Counter-Plaintiff. )


## CRYOVAC, INC.'S ANSWERING BRIEF IN OPPOSITION TO PECHINEY PLASTIC PACKAGING INC.'S MOTION TO AMEND

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Mark J. Feldstein
Courtney B. Meeker
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: October 11, 2005

REDACTED VERSION – PUBLICLY FILED

## <u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ................................................................................ iv

NATURE AND STAGE OF THE PROCEEDING.............................................1

SUMMARY OF ARGUMENT .........................................................................3

STATEMENT OF FACTS ................................................................................5

    A.    Pechiney's Proposed Amended Pleading ..................................5

    B.    Pechiney's Federal and State Law Unfair Competition
        Counterclaims Do Not Belong in This Action.............................5

    C.    Pechiney Has Not Adequately Alleged Key Elements of
        its Permissive Counterclaims, and Cannot Provide
        Evidentiary Support for Those Claims .......................................5

        1.    Pechiney's Failure to Identify Any Customers to
            Whom the Allegedly False Statements Were Made ......................6

        2.    Pechiney Does Not Point to Any Actionable
            Statements of Fact, As Opposed to Permissible
            Statements of Opinion, and Cannot Show that the
            Alleged Statements Were Literally False. .......................7

        3.    Pechiney Cannot Point to Any Evidentiary Basis
            For its Claim that the Alleged Actionable Statements
            Caused It to Suffer any Damages...................................8

    D.    Pechiney Was Aware of All Facts Necessary to Support Its
        Permissive Counterclaims by the End of May 2005...................8

    E.    Pechiney Delayed Filing Its Inequitable Conduct Affirmative
        Defense and Counterclaim .........................................................8

    F.    Pechiney's Dallmann Reference Is Immaterial.........................10

ARGUMENT....................................................................................................12

    I.    PECHINEY HAS NOT DEMONSTRATED GOOD CAUSE TO
        AMEND THE SCHEDULING ORDER UNDER RULE 16(B)
        WITH RESPECT TO ITS PERMISSIVE COUNTERCLAIMS .............12

DB01:1873844.1

063527.1001

REDACTED VERSION – PUBLICLY FILED

A.     Pechiney's Lanham Act and State Law Counterclaims
        Are Not "Important" Under Rule 16(b) Because
        They Are Permissive Counterclaims ............................................13

B.     Good Cause Does Not Exist to Amend the
        Scheduling Order and to Reopen Discovery
        Because Pechiney's Explanation for Its Delay
        Is Purely Pretextual .......................................................................14

        1.     Pechiney Did Not Need or Use Any
                of the Depositions to Plead the One
                Claim Necessary to Establish
                Subject Matter Jurisdiction ................................................14

        2.     Pechiney Can Only Make the Depositions
                Relevant to Its Common Law Injurious
                Falsehood and Unfair Competition Claims
                by Misquoting Them.........................................................15

        3.     Pechiney Could Have Pleaded the Elements
                in Its Counterclaims after Reviewing Documents
                Produced in May ................................................................19

C.     Pechiney Cannot Refute the Clear Prejudice That
        Cryovac Will Suffer if the Amendment is Permitted
        Because the Discovery Needed by Cryovac, If The
        Motion is Granted, Is Broad..........................................................22

        1.     Whether the Allegedly False Statements
                Attributed to Cryovac in the Proposed
                Counterclaims Were, in fact, Made to
                Customers or Potential Customers of Pechiney.................23

        2.     Whether Any of the Statements Allegedly Made
                by Cryovac Are Actionable ................................................24

        3.     If Actionable at All, Whether Any Alleged
                Statements Are, in Fact, Literally False.............................25

        4.     If Any of the Statements Pechiney Accuses
                Are Not Literally False, Pechiney Must Prove
                that the Statements Were Misleadingly Deceptive
                Via a Customer Survey .......................................................26

        5.     Whether Customers Failed to Purchase from
                Pechiney as a Result of the Alleged Trade
                Disparagement ....................................................................26

        6.     Whether Pechiney's Market Failures Are the
                Result of Pechiney's Own Business Failings.....................27

REDACTED VERSION – PUBLICLY FILED

D.    Pechiney Cannot Refute the Clear Prejudice to Cryovac
from the Potential to Delay Trial or from Confusing the Jury.......29

II.    PECHINEY CANNOT MEET ITS BURDEN UNDER RULE 15(A)
DUE TO PREJUDICE TO CRYOVAC, PECHINEY'S BAD FAITH,
AND THE FUTILITY OF PECHINEY'S PROPOSED
PLEADING.................................................................................................30

A.    Prejudice to Cryovac and Pechiney's Bad Faith
Bar the Amendment ...................................................................30

B.    Pechiney's Permissive Counterclaims Are Futile Because
They Will Not Withstand a Motion to Dismiss Under
Rule 12(b)(6)...............................................................................31

III.    PECHINEY HAS NOT DEMONSTRATED GOOD CAUSE TO
AMEND THE SCHEDULING ORDER UNDER RULE 16(B) TO
ADD AN INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE
AND COUNTERCLAIM ........................................................................33

A.    Prejudice Unfairly Delayed Pleading Inequitable
Conduct.......................................................................................34

B.    Pechiney's Late Motion to Add Inequitable Conduct Is
Prejudicial to Cryovac.................................................................35

IV.    CRYOVAC'S MOTION TO ADD WILFULL INFRINGEMENT
WAS TIMELY...........................................................................................36

CONCLUSION....................................................................................................37

REDACTED VERSION – PUBLICLY FILED

CASES                                                               PAGE NO.

Adams v. Gould, Inc.,
      739 F.2d 858 (3d Cir. 1984)..................................................................30

American Needle & Novelty v. Drew Pearson Mktg.,
      820 F. Supp. 1072 (N.D. Ill. 1993) ....................................................23

Anatian v. Coutts Bank (Switzerland) Ltd.,
      193 F.3d 85 (2d Cir. 1999),
      cert. denied, 528 U.S. 1188 (2000) ...................................................31

B. Sanfield, Inc. v. J.C. Penney Co., Inc.,
      1993 U.S. Dist. LEXIS 17703 (N.D. Ill. Dec. 13, 1993)...................31

Bay City-Abrahams Bros., Inc. v. Estee Lauder, Inc.,
      375 F. Supp. 1206 (S.D.N.Y. 1974) ...................................................23

Castrol Inc. v. Pennzoil Co.,
      799 F. Supp. 424, 436 (D.N.J. 1992), aff'd, 987 F.2d 939 (3d Cir. 1993) .................26

Church & Dwight Co. v. S.C. Johnson & Son,
      873 F. Supp. 893 (D.N.J. 1994) ..........................................................26

Collegenet, Inc. v. Xap Corp.,
      2004 U.S. Dist. LEXIS 21059 (D. Or. Oct. 12, 2004)......................32

Cornell & Co. v. Occupational Safety & Health Review Comm'n,
      573 F.2d 820 (3d Cir. 1978).................................................................30

Dimensional Comm'ns, Inc v. Oz Optics, Ltd.,
      2005 U.S. LEXIS 17111 (3d Cir. Aug. 12, 2005) ..........................13, 33, 34

Forman v. Davis,
      371 U.S. 178 (1962)..............................................................................30

FMC Corp. v. Manitowoc Co.,
      835 F.2d 1411 (Fed. Cir. 1987)............................................................35

Halliburton Co. v. Schlumberger Technology Corp.,
      925 F.2d 1435 (Fed. Cir. 1991)............................................................35

Haynes v. Alfred A. Knopf Inc.,
      8 F.3d 1222 (7th Cir. 1993) ..................................................................24

Honeywell Int'l, Inv. v. Audiovox Communications Corp.,
      C.A. No. 04-1337-KAJ (Consol.) (D. Del. Oct. 7, 2005).........................2, 24

REDACTED VERSION – PUBLICLY FILED

Jeffrey Chain, L.P. v. Tropodyne Corp.,
    2000 U.S. App. LEXIS 33926 (6th Cir. 2000) ...........................................................27

Johnson & Johnson-Merck Consumer Pharms. Co.,
    v. Rhone-Poulenc Rorer Pharms. Co
    19 F.3d 125 (3rd Cir. 1994) ......................................................................................26

