# D

Not Reported in F.Supp.2d                                                                                                           Page 1
Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)
**(Cite as: 2003 WL 22953225 (D.Del.))**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
COMMERCE NATIONAL INSURANCE SERVICES, INC., Plaintiff,
v.
Michael BUCHLER, New Castle Insurance, Ltd., and Marianne Pistoria, Defendants.
No. Civ. 02-037-SLR.

Dec. 10, 2003.

Lynne M. Parker, of Hollstein, Keating, Cattell, Johnson and Goldstein, P.C., Wilmington, Delaware, for Plaintiff.

Matthew F. Boyer, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware, for Defendant Buchler.

Francis J. Trzuskowski, of Trzuskowski, Kipp, Kellerher & Pearce of Wilmington, Delaware, for Defendant New Castle Insurance, Ltd.

David Jr. Ferry, Jr., of Ferry, Joseph & Pearce, P.A. of Wilmington, Delaware, for Defendant Pistoria.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Commerce National Insurance Services, Inc. initiated suit against defendants Michael Buchler, Marianne Pistoria and New Castle Insurance, Ltd., after defendants Buchler and Pistoria left the employ of Commerce and commenced an employment relationship with defendant New Castle, which relationship lasted less than six months. Plaintiff has asserted five causes of action against defendants. In count I, plaintiff alleges that defendants Buchler and Pistoria breached their employment contracts, specifically, the non-solicitation and confidential information sections of said contracts. In count II, plaintiff asserts that defendants tortiously interfered with plaintiff's existing contracts. In count III, plaintiff asserts that defendants tortiously interfered with prospective economic advantage. In count IV, plaintiff asserts that defendants have caused plaintiff to be defamed. In count V, plaintiff asserts that defendant Buchler converted and misappropriated to his personal use commissions due and owing plaintiff. Jurisdiction is premised on diversity of citizenship, pursuant to 28 U.S.C. § 1332. Pending before the court are motions for summary judgment filed by all parties. For the reasons that follow, the court shall grant defendants' motions and deny plaintiff's motion.

II. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

III. STATEMENT OF FACTS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)
**(Cite as: 2003 WL 22953225 (D.Del.))**

Page 2

*2 For purposes of these motions, the material facts are essentially undisputed.

In 1995, defendant Buchler was hired by J.A. Montgomery, Inc. as an insurance producer in its employee benefits operation. At all pertinent times, defendant was responsible for generating new business in the employee health insurance area and for servicing current customers. In connection with his employment with J.A. Montgomery, defendant signed a standardized employment contract. Of relevance to the instant litigation are the following provisions:

