# G

LEXSEE 1988 US DIST LEXIS 711

**Steel Benders, Inc., Plaintiff, v. H.R. Braner Engineering, Inc., d/b/a Braner Engineering, Inc., Defendant**

Civil Action No. 86-2368

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

*1988 U.S. Dist. LEXIS 711*

**January 27, 1988, Decided and Filed**

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1]

Michael R. Lawless, for Plaintiffs.

Mark Beam-Ward/Neil B. Foth, for Defendants.

**OPINIONBY:**

O'CONNOR

**OPINION:**

MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This breach of contract case was tried to the court on December 17 and 18, 1987. Having considered the evidence presented, the court is now prepared to rule and makes the following findings of fact and conclusions of law as required by *Rule 52 of the Federal Rules of Civil Procedure.*

Findings of Fact

1. Plaintiff, Steel Benders, Inc., is a Missouri corporation, qualified to do business in Kansas. Plaintiff's principal place of business is located in Lenexa, Kansas. Plaintiff's business is the manufacture of steel studs used in the construction industry.

2. Defendant, H.R. Braner Engineering, Inc., doing business as Braner Engineering, Inc., is an Illinois corporation with its principal place of business in Schiller Park, Illinois. Defendant's business is the manufacture of steel slitting equipment.

3. Harvey L. Seim is, and was at all times pertinent hereto, President of Steel Benders. William Haight is, and was at all times pertinent hereto, Operations Manager for Steel Benders.

4. Larry Richards is, and was at all times pertinent hereto, [*2] Vice President of Sales for Braner Engineering. Douglas Matsunaga is, and was at all times pertinent hereto, Larry Richards' superior.

5. Steel Benders began manufacturing steel in 1980 in its Lenexa, Kansas facility. Sometime in 1985, Steel Benders decided to expand its operation to include in-house slitting capabilities. Such an expansion would substantially reduce overhead by reducing the raw steel and fabricated steel inventory necessary to meet various customer demands. Additionally, Steel Benders expected to save money by slitting steel in-house.

6. In late 1985 or early 1986, Mr. Haight, on behalf of Steel Benders, began soliciting quotes from manufacturers of steel slitter equipment. By March 1986, Steel Benders had narrowed the field of manufacturers to defendant Braner Engineering and The Bradbury Company.

7. On March 11, 1986, Larry Richards submitted Braner Engineering's written quote of $550,000 for a steel slitting machine which met Steel Benders' specifications. On April 2, 1986, Bradbury submitted an oral quote of $505,000.

8. On April 3, 1986, pursuant to an oral agreement between Mr. Seim and Mr. Richards, Steel Benders allowed Braner Engineering a "last look," [*3] i.e., an opportunity for Larry Richards to make a final quote and sales pitch for the Braner Equipment. Mr. Richards submitted a final quote of $525,000.

9. On Friday, April 4th, Steel Benders informed Braner Engineering that it was leaning towards Bradbury because of its lower bid. Likewise, Steel Benders informed Bradbury that their quote was being favorably considered, and that Mr. Seim would make his final decision on Monday, April 7th.

10. Larry Richards telephoned William Haight early Monday morning, April 7, 1986, to submit a new Braner

Case 1:04-cv-01278-KAJ   Document 214-8   Filed 10/19/2005   Page 3 of 6

Page 2
1988 U.S. Dist. LEXIS 711, *3

bid. During this telephone conversation, Mr. Richards offered to sell Steel Benders a steel slitting machine with two scrap winders for $425,000. After receiving this substantially lower bid, Mr. Seim called Bradbury, the competing bidder, to inform the company that Steel Benders was considering Braner Engineering's new bid.

11. To verify the new offer, Steel Benders requested that Braner Engineering put its oral offer in writing, signed by Braner Engineering's three top corporate officials. Defendant complied with plaintiff's request. Plaintiff received the written offer on Tuesday, April 8, 1986.

