IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,     )
    )
    Plaintiff/Counter-Defendant,     )    Civil Action No. 04-1278
    )
    vs.     )    Hon. Kent A. Jordan
    )
PECHINEY PLASTIC PACKAGING,     )    **FILED UNDER SEAL**
INC.,     )
    )
    Defendant/Counter-Plaintiff.     )

**MEMORANDUM IN SUPPORT OF
PECHINEY'S PROPOSED CONSTRUCTION
OF THE DISPUTED CLAIM TERMS AND PHRASES**

N. Richard Powers (#494)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: 302.888.6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: 312 222-9350

Dated: October 19, 2005

## TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................................................................1

II.  BACKGROUND ...............................................................................................................1

    A.  Procedural Background...............................................................................................1

    B.  The Technology At Issue ...........................................................................................1

        1.  The State of the Art..............................................................................................2

        2.  The '419 Patent ...................................................................................................3

III. APPLICABLE LAW ........................................................................................................3

IV. CLAIM CONSTRUCTION...............................................................................................5

    A.  "arranged symmetrically" or "at least seven layers arranged symmetrically" ..................6

        1.  Pechiney's Proposed Construction ........................................................................7

        2.  Cryovac's Proposed Construction..........................................................................7

        3.  Analysis..............................................................................................................7

            a.  The Evidence As a Whole Supports Pechiney's Proposed Construction ...............9

            b.  The '419 Patent Specification Does Not Define "arranged symmetrically" .........10

            c.  The Prosecution History Confirms That "arranged symmetrically" Must
                Be Construed to Mean The Opposite of "asymmetric" ....................................13

            d.  Dictionary Definitions Support Pechiney's Proposal .........................................17

            e.  Cryovac's Proposed Definition Renders "arranged symmetrically"
                Superfluous ...................................................................................................18

    B.  "oriented" or "oriented coextruded film" .................................................................20

        1.  Pechiney's Proposed Construction ......................................................................20

        2.  Cryovac's Proposed Construction........................................................................21

        3.  Analysis............................................................................................................21

    C.  "film" ....................................................................................................................22

        1.  Pechiney's Proposed Construction ......................................................................22

i

2. Cryovac's Proposed Construction..............................................................22

3. Analysis..........................................................................................22

D. "coextruded film"....................................................................................23

1. Pechiney's Proposed Construction .........................................................23

2. Cryovac's Proposed Construction..........................................................24

3. Analysis..........................................................................................24

E. Subparagraphs (b), (c), and (d) ................................................................25

1. "(b) two intermediate layers each comprising a polyamide"........................25

a. Pechiney's Proposed Construction ..............................................25

b. Cryovac's Proposed Construction...............................................25

2. "(c) two outer layers each comprising a polymeric material or blend of polymeric materials"..........................................................................26

a. Pechiney's Proposed Construction ..............................................26

b. Cryovac's Proposed Construction...............................................26

3. "(d) two layers, each comprising an adhesive polymeric material, which adhere each of said intermediate layers to a respective outer layer" .................26

a. Pechiney's Proposed Construction ..............................................26

b. Cryovac's Proposed Construction...............................................26

4. Analysis..........................................................................................27

F. "(a) a core layer comprising an ethylene vinyl alcohol copolymer" ..................28

1. Pechiney's Proposed Construction .........................................................28

2. Cryovac's Proposed Construction..........................................................29

3. Analysis..........................................................................................29

G. "layer(s)"...............................................................................................30

1. Pechiney's Proposed Construction .........................................................30

2. Cryovac's Proposed Construction..........................................................30

3.  Analysis.................................................................................................30

H.  "at least seven layers" ..........................................................................31

1.  Pechiney's Proposed Construction .......................................................31

2.  Cryovac's Proposed Construction.........................................................31

3.  Analysis.................................................................................................31

I.  "comprising".............................................................................................31

J.  "layer comprising," "layers each comprising" and "layers, each comprising" .................32

V.  CONCLUSION...............................................................................................33

# TABLE OF AUTHORITIES

## Cases

*Biago W. Sales, Inc. v. Grow More, Inc.,*
   No. 04-1414, 2005 U.S. App. LEXIS 19680 (Fed. Cir. Sept. 13, 2005) .................................. 12

*Brown v. 3M,*
   265 F.3d 1349 (Fed. Cir. 2001) .......................................................................................... 4

*Dynacore Holdings Corp. v. U.S. Phillips Corp.,*
   363 F.3d 1263 (Fed. Cir. 2004) ........................................................................................ 12

*Ekchian v. Home Depot,*
   104 F.3d 1299 (Fed. Cir. 1997) ........................................................................................ 21

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc,*
   No. 05-1006, 2005 U.S. App. LEXIS 19886 (Fed. Cir. Sept. 16, 2005) ................................. 27

*Genentech Inc. v. Chiron Corp.,*
   112 F.3d 495 (Fed. Cir. 1997) .......................................................................................... 31

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*
   381 F.3d 1111 (Fed. Cir. 2004) .......................................................................................... 3

*KCJ Corp. v. Kinetic Concepts, Inc.,*
   223 F.3d 1351 (Fed. Cir. 2000) ........................................................................................ 28

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.,*
   218 F.Supp.2d 594 (D. Del. 2002) .................................................................................... 22

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995),
   *aff'd,* 517 U.S. 370 (1996) ....................................................................................... 3, 4, 5

*Mars, Inc. v. H. J. Heinz Co.,*
   337 F.3d 1369 (Fed. Cir. 2004) ........................................................................................ 23

*Medtronic Minimed, Inc. v. Smiths Med. MD, Inc.,*
   No. 03-776-KAJ, 2005 U.S. Dist. LEXIS 10583 (D. Del., June 1, 2005) ................................. 21

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) .................................................................................. passim

*Phonometrics, Inc. v. Northern Telecom,*
   133 F.3d 1459 (Fed. Cir. 1998). ........................................................................................ 25

*Process Control Corp. v. HydReclaim Corp.,*
   190 F.3d 1350 (Fed. Cir. 1999) ........................................................................................ 23

*Renishaw PLC v. Marposs Societa' per Azioni,*
   158 F.3d 1243 (Fed. Cir. 1998) ................................................................................ 4, 20, 21

