IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                                    )
                                                  )
        Plaintiff/Counter-Defendant,              )       Civil Action No. 04-1278-KAJ
                                                  )
                vs.                               )       Hon. Kent A. Jordan
                                                  )
PECHINEY PLASTIC PACKAGING,                       )       **FILED UNDER SEAL**
INC.,                                             )
                                                  )
        Defendant/Counter-Plaintiff.              )


**MEMORANDUM IN SUPPORT OF PECHINEY'S
MOTION FOR SUMMARY JUDGMENT ON PATENT ISSUES**


N. Richard Powers (#494)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: (302) 888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350


Dated:  October 19, 2005

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  NATURE AND STAGE OF THE PROCEEDING ...............................................1

III. SUMMARY OF ARGUMENT .............................................................................3

IV. CONCISE STATEMENT OF FACTS ..................................................................4

    A.  The '419 Patent ............................................................................................4

    B.  Pechiney's ClearShield™ Film ...................................................................7

    C.  Prior Art to the '419 Patent .......................................................................12

        1.  The Allied Film .................................................................................12

        2.  ANR Film C .....................................................................................13

V.  APPLICABLE LAW .............................................................................................14

    A.  Summary Judgment Standard .....................................................................14

    B.  Law on Infringement ..................................................................................14

        1.  Literal Infringement .........................................................................15

        2.  Infringement Under the Doctrine of Equivalents .............................15

        3.  Limitations on Application of the Doctrine of Equivalents...............15

    C.  Law on Patent Invalidity ............................................................................17

        1.  Anticipation......................................................................................18

        2.  Obviousness .....................................................................................18

        3.  Enablement .......................................................................................19

VI. ARGUMENT.........................................................................................................20

    A.  Pechiney Does Not Infringe Claim 11 of the '419 Patent. ........................20

        1.  Pechiney Does Not Literally Infringe Claim 11     **REDACTED**
                                                       ..................................................20

           a.          **REDACTED**          ..........................................................21

     b.    **REDACTED** ..................................................................................22

     c.    **REDACTED** .................................23

  2.  Pechiney Does Not Infringe Under the Doctrine of Equivalents..............................24

     a.   Prosecution History Estoppel Bars Cryovac From Relying on the Doctrine of Equivalents for the "Arranged Symmetrically" Limitation..............................24

        (1)    **REDACTED** ...........................................25

        (2)    **REDACTED** ...........................................25

        (3)    **REDACTED** .....................................26

     b.    **REDACTED** .............................27

B.  Claim 11 Of The '419 Patent Is Invalid..........................................................................28

  1.  Claim 11 Is Anticipated If "Oriented" Is Properly Construed.....................................28

     a.   The Allied Film Anticipates Claim 11........................................................................29

     b.   ANR Film C Anticipates Claim 11..............................................................................31

  2.  The Subject Matter of Claim 11 Would Have Been Obvious Even Under Cryovac's Proposed Construction of "Oriented."....................................................33

     a.   Level of Ordinary Skill in the Art and Problem Confronted by the Inventor of the '419 Patent...............................................................................................34

     b.   The Subject Matter of Claim 11 Would Have Been Obvious to One of Ordinary Skill in the Art. ......................................................................................34

        (1) Scope and content of prior art and differences between claim 11 and prior art.................................................................................................................34

        (2) Knowledge of one of ordinary skill in the art .................................................35

        (3) Motivation to orient a multilayer film .............................................................36

      c.  Cryovac Cannot Provide Any Evidence of Secondary Considerations With The Requisite Nexus To The Subject Matter of Claim 11 .....................................37

   3.  Claim 11 is Invalid Because It Is Not Enabled. ...........................................................37

VII.   CONCLUSION.................................................................................................................39

# TABLE OF AUTHORITIES

## Cases

*Ashland Oil, Inc. v. Delta Resins & Refractories Inc.*,
  776 F.2d 281 (Fed. Cir. 1985) ............................................................... 19

*Asyst Techs., Inc. v. Emtrak, Inc.*,
  402 F.3d 1188 (Fed. Cir. 2005) ............................................................. 27

*Bai v. L & L Wings, Inc.*,
  160 F.3d 1350 (Fed. Cir. 1998) ............................................................. 25

*C.R. Bard, Inc. v. Advanced Card. Sys., Inc.*,
  911 F.2d 670 (Fed. Cir. 1990) ............................................................... 14

*Cable Elec. Prods., Inc. v. Genmark, Inc.*,
  770 F.2d 1015 (Fed. Cir. 1985) ......................................................... 19, 37

*Cruciferous Sprout Litig., In re*,
  301 F.3d 1343 (Fed. Cir. 2002) ............................................................. 17

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
  807 F.2d 955 (Fed. Cir. 1986) ............................................................... 35

*Dow Chem. Co. v. Sumitomo Chem. Co.*,
  257 F.3d 1364 (Fed. Cir. 2001) ............................................................. 14

*E.I. duPont & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430 (Fed. Cir. 1988) ............................................................. 18

*Ecolochem, Inc. v. Southern Cal. Edison Co.*,
  227 F.3d 1361 (Fed. Cir. 2000) ............................................................. 19

*EWP Corp. v. Reliance Universal Inc.*,
  755 F.2d 898 (Fed. Cir. 1985) ............................................................... 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  344 F.3d 1359 (Fed. Cir. 2003). ....................................................... 16, 17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002) ............................................................................. 16

*Freedman Seating Co. v. American Seating Co.*,
  420 F.3d 1350 (Fed. Cir. 2005) ....................................................... 17, 27

*Genentech, Inc. v. Novo Nordisk A/S*,
  108 F.3d 1361 (Fed. Cir. 1997) ............................................................. 20

*Gentex Corp. v. Donnelly Corp.*,
  69 F.3d 527 (Fed. Cir. 1995) ................................................................. 14

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) .................................................................................. 18

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
  339 U.S. 605 (1950) ............................................................................. 15

*Hilgraeve Corp. v. McAfee Assocs., Inc.,*
  224 F.3d 1349 (Fed. Cir. 2000) .................................................................. 25

*Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.,*
  370 F.3d 1131 (Fed. Cir. 2004) .................................................................. 16

*Laitram Corp. v. Rexnord, Inc.,*
  939 F.2d 1533 (Fed. Cir. 1991) .................................................................. 15

