IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC., )
)
)
Plaintiff/Counter-Defendant, )
)
)
v. )
)
PECHINEY PLASTIC PACKAGING, )
INC., )
)
Defendant/Counter-Plaintiff.

C.A. No.: 04-1278 (KAJ)

**Redacted Version -
Publicly Filed**

## PLAINTIFF CRYOVAC'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO PRINCIPLES ANNOUNCED IN DAUBERT

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Courtney B. Meeker
Mark J. Feldstein
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: October 19, 2005

063527.1001

DB01:1880415.1

# TABLE OF CONTENTS

I.    INTRODUCTION & NATURE AND STAGE OF PROCEEDINGS .................................1

II.   SUMMARY OF ARGUMENT .................................................................................2

III.  STATEMENT OF FACTS .....................................................................................3

    A.   Expert Testimony of Pechiney's Expert Dr. Mount ...................................3

        1.   Dr. Mount's opinion of invalidity based on the uncorroborated recollections of Mr. Gilbert......................................................3

        2.   Dr. Mount's opinion with respect to the acceptability of non-infringing alternatives ................................................................7

    B.   Expert Testimony of Pechiney's Expert Mr. Evans.................................8

        1.   Mr. Evans' patent damages opinion.........................................8

        2.   Mr. Evans' contract opinion ...................................................10

IV.   ARGUMENT .....................................................................................................12

    A.   Applicable Legal Principals...................................................................12

        1.   Expert testimony must be reliable and must assist the trier of fact ...........12

        2.   Uncorroborated oral testimony recalling long-past events does not provide the clear and convincing evidence required to invalidate a patent.........................................................................14

        3.   Speculation or conclusory assertions about acceptable non-infringing alternatives are inadequate ........................................15

    B.   Dr. Mount's Opinion of Invalidity Based on the Uncorroborated Recollection of Mr. Gilbert Should be Excluded................................16

        1.   Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 702*...................16

            a)   Dr. Mount's opinion was not derived by the scientific method...................................................................16

            b)   Dr. Mount's opinion is not objectively verifiable.........................17

            c)   Dr. Mount's opinion will not assist the trier of fact.....................17

        2.   Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 703*...................18

063527.1001

DB01:1880415.1

    3.    Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 403*...................20

        a)    Unfair prejudice .......................................................................20

        b)    Jury confusion............................................................................21

C.    Dr. Mount's Opinion on the Acceptability of Non-Infringing Alternatives
      Should Be Excluded Because It Lacks Support.........................................21

D.    Mr. Evans' Opinions Regarding the Existence of Acceptable Non-
      Infringing Alternatives Should be Excluded............................................22

    1.    Mr. Evans is not qualified to testify on the existence of non-
          infringing alternatives and as to whether any such alternatives are
          acceptable in the industry...........................................................23

    2.    The basis for Mr. Evans' testimony on the acceptability of non-
          infringing alternatives does not meet the requirements of *Rule 703* .........23

    3.    Mr. Evans' reliance on Mr. Kitchel as to the existence of
          acceptable non-infringing alternatives will prejudice Cryovac
          because fact discovery has closed................................................24

E.    Mr. Evans' Patent Damages Opinion Should be Excluded Because There
      is No Competent Evidence to Prove the Truth of Its Underlying
      Assumption That There Existed Acceptable Non-Infringing Alternatives...........25

F.    Mr. Evans' Opinions on Patent Law Should Be Excluded.......................26

G.    Mr. Evans' Contract Opinion Should Be Excluded.............................27

    1.    Mr. Evans' testimony on the contract should be excluded because
          it constitutes a legal conclusion .................................................27

    2.    Mr. Evans is not qualified to testify on the contract issues in this
          case........................................................................................29

    3.    Mr. Evans' contract testimony is inadmissible because it does not
          meet the requirements of *Federal Rule of Evidence 702*......................30

        a)    Mr. Evans does not set forth any basis for his opinion.................30

        b)    Mr. Evans does not set forth a proper methodology....................32

                                                                              ...33

V.    CONCLUSION.........................................................................

063527.1001

# TABLE OF AUTHORITIES

**Cases**

*Advanced Medical Optics, Inc. v. Alcon Inc.*,
No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803 (D. Del. Apr. 7, 2005) ................... 12, 20, 22

*Allen v. IBM Corp.*, No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016 (D. Del. May 19, 1997) ... 21

*American Bearing Co., Inc. v. Litton Industries, Inc.*,
540 F. Supp. 1163 (E.D. Pa. 1982) ........................................................................ 19, 20

*Barrett v. Atl. Richfield Co.*,
95 F.3d 375 (5th Cir. 1996) ............................................................................... 13

*Calhoun v. Yamaha Motor Corp. U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ........................................ 22

*Chemipal Ltd. v. Slim-fast Nutritional Foods International, Inc.*,
350 F. Supp. 2d 582 (D. Del. 2004) .......................................................................... 17

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ........................................................................................ passim

*Finnigan Corp. v. ITC*,
180 F.3d 1354 (Fed. Cir. 1999) ........................................................................ 14, 15, 19

*Grain Processing Corp. v. American Maize-Products Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ............................................................................... 15

*Heller v. Shaw Indus., Inc.*,
167 F.3d 146 (3d Cir. 1999) .................................................................................. 13

*In re, Paoli Railroad Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994) ................................................................................... 19

*Kidder, Peabody & Co. v. IAG Int'l Acceptance Group*,
14 F. Supp. 2d 391 (S.D.N.Y. 1998) .......................................................................... 27

*Loeffel Steel Prdts, Inc. v. Delta Brands, Inc.*,
No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718 (N.D. Ill. July 22, 2005) ........................ 23, 26

*McGowan v. Cooper Indus., Inc.*,
863 F.2d 1266 (6th Cir. 1988) ............................................................................... 14

*Media Sport & Arts v. Kinney Shoe Corp.*,
No. 95 Civ. 3901 (PKL), 1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 19, 1999) ........ 27, 28

063527.1001

*North Am. Philips Corp. v. Aetna Cas. & Surety, Co.*,
No. 88C-JA-155, 1995 Del. Super. Ct. LEXIS 340 (Bifferato, J.)
(Del. Super. Ct. Apr. 22, 1995) .................................................................................. 27

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043 (Fed. Cir. 2001) ................................................................................... 25

*Oxford Gene Technology Limited v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004) ............................................................................ 17

*Pharmastem Therapeutics, Inc. v. Viacell Inc.*,
No. 02-148-GMS, 2004 U.S. Dist. LEXIS 18638 (D. Del. Sept. 15, 2004) ............ 16

*Radiofone, Inc. v. Pricellular Corp.*,
No. 91-4306, 1992 U.S. Dist. LEXIS 19383 (E.D. La. Dec. 14, 1992) .................... 28

*Redman v. John D. Brush & Co.*,
111 F.3d 1174 (4th Cir. 1997) .................................................................................... 13

*Revlon Consumer Prods. Corp. v. L'Oreal S.A.*,
No. 96-192 MMS, 1997 U.S. Dist. LEXIS 4117 (D. Del. Mar. 26, 1997) ............... 26

*S.E.C. v. Lipson*,
46 F. Supp. 2d 758 (N.D. Ill. 1998) ............................................................................ 14

*Shaw v. Strackhouse*,
920 F.2d 1135 (3d Cir. 1990) ...................................................................................... 25

