Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 1 of 13

Page 3
1992 U.S. Dist. LEXIS 19383, *

gust 24, 1990 will be presented [*4] to the Court outside the presence of the jury, at least until the Court has determined whether Radiofone is entitled to specific performance.

IV. Motion in limine to exclude evidence relating to unrelated transactions

The Court cannot, at this stage of the lawsuit, order the exclusion of evidence of the parties' similar cellular telephone transactions with non-parties. While the Court tends to agree that the issue of contract formation should be decided on the basis of the documents purported to constitute a contract between the parties, it has already declined to rule that those documents, as a matter of law, create binding obligations between the parties. Likewise, the Court does not find that evidence of similar transactions with non-parties, as a matter of law, is inadmissible at trial.

The Court, however, will only admit evidence of unrelated transactions where there is substantial relevance to the existence of a contract in this case. The Court will take whatever measures it deems necessary at trial to ensure that the purpose served by such evidence is clearly explained to the jury, that only such evidence as relates specifically to that purpose is admitted and that [*5] a proper foundation is established for each document. *Fed.R.Evid. 403* requires the exclusion of evidence that confuses the jury or results in a waste of time. Presentation of this evidence will be restricted so as to comply with Rule 403.

V. Motion in limine to exclude evidence relating to Radiofone's Board of Directors authorization of the contract

Radiofone next seeks to exclude all evidence pertaining to corporate resolutions of both Radiofone and Pricellular by which the corporations would have granted or failed to grant authority to their respective representatives to bind their corporations. Pricellular has listed various witnesses and exhibits in the Pre-Trial Order that pertain not only to the corporate resolutions in effect at the time their representatives were corresponding with regard to this purported transaction but also to transactions unrelated to this litigation. Pricellular argues that the manner in which the corporation authorized or ratified transactions carried out by their representatives will show that neither corporation authorized the individuals involved in the transaction at issue in this case to bind their respective corporation.

The Court finds [*6] that the authority of Larry Garvey to act on behalf of and bind Radiofone is not a material issue in this case. Radiofone is clearly not attempting to avoid being bound by the documents that it contends to be a contract between the parties. Pricellular has not shown that the issue of corporate authority was raised in any fashion during its dealings with Radiofone and Garvey, nor did they ever demand to see a corporate resolution. See, *Greenleaf Plantation, Inc. v. Kieffer, 403 So.2d 100, 104 (La. App. 3d Cir. 1981)*. The Court therefore, GRANTS the order requested by Radiofone excluding any and all evidence at trial pertaining to the authority of Larry Garvey to act on behalf of and bind Radiofone.

Whether Pricellular authorized or ratified the action of Robert Price is an issue that is contested by the parties. See Pre-Trial Order at pages 38, 46, 51 and 55. n1 In order to enforce the purported contract against Pricellular, Radiofone must prove that Robert Price had authority to so obligate Pricellular or that Pricellular later ratified his acts. La.Civ.C.Art. 2996, 2997; *Tedesco v. Gentry Development, Inc., 521 So.2d 717, 720-21 (La. App. 2d Cir. 1988)*. [*7] Radiofone argues that presentation of this issue will confuse the jury and have no relevance to the issue of contract formation. Certainly, a more efficient disposition of this issue would have been accomplished had the parties considered the applicable corporate acts and their own conduct throughout the purported transaction and agreed upon a stipulation as to Price's authority to act on behalf of the Pricellular defendants. The Court is not, however, in a position to decide the issue as presented. Having agreed that such authority is a contested issue of fact, Radiofone cannot now object to their relevance in this trial. n2

  n1 The issue of Pricellular's authorization is listed more than once in section VIII of the pre-trial order - Contested Issues of Fact. The first listing of the issue, at No. 5, is part of a list of issues plainly submitted by Radiofone, itself.

  n2 It may well be that the jury will be able to decide the question of authority, be it actual or apparent, based solely on the letters purported by Radiophone to be a contract. Pricellular is, nonetheless, entitled to present evidence of the means by which its agents are given authority to act on its behalf.

[*8]

Radiofone's motion to exclude evidence pertaining to the authorization by Pricellular defendants of the conduct of Robert Price is DENIED. The Court will rule on the admissibility of such evidence as presented at trial on the basis of the purpose for which it is presented.

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 2 of 13

Page 4
1992 U.S. Dist. LEXIS 19383, *

VI. Motion in limine to exclude expert testimony or evidence prepared by experts on Radiofone's actions in mitigation of its damages

Radiofone next seeks to exclude expert testimony to be presented by Pricellular pertaining to Radiofone's practice of absorbing extra costs charged by Pricellular to Radiofone's customers roaming through the Louisiana 8 system after their negotiations broke off. Pricellular's position is that by absorbing these rates, Radiofone failed to mitigate its damages. [HN3] Louisiana law requires that a plaintiff must have acted "with such care and diligence as a man of ordinary prudence would under the circumstances" in mitigating its damages. *Unverzagt v. Young Builders, Inc., 215 So.2d 823, 825 (La. 1968)*; La.Civ.C.Art. 2002. This duty suggests that the trier of fact (reasonable men) should be left to decide this issue without the need of expert testimony. [*9] The Court finds that no expert testimony, or any other testimony in the form of an opinion, pertaining to the reasonableness of Radiophone's practice of "absorbing" the extra charges assessed to its customers by Pricellular as the customers roamed through Pricellular's Louisiana system will be admitted at trial.

