# EXHIBIT A

LEXSEE

COLLEGENET, INC., a Delaware corporation, Plaintiff, v. XAP CORPORATION, a Delaware corporation, Defendant.

No. CV-03-1229-HU

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

2004 U.S. Dist. LEXIS 21059

October 12, 2004, Decided

**SUBSEQUENT HISTORY:** Magistrate's recommendation at Collegenet, Inc. v. XAP Corp., 2004 U.S. Dist. LEXIS 22370 (D. Or., Oct. 29, 2004)

**PRIOR HISTORY:** CollegeNET, Inc. v. XAP Corp., 2004 U.S. Dist. LEXIS 13983 (D. Or., July 14, 2004)

**DISPOSITION:** Magistrate's recommendation that the defendant's motion to dismiss be granted, and that the plaintiff's motion to dismiss be granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent owner sued defendant competitor, alleging claims of patent infringement. The patent owner also brought claims of unfair competition under § 43(a) (15 U.S.C.S. § 1125(a)) of the Lanham Act, and common law unfair competition. The competitor moved to dismiss both unfair competition claims. It raised counterclaims which the patent owner moved to dismiss. The matter was before a magistrate judge for a report and recommendation.

**OVERVIEW:** The patent owner accused the competitor of knowingly and intentionally engaging in a pattern or practice of misleading and deceiving colleges and universities about the competitor's handling of confidential student data in an attempt to obtain institutional customers. The basic thrust of the competitor's motion was that the patent owner's claims sounded in fraud and thus, had to satisfy Fed. R. Civ. P. 9(b). The court determined that the unfair competition claims were "grounded in fraud," Rule 9 applied, and the allegations failed to meet the Rule's heightened pleading requirements. It recommended that the patent owner's unfair competition claims be dismissed without prejudice. It then turned to the competitor's three unfair competition claims. It recommended that the patent owner's motion to dismiss be granted as to all the unfair competition claims to the extent those claims were premised on the filing of patent litigation. It further recommend that the motion be granted as to the claim under Cal. Bus. & Prof. Code § 17200. It recommended that the motion be denied as to remaining unfair competition claims to the extent they were based on marketplace communications to customers.

**OUTCOME:** It was recommended that the competitor's motion to dismiss be granted and that the patent owner's motion to dismiss the counterclaims be granted in part and denied in part.

**CORE TERMS:** patent, unfair competition, marketplace, Lanham Act, misrepresentation, baseless, objectively, patent infringement, infringer, misleading, customer, false advertising, unfair competition claim, state law, motion to dismiss, pre-litigation, infringement, recommend, competitor, counterclaim, inequitable conduct, mislead, choice of law, patentee, holder, studied, fraudulent conduct, statutory claim, common law, particularity

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN1] On a Fed. R. Civ. P. 12 (b)(6) motion to dismiss, a court must review the sufficiency of the complaint. A court should construe the complaint most favorably to the pleader: In appraising the sufficiency of the complaint, a court follows the accepted rule that the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. The allegations of material fact must be taken as true.

*Civil Procedure > Pleading & Practice > Pleadings >*

Page 1

*Heightened Pleading Requirements*
[HN2] See Fed. R. Civ. P. 9(b).

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN3] If fraud is not a necessary element of a claim, a plaintiff nevertheless may choose to allege that a defendant engaged in fraudulent conduct. If a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim, the claim is "grounded in fraud" or "sounds in fraud" and the pleading of that claim as a whole must satisfy the particularity requirement Fed. R. Civ. P. 9(b). If a plaintiff instead alleges some fraudulent and some non-fraudulent conduct to support a claim, only the allegations of fraud are subject to Fed. R. Civ. P. 9(b). The allegations of non-fraudulent conduct must satisfy only the Fed. R. Civ. P. 8 notice pleading standards.

*Torts > Business & Employment Torts > Deceit & Fraud*
[HN4] Fraud elements under Oregon law are: (1) false representation of a material fact:; (2) knowingly made or made with an insufficient basis for asserting its truth; (3) with the intent to induce one to act or refrain from acting; (4) justifiable reliance on the misrepresentation; and (5) resultant damage.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN5] Labeling a claim as something other than "fraud" does not shield a plaintiff from Fed. R. Civ. P. 9(b)'s requirements. Rule 9(b)'s heightened pleading standard will apply if the allegations are such that a plaintiff is alleging a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of the claim. If so, the claim is "grounded in fraud."

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN6] Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged. Under Fed. R. Civ. P. 9(b), a complaint must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation. Additionally, the plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. The plaintiff must also show that the statement complained of was false or misleading at the time it was made.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN7] The general naming of an entire corporation, along with unnamed institutions throughout three states and unnamed applicants who could potentially come from anywhere in the world, is insufficient to comply with Fed. R. Civ. P. 9(b).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*
[HN8] Dismissals for failure to comply with Fed. R. Civ. P. 9(b) should ordinarily be without prejudice.

*Civil Procedure > State & Federal Interrelationships > Federal Common Law*
*Trademark Law > Federal Unfair Competition Law > Federal Preemption*
[HN9] Technically, preemption applies only to the preemption of a state law by a federal law.

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*
*Antitrust & Trade Law > Trade Practices & Unfair Competition*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Effect of Inequitable Conduct*
[HN10] Obtaining a patent through inequitable conduct does not violate § 43(a) (15 U.S.C.S. § 1125(a)) of the Lanham Act. There is no legal basis for a holding that inequitable conduct, or the assertion of a patent procured through inequitable conduct, constitutes unfair competition. Rather, the established remedy for inequitable conduct is unenforceability of the patent.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > Effect of Inequitable Conduct*
*Patent Law > Inequitable Conduct > Anticompetitive Conduct*
*Antitrust & Trade Law > Trade Practices & Unfair Competition*
[HN11] The Pro-Mold decision must be understood in the context of general patent law. A patent procured through inequitable conduct is not invalidated thereby, but the courts refuse to enforce such a patent as a matter of equitable principle. Pro-Mold tells that the remedy under federal law available to a defendant who is made the subject of an infringement suit, when the defendant alleges that the suit is based on a patent procured through inequitable conduct in dealing with the Patent Office, is the traditional remedy of having the patent adjudged unenforceable, or perhaps, in appropriate circumstances, holding the patentee liable for an antitrust violation. The remedy for such an insupportable patent suit is not a suit for unfair trade practices under the Lanham Act.

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*
*Antitrust & Trade Law > Trade Practices & Unfair*

*Competition*
[HN12] When the state law unfair competition claim parallels the federal claim and is based on the same facts, no reason is seen to distinguish the reasoning of Pro-Mold: allegations of inequitable conduct cannot be pursued through an unfair competition counterclaim but rather need to be addressed in the patent litigation itself.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN13] A district judge may generally consider a document outside the complaint when deciding a motion to dismiss if the complaint specifically refers to the document and if its authenticity is not questioned.

*Antitrust & Trade Law > Trade Practices & Unfair Competition*
*Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview*
*Trademark Law > Federal Unfair Competition Law > False Designation of Origin > Elements*
[HN14] The initiation of an infringement suit is clearly not covered by the text of § 43(a) (15 U.S.C.S. § 1125(a)) of the Lanham Act, while a communication to the customers of the accused infringer, in certain circumstances, may be.