Krell v. Prudential Ins. Co. of Am.
    (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)
    148 F.3d 283 (3d Cir. 1998)
    Cert. denied, 525 U.S. 1114 (1999) .........................................................................15

Licata & Co. v. Goldberg,
    812 F. Supp. 403 (S.D.N.Y. 1993) ...........................................................................24

Lindquist v. Buckingham Twp
    106 Fed. Appx. 768 (3d Cir. 2004).............................................................................30

Max Daetwyler Corp. v. Input Graphics, Inc.,
    608 F. Supp. 1549 (E.D. Pa. 1985) ...........................................................................32

McNeil-P.P.C. v. Bristol-Myers Squibb Co.,
    938 F.3d 1544 (2d Cir. 1991).....................................................................................25

Nakajima All Co. Ltd. v. SL Ventures, Corp.,
    2001 U.S. Dist. LEXIS 7535 (N.D. Ill. May 31, 2001) ............................................31

Otis Clapp & Son v. Filmore Vitamin Co.,
    754 F.2d 738 (7th Cir. 1985) .....................................................................................27

Plough, Inc. v. Johnson & Johnson Baby Products Co.,
    532 F. Supp. 714 (D. Del. 1982).................................................................................24

S&W Enters. v. Southtrust Bank of Ala,
    315 F.3d 533 (5th Cir. 2003) .....................................................................................12

Samick Music Corp. v. Delaware Music Industries, Inc.,
    1992 U.S. Dist. LEXIS 2464 (D. Del. Feb. 12, 1992) ......................................12, 13, 14

Sanderson v. Brugman,
    2001 U.S. Dist. LEXIS 8309 (S.D. Ind. May 29, 2001) ............................................32

Trustmark Ins. Co. v. General & Cologne Life Re of America,
    2005 U.S. App. LEXIS 19698 (7th Cir. Sept. 13, 2005) ......................................20, 33

Unique Concepts, Inc. v. Manuel,
    930 F.2d 573 (7th Cir. 1991) .....................................................................................14

REDACTED VERSION – PUBLICLY FILED

Volunteer Firemen's Ins. Servs., Inc. v. McNeil & Co., Inc.,
    221 F.R.D. 388 (W.D.N.Y. 2004)................................................................32

W.L. Gore & Assocs. Inc. v. Totes Inc.,
    788 F. Supp. 800 (D. Del. 1992)...............................................................24

Xoom, Inc. v. Imageline, Inc.,
    323 F. 3d 279 (4th Cir. 2003) ...................................................................27

Rules

Fed. R. Civ. P. 9(b) ....................................................................3, 5, 31, 32

Fed. R. Civ. P. 13(a) ...............................................................................29

Fed. R. Civ. P. 13(b) .................................................................................5

Fed. R. Civ. P. 15(a) ....................................................................12, 30, 32

Fed. R. Civ. P. 16(b) ........................................................................ passim

Other Authorities

Jean Wegman Burns,
    Confused Jurisprudence: False Advertising Under the Lanham Act,
    79 B.U.L. Rev. 807, 839 (1999) ...............................................................14

McCarthy on Trademarks and Unfair Competition
    §§ 27:96, 27:102 (4th ed. 2005)...............................................................23

REDACTED VERSION – PUBLICLY FILED

## NATURE AND STAGE OF THE PROCEEDING

This case involves three intertwined claims asserted by plaintiff Cryovac, Inc. ("Cryovac") against defendant Pechiney Plastic Packaging, Inc. ("Pechiney") – patent infringement, tortious interference with contractual relations based on selling and offering to sell the infringing product, and tortious interference with prospective contractual relations again based on selling and offering to sell the infringing product. Cryovac alleges that Pechiney infringes U.S. Patent No. 4,755,419 (the "'419 patent") by making, selling, and offering to sell a product called ClearShield. Cryovac also alleges that Pechiney wrongfully used its infringing ClearShield product to take away Cryovac's contract with National Beef Packing, LLC. Pechiney's patent infringement and the terms of Cryovac's contract with National Beef are central components of all three Cryovac causes of action.

In late 2004, the parties proposed, and the Court agreed to, a fact and expert discovery cut-off of August 19, 2005. (D.I. 21 & 22, ¶3(c)). The parties began to exchange documents in the latter part of April 2005, and all of the documents referred to in Pechiney's motion were produced in May. The parties finalized an agreed-upon schedule for fact and expert depositions in early July, and depositions began at that time. (D.I. 108, ¶3).[1]

At and before the July status conference the parties assured the Court that all discovery would be completed before the discovery cut-off. Id. On the second to last day of discovery, the parties filed a stipulation identifying all discovery that required completion after the discovery cut-off. (D.I. 154). Pechiney gave no indication in the Joint Status Report or the August 18 discovery stipulation that it was contemplating bringing new claims that would require additional discovery.

---

[1]    In the recent discovery dispute, Pechiney incorrectly suggested that Cryovac delayed depositions and that this excused Pechiney's late discovery. To the contrary, the parties proceeded with depositions by mutual agreement due to the way the case unfolded. Pechiney should not be permitted to claim prejudice or any unfairness about discovery decisions that were driven equally by the parties.

REDACTED VERSION – PUBLICLY FILED

Claim construction and case dispositive motion briefing will finish on December 2, 2005. (D.I. 22, ¶¶10, 12). Oral argument on claim construction and case dispositive motions is set for December 16, 2005. (Id., ¶¶ 10, 13).

Pechiney filed its motion to amend the pleadings and to reopen discovery on September 20, 2005. (D.I. 172). The motion seeks to add two fundamentally different sets of claims to this case – (i) permissive counterclaims relating to alleged trade disparagement by Cryovac, and (ii) an affirmative defense and counterclaim based on alleged inequitable conduct. Pechiney justifies its late motion by citing depositions taken near the close of discovery. Pechiney's motion and proposed counterclaims make clear, however, that Pechiney used the liberal deposition procedures of the Federal Rules of Civil Procedure to develop permissive counterclaims unrelated to the main action, rather than to develop evidence to defend Cryovac's claims. Compare Honeywell Int'l, Inc. v. Audiovox Commc'n Corp, C.A. No. 04-1337-KAJ (Consol.), slip op. at 4, n.2 (D. Del. Oct. 7, 2005) (Order) (party cannot use discovery process to develop facts necessary to form basis of patent infringement claims against product types not identified in the original complaint).[2] Even so, the facts Pechiney utilizes to plead its new claims come exclusively from documents that were produced to or in Pechiney's possession many months earlier.

In short, Pechiney's citations to depositions taken in the patent infringement and tortious interference case are mere pretext to support its late motion to amend the pleadings and to reopen discovery, Pechiney's motion appears to be nothing more than a tactic to delay trial, increase discovery costs, and exert settlement pressure. Because of Pechiney's dilatory pursuit of its claims and failure to demonstrate good cause to reopen the pleadings and discovery at this late phase of the case, Pechiney's motion should be denied.

---

[2]    Unreported decisions are attached in alphabetical order to Cryovac's appendix.

REDACTED VERSION – PUBLICLY FILED

## SUMMARY OF ARGUMENT

1.    Because Pechiney's Lanham Act and state law counterclaims turn on facts unrelated to the existing patent infringement and tortious interference actions, the counterclaims are permissive. Denial of the motion to amend therefore will not prejudice Pechiney, as the motion is not "important" in the manner required under Federal Rule of Civil Procedure 16(b) to justify amending the pleadings and reopening discovery.

2.    Pechiney's state law counterclaims are designed to obscure the fact that Pechiney had all facts necessary to plead its Lanham Act claim – Pechiney's only unfair competition claim within the Court's original subject matter jurisdiction – many months ago.

3.    Pechiney was aware of all facts necessary to plead its state law counterclaims long ago. The depositions cited in Pechiney's motion are inadequate to form the good cause necessary to justify amending the pleadings and reopening discovery.

4.    Cryovac was not on notice of Pechiney's permissive counterclaims and therefore did not take discovery relating to the defense of these claims. While Pechiney states that it does not need additional discovery to support these claims, Cryovac will require extensive discovery to support its defenses.