> E. Termination of Employment. Employment under this Contract may be terminated by either party upon 30 days' written notice to the other party.
> 1. In the event that either party gives notice of termination, "Employer" shall have the right, at its option, to elect to waive the services of "Employee" during all or part of the period following the date of such notice, and, in such event, "Employee" shall have no further access to the premises of "Employer" except as "Employer" otherwise specifically authorizes.
> F. Confidential Information and Trade Secrets. "Employee" will, during the term of Employee's employment, be working with confidential information and trade secrets belonging to "Employer", including for example, internal procedures, programs and forms.... "Employee" acknowledges and agrees that all such information is confidential and is the exclusive property of "Employer." "Employee" covenants and agrees that Employee will not disclose to anyone, either directly or indirectly, during the term of this Contract, or, at any time thereafter, an[y] such confidential information, nor will Employee use the same for any purpose other than in the course of this employment and for the exclusive benefit of "Employer."
> G. *Post Termination Limitations*
> 3. Non-Solicitation Agreement To protect the interests of "Employer" in "Employer's" accounts, as hereinabove described, "Employee" convants [sic] and agrees as follows:
> A. For a period of 365 days following termination of "Employee's" employment by "Employer", "Employee" will not publish, distribute, or cause or allow to be published or distributed, notice to any of "Employer's" accounts to the effect that "Employee" is not [sic] longer employed by "Employer" or that "Employee" has relocated "Employee's" business or is affiliated with or employed by any direct or indirect competitor of "Employer."
> B. For a period of 36 months following termination of employment, "Employee" shall neither call upon or solicit, either for "Employee" or for any other person or firm, any "Class A, Class B, or Class C Accounts", nor shall "Employee" make known to any other person or firm, either directly or indirectly, the names or addresses of any such "Accounts" or any confidential information relating to any of them; provided, however, that the foregoing limitation is not intended to prevent "Employee" from soliciting [sic] "Class A, Class B, or Class C Accounts" which have not had any business in force with "Employer" during the 12-month period preceding termination of employment.
> *3 *Post-Termination Purchase of Accounts*
> The parties recognized [sic] that there may be accounts that desire, with or without solicitation by "Employee", to follow "Employee" with their insurance business if "Employee" leaves "Employer", and that such accounts are free to select their insurance representatives. "Employee" agrees that it would be unfair, as between "Employer" and "Employee" not to compensate "Employer" when such an event occurs. Accordingly, "Employee" agrees that if, during the 36 month period following termination of employment by "Employer", an account which "Employee" is otherwise not permitted to solicit pursuant to the provisions of Agreement G of this Contract, nevertheless places business through "Employee" either directly or with an entity with which "Employee" is affiliated or employed, "Employer" as fair compensation for such account [shall be paid] an amount equal to the following:....

(D.I.153, Ex. A-A) (emphasis added)

In August 1998, Commerce Bancorp, the parent company of plaintiff, acquired J.A. Montgomery. In connection with the acquisition, defendant Buchler executed an "Acknowledgment" that the J.A. Montgomery Agreement "shall remain in full force and effect" and that he would be

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01278-KAJ    Document 214-5    Filed 10/19/2005    Page 4 of 7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)
**(Cite as: 2003 WL 22953225 (D.Del.))**

Page 3

"bound by all the terms and provisions of the Agreement as an employee of Commerce National." (D.I.153, Ex. A-A) [FN1] From 1998 to 2001, the number of employees at plaintiff's Delaware division, formerly J.A. Montgomery, decreased in number as operations were centralized with plaintiff's New Jersey headquarters.

> FN1. In October 2000, defendant Pistoria signed a separate confidentiality and non-solicitation agreement with plaintiff, by which she agreed to not call on, solicit, or accept for her benefit, any client of plaintiff's for a period of 24 months following termination of her employment for any reason. (D.I.153, Ex. A-D)

Defendant Pistoria, who worked with defendant Buchler as a customer service representative, left plaintiff's employ on December 18, 2001. On December 31, 2001, defendant Buchler announced his decision to resign. He left plaintiff on January 4, 2002. In January 2002, defendant Buchler advised his clients that he was leaving and referred them to plaintiff's New Jersey office, as he was instructed to do. During the week of January 7, 2002, defendant New Castle sent out an announcement that defendants Buchler and Pistoria were joining the firm. (D.I.153, Ex. A-C) During that same week, defendant contacted multiple customers, many of whom followed defendant Buchler to his new employ at New Castle. (D.I. 153, Ex. E at 127-173) On January 14, 2002, the instant lawsuit was filed.

IV. ANALYSIS

A. Count I: Breach of Contract

1. Standard of review.

Defendant Buchler's employment contract is governed by Delaware law. [FN2] Under Delaware law, where the language of a contract is plain and clear on its face, the writing itself is the sole source for gaining an understanding of its intent. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del.1992). Where no ambiguity exists, the court will not resort to extrinsic evidence as an aid to interpretation, but will enforce the contract in accordance with the plain meaning of its terms. *City Investing Co. Liquidating Trust v. Continental Casualty Co.*, 624 A.2d 1191, 1198 (Del.1993). A contract will not be considered ambiguous unless "the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del.1992). If the court finds ambiguity in a contractual provision, it will consider extrinsic evidence and apply rules of construction. *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del.1997). Employment contracts which restrict a person's ability to pursue a livelihood are "scrutinized with particular care because they are often the product of unequal bargaining power and because the employee is likely to give scant attention to the hardship he may later suffer through loss of his livelihood. This is especially so where, as here, the restraint is imposed by the employer's standardized printed form." *RHIS v. Boyce*, Civ. No. 18924, 2001 WL 1192203 at *5 (Del. Ch.2001).