12. Also on April 8th, Mr. Richards and [*4] Mr. Seim discussed the offer by phone. Mr. Seim suggested that the offer be modified by replacing the two scrap winders with a scrap baller, and that this modification should reduce the price $14,000 to $411,000. Mr. Richards told Mr. Seim that he would recalculate the pricing and submit a new quote to include Mr. Seim's modifications. Mr. Richards told Mr. Seim that he wanted to come to Lenexa later in the week to pick up a purchase order. plaintiff never gave defendant a written purchase order or a purchase order number. Later this same day, Mr. Seim contacted Bradbury to inform the company that Steel Benders had accepted Braner engineering's bid.

13. In the late afternoon of Wednesday, April 9th, Larry Richards telephoned William Haight to inform Steel Benders that he had made a $50,000 error in pricing by omitting a gear box in the machine's recoiler component. Because of this error, defendant withdrew the $425,000 offer and substituted a $463,250 offer. This new offer represented the price for a slitting machine with a scrap baller, which Mr. Richards had computed Tuesday, April 8th, to be $413,250, plus the $50,000 gear box.

14. William Haight told Mr. Seim about his [*5] telephone call from Larry Richards. Mr. Seim then wrote a letter (dated April 8, 1986) attempting to confirm an alleged April 8th oral acceptance of the $425,000 bid, which bid was for a slitting machine with two scrap ballers. Defendant received this confirmation letter by express mail on Thursday, April 10th. No written document exists evidencing a contract for the sale of a slitting machine with a scrap baller for $411,000.

15. On Friday, April 11, 1986, defendant sent plaintiff a letter reviewing the events of the week, confirming the oral retraction of the $425,000 offer, and confirming the new offer. Plaintiff received this letter April 14th and responded with a letter dated April 17th. In this response, plaintiff informed defendant that Steel Benders considered the April 11th letter to be a repudiation of the contract formed on April 8, 1986, and gave defendant until April 21st to perform the contract.

16. Defendant did not respond to plaintiff's April 17th letter. consequently, on May 16, 1986, Steel Benders purchased slitter equipment with a scrap baller from Bradbury for $490,000. Plaintiff wanted the slitter equipment operational by no later than November 1, 1986. Bradbury [*6] represented that it could provide plaintiff with an operational slitting system by October or November; however, Bradbury did not deliver the slitting equipment until March 31, 1987. plaintiff and defendant agree that defendant Braner Engineering could have delivered "bug-free" slitter equipment by October 1, 1986.

17. Plaintiff claims the following damages: (1) $7,650 for interest costs on additional inventory which had to be maintained during the period October 1, 1986, to March 31, 1987; (2) $76,061.58, representing the difference between outside and in-house slitting for the period October 1, 1986, to March 31, 1987; (3) $79,000, representing the difference between the Bradbury cover price ($ 490,000) and the Braner Engineering quote (alleged to be $411,000 by plaintiff: $425,000 bid minus $14,000 for requested modifications).

Conclusions of Law

This case involves a sale of goods and is therefore subject to Article II of the Uniform Commercial Code (UCC), K.S.A. 84-2-101 et seq. (1983). See id. 84-2-102 & 84-2-105(1). Although the UCC contains numerous provisions on the formation of sales contracts, it leaves many issues of contract formation to common law contract [*7] principles. See J. White & R. Summers, Uniform Commercial Code, p. 6 (2d ed. 1980). Because the issue in this case is one of contract formation, our conclusions of law will rely heavily on the general contract principles developed by common law.

"In an action based on contract, the burden of proof is on the plaintiff to show the existence of the contract alleged in the petition." *Steele v. Harrison,* 220 Kan. 422, 428, 552 P.2d 957, 963 (1976). Plaintiff alleges that a contract was formed on April 8, 1986, when Harvey Seim, plaintiff's president, orally accepted defendant's written bid for a slitting machine with two scrap winders for $425,000. Plaintiff also contends that after accepting the $425,000 bid, defendant and plaintiff orally agreed to modify the contract to substitute a scrap baller for the winders, with a reduction in price of $14,000. For the reasons stated below, we conclude that plaintiff failed to prove the existence of a contract by a preponderance of the evidence.