*Scripps Clinic & Research Found. v. Genetech, Inc.,*
   927 F.2d 1565 (Fed. Cir. 1991) ........................................................................................ 22

*Seymour v. Osborne,*
    78 U.S. (11 Wall.) 516 20 L.Ed. 33 (1870) ................................................................. 5

*Syngenta Seeds, Inc. v. Monsanto Co.,*
    No. 02-1331-SLR, 2004 U.S. Dist. LEXIS 24253 (D. Del., Nov. 19, 2004) ........................... 22

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*
    299 F.3d 1313 (Fed. Cir. 2002) ............................................................................. 5

*Vitronics Corp. v. Conceptronic, Inc.,*
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................. 4, 5

## I.    INTRODUCTION

Cryovac, Inc. ("Cryovac") alleges that Pechiney Plastic Packaging, Inc. ("Pechiney") infringes claim 11 of Cryovac's United States Patent No. 4,755,419 ("the '419 patent") and that Pechiney's alleged infringement also constitutes tortious interference with contract or with prospective business relations.  This brief addresses the construction of the disputed terms and phrases in claim 11 of the '419 patent, the only patent claim at issue.

Pechiney's proposed construction for the disputed claim terms and phrases follows settled law as most recently confirmed by the Federal Circuit in its *en banc* decision *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Pechiney's proposed constructions are all derived from and are consistent with the intrinsic evidence, reflect the customary meaning where appropriate, and neither unnecessarily add to nor improperly subtract from those meanings. Cryovac's proposals, on the other hand, consistently run afoul of the cannons of construction. Cryovac's proposals, rather than being appropriate constructions of claim terms and phrases, are litigation-induced, result-oriented concoctions that have little to do with the intrinsic evidence or the customary meaning of the claim terms.

## II.    BACKGROUND

### A.    Procedural Background

The procedural background is detailed in Pechiney's Memorandum in Support of Pechiney's Motion for Summary Judgment on Patent Issues and will not be repeated here.

### B.    The Technology At Issue

The technology of the '419 patent is related to coextruded, multilayer, oriented, thermoplastic films having an oxygen barrier for use in packaging applications.

1.     **The State of the Art**

Coextruded, oriented, thermoplastic films have long been used for various applications, including packaging. While single layer films can be useful, multilayer films are often used because the combination of materials in a multilayer film typically can provide more desirable features then any one material can do alone. (Declaration of Eldridge M. Mount III ("Mount Decl.") at ¶10).

The particular application for which the film is being developed dictates the desirable properties for the film, which in turn can influence the method of manufacture, the composition of the layers, the thickness of the layers and the layer structure or order. Important considerations often taken into account when designing multilayer packaging films include oxygen, flavor and aroma barrier protection; puncture resistance; abuse resistance; optical properties; shrink properties, and sealability, among others. (Mount Decl. ¶12, Tab 1, pgs 4-5 and 7-17; A0143, Ex. 1, '419 patent, col., 1, lns 4-47). Cost, of course, is also typically an issue. (Mount Decl., Tab 1, pgs 16-17).

For example, if the article being packed is oxygen sensitive, the film must be relatively impermeable to oxygen. Therefore, one of skill in the art[1] would design the film so that one or more layers comprise a material with good oxygen barrier characteristics, such as ethylene vinyl alcohol ("EVOH"). (Mount Decl. ¶13). If it was desirable that the film fit tightly around the article to be packaged, the person of ordinary skill in the art would also have known that the film needed to shrink, and would have known to make the film using one of the prior art processes

---

[1]    The person of ordinary skill in the art would have been someone with a bachelor's degree in chemical engineering, chemistry, physics or related sciences with from three to five years experience in the design, manufacturing, end use of application development and packaging machine performance making use of multilayer barrier packaging films. (Mount Decl., Tab 1, pg. 4).

2

that included an orientation step so that the resulting film was heat shrinkable. (Mount Dec.,

¶14, Tab 1, pg. 4). These considerations and their consequences were well-known to those of

ordinary skill in the art and such skilled artisans designed films based on the desired

characteristics.

### 2. The '419 Patent

The '419 patent issued on July 5, 1988, based on an application filed March 21, 1986.

Thus, the '419 patent expires in five months on March 21, 2006. The only claim at issue is claim

11 of the '419 patent. Claim 11 reads as follows:

> 11. An oriented coextruded film having at least seven layers
> arranged symmetrically comprising:
>
> (a) a core layer comprising an ethylene vinyl alcohol copolymer;
>
> (b) two intermediate layers each comprising a polyamide;
>
> (c) two outer layers each comprising a polymeric material or blend
> of polymeric materials; and
>
> (d) two layers, each comprising an adhesive polymeric material,
> which adhere each of said intermediate layers to a respective outer
> layer.

## III.  APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention

to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303,

1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,*

381 F.3d 1111, 1115 (Fed. Cir. 2004)). Patent claims are construed as a matter of law.

*Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd,* 517

U.S. 370 (1996); *Phillips,* 415 F.3d at 1309-10.

The Federal Circuit has made it clear that the words of a claim "are generally given their

ordinary and customary meaning." *Phillips,* 415 F.3d at 1312 (quoting *Vitronics Corp. v.*

3

*Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996)). And, the ordinary and customary meaning to be given to a claim term is the meaning that the term would have to a person of ordinary skill in the art in question as of the effective filing date of the patent application. *Phillips,* 415 F.3d at 1313.

In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *Phillips,* 415 F.3d at 1313 (citing *Brown v. 3M,* 265 F.3d 1349, 1352 (Fed. Cir. 2001)).

The claims, of course, do not stand alone; they are part of "a fully integrated written instrument." *Markman,* 52 F.3d at 978. Claims "must be read in view of the specification, of which they are a part." *Id.* at 979. The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582.

The claim terms should be interpreted with an understanding of what was actually invented:

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998): 158 F.3d at 1250 (citations omitted).

The Federal Circuit has emphasized the importance of intrinsic evidence in claim construction, but has also authorized courts to rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony,

4

dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317, (quoting *Markman*, 52 F.3d at 980, *citing Seymour v. Osborne*, 78 U.S. (11 Wall.) 516, 546, 20 L.Ed. 33 (1870)); *see also* Vitronics, 90 F.3d at 1583.