*Mahurkar v. C.R. Bard, Inc.,*
  79 F.3d 1572 (Fed. Cir. 1996) .................................................................... 29

*Markman v. Westview Instruments, Inc.,*
  52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996) ........................ 15

*Moore U.S.A., Inc. v. Standard Register Co.,*
  229 F.3d 1091 (Fed. Cir. 2000) .................................................................. 28

*National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.,*
  166 F.3d 1190 (Fed. Cir. 1999) ............................................................ 20, 38

*Paulsen, In re,*
  30 F.3d 1475 (Fed. Cir. 1994) .................................................................... 18

*Railroad Dynamics, Inc. v. A. Stucki Co.,*
  727 F.2d 1506 (Fed. Cir. 1984) .................................................................. 18

*Robertson, In re,*
  169 F.3d 743 (Fed. Cir. 1999) .................................................................... 18

*Robotic Vision Sys., Inc. v. View Eng'g, Inc.,*
  189 F.3d 1370 (Fed. Cir. 1999) .................................................................. 17

*Rockwell Int'l Corp. v. United States,*
  147 F.3d 1358 (Fed. Cir. 1998) .................................................................. 18

*Ryco, Inc. v. Ag-Bag Corp.,*
  857 F.2d 1418 (Fed. Cir. 1988) .................................................................. 17

*Schering Corp. v. Geneva Pharms., Inc.,*
  339 F.3d 1373 (Fed. Cir. 2003). ................................................................. 18

*Senmed, Inc. v. Richard-Allen Med. Indus., Inc.,*
  888 F.2d 815 (Fed. Cir. 1989) .................................................................... 15

*Sjolund v. Musland,*
  847 F.2d 1573 (Fed. Cir. 1988) .................................................................. 19

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,*
  183 F.3d 1347 (Fed. Cir. 1999) .................................................................. 19

*Spectra Corp. v. Lutz,*
  839 F.2d 1579 (Fed. Cir. 1988) .................................................................. 14

*SSIH Equip. S.A. v. United States ITC,*
  718 F.2d 365 (Fed. Cir. 1983) .................................................................... 18

*Stratoflex, Inc. v. Aeroquip Corp.,*
    713 F.2d 1530 (Fed. Cir. 1983) ................................................................ 19, 37

*Tyler Refrigeration v. Kysor Indus. Corp.,*
    777 F.2d 687 (Fed. Cir. 1985) ................................................................... 18

*Vandenberg v. Dairy Equip. Co.,*
    740 F.2d 1560 (Fed. Cir. 1984) ................................................................ 19, 37

*Velander v. Garner,*
    348 F.3d 1359 (Fed. Cir. 2003) ................................................................ 37

*Verdegaal Bros., Inc. v. Union Oil Co.,*
    814 F.2d 628 (Fed. Cir. 1987) ................................................................... 18

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
    520 U.S. 17 (1997) ................................................................................... 15, 16

*Wright, In re,*
    999 F.2d 1557 (Fed. Cir. 1993) ................................................................ 20

**Statutes**

35 U.S.C. § 102 ............................................................................................. 3

35 U.S.C. § 102(a) ....................................................................................... 29, 31

35 U.S.C. § 102(b) ....................................................................................... 29

35 U.S.C. § 102(g)(2) ................................................................................... 29

35 U.S.C. § 103 ............................................................................................. 3, 25

35 U.S.C. § 103(a) ....................................................................................... 18

35 U.S.C. § 112 ............................................................................................. 4, 19

35 U.S.C. § 282 ............................................................................................. 17

**Other Authorities**

Fed. R. Civ. P. 56(c) ................................................................................... 14

## I.    INTRODUCTION

Pursuant to Rule 56, Fed.R.Civ.P., Defendant Counter-Plaintiff Pechiney Plastic Packaging, Inc. ("Pechiney") respectfully submits this memorandum of law in support of its Motion for Summary Judgment on Patent Issues with respect to all claims brought by Cryovac, Inc. ("Cryovac"). In this action, Cryovac alleges that Pechiney infringes claim 11 of United States Patent No. 4,755,419 ("the '419 patent") and that Pechiney's alleged infringement also constitutes tortious interference with contract or with prospective business relations. The alleged patent infringement is Cryovac's sole allegation of wrongful conduct supporting its tortious interference claim. Therefore, summary judgment in favor of Pechiney on either non-infringement or invalidity will have as its natural result summary judgment on the tortious interference counts as well.

## II.    NATURE AND STAGE OF THE PROCEEDING

On September 20, 2004, Cryovac filed the original complaint for patent infringement against Pechiney alleging that Pechiney has infringed at least claim 11 of the '419 patent under 35 U.S.C § 271(a). (A2, Ex. 1, D.I. 1, ¶11.) The only claim at issue is claim 11 of the '419 patent. (*Id.*)

On November 9, 2004, Pechiney filed its answer to Cryovac's original complaint denying Cryovac's infringement allegations asserting the affirmative defenses of non-infringement and invalidity and counterclaims for declaratory judgment of non-infringement and invalidity. (A23-32, Ex. 2, D.I. 13.)

On July 21, 2005, Cryovac filed an amended complaint to add claims of tortious interference with contract and tortious interference with a prospective contract. (A60-66, Ex. 4, D.I. 125 ("Cryovac's Amended Complaint").) In its tortious interference with contract claim, Cryovac alleges that "[i]n December 2003 and January 2004, Cryovac negotiated a written four-

1

year supply agreement with one of its customers, National Beef, and formed a binding four-year supply agreement with National Beef for various food packaging products on January 14, 2004." (*Id.* ¶14.) Cryovac also alleges that "[a]fter National Beef and Cryovac formed their agreement, Pechiney induced National Beef to breach its agreement with Cryovac and to enter into a four-year supply agreement with Pechiney instead." (*Id.* ¶16.) In Cryovac's tortious interference with contact and prospective contractual relations claims, Cryovac alleges that Pechiney sells ClearShield products to National Beef and that those product infringe the '419 patent. (*Id.* ¶¶17-18, 24-25, 27.)

On August 1, 2005, Pechiney filed its answer to Cryovac's Amended Complaint denying all relevant allegations and repeating its counterclaims. (A67-77, Ex. 5, D.I. 134.) On October 12, 2005, Cryovac filed a second amended complaint to add the claim of willful infringement. (A85-122, Ex. 7, D.I. 185 ("Cryovac's Second Amended Complaint").) At the time of the filing of this memorandum, Pechiney has not filed its answer to Cryovac's Second Amended Complaint. The answer, which will deny willfulness, is due on October 24, 2005.