*Smith Indus. Med. Sys. Inc. v. Vital Signs, Inc.*,
183 F.3d 1347 (Fed. Cir. 1999) ................................................................................... 20

*Texas Digital Systems, Inc. v. Telegenix, Inc.*,
308 F.3d 1193 (Fed. Cir. 2002) ................................................................................... 21

*TMI Litig., In re*,
193 F.3d 613 (3d Cir. 1999) .................................................................................. 18, 23

*Utah Med. Prdts., Inc. v. Graphic Controls Corp.*,
350 F.3d 1376 (Fed. Cir. 2003) ................................................................................... 25

*Washburn & Moen Mgf. Co. v. Beat 'Em All Barbed-Wire Co.*,
143 U.S. 275 (1892) ..................................................................................................... 14

*Watkins v. New Castle County*,
374 F. Supp. 2d 379 (D. Del. 2005) ...................................................................... 23, 29

*Watkins v. Telsmith, Inc.*
121 F.3d 984 (5th Cir. 1997) ....................................................................................... 32

063527.1001

*Woodland Trust v. Flowertree Nursery Inc.,*
  148 F.3d 1368 (Fed. Cir. 1998) ...................................................................... 14, 15

**Rules**

*Federal Rule of Evidence 403* ................................................................ 2, 3, 14, 20

*Federal Rule of Evidence 702* ....................................... 2, 3, 12, 13, 16, 17, 30, 32

*Federal Rule of Evidence 703* ............................................. 2, 3, 14, 18, 23, 24

**Treatises**

1 Kenneth S. Brown *et al.*, *McCormick on Evidence* § 13 (5th ed. 1999) .................................... 29

063527.1001

# I.    INTRODUCTION & NATURE AND STAGE OF PROCEEDINGS

Pursuant to paragraph 3(d) of the Court's Scheduling Order, the plaintiff, Cryovac, Inc., ("Cryovac"), hereby moves to exclude expert testimony of the defendant, Pechiney Plastic Packaging, Inc. ("Pechiney"), pursuant to the principles announced in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993). Specifically, Cryovac moves to exclude testimony of Pechiney's experts, Dr. Eldridge Mount III and Mr. Larry Evans.

Cryovac and Pechiney exchanged initial expert reports on issues as to which each party has the burden of proof on May 19, 2005, in accordance with paragraph 3(d) of the Court's Scheduling Order. Pechiney only submitted one report, which was by Dr. Mount, who testified regarding the technology at issue and alleged invalidity of the patent-in-suit. [Exhibit (Ex.) 1] The parties exchanged rebuttal and supplemental expert reports on June 17, 2005, also in accordance with the Scheduling Order, with Pechiney submitting reports of Dr. Mount [Ex. 2] and Mr. Evans[1] [Ex. 3], who testified on damages issues. The Scheduling Order also permitted Pechiney to file reply expert reports on secondary considerations by July 1, 2005, and Pechiney filed another report from Dr. Mount at that time, in part responding to secondary considerations in accordance with the scheduling order, but also supplementing his opinions. [Ex. 4]

Then, more than a month after the conclusion of the period for expert reports set forth in the Scheduling Order, Pechiney filed the first of a series of additional reports it labeled as "supplemental." On August 5, 2005, Pechiney filed the first "supplemental" report of Mr. Evans, which he asserts supplements his report filed more than a month earlier and rebuts the deposition testimony and report of one of Cryovac's experts. [Ex. 5 at ¶ 1] Mr. Evans was

---

[1] Mr. Evans' report was submitted one week late, on June 24, 2005, by agreement between the parties.

063527.1001

then deposed on August 11, 2005, after which he filed another "supplemental" report on August 15, 2005, just four days before the close of discovery, opining in part on information he obtained the day of his deposition. [Ex. 6 at ¶¶ 4-8] Dr. Mount was deposed on August 4, 2005, and discovery closed on August 19, 2005. However, on September 13, 2005, five weeks after his deposition and four weeks after the close of discovery, Pechiney submitted a second "supplemental" expert report of Dr. Mount [Ex. 7]. In that report, Dr. Mount opined in part on two declarations Pechiney produced on the last day of discovery, one of which was by Mr. Seymour Gilbert [Ex. 8], who Pechiney represented was "retained as a consulting expert" [Ex. 9]. Mr. Gilbert did not provide any expert reports and, therefore, was not deposed during discovery.

Paragraphs 3(d) and 10 of the Scheduling Order set October 19, 2005 as the deadline for case dispositive motions and objections to expert testimony pursuant to *Daubert*.

## II.     SUMMARY OF ARGUMENT

Cryovac moves to exclude certain testimony of Pechiney's experts, Dr. Mount and Mr. Evans, pursuant to the principles announced in *Daubert*.

With respect to Dr. Mount, Cryovac moves to exclude his untimely opinion of invalidity based on the uncorroborated, nearly twenty year old recollections of Pechiney's retained consultant, Mr. Gilbert, on the grounds that it is inadmissible under: *Fed. R. Evid. 702* (because it was not derived by the scientific method, is not objectively verifiable and will not assist the trier of fact); *Fed. R. Evid. 703* (because it relies on inadmissible hearsay that is not the type of data reasonably relied upon by experts in Dr. Mount's field); and *Fed. R. Evid. 403* (because of unfair prejudice to Cryovac and potential jury confusion).

063527.1001

Cryovac also moves to exclude Dr. Mount's opinion on the acceptability of non-infringing alternatives under *Fed. R. Evid. 702* because it lacks support and is thus speculative and unreliable.

With respect to Mr. Evans, Cryovac moves to exclude his opinions regarding the existence of acceptable non-infringing alternatives on the grounds that he is not qualified to give such testimony; that the basis for his testimony does not meet the requirements of *Fed. R. Evid. 703*; and under *Fed. R. Evid. 403* because of unfair prejudice. Moreover, because there is no competent evidence to prove the truth of his underlying assumption that there existed an acceptable non-infringing alternative, Mr. Evans' patent damages opinion should be excluded as well.

Cryovac further moves to exclude Mr. Evans' opinions on patent and contract law because they constitute legal conclusions. Additionally, Mr. Evans is not qualified to testify on the contract issues in this case. Mr. Evans' contract testimony is also inadmissible because it does not meet the requirements of *Fed. R. Evid. 702* in that Mr. Evans does not set forth any basis for his opinion or a proper methodology.

## III. STATEMENT OF FACTS

### A. Expert Testimony of Pechiney's Expert Dr. Mount

#### 1. Dr. Mount's opinion of invalidity based on the uncorroborated recollections of Mr. Gilbert

In this action, Cryovac is suing Pechiney for patent infringement of a patent claim covering an <u>oriented</u> coextruded film having multiple layers arranged in a specified manner and made from specified materials. One of the defenses raised by Pechiney is that the patent claim is invalid because the claimed film was anticipated by a film made by Allied Corporation and sent

063527.1001

to Pechiney's consultant, Dr. Seymour Gilbert of Rutgers University in the mid-1980s.[2]  To support this defense, Pechiney relies on expert testimony by Pechiney's testifying expert, Dr. Eldridge Mount.