The Court further finds that Pricellular has failed to submit an expert report setting forth an opinion on the mitigation issue, as is required by this Court's pretrial notice. Pricellular apparently, as an afterthought, asked its valuation experts to give some consideration to Radiofone's absorption practices. Pricellular has not properly brought such testimony before the parties to this litigation.

For these reasons, Radiophone's motion is hereby GRANTED excluding any expert or other opinion evidence, by either party, pertaining to the reasonableness of Radiophone's practice of absorbing the extra costs charged by Pricellular to Radiophone's customers using its Louisiana 8 system.

As pointed out by Pricellular, this ruling does not require exclusion of factual evidence pertaining to Pricellular's increase in its roaming rates. Whether the roaming rates were within industry [*10] norms n3 may be considered by the jury as a fact pertaining to the reasonableness of Radiophone's decision to absorb these rates. This ruling excludes all opinion evidence relating to the reasonableness of the rates and Radiophone's absorption practice.

n3 This presumes that industry norms can be properly established by means other than opinion testimony.

VI. Motion in limine to exclude evidence of Radiofone's banking relationship with any bank and the alleged necessity of consent to this transaction by any bank

Pricellular contends that Radiofone did not intend the August 1990 letters to be binding agreements because Radiofone had not yet obtained the approval of its lender, Whitney National Bank, for the transfer of the Abilene system as required by its loan agreement. The Court considers Radiofone's obligation to its bank to obtain consent to exchange or transfer its assets, as well as the manner and timing of obtaining such approval, to be between Radiophone and its bank. Such evidence has no bearing [*11] on whether there was a meeting of the minds between the parties involved in this litigation. Pricellular knew nothing of this banking requirement prior to discovery taken in this litigation. This agreement between Radiophone and its bank could not, therefore, have had anything to do with the mutual intent of the parties to this purported contract.

The deposition testimony of Radiofone's contact at the bank shows that, even if Radiofone had not yet obtained approval, such approval would have, more likely than not, been forthcoming.

Accordingly, Radiofone's motion in limine seeking exclusion of evidence of or relating to Radiophone's banking relationship with any bank and/or the alleged necessity of consent to this transaction or any other Radiofone transaction by any bank, including, but not limited to, Whitney National Bank and the Union Bank, is hereby granted.

VIII. Motion to exclude evidence relating to matters which should have been but were not plead as affirmative defenses

Radiofone moves the Court to exclude all evidence presented by Pricellular in the form of its alleged defenses of vice of consent based on error, rescission and subsequent modification of the contract. [*12] Although this ruling will not likely affect any evidence to be presented at trial, the Court will grant an order excluding any evidence offered by defendants for the purpose of proving a vice of consent based on error.

In arguing against this motion with regard to vice of consent based on error, Pricellular contends that:

after all, Radiophone insists that it was understood and intended that the August 1990 letters constituted binding contracts, while the Pricellular defendants contend that it was not their intention to be bound by those letters.

These matters pertain solely to the issue of consent or contract formation. Error can only vitiate a contract when

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 3 of 13

Page 5
1992 U.S. Dist. LEXIS 19383, *

there is error as to cause. An error as to cause may "bear on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing, or the person or the qualities of the other party, or the law, or any circumstance that the party regarded, or should in good faith have regarded, as a cause of the obligation," Art. 1950. Whether or not a document amounts to a binding agreement is not "cause" under Article 1950. The two are entirely separate questions. Pricellular has merely mischaracterized [*13] the evidence of consent which, if allowed to be presented in such a form to the jury, would lead to confusion of the issues. The jury would be led to believe that the purported contract is open to attack on more fronts than it should be. It is likely that all evidence presented in support of Pricelllular's contention that no contract ever came into existence would have also been used to support this so-called error defense. The Court orders, however, that the defense of vice of consent on the basis of error is not available to defendants and will exclude all evidence offered for the specific purpose of proving such a defense.

As for subsequent modification or rescission of the contract, the Court does not find that the introduction of such evidence will result in prejudice or surprise to Radiofone. Both parties have established in the Pre-Trial Order that a great deal of evidence will be presented of negotiations and course of dealings subsequent to the August 1990 letters. These defenses may be borne out by the conduct of the parties following the August 1990 letters. Both parties have dealt with the documents and correspondence that Pricellular will rely on in support of these [*14] defenses throughout this litigation. Likewise, the Pre-Trial Order shows that these issues are properly set out between the parties.