*Antitrust & Trade Law > Trade Practices & Unfair Competition*
*Patent Law > Inequitable Conduct > General Overview*
*Patent Law > Infringement Actions > General Overview*
[HN15] Before a patentee may be held liable under § 43(a) (15 U.S.C.S. § 1125(a)) of the Lanham Act for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 1125(a) itself, as § 1125(a) alone does not require bad faith. This holding applies to two separate types of marketplace statements: (1) those alleging that an alleged infringer's product infringes the patentee's patents; and (2) those alleging that the alleged infringer could not manufacture a noninfringing product. Both types of statements, if made in bad faith, are damaging to competition and are not the type of statements protected by the patent laws.

*Patent Law > Inequitable Conduct > Anticompetitive Conduct*
*Torts > Business & Employment Torts > Interference With a Contract*
[HN16] Bad faith is a prerequisite to a state law tortious interference claim based on an unfair competition theory caused by a patentee's marketplace statements. Thus, a defendant must allege, and later prove, that the plaintiff's marketplace statements to potential customers were made in bad faith. Failure to do so results in the preemption of the state unfair competition claims and the preclusion of the federal unfair competition claim.

*Torts > Procedure > Preemption*
[HN17] Federal patent law preempts state law that punishes merely publicizing a patent in the marketplace, unless the plaintiff can show that the patentholder acted in bad faith.

*Civil Procedure > State & Federal Interrelationships > Federal Common Law*
*Antitrust & Trade Law > Trade Practices & Unfair Competition*
[HN18] The Zenith Electronics decision requires that any state or federal unfair competition claims based on marketplace statements made by a plaintiff, be preempted (state claims) or precluded (federal claim) unless defendant alleges that such statements were made in bad faith. The Globetrotter decision's objectively baseless standard does not apply to marketplace conduct and the objectively baseless standard should not be extended beyond pre-litigation communications to an alleged infringer.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN19] A district court sitting in diversity generally must apply the choice of law rules for the state in which it sits.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN20] Oregon courts first look to whether there is a material difference between Oregon substantive law and the law of the other forum. If there is no material difference between the substantive law of Oregon and the law of other forum, there is a "false conflict" for purposes of the choice of law. In such cases, Oregon law applies. If a true conflict exists, Oregon proceeds with a conflicts of law analysis guided by the Restatement (Second) of Conflict of Laws. Oregon has adopted the choice of law rules of Restatement (Second) of Conflict of Laws § 6 and the "most significant relationship" test for tort choice of law set forth in Restatement (Second) of Conflict of Laws § 145 for tort claims.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN21] The Restatement (Second) of Conflict of Laws § 145 states that (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in Restatement (Second) of Conflict of Laws § 6. (2) Contacts to be

Page 3

taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN22] The Restatement (Second) of Conflict of Laws § 6 provides: (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law. (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN23] The Restatement (Second) of Conflict of Laws § 301 cmt., states that a corporation's rights and duties under a contract are determined by the law selected by application of the rules of the Restatement (Second) of Conflict of Laws §§ 187, 188. If an agent of a corporation, while acting in the course of his employment, commits a tort, the law selected by application of the rules of the Restatement (Second) of Conflict of Laws §§ 145, 174 determines whether the corporation is liable for the tort and the extent to which it is liable in damages. Likewise, the validity of a transfer by a corporation, or to a corporation, of an interest in land or in a chattel is determined by the law selected by application of the rules of the Restatement (Second) of Conflict of Laws §§ 223, 244.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
*Trademark Law > Federal Unfair Competition Law > False Advertising > General Overview*
[HN24] The place of injury is less significant in the case of fraudulent misrepresentations and of such unfair competition as consists of false advertising and the misappropriation of trade values.

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN25] The place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values.

**COUNSEL:** [*1] For CollegeNET, Inc., a Delaware corporation, Plaintiff: John D. Vandenberg, Klarquist Sparkman, LLP, Portland, OR; Kristin L. Cleveland, Klarquist Sparkman Campbell Leigh, Portland, OR; Michael N. Zachary, Klarquist Sparkman LLP, Portland, OR; Robert A Shlachter, Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, OR; Scott E. Davis, Klarquist Sparkman, L.L.P., Portland, OR.

For Xap Corporation, a California corporation, Defendant: Alexander C. Johnson, Jr., Marger Johnson & McCollom, PC, Portland, OR; Brenda M. Simon, Fenwick & West, LLP, Mountain View, CA; Daniel Johnson, Jr., Fenwick & West, LLP, Mountain View, CA; Henry C. Su, Fenwick & West LLP, Mountain View, CA; Stephen Scott Ford, Marger Johnson & McCollom, PC, Portland, OR.

For Xap Corporation, a California corporation, Counter Claimant: Henry C. Su, Fenwick & West LLP, Mountain View, CA.

Attorneys for Plaintiff: Kristin L. Cleveland, Scott E. Davis, Jared S. Goff, Michael N. Zachary, KLARQUIST SPARKMAN, LLP, Portland, Oregon.

Attorneys for Defendant: Alexander C. Johnson, Stephen S. Ford, MARGER, JOHNSON & McCOLLUM, P.C., Portland, Oregon; Daniel Johnson, Jr., Henry C. Su, FENWICK & WEST LLP, Mountain [*2] View, California.

**JUDGES:** Dennis James Hubel, United States Magistrate Judge.

**OPINIONBY:** Dennis James Hubel

**OPINION:**

FINDINGS & RECOMMENDATION

HUBEL, Magistrate Judge:

Plaintiff CollegeNET, Inc. brings this patent infringement action against its competitor Xap Corporation. In addition to claims of patent infringement based on two patents owned by plaintiff, plaintiff brings claims of unfair competition under the section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition. Defendant moves to dismiss both unfair competition claims.

Defendant, in addition to raising counterclaims of noninfringement, invalidity, and unenforceability directed at plaintiff's two patents, also brings counterclaims for unfair competition under the Lanham Act, common law unfair competition, and a third unfair competition claim under section 17200 of the California Business and Professions Code. Plaintiff moves to dismiss defendant's unfair competition claims.

For the reasons explained below, I recommend that defendant's motion to dismiss be granted and that plaintiff's motion to dismiss be granted in part and denied in part.

STANDARDS

Both parties bring their [*3] motions pursuant to Federal Rule of Civil Procedure 12(b)(6). [HN1] On a Rule 12(b)(6) motion to dismiss, the court must review the sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974). The court should construe the complaint most favorably to the pleader:

> In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); American Family Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002), cert. denied, 537 U.S. 886, 154 L. Ed. 2d 146, 123 S. Ct. 129 (2002). The allegations of material fact must be taken as true. Moyo v. Gomez, 40 F.3d 982, 984 (9th Cir. 1994).

DISCUSSION

I. Defendant's Motion to Dismiss

The basic thrust of defendant's motion is that plaintiff's claims sound in fraud and thus, they must meet the requirements of Federal Rule of Civil Procedure 9(b). Because, defendant contends, the allegations [*4] do not meet the Rule 9(b) threshold, the claims must be dismissed.

A. Applicability of Rule 9(b) to Plaintiff's Claims

Rule 9(b) provides:

> [HN2] In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed. R. Civ. P. 9(b).