5.    Even though Pechiney's proposed amended pleading follows the extensive discovery period in this action, the pleading is still markedly deficient, not supported by particular facts, and grounded to a large extent "on information and belief." Because Rule 9(b) applies to Pechiney's sparsely pleaded Lanham Act and state law counterclaims, these claims are futile.

6.    Pechiney has not demonstrated good cause to amend the Scheduling Order under Rule 16(b) to add an inequitable conduct affirmative defense and counterclaim. This amendment is both untimely and unfairly prejudicial to Cryovac. The amendment is untimely because Pechiney

REDACTED VERSION – PUBLICLY FILED

had in its possession the facts on which it bases its new defense many months ago.  The amendment is unfairly prejudicial to Cryovac because Pechiney's delay in asserting this defense has deprived Cryovac of the opportunity to present expert testimony to refute this new defense.

REDACTED VERSION – PUBLICLY FILED

## STATEMENT OF FACTS

A.    <u>Pechiney's Proposed Amended Pleading.</u>

Pechiney's proposed amended pleading contains two entirely separate categories of new claims:

- •    First, permissive Lanham Act, Illinois Deceptive Trade Practices Act, common law injurious falsehood, and common law unfair competition counterclaims based on alleged trade disparagement; and

- •    Second, an affirmative defense and declaratory judgment action of unenforceability of the '419 patent based on alleged inequitable conduct.

We address each category in turn.

B.    <u>Pechiney's Federal and State Law Unfair Competition</u>
<u>Counterclaims Do Not Belong in This Action.</u>

Cryovac's three claims are closely intertwined. Each seeks lost profits resulting from Pechiney's wrongful sales of the infringing ClearShield product to National Beef Packing, LLC. In contrast, Pechiney's Lanham Act and related state law claims – based on Pechiney's allegation that Cryovac made statements that have harmed Pechiney in the marketplace – are entirely separate from Cryovac's patent infringement and tortious interference claims.[3] The claims which Pechiney seeks to add are, therefore, permissive counterclaims. <u>See</u> Fed. R. Civ. P. 13(b).

C.    <u>Pechiney Has Not Adequately Alleged Key Elements of its Permissive</u>
<u>Counterclaims, and Cannot Provide Evidentiary Support for Those Claims.</u>

Despite devoting substantial deposition time to developing its federal and state law deceptive trade practice claims, Pechiney's new claims would not survive motions to dismiss or summary judgment under the record as currently developed. For example, Pechiney has not pled these claims with the specificity to survive a motion to dismiss under Rule 9(b). <u>See</u> <u>infra</u> text at 31-32.

---

[3]    Pechiney's patent infringement constitutes the wrongful conduct of Cryovac's tortious interference claims.

REDACTED VERSION – PUBLICLY FILED

Moreover, Pechiney cannot point to evidentiary support for the key elements of its claims. Pechiney

itself acknowledges this fact: while Pechiney states that it will not require additional discovery on

the claims that it is seeking to add (D.I. 172 ¶ 17), it nonetheless pleads certain key elements of those

claims "on information and belief."[4]  Pechiney therefore cannot muster evidentiary support for its

new claims from the (now closed) factual record.  A few examples include:

> 1.   **Pechiney's Failure to Identify Any**
>       **Customers to Whom the Allegedly False**
>       **Statements Were Made.**

To support its claims Pechiney is required to prove that the allegedly false statements were

published outside of Cryovac.  See infra text at 23-24.  Pechiney does not identify any person outside

of Cryovac to whom the statements were published, and it apparently has not heard these allegedly

false statements from its customers or identified any concrete examples of publication through

discovery in this case.



---

[4]    See, e.g., Proposed Counterclaim ¶ 29 (alleging on information and belief that "Cryovac has
       made false and misleading statements regarding ClearShield to Pechiney's customers and
       potential customers for the purpose of shutting down Pechiney's production and sale of the
       ClearShield product"); ¶ 32 (alleging on information and belief that Cryovac "knew or
       should have known" that certain statements in internal Cryovac sales presentation were
       false); ¶¶ 35-36 (alleging on information and belief that Cryovac sales representatives made
       false statements relating to Pechiney to Pechiney customers); ¶ 60 (alleging on information
       and belief that customers were deceived); ¶ 73 (alleging on information and belief that
       "Cryovac has made false statements to third parties – namely customers and potential
       customers of Pechiney").

REDACTED VERSION – PUBLICLY FILED



Deposition of Terry Wilkerson (National Beef Packing, LLC Executive Vice President of Strategic

Business and primary interface for National Beef in its dealings with Cryovac) at 105:8-25 (App.

Exh. I).

> 2.  **Pechiney Does Not Point to Any Actionable Statements of Fact, As Opposed to Permissible Statements of Opinion, and Cannot Show that the Alleged Statements Were Literally False.**

Pechiney also has failed to point to any actionable statements of <u>fact</u> to support its federal

and state law trade disparagement claims.  Pechiney's claims are based on internal Cryovac sales

presentations, where Cryovac's employee[s] allegedly stated that Pechiney's product and services

had certain shortcomings.  This was, at most, a non-actionable (and unpublished) statement of

opinion (not fact) that is legally insufficient to support Pechiney's Lanham Act and state law claims.

<u>See</u> <u>infra</u> text at 24-25.  Nor has Pechiney pointed to any evidence, as it must, that such statements as

a matter of variable fact were false or left a false impression about the product in the minds of

consumers.  <u>See</u> <u>infra</u> text at 25-26.  Typically, plaintiffs meet this burden of proof through the use of

tests, data, studies, or consumer surveys.  Here, no such tests, studies or surveys have been

conducted (and could not be without adding substantial delay to the schedule).  Pechiney therefore

could not prevail on its permissive counterclaims under the record as it now stands.

REDACTED VERSION – PUBLICLY FILED

3.    **Pechiney Cannot Point to Any Evidentiary Basis For its Claim that the Alleged Actionable Statements Caused It to Suffer any Damages.**

To recover the money damages alleged in its Proposed Counterclaims, Pechiney must prove that it suffered actual damages as a result of Cryovac's alleged disparaging statements. See infra text at 26-27. Despite discovery and access to its own customers, Pechiney has not pointed to any evidence that it has ever lost a single sale as a result of the alleged statements. Without this information, Pechiney cannot show any causal relationship between the alleged statements and any damages it claims.

D.    **Pechiney Was Aware of All Facts Necessary to Support Its Permissive Counterclaims by the End of May 2005.**

Even where Pechiney does cite record evidence to support its permissive counterclaims, that evidence was known to Pechiney well before it made its motion to amend the complaint. ███

████████████████████████████████████████████████████

███████████████████████████████████████████████ were

produced on May 18, 2005. If the statements are literally false or misleading as Pechiney alleges, then Pechiney knew or should have known of this falsity immediately – █████████████

████████████████

E.    **Pechiney Delayed Filing Its Inequitable Conduct Affirmative Defense and Counterclaim.**

Pechiney sought to add a previously unpled inequitable conduct defense on September 20, 2005, four weeks after the close of discovery. This addition is untimely. Pechiney had in its possession all of the facts on which it bases its new defense many months ago.

Pechiney's contention in its proposed amendment is that Cryovac counsel Mark Quatt committed inequitable conduct by failing to cite a prior art Dallmann patent to the U.S. Patent and

REDACTED VERSION – PUBLICLY FILED

Trademark Office (PTO) during prosecution of the Shah '419 patent-in-suit.  The sole basis for this contention is that Mr. Quatt cited Dallmann during prosecution of another Cryovac patent, the '562 patent to Fant, but did not cite it in the '419 patent prosecution.

Pechiney was aware of Dallmann by March 4, 2005 because it relied on Dallmann as an invalidating reference in its response to Cryovac Interrogatory 7 on that date. (App. Exh. A at 8-9, 18-23)  Moreover, Pechiney specifically noted in its interrogatory answer that Dallmann was not cited in the prosecution history of the '419 patent. (App. Exh. A at 18)  Yet no inequitable conduct charge was made at that time.