> FN2. Defendant Pistoria's contract is governed by the law of New Jersey. The parties have not indicated that New Jersey contract law is substantially different from that of the State of Delaware. Therefore, the court will apply the same principles of contract interpretation to both contracts.

2. Non-solicitation provisions.

a. Defendant Buchler.

*4 The non-solicitation provisions at issue in defendant Buchler's contract are included under the caption "Post Termination Limitations". There is no question but that the non-solicitation limitations are applicable when employment is involuntarily terminated by the employer. The question is whether the non-solicitation limitations also are applicable when an employee voluntarily resigns. The court recognizes that the language of the non-solicitation agreement is somewhat inconsistent in this regard; nevertheless, the court concludes that the structure of the entire section (as poorly written as it is) only makes sense if construed as limited to involuntary terminations. Although subparagraph G.3.B is not specifically limited to an

involuntary termination of employment (as is subparagraph G.3.A), subparagraph "B" is immediately followed by another provision which refers to subparagraph "B" and is specifically limited to "the 36 month period following termination of employment by 'Employer' ". Moreover, because subparagraphs "A" and "B" limit different conduct, they are not redundant. Based on the language of the contract, the court concludes that the non-solicitation limitations are applicable only when employment is terminated by the employer. [FN3] Therefore, defendant Buchler's motion for summary judgment shall be granted in this regard and plaintiff's motion for summary judgment shall be denied.

> FN3. Plaintiff argues in this regard that, because defendant Buchler did not give 30 days' written notice as required by the contract and plaintiff waived his services for the remainder of the 30-day period, defendant's voluntary termination should be considered an involuntary termination, making the non-solicitation provision applicable. Although a creative argument, it is clear from the contract that the only purpose of the waiver of services provision is to allow plaintiff to deny further access to its premises by a departing employee. There is nothing in the contract that supports plaintiff's interpretation.

b. Defendant Pistoria

Unlike defendant Buchler, defendant Pistoria signed plaintiff's standard employment contract which does not make a distinction between voluntary and involuntary termination of employment. The court finds that the plain meaning of the non-solicitation provision in defendant Pistoria's employment contract precludes her from calling on, soliciting, or accepting for her benefit any client of plaintiff's. Nevertheless, there is no evidence of record that defendant Pistoria breached this provision. More specifically, plaintiff cites to nothing in the record indicating that defendant Pistoria called on or solicited any of plaintiff's clients. Neither is there any evidence of record that defendant Pistoria actually benefitted from the solicitation of clients done by defendant Buchler. (*See* D.I. 153, Ex. I at 24-56) Therefore, defendant Pistoria's motion for summary judgment is granted in this regard, and plaintiff's motion is denied.

3. Confidentiality provisions.

Plaintiff alleges that both defendants breached those provisions of their respective employment contracts prohibiting them from using for their benefit any of plaintiff's confidential information, as described in the contracts. Despite the benefit of a completed discovery period, plaintiff has yet to identify any specific confidential information used or disclosed by defendants. [FN4] Finding no evidence that either defendant disclosed or used confidential information and trade secrets following their departure from plaintiff's employ, the court shall grant defendants' motions for summary judgment in this regard and deny plaintiff's motion.

> FN4. The court agrees with defendant Buchler that his personal binder of business cards is not the type of confidential information contemplated by either contract. *See generally Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1055-1056 (Del.Super.2001) (a Rolodex containing identifying information compiled by defendant and available elsewhere does not constitute a "trade secret" under Delaware law).