Three elements create a contract: offer, acceptance, and consideration. Additionally, in order for parties to form a binding contract, the offer and acceptance must manifest a mutual assent [*8] or a "meeting of the

minds" on all the essential terms of the contract. See *id. at 428, 552 P.2d at 962.;* see also Restatement (Second) of Contracts §§ 22, 23 (1981). This "meeting of the minds" requirement is proved when the evidence shows "with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." *Steele, 220 Kan. at 428, 552 P.2d at 962.* There is no doubt that defendant offered to sell plaintiff a slitting machine with two scrap winders for $425,000. See Exhibit I. There is considerable doubt, however, whether the plaintiff accepted this offer. Without plaintiff's acceptance (i.e., without the necessary mutual assent), no binding contract could have been formed.

As previously recounted in the findings of fact, defendant made an oral offer of $425,000 on Monday, April 7, 1986, and pursuant to plaintiff's request, submitted the same offer in writing on the following day, April 8th. After receiving the written offer, plaintiff had at least one telephone discussion with defendant concerning modifications to the contract. Specifically, plaintiff wanted to substitute a scrap baller for the two [*9] scrap winders. According to plaintiff, this substitution would reduce the contract price by $14,000. Plaintiff contends that during this April 8th telephone conversation it orally accepted defendant's $425,000 offer, with the above-described component and price modifications.

In support of its position, plaintiff relies on sections 84-2-206(1)(a) and 84-2-207. Section 84-2-206(1)(a) provides that any reasonable manner of acceptance is available unless the offeror specifies a manner or medium of acceptance. Thus, plaintiff claims its oral acceptance of the defendant's written offer was a valid acceptance. We agree that an oral acceptance of a written offer can be valid. However, we do not agree that plaintiff's April 8th telephone conversation with defendant amounted to a valid oral acceptance.

Plaintiff also relies on section 84-2-207 to support its contention that it orally accepted defendant's $425,000 offer. Section 84-2-207 provides that an acceptance can be valid, even though it adds or varies contract terms. Consequently, plaintiff argues that its discussion with defendant, in which it suggested modifications to the defendant's $425,000 offer, was a "definite and seasonable [*10] expression of acceptance within the parameters of section 84-2-207(1). We conclude section 84-2-207 does not apply to the circumstances of this case; therefore, the common law "mirror image" rule applies.

The purpose of section 84-2-207 was to abolish the common law "mirror image" rule in "Battle of the Forms" situations, i.e., when parties reach an agreement informally or orally, then follow up with formal acknowledgements embodying agreed-upon terms, but adding terms not yet discussed. See *K.S.A. 84-2-207* UCC comment 1. By adopting this provision, the Code drafters recognized "that a contract can be closed in commercial understanding even though the acceptance varies from the offer." Id. Kansas comment. The language of the section, the case law interpretation, and the commentaries seem to indicate that the provision applies only in situations where a modifying acceptance or a modifying confirmation of a prior acceptance is written. Section 84-2-207 states: A definite and seasonable expression of acceptance or a written confirmation which is sent . . . . " Id. (emphasis added). Both the case law and the commentators have interpreted this language to mean a [*11] written acceptance or confirmation. See, e.g., *Southwest Engineering Co., Inc. v. Martin Tractor Co., Inc., 205 Kan. 684, 695, 473 P.2d 18, 26 (1970)* ("[W]e think [84-2-207] is designed for situations where an open offer is accepted by 'an expression of acceptance' (we presume in writing) or where an oral agreement is later confirmed in writing."). See also White & Summers, supra, at 24-39 (discussing seven situations covered by section 2-207, all involving written forms).

In the present case, plaintiff did not send a written acceptance or a confirmation which contained different terms than its alleged oral acceptance. Instead, plaintiff suggested modifications orally in its April 8th telephone conversation. We have found no support for plaintiff's claim that this oral modification is an acceptance under the provisions of section 84-2-207. Accordingly, we must look to common law to determine whether plaintiff's April 8th telephone conversation amounted to a valid oral acceptance of defendant's offer.