　　　"Because dictionaries... endeavor to collect the accepted meanings of terms... those resources have been properly recognized as among the many tools that can assist the court in determining the meaning of particular terminology to those of skill in the art of the invention." *Phillips*, 415 F.3d at 1318 (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002)). Such evidence may be considered if the Court deems it helpful in determining the meaning of claim language. *Phillips*, 415 F.3d at 1318. In *Phillips*, the Federal Circuit noted that it did "not intend to preclude the appropriate use of dictionaries. Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words...." 415 F.3d at 1322. A dictionary definition has the value of being an unbiased source "accessible to the public in advance of litigation." *Vitronics*, 90 F.3d at 1585.

## IV.　CLAIM CONSTRUCTION

　　　The disputed terms and phrases of claim 11 of the '419 patent identified by the parties in the preparation of the Joint Claim Construction Chart (which will be filed on November 18, 2005, along with the responsive briefs) are set forth below one by one with Pechiney's proposed construction of the language, Cryovac's proposed construction,[2] and an analysis of the disputed language in light of the applicable evidence in accordance with *Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996) and *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).

―――――――――――

**REDACTED**

5

Because two specific claim terms – "arranged symmetrically" and "oriented" – are primarily determinative of Cryovac's infringement claim and certain of Pechiney's invalidity defenses, Pechiney addresses those two terms first. Pechiney first addresses the term, "arranged symmetrically," because if the Court agrees with Pechiney's interpretation of that term, then Pechiney should be entitled to entry of a summary judgment that it does not infringe the '419 patent. Similarly, if the Court agrees with Pechiney's interpretation of "oriented," then Pechiney should be entitled to entry of a summary judgment that claim 11 of the '419 patent is invalid as anticipated. Although Pechiney does address the remainder of the disputed claim terms below, it believes that the Court need not address all of those other claim terms. Pechiney is unaware of any issue in the case that would require the Court to reach these definitions if the Court construes "arranged symmetrically" and "oriented" as Pechiney proposes.

A summary of Pechiney's proposals on the proper construction of the terms are set forth in the [Proposed] Order submitted herewith.

### A.    "arranged symmetrically" or "at least seven layers arranged symmetrically"

Construction of the claim term "arranged symmetrically" (or the phrase "at least seven layers arranged symmetrically")[3] may determine whether infringement can be decided on summary judgment.

---

[3]    Pechiney has proposed that the term "arranged symmetrically" be construed. Cryovac has proposed construction of the longer phrase "at least seven layers arranged symmetrically." Pechiney does not believe that the substantive result depends on choosing what phrase is construed. Because the operative words are "arranged symmetrically," Pechiney uses that term. Construction of the phrase "at least seven layers," which means "seven or more layers," is discussed below at pages 31.

### 1.    Pechiney's Proposed Construction

Pechiney proposes that the Court construe the claim term "arranged symmetrically" as follows:

> Putting the layers in a desired symmetrical order when the film is viewed in cross-section, that is, putting the layers in an order so that the geometrical center line of the core layer is the geometrical center line of the film and there is correspondence in the size (thickness) and composition of layers on opposite sides of the core layer resulting in the corresponding layers being mirror images of each other with the same thickness and the same chemical composition.

This is the ordinary meaning of "arranged symmetrically" as understood by a person of ordinary skill in the art and is fully supported by the intrinsic evidence.

### 2.    Cryovac's Proposed Construction

Cryovac proposes that the Court construe the claim phrase "at least seven layers arranged symmetrically" as follows:

> At least the seven recited in subparagraphs (a), (b), (c) and (d) of claim 11 arranged such that one layer (b), one layer (c) and one layer (d) are in the same order on each of the opposite sides of the core layer (a), for example, c/d/b/a/b/d/c. This claim phrase limits the arrangement of the layers. It does not limit the thickness of the layers. Nor does it limit the amounts of recited components or additives that may be included in the layers.

### 3.    Analysis

The dispute between the parties on the meaning of "arranged symmetrically" centers on whether that term requires that the corresponding layers (and their physical characteristics) on the opposite sides of the center line of the film be mirror images of each other and so have the same thickness and the same chemical composition resulting in a symmetrical film (Pechiney's position) or alternatively, whether layers are "arranged symmetrically" merely because the layer *labels* are arranged symmetrically even though the corresponding layers on opposing sides of the

centerline have different compositions and different thicknesses and so form an asymmetric film (Cryovac's position).

The accused ClearShield[TM] bags are made from film in which the two "outer layers" are substantively different from one another. The layer that becomes the inside of a ClearShield bag is referred to as the sealant layer and the layer that forms the outside of the bag is referred to as the surface layer. The sealant layer and the surface layer in ClearShield bags have different functions that are best met by layers with different compositions and different thicknesses. (Mount Decl. ¶11). If the Court adopts Pechiney's proposed construction of "arranged symmetrically," summary judgment of non-infringement will be proper.[4] The asymmetric structure of the accused ClearShield products thus crystallizes this claim construction dispute.

Pechiney's proposed construction of "arranged symmetrically" is fully consistent with the intrinsic evidence and the ordinary meaning (as confirmed by dictionary definitions). By contrast, Cryovac's proposed claim construction ignores most of the rules of claim construction. First, by ignoring the layers and their physical characteristics and focusing only on their labels, Cryovac's interpretation reads claim 11 as permitting a multilayer film having opposing layers that are totally different in composition and thickness to be considered to have its layers "arranged symmetrically," so long as the man-made labels applied to those layers are "arranged symmetrically." Obviously, this is not the ordinary meaning of "arranged symmetrically," nor is it dictated by the intrinsic evidence. Indeed, at least one argument made during prosecution, contrasting the claimed invention from an asymmetric film, makes no sense under Cryovac's

---

[4]  This is fully explained in Pechiney's Memorandum in Support of Its Motion For Summary Judgment on Patent Issues at pages 20 - 28, (also being filed today). Summary judgment of non-infringement would also lead to summary judgment on Cryovac's tortious interference claims as those claims are based solely on the allegation of patent infringement and fail if there is no infringement.

proposed construction of "arranged symmetrically." Moreover, Cryovac's proposed construction renders "arranged symmetrically" completely superfluous to the limitations in subparagraphs (a), (b), (c) and (d) as explained below.