On September 20, 2005, Pechiney moved to amend its affirmative defenses and counterclaims to add an affirmative defense of inequitable conduct, a counterclaim for inequitable conduct, and counterclaims for violations of the Lanham Act, 15 U.S.C. § 1125(a), and of Illinois' Deceptive Trade Practices Act, 815 ILCS §510/218) as well as for injurious falsehood and unfair competition. (A123-33, Ex. 8, D.I. 172.) That motion is currently pending before the Court. Pechiney's reply to Cryovac's Opposition is due on October 25, 2005.

Pursuant to the Scheduling Order, the joint proposed final pretrial order is due on or before April 17, 2006. (A139, Ex. 9, D.I. 22 ¶15.) The Pretrial Conference for this case is

scheduled on May 17, 2006. (*Id.*) This case is scheduled for a 10-day jury trial beginning on June 19, 2006. (A140, Ex. 9, *Id.* ¶17.)

### III.   SUMMARY OF ARGUMENT

1.     Pechiney does not literally infringe claim 11 of the '419 patent because Pechiney's ClearShield™ film does not have at least seven layers "arranged symmetrically" as required by the claim. This is true for two independent reasons.

REDACTED

2.     Pechiney does not infringe claim 11 of the '419 patent under the doctrine of equivalents because Cryovac is barred by prosecution history estoppel from relying on the doctrine of equivalents for the "arranged symmetrically" limitation.

3.     Even if Cryovac were not barred by prosecution history estoppel, Pechiney would not infringe under the doctrine of equivalents because ClearShield film's      **REDACTED** are not equivalent to seven layers arranged symmetrically

4.     If the Court construes the claim term "oriented" as Pechiney proposes in its separately filed *Markman* brief, there is no genuine issue of material fact, claim 11 is invalid as anticipated under 35 U.S.C. § 102 by a film supplied by Allied to Rutgers University for study and testing (the "Allied Film") and by a film ("ANR Film C") disclosed in an Allied Engineered Plastics News Release.

5.     In the alternative, if the Court finds there is a genuine issue of material fact as to whether the Allied Film and ANR Film C were "oriented" as construed by the Court, one of ordinary skill in the art would have been motivated to orient those films and would have had a reasonable expectation of success, making the subject matter of claim 11 invalid as obvious under 35 U.S.C. § 103. If one of ordinary skill would not have had an expectation of success,

3

claim 11 would be invalid under 35 U.S.C. § 112 as non-enabled because the '419 patent does

not teach anything new about how to orient the films of claim 11.

## IV.    CONCISE STATEMENT OF FACTS

### A.    The '419 Patent

The '419 patent issued on July 5, 1988, based on an application filed March 21, 1986.

(A141-48, Ex. 10, the '419 patent.)  The only claim at issue is claim 11 of the '419 patent.

Claim 11 reads as follows:

> 11. An oriented coextruded film having at least seven layers
> arranged symmetrically comprising:
>
> (a) a core layer comprising an ethylene vinyl alcohol copolymer;
>
> (b) two intermediate layers each comprising a polyamide;
>
> (c) two outer layers each comprising a polymeric material or blend
> of polymeric materials; and
>
> (d) two layers, each comprising an adhesive polymeric material,
> which adhere each of said intermediate layers to a respective outer
> layer.

Claim 11, as issued, corresponds to what was claim 1 during prosecution.

**REDACTED**

4

REDACTED

**REDACTED**

**B.     Pechiney's ClearShield™ Film**

Cryovac alleges that Pechiney's ClearShield film infringes claim 11 of the '419 patent.

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

**REDACTED**

REDACTED

**C.     Prior Art to the '419 Patent**

With respect to the prior art invalidity issues, this motion focuses on two prior art films referred to herein as the Allied Film and ANR Film C.

**1.     The Allied Film**

Rutgers University conducted two studies for Allied Chemicals to determine the physical and chemical properties of various films for food packaging. (Declaration of Seymour G. Gilbert, ("Gilbert Decl.") ¶¶7, 12.) The second Rutgers study for Allied commenced around 1983 and Rutgers received all the films for the second Rutgers study at the same time. (*Id.* ¶9.) One of the films for the second Rutgers study was a seven-layer film with the layer order: HDPE/tie/nylon/EVOH/nylon/tie /HDPE (the "Allied Film"). (*Id.*)

The second Rutgers study was described in at least: (1) the Allied News Release (A223-29, Ex. 17); (2) an article entitled "Nylon Film Effective Packaging" published in the December 1, 1984 Journal of Commerce ("Journal of Commerce Article") (A230-33, Ex. 18); and (3) an article entitled "Odor Barrier Properties of Multi-Layer Packaging at Different Relative Humidities" by E. Hatzidimitriu, S.G. Gilbert and G. Loukakis published in the March-April 1987 issue of Journal of Food Science ("Journal of Food Science Article") (A234-38, Ex. 19). (Gilbert Decl. ¶9; Declaration of Stratos Dimas ("Dimas Decl.") ¶7.)

The Allied Film was tested on an Instron Tester, which provides stress data relating to orientation, and on a Cross Polarization tester to visualize orientation. (Gilbert Decl. ¶15.) The results of the Instron Tester and the Cross Polarization tester showed that the Allied Film was oriented. (*Id.* ¶16.)

### 2.    ANR Film C

The Allied News Release was presented at the Society of Plastic Engineers Regional Technical Conference "Optimize: Barrier Coextrusion" on September 5-6, 1985. (A215-22, Ex. 16.) The Allied News Release disclosed a nine-layer coextruded film with the layer order HDPE/tie/nylon/tie/EVOH/tie/nylon/tie/HDPE ("ANR Film C"). (A223-29, Ex. 17, Allied News Release 2, Tables 1, 2 and 4.) The Allied News Release does not use the term "oriented" in connection with ANR Film C. The reference, however, disclosed that ANR Film C was 1.40 mils thick and disclosed its barrier protection properties. (*Id.*, Table 4.) The Allied News Release thus inherently disclosed that ANR Film C was oriented.