Pursuant to the Court's scheduling order, Pechiney's testifying expert, Dr. Mount, submitted his expert report on issues as to which Pechiney had the burden of proof on May 19, 2005. [Ex. 1]  In his expert report, Dr. Mount relied on a December 14, 1984 newspaper article (referred to by Mount as the "Journal of Commerce article") and an undated Allied Corporation news release (referred to by Mount as the "Hatley article"). [Ex. 1 at 30-31]

The Journal of Commerce article does not describe the structure of specific films. [Ex. 10]  Although the Allied news release [Ex. 11] does describe the structure of nine films (films A-I), only one of the films (film F) is described as being "oriented." [Ex. 11 at PPPI 008495]  Dr. Mount, however, does not rely on film F, the oriented film.  Rather, Dr. Mount relies on film C (referred to by Dr. Mount as the Hatley film). [Ex. 1 at 30-31]  The clear import of the Allied news release is that film C was not oriented because when a film was oriented that was specifically indicated, as in the case of film F.  This point was acknowledged by Dr. Mount at his August 4, 2005 deposition:

> Q.    And film F is indicated as being oriented, correct?
>
> A.    Yes.
>
> Q.    And none of the other films have that indication, do they?
>
> A.    No.
>
> Q.    No, I'm correct or no, I'm not correct?

---

[2] From his Declaration, it is apparent that Mr. Gilbert must be in his 90s since he received his Bachelors degree in 1935.  [Ex. 8 at ¶ 1]

063527.1001

DB01:1880415.1

A.   No, they don't have – excuse me.  No, they don't have the "oriented" in parentheses.

[Ex. 12 at 183:22 to 184:8]

Dr. Mount also testified that, as of the date of his deposition, he had no further information about the Hatley film:

Q.   So at this point in time you have no information about the Hatley film.

A.   Not the film itself, no.

[Ex. 12 at 175:17-19]

Discovery closed on August 19, 2005.  Thereafter, on September 13, 2005, Dr. Mount issued another expert report.  [Ex. 7]  In this "Second Supplemental Report," Dr. Mount relies on the uncorroborated declaration of Mr. Gilbert [Ex. 8] as the basis for concluding that Hatley's film C "is an oriented film."  [Ex. 7 at 4-6]  Pechiney first produced this inadmissible out-of-court statement by Mr. Gilbert on the last day of discovery.  [Ex. 13]  Prior to that, Pechiney had blocked discovery concerning Mr. Gilbert on the ground that Mr. Gilbert had been "retained as a consulting expert by Pechiney."  [Ex. 9]

In his declaration, Mr. Gilbert explains that he received the films described in the Allied news release "at the same time."  [Ex. 8 at ¶ 9]  Mr. Gilbert does not state when that was.  Nor does he provide any physical record corroborating the date of his receipt of these films.  Rather, he attempts to date the films by reference to the Journal of Commerce article, the Allied news release and a 1997 publication referred to by Mr. Gilbert as the "Journal of Food Science article."  [Id.]  Mr. Gilbert, thus, implies that he received the films in 1984 when the Journal of Commerce article was published.  The Journal of Commerce article, however, does not contain a description of the films.  Moreover, the Allied news release is undated, and the 1997 Journal of Food Science article was published far too late to qualify as invalidating prior art.

- 5 -

063527.1001

Mr. Gilbert also explains that he performed four kinds of physical tests on these films. [Ex. 8 at ¶ 15] However, he does not provide any physical records corroborating these tests or their results. Instead, Mr. Gilbert declares that it is his "recollection that the results of [some of these tests] showed that [film C] was oriented." [Ex. 8 at ¶ 16] This two decade old uncorroborated recollection is of course inconsistent with the Allied news release, which specifically indicates that only film F was "oriented." [Ex. 11 at PPPI 008495]

Moreover, it is not clear how Mr. Gilbert is using the term "oriented" in his declaration. What is clear, however, is that he is not using the term as it is used in the patent-in-suit. Indeed, both sides agree that the patent claim term "oriented" is defined by reference to the orientation method by which the film is made.[3] This is important because, as Dr. Mount confirmed, how the film is oriented effects the film's properties. [Ex. 12 at 57-59 and 211-212]

Mr. Gilbert does not profess to have any knowledge as to how the films supplied to him by Allied were made, or if they were oriented, how they were oriented. Thus, Mr. Gilbert has no basis for opining as to whether the films were "oriented" as the term "oriented" is used in the patent-in-suit. Indeed, Dr. Mount conceded at his deposition that neither the Hatley article nor the Journal of Commerce article provide any disclosure on how to orient:

> Q.   Did the Hatley article or the Journal of Commerce article provide any specific disclosure as to how to orient a seven-layer coextruded film?

---

[3] The term "oriented" is used in the patent claim in suit as part of the phrase "oriented coextruded film." Cryovac maintains that "oriented" should be interpreted in that context to mean: "A film formed by coextrusion that is then heated to its orientation temperature range and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process." Pechiney contends that "oriented" means: "A polymeric material which has been heated and stretched to realign the molecular configuration."

A.    I don't believe that they have a recipe for orientation or orientation conditions.

[Ex. 12 at 183:9-13]  Thus, there is no evidence of any kind as to how the films reported in the Allied news release were made or, if any were oriented, whether they were oriented in the manner required by the patent-in-suit.

2.    **Dr. Mount's opinion with respect to the acceptability of non-infringing alternatives**

In his June 17, 2005 Rebuttal Expert Report, Dr. Mount provided his opinion that there are several acceptable alternatives to ClearShield that do not infringe the patent claim in suit. [Ex. 2 at 31-32]  The report, however, does not cite to any facts or data to support Dr. Mount's opinion that the identified alternatives were in fact acceptable. [*Id.*]

When asked at his deposition what evidence he was relying on to support this opinion he responded that he had seen a document that showed that

**Redacted**

[Ex. 12 at 278:15 to 279:8]

He conceded, however, that the document was not identified in his expert report because "[i]t was shown to me after [he] finished the preparation of [his] report." [*Id.* at 279:9-13]  He also acknowledged that he had no way of identifying the document because he "didn't write down the Bates number." [*Id.* at 281:8-13]  Dr. Mount also admitted that he did not know

and

**Redacted**

that he had not done any investigation to determine that as part of formulating his opinions. [*Id.* at 282:11 to 284:15]

After the next deposition break, Pechiney's counsel provided two documents that Dr. Mount confirmed were the "document" to which he was referring. [*Id.* at 293:1-16]  The documents were marked Exs. 21 and 22, and Dr. Mount was then cross-examined thereon. With respect to Ex. 21, Dr. Mount acknowledged that this document reported that    **Redacted**

- 7 -

Redacted

[Ex. 12 at 311-12] Thus, neither exhibit supports Dr. Mount's opinion that there was an acceptable non-infringing alternative.

### B.    Expert Testimony of Pechiney's Expert Mr. Evans

#### 1.    Mr. Evans' patent damages opinion

Larry W. Evans has submitted three expert reports in this matter on behalf of Pechiney. Mr. Evans is a lawyer and his expertise is in the area of licensing patents, trademarks and technology. [Ex. 3 at ¶¶ 1-16]

Mr. Evans' expert reports read like legal briefs and include the citation and analysis of numerous legal decisions. [Ex. 3 at ¶¶ 19-22, 29, 32-34, 41 and 43; Ex. 5 at ¶¶ 10, 12, 13, 16 and 21; Ex. 6 at ¶ 10] At his deposition, Mr. Evans resisted answering simple questions about the facts underlying this opinion and instead launched into discussions of Federal Circuit case law. For example, Evans testified:

Redacted

063527.1001

[Ex. 14 at 87:10-22]

Based on his legal analysis, Mr. Evans concludes that Cryovac's patent damages

Redacted    ` [Ex.