Accordingly, Radiofone's motion in limine to exclude evidence in support of Pricellular's defenses of subsequent modification and vice of consent through rescission is DENIED.

IX. Additional objections to exhibits

Finally, Radiofone has objected to various exhibits listed by Pricellular without actually making them the subject of a motion in limine. These objections are noted and will be dealt with when the exhibits are offered into evidence.

PRICELLULAR'S MOTIONS IN LIMINE

A. Motion in limine to exclude the expert testimony of Robert M. Jackson that the August 1990 letters constitute a binding contract

Radiofone has submitted an expert report prepared by its regular outside counsel, Robert Jackson, that includes opinions on the requisites of formation of a contract, including particular reference to Louisiana contracts law, and on whether the letters of August 24, 1990 constitute a binding contract.

Radiophone contends that Jackson's expertise pertains to "industry practice" and the use made by documents such as the August 1990 [*15] letters.

While expert testimony on the function of such a document in "industry practice" may be relevant, to the extent it does pertain to industry-wide practice and not just Radiophone practice, such testimony cannot include any comment or opinion on the requirements of contract formation under Louisiana law or the application of Louisiana law to the facts of this case. Jackson's opinions on such matters will be of no assistance to the jury inasmuch as the Court will fully instruct the jury on the law to be applied.

The Court finds the holding of the court in *Marx & Co., Inc. v. Diner's Club, Inc., 550 F.2d 505 (2d Cir. 1977)* to be persuasive. There, a lawyer was recognized as competent to explain to the jury the ordinary practice followed by lawyers and corporations in preparing SEC securities registration statements. When the lawyer went on, however, to give his opinion as to the legal standards to be derived from the contract and which should have governed the parties' conduct, the Second Circuit held that the trial court was in error to allow such testimony, stating:

[HN4]
It is not for witnessses to instruct the jury as to applicable principles [*16] of law, but for the judge.

*Id., at 509-10*. Jackson, therefore, shall not be allowed to testify as to the legal standards to be applied to or derived from these documents.

The Court, therefore, GRANTS an order excluding any expert testimony by Robert Jackson to the effect that the August 24, 1990 letters constitute a binding contract.

B. Motion in limine to exclude the expert opinion testimony of Robert Jackson and Anne Jones as to the statutory and regulatory requirements of the Federal Communications Commission approval process

Pricellular seeks to exclude expert testimony by Jackson and Jones to the effect that the FCC does not require a particular form for a contract transferring cellular systems. Radiofone argues that such testimony is needed to rebut Pricellular's contention that this is a complex FCC case. The same rule as stated in section A, above, will apply to the testimony of Jackson and Anne P. Jones as to the legal effect of FCC regulations on issues to be decided by this jury. If qualified as experts in industry practice, Jackson and Jones can testify as to what the FCC requires but cannot testify as to whether

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 4 of 13

Page 6
1992 U.S. Dist. LEXIS 19383, *

the August 1990 [*17] letters, or any other document alleged to be a part of this contract, comply with the FCC regulations.

Accordingly, that part of Pricellular's motion in limine seeking exclusion of expert testimony of Robert Jackson and Anne Jones as to the compliance of the August 1990 letters with the requirements of the FCC is GRANTED.

C. Motion in limine to exclude evidence and testimony regarding unrelated litigation in which the Pricellular defendants have been named as defendants

Radiofone's exhibits P-22 and P-79 are complaints and exhibits filed by third parties in unrelated litigation against Pricellular. The Court considers Radiofone's listing of exhibits P-22 and P-79 as an impermissable attempt to introduce evidence of other alleged wrongs or acts. [HN5] Under *Fed.R.Evid. 404(b)*, such evidence is admissible only where:

the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403. Third, the line of reasoning that deems an extrinsic offense relevant to the issue of intent is valid only if an [*18] offense was in fact committed and the defendant in fact committed it.

*Dial v. Travelers Indem. Co.*, 780 F.2d 520, 523 (5th Cir. 1986). Allegations in a complaint not filed by Pricellular do not meet the requirements above. They do not establish that Pricellular committed the alleged breaches.

[HN6] Allegations of a third party contained in a pleading are clearly hearsay. The only manner in which such evidence would be admissible would be where it was contained in one of Pricellular's own pleadings filed in another action. See, Century "21" *Shows v. Owens*, 400 F.2d 603, 610 (8th Cir. 1968).

Accordingly, Pricellular's motion in limine to exclude Radiophone exhibits P-22 and P-79 and any other evidence relating to other contract litigation in which the Pricellular defendants have been named as defendants is GRANTED.