While plaintiff brings both a federal Lanham Act claim and a common law unfair competition claim, they are based on the same facts. The parties appear to agree, at least for the purposes of this motion, that plaintiff's common law claim arises under Oregon law. The parties also appear to agree that Oregon common law unfair competition claims follow Lanham Act case law and thus, the common law claim survives or dies with the Lanham Act claim. See CollegeNET, Inc. v. Embark.com, Inc., 230 F. Supp. 2d 1167, 1177 (D. Or. 2001) (court noted that statements of "puffery" were not actionable in a false advertising claim under the Lanham Act and that "because Oregon courts follow Lanham Act case law, similar statements also cannot form the basis of an Oregon common law unfair competition [*5] claim"); Plf's Resp. at p. 1, n.1 (the "issues raised by XAP's motion to dismiss are the same for each of CollegeNET's unfair competition claims."). Accordingly, I do not separately address the common law unfair competition claim.

No United States Circuit Court has held that as a general rule, all false advertising Lanham Act claims under 15 U.S.C. § 1125(a) are subject to Rule 9(b). Lower courts have noted, however, that some Lanham Act claims may be subject to Rule 9 rather than the more general pleading requirements in Federal Rule of Civil Procedure 8. Volunteer Firemen's Ins. Servs., Inc. v. McNeil & Co., Inc., 221 F.R.D. 388, 393 (W.D.N.Y. 2004) ("While the law in this Circuit may be unclear as to whether or not claims for false advertising must be pled with particularity generally, the Court finds that such a heightened pleading requirement is appropriate in this case, since the counterclaim is essentially a claim for fraud."); Sanderson v. Brugman, 2001 U.S. Dist. LEXIS 8309, No. IP00-459-C-H/G, 2001 WL 699876 at *8 (S. D. Ind. May 29, 2001) (applying Rule 9(b) to false advertising Lanham Act claim); Max Daetwyler Corp. v. Input Graphics, Inc., 608 F. Supp. 1549, 1556 (E.D. Pa. 1985) [*6] (while Lanham Act claims may not be categorically subject to the particularity requirement of Rule 9(b), "the policies which underlie Rule 9's requirement that the nature of an alleged misrepresentation be pleaded with specificity are equally

Page 5

applicable to the type of misrepresentation claims presented in plaintiffs' Lanham Act claim."); see also Johannsen v. Brown, 797 F. Supp. 835, 839-40 (D. Or. 1991) (using Oregon's two-year tort statute of limitations in a false advertising Lanham Act claim because such Lanham Act claims "are most comparable to claims brought for fraud[.]").

A recent Ninth Circuit case elaborated on the Rule 8 versus Rule 9(b) pleading standards, although not in the context of a Lanham Act false advertising claim. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097 (9th Cir. 2003). Nonetheless, the court's analysis is helpful here. In Vess, the plaintiff alleged that the defendants illegally conspired to increase sales of a drug by fraudulently representing that the diagnostic criteria for a disorder were scientifically reliable. The court noted that [HN3] if fraud is not a necessary element of a claim, a plaintiff nevertheless may [*7] choose to allege that a defendant engaged in fraudulent conduct. Id. at 1103.

If a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of a claim, the claim is "grounded in fraud" or "sounds in fraud" and the pleading of that claim as a whole must satisfy the particularity requirement Rule 9(b). Id. at 1103-04. If a plaintiff instead alleges some fraudulent and some non-fraudulent conduct to support a claim, only the allegations of fraud are subject to Rule 9(b). Id. at 1104. The allegations of non-fraudulent conduct must satisfy only the Rule 8 notice pleading standards. Id. at 1105.

If the averments of fraud do not meet Rule 9(b)'s standards, those allegations are stripped from the claim. The court should then determine if the remaining allegations state a claim. Id. at 1105.

Defendant contends that the allegations in plaintiff's unfair competition claims are based on a "unified course of fraudulent conduct" and thus, are "grounded in fraud" and are subject to Rule 9 (b)'s requirements. In particular, defendant points to the following [*8] allegations:

> This Third Cause of Action arises as a result of Defendant XAP [sic] studied efforts to mislead colleges and college-bound students about the privacy of student data entrusted to XAP in its capacity as a vendor processing online applications for colleges and universities throughout the United States . . . To convince these colleges to use XAP's services, XAP has made and continues to make false and misleading statements assuring them of the confidentiality of student data.

Sec. Am. Compl. at P 47 (emphasis added).

> Moreover, on information and belief, XAP has made actionable false and/or misleading statements to individuals and entities located in Oregon.

Id. at P 7 (emphasis added).

> On information and belief, XAP's representations about how XAP treats personal student data are false and/or misleading in that XAP has a pervasive practice of selling personal student data without the students' express or informed consent or direction to Lenders and others.

Id. at P 63 (emphasis added).

> XAP's false and/or misleading representations about how it treats personal student data give the false [*9] impression that XAP (a) respects the privacy of students, (b) maintains student data in confidence, (c) only provides the student data to third parties with the express consent of the students, and (d) does not derive revenue from disclosing personal student data to third parties.

Id. at P 64 (emphasis added).

> On information and belief, XAP's representations about how XAP treats personal student data are materially misleading and cause institutions of higher learning to participate in Mentor programs. On information and belief, such institutions would refuse to participate in XAP's Mentor systems if they knew that XAP provided the student data to Lenders.

Id. at P 65 (emphasis added).

> On information and belief, XAP has made other material misrepresentations to the market regarding its position in the marketplace relative to its competitors, and regarding its policies and procedures with respect to the privacy of student data.

Id. at P 66 (emphasis added).

> XAP has misrepresented and continues to misrepresent the nature, characteristics, and/or qualities of XAP's services and/or

commercial activities by using false [*10] and/or misleading statements in interstate commerce.

Id. at P 69 (emphasis added).

XAP's misrepresentations have caused and are likely to cause confusion, deception and mistake among institutions of higher education[.]

Id. at P 70 (emphasis added).

On information and belief, the confusion, deception and mistake caused by XAP's misrepresentations are material, in that they have influenced and are likely to continue to influence the decisions of educational institutions as to whether they will utilize XAP's or CollegeNET's online college application services.

Id. at P 71 (emphasis added).

XAP's misrepresentations violate the Lanham Act, including at least 15 U.S.C. § 1125(a).

Id. at P 73 (emphasis added).

XAP's misrepresentations and the resulting damage to CollegeNET are actionable under the applicable common law tort of unfair competition.

Id. at P 77 (emphasis added).

A fair reading of these allegations shows that plaintiff accuses defendant of knowingly and intentionally engaging in a pattern or practice of misleading and deceiving colleges and [*11] universities about defendant's handling of confidential student data in an attempt to obtain institutional customers. I agree with defendant that these allegations may be easily linked to elements of an Oregon common law fraud claim, further establishing that plaintiff's false advertising claims are essentially fraud claims:

[HN4] (1) false representation of a material fact: ("false and/or misleading representations about how it treats personal student data"), ("materially misleading"), ("other material misrepresentations);

(2) knowingly made or made with an insufficient basis for asserting its truth: ("studied efforts to mislead"), ("pervasive practice");

(3) with the intent to induce one to act or refrain from acting: ("to convince these colleges to use XAP's services"), ("have influenced and are likely to continue to influence the decisions of educational institutions");

(4) justifiable reliance on the misrepresentation: ("such institutions would refuse to participate in XAP's mentor system if they knew that XAP provided the student data to Lenders"); and

(5) resultant damage: ("CollegeNET has been injured"), ("CollegeNET has suffered and is suffering monetary damage"), ("resulting [*12] damage to CollegeNET").

Maitland v. Mitchell, 44 F.3d 1431, 1438-39 (9th Cir. 1995) (listing fraud elements under Oregon law).