Pechiney further relied on Dallmann and the '562 patent to Fant in the expert report of its technical expert, Dr. Mount, served May 19, 2005. (App. Exh. B at pp. 2, 21-23, 35-38)  However,

Pechiney took Mr. Fant's deposition on July 19, 2005 ███████████████  ██████  See e.g., Deposition of Ennis Fant (App. Exh. C), Tr. 39:19 to 40:8.  Fant's '562 patent cited Dallmann as a reference on its face. '562 patent (App. Exh. D) at [56].  The Dallmann patent, the Fant '562 patent and the '562 patent's prosecution history were all publicly available documents, which were available to Pechiney and must have been reviewed in preparation for the Fant deposition.  Yet no inequitable conduct charge was made then.

Pechiney attempts to justify its delay by focusing on the deposition of Cryovac's attorney, Mr. Quatt, who was not deposed until August 12, 2005.  But nothing at that deposition adds anything to the record set forth above.  Rather, ████████████████████████

REDACTED VERSION – PUBLICLY FILED



**F.     Pechiney's Dallmann Reference Is Immaterial.**

In his expert report, Pechiney's expert witness Dr. Mount provided expert opinions regarding Dallmann to support his invalidity opinion.  See, e.g., App. Exh. B (Expert Report of Eldridge M. Mount III dated May 18, 2005) at 27-29.  On cross-examination, however, Dr. Mount admitted that ▮▮▮▮▮▮▮▮▮▮▮▮ That is, Dr. Mount ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Deposition of Eldridge M. Mount III ("Mount Dep."), Tr. 110:5-9 (App. Exh. F); '419 patent at col. 10, lines 3-4, col. 4, lines 32-37 (App. Exh. G).  Instead, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Mount Dep., Tr. 120:14-22, 121:18-122:15 (App. Exh. F); '419 patent col. 5, lines 6-9; col. 9, line 67 to col. 10, line 9 (App. Exh. G).  Dr. Mount ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

REDACTED VERSION – PUBLICLY FILED

███████████████████████ Mount Dep., Tr.112:15-20, 113:17-22, 122:8-15

(App. Exh. F); Dallmann patent, col. 1, lines 48-52 (App. Exh. H). ████████████

████████████████████████████████████████

REDACTED VERSION – PUBLICLY FILED

## ARGUMENT

To prevail on its motion to amend, Pechiney must overcome two hurdles: <u>first</u>, pursuant to Rule 16(b), Pechiney must demonstrate good cause to permit an untimely motion to amend and to reopen discovery, and, <u>second</u>, Pechiney must meet the Rule 15(a) standard for amendment of pleadings. <u>S&W Enters. v. Southtrust Bank of Ala.</u>, 315 F.3d 533, 536 (5th Cir. 2003) ("Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.") (affirming denial of motion to amend because the proposed new claim was based on facts known to plaintiff since the original complaint was filed).

As set forth below, Pechiney's motion does not satisfy the requirements of either rule. <u>See, e.g.</u>, <u>Samick Music Corp. v. Delaware Music Indus., Inc.</u>, 1992 U.S. Dist. LEXIS 2464, at *18-*19 (D. Del. Feb. 12, 1992) (denying motion to amend, brought after close of discovery, to add misrepresentation counterclaims to existing breach of contract action because of delay and because proposed counterclaims were permissive).

## I.  PECHINEY HAS NOT DEMONSTRATED GOOD CAUSE TO AMEND THE SCHEDULING ORDER UNDER RULE 16(B) WITH RESPECT TO ITS PERMISSIVE COUNTERCLAIMS.

To establish good cause under Rule 16(b), Pechiney must satisfactorily address the following factors: (i) why the amendment is important; (ii) why Pechiney failed to timely move for leave to amend; (iii) why Cryovac will not be prejudiced by the amendment; and (iv) whether any such prejudice can be cured. <u>S&W Enters.</u>, 315 F.3d at 536 (affirming denial of motion to amend where three of the four factors weighed against the moving party and the opposing party would be required to conduct additional discovery). A movant cannot meet this strict standard when it was in

REDACTED VERSION – PUBLICLY FILED

possession of the relevant facts for several months before making its motion. See, e.g., Dimensional Comms.. Inc v. Oz Optics. Ltd., 2005 U.S. App. LEXIS 17111, at \*3, \*6 (3d Cir. Aug. 12, 2005) (affirming denial of motion to amend under Rule 16(b) where movant was in possession of facts underlying proposed amendment well before the deadline to amend).

> A.   Pechiney's Lanham Act and State Law Counter-
>       claims Are Not "Important" Under Rule 16(b)
>       Because They Are Permissive Counterclaims.

Pechiney cannot demonstrate that the addition of its Lanham Act and state law counterclaims is important to the action or to Pechiney, under the standards of Rule 16(b), because the counterclaims are permissive. See, e.g., Samick Music, 1992 U.S. Dist. LEXIS 2464, at \*18-\*19 (denying motion to amend, brought after close of discovery, to add misrepresentation counterclaims to existing breach of contract action because of delay and because proposed counterclaims were permissive).

Pechiney's Lanham Act and state law counterclaims are permissive because ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████   In contrast, Cryovac's patent infringement and tortious interference claims share a different nucleus of operative facts, including Pechiney's patent infringement, both standing alone and as the wrongful conduct element of the tortious interference claims; the Cryovac/National Beef contracts, the terms of which are relevant to damages in the patent infringement and tortious interference claims; and Cryovac's lost profits as a result of Pechiney's wrongful conduct.

Because Pechiney's counterclaims and Cryovac's causes of action do not share a common nucleus of operative fact, Pechiney's Lanham Act and state law counterclaims are permissive.

REDACTED VERSION – PUBLICLY FILED

Unique Concepts, Inc. v. Manuel, 930 F.2d 573, 574, 575 (7th Cir. 1991) (in patent infringement case, holding state law counterclaims predicated on alleged false statements about defendants' products were permissive counterclaims).

Pechiney will not lose its counterclaims if they are not litigated in this case because the counterclaims are permissive. As a result, Pechiney's claims are not sufficiently important under Rule 16(b) to warrant amending the Scheduling Order and reopening discovery. Samick Music, 1992 U.S. Dist. LEXIS 2464, at *18-*19.

> **B.     Good Cause Does Not Exist to Amend the Scheduling Order and to Reopen Discovery Because Pechiney's Explanation for Its Delay Is Purely Pretextual.**

Leaving aside whether it is proper to take depositions for the purpose of uncovering new, permissive counterclaims, Pechiney's Lanham Act and state law counterclaims do not depend on any deposition taken in this case. Pechiney cannot, as a result, show that it timely moved to amend its pleadings and to reopen discovery.

> **1.     Pechiney Did Not Need or Use Any of the Depositions to Plead the One Claim Necessary to Establish Subject Matter Jurisdiction.**

Pechiney's motion argues only that depositions of Cryovac were necessary to establish knowledge of falsity and motive. (D.I. 172, ¶¶ 9-12). Evidence of knowledge and motive, however, is not required to plead a Lanham Act claim. See, e.g., Jean Wegman Burns, Confused Jurisprudence: False Advertising Under the Lanham Act, 79 B.U.L. Rev. 807, 839 (1999) (stating that trial courts "both before and after the 1988 revisions, have read section 43(a) literally with respect to scienter: that is, a plaintiff need show no intent to deceive, knowledge of falsity, or even

negligence on the part of the defendant"). The depositions therefore do not support Pechiney's assertion of a Lanham Act claim four weeks after the close of fact discovery.[5]

This has two ramifications. First, obviously, Pechiney lacks good cause for the late assertion of its Lanham Act claim and for its request to reopen discovery related to this claim. Second, because Pechiney's state law counterclaims are permissive and lack a common nucleus of operative fact with Cryovac's patent infringement and tortious interference claims, this Court lacks subject matter jurisdiction to hear Pechiney's state law counterclaims without Pechiney's Lanham Act claim in the case. Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 303 (3d Cir. 1998) stating that § 1367 "does not permit courts to take jurisdiction over tangentially related claims. The issue is whether there is a 'common nucleus of operative fact' and whether the claims are part of the 'same case or controversy under Article III.'"), cert. denied, 525 U.S. 1114 (1999). Because Pechiney's Lanham Act claim must be in the case for the Court to have subject matter jurisdiction over Pechiney's state law counterclaims, Pechiney's delay in asserting its Lanham Act claim is inexplicable.