B. Counts II and III: Tortious Interference

1. Standard of review.

*5 To prevail on counts II and III, plaintiff must prove: "(1) the existence of a valid business relation or expectancy; (2) the interferer's knowledge of the relationship or expectancy; (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that (5) causes resulting damages to the party whose relationship or expectancy is disrupted. *Delaware Express Shuttle, Inc. v. Older*, Civ. No. 19596, 2002 WL 31458243, *22 (Del Ch.2002). As explained by the court in the above case, there is a distinction between the two torts, that "being the availability to the defendant of a privilege to interfere within the limits of fair competition with prospective business opportunities." *Id.* (citation omitted) Thus, in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01278-KAJ   Document 214-5   Filed 10/19/2005   Page 6 of 7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)
(Cite as: 2003 WL 22953225 (D.Del.))

Page 5

determining whether defendants interfered with plaintiff's prospective contractual relations, "each element 'must be considered in light of [the defendants'] privilege to compete or protect [their] business interests in a fair and lawful manner." ' *Id.*

2. Analysis

Having had the benefit of discovery, plaintiff has failed to establish either of the tortious interference causes of action. In the first instance, defendant Buchler's employment contract specifically recognizes that existing clients may choose their insurance representative and, therefore, may give their business to a terminated employee. The contract further provides a remedy for that situation, the "post termination purchase of accounts" formula. Under these circumstances, the court concludes that, as a matter of law, plaintiff cannot establish that defendants intentionally interfered with plaintiff's valid business relationships such as to cause damage. Likewise, plaintiff has failed to identify any prospective business relations that, but for defendants' conduct, would have become clients. For these reasons, the court shall grant defendants' motions for summary judgment on these counts and deny plaintiff's motion.

C. Count IV: Defamation

In order to establish a cause of action for business defamation, plaintiff must show (1) a defamatory communication; (2) publication; (3) the communication refers to plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury. *Id.* at *21. In this case, plaintiff avers that defendant Buchler represented to at least one client that plaintiff was going to service the account out of its New Jersey office, rather than from the Wilmington office. Plaintiff supports this claim through the hearsay testimony of one of its employees, rather than through the testimony of said client. (D.I. 153, Ex. G at 51-53) Plaintiff offers no evidence of any third party's understanding that this communication was defamatory, or any evidence of any injury. Based upon this record, the court finds that plaintiff has failed to carry its burden of proof. Therefore, the court shall grant defendants' motions for summary judgment on this count and deny plaintiff's motion.

D. Count V: Conversion

*6 In order to establish a conversion claim under Delaware law, plaintiff must establish that: (1) it had a property interest in the converted goods; (2) it had a right to possession of the goods, and (3) it sustained damages. *Goodrich v. E.F. Hutton Group, Inc.* 542 A.2d 1200, 1203 (Del. Ch.1988). No Delaware court has "recognized a cause of action for conversion of money, as opposed to goods." *Id.* For this reason, as well as the fact that the matter was previously resolved by the Delaware Insurance Commissioner, [FN5] the court finds in favor of defendant Buchler.

> FN5. Defendant Buchler returned the Fortis funds and there is no claim that more is due.

V. CONCLUSION

For the reasons stated, defendants' motions for summary judgment are granted and plaintiff's motion is denied. An order shall issue.

ORDER

At Wilmington this 10th day of December, 2003, for the reasons stated in the memorandum opinion issued this same date;

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment (D.I.151) is denied.

2. Defendant Buchler's motion for summary judgment (D.I.154) is granted.

3. Defendant New Castle Insurance, Ltd.'s motion for summary judgment (D.I.147) is granted.

4. Defendant Pistoria's motion for summary judgment (D.I.158) is granted.

5. The clerk is directed to enter judgment in favor of defendants and against plaintiff.

Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22953225 (D.Del.)
**(Cite as: 2003 WL 22953225 (D.Del.))**

Page 6

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.