Under the common law "mirror image" rule, "[i]f an expression of assent changed any term of the offer, or added to the offer, it was held to be a counter-offer rather [*12] than an acceptance[]" because the variations or additions indicate that there is no "meeting of the minds." *K.S.A. 84-2-207* Kansas comment; see also *Steele, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976); Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc., 212 Kan. 730, 737, 512 P.2d 379, 385 (1973);* accord *Johnson v. University College of the University of Alabama in Birmingham, 706 F.2d 1205, 1209 (11th Cir.),* cert. denied, *464 U.S. 994 (1983); In re Pago Pago Aircrash of January 30, 1984, 637 F.2d 704, 706 (9th Cir. 1981); Burbar v. Ampco Foods, Inc., 539 F.Supp. 535, 541 (D. Idaho 1982),* aff'd, *752 F.2d 445 (9th Cir.),* cert. denied, *472 U.S. 1018 (1985).* Because plaintiff suggested both price and component changes to defendant's $425,000 offer, the April 8th telephone conversation operated as a counter-offer rather than as an acceptance, and no contract was formed. Indeed, "[u]nless the original offeror subsequently expresses unconditional assent to the counter-offer there will never be a contract. *Steele, 220*

*Kan.* at 428, 552 P.2d at 962. plaintiff's counter-offer also had the effect of terminating plaintiff's power of acceptance. [*13] See Restatement, supra, at §§ 35(2) and 36(1) (a); see also *Collins v. Thompson, 679 F.2d 168, 171 (9th Cir. 1982)*. Consequently, plaintiff's attempt to accept in writing defendant's $425,000 offer on April 9th was ineffective: plaintiff no longer had the power to accept the offer; moreover, defendant revoked the offer prior to plaintiff's attempting a written acceptance of the $425,000 bid. See, e.g., *Data General Corp., Inc. v. Citizens National Bank of Fairfield, 502 F.Supp. 776, 785 (D. Conn. 1980)* (offeror retains right to revoke offer until offeree accepts). We therefore conclude that plaintiff's April 8th telephone conversation did not operate as an acceptance of defendant's $425,000 offer and no contract was formed.

Additionally, even if section 84-2-207 applied, it does not abrogate the common law requirement of a "meeting of the minds." As the Eighth Circuit commented:

[A]n 'acceptance' is a prerequisite to the application of § 2-207 . . . . 'Only where all the traditional criteria of intent are met showing that a contract has been made should Section 2-207 be applied . . . .

*U.S. Industries, Inc. v. Semco Manufacturing, Inc., 562 F.2d 1061,* [*14] *1067 (8th Cir.), cert. denied, 434 U.S. 986 (1977)* (quoting R. Duesenberg & L. King, Bender's Uniform Commercial Code Service, § 3.05; at 3-51 (1977)); see also *Ore Corp. Chemical Corp. v. Howard Butcher Trading Corp., 455 F.Supp. 1150, 1152 (E.D. Pa. 1978)*. Both parties testified at trial about the significance of plaintiff's releasing to defendant a purchase order number or the purchase order itself. According to Mr. Seim, the placing of a purchase order signaled the finalization of the deal. Similarly, defendant's witnesses, Mr. Richards and Mr. Matsunaga, testified that plaintiff's delivery of both a purchase order and a ten percent downpayment finalized the deal. Notably, Mr. Seim testified at his deposition that he expected to confirm the deal on Thursday, April 10th, and that he expected Mr. Richards to pick up a purchase order "when things worked out." See Seim deposition at 30, 34. The above-described evidence leads us to the conclusion that these parties had not made a contract as of April 8th; rather, the parties were looking forward to creating a contract when they had agreed to a definite price on the modified machinery and had reduced their agreement to writing [*15] (i.e., a bid and a purchase order). Thus, on April 8th, no "meeting of the minds" took place sufficient to satisfy the common law intent prerequisite for the application of section 84-2-207.

Although we are confident that the above analysis is correct on the facts of the present case, in an abundance of caution and in all fairness to the plaintiff, we have also analyzed the facts assuming section 84-2-207 did apply to transform plaintiff's suggested modifications into a valid acceptance. We conclude, however, that the result would not be different.

Under the provisions of section 84-2-207, an acceptance with modifications is valid "unless acceptance is expressly made conditional on assent to the additional or different terms." *K.S.A. 84-2-207(1)*. When this statutory exception applies, a section 84-2-207 acceptance is valid only if the offeror agrees to the new terms. Because the relevant telephone conversation was not recorded, we have only the participants' recollections and their conduct from which to determine what was actually said. Nevertheless, we find by a preponderance of the evidence that plaintiff's acceptance was expressly made conditional on defendant's assent to the [*16] different terms.