### a. The Evidence As a Whole Supports Pechiney's Proposed Construction

The language of claim 11 requires that the seven layers (or more) be "arranged symmetrically" and not merely that the layer *labels*, (*i.e.*, the (a,) (b,) (c,) and (d) designations) be arranged symmetrically. Yet, the latter is exactly what Cryovac proposes. Cryovac's proposal on the meaning of "arranged symmetrically" ignores all of the attributes of the layers other than their labels.

The bankruptcy of Cryovac's position is shown by a simple analogy. The "at least seven layers" of claim 11 can be analogized to at least seven circles. Like the subparagraphs (a), (b), (c), and (d) in claim 11, the circles could be described as being (a)—red, (b)—purple, (c)—blue, and (d)—green. If one applies Cryovac's definition of "arranged symmetrically" to this analogy the circles would be "arranged symmetrically" so long as the order of the circles was blue/green/purple/red/ purple/green/blue. Cryovac would go no further, not concerning itself with the specific shade of the circles (analogous to the specific chemical composition of the layer) or the size of the circle (analogous to the thickness of the layer). Applying Cryovac's definition, the following circles are "arranged symmetrically" in spite of the distinctly asymmetric nature of the graphic:



(c)        (d)        (b)        (a)        (b)        (d)        (c)

It cannot be seriously argued that anyone would commonly describe these circles as being arranged symmetrically, simply because the arrangement of the labels is blue/green/purple/red/purple/green/blue.

Thus, at its most basic level, the question presented by the parties' competing proposals for the construction of "arranged symmetrically" is whether claim 11 is to be limited solely to the labels given the layers, or whether one must examine layers themselves and their physical characteristics to see if they meet the "arranged symmetrically" limitation.

### b.     The '419 Patent Specification Does Not Define "arranged symmetrically"

While there is no explicit definition of "arranged symmetrically" in the specification or in the prosecution history, the intrinsic evidence supports Pechiney's proposed construction, rather than Cryovac's.

The specification never uses the term "arranged symmetrically," and uses the word "symmetrical" only one time, in a reference to a preferred structure:

> The film is preferably a palindromic or **symmetrical seven** layer structure produced by, for example, cast coextrusion methods, and subsequently oriented, preferably biaxially oriented, typically by means of a blown bubble process.

(A0144, Ex. 10, '419 patent, col. 4, lns. 52-56) (emphasis added).

**REDACTED**

10

REDACTED

The '419 patent has two working examples.  The only indication of layer thicknesses in the examples relates to total thicknesses of corresponding layer pairs.  Thus, the patent states that:

> Before orientation, the total wall thickness of the tube was about 14 mils, with about 55% of the structure comprising the outer blend layers, 20% of the structure comprising the intermediate polyamide layers, 15% comprising the adhesive layers, and 10% comprising the EVOH core layer.

(A0146, Ex. 10, '419 patent, col. 7, lns. 27-23).                REDACTED

                              Thus, the specification is fully consistent with Pechiney's construction that, in order to be "arranged symmetrically" corresponding layers have the same thickness.

Moreover, all of the films described in the specification have compositions that are identical from one layer to the other corresponding layer.  There is no disclosure of any film in which there is any variation in the composition from a layer on one side of the centerline of the film compared to the corresponding layer on the other side.

While the explicit reference in the specification to a symmetrical film is described as a preferred embodiment, when the application was filed, the claim was not limited to layers arranged symmetrically.  That limitation was added during prosecution.  Thus, claim 11 may well be limited to what is disclosed as preferred embodiment in the specification. *CVI/Beta*

11

*Ventures v. Tura LP,* 112 F.3d 1146, 1155 (Fed. Cir. 1997) (explaining that arguments made during prosecution regarding the meaning of claim terms are relevant to proper construction); *Dynacore Holdings Corp. v. U.S. Phillips Corp.,* 363 F.3d 1263, 1276 (Fed. Cir. 2004) (holding that the Court did not err "by limiting the claims to the preferred embodiment disclosed in the specification.") (citations omitted).

**REDACTED**

That position does not withstand scrutiny. With regard to the intermediate polyamide layers, the '419 patent states:

> The total thickness of the polyamide layers may vary widely. For example, each layer can form between 5% and 25% of the total thickness of the multilayer film.

(A0145, Ex. 10, '419 Patent, col. 5, lns. 19-22). This passage indicates only that "the total thickness," *i.e.,* the combined thickness, of the two polyamide layers may vary widely from one film to another. It does not indicate that, in a given film, one polyamide layer could or should be 5% of the thickness while the other is 25% (or some other amount). Certainly, nothing in that passage is inconsistent with the idea that the two polyamide layers should be the same thickness if they are "arranged symmetrically." Indeed, nothing in the specification relates the discussion of polyamide layer thickness in any way to the concept of layers being "arranged symmetrically." *Cf., Biago W. Sales, Inc. v. Grow More, Inc.,* No. 04-1414, 2005 U.S. App. LEXIS 19680, at *15 (Fed. Cir. Sept. 13, 2005).

The rest of the specification is similar in nature. When describing the outer layers, the '419 patent indicates:

12

> outer layers 16 and 17 preferably each comprise from about 20%
> to 40% and more preferably from about 25% to 35% of total
> thickness of the multilayer film. Even more preferably, each of
> outer layers 16 and 18 comprise about 30% of the total thickness of
> the multilayer film of the invention.

(A0145, Ex. 10, '419 patent, col. 5, lns. 42-48). Once again, the specification indicates that the

thickness of layers can vary but there is no indication that a film with layers "arranged

symmetrically" includes outer layers with different thicknesses. Similarly, with regard to the

adhesive layers, the '419 patent states as follows:

> Adhesive layers 20 and 22 will each comprise from about 5% to
> about 15% of the total thickness of the multilayer film, and more
> preferably about 10% of the total thickness of the film.

(A0145, Ex. 10, '419 patent, col. 6 lns. 65-68). Again, there is no disclosure whatsoever that the

corresponding layers in a film with layers that are "arranged symmetrically" can have different

thicknesses.