Various prior art references disclosed orientation by the specific use of tenterframing or double bubble processes. For example, U.S. Patent No. 5,055,355 ("the '355 patent"), with a priority date of August 1, 1983, disclosed a multilayer film having nylon/EVOH/nylon layers that was oriented by a blown tube apparatus or a tenter frame apparatus. (A261-64, Ex. 21, the '355 patent, col. 4, lns. 57-64.) U.S. Patent No. 4,572,854 ("the '854 patent"), with a priority date of February 22, 1984, disclosed a seven-layer film having a core layer of EVOH that was oriented by a tenterframing process. (A265-73, Ex. 22, the '854 patent, col. 7, lns. 21-26.) The steps for orienting films using the double bubble and tenterframing processes were described in detail in a treatise entitled "Plastic Films for Packaging Technology, Applications and Process Economics" by Calvin J. Benning (A285-87, Ex. 23, "Benning Treatise" 23-27), dated 1983 and

### REDACTED

Several prior art references also disclosed the advantages of orienting a film. These advantages include improved oxygen and aroma barrier properties, clarity, toughness, shrinkability, and other mechanical properties. (A269, Ex. 22, the '854 patent, col. 6, lns. 48-53; A281, Ex. 23, Benning Treatise 15;     **REDACTED**     A311-17, Ex. 24, "The Science and Technology of Polymer Films," edited by Orville J. Sweeting (1968) ("Sweeting Book") 459; A318-26, Ex. 25, "Uniaxially Oriented Nylon EVOH Film Coextrusion for High Performance Packaging" by Michael F. Tubridy of Allied Corporation ("Tubridy Article") presented at the COEX '85 Conference     **REDACTED**     (A319-21, Ex. 25;

**REDACTED**

## V.    APPLICABLE LAW

### A.    Summary Judgment Standard

Summary judgment "is as appropriate in a patent case as it is in any other case" where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law. *C.R. Bard, Inc. v. Advanced Card. Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990); *Spectra Corp. v. Lutz*, 839 F.2d 1579, 1581 (Fed. Cir. 1988). As such, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Gentex Corp. v. Donnelly Corp.*, 69 F.3d 527, 530 (Fed. Cir. 1995).

### B.    Law on Infringement

A patent infringement analysis requires two steps. First, the patent claim must be construed as a matter of law to determine its scope. *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001). Second, the properly construed claim is compared to the

accused product. *Id.*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).

### 1.     Literal Infringement

In order to find literal infringement of a patent claim, the patentee must prove by a preponderance of the evidence that each and every limitation set forth in the claim is found in the accused product exactly as recited in the claim. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Thus, if even one claim limitation is not literally met, there is no literal infringement.

### 2.     Infringement Under the Doctrine of Equivalents

If a claim is not literally infringed, it may be deemed infringed under the doctrine of equivalents if there is no substantial difference between each element of the claim and the accused product. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). The purpose of the doctrine is to prevent a fraud on the patent. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950). In considering infringement under the doctrine, a determination of equivalents is made on an element-by-element basis. *Warner-Jenkinson*, 520 U.S. at 29. Thus, the doctrine is applied to each element of the claim, rather than to the claim as a whole. *Id.* at 40.

### 3.     Limitations on Application of the Doctrine of Equivalents

There are limits, however, to the application of the doctrine of equivalents. First, the limitations in a claim cannot be given a range of equivalents so broad as to cause the claim to encompass anything in the prior art. *Senmed, Inc. v. Richard-Allen Med. Indus., Inc.*, 888 F.2d 815, 821 (Fed. Cir. 1989). Second, prosecution history estoppel may bar an assertion that the accused product includes an equivalent to a claim limitation. Whether prosecution history

estoppel applies is a question of law for the court to decide. *Warner-Jenkinson*, 520 U.S. at 39 n.8; *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003).

"The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office ('PTO') has narrowed the literal scope of a claim." *Festo*, 344 F.3d at 1366. If not, there is no prosecution history estoppel. *Id.* A "narrowing amendment may occur when either (1) a preexisting claim limitation is narrowed by amendment or (2) a new claim limitation is added by amendment." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1140 (Fed. Cir. 2004). "Either amendment will give rise to a presumptive estoppel if made for a reason related to patentability." *Id.*

If the amendment was narrowing, the second question is "whether the reason for that amendment was a substantial one relating to patentability." *Festo*, 344 F.3d at 1366. Where the prosecution history does not provide a reason for the narrowing amendment, *Warner-Jenkinson* presumes that the patentee had a substantial reason relating to patentability. *Id.* at 1367. Thus, the patentee must show that "the reason for the amendment was not one relating to patentability." *Id.* This showing is restricted to the evidence in the prosecution history. *Id.* "If the patentee successfully establishes that the amendment was not for a reason of patentability, then prosecution history estoppel does not apply." *Id.*

If the court determines after the first two questions that prosecution history estoppel applies, the third question involves determining the scope of the subject matter surrendered by the narrowing amendment. *Id.* There is a presumption that "the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id.* (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 740 (2002)). The

16

presumption of total surrender may be overcome if: (1) the "alleged equivalent would have been unforeseeable at the time of the narrowing amendment;" (2) "the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question;" or (3) there was "some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* at 1369-70. If the patentee fails to rebut the presumption, then "prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." *Id.* at 1367. If the patentee rebuts the presumption, then the court reaches on the merits the question of whether the accused element is equivalent to the claim limitation. *Id.* Whether an accused structure is equivalent to a claim limitation is a question of fact. *Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1357 (Fed. Cir. 2005).

### C.     Law on Patent Invalidity

A patent invalidity analysis requires two steps. First, the claim must be construed as a matter of law to determine its scope. Second, the properly construed claim is compared to the prior art. *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1346 (Fed. Cir. 2002). The Court begins with the statutory presumption of validity. 35 U.S.C. § 282 ("A patent shall be presumed valid."). Accordingly, "the burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.* Invalidity must be shown by clear and convincing evidence. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 189 F.3d 1370, 1377 (Fed. Cir. 1999). Where, as here, there is new prior art that is more pertinent than that which was considered by the PTO, the burden is more easily carried; it is easier to rebut the presumption. *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1423 (Fed. Cir. 1988); *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 905 (Fed. Cir. 1985); *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727

F.2d 1506, 1517 (Fed. Cir. 1984); *SSIH Equip. S.A. v. United States ITC*, 718 F.2d 365, 375 (Fed. Cir. 1983).