3 at ¶ 22]  An important factor underlying Mr. Evans' opinion is the assumption that there are

acceptable non-infringing alternatives to ClearShield.  [Ex. 3 at ¶¶ 31, 41-44, 49, 53, 56-58; Ex.

5 at ¶¶ 2-6, 8-13 and 15-16; Ex. 6 at ¶¶ 2-10]  In fact, Mr. Evans did not provide any opinions as

to what patent damages should be if the fact finder concludes that there were no acceptable non-

infringing alternatives to ClearShield.

At his August 11, 2005 deposition, Mr. Evans conceded that he did not have the technical

expertise to draw the conclusion as to whether or not there were acceptable non-infringing

alternatives.  [Ex. 14 at 39:4-9 ("Well, I'm certainly not going to be testifying from a technical

standpoint.  That's not my role in the case.")]  Rather, Mr. Evans explained that he was "going to

rely on Dr. Mount" for any technical opinion as far as the acceptability of allegedly non-

infringing alternatives.  [Ex. 14 at 40:3-7]

Then, four days before the close of discovery Mr. Evans submitted a Second

Supplemental Report [Ex. 6] to describe additional information he learned about an allegedly

acceptable non-infringing alternative        Redacted        This

was the alternative that Dr. Mount had conceded        Redacted

Redacted        [Ex. 12 at 300-04]  In this report

Mr. Evans stated that he had obtained new information about this embodiment from an August

11, 2005 telephone conversation with Frank Kitchel, Pechiney's Marketing Director for Meat

and Dairy.  [Ex. 6 at ¶¶ 4-8]  Mr. Kitchel had already been deposed by Cryovac on July 28, 2005.

[Ex. 15]  Moreover, Mr. Evans had previously talked to Mr. Kitchel in connection with

- 9 -

preparation of his earlier expert reports [*see* Ex. 3 at ¶ 47 and Ex. 5 at ¶¶ 9 and 15] but had not included this information in these earlier reports.

In this Second Supplemental Report, Mr. Evans explains that Mr. Kitchell told him

Redacted

[Ex. 6 at ¶ 4] Mr. Kitchell reported further that this alternative

[*Id.* at ¶ 8] No evidence was cited, however, to substantiate any of these facts. Moreover,

Redacted

Because no documents were supplied with Mr. Evans' Second Supplemental Report to substantiate the claims made therein about this allegedly acceptable non-infringing product, Cryovac served a set of production requests seeking documents pertaining thereto. [Ex. 16 at ¶ 3] Pechiney waited the full thirty days to respond but did not produce any documents. [*Id.* at ¶ 4] Rather Pechiney promised that it would produce responsive documents "to the extent they exist and are found after a reasonable search." [*Id.*] To date, however, no documents have been produced even though over two months have now passed since Pechiney served Mr. Evans August 15, 2005, Second Supplemental Report. [*Id.* at ¶¶ 5-6]

### 2. Mr. Evans' contract opinion

Though most of Mr. Evans' testimony is constrained to damages arising from patent infringement, portions of his report do touch on damages arising from Pechiney's tortious interference with Cryovac's contract. In his Initial Report, Mr. Evans' entire opinion on the issue of the Cryovac/National Beef contract is as follows:

Redacted

**Redacted**

**Redacted**

[Ex. 3 at ¶ ¶ 27 and 28]

In his supplemental expert report, Mr. Evans elaborated:

The alleged contracts with National Beef, i.e

**Redacted**

063527.1001

DB01:1880415.1

**Redacted**

[Ex. 5 at ¶ 17 (emphasis in original) (internal citations omitted)]

Finally, in his Second Supplemental Report, Mr. Evans stated:

**Redacted**

[Ex. 6 at ¶ 10]

Mr. Evans says nothing more about the contract in any of his three reports. He does not purport to have reviewed any written communications between National Beef and Cryovac about the contract nor any evidence of the parties' course of conduct under the contract.

## IV.  ARGUMENT

### A.  Applicable Legal Principals

#### 1.  Expert testimony must be reliable and must assist the trier of fact

"*Federal Rule of Evidence 702* obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Advanced Medical Optics, Inc. v. Alcon Inc.*, No. 03-1095-KAJ, 2005 U.S. Dist. LEXIS 5803, at *3 (D. Del. Apr. 7, 2005). *Rule 702* provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise . . . ." Moreover, "[t]he party offering the expert testimony has the burden of proving admissibility." *Advanced*, 2005 U.S. Dist. LEXIS 5803, at *4.

- 12 -

As the U.S. Supreme Court explained in *Daubert,* the subject of an expert's testimony must have "a grounding in the methods and procedures of science" and be based on "more than subjective belief or unsupported speculation." 509 U.S. at 589-90. That is, "an inference or assertion must be derived by the scientific method . . . [and] supported by appropriate validation." *Id.* at 590.

Further, *Rule 702* requires that expert testimony "assist the trier of fact to understand the evidence or determine a fact in issue." This "'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition of admissibility." *Daubert* 509 U.S. at 591-92. That is, the expert's opinion must "have a reliable basis in the knowledge and experience of his discipline." *Id.* at 592.

In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id.* at 592-93. As part of that inquiry, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir. 1999).

A party can only elicit expert testimony from someone who has specialized knowledge or training sufficient to qualify him or her to opine on an issue within their field of expertise, and the expert's opinion must be confined to that field. *See Redman v. John D. Brush & Co.,* 111 F.3d 1174, 1179 (4th Cir. 1997) (metallurgist not qualified to testify about industry standards for safes); *Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 382 (5th Cir. 1996) (expert not qualified to testify about correlation of chemical effects on rats and on humans). Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province

of the fact-finder. *See McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (expert on standard of care should not have been permitted to opine on breach of that standard because the jury was equally qualified to make that determination); *S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

Moreover, in assessing a proffer of expert testimony under *Rule 702*, the Court should also be mindful of other applicable rules. *Daubert*, 509 U.S. at 595. *Rule 703* provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Also, *Rule 403* permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."

**2.     Uncorroborated oral testimony recalling long-past events does not provide the clear and convincing evidence required to invalidate a patent**

"The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999). As the Supreme Court recognized over one hundred years ago, such evidence is "unsatisfactory" due to "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury." *Washburn & Moen Mgf. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892).

"The Supreme Court's view of human nature as well as human recollection, whether deemed cynical or realistic, retains its cogency." *Woodland Trust v. Flowertree Nursery Inc.*, 148 F.3d 1368 (Fed. Cir. 1998). "This view is reinforced, in modern times, by the ubiquitous

- 14 -

paper trail of virtually all commercial activity." *Id.* "It is rare indeed that some physical record (*e.g.*, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other contemporaneous record) does not exist." *Id.* Accordingly, "[c]orroboration of oral evidence of prior invention is the general rule in patent disputes." *Id.* at 1371. "Moreover, the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation . . . or is uninterested but testifying on behalf of an interested party." *Finnigan*, 180 F.3d at 1367. Without corroboration, such testimonial evidence "is insufficient as a matter of law to establish invalidity" of a patent because "such testimony alone cannot surmount the hurdle that the clear and convincing evidence standard imposes in proving patent invalidity." *Id.* at 1370.