D. Motion in limine to exclude evidence and testimony relating to the specific details of the bankruptcy of Pricellular's parent corporation

Pricellular next contends that various aspects of the financial condition of its parent company, Price Communications, should be excluded. Radiofone points out that [*19] Pricellular has stated, in documents submitted to the FCC prior to this transaction, that its financial condition depends on that of its parent corporation. Pricellular admits that the fact of Price Communications' financial restructuring is admissible but that certain details leading up to that restructuring should not be admitted, including missed debt and interest payments and the filing of an involuntary bankruptcy. The Court is not in a position at this juncture to determine just where the line should be drawn, if at all, on this evidence. Pricellular's previous reliance on the financial condition of price Communications may result in much of such evidence being relevant to its own financial condition throughout its negotiations with Radiophone.

The Court will, therefore, DENY that part of Pricellular's motion in limine seeking exclusion of details relating to the financial condition and bankruptcy of Price Communications and will rule on the admissibility of such evidence as presented.

E. Motion in limine to exclude testimony of Radiofone customers

Radiofone seeks to elicit opinion testimony as to the reasonableness of its absorption practice but has asked this Court [*20] to preclude Pricellular from presenting similar evidence. Whether from experts or from customers, no such testimony will be allowed at trial.

The Court finds that testimony from a customer of what course of action he/she would have taken under a different set of circumstances can be based on nothing but speculation. Speculative testimony from a lay witness is precluded under *Fed.R.Evid. 701*. Radiofone has demonstrated no indicia of trustworthiness that would attach to any of its customers' testimony that would warrant overlooking its obvious speculative nature. The reasonableness of Radiofone's absorption practice will be decided without the input of either parties' opinion on the matter. That part of Pricellular's motion in limine seeking the exclusion of testimony of Radiofone's customers, Lou Stacy, Bonnie Ernst, and Larry McCall, is, therefore, GRANTED.

F. Motion in limine to exclude Pricellular's Board of Directors meetings' minutes of those minutes which the Pricellular defendants previously produced to Radiofone

In producing copies of minutes of its Board of Directors' meetings to Radiofone, Pricellular redacted all portions that it considered to have no relation to [*21] the purported transaction in this case. When the same minutes were produced again later, some of the unrelated matter was not redacted as in the first production. Pricellular, apparently considering a part of the unrelated material to be of value, seeks to have the "more complete," although not entirely complete, version submitted in lieu

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 5 of 13

Page 7
1992 U.S. Dist. LEXIS 19383, *

of that version pertaining directly to the transaction in this case.

The Court will not require Radiofone to present evidence that Radiofone does not consider to be pertinent to its case. Pricellular may present its own evidence. Pricellular's motion in limine is, therefore, DENIED.

G. Motion in limine to exclude evidence and testimony relating to Radiofone's lost profits and "competitive damages"

PriCellular seeks to have Radiofone's damage claims for lost profits and "competitive damages" stricken on the basis that they are unavailable in an action for breach of a contract of exchange.

"Contract of exchange" is PriCellular's interpretation of the nature of the alleged contract in this case. While that interpretation may be accurate for some purposes, it will be for this Court and the jury to interpret this contract and award the appropriate [*22] damages. Pricellular relies on the Louisiana Supreme Court case of *Womack v. Sternberg, 172 So.2d 683 (La. 1965)* in support of its position. The court, however, did not confront the issue of lost profits or competitive damages. Womack was simply a contract for the exchange of residential property.

[HN7] *Louisiana Civil Code Article 1986* provides that damages may be called for in a situation where specific performance of a contractual obligation is also granted. The "damages for delay" referred to in Article 1986 are triggered at the time the obligor is "put in default," according to *La. Civ. Code Art. 1989*. PriCellular argues that they were not "put in default" until this action was filed by Radiofone. *Louisiana Civil Code Article 1991* specifically provides, however, that an obligor may be put in default simply by means of a "written request of performance." Radiofone is certainly entitled to introduce evidence that their actions were sufficient to put PriCellular in default of any obligation deriving from the August 24 letters.

[HN8] Damages in the form of lost profits are clearly contemplated, in *Louisiana Civil Code Articles 1994 and 1995*, as a result of [*23] an obligor's failure to perform or delay in performance. Lost profits are precluded in Louisiana contract law only where the calculation of such damages is speculative. *Morris v. Homco Intern., Inc., 853 F.2d 337, 344 (5th Cir. 1988)*. Where the profits lost can be established with reasonable certainty, however, they are properly considered as an element of damages in a breach of contract case. Id.

Radiofone contends that it will rely on the profits actually derived from the operation of the very cellular system that it seeks to obtain through this lawsuit in establishing the profit of which it has been deprived. For purposes of ruling on PriCellular's motion to exclude such evidence, the Court finds that Radiofone's calculation of lost profits is not so speculative as to warrant exclusion. Section G of the Motion in limine of PriCellular is, therefore, DENIED.