Plaintiff argues that its claims are based on allegations that XAP made misrepresentations in the marketplace, not on averments that XAP acted with fraudulent scienter. Plaintiff suggests that in each of the eleven paragraphs singled out by defendant to support its argument of "unified course of fraudulent conduct," plaintiff has characterized the alleged misrepresentations by defendant as "merely false and/or misleading, not fraudulent." Pltf's Resp. at pp. 5-6. Plaintiff notes that its Second Amended Complaint does not contain the word "fraud," and it does not assert that the false advertising claims are based on any fraudulent conduct.

Plaintiff points to the fact that defendant finds allegations of fraudulent scienter in only three paragraphs of the Second Amended Complaint. Plaintiff notes that the first allegation, "studied efforts to mislead," appears in the introductory paragraph and is not an allegation of specific conduct. Moreover, plaintiff contends, "studied" efforts that are misleading are not tantamount to "fraudulent" [*13] intentions to deceive.

I agree with defendant that the two cases from this Court cited by plaintiff are distinguishable and that the allegations effectively amount to a fraud claim. In a 1997 case, Judge Marsh applied Rule 8's requirements to a Lanham Act claim, but applied Rule 9(b) to a fraud claim. Top Producer Sys., Inc. v. Software Sciences, Ltd., 1997 U.S. Dist. LEXIS 12368, No. CV-97-415-MA, 1997 WL 723049, at *3-4 (D. Or. July 21, 1997). Judge Marsh gives absolutely no indication that he was requested to analyze the Lanham Act allegations under anything but Rule 8. Thus, his opinion is of little assistance here.

In a 2003 case, Judge King was asked to apply the heightened pleading standards of Rule 9(b) to pending ERISA claims, even though the plaintiffs did not expressly plead fraud. In re Louisiana-Pacific Corp., 2003

Page 7

U.S. Dist. LEXIS 7645, No. CV-02-1023-KI, 2003 WL 21087593, at *7-8 (D. Or. Apr. 24, 2003). However, like the Top Producer opinion by Judge Marsh, Judge King's opinion is also of limited value. First, it was not a Lanham Act case. Second, Judge King noted that allegations that were not averments of fraud (permitting a percentage of the plans' assets to be invested in LP stock, [*14] failing to adequately investigate and monitor the merits of the plans' investments in LP stock, and restricting plaintiffs' investments in LP stock), were sufficient to state a breach of fiduciary duty claim under ERISA. 2003 U.S. Dist. LEXIS 7645, [WL] at *8. Thus, because he found sufficient non-fraudulent allegations in support of the claim asserted, he did not need to consider Rule 9(b).

A reading of plaintiff's entire third claim shows that plaintiff does not assert or imply that defendant mistakenly or innocently provided false or misleading information. As defendant notes, plaintiff's claims allege that defendant advertised the exact opposite of the actions it was carrying out. The claims do not allege that this was the result of some mistake or error on defendant's part, and they further allege that defendant misleads colleges and universities regarding its handling and use of confidential student data so that colleges and universities will use defendant's services. Implicit in these claims is that defendant engaged in false advertising knowingly, with the calculated intent to mislead and deceive.

Additionally, as to knowledge, the phrase "studied efforts to mislead colleges and college-bound students [*15] about the privacy of student data entrusted to XAP," is easily understood as suggesting that defendant has a "conscious design" to mislead higher education institutions, implying that defendant knows its representations are false. Additionally, other allegations demonstrate that as whole, the claims allege that defendant had knowledge of the falsity of the alleged misrepresentations. E.g., Sec. Am. Compl. at PP 62, 63 ("XAP has represented . . . that it does not disclose personal student data obtained through Mentor sites to any third parties without the express or informed consent and direction of the student"; "XAP has a pervasive practice of selling personal student data without the students' express or informed consent or direction to Lenders and others."). With these allegations, plaintiff alleges that defendant represents one thing (not disclosing), while taking actions diametrically opposed to those statements (selling the personal data without consent). The unmistakable inference is that plaintiff alleges that defendant it is doing the opposite of what it claims.

As the cases make clear, [HN5] labeling the claim as something other than "fraud" does not shield plaintiff from [*16] Rule 9(b)'s requirements. Under Vess, Rule 9(b)'s heightened pleading standard will apply if the allegations are such that plaintiff is alleging a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of the claim. If so, the claim is "grounded in fraud."

I conclude that such is the case with plaintiff's unfair competition claims when the allegations are read as a whole. As such, Rule 9(b) applies to plaintiff's unfair competition claims.

B. Disregarding Certain Allegations

Plaintiff argues that to the extent its claims can be construed to imply the knowledge and intent elements of fraud, those elements can be disregarded and the remaining allegations are still sufficient to state false advertising claims. The only phrase plaintiff singles out for excision is the "studied efforts to mislead" phrase in the introductory paragraph to the claims. Plaintiff contends that this language can be disregarded without affecting the viability of the two claims.

Defendant contends that simply removing this inflammatory language does not change the knowledge or intent elements that appear throughout the other allegations and which ground the complaint [*17] in fraud. I agree with defendant. Even if the "studied" phrase is removed, the implication from the remaining allegations read together remains the same and Rule 9(b) applies.

C. Applying Rule 9(b)

As noted in Vess, [HN6] "averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Vess, 317 F.3d at 1106 (internal quotation omitted). Under Rule 9(b), a complaint must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1392-92 (9th Cir. 1989). Additionally, "the plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994). The plaintiff must also show that the statement complained of was false or misleading at the time it was made. Id. at 1548-49.

Plaintiff's claims fail to (1) identify any of the [*18] alleged misrepresentations by their specific content and medium; (2) identify any of the specific parties receiving any given misrepresentations; (3) identify a particular author or speaker within the corporation; (4) identify

Page 8

where in a given Internet website the alleged misrepresentations were made; (5) identify precisely when the misrepresentations were made; and (6) identify the specifics of the relevant terms of defendant's agreements with the lenders.

[HN7] The general naming of an entire corporation, along with unnamed institutions throughout three states and unnamed applicants who could potentially come from anywhere in the world, is insufficient to comply with Rule 9(b). See Segal Co. v. Amazon.com, 280 F. Supp. 2d 1229, 1231 (W.D. Wash. 2003) (complaint's reference to certain "representatives" of defendant is too vague to sufficiently identify the alleged perpetrators); Silicon Knights v. Crystal Dynamics, 983 F. Supp. 1303, 1315 (N.D. Cal. 1997) (general allegation against all defendants insufficient to satisfy particularity requirement).

Additionally, plaintiff's identification of the subject of the alleged misrepresentations ("the confidential [*19] use of personal information collected from college applicants") is an insufficient conclusory allegation under Rule 9(b). Furthermore, general assertions of the time the alleged misrepresentations were made ("during the operation of the Internet sites maintained under agreements with [the three Lenders]"), are also insufficient under Rule 9(b). In re Stac Elecs. Secs. Litig., 89 F.3d 1399, 1410 (9th Cir. 1996).

In sum, plaintiff's allegations fail to meet the heightened pleading requirements of Rule 9(b). The claims should be dismissed.

D. With or Without Prejudice

[HN8] Dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice. Vess, 317 F.3d at 1108. Defendant argues that plaintiff's claims should be dismissed with prejudice and without leave to amend. Defendant notes that in this particular case, plaintiff's claims were first filed in a separate case and defendant moved against them for the reason articulated in the present motion. However, that case was dismissed and the claims therein were brought as newly added claims in the patent case. This occurred before defendant's motion to dismiss was considered. Nonetheless, [*20] defendant contends that because plaintiff had the benefit of reviewing the motion to dismiss before refiling these claims as part of the patent case, I should view the claims at issue here as plaintiff's second attempt to plead them with particularity.