> **2.    Pechiney Can Only Make the Depositions Relevant to Its Common Law Injurious Falsehood and Unfair Competition Claims by Misquoting Them.**

Even Pechiney's assertion that the depositions were necessary to allege the two common law trade disparagement claims rings hollow. For example, in paragraph 39 of its Proposed Counterclaim Pechiney alleges that ███████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[5]    Nor is evidence of knowledge and motive required to plead an Illinois Deceptive Trade Practices cause of action. Compare Proposed Counterclaim ¶¶ 65-68 (Illinois statutory count) (omitting allegation of knowledge or motion) with Proposed Counterclaim ¶ 78 ("On information and belief, Cryovac had knowledge . . .") (injurious falsehood count) & ¶ 81 (same) (common law unfair competition count).

REDACTED VERSION – PUBLICLY FILED



████ Proposed Counterclaim Exh. K at 197:14-198:13. ████

CR006-009315 ████████████████████████.[7] Where

████████████████████████

████ See, e.g., CR006-009328 (App. Exh. J). ████

████████████ See, e.g., CR004-002138; CR004-002140; CR006-009292-94; CR006-009268; CR006-009270 (App. Exh. K).

Pechiney likewise attempts to show that knowledge of the false statements was disclosed in deposition testimony by misquoting a memorandum and testimony about that memorandum in paragraphs 49 and 50 of its Proposed Counterclaims.[8] The memorandum and testimony, however, actually contradict Pechiney's allegation and support the accuracy of the allegedly false statements. The full memorandum, appended to the Proposed Counterclaims as Exhibit M, states:



---

[6]  Pechiney does not contract with Wetoska to provide service, Wetoska sells products for many manufacturers, and Wetoska does not exclusively represent Pechiney.

[7]  Pechiney cites this deposition exhibit by production number but did not attach it to its proposed counterclaims.

[8]  Pechiney attempts to give its counterclaims more heft by quoting the same testimony twice in these two paragraphs. Paragraph 49 quotes from the memorandum reproduced in the text; paragraph 50 contains Mr. Mize's description of the memorandum.

REDACTED VERSION – PUBLICLY FILED



(italics added) (other emphasis in original).  Pechiney cannot carry its burden of showing that either

Pechiney then attempts to rely on Pechiney's own unsupported opinions

Proposed Counterclaim ¶ 41

(emphasis added)

Even though Pechiney has the burden of proof to

show that Cryovac knew a statement was false, Pechiney attempts to use its own hearsay statement

to a customer as the basis for allegation that Cryovac knew or should have known that the

That is an inference that the

Court should not draw, but if the inference is drawn it may be done so from the document alone – the

REDACTED VERSION – PUBLICLY FILED

testimony is superfluous. This testimony, therefore, also was not needed to plead Pechiney's claims and cannot support the timeliness of Pechiney's motion.

Perhaps most egregiously, Pechiney alleges knowledge based on testimony it secured only by questioning Mr. Mize about an e-mail that he did not author and from which Pechiney removed the attachments. The testimony in question is the first quotation of paragraph 50 of the Proposed Counterclaim. Pechiney presented Mr. Mize with a stapled collection of identical, but non-consecutively numbered e-mails. Proposed Counterclaim Exh. K at 181:1-182; App. Exh. L. The e-mails discussed performance testing of the ClearShield product and clearly referenced an attachment that was not included in the exhibit. Counsel for Pechiney was warned in the deposition that the exhibit was incomplete, and over objections Pechiney persisted in asking Mr. Mize to explain what the author of the e-mail was intending to convey, see, e.g., Proposed Counterclaim Exh. K at 185:3-13. ███████████████████████████████████████████████

███████████████████████████████████████

After the deposition, we retrieved the e-mail from our database and found that, each time it had been produced, the e-mail had been produced with the attachment as a single document. See, e.g., App. Exh. M.  The witness then reviewed the attachment – which contained the test data discussed in the e-mail, id. – and concluded that his answer was incomplete and incorrect as a result of Pechiney's examination techniques. As set forth in the errata sheet, the answer to the question quoted in paragraph 50 was not ████████████████████████ but rather as follows:



REDACTED VERSION – PUBLICLY FILED

App. Exh. N (Mize errata sheet) (emphasis added).[9]   Once again, Pechiney's citation to the deposition record does not support either its claims or its late filed motion.

Likewise, Pechiney's citation to the deposition of Cryovac's President, Stuart Prosser,[10] in paragraph 12 of its motion not only fails to support its motion, but also demonstrates the pretextual nature of all of Pechiney's deposition citations.  Pechiney does not cite Mr. Prosser's deposition testimony anywhere in its Proposed Counterclaims.  And while the counterclaims do reference a document authored by Mr. Prosser, Pechiney had this document for months.  In any event, Mr. Prosser's deposition testimony contradicts the meaning Pechiney gives to the document in its counterclaims.  See, e.g., Proposed Counterclaim Exh. Q at 42:13-23 █████████████

████████████████████████████████████████████████████████████

████████████

\*       \*       \*

In sum, the depositions taken by Pechiney – to the extent it was proper for Pechiney to use them at all to develop claims and defenses unrelated to the existing case – were not required to plead knowledge or motive.

### 3.    Pechiney Could Have Pleaded the Elements in Its Counter-claims after Reviewing Documents Produced in May.

The only other reason Pechiney could contend the depositions were necessary █████████

████████████████████████████ statements that Pechiney claims are actionable.

---

[9]    After receiving the errata sheet, Pechiney has had the temerity to complain that the witness corrected a wrong answer to an improper and objected to line of questions.  The parties will meet and confer about the issue and hopefully will reach a resolution in accord with the Federal Rules of Civil Procedure without the intervention of the Court.

[10]   This deposition occurred on September 12 because Pechiney first noticed the deposition on August 9 and because Cryovac initially objected to the deposition as seeking irrelevant evidence.  To avoid a dispute Cryovac ultimately agreed to a limited 2 hour deposition.

REDACTED VERSION – PUBLICLY FILED

Pechiney does not make this contention in its motion, but because Cryovac will not have an opportunity to respond if Pechiney raises this contention for the first time on reply, out of completeness we address this point now.

The only false or misleading statements identified in Pechiney's Proposed Counterclaims are

████████████████████████████████████████████████████

and thereafter file a motion to amend to join at least Pechiney's Lanham Act and Illinois Deceptive Trade Practices Act claims. See infra text at 25-26.

The only reason to question witnesses ██████████████████████████

███████████████████████████ Using depositions for such confirmation, however, would not justify delay in moving to amend under Rule 16(b). See, e.g., Trustmark Ins. Co. v. Gen. Cologne Life Re of Am., 2005 U.S. App. LEXIS 19698, at *28-*29 (7th Cir. Sept. 13, 2005) (affirming decision that Rule 16(b) barred motion to amend filed out of time where movant "concede[d] that it harbored suspicions" about claim "prior to these depositions" and the depositions only served to "confirm[] its suspicions of this misrepresentation").

In any event, Pechiney did not use depositions to confirm that ██████████████████

██████████████████████████████, nothing in the depositions ████████████

██████████████████████████████████████████████████

██████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

REDACTED VERSION – PUBLICLY FILED



Proposed Counterclaims Exh. H at 178:20; 178:5-179:2



Id. Exh. K at 172:5-11.



Id. Exh. H at 180:11-22; 1-181:10.



Id. Exh. K at 177:10-13 (emphasis added).

REDACTED VERSION – PUBLICLY FILED

Finally, Pechiney's motion suggests that the deposition testimony of Jeffrey Gardner was

███████████████████████████████████████████████████████████████████████

No cited (or uncited) part of any witnesses' testimony, however, supports that assertion (the topic is

not even mentioned on the cited pages), and Mr. Gardner's testimony is cited nowhere in Pechiney's

counterclaims in connection with this point.