First, plaintiff's witnesses, William Haight and Harvey Seim, testified that the parties would have no contract without a definite price. The UCC does not require a definite price term, see *K.S.A. 84-2-204(3)*, but the parties may so require. See id. 84-2-305(4). On April 8th, the parties had not agreed on a firm price. A $14,000 reduction in price was discussed in relation to the substitution of a scrap baller for the two scrap winders, but no definite figure was agreed upon. Evidence produced at trial indicated that defendant began preparing a new bid, based upon the suggested modifications and that plaintiff expected to receive a new quote in writing, at least in the form of an addendum to the bid. second, both parties agreed that the final agreement would be in writing. In fact, Mr. Seim testified that he would not have released a purchase order to the defendant until he received a writing evidencing the agreement as orally modified. \* Therefore, this written addendum would have served as defendant's assent to plaintiff's modifications.

> \* Any substantial modifications to a contract which must be in writing is governed by the Statute of Frauds. See *Reno v. Beckett, 555 F.2d 757, 766 (10th Cir. 1977)* (applying Kansas law). Additionally, *K.S.A. 84-2-209(3)* "apparently requires a modification to be in writing" [when] . . . the price itself is modified by more than $500." *K.S.A. 84-2-209(3)* Kansas comment.

[*17]

While preparing the new bid, defendant discovered an error in the previous $425,000 offer. Consequently, defendant did not assent to plaintiff's modifications; instead, defendant made its own modification, offering plaintiff a slitter machine with a scrap baller for $463,250. Because

plaintiff's acceptance was made conditional on defendant's written assent to a price, approximately $14,000 less than the original $425,000 bid, and defendant provided no such assent, plaintiff's acceptance never became valid.

Without a valid acceptance, the plaintiff never entered into a binding contract with defendant. Although the plaintiff made a second attempt to accept defendant's $425,000 bid, this attempt came too late, as defendant had revoked its original bid prior to the plaintiff's writing and sending this acceptance. By April 9th, when plaintiff wrote and sent its "acceptance," the only offer available for plaintiff to accept was the new bid of $463,250 for a slitter machine with a scrap baller.

Even if we were to assume plaintiff's oral acceptance was valid, plaintiff would still have the Statute of Frauds to hurdle. *K.S.A. 84-2-201(1)* states in pertinent part:

[A] contract for the [*18] sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought. . . .

Plaintiff's witnesses, William Haight and Harvey Seim, testified adamantly that the contract between plaintiff and defendant was for a slitter machine with a scrap baller for $411,000. As plaintiff's witnesses admitted, no document (or combination of documents) evidencing this contract exists. Thus, the alleged contract is unenforceable as violative of the Statute of Frauds.

Plaintiff argues in the alternative that its letter accepting defendant's $425,000 bid in combination with defendant's written bid quote meets the Statute of Frauds. We find this argument to be unpersuasive. The letter Harvey Seim wrote to defendant stated: "This letter will confirm our acceptance

of your offer communicated to us on April 7, 1986 by your letter of even date . . . . Exhibit 2. By its own language, the letter is a confirmation of a prior acceptance. The only prior acceptance was the attempted oral acceptance on April 8th, which plaintiff's witnesses [*19] testified was an acceptance for a 11,000 slitter machine with a scrap baller. As previously discussed, however, plaintiff never accepted defendant's April 7th bid, which was for a $425,000 slitter machine with two scrap winders. Apparently, this "confirmation" letter was no more than Mr. Seim's attempt to revive the original offer after defendant revoked it by telephone on April 9th. This letter, in combination with defendant's original bid, does not satisfy the Statute of Frauds because it does not indicate that the parties entered into a contract. On the contrary, this letter evidences plaintiff's realization that it had failed to consummate a deal with defendant and plaintiff's attempt to create, by means of a paper trail, a contract where none existed.

We conclude that no legally binding contract was created. Consequently, defendant committed no breach and cannot be held liable for plaintiff's alleged damages.

IT IS THEREFORE ORDERED that judgment be entered in favor of defendant and against plaintiff.