### c. The Prosecution History Confirms That "arranged symmetrically" Must Be Construed to Mean The Opposite of "asymmetric"

The term "arranged symmetrically" did not appear in the application as filed. (A1013,

Ex. 101; A1204, Ex. 102).[5] Nor was there any explicit definition of "arranged symmetrically"

offered during prosecution. However, the prosecution history is instructive. During prosecution,

Cryovac relied on the "arranged symmetrically" language in distinguishing the claimed film

from the prior art based on symmetry or the lack of it.

### REDACTED

---

[5]  Exhibit 101 is a copy of the certified file wrapper from the PTO. However, in the certified
file wrapper the original application is out of order (as can be seen by comparing either the
typographical numbering on the bottom of each page or the PTO's hand numbering). A
correct and complete copy of the application as filed is Exhibit 102.

**REDACTED**

**REDACTED**

**REDACTED**

Under Cryovac's proposed definition of "arranged symmetrically," a film could have layers "arranged symmetrically" and yet not be symmetric, *i.e.*, it could be asymmetric. If the claimed film, with "layers arranged symmetrically," could be asymmetric, then the fact that the Sheptak film was asymmetric was not a patentable distinction. Rather, the asymmetric nature of the Sheptak film would only be relevant as a distinction because the claimed subject matter was

limited to symmetrical film. Having distinguished the claimed film with layers "arranged symmetrically" from an asymmetric film during prosecution, Cryovac should be held to that distinction and not be allowed to broaden claim 11 to cover asymmetric films in the guise of construing "arranged symmetrically." Therefore, based on the prosecution history, the "arranged symmetrically" limitation of claim 11 must be construed to refer to a symmetrical film with corresponding layers on each side of the centerline of the film being of the same composition and same thickness.

### d.     Dictionary Definitions Support Pechiney's Proposal

The dictionary definition of "arranged symmetrically" is consistent with Pechiney's interpretation, not Cryovac's. The relevant timeframe is the filing of the application in 1986.[6] *Phillips*, 415 F.3d at 1313. Webster's Third New International Dictionary defines "arrange" as "**1**: to put in correct, convenient, or desired order : adjust properly : DISPOSE, PLACE...**2** : to put in order beforehand : make preparations for : PLAN...." (A0170, Ex. 13; A0195, Ex. 14; A0213, Ex. 15) (emphasis added).

"Symmetrically" is defined as "in a symmetrical manner." (A0185, Ex. 13; A0210, Ex. 14; A0214, Ex. 15). In turn, "symmetrical" is defined as:

> 1 : having or involving symmetry : exhibiting symmetry : exhibiting correspondence in size and shape of parts : BALANCED, REGULAR... **2** : having corresponding points whose connecting lines are bisected by a given point or perpendicularly bisected by a given line or plane – used of geometrical figures **3a** : being of such nature that the terms may be interchanged without altering the value, character, or truth – used esp. of mathematical relations, functions, and equations... **b** : COMMENSERABLE...

---

[6] There is no indication that the specific timeframe is critical when looking at dictionary definitions. The 1981, 1986 and 2002 printings of Webster's Third New International Dictionary (principal copyright 1961) have exactly the same definitions of the words "arranged" and "symmetrically."

(A0185, Ex. 13; A0210, Ex. 14; A0214, Ex. 15) (emphasis added). And, the definition of "symmetry" is as follows

> **2** : correspondence in size, shape, and relative position of parts that are on opposite sides of a dividing line or median plane or that are distributed about a center or axis : an arrangement or external form (as in a body, a design, or a grouping) marked by bilateral conformity or geometrical iregularity....

(A0185, Ex. 13; A0210, Ex. 14; A0214, Ex. 15). Thus, the dictionary "arranged symmetrically" to mean "putting the layers in a desired symmetrical order," that is, "putting the layers in an order so that the geometrical center line of the core layer is the geometrical center line of the film and there is correspondence in the size (thickness) and composition of layers on opposite sides of the core layer."

### e.    Cryovac's Proposed Definition Renders "arranged symmetrically" Superfluous

Subparagraphs (a), (b), (c), and (d), taken together and without reference to the "arranged symmetrically" language in claim 11's preamble, necessarily require that the order of the layer labels *must be* c/d/b/a/b/d/c. Because of that undeniable fact, Cryovac's argument that that label order is imposed by the "arranged symmetrically" limitation must be false, because it renders that limitation from the preamble to claim 11 superfluous.

To see why subparagraphs (a), (b), (c) and (d) of claim 11 by themselves necessarily require a symmetrical arrangement of the layer labels, apply those subparagraphs to any seven-layer structure (labeled for initial identification as layers 1/2/3/4/5/6/7). Subparagraph (a) of claim 11 specifies that one of these layers must be the "core layer." By definition, the "core layer" cannot be either layer 1 or layer 7, so it must, by process of elimination, be one of layers 2, 3, 4, 5, or 6.

### REDACTED

**REDACTED**

Subparagraph (b) of claim 11 requires that two of the seven layers be "intermediate" layers and, based upon the '419 patent's definition of "intermediate" layer, these layers also may not be layer 1 or 7, but must rather be two layers out of layers 2, 3, 4, 5, or 6.

Subparagraph (c) of claim 11 requires that there be two "outer" layers. Thus, layer 1 must be an outer layer and layer 7 must be an outer layer. Recast in terms of the subparagraphs of claim 11, the structure must be c/2/3/4/5/6/c.

Finally, subparagraph (d) of claim 11 requires that the structure contains two "adhesive" layers and further requires that each adhesive layer must bind an intermediate layer (b) to an outer layer (c). (Mount Decl. ¶15). This language necessarily requires that each adhesive layer therefore lie between an outer layer and an intermediate layer, since adhesion could otherwise not take place as required by the claim language. As a result, the structure described by claim 11 must necessarily have two layer combinations of three layers each, consisting of an outer layer/adhesive layer/intermediate layer.

Because the location of two outer (c) layers have been specified, the entire seven layer structure must necessarily be, outer layer/adhesive layer/intermediate layer/core layer/intermediate layer/adhesive layer/outer layer. Recast in terms of the subparagraphs of claim 11, that claim structure would read c/d/b/a/b/d/c.

**REDACTED**

Thus, the c/d/b/a/b/d/c order for the layer labels does not come from the "arranged symmetrically" language but, rather, from the rest of the claim. Cryovac is reading the "arranged symmetrically" limitation out of the claim by asserting that it means no more than c/d/b/a/b/d/c.