### 1.    Anticipation

Anticipation requires that each and every element of the claimed invention be disclosed in a single prior art reference. *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994). These elements can either be expressly or inherently described. *Verdegaal Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987); *Tyler Refrigeration v. Kysor Indus. Corp.*, 777 F.2d 687, 689-90 (Fed. Cir. 1985). To establish inherency, the missing descriptive matter must necessarily be present in the thing described in the reference. *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999). In other words, a limitation "is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art." *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003). The prior art inventor need not be aware of inherent properties in order for a reference to anticipate. *E.I. duPont & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1436 (Fed. Cir. 1988).

### 2.    Obviousness

A patent is invalid for obviousness under 35 U.S.C. § 103(a), "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). The ultimate determination of obviousness is a question of law based on underlying factual inquiries. *See Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir. 1998) (citation omitted). These inquiries include determining: (1) the scope and content of the prior art; (2) the differences between the claim and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) the impact of secondary considerations. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

When combining references to establish obviousness, there must be a "reason, suggestion, or motivation in the prior art that would lead one of ordinary skill in the art to combine the references, and that would also suggest a reasonable likelihood of success." *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999) (internal citation omitted). The suggestion to combine may be found in explicit or implicit teachings within the references themselves, from the ordinary knowledge of those skilled in the art, or from the nature of the problem to be solved. *Ecolochem, Inc. v. Southern Cal. Edison Co.*, 227 F.3d 1361, 1375 (Fed. Cir. 2000).

It is Cryovac's burden to come forward with evidence of secondary considerations after Pechiney has made out a *prima facie* case of invalidity. *Ashland Oil, Inc. v. Delta Resins & Refractories Inc.*, 776 F.2d 281, 291-92 (Fed. Cir. 1985). Before evidence of secondary considerations can be given substantial weight, a nexus between the merits of the claimed invention and the evidence offered must be established. *Cable Elec. Prods., Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1027 (Fed. Cir. 1985); *Vandenberg v. Dairy Equip. Co.*, 740 F.2d 1560 (Fed. Cir. 1984); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed. Cir. 1983). For example, if the success of a product is due to an unclaimed feature, the fact finder is not entitled to draw the inference that the success of the product is due to the merits of the claimed invention. *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988).

### 3.   Enablement

The enablement requirement is found in 35 U.S.C. § 112, ¶1, which provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

19

To satisfy the enablement requirement, a patent specification must "teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (quoting *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993)). The scope of the claims must be less than or equal to the scope of the enablement. *National Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999). As the Federal Circuit has explained, "patent protection is granted in return for an enabling disclosure of an invention, not for vague intimations of general ideas that may or may not be workable. . . . Tossing out the mere germ of an idea does not constitute enabling disclosure." *Genentech*, 108 F.3d at 1366.

## VI.    ARGUMENT

Pechiney is entitled to a summary judgment that it does not infringe claim 11 of the '419 patent literally or under the doctrine of equivalents. Pechiney is further entitled to a summary judgment that claim 11 is invalid.

### A.    Pechiney Does Not Infringe Claim 11 of the '419 Patent.

Pechiney does not infringe claim 11 by its manufacture in the U.S. and sale in the U.S. of ClearShield film.

#### 1.    Pechiney Does Not Literally Infringe Claim 11

REDACTED

Cryovac alleged that Pechiney's ClearShield film infringes only claim 11 of the '419 patent, which reads as follows:

> 11.    An oriented coextruded film having at least seven layers *arranged symmetrically* comprising:
>
> (a) a core layer comprising an ethylene vinyl alcohol copolymer;
>
> (b) two intermediate layers each comprising a polyamide;

20

        (c) two outer layers each comprising a polymeric material or blend of polymeric materials; and

        (d) two layers, each comprising an adhesive polymeric material, which adhere each of said intermediate layers to a respective outer layer.

(A147, Ex. 10, '419 patent) (emphasis added.) Pechiney does not literally infringe claim 11 by

its manufacture and sale in the U.S. of ClearShield film because the film's seven layers are not

"arranged symmetrically" as required by the claim.

     As explained at page 7 of Pechiney's Memorandum In Support of Pechiney's Proposed

Construction of the Disputed Claim Terms and Phrases filed concurrently herewith, "arranged

symmetrically" should be construed to mean:

     Putting the layers in a desired symmetrical order when the film is
     viewed in cross-section, that is, putting the layers in an order so
     that the geometrical center line of the core layer is the geometrical
     center line of the film and there is correspondence in the size
     (thickness) and composition of layers on opposite sides of the core
     layer resulting in the corresponding layers being mirror images of
     each other with the same thickness and the same chemical
     composition.

**REDACTED**

21

**REDACTED**

**REDACTED**

**REDACTED**

No reasonable jury could

find differently.  Therefore, Pechiney is entitled to a partial summary judgment that it does not

literally infringe claim 11 of the '419 patent.

>    2.    **Pechiney Does Not Infringe Under the Doctrine of Equivalents.**

Pechiney also does not infringe claim 11 of the '419 patent under the doctrine of

equivalents for two independent reasons.

**REDACTED**

This Court can conclude as a matter

of law that prosecution history estoppel bars any possible infringement under the doctrine of

equivalents regardless of whether the Court grants partial summary judgment of no literal

infringement.  *See, Hilgraeve Corp. v. McAfee Assocs., Inc.*, 224 F.3d 1349, 1355-56 (Fed. Cir.

2000) (vacating summary judgment of no literal infringement while affirming summary

judgment that prosecution history estoppel bars application of the doctrine of equivalents.)

**REDACTED**

**REDACTED**

**REDACTED**

A corollary to the All Elements rule is the "Specific Exclusion" principle, which bars coverage for an alleged equivalent that is fairly said to be excluded by the claim language. *See, e.g., Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005) (stating that "unmounted" cannot be equivalent of claimed "mounted" limitation under the specific exclusion principle because "the term 'mounted' can fairly be said to specifically exclude objects that are 'unmounted'"); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir.

2000) (affirming summary judgment of no infringement under the doctrine of equivalents

because a "minority" cannot be equivalent to a "majority" as recited in the claim limitation).

REDACTED

Therefore, there can be no infringement under the doctrine

of equivalents.