### 3.    Speculation or conclusory assertions about acceptable non-infringing alternatives are inadequate

"The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period.'" *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." *Id.* "The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period." *Id.* "Mere speculation or conclusory assertions will not suffice to overcome the inference." *Id.* "[T]he trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement." *Id.* "Acceptable substitutes that the infringer proves were available during the

- 15 -

accounting period can preclude or limit lost profits; substitutes only theoretically possible will not." *Id.*

**B.    Dr. Mount's Opinion of Invalidity Based on the Uncorroborated Recollection of Mr. Gilbert Should be Excluded**

**1.    Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 702***

Dr. Mount's opinion of invalidity based on the uncorroborated recollection of Mr. Gilbert that the film Mr. Gilbert tested over twenty years ago was "oriented" should be excluded under *Fed. R. Evid. 702* because the opinion: (a) was not derived by the scientific method; (b) is not objectively verifiable; and (c) will not assist the trier of fact.

**a)    Dr. Mount's opinion was not derived by the scientific method**

To be admissible, expert testimony must have "a grounding in the methods and procedures of science." *Daubert*, 509 U.S. at 589-90. For this reason, this Court held in *Pharmastem Therapeutics, Inc. v. Viacell Inc.*, No. 02-148-GMS, 2004 U.S. Dist. LEXIS 18638, at *34 (D. Del. Sept. 15, 2004) that it was error to permit expert testimony where the expert "did not review or analyze any of the . . . samples in reaching her opinion." This Court explained that such opinions "are not based upon any methods or procedures of science in general and certainly not upon her specific expertise as a stem cell biologist." *Id.* at *35.

Likewise, in arriving at his opinion, Dr. Mount did not review or analyze any data. Rather, Dr. Mount merely accepted Mr. Gilbert's twenty year old recollection of test data to conclude that a film was "oriented" notwithstanding that this memory was inconsistent with the contemporaneous Allied news release, which indicates that the film was not. Thus, as in *Pharmastem*, the expert opinion is not based upon any methods or procedures of science or Dr. Mount's expertise as a polymer chemist. Accordingly, this opinion should be excluded.

- 16 -

b)    **Dr. Mount's opinion is not objectively verifiable**

Dr. Mount's opinion based on the uncorroborated recollection of Mr. Gilbert should also be excluded because it is not objectively verifiable. As the Supreme Court explained in *Daubert*, "a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." *Daubert*, 509 U.S. at 593. Thus, in *Chemipal Ltd. v. Slim-fast Nutritional Foods International, Inc.*, 350 F. Supp. 2d 582, 594 (D. Del. 2004), this Court excluded an expert's opinion where the expert had not verified the accuracy of the data upon which he bases his opinion and because the opinion was "simply not objectively verifiable."

Similarly, here neither Dr. Mount, or any other expert, could verify the accuracy of Mr. Gilbert's statement that the film he tested was "oriented" because neither the film nor any record of the test data still exist. Thus, Dr. Mount's opinion is not objectively verifiable and for this reason as well should be excluded.

c)    **Dr. Mount's opinion will not assist the trier of fact**

In *Oxford Gene Technology Limited v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004), this Court excluded expert testimony that a patent was invalid "in part because it was not clear what or whose interpretation of the claims the expert applied in his analysis and would therefore not assist the trier of fact under *Rule 702*." Here too, it is not clear what or whose interpretation of the claims Dr. Mount applied in his analysis in his Second Supplemental Expert Report.

Dr. Mount seems to have simply adopted Mr. Gilbert's recollection that the film was "oriented" without any explanation from Mr. Gilbert as to how Mr. Gilbert was using that term. This is particularly problematic here given that both sides' proposed claim constructions define the claim phrase "an oriented coextruded film" based on the particular way by which the film is

- 17 -

made whereas Mr. Gilbert appears to be using the term "oriented" to refer to certain unstated film properties. However, a film's properties will differ depending on how the film is oriented [Ex. 12 at 57-59; 212] and the patent is very specific with respect to how the orienting must be accomplished:

> The term "oriented" and the like is used herein to define a polymeric material which has been heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process.

[Ex. 17 at column 3, lines 45-48]

Because it is not clear what or whose interpretation of the claim term "oriented" Dr. Mount has applied in his analysis, Dr. Mount's opinion would not assist the trier of fact and should be excluded for this reason also.

2.    **Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 703***

When conducting a *Daubert* analysis, the Court must also consider *Fed. R. Evid. 703*. *Daubert*, 509 U.S. at 595; *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999). *Rule 703* "focuses on the data underlying the expert's opinion. It permits experts to rely on hearsay so long as that hearsay is of the kind normally employed by experts in the field." *Id.* (citation omitted). Here Mr. Gilbert's hearsay statement is not the type of data reasonably relied upon by experts in Dr. Mount's field. Accordingly, Dr. Mount's opinion based thereon should be excluded.

In *TMI*, the expert's opinion was based on medical history summaries made by employees of trial counsel based on interviews those employees had with people from whom blood samples were taken. *Id.* at 698. This was the only information that the expert had about the health histories of the people whose blood she examined. *Id.* The expert did not review any medical or hospital records. *Id.* Nor did she examine the subjects herself. *Id.* The Third Circuit affirmed the exclusion of this expert testimony explaining that "[c]ommon sense alone suggests

- 18 -

that such evidence is 'based on an unreliable source of information.'" *Id.* In that regard, the Court faulted the expert for not having "reviewed her study subjects' medical and hospital records or examined the subjects herself" and for relying on information that came from individuals "aligned with counsel for one of the litigants." *Id.*

Similarly, here Dr. Mount's opinion is based on an unreliable source of information not reasonably relied upon by those in his field. Not only is Mr. Gilbert's twenty some year old recollection that the film was oriented not corroborated by any physical records, it is also inconsistent with the contemporaneous Allied news release, which reported that the film was not oriented. Additionally, Mr. Gilbert does not profess to have <u>any</u> knowledge about how the films discussed in his is declaration were made, or if oriented, how they were oriented. Moreover, Mr. Gilbert's uncorroborated testimony is insufficient as a matter of patent law to establish invalidity of a patent. *See Finnigan, supra.*

Rather than review technical records or examine the films himself, Dr. Mount merely took the word of an individual aligned with counsel for Pechiney, *i.e.*, Pechiney's retained consultant. As the Court held in *TMI*, this kind of evidence should be excluded under *Rule 703*. *See also In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994), (where the experts "based their conclusion as to a plaintiff's symptoms solely on the plaintiff's self-report of illness in preparation for litigation, the district court acted within its discretion in excluding the testimony as based on an unreliable source of information.").[4]

---

[4] This result is also consistent with *American Bearing Co., Inc. v. Litton Industries, Inc.*, 540 F. Supp. 1163, 1172 (E.D. Pa. 1982), which held that expert testimony based upon an out of court statement by another expert should have been excluded because it is "not the type of statetment upon which an expert economist should reasonably rely." In that case one expert testified based on a statement of another expert. The statement, however, was objectionable hearsay because the other expert made no mention of it in his testimony, and the opposing party had no
(continued on next page)

- 19 -

### 3.     Dr. Mount's opinion is inadmissible under *Fed. R. Evid. 403*

Dr. Mount's opinion of invalidity based on the uncorroborated recollection of Mr. Gilbert should also be excluded under *Fed. R. Evid. 403* because of unfair prejudice and potential jury confusion.