H. Motion in limine to exclude supplemental expert report

Pricellular next seeks to preclude a supplemental expert report submitted by Radiofone expert Anne Jones after her deposition by which she attempts to correct errors in her original report that were brought to light in her [*24] deposition. Pricellular, presumably, seeks to preserve the impeachment value of the original report deriving from the errors contained in it.

Considering the last-minute submission of the report, and to maintain the integrity of this Court's rules with regard to deadlines for exchange of expert reports, the Court must order it to be excluded at trial, granting Priellular's motion in limine. Jones will be permitted to testify about any corrections that need to be made to her original report.

I. Motion in limine to exclude Kagan Seminar statements

Radiofone intends to offer evidence relating to statements made by Robert Price at a seminar on September 25, 1991 relating to a committment letter from the Bank of Montreal to Pricellular. This financing never came through. Pricellular contends that it never relied on the bank financing in the proposed transaction with Radiofone. The Court will not exclude evidence of remarks made by Robert Price at a September 25, 1991 seminar relating to bank financing of cellular property acquisitions. PriCellular seeks to exclude evidence of these statements on the basis of relevance, prejudice and that they are impermissible character evidence. [*25] Pricellular admits, however, at page 37 of its reply memorandum, that "Radiofone can make whatever motive argument it wants" with regard to the Louisiana 8/Abilene transaction based on the fact that PriCellular did not finalize the referenced bank transaction. Price's statements were apparently directed to the status of that transaction as of the date of the seminar. The statements do, therefore, have relevance to an issue existing between the parties.

[HN9] As an admission of a party-opponent, the statements are not only not hearsay, they are possessed with an inherent trustworthiness that affords them "generous treatment" in terms of admissibility. See, Advisory Committee's Note, *Fed. Rule of Evid. Rule 801(d)(2)*.

PriCellular's Motion in Limine at Section I is, therefore, DENIED on the grounds relied upon in its Motion.

Case 1:04-cv-01278-KAJ  Document 225-14  Filed 10/26/2005  Page 6 of 13

Page 8
1992 U.S. Dist. LEXIS 19383, *

J. Motion in limine to exclude Radiofone's Board of Directors meeting's minutes

Pricellular moves to exclude the minutes of Radiofone's May 5, 1991 Board of Directors meeting on the basis that the meeting was merely a pro forma event in which the August 1990 letters were not even discussed. The minutes of Radiofone's May 9, 1991 Board of Directors' [*26] meeting will not be excluded. The question raised by Pricellular concerning this evidence will bear on the weight to be accorded the evidence by the trier of fact. This motion in limine is denied.

Accordingly,

IT IS ORDERED that Radiofone's motions in limine are GRANTED in part and DENIED in part, and Pricellular's motions in limine are GRANTED in part and DENIED in part.

Henry A. Mentz, Jr.

LEXSEE 1997 US DIST LEXIS 4117

REVLON CONSUMER PRODUCTS CORPORATION, Plaintiff, v. L'OREAL S.A., COSMAIR, INC., MAYBELLINE, INC., and MAYBELLINE SALES, INC., Defendants.

Civil Action No. 96-192 MMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*1997 U.S. Dist. LEXIS 4117*

March 26, 1997, Decided

**NOTICE:** [*1]  FOR ELECTRONIC PUBLICATION ONLY

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** After plaintiff consumer products company brought a patent infringement action against defendant competing companies, and after the competing companies counterclaimed, the consumer products company filed a motion to preclude the testimony of the patent law expert for the competing companies.

**OVERVIEW:** Alleging infringement of its patented composition for transfer resistant lipstick, a consumer products company brought an action against certain competing companies. The competing companies asserted a counterclaim seeking a declaratory judgment that the patent was invalid and that they had neither infringed nor induced infringement. The consumer products company filed a motion to preclude the testimony of a patent law expert for the competing companies. The parties agreed that the patent law expert could testify as to Patent and Trademark Office practice, but disagreed as to whether he could testify on the issue of inequitable conduct. The court ruled that he could not. The court opted to submit to the jury special interrogatories on the facts of materiality and intent, and then weigh the findings on those two elements in light of all the circumstances and decide the ultimate question of inequitable conduct. As a result, the court found that the jury would act as the sole fact-finder on the issue of inequitable conduct. The court concluded that, if it permitted expert testimony on inequitable conduct, it would usurp the respective functions of the jury and the court.

**OUTCOME:** The court ruled that it would admit testimony by the proffered patent law expert as to Patent and Trademark Office practice, but it would not admit testimony by the proffered patent law expert as to substantive issues of patent law, including inequitable conduct.