I disagree. While plaintiff may have seen defendant's argument before re-filing these claims in this patent case, defendant's argument has not previously been considered by the Court. In such a case, it is inappropriate to dismiss with prejudice. I recommend that plaintiff's unfair competition claims be dismissed without prejudice and with leave to amend in compliance with Rule 9(b).

II. Plaintiff's Motion to Dismiss

As noted above, defendant has three unfair competition claims. Generally, defendant contends that plaintiff has competed unfairly by (1) filing this patent infringement action against defendant and two previous actions in this court against ApplyYourself, Inc., another competitor; and (2) making statements in the marketplace regarding plaintiff's patent rights to the Oklahoma State Regents for Higher Education. Plaintiff contends that defendant's claims are barred by the First Amendment and federal patent law. Additionally, [*21] plaintiff claims that the California statutory claim should be dismissed because Oregon law, not California law, applies to plaintiff's alleged conduct.

A. Preclusion/Preemption Argument n1

n1 [HN9] Technically, preemption applies only to the preemption of a state law by a federal law. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d 1340, 1346-47 (Fed. Cir. 1999). The issue with respect to the federal section 43(a) Lanham Act claim is more properly considered one of potential conflict between federal statutes and does not implicate the issue of preemption. Id. In the context of this motion, the analysis is indistinguishable.

1. Allegations Regarding Patent Litigation

Defendant alleges that plaintiff has enforced its patents against defendant and other competitors in "bad faith" because plaintiff, allegedly knowing its patents to be unenforceable in view of plaintiff's "inequitable conduct," and invalid in view of the prior art, has brought this case against defendant and previously brought patent [*22] infringement claims in this Court against ApplyYourself, Inc. Ans. to Sec. Am. Compl. at P 127.

[HN10] Obtaining a patent through inequitable conduct does not violate section 43(a) of the Lanham Act. Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1575 (Fed. Cir. 1996). In Pro-Mold, the defendant in a patent infringement case counterclaimed with an allegation that the plaintiff had engaged in unfair competition by filing the complaint against the defendant knowing that the patent was unenforceable. The court explained that "there is no legal basis for a holding that inequitable conduct, or the assertion of a patent procured through inequitable conduct, constitutes unfair

Page 9

competition." Id. Rather, "the established remedy for inequitable conduct is unenforceability of the patent." Id.

As then later explained in Zenith Electronics:

> [HN11] Pro-Mold must be understood in the context of general patent law. A patent procured through inequitable conduct is not invalidated thereby, but the courts refuse to enforce such a patent as a matter of equitable principle. Pro-Mold tells us that the remedy under federal law available to a defendant [*23] who is made the subject of an infringement suit, when the defendant alleges that the suit is based on a patent procured through inequitable conduct in dealing with the Patent Office, is the traditional remedy of having the patent adjudged unenforceable, or perhaps, in appropriate circumstances, holding the patentee liable for an antitrust violation. The remedy for such an insupportable patent suit is not a suit for unfair trade practices under the Lanham Act.

Zenith Electronics, 182 F.3d at 1349.

Defendant cites no cases in support of its position that its Lanham Act claim may be based on an alleged bad faith filing of a patent infringement action against it or against ApplyYourself. Thus, to the extent defendant's Lanham Act claim is based on the filing of patent infringement actions, I recommend granting plaintiff's motion to dismiss.

As to the state law claims, plaintiff argues that the Federal Circuit, if presented with the issue, would similarly hold that a state law unfair competition claim based on the filing of a patent infringement action is not viable for the reasons articulated in Pro-Mold. In support, plaintiff cites to Abbott Laboratories v. Brennan, 952 F.2d 1346, 1355 (Fed. Cir. 1991), [*24] where the court held that a state tort action for abuse of process cannot "be invoked as a remedy for inequitable or other unsavory conduct of parties to proceedings in the Patent and Trademark Office."

Defendant argues that Abbott Laboratories is distinguishable because the court there considered only a state law abuse of process claim, not a state law unfair competition claim. However, I agree with plaintiff. [HN12] When the state law unfair competition claim parallels the federal claim and is based on the same facts, I see no reason to distinguish the reasoning of Pro-Mold:

allegations of inequitable conduct cannot be pursued through an unfair competition counterclaim but rather need to be addressed in the patent litigation itself. Thus, to the extent any of defendant's unfair competition claims, state or federal, are based on the filing of patent infringement actions, they should be dismissed.

2. Allegations Regarding Marketplace Statements

Defendant contends that plaintiff made false statements in a February 2004 proposal to the Oklahoma State Regents for Higher Education that "exaggerate the scope of its patents and create the misleading impression that CollegeNET is the [*25] exclusive legal source of online applications and the only source endorsed by a federal government agency." Id. at P 133 n.1.

The statements regarding patent rights made in the Oklahoma proposal are as follows:

**Proprietary Technology**

> As discussed above, CollegeNET was the early leader in internet admissions services. The U.S. Patent Office recognized this in awarding patents to CollegeNET. These patents, U.S. Patent Number 6,345,278 (the "'278 Patent"), and another closely-related patent, U.S. Patent Number 6,460,042 (the "'042 Patent"), were both granted in 2002. CollegeNET has moved to protect these patents against infringers. In a recent case againt [sic] ApplyYourself, Inc., the defendant ceased operating its data sharing feature conforming to an injunction barring infringement of the '278 Patent. The jury in that case found that the defendant had willfully infringed the '278 Patent, and calculated damages in CollegeNET's favor based in part on the previously operating data sharing feature.
>
> CollegeNET recently filed suit against XAP, in part based on the continued use by XAP of the data sharing feature in on-line admissions applications. Another ground [*26] for the suit was the testimony delivered by Xap's CEO, Mr. Allen Firstenberg, in open court at the ApplyYourself trial. During that trial, CollegeNET's lawyer asked Mr. Firstenberg a number of questions while he was on the witness stand, under oath. Two questions, and their answers follow:

Page 10

**Question** (CollegeNET's lawyer): And, therefore, you understand that if these patents are upheld, your company may be found to have infringed the patents. Is that right?

**Answer** (Mr. Firstenberg): That's a possibility.

**Question** (CollegeNET's lawyer): And, therefore, your company has an interest in having these patents invalidated, if you can help that happen. Isn't that right?

**Answer** (Mr. Firstenberg): That's right.

The jury upheld CollegeNET's patents, which, according to Mr. Firstenberg, creates a "possibility" that XAP has infringed CollegeNET's patents. One can assume that the possibility is more than theoretical, seeing as Mr. Firstenberg took the time to testify at trial and admitted that XAP had an interest in having the CollegeNET Patents invalidated. CollegeNET is confident that another federal jury will find that operating a data sharing [*27] feature in an on-line admissions application is an infringement of the CollegeNET patents.

Invention and innovation create intellectual property rights for both universities and vendors. CollegeNET's goal is to provide the benefits of this innovation to the state of Oklahoma in away [sic] that is consistent with the insights described earlier and in a way that ensures intellectual property security and non-infringement for all participants.