*     *     *

Perhaps the most compelling demonstration that Pechiney's motion is untimely is the nature

of the claims that Pechiney seeks to assert – ████████████████████████████████████████

███████████████████████ Pechiney, as described in the facts, see supra text at 6-7, has no

information whatsoever from any customer that the ████████████████████████████████████

██████████████████████ If Pechiney has, in fact, lost sales due to the allegedly false statements,

Pechiney should by now have located and identified the customer(s) and the lost sale(s).

### C.     Pechiney Cannot Refute the Clear Prejudice That Cryovac Will Suffer if the Amendment is Permitted Because the Discovery Needed by Cryovac, If The Motion Is Granted, Is Broad.

Pechiney's motion suggests that Pechiney does not plan to take further discovery to support

its permissive counterclaims.  If our reading of Pechiney's papers is correct, several discrete

elements of Pechiney's claims are amenable to immediate disposition on summary judgment due to

lack of proof.  Perhaps the most efficient course for the parties and the Court in the event the Court

grants the motion is to permit Cryovac to immediately test Pechiney's claims through case

dispositive motions.

REDACTED VERSION – PUBLICLY FILED

If the motion is granted, however, and Pechiney wants discovery or its claims survive an immediate summary judgment motion, then Cryovac will suffer significant prejudice – both economic and substantive. The most immediate prejudice is the expense associated with deposing Pechiney witnesses for a second time. More significant, however, is the discovery required to marshall the evidence needed to prove Cryovac's expected defenses. That discovery comes in at least the following areas:

> 1.   **Whether the Allegedly False Statements Attributed to Cryovac in the Proposed Counterclaims Were, in fact, <u>Made to Customers or Potential Customers of Pechiney.</u>**

To recover on any of its federal or state trade disparagement claims, Pechiney must prove that statements were actually published to customers. See MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 27:96, 27:102 (4th ed. 2005) (stating that publication is an element of both the common-law tort and Lanham Act § 43(a)); <u>American Needle & Novelty v. Drew Pearson Mktg.</u>, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993) (holding that manufacturer's "isolated individualized written statement" in letter sent to third party insufficient to support element of "public dissemination" under Section 43(a)); <u>Bay City-Abrahams Bros., Inc. v. Estee Lauder, Inc.</u>, 375 F. Supp. 1206, 1213 (S.D.N.Y. 1974) (dismissing claim of common-law injurious falsehood that rested solely on "existence of certain of defendant's intracorporate communications and certain other conflicting communications between defendant and plaintiff").

Despite the core nature of this claim element, the discovery taken in the case, and the deposition of one customer, Pechiney's Proposed Counterclaims do not identify any actual publication of the allegedly false statements. See Proposed Counterclaim ¶¶ 29, 66 72, 80 (alleging publication only on information and belief). At present, the factual record (based entirely on Pechiney's Proposed Counterclaims and the documents attached thereto) is that ■■■■■■■■■■

REDACTED VERSION – PUBLICLY FILED

███████████████████████████████████ See supra text at 5-7. As a result,

discovery from Pechiney and perhaps third parties will be required to identify whether Cryovac

published any of the allegedly false or misleading statements to Pechiney's customers or prospective

customers.[11]

### 2.     Whether Any of the Statements Allegedly Made by Cryovac Are Actionable.

Competitors are in large part permitted to state comparative opinions about competitive

products and services. See, e.g., W.L. Gore & Assocs., Inc. v. Totes, Inc., 788 F. Supp. 800, 809 (D.

Del. 1992) (finding that allegedly false statement about "breathability" and "comfort" were neither

false nor misleading because breathability was "a relative term, a word meaning different things to

different people" and because "breathability and comfort depend on individual perception and such a

subject claim cannot be literally true or false"); Plough, Inc. v. Johnson & Johnson Baby Prods. Co.,

532 F. Supp. 714, 717 (D. Del. 1982) (rejecting claim that phrase "number one selling sunscreen" is

literally false when advertised to "well informed and sophisticated audience of merchants," rather

than consumers); see also Licata & Co. v. Goldberg, 812 F. Supp. 403, 408 (S.D.N.Y. 1993) (finding

oral conversations claiming plaintiff could no longer "service" defendant's insurance needs not

likely to succeed on the merits because the description was non-actionable opinion "at the opposite

pole from clearly definable media advertising or printed material," and that allowing such a claim

would discourage "[r]obust debate between competitors on matters of opinion"); cf. Haynes v.

Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993) (dismissing defamation claim based on

author's personal account of plaintiff's life that was "substantially true" and stating that "if it is plain

---

[11]     Pechiney should not be permitted to embroil Cryovac in the litigation costs associated with a
false advertising action before identifying at least the customers to whom the allegedly false
statements were made and for which Pechiney suffered actual damages. Cf. Honeywell Int'l,

REDACTED VERSION – PUBLICLY FILED

that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable").

Because Pechiney's Proposed Counterclaims do not identify any statements actually made to any customers or prospective customers, at this point we can only focus on what Pechiney alleges on information and belief might have been communicated to Pechiney customers. Because these statements appear to be non-actionable comparative opinion, close attention to discovering what Cryovac actually said to customers, if anything, will be required.

### 3. If Actionable at All, Whether Any Alleged Statements Are, in Fact, Literally False.

Pechiney alleges that each of the allegedly actionable statements was literally false. Proof that the statements were literally false cannot be made simply by comparing, as alleged in Pechiney's complaint, ███████████████████████████████████████████ ███████████████████████████████ Pechiney must prove that the alleged statements are in fact false, usually through scientifically conducted tests or studies of its own. McNeil-P.P.C. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1548 (2d Cir. 1991).

Discovery in this area thus will entail discovery into, for example, the actual state of Pechiney's ████████████████████████████████████ Cryovac. Discovery likely also will entail exploring where there were statements (as opposed to non-actionable opinions) made about ██████████████████████ Similarly, while some documents on subjects such as █████████████████████████████████ ████████████████████████████████████ Cryovac has not asked for and

Inc. v. Audiovox Commc'n Corp, C.A. No. 04-1337-KAJ (Consol.), slip op. at 4, n.2 (D. Del. Oct. 7, 2005) (Order).

REDACTED VERSION – PUBLICLY FILED

Pechiney has not made a complete production of documents that will demonstrate whether the allegedly actionable statements cited in Pechiney's Proposed Counterclaims are, in fact, literally false.

### 4. If Any of the Statements Pechiney Accuses Are Not Literally False, Pechiney Must Prove that the Statements Were Misleadingly Deceptive Via a Customer Survey.

If the allegedly actionable statements are not literally false, Pechiney will likely need a customer survey to prove that customers were deceived by the alleged statements. Castrol. Inc. v. Pennzoil Co., 799 F. Supp. 424, 436 (D.N.J. 1992) ("If the claims of the advertisement are not literally false, plaintiff must demonstrate through a consumer survey that the advertising claim is in fact deceptive."), aff'd, 987 F.2d 939 (3d Cir. 1993); see generally Johnson & Johnson-Merck Consumer Pharms. Co., v. Rhone-Poulenc Rorer Pharms.. Co., 19 F.3d 125, 129-30 (3d Cir. 1994) (holding that the success of an implied falsity claim "usually turns on the persuasiveness of a consumer survey"). Indeed, without a valid survey the plaintiff cannot state a *prima facie* case because "[a] Lanham Act plaintiff cannot obtain relief by arguing how consumers *could* react; it must show how consumers *actually do* react." Church & Dwight Co. v. S.C. Johnson & Son, 873 F. Supp. 893, 906 (D.N.J. 1994) (internal quotation omitted). Cryovac should then be entitled to respond with its own survey.