For all these reasons, Pechiney's proposed construction of "arranged symmetrically" should be adopted.

**B.    "oriented" or "oriented coextruded film"**

The interpretation of the claim term, "oriented," does not affect the infringement analysis because the accused ClearShield products are "oriented" under either proposed definition. However, the construction of "oriented" may affect the invalidity analyses because certain references disclose films that are oriented in the sense of being heated and stretched, but, these references do not necessarily disclose the process used to make the oriented film.

Unlike the other disputed claim terms and phrases, the specification of the '419 patent explicitly defines "oriented." Under applicable law, that definition controls. *Renishaw,* 158 F.3d at 1249 ("[T]he definition selected by the patent applicant controls."). Because the specification defines "oriented," and not "oriented coextruded film," "oriented" is the claim term that should be construed (especially because Cryovac has proposed that the Court construe "coextruded film" as a separate claim term).

**1.    Pechiney's Proposed Construction**

Pechiney proposes that the term "oriented" be construed to mean:

> A polymeric material which has been heated and stretched to realign the molecular configuration.

The definition of the phrase "oriented coextruded film" then is the combination of the definitions of "oriented" and "coextruded film," i.e., it is "An oriented film formed by coextrusion." This meaning is set forth in the intrinsic evidence.

20

2.    **Cryovac's Proposed Construction**

With regard to the terms "oriented" or "oriented coextruded film," Cryovac proposes:

> The term "oriented" is used in the claim as part of the phrase
> "oriented coextruded film," and should be interpreted in that
> context to mean:
> A film formed by coextrusion that is then heated to its orientation
> temperature range and stretched to realign the molecular
> configuration, this stretching accomplished by a racking or blown
> bubble process.

3.    **Analysis**

The specification sets forth an explicit definition of "oriented" that controls. *Renishaw,*

158 F.3d at 1249 ("[T]he definition selected by the patent applicant controls."). At column 3,

lns. 45-52, the '419 patent provides the following definition of "oriented":

> The term "oriented" and the like is used herein to define a
> polymeric material which has been heated and stretched to realign
> the molecular configuration, this stretching accomplished by a
> racking or blown bubble process.

Cryovac's proposed claim construction includes the language "this stretching

accomplished by a racking or blown bubble process" and Pechiney's proposed claim

construction does not.  The additional language requiring the stretching to be "accomplished by a

racking or blown bubble process" imposes a "product-by-process" limitation into claim 11 that

should not be incorporated into the claim.  The term "oriented" in this product claim should not

be limited to specific processes for orientation.

The scope of claims should not be limited by examples if the process language is

intended to be exemplary. *Ekchian v. Home Depot,* 104 F.3d 1299, 1303 (Fed. Cir. 1997);

*Medtronic Minimed, Inc. v. Smiths Med. MD, Inc.,* No. 03-776-KAJ, 2005 U.S. Dist. LEXIS

10583, at *72 (D. Del., June 1, 2005).  And, product-by-process claims are not limited to the

process set forth in the claims when performing a *Markman* analysis or determining patent

validity. *Scripps Clinic & Research Found. v. Genetech, Inc.*, 927 F.2d 1565, 1583 (Fed. Cir. 1991); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 218 F.Supp.2d 594, 598-99 (D. Del. 2002); *Syngenta Seeds, Inc. v. Monsanto Co.*, No. 02-1331-SLR, 2004 U.S. Dist. LEXIS 24253, at *9 (D. Del., Nov. 19, 2004). Because the processes should not limit the claim, the language "this stretching accomplished by a racking or blown bubble process" language should not be part of the construction of "oriented."

### C.    "film"

The claim term "film" should be accorded its ordinary meaning to one of skill in the art.

#### 1.    Pechiney's Proposed Construction

Pechiney proposes that the Court construe the claim term "film" to mean "a web of material(s), often plastic." This is the ordinary meaning as understood by a person of skill in the art and is consistent with the use of the term "film" in the intrinsic evidence. (Mount Decl. ¶16).

#### 2.    Cryovac's Proposed Construction

Cryovac's position is that the claim term "film" means "a thin, flexible, packaging material."

#### 3.    Analysis

Film, as used in the '419 patent, does not refer to the material used in a camera to capture an image. Rather, it is a general and generic term that refers to a web of material or materials, that is, a physical construct. The films at issue here are most often made of plastic. Films can be used as films or they can be further processed to produce other articles such as bags or containers. Films can have other materials such as paper or metal as part of the film.

The claim term "film" is used numerous times in the specification and claims of the '419 patent and in the prosecution history. However, there is no explicit definition of "film" in the intrinsic evidence. Certain uses of the term "film" in the intrinsic evidence do confirm that film,

for purposes of claim 11, is "a web of material(s), often plastic" and not necessarily "a thin, flexible, packaging material."

For example, the very first sentence in the specification of the '419 patent indicates that: "This invention relates to oriented thermoplastic films *for packaging applications*,…" (Column 1, lns. 5-6). This implies that being useful for packaging applications is not an inherent property of "film." If it was, the phrase "films for packaging applications" would be redundant. *Cf., Philips*, 415 F.3d at 1314 (citing *Mars, Inc. v. H. J. Heinz Co.*, 337 F.3d 1369, 1374 (Fed. Cir. 2004) and *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356 (Fed. Cir. 1999)). Indeed, as one of skill in the art would have known, "films" were (and are) potentially useful for applications other than packaging, e.g., as a table covering, a rain poncho or a tarp. Thus, the intrinsic evidence contradicts Cryovac's proposal that limits "film" to a "packaging material."

One of skill in the art would have understood "film" as used in claim 11 of the '419 patent to be a general and generic term that refers to a web of material or materials, often plastic.

### D.    "coextruded film"

Pechiney does not necessarily believe that once the Court has construed "film" it needs also to construe "coextruded film." Pechiney is currently unaware of any issue in the case that turns on the meaning of the "coextruded" part of "coextruded film." And, as noted above in the discussion of "oriented," product-by-process claims are not limited by the process language. *See infra* p 21.