REDACTED

**B.    Claim 11 Of The '419 Patent Is Invalid.**

A number of prior art references anticipate claim 11 and prove that the subject matter of

claim 11 would have been obvious to one of ordinary skill in the art at the time of the alleged

invention. (Mount Decl. Tab A, Report, Tab B, Reb. Report 22-25, Tab D, 2nd Supp. Report.)

If the Court construes the claim term "oriented" as proposed by Pechiney, there is no genuine

issue of fact that two of these prior art references (the Allied Film and ANR Film C) anticipate

claim 11 and so make summary judgment appropriate. Moreover, even if the Court were to find

a genuine issue of material fact as to whether the Allied Film or ANR Film C was oriented as

construed by the Court, the undisputable facts show that the subject matter of claim 11 would

have been obvious to one of ordinary skill in the art at the time of the alleged invention. One of

ordinary skill in the art would have been motivated to orient these films and would have had a

reasonable expectation of success. To the extent that Cryovac contends that there was no such

expectation, claim 11 would be invalid as non-enabled because the '419 patent contains no new

teaching on how to orient films.

**1.    Claim 11 Is Anticipated If "Oriented" Is Properly Construed.**

There is no genuine issue as to any material fact that the Allied Film and ANR Film C

anticipate claim 11 if "oriented" is properly construed.

### a.    The Allied Film Anticipates Claim 11.

There is no genuine issue of material fact regarding anticipation of claim 11 by the Allied Film. The Allied Film is prior art at least because it was in public use in this country more than one year prior to the March 21, 1986 filing date of the '419 patent. Therefore, the Allied Film is prior art under § 102(b).[5] The Allied Film was not considered by the patent examiner during the prosecution of the '419 patent.

The Allied Film was: (1) a "coextruded film;" (2) "having at least seven layers;" (3) "arranged symmetrically;" and (4) including the layers recited in subparagraphs (a)-(d) of claim 11.

First, the Allied Film was a coextruded film. (Gilbert Decl. ¶10; Mount Decl, Tab A, Report, 31.) The Allied News Release confirms this: "Dr. Gilbert...subjected eight different *coextruded film* structures to nine different permeants." (A223-29, Ex. 17, Allied News Release 2 and Tables 1 and 2.)

Second, the Allied Film also met the claim 11 limitations of "at least seven layers." Infrared tests, generally accepted in the film industry to identify the various components of a multilayer film identified the various components of the Allied Film including its chemical composition and thickness. (Gilbert Decl. ¶15.) The tests show that the Allied Film had the structure HDPE/tie/nylon/EVOH/nylon/tie/HDPE. (*Id.* ¶17.) This film was disclosed as Film C

---

[5]    The Allied Film was known by at least individuals at Allied and Rutgers before the filing date of the application resulting in the '419 patent. Therefore, the Allied Film is also prior art under 35 U.S.C. § 102(a). In addition, the Allied Film was made in this country by an inventor, other than Mr. Shah, the named inventor of the '419 patent, prior to Mr. Shah's presumed date of invention of March 21, 1986. *See, Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1576 (Fed. Cir. 1996) (the filing date is the date of invention unless the patentee proves otherwise.) Allied did not abandon, suppress, or make any efforts to conceal the Allied Film as evidenced by allowing the publications. Thus, the Allied Film is also prior art under 35 U.S.C. § 102(g)(2).

in the Journal of Food Science Article that Dr. Gilbert co-authored. (*Id.* ¶9; A236, Ex. 19, Journal of Food Science Article, Table 1.)

Third, the Allied Film's layers were "arranged symmetrically" under either party's proposed claim construction. Based on Cryovac's proposed construction of "arranged symmetrically," the Allied Film is "arranged symmetrically" because the layer labels are arranged as c/d/b/a/b/d/c. (*See* Pechiney's Memorandum in Support of Pechiney's Proposed Construction of the Disputed Claim Terms and Phrases at 7.) In addition, Rutgers University used infrared tests to identify the various components of the Allied Film including its chemical composition and thickness. (Gilbert Decl. ¶15.) Cryovac's expert acknowledged that an infrared test is able to determine the chemical composition of a multilayer film. (A5035, Ex. 207, Deposition Transcript of Robert M. Kimmel, pg. 10, ln. 11-pg. 23, ln. 18.) The infrared spectra obtained from the individual layers of the Allied Film did not show any obvious differences in either composition or thickness of the corresponding layers around the center. (Gilbert Decl. ¶17.) Thus, the Allied Film layers were "arranged symmetrically" under Pechiney's proposed claim construction as well. (Mount Decl. ¶18, Tab D, 2nd Supp. Report 6.)

Fourth, the Allied Film had the structure HDPE/tie/nylon/EVOH/nylon/tie/HDPE. (A236, Ex. 19, Journal of Food Science Article, Table 1; Gilbert Decl. ¶17.) The Allied Film thus had: (a) a core layer comprising an ethylene vinyl alcohol copolymer; (b) two intermediate layers of nylon, a polyamide; (c) two outer layers of HDPE (high density polyethylene), which is a polymeric material; and (d) two tie layers, *i.e.*, adhesive polymeric material, which adhere each nylon layer to its respective outer layer. (Mount Decl. ¶20, Tab D, 2nd Supp. Report 6.)

With respect to the "oriented" limitation, the Allied Film was tested on an Instron Tester, which provides stress data relating to orientation and on a Cross Polarization tester to visualize

30

orientation. (Gilbert Decl. ¶15.)  As even Cryovac's expert acknowledges, these tests are reliable methods of determining the existence of film orientation and are generally accepted by individuals in the film industry. (A5039-40, Ex. 35, Kimmel Dep. Tr., pg. 31, ln. 10-pg. 35, ln. 11; Mount Decl. Tab D, 2nd Supp. Report 5.)  The results show that the Allied Film was oriented. (Gilbert Decl. ¶16; Mount Decl. Tab D, 2nd Supp. Report 5-6.)  Thus, there is no genuine dispute of material fact.  The Allied Film anticipates claim 11.

### b.     ANR Film C Anticipates Claim 11.

ANR Film C also anticipates claim 11 of the '419 patent.  ANR Film C is prior art under 35 U.S.C. § 102(a) because it was presented at a conference before the filing date of the '419 patent, which is the presumed date of invention.  Moreover, ANR Film C is new prior art, which was not considered by the examiner during prosecution of the '419 patent.

The Allied News Release expressly disclosed that ANR Film C was: (1) a "coextruded film;" (2) "having at least seven layers;" (3) "arranged symmetrically;" and (4) including the layers recited in subparagraphs (a)-(d) of claim 11.