#### a)     Unfair prejudice

Under the Court's Scheduling Order, disclosure of expert testimony on issues as to which each party has the burden of proof were due May 19, 2005. Patent invalidity is an issue as to which Pechiney has the burden of proof. 35 U.S.C. § 282; *see Smith Indus. Med. Sys. Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1356 (Fed. Cir. 1999). Thus, Dr. Mount's complete invalidity opinions should have been submitted by May 19, 2005. Instead, Dr. Mount's submitted his Second Supplemental Expert Report on September 13, 2005, nearly a month after the close of discovery. This untimely submission, after the close of discovery, precluded Cryovac from obtaining discovery from Allied Corporation and Mr. Gilbert. It also kept Cryovac from securing its own expert testimony rebutting Dr. Mount's new opinions about Allied's film. Under these circumstances, this Court has held "that acceptance of such a late submission [*i.e.*, after the close of discovery] would be unfairly prejudicial and would make a 'mockery of the Rules' requirements for discovery and expert disclosure.'" *Advanced*, 2005 U.S. Dist. LEXIS 5803, at *34 (citation omitted).

---

(continued from previous page) opportunity to cross-examine him on that issue. *Id.* The Court reasoned that "*Rule 703* was never intended to permit an expert in any field to base an opinion upon such basic data which another expert had told him under such circumstances." *Id.* Similarly, here, Dr. Mount is basing his testimony on the uncorroborated out-of-court statement of Pechiney's consultant, Mr. Gilbert. As the court held in *American Bearing*, Rule 703 was never intended to permit expert testimony under such circumstances. *Id.*

063527.1001

Accepting Dr. Mount's September 13, 2005 report would be particularly unfair here because Pechiney blocked discovery of its communications with Mr. Gilbert (until it produced his self-serving declaration on the last day of discovery) claiming work product privilege because Mr. Gilbert had been retained as Pechiney's consulting expert. Given that Mr. Gilbert was Pechiney's consulting expert, the delay in providing Dr. Mount's report thereon is inexcusable. Dr. Mount's testimony should be excluded for this additional reason as well.

### b)    Jury confusion

As explained *supra*, without corroboration, testimonial evidence "is insufficient as a matter of law to establish invalidity of a patent." *Finnigan*, 180 F.3d at 1370. Thus, in *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed. Cir. 2002), the Federal Circuit affirmed the exclusion of such evidence because it was "unreliable and potentially confusing to the jury."

Similarly, here Mr. Gilbert's statement, even if it were testified to at trial, would be insufficient as a matter of law to establish invalidity because it is wholly uncorroborated. Not a shred of evidence corroborates Mr. Gilbert's statement that Allied's film C was oriented. To the contrary, the contemporaneous Allied news release indicates that it was not oriented. Under these circumstances, it would be confusing to the jury to let Dr. Mount testify based on such an unreliable statement. Indeed, the jury might be confused into thinking that Dr. Mount was corroborating Mr. Gilbert's statement. To avoid such confusion, both Mr. Gilbert's statement and Dr. Mount's opinions thereabout should be excluded.

### C.    Dr. Mount's Opinion on the Acceptability of Non-Infringing Alternatives Should Be Excluded Because It Lacks Support

"[A]n expert opinion must be based on facts, rather than premised on unsupported assumptions and speculation . . . ." *Allen v. IBM Corp.*, No. 94-264-LON, 1997 U.S. Dist.

- 21 -

063527.1001

LEXIS 8016, at *133 (D. Del. May 19, 1997); *see also Calhoun v. Yamaha Motor Corp. U.S.A.,* 350 F.3d 316, 322 (3d Cir. 2003) ("But there was no support for Dr. Karnes's opinion on an asserted 'tendency' to clench hands as a 'stress reaction.' There was no literature confirming this theory, nor demonstrable test. Lacking support, his testimony was speculative and unreliable. With no reliable foundation, the District Court did not abuse its discretion by prohibiting any conclusory statements on the throttle's design."); *Advanced Medical*, 2005 U.S. Dist. LEXIS 5803, at *10 (excluding expert's opinion regarding general preferences of other surgeons because opinion was "speculative and not supported by reliable data").

Here, there is no support for Dr. Mount's opinion that there are acceptable alternatives to ClearShield that do no infringe the patent claim in suit. Dr. Mount did not cite any supportive evidence that such alternatives were acceptable in his expert reports.

Redacted

Given that Dr. Mount's opinion was not supported, it is speculative and unreliable and should be excluded.

### D.  Mr. Evans' Opinions Regarding the Existence of Acceptable Non-Infringing Alternatives Should be Excluded

Mr. Evans' three expert reports repeat again and again his opinion that there are acceptable non-infringing alternatives to ClearShield. [Ex. 3 at ¶¶ 2-6, 8-13 and 15-16; Ex. 5 at ¶¶ 2-6, 8-13, and 15-16; and Ex. 6 at ¶¶ 1-10.) This testimony should be excluded because (1) Mr. Evans is not qualified to testify as to the existence of an acceptable non-infringing alternative; (2) Mr. Evans' testimony does not meet the requirements of *Rule 703*; and (3) Evans'

- 22 -

late reliance on unsubstantiated information from an already deposed Pechiney employee (Mr. Kitchell) at the close of fact discovery causes Cryovac to suffer unfair prejudice.

**1.    Mr. Evans is not qualified to testify on the existence of non-infringing alternatives and as to whether any such alternatives are acceptable in the industry**

"Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, <u>and the expert's opinion must be confined to that field.</u>" *Watkins v. New Castle County*, 374 F. Supp. 2d 379, 391-92 (D. Del. 2005) (emphasis added).

Mr. Evans is, at most, qualified in the area of patent and technology <u>licensing</u>. He has no qualifications to testify on technical matters such as whether a given product is an acceptable non-infringing alternative to ClearShield. Despite his lack of qualifications to do so, Mr. Evans continually opines as to the technical merit and availability of a non-infringing alternative to ClearShield. Moreover, Mr. Evans opines that this particular product is "acceptable" in the industry. Mr. Evans has no experience in the fresh red meat industry on which to base this opinion. *See* Section II.B.1. *supra*.

**2.    The basis for Mr. Evans' testimony on the acceptability of non-infringing alternatives does not meet the requirements of *Rule 703***

*Fed. R. Evid.* 703 requires an expert to base his opinions on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." *See also In re TMI Litig.*, 193 F.3d at 697. It is up to the party proffering the expert to make an "effort to carry their burden of proving by a preponderance of the evidence that the kind of information given to [the expert] is the kind 'reasonably relied upon by experts in the particular field'. . . ." *Loeffel Steel Prdts, Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718, *33 (N.D. Ill. July 22, 2005) (internal citations omitted).

- 23 -

*Rule 703*'s relaxation of the usual requirement of firsthand knowledge was premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline. *Id.* at *32. Nonetheless, *Rule 703* does not allow an expert to merely become the "mouthpiece" of another witness. Id. at *34. *Rule 703* is "not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion. *Id.* at *33-*34. Yet this is precisely what Mr. Evans attempts to do.

Mr. Evans merely called Frank Kitchel, a Pechiney marketing employee, and repeats Mr. Kitchel's **Redacted** . Mr. Evans has done no market survey or other study of the industry to learn what is or is not acceptable in the industry. Nor has he even reviewed any documents to determine if Mr. Kitchel's statements are supported. Rather, Mr. Evans simply repeats the marketing employee's **Redacted** This is simply inadequate and unreliable under *Rule 703*.