**CORE TERMS:** inequitable conduct, patent, expert testimony, materiality, patent law, trier of fact, hearing transcript, weigh, duty, proposed testimony, special interrogatories, specialized knowledge, material information, ultimate question, governing law, substantively, preparation, scientific, threshold, incorrect, inventor, infringement, fact-finder, admit

**LexisNexis(R) Headnotes**

*Patent Law > Inequitable Conduct > Burdens of Proof*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Elements*
*Patent Law > U.S. Patent & Trademark Office Proceedings > General Overview*
[HN1] Inequitable conduct has been defined by the Federal Circuit Court of Appeals as an affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. Information is material when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. The proponent of a claim of inequitable conduct must prove the threshold elements of materiality and intent by clear and convincing evidence. The district court must then weigh the threshold findings of materiality and intent in light of all the circumstances to determine whether they warrant a conclusion that inequitable conduct occurred. A determination of inequitable conduct is committed to a district court's discretion.

*Governments > Courts > Judicial Precedents*
*Evidence > Witnesses > Expert Testimony*

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 9 of 13

Page 2
1997 U.S. Dist. LEXIS 4117, *

*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
[HN2] Fed. R. Evid. 702 states that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Because the admission of expert testimony is a procedural matter not unique to patent issues, the law of the circuit court of appeals governs a motion to preclude expert testimony, as opposed to the law of the Federal Circuit.

*Civil Procedure > Jury Trials > Province of Court & Jury*
*Evidence > Witnesses > Expert Testimony*
[HN3] The decision whether to admit expert testimony is committed to the discretion of the district court. Several bases exist for excluding expert testimony. They are: (1) if the testimony will not assist the trier of fact, (2) if scientific or technical or other specialized evidence is not sufficiently reliable, and (3) if the particular expert does not have sufficient specialized knowledge to assist the jurors. The Third Circuit Court of Appeals adopts a broad interpretation of Fed. R. Evid. 702. Close calls on the admission of expert testimony are to be resolved in favor of admissibility. However, it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Inequitable Conduct > Burdens of Proof*
[HN4] There are a variety of ways in which the district court may choose to handle the issue of inequitable conduct during a jury trial. Some courts reserve the entire issue of inequitable conduct unto themselves; some submit special interrogatories to the jury on the facts of materiality and intent; and some instruct the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct. Absent a clear showing of prejudice, or failure to achieve a fair trial, the district court's choice of procedure will not be disturbed.

**COUNSEL:** Jack Blumenfeld, Esq., and Jon E. Abramczyk, Esq., of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware; Of Counsel: Daniel J. Leffell, Esq., Elizabeth J. Holland, Esq., and Douglas A. Berman, Esq., of Paul, Weiss, Rifkind, Wharton & Garrison, New York, New York; and John W. Behringer, Esq., of Fitzpatrick, Cella, Harper & Scinto; attorneys for plaintiff.

Rudolph E. Hutz, Esq., and Stanley C. Macel, III, Esq., of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Of Counsel: Norman H. Stepno, Esq., Frederick G. Michaud, Jr., David M. Schlitz, Esq., and Ronni S. Jillions, Esq., of Burns, Doane, Swecker & Mathis, L.L.P., Alexandria, Virginia; and Norman F. Oblon, Esq., Richard D. Kelly, Esq., Jean-Paul Lavalleye, Esq., and Frank J. West, Esq., of Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Arlington, Virginia; attorneys for defendants.

**JUDGES:** Murray M. Schwartz, Senior District Judge

**OPINIONBY:** Murray M. Schwartz

**OPINION:**

MEMORANDUM OPINION

Submitted on Briefs
Dated: March 26, 1997
Wilmington, Delaware

**Schwartz, Senior District Judge**

INTRODUCTION

Revlon Consumer Products Corp. ("Revlon") filed this lawsuit against [*2] L'Oreal S.A., Cosmair Inc., Cosmair Canada, Inc., n1 Maybelline, Inc. and Maybelline Sales, Inc. (collectively "defendants") alleging infringement of Revlon's patented composition for transfer resistant lipstick. See Docket Item ("D.I.") 61 (Amended Complaint). Three defendants, Cosmair Inc., Maybelline Inc., and Maybelline Sales Inc., asserted a counterclaim seeking a declaratory judgment that Revlon's patent is invalid and they have not infringed nor induced infringement.

> n1 Cosmair Canada, Inc. has since been dismissed as a defendant. D.I. 24.

Before the Court is Revlon's motion to preclude the testimony of defendants' patent law expert, John Witherspoon. D.I. 147. According to his report, Mr. Witherspoon proposes to offer opinions on a wide range of issues, including Patent and Trademark Office ("PTO") practice and procedure as well as many substantive areas of patent law. n2 Id., Exh. A at 2. The parties agree Mr. Witherspoon may testify as to PTO practice and procedure. D.I. 154, at 1; D.I. 157 [*3] at 2. Revlon asserts, however, the remainder of Mr. Witherspoon's proposed testimony goes to topics inappropriate for expert testimony in a patent case. D.I. 157, at 2. In their answer to Revlon's motion, defendants indicate other than PTO practice and procedure, they wish only to introduce Mr. Witherspoon's testimony on the issue of in-