Exh. A to Pltf's Memo, in Sup. of Pltf's Mtn to Dismiss at p. CNA22805. n2

n2 Because plaintiff designated the proposal document as Highly Confidential -- Outside Counsel's Eyes Only in its document production to defendant, defendant did not quote or paraphrase the document, or attach it, in the public filing of its Answer. However, plaintiff attaches the document as an exhibit to its motion to dismiss and argues that it should be considered in resolving the motion. Inlandboatmens Union of the Pac. v. Dutra Group, 279 F.3d 1075, 1083 (9th Cir. 2002) [HN13] ("a district judge may generally consider a document outside the complaint when deciding a motion to dismiss if the complaint specifically refers to the document and if its authenticity is not questioned."). I agree with plaintiff and defendant makes no objection to my considering the document.

[*28]

As noted in Zenith Electronics, while Pro-Mold addressed the preclusive effect of the patent laws in regard to federal unfair competition Lanham Act claims based on the filing of an allegedly baseless patent infringement action, claims based on "alleged marketplace statements," stand in contrast and Pro-Mold does not dictate the analysis. Zenith Electronics, 182 F.3d at 1349. In Zenith Electronics, the counterclaim against the patentee which had brought the patent infringement action was based on marketplace statements -- statements made by the patentee to the alleged infringer's potential customers that the alleged infringer's product was infringing and that the alleged infringer was unable to design around the patents. Id. In discussing the distinction, the Zenith Electronics court observed: "The difference, however, is that [HN14] the initiation of an infringement suit is clearly not covered by the text of § 43(a) [of the Lanham Act], while a communication to the customers of the accused infringer, in certain circumstances, may be. Id.

After a lengthy discussion, the Zenith Electronics court concluded that

> [HN15] before a patentee [*29] may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith. This prerequisite is a function of the interaction between the Lanham Act and patent law, and is in addition to the elements required by § 43(a) itself, as § 43(a) alone does not require bad faith[.]

Id. at 1353. The court then made clear that its holding applied to two separate types of marketplace statements: (1) those alleging that an alleged infringer's product infringes the patentee's patents; and (2) those alleging

Page 11

that the alleged infringer could not manufacture a noninfringing product. Id. at 1354. The court noted that "both types of statements, if made in bad faith, are damaging to competition and are not the type of statements protected by the patent laws." Id.

The Zenith Electronics court also expressly held that consistent with its analysis for a federal Lanham Act claim, and consistent with its analysis in earlier cases, [HN16] bad faith is also a prerequisite to a state law tortious [*30] interference claim based on an unfair competition theory caused by a patentee's marketplace statements. Id. at 1355. Thus, here, under Zenith Electronics, defendant must allege, and later prove, that plaintiff's marketplace statements to potential customers were made in bad faith. Failure to do so results in the preemption of the state unfair competition claims and the preclusion of the federal unfair competition claim.

Plaintiff contends, however, that defendant's allegations of bad faith are not enough. Rather, plaintiff argues, defendant must allege and prove that plaintiff's statements are "objectively baseless." Plaintiff relies on a March 2004 Federal Circuit opinion which held that to survive preemption, a state law unfair competition claim based on statements made by a patent holder to an alleged infringer, required proof that the statements were objectively baseless. Globetrotter Software, Inc. v. Elan Computer Group, Inc., 362 F.3d 1367 (Fed. Cir. 2004).

In Globetrotter, the defendant asserted counterclaims of state law tortious interference with prospective economic advantage and unfair competition based on the plaintiff having [*31] sent emails and letters to the defendant and to a third party that was in negotiations to purchase defendant, accusing defendant of patent infringement. The court first noted the present, governing law: "federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation." Id. at 1374. Such state law claims "can survive federal preemption only to the extent that those claims are based on a showing of bad faith' action in asserting infringement." Id. To avoid preemption, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." Id. (internal quotation omitted).

The court then noted that while the defendant argued that the plaintiff had engaged in bad faith, he endeavored to show it at summary judgment "only through attempts to demonstrate subjective bad faith." Id. at 1375. Thus, the question on appeal was whether the bad faith standard discussed in Zenith Electronics could be satisfied in the absence of a showing that the claims asserted were objectively baseless. [*32] Id. The court concluded that it could not. The court held that the "objectively baseless" standard applies to state-law claims based on communications alleging patent infringement such as those presented in the case. Id. at 1377.

While the Globetrotter court phrased the question at issue as whether the bad faith standard in Zenith Electronics required a showing of objective baselessness, the court expressly limited the application of the objectively baseless standard to pre-litigation statements regarding patent infringement made to an alleged infringer. Id. As noted above, the facts in Globetrotter were that the patent holder communicated with defendant, the alleged infringer, and the putative purchaser of defendant who would stand in defendant's shoes, about the alleged infringement. These were not statements in the marketplace to potential customers as were at issue in Zenith Electronics.

The court described the statements in Zenith Electronics as "statements made in cease-and-desist letters by a patentee asserting its patent rights." Id. It then held that the objectively baseless standard applied to state law claims "based on communications [*33] alleging patent infringement such as those in this case." Id. (emphasis added). It also stated that an allegation that a patent holder has engaged in wrongful conduct based on communications by the patent holder alleging patent infringement, must meet the objectively baseless standard. Id.

Finally, and in the most direct expression of the limitation of its holding, the court specifically distinguished statements made in the marketplace:

> We have also held that [HN17] federal patent law preempts state law that punishes merely "publicizing a patent in the marketplace, unless the plaintiff can show that the patentholder acted in bad faith." Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1336 (Fed. Cir. 1998) (overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359). We need not decide in this case whether the objectively baseless standard applies in the context of publicizing a patent through means other than pre-litigation communications.

Id. at 1377 n.9 (emphasis added).

Thus, Globetrotter does not control this case. The allegations forming the basis of defendant's unfair competition [*34] claims, both state and federal, are that

Page 12

plaintiff made false and exaggerated statements in the marketplace, to potential customers. This falls squarely into the question left open by the Globetrotter court in footnote nine.

Plaintiff argues that the objectively baseless standard should apply to marketplace conduct directed at potential customers. Plaintiff contends that the marketplace should be treated no differently than the relationship between the patent holder and its alleged infringing competitor. I disagree.

As explained in Globetrotter, the objectively baseless standard comes from Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 123 L. Ed. 2d 611, 113 S. Ct. 1920 (1993). In cases before Professional Real Estate, the Court had recognized an exception to antitrust liability for activities directed toward influencing government action. Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 135-36, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961). The Court held that the Sherman Act did not reach such activities. Id. at 136-38. However, the Court noted that immunity would not exist if the accused activity, although "ostensibly directed [*35] toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." Id. at 144.

Following Noerr, which involved only "mere attempts to influence the passage or enforcement of laws," id. at 135, the Court extended the Noerr immunity to attempts to petition the government for redress through litigation in the courts. Calif. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510-11, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972). These previous decisions however, as noted in Globetrotter, did not resolve the question "'whether litigation may be sham merely because a subjective expectation of success does not motivate the litigant.'" Globetrotter, 362 F.2d at 1375 (quoting Prof'l Real Estate, 508 U.S. at 57).

Professional Real Estate answered that question, holding that "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." Prof. Real. Estate, 508 U.S. at 57. The Court explained:

> The lawsuit must be objectively baseless in the sense that no reasonable [*36] litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail.

Id. at 60. If the challenged litigation is objectively baseless, the court then examines the litigant's subjective motivation. Id. at 57.