### 5. Whether Customers Failed to Purchase from Pechiney as a Result of the Alleged Trade Disparagement.

Pechiney is seeking money damages as a result of the alleged trade disparagement. See, e.g., Proposed Counterclaim ¶63 ("On information and belief, Pechiney has been damaged and will continue to be damaged in terms of lost sales . . ."); Prayer for Relief ¶¶ F, H. As a result, discovery will be required to determine, among other things,

REDACTED VERSION – PUBLICLY FILED

statements actually influenced buying decisions.  See Xoom, Inc. v. Imageline, Inc., 323 F.3d 279, 282, 285 (4th Cir.), cert. denied, 540 U.S. 879 (2003) (affirming district court's grant of summary judgment on Lanham Act claim in favor of defendant clip-art vendor where plaintiff competitor, seeking money damages, could not demonstrate causal connection between defendant's statement that the images were "copyright cleared," even if false, and "loss of good will" and "diminution" in value of its artwork ); Otis Clapp & Son v. Filmore Vitamin Co., 754 F.2d 738, 746 (7th Cir. 1985) (affirming district court's determination that, because plaintiff pharmaceutical company's damages calculation failed to prove a "single lost sale, despite an extensive discovery effort," due to competitor's advertising, plaintiff failed to prove that defendant's actions caused the alleged loss in sales growth).

> 6.    **Whether Pechiney's Market Failures Are the Result of Pechiney's Own Business Failings.**

Cryovac may defend Pechiney's damage claims with evidence that Pechiney's alleged damages were the result of Pechiney's own business failings and not any allegedly actionable statements by Cryovac. Cf. Jeffrey Chain, L.P. v. Tropodyne Corp., 2000 U.S. App. LEXIS 33926, at *16, *18, *19 (6th Cir. 2000) (reversing and ordering that judgment as a matter of law be entered in favor of defendant industrial-chain manufacturer on trademark infringement claim where record revealed a "dramatic drop" in plaintiff's sales before defendant's allegedly infringing activity began and plaintiff failed to account for other, contemporaneous activity that may have caused lost sales in its request for damages).

Indeed, the record contains substantial evidence indicating ██████████████████
████████████████████████████████████████████████████████████
████████████████████████████ For example, internal Pechiney business planning analyses for 2005 attribute ████████████████████

REDACTED VERSION – PUBLICLY FILED



PPPI-E 054574 (App. Exh. O).

Moreover, at least one third party researcher concluded that Pechiney's business shortcomings were the result of Pechiney having "minimal service" (exactly the same explanation of the PowerPoint bullet points from the Cryovac witnesses), and attributed Pechiney's market share instead to a history of business failings:



REDACTED VERSION – PUBLICLY FILED

PPPI-E 057028 (App. Exh. P) (bold emphasis in original).  In light of the above, and Pechiney's

assertion in this case that damage to its market share was caused by Cryovac's alleged statements,

in-depth discovery into the real reasons for Pechiney's market position will be warranted.

*     *     *

As should be evident from the above discussion, Pechiney's proposed trade disparagement

counterclaims open an entirely new front in the litigation and could entail a substantial amount of

new discovery in this action if not disposed of for lack of evidence at the outset.

Should the counterclaims be permitted to proceed, moreover, Federal Rule of Civil Procedure

13(a) will likely also require Cryovac to bring its own false advertising claim against Pechiney.

Early in the discovery period in the patent and tortious interference case, Cryovac noticed that

Pechiney

To date, Cryovac has refrained from bringing these claims because the damages are likely low

compared to the expense of prosecution.  If trade disparagement claims are to be litigated between

the parties, however, Cryovac's own claims would become mandatory.

### D.    Pechiney Cannot Refute the Clear Prejudice to Cryovac from the Potential to Delay Trial or from Confusing the Jury.

This case is now scheduled for trial in June 2006.  This trial date has been set since the Order

was entered in December 2004.  Delaying the long-awaited resolution of Cryovac's claims would

prejudice Cryovac – Cryovac and its shareholders have an interest in resolving their claims sooner,

rather than later, in accordance with their long settled expectations.

REDACTED VERSION – PUBLICLY FILED

Separately, unless severed for trial, Pechiney's permissive counterclaims would prejudice Cryovac by creating a distinct possibility of jury confusion at trial. As set forth above, Pechiney's proposed claims are entirely unrelated to those already at issue in this litigation. Cryovac is entitled to a trial that focuses on the issues that have been properly raised in this case, in conformity with the timing requirements set forth in the Scheduling Order.

## II.    PECHINEY CANNOT MEET ITS BURDEN UNDER RULE 15(A) DUE TO PREJUDICE TO CRYOVAC, PECHINEY'S BAD FAITH, AND THE FUTILITY OF PECHINEY'S PROPOSED PLEADING.

In evaluating a motion to amend, the Court should focus on the proposed amendment's impact on the non-moving party. Under Rule 15(a), "prejudice to the non-moving party is the touchstone for the denial of an amendment." Cornell & Co. v. Occupational Safety & Health Review Comm'n., 573 F.2d 820, 823 (3d Cir. 1978) (affirming denial on grounds of undue delay and prejudice). The Court may also deny a motion to amend based on bad faith, futility, dilatory motive, or undue delay. Foman v. Davis, 371 U.S. 178, 182 (1962); Lindquist v. Buckingham Twp., 106 Fed. Appx. 768, 775 (3d Cir. 2004) (affirming denial because movant had access to documents on which it relied long before filing motion to amend) (quoting Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984)).

### A.    Prejudice to Cryovac and Pechiney's Bad Faith Bar the Amendment.

Pechiney's bad faith under rule 15(a) is demonstrated by the thinness of its allegations. See, e.g., supra text at 22-25. This bad faith, combined with the prejudice Cryovac will suffer if the amendment is allowed, see supra text at 29, requires denial of Pechiney's motion in its entirety under Rule 15(a).

REDACTED VERSION – PUBLICLY FILED

B.    **Pechiney's Permissive Counterclaims Are Futile Because They Will Not Withstand a Motion to Dismiss Under Rule 12(b)(6).**

Pechiney's Lanham Act and analogous state law counterclaims are not properly pleaded because the claims are subject to Federal Rule of Civil Procedure 9(b) and Pechiney fails to identify any details about publication of the allegedly false and misleading statements. Rule 9(b) particularity requires that the claimant: "(1) specify the statements that the [claimant] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999), cert. denied 528 U.S. 1188 (2000). Pechiney's pleading fails to satisfy these standards.

For example, in Nakajima All Co. Ltd. v. SL Ventures. Corp., 2001 U.S. Dist. LEXIS 7535, at *23 (N.D. Ill. May 31, 2001), the court dismissed alleged violations of common law unfair competition, the Illinois Consumer Fraud and Deceptive Practice Act, and the Uniform Deceptive Trade Practice Act for failure to plead with particularity.[12] Like Pechiney here, the plaintiff could only allege "on information and belief" that certain allegedly false or misleading statements had been made to "customers." Id. at *3. The court held that these allegations were subject to Rule 9(b) and dismissed them:

> [Plaintiff] alleges that defendants misrepresented their distributorship status with [plaintiff] to "customers." This accusation certainly threatens defendants' reputations among the "customers" (whomever they may be). Further, by making these allegations "on information and belief," [plaintiff] appears to be engaging in just the sort of fishing expedition Rule 9(b) was enacted to prevent. And, finally, [plaintiff's] vague reference to the individuals to whom defendants allegedly made these representations and the dates on which they were supposedly made – to "customers" and "since July 31, 2000" –

---

[12]    Though there was a fourth counterclaim at issue, alleging violations of the Lanham Act, the applicability of Rule 9(b) to this claim was not discussed by the court because the Rule was not asserted by the movant against this claim.

REDACTED VERSION – PUBLICLY FILED

> are insufficient to put defendants on notice of the claims against
> them.

Id. at *15-*16.

Similarly, in Collegenet. Inc. v. Xap Corp., 2004 U.S. Dist. LEXIS 21059 (D. Or. Oct. 12, 2004), the court applied Rule 9(b) to dismiss Lanham Act and related state law claims that are indistinguishable from the Lanham Act and state law claims asserted here. Id. at *8-*11, *19. Other courts have done the same. See, e.g., Volunteer Firemen's Ins. Servs.. Inc. v. McNeil & Co.. Inc., 221 F.R.D. 388, 393 (W.D.N.Y. 2004); Sanderson v. Brugman, 2001 U.S. Dist. LEXIS 8309, at *23 (S.D. Ind. May 29, 2001); B. Sanfield, Inc. v. J.C. Penney Co.. Inc., 1993 U.S. Dist. LEXIS 17703 (N.D. Ill. Dec. 13, 1993); Max Daetwyler Corp. v. Input Graphics. Inc., 608 F. Supp. 1549, 1556 (E.D. Pa. 1985).