### 1.    Pechiney's Proposed Construction

To the extent that the Court does determine that it should construe "coextruded film," Pechiney proposes that the phrase means "A film formed by coextrusion." This is the clear, ordinary meaning to one of skill in the art, is consistent with the use of the term in the intrinsic evidence and is also supported by the Mount declaration.

23

2.    **Cryovac's Proposed Construction**

Cryovac's position is that the claim phrase "coextruded film" means "A film formed by coextrusion in which the layers of the film are extruded together simultaneously."

3.    **Analysis**

To one of skill in the art, "coextruded film" was a well-known concept. Extrusion and coextrusion were and are well-known processes for the preparation of film. These processes are indisputably prior art to the '419 patent.

REDACTED

Thus, from the perspective of one of ordinary skill in the art, "coextruded film" is simply film formed by coextrusion rather than any other film forming technique, such as lamination.[7]

The '419 patent has nothing directly to say about the meaning of "coextruded film" or coextrusion. There is nothing in the specification of the '419 patent to indicate that the term

_____

[7]    Lamination is a process in which a first layer "A" is created separately from a second layer "B" and then the two layers are joined together, by use of an adhesive, to form a three-layer film with the layer order: A/adhesive/B.

24

coextruded film is being used in anything other than its typical sense. There is no support for Cryovac's proposed use of *simultaneously* in the definition of coextruded film. The ordinary meaning should apply if the Court even construes "coextruded film."

### E.    Subparagraphs (b), (c), and (d)

Subparagraphs (b), (c), and (d) each have similar language and should be construed consistently with each other given this parallel structure and language. *Phonometrics, Inc. v. Northern Telecom*, 133 F.3d 1459, 1465 (Fed. Cir. 1998). The dispute between the parties on the construction of these subparagraphs is that Cryovac proposes that each of the subparagraphs requires a common component. Cryovac's proposal is an attempt to distinguish certain prior art that does not contain common components in the outer layer but anticipates under Cryovac's definition of "arranged symmetrically" because the outer layers can both be labeled on "(c)" because they comprise polymeric material.

### 1.    "(b) two intermediate layers each comprising a polyamide"

#### a.    Pechiney's Proposed Construction

Pechiney proposes that the Court construe subparagraph (b) as follows:

> A first layer that is adhered on both sides to other layers and whose composition includes a polyamide but may also include other material(s) and a second layer that is adhered on both sides to other layers and whose composition includes a polyamide but may also include other material(s). The polyamide in the first layer need not be the same as the polyamide in the second layer.

#### b.    Cryovac's Proposed Construction

Cryovac has proposed the following definition for subparagraph (b):

> Two layers in a multilayer film, each adhered on both sides to other layers. Each must contain a common polyamide component but each may also contain other components as well.

25

2.   **"(c) two outer layers each comprising a polymeric material or blend of polymeric materials"**

a.    **Pechiney's Proposed Construction**

Pechiney proposes that the Court construe subparagraph (c) as follows:

> A first layer that is on the outside of the film and whose composition includes a polymeric material or blend of polymeric materials but may also include other material(s) and a second layer that is on the outside of the film and whose composition includes a polymeric material or blend of polymeric materials but may also include other material(s). The polymeric material or blend of polymeric materials in the first layer need not be the same as the polymeric material or blend of polymeric materials in the second layer.

b.    **Cryovac's Proposed Construction**

Cryovac has proposed the following definition for subparagraph (c):

> The two outer layers of a multilayer film. Each must contain a common polymeric component but each may also contain other components as well.

3.   **"(d) two layers, each comprising an adhesive polymeric material, which adhere each of said intermediate layers to a respective outer layer"**

a.    **Pechiney's Proposed Construction**

Pechiney proposes that the Court construe subparagraph (d) as follows:

> A first layer whose composition includes an adhesive polymeric material but may also include other material(s) and which adheres the first intermediate layer to the first outer layer and a second layer whose composition includes an adhesive polymeric material but may also include other material(s) and which adheres the second intermediate layer to the second outer layer. The adhesive polymeric material in the first layer need not be the same as the adhesive polymeric material in the second layer."

b.    **Cryovac's Proposed Construction**

Cryovac has proposed the following definition for subparagraph (d):

> Two layers of a multilayer film, which each adhere one of the intermediate layers to a respective outer layer. Each must contain

26

a common adhesive polymeric material but each may also contain
other components as well.

### 4.     Analysis

Subparagraphs (b), (c), and (d), each designate (*i.e.* label) two layers and identify the

polymer required to be in those layers.  The essential difference between the parties on the

meaning of these claim phrases is that Cryovac reads them as requiring that there be a common

component in each of the pairs of layers.  That requirement is not in subparagraphs (b), (c), or

(d).  Although, as shown above, the "arranged symmetrically" limitation provides the

requirement that the composition of the corresponding layers be the same.

The claim term "intermediate layers" in subparagraph (b) is explicitly defined in the '419

patent as follows:

> "Intermediate layer", "interior layer", and the like are used
> herein to define a layer in a multilayer film adhered on both sides
> to other layers.

(A0144, Ex. 10, '419 patent, col. 3, lns. 42-44).  Combining that definition with the definition of

comprising, the two intermediate layers are defined as Pechiney proposes.

Cryovac proposes that there must be a common polyamide component.  Nothing in the

ordinary meaning of subparagraph (b) or the specification or prosecution history of the '419

patent indicates subparagraph (b) requires a common polyamide component in the first and

second intermediate layers.  The language "each comprising a polyamide" certainly does not

require that the polyamide of one intermediate layer be the same as the polyamide of the other

intermediate layer.  The claim language "a" "in patent parlance carries the meaning of 'one or

more' in open-ended claims containing the transitional phrase 'comprising.'" *Free Motion

Fitness, Inc. v. Cybex Int'l, Inc,* No. 05-1006, 2005 U.S. App. LEXIS 19886, at *17 (Fed. Cir.

Sept. 16, 2005) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351, 1356 (Fed. Cir.

2000)). Thus, subparagraph (b) can be read as "two intermediate layers each comprising [one or more] polyamide[s]." And, normal reading of that phrase does not require Cryovac's proposed common component.

REDACTED

This straightforward reading of the language in subparagraph (b) applies equally to subparagraphs (c) and (d). Thus, like (b), there is nothing in the specification of the '419 patent or its prosecution history or in the ordinary meanings that would require that there be a common adhesive material in both adhesive layers or a common polymeric material in both outer layers.