First, the Allied News Release referenced "eight different coextruded film structures," including ANR Film C, which had the structure HDPE/TIE/NYLON/TIE/EVOH/TIE/NYLON/ TIE/HDPE. (A223-29, Ex. 17, Allied News Release, Tables 1, 2 and 4; Mount Decl. Tab A, Report 31.)

Second, the Allied News Release disclosed ANR Film C as a nine-layer film, which meets the "at least seven layers" limitation. (A223-29, Ex. 17, Allied News Release, at Tables 1, 2 and 4; Mount Decl. Tab A, Report 31.)

Third, although the Allied News Release does not disclose the thickness of the individual layers and does not use the term "arranged symmetrically," a person of ordinary skill in the art would have understood that the layer pairs were identical in composition and would have had the

31

same thickness. (Mount Decl. Tab A, Report 31.)  ANR Film C was subjected to different

permeants for barrier testing.  (A223-29, Ex. 17, Allied News Release 2, Tables 1 and 2.)

During such barrier testing, it is critically important to know the arrangements and the relative

thickness of the various layers. (Mount Decl. Tab A, 2nd Supp. Report 6.)  This is especially

true when measuring the effect of moisture on gas or chemical permeation in films containing

moisture sensitive barrier materials, such as EVOH. (*Id.*)  Should a moisture sensitive layer be

offset from the center of the film, it is customary to declare the position of that layer as either

toward the moisture or away from the moisture to highlight the impact of the moisture level,

such as relative humidity, on the permeation of the gas or chemical. (*Id.*)  The Allied News

Release did not include any such declaration of an offset.  Thus, the layers were arranged

symmetrically. (*Id.*)

　　　Fourth, the Allied News Release expressly disclosed a film comprising: (a) a core layer

comprising an ethylene vinyl alcohol copolymer; (b) two intermediate layers each comprising a

polyamide; (c) two outer layer each comprising a polymeric material or blend of polymeric

materials; and (d) two layers, each comprising an adhesive polymeric material, which adhere

each of said intermediate layers to a respective outer layer. (Mount Decl. Tab A, Report 31.)

　　　Moreover, Cryovac's expert did not allege that any claim elements, other than the

"oriented" limitation, of claim 11 were missing in the description of the ANR Film C in the

Allied News Release (A2311-12, Ex. 31, Kimmel 2nd Supp. Report 2-3.)[6]

　　　Thus, there is no genuine issue of material fact that ANR Film C in the Allied News

Release met all of the limitations of claim 11, with the possible exception of the "oriented"

---

[6]　Cryovac's expert, Dr. Kimmel, was only able to offer his opinion that ANR Film C was not
　　"oriented" by relying on Cryovac's incorrect proposed construction of "oriented." (*Id.*)

limitation.  If the Court construes "oriented" as proposed by Pechiney (as requiring that the material be heated and stretched to realign the molecular configuration without limitation to films oriented only by tenterframing or double bubble process), there is also no genuine issue of material fact that ANR Film C in the Allied News Release was oriented.

The Allied News Release does not use the term "oriented" in connection with ANR Film C.  However, the reference discloses that ANR Film C was 1.40 mils thick.  (A223-29, Ex. 17, Allied News Release, Table 4.)  The Allied News Release also discloses the permeability and relative ratings of barrier protection of the films.  (*Id.* Tables 1 and 2.)  The thickness of ANR Film C and the barrier protection relative ratings of ANR Film C disclosed in the Allied News Release indicated to one of ordinary skill in the art that ANR Film C was oriented because it would be extremely difficult to make a nine-layer film having a thickness of only 1.40 mils without stretching the melt or reheated film to achieve the desired thickness.  This stretching would inherently orient the film.  (Mount Decl. ¶21, Tab A, Report 31.)  Thus, the Allied News Release inherently discloses that ANR Film C was oriented under Pechiney's proposed construction of oriented.  (*Id.*)

> **2.    The Subject Matter of Claim 11 Would Have Been Obvious Even Under Cryovac's Proposed Construction of "Oriented."**

Even if the Court were to find there to be a genuine issue of material fact as to whether the Allied Film and ANR Film C were "oriented," claim 11 still would be invalid because the subject matter of claim 11 would have been obvious to one of ordinary skill in the art at the time of the alleged invention.

**a.**     **Level of Ordinary Skill in the Art and Problem Confronted by the Inventor of the '419 Patent**

For purposes of this motion, Pechiney will accept Cryovac's definition of a person of ordinary skill in the art.[7] Cryovac's position is that the hypothetical person of ordinary skill in the art would be "someone with a Bachelor's degree in chemical engineering, chemistry, or a related science and at least two years of experience in packaging industry research and development, particularly with 'multilayer films.'" (A247, Ex. 20, Response to Interrogatory No. 6;     **REDACTED**     The problem confronted by the inventor of the '419 patent was to design a film for packaging applications that has good oxygen barrier properties, good optical properties, heat shrinkability and superior toughness and abrasion resistance. (A143, Ex. 10, '419 patent, col. 1, lns. 5-47; col. 3, lns. 6-19.)

**b.**     **The Subject Matter of Claim 11 Would Have Been Obvious to One of Ordinary Skill in the Art.**

**(1)**     **Scope and content of prior art and differences between claim 11 and prior art**

If the Court were to conclude that the Allied Film and ANR Film C were not "oriented," this would be the only difference between claim 11 and the prior art films. One of ordinary skill in the art would have been motivated to orient the Allied Film or ANR Film C and thus the subject matter of claim 11 would have been obvious.

---

[7]   If necessary, at trial, Pechiney will prove that the person of ordinary skill is actually more skilled than Cryovac admits.

(2)     **Knowledge of one of ordinary skill in the art**

Oriented multilayer films were well known by those of ordinary skill in the art at the time of the alleged invention.  For example, U.S. Patent No. 5,055,355 ("the '355 patent"),[8] disclosed a multilayer film having nylon/EVOH/nylon layers that was oriented by a blown tube apparatus or a tenter frame apparatus.  (A261-64, Ex. 21, '355 patent, col. 4, lns. 57-64.)  In addition, U.S. Patent No. 4,572,854 ("the '854 patent") disclosed a seven-layer film having a core layer of EVOH and oriented by a tenterframing process. (A265-73, Ex. 22,  '854 patent, col. 7, lns. 21-26.)