### 3. Mr. Evans' reliance on Mr. Kitchel as to the existence of acceptable non-infringing alternatives will prejudice Cryovac because fact discovery has closed

Under the scheduling order, Mr. Evans' opening expert report was due on June 17, 2005. Mr. Evans waited until after Mr. Evans' and Mr. Kitchel's depositions to discuss these issues and to file a Second Supplemental Expert Report, thereby depriving Cryovac of the opportunity to depose Mr. Kitchel about the statements repeated by Mr. Evans. After receiving Mr. Evans' Second Supplemental Report and its discussion of facts that according to Mr. Evans **Redacted** Cryovac served document requests on Pechiney seeking production of the documents underlying Mr. Evans' new information. Over two months later, Pechiney still has not produced these documents.

- 24 -

To permit Mr. Evans to testify on matters that no discovery was conducted on would unfairly prejudice Cryovac. Had Cryovac known that Mr. Evans intended to rely on Mr. Kitchel for his opinions, Cryovac would have obtained the underlying documents and deposed Mr. Kitchel on these topics. As fact discovery is now closed, Cryovac was not given this opportunity, and has suffered unfair prejudice as a result.

### E. Mr. Evans' Patent Damages Opinion Should be Excluded Because There is No Competent Evidence to Prove the Truth of Its Underlying Assumption That There Existed Acceptable Non-Infringing Alternatives

"[W]here an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) (*citing Shaw v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990). If there is no support in the record, the court may disregard the expert's opinion. *Shaw*, 920 F.2d at 1142 (holding that the district court did not err in disregarding experts' conclusions based on a factual assumption which the evidence of record did not support). Such testimony is not reliable and should be excluded as it "would mislead and confuse the jury." *Utah Med. Prdts., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1385-86 (Fed. Cir. 2003) (affirming district court's holding that license agreements offered to support expert's testimony were not relevant and, therefore, expert's opinions relying upon them were excluded as well).

Mr. Evans' entire damages opinion is premised upon the unsupported assumption that acceptable non-infringing alternatives exist. As set forth above, Pechiney has not produced any factual evidence, despite Cryovac's requests, or provided any valid expert opinion that acceptable non-infringing alternatives exist. He did not provide <u>any</u> opinions as to what patent damages should be if the fact finder concludes that there were no acceptable non-infringing alternatives to ClearShield. In the absence of any support for his opinions, Mr. Evans' opinions should be excluded in their entirety.

The district court excluded expert testimony under similar circumstances in *Loeffel Steel Products, Inc.*), 2005 U.S. Dist. LEXIS 15718, *38-*40, where the damages expert's opinion regarding economic loss was excluded because it was based on an unsupported assumption regarding plant productivity. The theory and actual numbers on which the expert "uncritically relied" were provided to him by defendant's employees, who did not testify regarding this information. *Id.* at *31, *38. The court held that without testimony from these employees the expert's testimony will "rest[] on air." *Id.* at *38 (citation omitted). "If the underlying assumptions cannot be proven by admissible, competent evidence, the very nature of which would appear to require expert testimony, [the expert's] analysis of economic loss would have no evidentiary support and would be irrelevant." *Id.* at *38-*39. Therefore, the testimony was excluded.

Likewise, in this case, the underlying assumption for Mr. Evans' entire patent damages opinion that an acceptable non-infringing alternative exits is predicated upon inadmissible evidence or no evidence at all and, therefore, should be excluded.

**F.    Mr. Evans' Opinions on Patent Law Should Be Excluded**

In his three expert reports, Mr. Evans repeatedly sets forth his opinions on patent law. [*See* Ex. 3 at ¶¶ 19-22, 29, 32-34, 41 and 43; Ex. 5 at ¶¶ 10, 12-13, 16 and 21; Ex. 6 at ¶ 10] Such expert testimony as to patent law is not permitted by this Court. *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, No. 96-192 MMS, 1997 U.S. Dist. LEXIS 4117 at *10 (D. Del. Mar. 26, 1997) (prohibiting expert witness from testifying "as to substantive issues of patent law. . . .") Accordingly, these portions of Mr. Evans' testimony should be excluded.

### G.    Mr. Evans' Contract Opinion Should Be Excluded

#### 1.    Mr. Evans' testimony on the contract should be excluded because it constitutes a legal conclusion

Just as this court does not permit experts in patent cases to testify as to substantive issues of patent law, such experts are not permitted to testify on substantive issues of contract law. When it comes to issues of contract law, "the proper scope of expert testimony intersects with the law of contract interpretation, which firmly prohibits expert testimony as to legal duties, standards or ramifications arising from a contract. Such testimony is reversible error and is not repaired by cross-examination." *North Am. Philips Corp. v. Aetna Cas. & Surety, Co.*, No. 88C-JA-155, 1995 Del. Super. Ct. LEXIS 340, at *10 (Bifferato, J.) (Del. Super. Ct. Apr. 22, 1995) (citations omitted).

Further, testimony on contract issues is impermissible because it invades the province of the jury. "Issues of contract formation involve 'quintessential common law jury question[s]' and do not present the jury with any 'new or more demanding task than what juries have always done.'" *Media Sport & Arts v. Kinney Shoe Corp.*, No. 95 Civ. 3901 (PKL), 1999 U.S. Dist. LEXIS 16035, at *10 (S.D.N.Y. Oct. 19, 1999) (*quoting Kidder, Peabody & Co. v. IAG Int'l Acceptance Group*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998)).

Throughout his several reports, Mr. Evans opines both on contract formation issues and contract interpretation issues and makes multiple statements that are clearly legal conclusions, including the following:

- 

### Redacted

- 

- 27 -

**Redacted**

Testimony nearly identical to Evans' was excluded in *Media Sport & Arts*, 1999 U.S. Dist. LEXIS 16035, at *10. In *Media Sport*, the expert attempted to offer opinion testimony on the existence of a contract including testimony that "all negotiations between [the parties] were not final," and that the proposed "agreement was never accepted by [Defendant]." *Id*. at *2. The court rejected this testimony, stating:

> [The expert's] testimony may not take the place of that of the individuals who actually negotiated the deal. Indeed, defendant's chief negotiator, [] has testified that he has negotiated hundreds of contracts in his career. [His] testimony would be far more appropriate on this subject and renders [the expert's] secondhand knowledge unnecessary for the edification of the jury.
>
> Therefore, to the extent that [the expert] would seek to opine on whether a contract was formed, he would inevitably have to discuss issues of contract law. Such testimony would usurp the role of the judge in instructing the jury on the law, as well the role of the jury in determining whether [defendant] breached any legal or contractual obligation.
>
> .   .   .   .
>
> The Court thus grants plaintiffs' motion to exclude [the expert's] testimony regarding the contract negotiations, except to the extent that such testimony is limited to an analysis of whether the parties' behavior conformed with industry customs and practices and whether this evidences the intent of the parties to be bound by contract.

*Id*. at *10-*12 (internal citations omitted); *see also Radiofone, Inc. v. Pricellular Corp.*, No. 91-4306, 1992 U.S. Dist. LEXIS 19383, at *15 (E.D. La. Dec. 14, 1992) (excluding testimony regarding whether certain letters between parties constituted a binding contract because industry-

related testimony "cannot include any comment or opinion on the requirements of contract formation under [state] law or the application of [state] law to the facts of this case").