Case 1:04-cv-01278-KAJ   Document 225-14   Filed 10/26/2005   Page 10 of 13

Page 3
1997 U.S. Dist. LEXIS 4117, *

equitable conduct. D.I. 154, at 1. Thus, to resolve Revlon's motion, the Court must decide whether to admit testimony by a proffered patent law expert on the topic of inequitable conduct.

n2 Specifically, these areas are: "patent infringement, both literal and under the doctrine of equivalents; principles of claim construction and interpretation; prosecution history estoppel; conditions for patentability, including novelty, utility and nonobviousness under *35 U.S.C. §§ 101*, 102 and 103; requirements for and purposes of patent specifications and claims under *35 U.S.C. § 112;* the prohibition regarding the addition of new matter under *35 U.S.C. § 132;* duties and responsibilities of an inventor, his or her attorney or agent, and others substantively involved in the preparation and prosecution of a patent application in the PTO; and the prosecution history of the patent in suit." D.I. 147, Exh. A, at 2.

[*4]

DISCUSSION

I. Inequitable Conduct

[HN1] Inequitable conduct has been defined by the Federal Circuit Court of Appeals as "an 'affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive.'" *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc., 103 F.3d 1538, 1549 (Fed Cir. 1997)* (citation omitted); accord *Refac International, Ltd. v. Lotus Development Corp., 81 F.3d 1576 (Fed Cir. 1996).* "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Refac International, 81 F.3d at 1581.*

The proponent of a claim of inequitable conduct must prove "the threshold elements of materiality and intent by clear and convincing evidence." *Micro Chemical, Inc., 103 F.3d at 1549.* "The district court must then weigh the threshold findings of materiality and intent in light of all the circumstances to determine whether they warrant a conclusion that inequitable conduct occurred." Id. "A determination of inequitable [*5] conduct is committed to a district court's discretion." Id.

II. Expert Testimony

Defendants assert Mr. Witherspoon's testimony as to inequitable conduct may assist the trier of fact and thus is admissible under *Federal Rule of Evidence 702.* [HN2] That rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Fed. R. Evid. 702.*

Because the admission of expert testimony is a "procedural matter" not unique to patent issues, the law of the Third Circuit Court of Appeals governs this motion, as opposed to the law of the Federal Circuit. *Panduit Corp. v. All States Plastic Manufacturing Co., 744 F.2d 1564, 1574-75 (Fed. Cir. 1984);* accord *National Presto Industries, Inc. v. The West Bend Co., 76 F.3d 1185, 1188 n.2 (Fed. Cir. 1996).*

[HN3] The decision whether to admit expert testimony is committed to the discretion of the district court. *United States v. Velasquez, 33 V.I. 265, 64 F.3d 844, 847-48 (3d Cir.* [*6] *1995).* As might be gleaned from the rule, several bases exist for excluding expert testimony. They are: "(1) if the testimony will not assist the trier of fact; (2) if scientific [or technical or other specialized] evidence is not sufficiently reliable; and (3) if the particular expert does not have sufficient specialized knowledge to assist the jurors." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1238 (3d Cir. 1993);* see also *Holbrook v. Lykes Bros. Steamship Co., Inc., 80 F.3d 777, 781 (3d Cir. 1996).*

The Third Circuit Court of Appeals has adopted a broad interpretation of Rule 702; close calls on the admission of expert testimony are to be resolved in favor of admissibility. *Dunn v. Hovic, 28 V.I. 526, 1 F.3d 1362, 1367 (3d Cir. 1993).* However, "it is not permissible for a witness to testify as to the governing law since it is the district court's duty to explain the law to the jury ...." *United States v. Leo, 941 F.2d 181, 196 (3d Cir. 1991).* As relevant to Revlon's motion, Mr. Witherspoon's testimony will be inadmissible either if it is not helpful to the trier of fact, or if it constitutes impermissible testimony before the jury [*7] as to the governing law.

Defendants have not provided the details of Mr. Witherspoon's proposed testimony on inequitable conduct, beyond the sentence: "Defendants request that Mr. Witherspoon be allowed to testify as to the inequitable conduct issue if the Court determines that Mr. Witherspoon's testimony as a legal expert would assist in

Case 1:04-cv-01278-KAJ    Document 225-14    Filed 10/26/2005    Page 11 of 13

Page 4
1997 U.S. Dist. LEXIS 4117, *

its determination." D.I. 154, at 2. Defendants' answer to Revlon's motion places into issue the currently unsettled question of whether, in this case, the judge or the jury will act as fact-finder on the issue of inequitable conduct.

With respect to that question, the Federal Circuit recently explained:

> [HN4]
> There are a variety of ways in which the district court may choose to handle the issue of inequitable conduct during a jury trial ... Some courts have reserved the entire issue of inequitable conduct unto themselves; some have submitted special interrogatories to the jury on the facts of materiality and intent; and some have instructed the jury to find and weigh the facts of materiality and intent and decide the ultimate question of inequitable conduct ... Absent a clear showing of prejudice, or failure to achieve a fair trial, the district [*8] court's choice of procedure will not be disturbed.

*Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed. Cir. 1996). The court noted in the last instance the parties agreed to submit the entire issue of inequitable conduct to the jury. Id.

Failing to achieve similar agreement of the parties in the present case, the Court will opt to submit to the jury special interrogatories on the facts of materiality and intent. The Court will then weigh the findings on these two elements "in light of all the circumstances," and decide the ultimate question of inequitable conduct. See *Micro Chemical, Inc.*, 103 F.3d at 1549; see also *Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d 1471, 1481-82 (Fed. Cir. 1986) ("Materiality and intent must ... be considered together: the more material the omission or misrepresentation, the less intent that must be shown to reach a conclusion of inequitable conduct.")

As the determination of the Court consists of a 'weighing' of the factual findings on materiality and intent, and then a determination in light of all the circumstances whether inequitable conduct occurred, see *Micro Chemical, Inc.*, 103 F.3d at 1549, it follows that [*9] the jury will act as the sole fact-finder on the issue of inequitable conduct. The Court therefore cannot permit Mr. Witherspoon to testify as an expert on inequitable conduct; to do otherwise would usurp the respective functions of the jury and the Court. n3

n3 The Federal Circuit recently noted one of the hazards of permitting expert testimony on patent law:

> We take note of the extent to which ... incorrect law was announced by a patent law expert witness. We encourage exercise of the trial court's gatekeeper authority when parties proffer, through purported experts ... markedly incorrect law.

*Hebert*, 99 F.3d at 1117.

In accordance with the other cases in this District, the Court holds defendants' expert John Witherspoon may testify only as to matters of PTO practice and procedure. See *Lucas Aerospace, Ltd. v. Unison Industries, L.P.*, No. 93-525 (D. Del. March, 9, 1995); *General Battery Corp. v. Gould, Inc.*, 545 F. Supp. 731, 758 n.30 (D. Del. 1982); see also *Thorn EMI North* [*10] *America Inc. v. Micron Technology, Inc.* No. 92-673 (D. Del. Nov. 23, 1993) (McKelvie, J.) (hearing transcript); *The Read Corporation v. Portec, Inc.*, No. 88-29 (D. Del. March 9, 1990) (Roth, J.) (hearing transcript); *RCA Corp. v. Data General Corp.*, No. 84-270 (D. Del. Dec. 17, 1986) (Farnan, J.) (hearing transcript); Guidelines: Legal Expert Testimony in Patent Cases (Robinson, J.). n4 Mr. Witherspoon may not testify as to substantive issues of patent law, including inequitable conduct. For purposes of clarity, it is noted this holding precludes, among other things, Mr. Witherspoon's proposed testimony regarding the "duties and responsibilities of an inventor, his or her attorney or agent, and others substantively involved in the preparation and prosecution of a patent application in the PTO ...." D.I. 147, Exh. A, at 2.

n4 While this rule regarding patent experts is followed in this District, it is not uniform throughout the country. Several Federal Circuit cases refer, in passing, to expert testimony that was permitted on the topic of inequitable conduct, see *Hebert*, 99 F.3d at 1115; *Kingsdown Medical Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988).

[*11]

An order will issue consistent with this opinion.

## CERTIFICATE OF SERVICE

I, John W. Shaw, hereby certify that on October 19, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

>N. Richard Powers, Esquire
>Connolly Bove Lodge & Hutz LLP
>The Nemours Building
>1007 North Orange Street
>P. O. Box 2207
>Wilmington, DE  19899

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY FEDERAL EXPRESS**

>Steven R. Trybus, Esquire
>Jenner & Block LLP
>One IBM Plaza
>Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ John W. Shaw

John W. Shaw (No. 3362)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Plaintiff Cryovac, Inc.

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on October 26, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

>N. Richard Powers, Esquire
>Connolly Bove Lodge & Hutz LLP
>The Nemours Building
>1007 North Orange Street
>P. O. Box 2207
>Wilmington, DE 19899

I further certify that on October 26, 2005, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY FEDERAL EXPRESS**

>Steven R. Trybus, Esquire
>Jenner & Block LLP
>One IBM Plaza
>Chicago, IL 60611-7603

>YOUNG CONAWAY STARGATT & TAYLOR, LLP

>*/s/ Michele Sherretta*
>John W. Shaw (No. 3362)
>jshaw@ycst.com
>Karen E. Keller (No. 4489)
>kkeller@ycst.com
>Michele Sherretta (No. 4651)
>msherretta@ycst.com
>Andrew A. Lundgren (No. 4429)
>alundgren@ycst.com
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware 19801
>(302) 571-6600

>Attorneys for Plaintiff Cryovac, Inc.