The Globetrotter case addressed the question noted above -- whether the bad faith standard for pre-litigation communications required a showing of objective baselessness. But, in borrowing the objectively baseless standard from Professional Real Estate, the Globetrotter court acknowledged that the Supreme Court had not previously addressed the question whether the Professional Real Estate objectively baseless standard applied outside the context of actual litigation. Globetrotter, 362 F.3d at 1376.

The court noted that its sister circuits, "almost without exception," have applied the Noerr protections to pre-litigation communications. Id. It cited cases from other circuits which noted that "'given [*37] that petitioning immunity protects joint litigation, it would be absurd to hold that it does not protect those acts reasonably and normally attendant upon effective litigation.'" Id. (quoting Coastal States Mktg, Inc. v. Hunt, 694 F.2d 1358, 1367 (5th Cir. 1983)). The Globetrotter court relied on these cases to conclude that an extension of Noerr, along with the objectively baseless standard of Professional Real Estate, to pre-litigation communications directed from the patent holder to an alleged infringer, was warranted.

This explanation of the basis for the Globetrotter court's holding is relevant to the question of whether that holding should be further extended to marketplace conduct. An examination of the antecedents of the Globetrotter holding shows that the roots of the Noerr immunity and its recognized "bad faith" or "sham" exception are grounded in activities directed toward influencing government action and in attempts to petition the government for redress through litigation in the courts. The reasoning in Globetrotter for extending the immunity to pre-litigation activities is sound: "'The litigator should not be protected [*38] only when he strikes without warning.'" Id. at 1376 (quoting Coastal States, 694 F.2d at 1367).

But, given that the doctrine upon which Globetrotter is based is so squarely rooted in litigation activities, there is no basis for an extension of it into non-litigation marketplace conduct. Based on the prior cases supporting Globetrotter's holding, it would be inappropriate to stray from the litigation or pre-litigation context in which the Noerr immunity and its bad faith or sham, and now objectively baseless, exception, has been applied.

Page 13

Furthermore, aside from the litigation genesis of the doctrine, it is important to note another basis for distinguishing between pre-litigation statements made to an alleged infringer and statements made to potential customers in the marketplace. Presumably, the marketplace statements are intended to frighten potential customers away from doing business with the alleged infringer and to bring them on as a customer of the patent holder. Typically, upon reading the marketplace communications, a customer would not retain legal counsel to evaluate the possible infringement of one supplier or another.

In contrast, [*39] the alleged competitor infringer would arguably obtain counsel as a result of the pre-litigation communications threatening it with infringement and litigation. Thus, to better protect the potential customer, who will likely not hire counsel to analyze the relative merits of competing suppliers' patent infringement allegations, the law should make it easier to litigate whether misleading or false statements were made in the marketplace. While the bad faith standard clearly applies in that context under Zenith Electronics, this distinction between a potential customer and an alleged infringer merits restricting the additional hurdle commanded by the objectively baseless standard to pre-litigation communications directed at the alleged infringer.

In sum, I conclude that [HN18] Zenith Electronics requires that any state or federal unfair competition claims based on marketplace statements made by plaintiff, be preempted (state claims) or precluded (federal claim) unless defendant alleges that such statements were made in bad faith. Globetrotter's objectively baseless standard does not apply to marketplace conduct and for the reasons articulated above, the objectively baseless standard [*40] should not be extended beyond pre-litigation communications to an alleged infringer and so, does not apply to the marketplace statements alleged here. Accordingly, because defendant alleges that plaintiff acted in bad faith and thus, its pleading meets the Zenith Electronics standard, I recommend that plaintiff's motion to dismiss the unfair competition claims, to the extent they are based on marketplace statements to potential customers, be denied. I further note that as a result of my conclusion, I need not address defendant's argument that the objectively baseless standard applies only at the summary judgment stage, not the pleading stage. While my decision would likely resolve this issue against defendant, I do not analyze it here.

B. California Statutory Claim

Plaintiff contends that even if the unfair competitions claims are not preempted or precluded, the California statutory claim should be dismissed because California law does not apply to plaintiff's Oregon conduct. I agree with plaintiff.

[HN19] A district court sitting in diversity generally must apply the choice of law rules for the state in which it sits. 389 Orange Street Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999); [*41] Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) (in diversity case, when deciding conflict of law questions based on state law claims the district court applies the conflict of law principles of the forum state).

[HN20] Oregon courts first look to whether there is a material difference between Oregon substantive law and the law of the other forum. Angelini v. Delaney, 156 Or. App. 293, 299, 966 P.2d 223, 227 (1998). If there is no material difference between the substantive law of Oregon and the law of other forum, there is a "false conflict" for purposes of the choice of law. Id. In such cases, Oregon law applies. Sy v. United Parcel Serv. Gen. Servs. Co., 1998 U.S. Dist. LEXIS 3453, No. CV-94-1464-FR, 1998 WL 126870, at *6 (D. Or. Mar. 17, 1998).

If a true conflict exists, Oregon proceeds with a conflicts of law analysis guided by the Restatement of Conflicts. See Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc., 182 Ore. App., 347, 358, 49 P.3d 803, 809 (2002) (Oregon has adopted the choice of law rules of Restatement (Second) of Conflicts § 6 and the "most significant relationship" test for tort choice of law set forth [*42] in Restatement § 145 for tort claims); Manz v. Continental American Life Ins. Co., 117 Or. App. 78, 82, 843 P.2d 480, 482 (1992) (Oregon courts look to section 188 of the Restatement of Conflicts for guidance in resolving choice-of-law issues in contractual disputes).

Plaintiff first analyzes the choice of law issue in regard to the statutory unfair competition claim to the extent it is based on the filing of patent infringement actions. Because I recommend that this portion of defendant's unfair competition claims be dismissed, I need not address this argument.

Next, plaintiff offers a choice of law analysis for the statutory unfair competition claim to the extent it is based on plaintiff's marketplace statements. The parties appear to agree that a true conflict exists because Oregon does not have a similar statute or common law cause of action. Sy, 1998 U.S. Dist. LEXIS 3453, 1998 WL 126870, at *6 (conflict of laws found where Oregon did not have a similar statute and parties could not cite an Oregon case establishing similar law).

Defendant states that while Oregon Revised Statute §

(O.R.S.) 646.608 appears similar to California Business & Professions Code Section 17200, [*43] O.R.S. 646.608 apparently does not provide a cause of action for a competitor. Embark.com, 230 F. Supp. 2d at 1174 (Oregon's trade practices statute provides a cause of action only for consumers). And, defendant represents there does not appear to be common law cause of action based on similar legal principles. Thus, because there is no applicable Oregon statute or Oregon common law cause of action similar to the claim defendant asserts under section 17200, there is an actual conflict of law.

Plaintiff contends that to the extent defendant's claim is based on alleged marketplace misrepresentations, section 145 of the Restatement (Second) of Conflicts, which addresses tort claims, applies. [HN21] Section 145 states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) [*44] the place where the conduct causing the injury occurred,
>>
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflicts § 145.

[HN22] Section 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>> (a) the needs of the interstate and international systems,
>>
>> (b) the relevant policies of the forum,
>>
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d) the protection of justified expectations,
>>
>> (e) the basic policies underlying the particular field of law,
>>
>> (f) certainty, predictability and uniformity of result, and
>>
>> (g) ease in the determination and application [*45] of the law to be applied.

Restatement (Second) of Conflicts § 6.