Here, Pechiney's Lanham Act and state law counterclaims are indistinguishable from the claims dismissed in the above cases. Proposed Counterclaim ¶¶ 27-84. Cryovac accordingly should receive the protections of Rule 9(b) so that its reputation is not sullied in the marketplace by unfounded accusations and so that it will know which customers to speak with if Pechiney's claims are permitted to proceed. Cryovac additionally has many sales people in the field; without identification of particular customers it will be highly burdensome to interview its entire sales force to determine whether the allegedly false statements were in fact published and even what the allegedly false statements are.

In sum, under Rule 9(b) Pechiney's claims are futile, and the standards of Rule 15(a) accordingly cannot be satisfied.

REDACTED VERSION – PUBLICLY FILED

III.    **PECHINEY HAS NOT DEMONSTRATED GOOD CAUSE TO AMEND THE SCHEDULING ORDER UNDER RULE 16(B) TO ADD AN INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE AND COUNTERCLAIM.**

Pechiney cannot satisfy Rule 16(b)'s good cause requirement with respect to its inequitable conduct affirmative defense and counterclaims because it was in possession of the facts underlying its proposed inequitable conduct claim since at least March 2005. Fed. R. Civ. P. 16(b); see Dimensional Comms., 2005 U.S. App. LEXIS 17111, at *4. Although Pechiney asserts that it is relying on the August 12, 2005 testimony of Mr. Quatt in support of its claim, review of this testimony reveals that it does nothing to further Pechiney's allegation of inequitable conduct. Moreover, as discussed below, Pechiney had sufficient grounds in the written record to plead its defense and counterclaims long before Mr. Quatt's deposition and yet it delayed. Such delay was found to support denial of amendment in Trustmark Ins. Co. v. General & Cologne Life Re of America, 2005 U.S. App. LEXIS 19698 at *28 (7th Cir. Sept. 13, 2005) (affirming decision denying motion to amend for failure to show good cause under Rule 16(b) where party failed to bring claim to attention of the court based on the suspicions derived from the written record and waited instead to first "confirm" its suspicions in depositions).[13]

All of the information relied upon by Pechiney (the prosecution histories of the '419 and '562 patents and the Dallmann reference) was public information and, therefore, available to Pechiney without any discovery. See Proposed Answer, ¶¶ 20-26. Furthermore, it was in Pechiney's possession and considered before the March 15, 2005 pleading amendment deadline, as evidenced by Pechiney's March 4, 2005 interrogatory responses. Pechiney has not obtained any additional information during discovery in this case that supports its claim of inequitable conduct. Thus,

---

[13]    Moreover, in early June Cryovac offered to make Mr. Quatt available for deposition on July 21, 2005. (App. Exh. Q). Pechiney did not ask to have the deposition earlier, but rather asked to have the deposition at a later date in August.

REDACTED VERSION – PUBLICLY FILED

Pechiney possessed information to make its claim upon information and belief before the March 15, 2005 deadline for motions to amend the pleading, more than six months ago.  Good cause for modification of the scheduling order cannot be shown.  See Dimensional, 2005 U.S. App. LEXIS 17111, at *4.

### A.     Pechiney Unfairly Delayed Pleading Inequitable Conduct.

Pechiney's Motion is untimely because Pechiney unduly delayed filing the Motion until well after the deadline for filing amended pleadings and the close of discovery.  See id.  As explained above, Pechiney could have pleaded the defense of inequitable conduct by the March 15, 2005 deadline for amending the pleadings, as Pechiney possessed the '419 patent and its prosecution history, the Fant '562 patent and the Dallmann reference, which is enough information to make a claim upon information and belief at that time.  Pechiney deposed Mr. Fant in July 2005, three months prior to its proposed amendment and had all relevant facts and documents at that time.

Pechiney utilized its delay in adding the allegation of inequitable conduct in an attempt to surprise Mr. Quatt at his deposition on August 12, 2005.  Pechiney was able to question Mr. Quatt

Now, Pechiney is distorting

Proposed Seventh Affirm-ative Defense ¶¶(c)-(j).  When reviewed in context, it is apparent that Mr. Quatt's testimony actually negates an allegation of intent to deceive the PTO because

Quatt Dep., Tr. at 217:14-17 (App. Exh. E).  Pechiney's reliance on Mr. Quatt's testimony is merely an excuse for delaying the filing of its affirmative defense/counterclaim for many months.

REDACTED VERSION – PUBLICLY FILED

### B.   Pechiney's Late Motion to Add Inequitable Conduct is Prejudicial to Cryovac.

A finding of inequitable conduct requires clear and convincing evidence of: "(1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the applicant to disclose the art or information resulting from an intent to mislead the PTO." FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987). By waiting until after discovery closed to assert its inequitable conduct claim, Pechiney has deprived Cryovac of the opportunity to present expert testimony on the issue of materiality. As Pechiney's own expert conceded, there is a critical difference between Dallmann and the '419 patent-in-suit. Cryovac should have been given the opportunity to present its own expert's testimony that because of this critical difference Dallmann was not material to the prosecution of the '419 patent.

Moreover, an allegation of inequitable conduct is not established upon "a mere showing that art or information having some degree of materiality was not disclosed." Id. To the contrary, "a patentee has no obligation to disclose an otherwise material reference if the reference is cumulative or less material than those already before the examiner." Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1440 (Fed. Cir. 1991). Accordingly, Cryovac should have also been given the opportunity to present expert testimony that Dallmann was cumulative or less material than prior art already before the examiner. However, Cryovac was deprived of the opportunity to present such testimony because Pechiney's allegation of inequitable conduct was unpled until after the close of discovery.

Because Pechiney unfairly delayed filing this Motion until after the deadline for amending the pleadings and after the close of discovery, thereby prejudicing Cryovac, this Motion should be denied.

REDACTED VERSION – PUBLICLY FILED

IV.    CRYOVAC'S MOTION TO ADD WILLFUL INFRINGEMENT WAS TIMELY.

Pechiney finally suggests its motion is timely because Cryovac moved to amend to add willful infringement in July. Those circumstances were, however, much different. In July, Pechiney waived privilege and produced a non-infringement opinion as a defense to the tortious interference claims.

Far from showing good faith conduct, however, the opinions were so deficient that they provided Cryovac with a good faith basis from which to charge willful infringement. Four days after receiving the opinions Cryovac moved to amend to add willful infringement. None of the delays discussed associated with Cryovac's motion occurred with Cryovac's amendment. Once written evidence was in hand, the motion was made rapidly and without any delay at all.

REDACTED VERSION – PUBLICLY FILED

## CONCLUSION

As is set forth above, Pechiney unduly delayed in attempting bring these claims into the case

and, as a result, will prejudice both Cryovac and the Court if the motion to amend is granted.

Cryovac therefore respectfully requests the Court to deny Pechiney's motion.


John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: October 11, 2005

REDACTED VERSION – PUBLICLY FILED

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2005, I caused to be electronically filed a true and correct

copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification

that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE 19899

I further certify that on October 11, 2005, I caused a copy of the foregoing document to be served

by hand delivery on the above-listed counsel of record and on the following non-registered participants in

the manner indicated.

> ### BY E-MAIL
>
> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL 60611-7603

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> _____
> John W. Shaw (No. 3362)
> *jshaw@ycst.com*
> Karen E. Keller (No. 4489)
> *kkeller@ycst.com*
> Michele Sherretta (No. 4651)
> *msherretta@ycst.com*
> Andrew A. Lundgren No. 4429)
> *alundgren@ycst.com*
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
>
> Attorneys for Plaintiff Cryovac, Inc.

063527.1001

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on October 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE  19899

I further certify that on October 18, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY E-MAIL**

> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
*jshaw@ycst.com*
Karen E. Keller (No. 4489)
*kkeller@ycst.com*
Michele Sherretta (No. 4651)
*msherretta@ycst.com*
Andrew A. Lundgren No. 4429)
*alundgren@ycst.com*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Attorneys for Plaintiff Cryovac, Inc.