**F.     "(a) a core layer comprising an ethylene vinyl alcohol copolymer"**

The first lettered subparagraph of claim 11 specifies use of an ethylene vinyl alcohol copolymer. This layer is the oxygen barrier layer. Pechiney is unaware of any current issue in the case that turns on the construction of subparagraph (a). Moreover, Pechiney believes that, if the Court construes subparagraph (a), the construction is a straightforward application of the clear claim language and the agreed definition of the term "comprising."

**1.     Pechiney's Proposed Construction**

To the extent that the Court does construe subparagraph (a), Pechiney proposes that the Court construe it to mean:

A central layer that is adhered on both sides to other layers and whose composition includes an ethylene vinyl alcohol copolymer but may also include other material(s).

### 2.    Cryovac's Proposed Construction

Cryovac proposes that subparagraph (a) be construed to mean:

A layer that must contain ethylene vinyl alcohol copolymer but may also contain other components, which is located between the two intermediate layers (b) of claim 11.

### 3.    Analysis

The parties agree that the core layer (a) must contain an ethylene vinyl alcohol copolymer and also agree the layer may include other materials. The dispute between the parties is that Cryovac would read into subparagraph (a), presumably based on the "core" layer language, a requirement that the (a) layer must be located between the two intermediate layers (b).


### REDACTED


This gives meaning both to the "core layer" language and the "comprising an ethylene vinyl alcohol copolymer" language.

There is nothing in the specification of the '419 patent or the prosecution history that would require a core layer to be between the two intermediate layers (b). Such a location for the core layer is the inevitable result of the combination of subparagraphs (a), (b), (c), and (d), but there is no support for Cryovac's proposed construction that subparagraph (a) itself (through the word "core" or otherwise) defines a layer between the intermediate layers (b).

### G.     "layer(s)"

Both Pechiney and Cryovac have defined "layer" or "layers" in connection with the multilayer film of claim 11, the proffered definitions do not and need not account for a monolayer film.

#### 1.     Pechiney's Proposed Construction

Pechiney proposes that the Court construe the claim term "layer" as "one thickness of material laid or lying over or under another." This is the ordinary meaning as understood by a person of ordinary skill in the art (Mount declaration ¶17) and is entirely consistent with the intrinsic evidence.

#### 2.     Cryovac's Proposed Construction

Cryovac proposes that "layer" be construed as "A thickness of material adhered to another thickness of material."

#### 3.     Analysis

There is not a great deal of dispute between the parties on the meaning of layer. It was well recognized by those of skill in the art, and the '419 patent confirms that, in multilayer films, some layers adhere to other layers based primarily upon their composition, and some do not. For example, the whole purpose of the adhesive layers (d) in the '419 film is to "ensure adequate adhesion" of the outer layers (c) to the intermediate polyamide layers (b). Layers may have very poor adhesion (depending on the particular materials), but one of skill in the art would still refer to layers even if they did not adhere to another layer. Adherence to another layer simply is not part of the definition of "layer." Pechiney does not believe that this point needs to be belabored. Cryovac's proposal should be rejected and Pechiney's proposal adopted.

### H.    "at least seven layers"

The claim phrase "at least seven layers" is a clear standard English language phrase the meaning of which is "readily apparent," *Phillips*, 415 F.3d at 1314, and therefore "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* Indeed, while proposed as a disputed claim term by Cryovac, Pechiney does not even agree that it needs construction.

#### 1.    Pechiney's Proposed Construction

To the extent that the Court determines to construe "at least seven layers," Pechiney proposes that the Court construe the claim phrase "at least seven layers" to mean "seven or more layers."

#### 2.    Cryovac's Proposed Construction

Cryovac proposes that "at least seven layers" means "At least the seven layers recited in subparagraphs (a), (b), (c) and (d) of claim 11."

#### 3.    Analysis

Once again, Cryovac tries to make the construction of a simple claim phrase complicated. The claim phrase "at least seven layers" should be construed (if it needs is to be construed at all) by its ordinary meaning "seven or more layers." Subparagraphs (a), (b), (c), and (d) are separate claim limitations; there is no reason to incorporate them into construction of the claim phrase "at least seven layers."

### I.    "comprising"

While Pechiney does not necessarily believe "comprising" needs to be construed, if the Court does construe "comprising," Pechiney and Cryovac agree that the definition set forth by the Federal Circuit in *Genentech Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) is appropriate:

"Comprising" is a term of art used in patent claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.

J.    **"layer comprising," "layers each comprising" and "layers, each comprising"**

If the Court has construed "layer(s)" and "comprising", Pechiney does not believe that the Court needs also to construe "layer comprising," "layers each comprising," and "layers, each comprising" separate and apart from the construction of subparagraphs (a), (b), (c), and (d).

Pechiney's proposed construction of these phrases set forth at Tab A comes directly from the claim language and the agreed definition of "comprising." Further analysis is set forth in connection with the proposed construction of subparagraphs (a), (b), (c), and (d).

32

## V.     CONCLUSION

For the foregoing reasons, Pechiney respectfully requests that the Court adopt Pechiney's

proposed constructions of the claim terms and phrases as set forth herein and in the

accompanying [Proposed] Order.

Dated:  October 19, 2005

Respectfully submitted,

By:  *K. Richard Powers*
     N. Richard Powers

N. Richard Powers (#494)
Rudolf E. Hutz (#484)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: 302.888.6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: 312 222-9350

33

## CERTIFICATE OF SERVICE

I hereby certify that I caused true and correct copies of Memorandum in Support of

Pechiney's Proposed Construction of the Disputed Claim Terms and Phrases to be served as

follows:

### VIA HAND DELIVERY
John W. Shaw, Esq.
Karen E. Keller, Esq.
YOUNG, CONAWAY, STARGATT,
  & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Fax: (302) 576-3334

### VIA FEDERAL EXPRESS
Ford F. Farabow, Esq.
Joann M. Neth, Esq.
Michael J. Flibbert, Esq.
Courtney B. Meeker, Esq.
FINNEGAN, HENDERSON, FARABOW,
  & GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Fax: (202) 408-4400

This 19th day of October, 2005.

N. Richard Powers (#494)

11