Details of the double bubble process and the tenterframing process were described in detail and well known in the art.  (A285-87, Ex. 23, Benning Treatise,     **REDACTED**

The person of ordinary skill in the art is presumed to have knowledge of such prior art. *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986).

The advantages of orienting films, and thus the motivation to orient films, were also well known by those of skill in the art.  The '854 patent disclosed that a biaxial orientation multilayer film had excellent gas-barrier and aroma-barrier capacity together with good mechanical properties in comparison with a nonoriented film. (A269, Ex. 22, '854 patent, col. 6, lns. 48-54.) The Sweeting Book disclosed:

> Orientation of polymer films is a means of improving their strength
> and durability in order to broaden the scope of application in
> packaging and other uses, as well as making them serviceable in
> thinner gauges.  Among the physical properties of films that may
> be significantly improved by orientation are tensile and impact

---

[8]  The application for which the '355 patent claims priority was filed by Allied-Signal, Inc. on August 1, 1983, around the time Allied provided Dr. Gilbert with ANR Film C for the Second Rutgers Study.

35

strengths, stiffness, clarity, and resistance to crazing.  Gas and
water-vapor permeability may also be reduced.

(A363, Ex. 30, Sweeting Book 459.)


**REDACTED**


Such advantages to orienting a film are similarly disclosed in the

Benning Treatise (A281, Ex. 23) and the Tubridy Article (A319-21, Ex. 25).

**(3)    Motivation to orient a multilayer film**

It was known to a person of ordinary skill in the art that orienting a multilayer film

improves its oxygen and aroma barrier properties, clarity, toughness, shrinkability and other

mechanical properties.  (A269, Ex. 22, '854 patent, col. 6, lns. 48-53; A363, Ex. 30, Sweeting

Book 459;        **REDACTED**              A281, Ex. 23, Benning Treatise 15; A319,

Ex. 25, Tubridy Article 101-04.)  A skilled artisan, confronted with the problem of designing a

film for packaging applications that has good oxygen barrier properties, good optical properties,

heat shrinkability and superior toughness therefore would have been motivated to orient the

Allied Film or ANR Film C.  (Mount Decl. ¶¶22-23.)

Moreover, it was known to a person of ordinary skill in the art that "[v]irtually any

thermoplastic material can be oriented." (           **REDACTED**              A281, Ex. 23,

Benning Treatise 15.)  Furthermore, the '355 patent disclosed a multilayer oriented, coextruded

films containing nylon/EVOH/nylon layer combinations.  (A261-64, Ex. 21, '355 patent, col. 4,

--------------------------------------------------

9

**REDACTED**

lns. 57-64.) Therefore, there would have been a reasonable expectation of success by one of ordinary skill in the art to orient a multilayer, coextruded film containing nylon/EVOH/nylon layer combinations. (Mount Decl. ¶24, Tab C, Resp. and Supp. Report 10.) *Velander v. Garner*, 348 F.3d 1359, 1374-79 (Fed. Cir. 2003) (prior art references provide evidence that one of ordinary skill in the art would have had a reasonable expectation of success.)

        **c.**      **Cryovac Cannot Provide Any Evidence of Secondary Considerations With The Requisite Nexus To The Subject Matter of Claim 11.**

While the burden to establish secondary considerations consistent with non-obviousness rests with Cryovac, Pechiney is unaware of any secondary considerations with the required nexus to the subject matter of claim 11. *Cable Elec. Prods.*, 770 F.2d at 1027; *Vandenberg*, 740 F.2d at 1567; *Stratoflex*, 713 F.2d at 1539.

        **3.**      **Claim 11 is Invalid Because It Is Not Enabled.**

Cryovac may argue that the subject matter of claim 11 would not have been obvious because one of ordinary skill in the art would not have had a reasonable expectation of success in trying to orient the Allied Film or ANR Film C.

**REDACTED**

**REDACTED**

Hence, it is well within the skill of one of ordinary skill in the art to orient multilayer films.

In any event, such an argument would result in claim 11 of the '419 patent being invalid under 35 U.S.C. § 112 for failure to provide an enabling disclosure. In particular, the specification of the '419 patent teaches nothing new about how to orient films. (A285-87, Ex. 23, Benning Treatise;     **REDACTED**     ) Therefore, if Cryovac contends that sufficient knowledge and motivation to orient films did not exist in the prior art, then the '419 patent does not enable one of ordinary skill in the art to make the oriented films recited in claim 11 without undue experimentation. Thus, claim 11 would be invalid.

If Cryovac argues that its teaching in the '419 patent of how to orient a film was somehow new and unique, claim 11 still would be invalid as not enabled. Cryovac's disclosure of supposedly special conditions to orient the films in its examples in the '419 patent would not enable one of ordinary skill in the art to orient other undisclosed films. Yet, the scope of claim 11 is broader than Cryovac's specific examples. Thus, the remainder of the scope of claim 11 would not be enabled. This renders claim 11 invalid because the patent specification is required to enable the full scope of the claim. *National Recovery Techs.*, 166 F.3d at 1196.

## VII.    CONCLUSION

For the foregoing reasons, Pechiney respectfully requests that the Court grant Pechiney's motion for summary judgment that it does not infringe claim 11 of the '419 patent literally or under the doctrine of equivalents and that claim 11 of the '419 patent is invalid.


Dated:  October 19, 2005                                   Respectfully submitted,

                                                           By: _N. Richard Powers_
                                                               N. Richard Powers (#494)

N. Richard Powers (#494)
Rudolf E. Hutz (#484)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: (302) 888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350

### CERTIFICATE OF SERVICE

I hereby certify that I caused true and correct copies of Pechiney's Motion for Summary Judgment on Patent Issues to be served as follows:

**VIA HAND DELIVERY**
John W. Shaw, Esq.
Karen E. Keller, Esq.
YOUNG, CONAWAY, STARGATT,
 & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Fax: (302) 576-3334

**VIA FEDERAL EXPRESS**
Ford F. Farabow, Esq.
Joann M. Neth, Esq.
Michael J. Flibbert, Esq.
Courtney B. Meeker, Esq.
FINNEGAN, HENDERSON, FARABOW,
 & GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Fax: (202) 408-4400

This 19th day of October, 2005.

N. Richard Powers (#494)