Mr. Evans' statements regarding the Cryovac/National Beef contract should be excluded.

### 2.     Mr. Evans is not qualified to testify on the contract issues in this case

If the Court does conclude that experts are permitted to opine on either the terms or existence of a contract, Mr. Evans' testimony should still be barred because Mr. Evans does not have the requisite knowledge or experience to testify in this field. "Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field." *Watkins v. New Castle County*, 374 F. Supp. 2d at 391-92 (emphasis added). *See also* 1 Kenneth S. Brown *et al.*, *McCormick on Evidence* § 13 (5th ed. 1999) ("[T]he witness must have sufficient skill or knowledge related to the pertinent field or calling that his inference will probably aid the trier in the search for truth."). The test when it comes to qualifications "is not whether this witness is more qualified than other experts in the field; rather, the issue is whether the witness is more competent to draw the inference than the lay jurors and judge." *Id.* Mr. Evans' own discussion of his experience, as well as his curriculum vitae make clear in this case that Mr. Evans is stepping outside his field of expertise when he opines on contracts in the fresh red meat industry.

Mr. Evans is in no way qualified to testify on the issue of what constitutes a "requirements" contract in the fresh red meat industry, or what the parties' meant by their writing. In his initial report, Mr. Evans sets forth seven pages of information that qualifies him to testify on issues relating to license agreements and patents. This experience encompasses many aspects of negotiating licenses and licensing agreements of "patents, trademarks and technology." [Ex. 3 at ¶ 2 (emphasis added)] Nowhere outside of his "contract formation

- 29 -

063527.1001

testimony" does Mr. Evans mention his experience in negotiating *supply* contracts in the fresh red meat industry.[5]  The only thing Mr. Evans has offered as a qualification for his opinion on the formation of supply contracts is the following:  "In my nearly 30 years of corporate management experience, I have negotiated more than 30 to 40 supply agreements."  [Ex. 5 at ¶ 17]  Mr. Evans worked in the oil and gas industry, and he gives no explanation at all as to how his experience in the oil and gas industry makes him an expert on contracts for plastic packaging for fresh red meat.  This is not sufficient to qualify him as an expert in fresh red meat industry practice and custom.  His field of expertise is patents and technology licensing and his testimony should be confined to issues in that field.

### 3.    Mr. Evans' contract testimony is inadmissible because it does not meet the requirements of *Federal Rule of Evidence 702*

Finally, even in the event that this Court were to permit Mr. Evans to testify about the Cryovac/National Beef contract, such testimony is inadmissible because it lacks foundation and because Mr. Evans' purported methodology is unreliable.

### a)    Mr. Evans does not set forth any basis for his opinion

*Rule 702* "does not distinguish between scientific and other forms of expert testimony." *Fed. R. Evid. 702*, Advisory Committee Notes.  Rather, the court's gatekeeping responsibility applies with equal force to both scientific and non-scientific testimony.  *See id.*  In all cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the

---

[5] The only thing on Mr. Evans' curriculum vitae that could even remotely suggest his involvement in negotiating supply contracts is his experience with B.P. America; and even that is a stretch considering his position while he was there was Patent and License Counsel [Ex. 18 at A-2].

063527.1001

expert's field, and the expert must explain how the conclusion is so grounded." *Id.* "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.*

Mr. Evans' "word" is all he offers as foundation for his testimony about the contract. He sets forth as the basis for his opinion that the Cryovac/National Beef contract is not a "requirements" contract, a statement that in *his* experience (in the oil and gas industry)[6], the supply contracts negotiated *by him* included express quantity requirements. [*See* Ex. 5 at ¶ 17] He then takes an unsubstantiated leap by concluding that because the Cryovac/National Beef contract does not specify a quantity or requirement on its face, that it is not a "supply" or "requirements" contract. [*Id.*]  These broad and unfounded statements certainly do not meet *Rule 702's* requirement that an "expert's testimony must be grounded in an accepted body of

---

[6] Mr. Evans attempts to hide the fact that his "experience" negotiating supply contracts was in a totally different industry by not discussing the field of his experience in this part of the report. However, a glance at his curriculum vitae confirms his lack of experience in the fresh red meat industry:

   *Practice*:

   - Domestic and International Intellectual Property Licensing
   - Preparation and Negotiation of Licensing Agreements
   - International Business Transactions
   - Dispute Resolution
   - Service as an Expert Witness

   *Professional Employment History*:

   - Patent and Licensing Attorney
   - Division Patent & License Counsel
   - Patent and License Counsel
   - Director, Patent and License Department
   - IP and Licensing Consultant

[Ex. 18 at A-1 – A-3]

063527.1001

learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." In fact, Mr. Evans offers nothing more than a subjective basis for his opinion. As the Advisory Committee Notes state: "The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable." *Id.*

### b)    Mr. Evans does not set forth a proper methodology

As discussed above, *Rule 702* requires that non-scientific opinions be scrutinized to the same degree as scientific opinions. *Fed. R. Evid. 702*, Advisory Committee Notes. *See also Watkins v. Telsmith, Inc.* 121 F.3d 984, 991 (5th Cir. 1997) ("[I]t seems exactly backwards that experts who purport to rely on general engineering principles and practical experience might escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique.").

Further, when interpreting a contract for the sale of goods, much more than the writing itself must be considered in order to reliably ascertain the intent of the parties. *See* UCC § 2-208 cmt. 2 ("Under this section a course of performance is always relevant to determine the meaning of an agreement."); UCC § 2-202 cmt. 2 ("[W]ritings are to be read on the assumption that the course of prior dealings between the parties and the usages of trade were taken for granted when the document was phrased. Unless carefully negated they have become an element of the meaning of the words used."). Mr. Evans' methodology is deficient not only because he neglected to examine the parties' prior course of dealing and trade usage, but also because he failed to even recognize its relevance or discuss why he felt he was not required to consider such factors.

As Mr. Evans has failed to provide a proper basis for his testimony and failed to set forth a reliable methodology for his opinions, his entire testimony regarding the formation of a "supply" or "requirements" contract should be excluded under *Rule 702*.

- 32 -

V.    **CONCLUSION**

For all of the above reasons, the Court should exclude:

(1)   Dr. Mount's opinion of invalidity based on the recollections of Mr. Gilbert;

(2)   Dr. Mount's opinion with respect to the acceptability of non-infringing alternatives;

(3)   Mr. Evans' opinions regarding the existence of acceptable non-infringing alternatives;

(4)   Mr. Evans' patent damages opinion;

(5)   Mr. Evans' legal opinions; and

(6)   Mr. Evans' contract opinion.

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Courtney B. Meeker
Mark J. Feldstein
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: October 19, 2005

063527.1001

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on October 26, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE 19899

I further certify that on October 26, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY FEDERAL EXPRESS**

> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL 60611-7603

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> *Michele Sherretta*

> John W. Shaw (No. 3362)
> *jshaw@ycst.com*
> Karen E. Keller (No. 4489)
> *kkeller@ycst.com*
> Michele Sherretta (No. 4651)
> *msherretta@ycst.com*
> Andrew A. Lundgren (No. 4429)
> *alundgren@ycst.com*
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600

> Attorneys for Plaintiff Cryovac, Inc.