Defendant contends that the relevant conflicts analysis begins with section 301, not section 145. Section 301, a provision applicable to corporate entities, states that "the rights and liabilities of a corporation with respect to a third person that arise from a corporate act of a sort that can likewise be done by an individual are determined by the same choice-of-law principles as are applicable to non-corporate parties." Restatement (Second) of Conflicts section 301.

The commentary indicates that when section 301 applies, the applicable conflicts rule depends on the type of conduct at issue:

> [HN23] A corporation's rights and duties under a contract are determined by the law selected by application of the rules of §§ 187-188. If an agent of a corporation, while acting in the course of his

Page 15

employment, commits a tort, the law selected by application of the rules of §§ 145 and 174 determines whether the corporation is liable for the tort and the extent to which it is liable in damages. Likewise, the validity of a transfer by a corporation, or to a corporation, of an interest in land or in a chattel is determined [*46] by the law selected by application of the rules of §§ 223 and 244.

Id., comment b. Although defendant cites a Fifth Circuit case which applied the factors in section 6 of the Restatement without considering the factors in section 145, it appears that the court in that case failed to take note of the commentary. Askanase v. Fatjo, 130 F.3d 657, 670-71 (5th Cir. 1997) (under section 301, when corporation acts in a way that an individual can, the chose of law principles in section that apply to non-corporate parties in section 6, apply to the corporation). When the commentary is considered, section 301 directs the court to section 145 for tort claims, the appropriate analog in this case for defendant's statutory unfair competition claim. Section 145, which ultimately directs the court to consider the principles stated in section 6, provides its own factors to consider in addition to those articulated in section 6. Thus, the analysis begins with section 145.

Plaintiff concedes that the place of injury is California because defendant is located there. But, plaintiff notes, the comments to section 145 suggest that the place of alleged conduct, not the place [*47] of injury, carries more weight in false advertising and unfair competition claims. Comment f states:

> The relative importance of the contacts mentioned above varies somewhat with the nature of the tort involved. Thus, the place of injury is of particular importance in the case of personal injuries and of injuries to tangible things (see §§ 146-147). The same is true in the case of false imprisonment and of malicious prosecution and abuse of process (see § 155). On the other hand, [HN24] the place of injury is less significant in the case of fraudulent misrepresentations (see § 148) and of such unfair competition as consists of false advertising and the misappropriation of trade values. The injury suffered through false advertising is the loss of customers or of trade. Such customers or trade will frequently be lost in two or more states. The effect of the loss, which is pecuniary in its nature, will normally be felt most severely at the plaintiff's headquarters or principal place of business. But this place may have only a slight relationship to the defendant's activities and to the plaintiff's loss of customers or trade. The situation is essentially the same when misappropriation [*48] of the plaintiff's trade values is involved, except that the plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit. For all these reasons, [HN25] the place of injury does not play so important a role for choice-of-law purposes in the case of false advertising and the misappropriation of trade values as in the case of other kinds of torts. Instead, the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state whose local law determines the rights and liabilities that arise from false advertising and the misappropriation of trade values.

Restatement (Second) of Conflicts § 145, comment f.

I agree with plaintiff that while the place of injury is in California, the commentary indicates that Oregon, the place where the offending conduct was generated, is more relevant in this unfair competition claim. The third factor in section 145, the place of business and incorporation of the parties, favors neither California nor Oregon law because plaintiff's principal place of business is in Oregon, defendant's is in California, and both are incorporated in Delaware. [*49]

Finally, section 145's fourth factor looks to the place where the relationship between the parties is centered. Plaintiff contends that Oregon is favored because plaintiff's relationship with defendant is centered around this lawsuit in Oregon. The better argument is that there is no particular place that the relationship is centered because other than being opposing litigants in a case, these two entities compete in a national or even international market. Overall, I agree with plaintiff that under the four factors in section 145, Oregon law would apply to the conduct forming the basis of defendant's statutory unfair competition claim to the extent it is based on plaintiff's marketplace communications.

Under the factors of section 6, I agree with plaintiff that nothing about the needs of the interstate and international systems favor applying California or Oregon law. I agree with defendant that under the next factor, the relevant policy of the forum is one of consumer protection. Embark.com, 230 F. Supp. 2d at 1174. The relevant policy of California, the other interested state, is

Page 16

also one of consumer protection. Defendant contends that when examining the relative [*50] interests of the two states in the determination of the issue at hand, California law should apply because it best achieves the policy of protecting consumers by allowing competitors, as well as consumers, to bring this type of claim.

I disagree. Oregon has a greater interest than California because the alleged marketplace statements were made in Oregon and directed to Oklahoma. While some California residents could be affected by these statements if I accept defendant's theory that plaintiff is attempting to establish a monopoly in the field of on-line admissions applications by its bad faith conduct and then will unilaterally raise prices for consumers, at this point any interest California may have in protecting its consumers from communications generated in Oregon and directed at Oklahoma, is remote at best.

Under the factor of justified expectations, defendant argues that applying California law does not interfere with the reasonable expectations of the parties. Defendant argues that because plaintiff does business in California with California residents, it can reasonably expect to be haled into a California court and be subject to California's unfair competition law. Defendant [*51] further argues that allowing it to proceed with its section 17200 counterclaim protects its expectations of being able to prevent unfair competition against itself in California.

I conclude that defendant's expectation of bringing a California statutory claim against plaintiff in Oregon for a statement made in Oregon and not expressly directed at California residents, is not justified. Additionally, while plaintiff may have an expectation that it could be haled into a California court and sued there, California law may not necessarily apply to the particular act at issue. Plaintiff's justified expectations are that it may assert its patents in Oregon courts and may make statements from Oregon without being subject to a California statutory claim that has no Oregon counterpart.

Finally, applying Oregon law to Oregon conduct advances certainty, predictability, and uniformity to those who bring suits in Oregon or otherwise engage in conduct within Oregon and the application of Oregon law is easier for this Court given its familiarity with Oregon law compared with California law. While defendant suggests that application of Oregon law will encourage forum shopping, I reject this argument. [*52] Defendant contends that if it had brought this claim against plaintiff in a California state court, plaintiff would have sought to dismiss it or transfer to Oregon, arguing that it is a compulsory counterclaim to the pending Oregon patent action. Thus, to prevent plaintiff from shopping for a forum more favorable for the adjudication of its commercial conduct, California law should apply.

Defendant's argument is premised on an assumption that the California claim would be considered a compulsory counterclaim, an assumption that may or may not be valid. Additionally, there is no reason to conclude that plaintiff filed its patent infringement claims in Oregon in an effort to forum shop for a putative unfair competition counterclaim against plaintiff. This action was filed in Oregon because plaintiff is located in Oregon. Defendant's argument is unpersuasive.

On balance, an analysis of the factors of section 145 and section 6 lead me to conclude that Oregon law should apply to plaintiff's conduct challenged in defendant's unfair competition claims and thus, I recommend that plaintiff's motion to dismiss the section 17200 California statutory claim, be granted.

CONCLUSION

I recommend [*53] that defendant's motion to dismiss (# 52) be granted. I recommend that plaintiff's motion to dismiss (# 64) be granted as to all the unfair competition claims to the extent those claims are premised on the filing of patent litigation. I further recommend that plaintiff's motion be granted as to the California statutory claim under section 17200. Finally, I recommend that plaintiff's motion be denied as to the remaining unfair competition claims to the extent they are based on marketplace communications to customers.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 27, 2004. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due November 10, 2004, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 12th day of October, 2004.

Dennis James Hubel

United States Magistrate Judge