# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
(Cite as: 2001 WL 1450592 (E.D.Pa.))

C

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
GALLUP, INC., d/b/a The Gallup Organization, Plaintiff,
v.
TALENTPOINT, INC. Defendant.
No. CIV.A. 00-5523.

Nov. 13, 2001.

*MEMORANDUM*

REED, S.J.

*1 Plaintiff the Gallup Organization ("Gallup") alleges that defendant Talentpoint, Inc., now operating under the name of Kenexa Corporation ("Kenexa"), [FN1] misappropriated valuable intellectual property belonging to Gallup. Plaintiff brings forth six federal and state claims. [FN2] Presently before this Court are the motion of plaintiff Gallup for partial summary judgment on its copyright claim (count V) (Document No. 17), the cross motion of defendant Kenexa for partial summary judgment on the copyright claim (Document No. 20), both of which have been filed pursuant to Federal Rule of Civil Procedure 56, and the motion of Kenexa for partial summary judgment on counts I, II and III, pursuant to Rule 56, and for judgment on the pleadings on counts IV and VI, pursuant to Rule 12(c), or in the alternative for summary judgment pursuant to Rule 56 (Document No. 19). Each motion, and the papers in support of and opposition, have been filed under seal in accordance with the confidentiality agreement entered into by the parties.

FN1. It appears that Talentpoint Inc. has changed its name to Kenexa Corporation. The docket, however, does not reflect that change. Because both parties refer to the defendant company as Kenexa, and for the sake of simplicity, I will refer to the company as Kenexa.

FN2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law. This Court has supplemental jurisdiction over the remaining state claims pursuant to 28 U.S.C. § 1367. Jurisdiction is also proper pursuant to 28 U.S.C. § 1332 based upon the citizenship of the parties as diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Upon consideration of the motions, responses and replies thereto, I will deny the motion of plaintiff for summary judgement on the copyright claim, will deny the motion of defendant for summary judgement on the copyright claim, will deny in part and grant in part the motion of defendant for summary judgment on counts I, II and III, and will deny the motion of defendant for judgment on the pleadings, or in the alternative for summary judgment, on counts IV and VI.

I. Background

At the heart of this case is Gallup's employee engagement survey instrument, known as the "Gallup Q 12" or "Q 12". This survey seeks the employee's reaction to twelve specific issues relating to an employee's perception of his or her workplace, plus an overall employee satisfaction question. The Q 12 is designed to measure employee engagement in the workplace. On October 19, 1999, Gallup received a copyright certificate for the survey. According to the certificate, the survey was created in 1992. The Q 12 is also the subject of *First, Break All the Rules: What the World's Greatest Managers Do*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

*Differently,* ("*First, Break All the Rules*" or "*Rules*"), a book written in 1999 by two Gallup employees, Curt Coffman and Marcus Buckingham. Gallup alleges that Kenexa has copied the Q 12 and is using ten of the twelve survey items, as well as the overall satisfaction question, in virtually identical form in its employee engagement survey business.

The survey exists of the following:
On a five point scale, where "5" is extremely satisfied, and "1" is extremely dissatisfied, how satisfied are you with _____ as a place to work?
On a scale of 1 to 5, where 5 is strongly agree, and 1 is strongly disagree, please indicate your level of agreement with each of the following items.
1. I know what is expected of me at work.
2. I have the materials and equipment I need to do my work right.
3. At work, I have the opportunity to do what I do best everyday.
*2 4. In the last seven days, I have received recognition or praise for doing good work.
5. My supervisor, or someone at work, seems to care about me as a person.
6. There is someone at work who encourages my development.
7. At work, my opinions seem to count.
8. The mission/purpose of my company makes me feel my job is important.
9. My associates (fellow employees) are committed to doing quality work.
10. I have a best friend at work.
11. In the last six months, someone at work has talked to me about my progress.
12. This last year, I have had opportunities at work to learn and grow.
(Pl.'s Mem. in Further Support, Ex. O, Aff. of Donald O. Clifton at 3.)

The two parties are competitors in the field of employees surveys. Gallup is a management consulting firm. In addition to conducting "The Gallup Poll," it provides consultation to improve company performance by leveraging employee and customer assets. Gallup was established in 1935. In 1988, Gallup was acquired by Selection Research Inc. ("SRI"), but the Gallup name was retained. Kenexa provides integrated human capital management and technology solutions. In 1997, Kenexa acquired Human Resource Innovations ("HRI"), which was founded in 1994 by Bill Erickson ("Erickson"), who worked for Gallup for 15 years, and Troy Kanter ("Kanter"), who was employed by Gallup for four years.

Gallup explains the following with respect to the Gallup Q 12. In developing the survey, Gallup researchers conducted thousands of focus groups across many varied industries over a period of approximately twenty-five years. (Aff. of James K. Harter ¶ 7, Pl.'s Ex. E.) Based on these focus groups and accumulated knowledge, Gallup developed extensive surveys and studied the results thereof in order to find common factors within the data. (*Id.* ¶ 9.) After identifying preferred items in this process, Gallup conducted confirmatory analyses. (*Id.* ¶ 11.) One such analyses is known as the "meta-analysis." (*Id.*) Gallup's 1997 meta-analysis encompasses 1,135 business units and 41,490 individual employee responses. (*Id.* ¶ 15.) The 1998 meta-analysis encompasses over 2,500 business units and more than 100,000 individual employee responses. (*Id.* ¶ 16.) Gallup further contends since Kenexa's 1997 acquisition of HRI, Kenexa has begun to conduct employee engagement surveys and has "raided" Gallup in order to hire former Gallup employees who have detailed knowledge of the Gallup Q 12.

Kenexa counters with the following. Since starting HRI, Erickson has written hundreds of items used in surveys. (Dep. of Erickson at 152, Def.'s Ex. B.) Survey questions were developed through experimentation, client suggestions, a determination of what has been helpful and works, what has created a behavioral change in an organization, as well as linkage research. (*Id.*) Over time, a group of questions, or "core" survey items has emerged. (*Id,* at 150-53.) The overall employee survey methodology, and the selection of the individual items were fully developed in mid-1996. (Dec. of Erickson ¶ 2.) These core items have varied from 25-33 and at present consist of 28 items. (Dep. of Erickson at 150-53.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                   Page 3

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
(Cite as: 2001 WL 1450592 (E.D.Pa.))

B. Analysis

*1. Legal Standards*

**\*3** In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the "test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir.1999). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250.

The facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed. 176 (1962)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, and must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact and avoid summary judgment. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992).

Under Rule 56(f), where the nonmoving party believes that more time is needed for discovery, such party is directed to file an affidavit setting forth why the time is needed. *See Pastore v. Bell Tel. Co. of Pa.,* 24 F.3d 508, 510-11 (3d Cir.1994). The Court of Appeals has observed that failure to file the affidavit "is usually fatal." *See id.* at 511. Indeed, the Court appears on occasion to have determined that failure to file the affidavit equates to a failure to preserve an objection. *See Falcone v. Columbia Pictures Indus., Inc.,* 805 F.2d 115, 117 n. 2 (3d Cir.1986). Such an omission, while demonstrating poor lawyering, has also been held not ruinous if the motion "identif[ies] with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *St. Surin v. Virgin Islands Daily News, Inc.,* 21 F.3d 1309, 1314 (3d Cir.1994).

When opposing parties file cross-motions for summary judgment, the court must consider each motion separately, and "each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *U.S. ex rel. Showell v. Philadelphia AFL-CIO Hosp. Ass'n,* Civ. No. 98-1916, 2000 WL 424274, at *1 (E.D.Pa. Apr. 18, 2000), *aff'd,* --- F.3d ---- (3d Cir. Aug. 10, 2001) (quoting *Nolen v. Paul Revere Life Ins. Co.,* 32 F.Supp.2d 211, 213 (E.D.Pa.1998)).

Under Rule 12(c), "After the pleadings are closed but within such time as not to delay trial, any party may move for judgment on the pleadings." While a 12(b)(6) motion to dismiss, is filed before any responsive pleading, under Rule 12(h)(2), "[a] defense of failure to state a claim upon which relief may be granted ... may be made ... by a motion for judgment on the pleadings." In this situation, the court is directed to apply the same standards employed under 12(b)(6). *See Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991) (collecting cases); *Katzenmoyer v. City of Reading,* 158 F.Supp.2d 491, 496 (E.D.Pa.2001); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 at 515 (2d ed. 1990). Accordingly, I must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the ... non-moving party." *Green v. Fund Asset Mgmt. L.P.,* 245 F.3d 214, 220 (3d Cir.2001) (quoting *Gordon & Breach,* 931 F.2d at 1004). If "matters outside the pleading are presented to and not excluded by the court the motion shall be treated as one for summary judgement." Fed.R.Civ.P. 12(c).

*B. Copyright claim*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 4

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394

**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

*4 The parties have filed cross motions for summary judgement on the copyright claim asserted in count V of the complaint. To establish copyright infringement, plaintiff must show two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'n, Inc. v. Rural Telephone Serv. Co., Inc.,*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991); *Whelan Assoc., Inc. v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1231 (3d Cir.1986) (J. Becker); *Bieg v. Hovnanian Enter., Inc.,* 157 F.Supp.2d 475, 479 (E.D.Pa.2001).

Kenexa argues that it is entitled to summary judgment because Gallup's copyright is not valid because it is not copyrightable. In other words, its motion concerns the threshold issue of whether the Gallup Q 12 can be afforded copyright protection. Specifically, Kenexa contends that it is entitled to judgment as a matter of law because the Q 12 is necessary to the management system published in *First, Break All the Rules* and therefore under *Baker v. Selden,* 101 U.S. 99, 25 L.Ed. 841 (1879), and its progeny, the survey is not copyrightable. Kenexa's argument goes to the heart of the long held determination that "[i]t is axiomatic that copyright does not protect ideas, but only expressions of ideas." *Whelan,* 797 F.2d at 1234 (citing *Baker v. Selden*). This fundamental rule is codified in Section 102(b) the Copy Right Act of 1976, 17 U.S.C. § 101 *et seq.,* which provides that: "In no case does copyright protection for an original work of authorship extend to any idea ..., regardless of the form in which it is described, explained, illustrated, or embodied in such work." *See also* 37 C.F.R. § 202.1(b) ("Ideas ..., as distinguished from the particular manner in which they are expressed or described in a writing[,]" are not subject to copyright).

Distinguishing between an idea and an expression often proves quite challenging. *See Whelan,* 797 F.2d at 1235, 1236 n. 28 ("distinction will 'inevitably be *ad hoc.*' ") (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960) (J. Learned Hand)). In its attempt to illuminate the differences between the two terms, the Court of Appeals in *Whelan* began by analyzing the seminal Supreme Court case of *Baker v. Selden* in which the plaintiff, Selden, had obtained a copyright for his book which described a new and simplified accounting system. *See id.* at 1235. The book included "blank forms" to be used in the accounting system. *See id.* Selden alleged that Baker had infringed Selden's copyright by producing and selling books using substantially the same system and forms. *See id.* There was no dispute that Baker could use the *system* because it was agreed that the system was not copyrightable. *See id.* Rather, the dispute focused on whether the blank forms were part of the idea or part of the expression of that idea. *See id.*

*5 The Supreme Court distinguished what was protected from what was not protected as follows: " '[W]here the art [i.e., the method of accounting] it teaches cannot be used without employing the methods and diagrams used to illustrate the book ..., such methods and diagrams are to be considered as necessary incidents to the art, and given to the public.' " *Id.* at 1236 (quoting *Baker v. Selden,* 101 U.S. at 103). The High Court held that the blank forms were necessary incidents and therefore not afforded copyright protection. *See id.* Relying in large part on this passage from *Baker v. Selden,* the Court of Appeals developed the following rule in an attempt to clarify the difference:

> [T]he line between idea and expression may be drawn with reference to the end sought to be achieved by the work in question. In other words, *the purpose or function of a utilitarian work would be the work's idea, and everything that is not necessary to that purpose or function would be part of the expression of the idea...* Where there are various means of achieving the desired purpose, then the particular means chosen is not necessary to the purpose; hence there is expression, not idea.

*Id.* at 1236 (emphasis in original) (citation omitted).

While not directly discussed by the Court of Appeals in *Whelan,* this concept is akin to the concept of merger which occurs when " 'there are no or few other ways of expressing a particular idea.' " *Educational Testing Serv. v. Katzman,* 793

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 5

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
(Cite as: 2001 WL 1450592 (E.D.Pa.))

F.2d 533, 539 (3d Cir.1986) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1253 (3d Cir.1983)). When merger transpires, the expression is not protected in order to prevent a monopoly on the underlying "art" from occurring. *See id.* (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer of Copyright* § 2.18[C] at 2-202 to -204 (1985) ("*Nimmer on Copyright* ")). Conversely, if other methods exist to perform the same function, then the method is a copyrightable expression. *See id. See also Apple Computer*, 714 F.2d at 1253 ("if the same idea can be expressed in a plurality of totally different manners, a plurality of copyrights may result."); *ABR Benefits Serv., Inc. v. NCO Group*, No. Civ.A. 99-499, 1999 WL 695596, at *3 (E.D.Pa. Sept. 9, 1999); *Allen-Myland, Inc. v. Int'l Bus. Mach. Corp.*, 770 F.Supp. 1004, 1013 (E.D.Pa.1991); *Coston v. Prod. Movers*, Civ.A. No. 89-4865, 1990 WL 56516, at *3 (E.D.Pa. May 2, 1990).

The parties and this Court agree that the question of whether the Q 12 is a copyrightable expression rather than an unprotected idea is an issue of law for the Court to decide. *See Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 34 n. 5 (1st Cir.2001); *Coston*, 1990 WL 56516, at *3; 3 *Nimmer of Copyright* § 12.10[B][1] at 12-47 (2001).

*6 Kenexa analogizes the Gallup Q 12 to the blank forms in *Baker v. Selden* and argues that the Q 12 items are necessary to the method advocated and taught by Gallup in the book *First, Break All the Rules*--a seven chapter, 271 page book with five appendices, one of which is the meta-analysis which was used to verify the twelve questions. The Q 12, while not referred to as such, is detailed in chapter one which is entitled, "The Measuring Stick." The survey is touted as a tool to measure "human capital." (*Rules* at Table of Contents.)

Defendant points to various passages in the book, as well as on the dust jacket, which it contends sell the twelve survey questions as essential to the management system espoused in the book. For instance, the dust jacket reads:

[Gallup's research] finally produced the twelve simple questions that work to distinguish the strongest departments of a company from the rest. This book is the first to present this essential measuring stick and to prove the link between employee opinions and productivity, profit, customer satisfaction, and the rate of turnover.
There are vital performance and career lessons here for managers at every level, and, best of all, the book shows you how to apply them to your own situation.

An excerpt from chapter one provides:

These twelve questions ... capture the *most* information and the most *important* information. They measure the core elements needed to attract, focus, and keep the most talented employees.... These twelve questions are the simplest and most accurate way to measure the strength of the workplace.... After running a hundred million questions through our "prism," these exact questions were revealed as most powerful.... Much of the power of this measuring stick ... lies in the wording of the questions.

*Id.* at 27 (emphasis in original). Kenexa turns to the following language in *Whelan* to support its position: "The idea or purpose behind a utilitarian work may be to accomplish a certain function in a certain way ..., and the structure or function of a program might be essential to that task." *Whelan*, 797 F.2d at 1238 n. 34 (citing *Baker v. Selden*, 101 U.S. at 100). Thus defendant argues that "Gallup has published a book that teaches a particular system of art or management, and the very element that it seeks to attempt by copyright is necessary for the practice of that system." (Def.'s Mem. at 43). While Kenexa's argument has surface appeal, for the reasons which follow, I am unpersuaded by its reasoning.

I conclude that the idea in *First, Break All the Rules* can be expressed in multiple ways. The idea is that employee engagement surveys can be used to elicit information about specific constructs of a company's work environment in order to measure the strength of a workplace and attract, focus, and keep the most talented employees. (*Rules* at 27; Pl.'s Ex. O at ¶¶ 8-10.) Gallup has expressed this idea with a very specific set of questions or inquiries directed to employees. Just because the authors of the *Rules* promote this expression as the way to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 6

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394

(Cite as: 2001 WL 1450592 (E.D.Pa.))

"capture the *most* information and the most *important* information" does not mean that the survey is the only expression of that idea. *See Kepner-Tregoe, Inc. v. Leadership Software, Inc.,* 12 F.3d 527, 534 (5th Cir.1994) (determining that specific questions which prompt managers to evaluate their decision-making landscape are protectable as expressions of ideas because of the "countless ways" the ideas can be expressed and characterizing defendant's argument of non-protectability as "absurd"); *Rubin v. Boston Magazine Co.,* 645 F.2d 80, 83 (1st Cir.1981) (determining that 26 questions designed to elicit one's feeling about another is protectable expression). The Q 12 is simply Gallup's preferred method. Just because Gallup may boast this expression as *the* key to successful management, does not make it the only method. Such puffing is quite normal in promoting books--it helps sell copies.

*7 By analogy the Court of Appeals for the Third Circuit, in *Katzman,* held that the merger principle clearly did not serve as a bar to copyrighting the well known Scholastic Aptitude Test and Achievement Tests. *See Katzman,* 793 F.2d at 540.

> We are, quite frankly, unpersuaded that the number of questions that can be devised to test students on their knowledge of square roots or dangling participles is so limited that ETS' [Educational Testing Services] questions designed for this purpose represent a merger with the underlying ideas. *Although ETS cannot appropriate concepts such as rules of punctuation, analogies, vocabulary or other fundamental elements of English composition, it can, using its own resources, devise questions designed to test these concepts and secure valid copyrights on these questions.* Other persons, similarly resourceful, have ample latitude and opportunity to frame noninfringing questions testing the same subjects.

*See id.* (emphasis added). Likewise, this Court cannot reasonably conclude that the number of questions that can be formulated to survey employee engagement represent a merger to the underlying idea. There are an untold number of ways in which employee engagement can be examined. This area is not so limited that Gallup's thirteen item survey forecloses all from conducting such an analysis. While Gallup may not copyright the concept of using employee surveys, it can invent specific questions designed to study employee engagement. I therefore conclude that the motion of Kenexa for summary judgment on the copyright claim will be denied.

I now turn to the merits of the motion of Gallup for summary judgment. Under section 410(c):

> *8 ... the certificate of registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright.... *The evidentiary weight to be accorded the certificate of registration made thereafter *shall be within the discretion of the court.*

17 U.S.C. § 410(c) (emphasis added). Thus, where registration occurs within the proscribed five year period, a rebuttable presumption of validity exists. The burden of showing invalidity rests with the defendant. Where, as here, registration is not obtained within five years, the copyright is not deemed invalid; rather, the plaintiff is not entitled to the presumption of validity. *See Cameron v. Graphic Mgmt. Assoc.,* 817 F.Supp. 19, 23 (E.D.Pa.1992). The court, however, may still give the certificate the weight of *prima facie* evidence. *See id.* If the court decides not to afford it such weight, then plaintiff bears the burden of demonstrating validity. *See id.*

In order to be valid, the copyright must be original. *See Masquerade,* 912 F.2d at 668-69. "The *sine qua non* of copyright is originality." *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. In order to meet this requirement, a work "must have been 'independently created by the author' and must possess 'at least some minimal degree of creativity.' " *Southco, Inc. v. Kanebridge Corp.,* 258 F.3d 148, 151 (3d Cir.2001) (quoting *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287). This standard is not a " 'stringent" one. *See id.* "Originality does not signify novelty; a work may be original even though it closely resembles other work so long as the similarity is fortuitous, not the result of copying." *Feist,* 499 U.S. at 345, 111 S.Ct. at 1287. Unlike

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 7

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394

**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

the idea/expression dichotomy, the question of originality is one of fact. *See Morrelli v. Tiffany and Co., Inc.,* No. Civ. A. 00-1961, 2001 WL 179898, at *1 (E.D.Pa. Jan. 10, 2001); 3 *Nimmer of Copyright* § 12.10[B][1] at 12-47 (2001).

Gallup claims that it has substantial and uncontroverted evidence of originality. It turns to the affidavits of James K. Harter, Ph.D., ("Dr. Harter") (Pl.'s Ex. E), who was the lead researcher on the meta-analysis, and Donald O. Clifton, Ph.D., ("Dr. Clifton") (Pl.'s Ex. O), who appears to be the first researcher involved in developing the Q 12. Dr. Harter details the efforts which led to the development of the survey, and Dr. Clifton details his personal research into employee relationships.

Kenexa argues that genuine issues of material fact exist with respect to this issue. In support, defendant offers other sources which it argues have produced survey questions very analogous to the Q 12 items, and many of these sources either pre-date or are concurrent with the 1992 date of creation on Gallup's certificate. For instance, Kenexa points to the similarity between Gallup's first item on its survey, "I know what is expected of me at work" and the following: "I know exactly what is expected of me in my selling position," (Role ambiguity Scale, question 5 (1988), Def.'s Ex. I at 9), as well as "I have a clear understanding of the results expected of me on my job." (TRW Employee Opinion Survey, question 30 (date unclear), Def.'s Ex. I at 23.) As to Gallup's fifth item on its survey, "My supervisor, or someone at work, seems to care about me as a person," Kenexa directs the court to "Company cares about people." (Defining Quality of Life, question 51 (1984), Def.'s Ex. I at 13.) In short, Kenexa has produced other surveys which raise a triable issue as to the originality of the Gallup survey. As this Court is not permitted to weigh evidence on a motion for summary judgement, I conclude that Gallup has not shown as a matter of law that its survey is original.

Much of the same evidence raises a genuine issue of material fact as to the copying element of a copyright claim. Because direct evidence of copying is rarely possible, copying can be established by circumstantial evidence of access to the copyrighted work and a showing that the allegedly infringing work is substantially similar to the copyrighted work. *See Whelan,* 797 F.2d at 1231-32; *Curtin v. Star Editorial Inc.,* 2 F.Supp.2d 670, 673 (E.D.Pa.1998). Where two works are so similar that it is likely that one was copied, evidence of access is not necessary because it is obvious that access occurred. *See Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th 1997) (J. Posner). At the same time, even a striking similarity is not necessarily dispositive because the plaintiff still has a burden of showing originality or that the similarities are not a result of both parties drawing from the same sources in the public domain. *See Whelan,* 797 F.2d at 1232 n. 23; *Ty,* 132 F.3d at 1170. The issue of whether protected art has been copied is for the fact-finder. *See id.; ABR Benefits,* 1999 WL 695596, at *4; 3 *Nimmer on Copyrights* § 12.10[B][2] at 12-148. The evidence produced by Kenexa on the originality analysis could also show that any similarity in the survey items is a result of both parties taking from information in the public domain.

*9 I therefore conclude that while the Gallup Q 12 is protectable as an expression of an idea, defendant has raised genuine issues of material fact with respect to whether Kenexa has violated copyright laws.

*C. Unlawful Raid Claim* [FN3]

> FN3. I note preliminarily that a district court sitting in a diversity case is directed to apply the conflict of law rules of the forum state. *See Kirschbaum v. WRGSB Assoc.,* 243 F.3d 145, 150 (3d Cir.2000). Under these conflict rules, "[w]here the different laws do not produce different results, courts presume that the law of the forum state shall apply." *Financial Software Sys., Inc. v. First Union Nat'l Bank,* Civ. No. 99-623, 1999 WL 1241088, at *3 (E.D.Pa.1999). As parties agree that the substantive law of Nebraska applies to this case, I will not *sua sponte* rule otherwise.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 8

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

Gallup's first count asserts a claim for unfair competition premised on an "unlawful raid" of Gallup employees. Kenexa moves for summary judgment on the ground that no such cause of action exists. For the following reasons, this Court agrees that plaintiffs have failed to demonstrate that a viable cause of action for "unlawful raid" exists under Nebraska law. Gallup devotes a significant body of its argument detailing the evidence which would conceivably support such a claim, but spends very little energy attempting to convince this Court that such a claim exists. Plaintiff cites to three Nebraska cases, none of which hold that such a common law claim exists. *Personal Finance Company of Lincoln v. Personal Loan Service,* 133 Neb. 373, 275 N.W. 324, 324-26 (Neb.1937), did not involve an alleged raid of employees, but misappropriation of good-will and the trade name of plaintiff. Kenexa specifically quotes a passage from an unpublished case which actually discusses Nebraska's Consumer Protection Act, § 59-1601, which was not plead in the case before me. *See Cattz, Inc. v. 4-L Mfg., Inc.,* No. A-98-886, 1999 WL 1063087, at *14 (Neb.Ct.App. Aug. 10, 1999) (unpublished). The final case, also unpublished, specifically provides that: "This opinion deals with the subject of jurisdiction." *Alexander & Alexander Inc. v. Coffey,* No. A-91-918, 1992 WL 179452, at 1 (Neb.Ct.App. July 14, 1992). While the inunction issued by the lower court seemed to prohibit defendants from soliciting business from clients of plaintiff, it is not clear under which theory of law the injunction was sought.

Of the remaining cases cited by plaintiff which actually use the term "raid," none actually support a separate cause of action. *See Delta Educ., Inc. v. Langlois,* 719 F.Supp. 42 (D.N.H. Aug. 8, 1989) (mentioning raid of employees, but not discussing whether "raid" is separate cause of action; unclear what causes of action were alleged); *Allan J. Richardson Ass'n, Inc. v. Merrill Lynch Settlement Serv., Inc.,* Civ.A. No. H-87-321, 1987 WL 11890, at *1 (S.D.Tex.1987) (claim brought for tortious interference with contractual relations); *Loral Corp. v. Moyes,* 174 Cal.App.3d 268, 278, 219 Cal.Rptr. 836, 843 (1985) (claim brought for invalidating noninterference agreement); *Bancroft-Whitney Co.* *v. Glen,* 64 Cal.2d 327, 332 n. 4, 49 Cal.Rptr. 825, 411 P.2d 921 (Cal.1966) (court specifically did not reach merits of cause of action for "systematically inducing plaintiff's personnel to leave its employ"); *Everen Sec. Inc. v. A.G. Edwards and Sons, Inc.,* 308 Ill.App.3d 268, 271, 275, 241 Ill.Dec. 451, 719 N.E.2d 312 (1999) (plaintiff alleged breach of fiduciary duty, breach of contract, aiding and abetting, conspiracy, misappropriation and unfair competition; court acknowledged that complaint did not pursue cause of action for "raid").

*10 I therefore conclude that plaintiff has failed to demonstrate the existence of this cause of action in the law and will grant defendant judgment as a matter of law on this claim which is in effect that defendant systematically pirated plaintiff's employees and put them to work for defendant. This conclusion is further supported by the fact that much of the evidence produced by Gallup on the "raid" claim could be used in support of its claim for tortious interference, discussed below. Thus there is no seeming injustice in depriving plaintiff of a non-existent cause of action.

*D. Tortious Interference Claims*

Gallup asserts a claim for tortious interference with a contract, specifically covenants-not-to-compete and non-disclosure agreements (count II), as well as a claim for tortious interference with business relations with Gallup employees and clients (count III). Kenexa moves for summary judgment on both claims.

Beginning with Count II, the complaint lists thirteen at-will employees who have left Gallup and joined Kenexa. (Compl. ¶ 24). Attached to the compliant are six different signed contracts by these various employees. With respect to claims brought for interference with the non-compete contracts, Kenexa divides these covenants into three categories. In the first category falls Ame Creglow and Pablo Rodriguez who apparently have not signed such contracts. Gallup does not appear to disagree. In the second category falls Bill Erickson, Troy Kanter and Roger Lipson who signed contracts which prohibit the employees "for a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 9

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
(Cite as: 2001 WL 1450592 (E.D.Pa.))

period of twenty-four (24) months, from the date of termination, directly or indirectly ... [to] engage in providing services of the nature in which the Employee provided during his/her employment with the Company." (Compl. Ex. B). Under Nebraska law, a covenant not to compete is only valid if it restricts the former employees from soliciting or working for clients of the former employer with whom the former employee actually had contact. *See Mertz v. Pharmacists Mut. Ins. Co.,* 261 Neb. 704, 712, 625 N.W.2d 197, 204-5 (2001) (citation omitted). Thus, Kenexa argues, and Gallup does not appear to disagree, that these covenants are invalid.

In the final category fall the remaining former employees identified in the complaint. Kenexa argues that each of these contracts was signed *after* those former employees began their employment and are therefore invalid because the only consideration was continued employment. [FN4] There is judicial disagreement over whether continued employment constitutes proper consideration. *Compare Zellner v. Stephen D. Conrad,* 183 A.D.2d 250, 255-56, 589 N.Y.S.2d 903, 907 (1992) (holding that in at-will employment, continued employment is sufficient to support the covenant and collecting cases on both sides of issue) *with George W. Kistler, Inc. v. O'Brien,* 464 Pa. 475, 484-85, 347 A.2d 311, 316 (1975) (holding contrary view). *See also* 51 A.L.R.3d 825 (1973). Nebraska has not addressed this question of law; thus this Court must predict the law that the highest court of Nebraska would apply. *See Neurotron Inc. v. Med. Serv. Ass'n of Pa., Inc.,* 254 F.3d 444, 448 (3d Cir.2001).

> FN4. I point out for the record that it appears that Vernon Bryce signed a covenant not to compete very early in his employment. (Compl. Ex. E)

*11 This Court is persuaded by the logic of those courts which focus on the import of the fact that the employees were all hired at-will. At-will employment means that an employer can terminate an employee "at any time without cause." *Blair v. Physicians Mut. Ins. Co.,* 242 Neb. 652, 656, 496 N.W.2d 483, 486 (1993). Accordingly, it has been reasoned that forbearance of the legal right to terminate employment is a legal detriment which constitutes proper consideration. *See, e.g., Medtronic, Inc. v. Benda,* 689 F.2d 645, 654 (7th Cir.1982); *R & C Livolsi v. Campanelli,* No. CV 970259105S, 1997 WL 639421, at *4 (Conn.Super. Oct. 8, 1997); *Zellner,* 183 A.D.2d at 256, 589 N.Y.S.2d 903. In other words, presumably, if the employees refused to sign the contract, Gallup could have fired them, in which case future employment is deemed consideration.

I find additional support for my conclusion in *Hamersky v. Nicholson Supply Company,* 246 Neb. 156, 159, 517 N.W.2d 382, 385 (1994), in which the Nebraska Supreme Court held that certain language in an employee handbook did not constitute an agreement to discharge only for cause. In so determining, the court noted that "where an at-will employee retains employment with knowledge of new or changed conditions, the new or changed conditions may become a contractual obligation ... The employee's retention of employment constitutes acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, the employee supplies the necessary consideration for the offer." *Id.* (citation omitted). By analogy, this case presents the converse. I conclude that the logic in the Nebraska law through *Hamersky* is that the employee, by choosing to stay on in the employment, provides the necessary consideration. Thus, I conclude that an employee being presented with a covenant not to compete is similar to a changed condition of employment, and the employer, by offering to retain the employee when it is not so required, provides the necessary consideration.

Kenexa contends that even if the covenants are valid, Gallup cannot prove any of the elements of the tort:
*12 (1) the existence of a valid contract, business relation or expectancy,
(2) knowledge by the interferer of the contract, business relation or expectancy,
(3) an unjustified intentional act of interference on the part of the interferer,
(4) proof that the interference caused the harm

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 10

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

sustained, and
(5) damage to the party whose relationship or expectancy was disrupted.
See *Huff v. Swartz,* 258 Neb. 820, 825, 606 N.W.2d 461, 466 (2000). Defendant's primary argument is that Gallup has no proof that Kenexa interfered with the covenants not to compete, as well as the non-disclosure agreements. Its main evidence includes nineteen declarations from current Kenexa/former Gallup employees who declare under penalty of perjury that they never contacted any Gallup clients or solicited any business from Gallup clients. The declarations do not appear to address the issue of alleged divulgence of trade secrets in violation of those covenants. Gallup argues in its brief that it has not had the opportunity to depose any of these individuals. (Pl.'s Resp. at 14.) Of course, plaintiff's severe assertion is quite exaggerated as it admits in a footnote that it has indeed deposed seven of these individuals. (*Id.* at 14 n. 12, 606 N.W.2d 461). Plaintiff has completely failed to follow the rules to furnish this Court with 56(f) affidavits. Gallup also made no attempt to correct its error after Kenexa's reply brief was filed pointing out this lapse. Nevertheless, certain individuals have not been deposed because discovery was not complete when the motion was filed, nor has a decision has been issued by the Court that those individuals may not be deposed. As discussed, *supra,* failure to file 56(f) affidavits has been held not fatal where the papers filed clearly identify the specific information sought, how if uncovered it could raise a triable issue, and why it has not been previously obtained. See *St. Surin,* 21 F.3d at 1314. Based on the foregoing, I conclude that while certain former Gallup employees signed valid non-compete covenants, plaintiff has demonstrated why this claim is not yet ripe for summary judgment.

The same problem plagues the motion for summary judgement as to tortious interference with business relations. For instance, the declaration of William Cocker states that he contacted individuals at three companies with whom he had business contact while at Gallup. (Cocker Dec. ¶ 5.) While he claims he only contacted them because he considers those individuals friends, (*id.*), Gallup also has not

deposed him. Absent a judicial determination that he should not be deposed, a question not before this Court on this motion, I conclude that plaintiff has shown that this issue is similarly not ripe for decision.

*E. Trademark Infringement Claims*

Kenexa has filed a motion for judgment on the pleadings, or in the alternative a motion for summary judgment for Count IV, which alleges unfair competition under section 43(a) the Lanham Act, 15 U.S.C. § 1125(a), [FN5] and Count VI, which alleges unfair competition under the Nebraska Uniform Deceptive Trade Practices Act, Neb.Rev.Stat. §§ 87-302.

> FN5. Section 43(a) of the Lanham Act provides:
> (a)(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which--
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her ... goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
> 15 U.S.C. § 1125(a).

*13 I begin with the Lanham Act. Section 43(a) covers a range of claims, including, for example, false advertising, passing off, unprivileged imitation, and false designations. See *AT & T Co. v. Winback and Conserve Program Inc.,* 42 F.3d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 11
Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394
**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

1421, 1428 n. 9 (3d Cir.1994). It appears that the specific claim before me is one for false advertising in which plaintiff must show:
 1) that the defendant has made false or misleading statements as to his own product [or another's];
 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
 3) that the deception is material in that it is likely to influence purchasing decisions;
 4) that the advertised goods traveled in interstate commerce; and
 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner-Lambert Co. v. Breathasure, Inc.,* 204 F.3d 87, 91-92 (3d Cir.2000) (quoting *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.,* 19 F.3d 125, 129 (3d Cir.1994) (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 922-23 (3d Cir.1990))). "A determination of literal falsity rests on an analysis of the message in context." *Rhone-Poulenc,* 19 F.3d at 129. Where plaintiff seeks injunctive relief, and shows that a claim is literally false, a court need not consider whether the public is misled. *See id.* at 92. Where, however, a plaintiff seeks monetary damages, proof of actual deception is required. *See id.* (citing *Parkway Baking Co. v. Freihofer Baking Co.,* 255 F.2d 641, 649 (3d Cir.1958)). This does not mean that plaintiff bears the burden of detailing individualized loss of sales; however, plaintiff must show some customer reliance on the false advertising. *See U.S. Healthcare,* 898 F.2d at 922; *Parkway Baking,* 255 F.2d at 648.

Kenexa first argues it should be granted a motion for judgment on the pleadings because this Court should hold that Federal Rule of Civil Procedure 9(b), which mandates that allegations of fraud must be pled with particularity, applies to claims brought under the Lanham Act. Courts are in disagreement over this issue. *Compare Sanderson v. Brugman,* No. IP00-459-C- H/G, 2001 WL 699876, at *8 (S.D.Ind. May 29, 2001) (applying Rule 9) *with John P. Villano Inc. v. CBS, Inc.,* 176 F.R.D. 130, 131 (S.D.N.Y.1997) (declining to apply Rule). *See also Barr Lab., Inc. v. Quantum Pharmics, Inc.,* 827 F.Supp. 111, 117-18 (E.D.N.Y.1993) (comparing and collecting cases). Judge Pollak of this Court has struck the following balance: while a claim brought under the Lanham Act need not satisfy all the pleading requirements imposed under Rule 9, the policies underlying Rule 9, that "the nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in ... [a] Lanham Act claim." *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F.Supp. 1549, 1556 (E.D.Pa.1985).

In *Max Daetwyler,* Judge Pollak determined that an allegation that defendants have misrepresented the "quality and nature" of a blade could not be read as an allegation that defendants have misrepresented the configuration of their blade to make it seem as though the blade was shaped similarly to plaintiff's blade. *See id.* The complaint before me contains much more information. The complaint clearly tells a story of defendant misappropriating the Gallup Q 12 and pretending it is its own creation. (*See* Compl. ¶¶ 21, 56, 58-59, 84-86). It is this alleged falsehood that forms the basis of Gallup's false advertising claim. I therefore conclude that Gallup has adequately notified Kenexa of its asserted claims and will deny the motion for judgment on the pleadings.

*14 With respect to the alternative motion for summary judgment, Gallup generally argues that the claims should be developed in discovery; however, it again fails to provide an affidavit in support as directed under Rule 56(f). Despite this clear failure to follow the Rules, Gallup does argue in its response papers that Kenexa has not allowed Gallup to depose Kenexa clients in order to discover whether people were misled. Gallup produces no evidence concerning whether there was actual deception which means, *inter alia,* that money damages could not be pursued. Absent a determination that such discovery is not permitted under the rules, an issue not before the court on this motion, I cannot consider the motion for summary judgment because plaintiff has demonstrated that it

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 12

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394

**(Cite as: 2001 WL 1450592 (E.D.Pa.))**

is not fully ripe for decision.

As to the claim asserted under the Nebraska Unfair Deceptive Trade Practices Act, the parties appear to agree that the Nebraska statute and the Lanham Act share the same elements. Without further argument on this matter, this Court will treat the statutes as equivalent. I therefore conclude that this claim is also not ready for summary judgment. [FN6]

> FN6. Gallup also raises in its response, the potential for a false designation of origin claim. *See AT & T Co. v. Winback and Conserve Program,* 42 F.3d 1421, 1428 (3d Cir.1994) (providing elements). Defendant, however, never moved for summary judgment on this claim. Thus, I will not address the issue of whether this claim stands.

III. Conclusion

As to the copyright claim, while the Gallup Q 12 is protectable, each motion for partial summary judgment will be denied. The "unlawful raid" claim will be dismissed because Gallup failed to show that such a cause of action exists in the law. The two claims for tortious interference, as well as the Lanham Act claim are not ready for summary judgment. As to the claim asserted under the Nebraska statute, defendant fails to adequately brief the elements of such a cause of action.

An appropriate Order follows.

*ORDER*

AND NOW this 13th day of November, 2001 upon consideration of the motion of plaintiff the Gallup Organization ("Gallup") for partial summary judgment on its copyright claim (count V) (Document No. 17), the cross motion of defendant Talentpoint, Inc., now operating under the name of Kenexa Corporation ("Kenexa") for partial summary judgment on the copyright claim (Document No. 20), both of which have been filed pursuant to Federal Rule of Civil Procedure 56, the motion of Kenexa for partial summary judgment on counts I, II and III, pursuant to Rule 56, and for judgment on the pleadings on counts IV and VI, pursuant to Rule 12(c), or in the alternative for summary judgment pursuant to Rule 56 (Document No. 19), and for the reasons set out in the foregoing memorandum, it is hereby ORDERED that:

1. The motion of Gallup for partial summary judgment on its copyright claim is DENIED.
*15 2. The motion of Kenexa for partial summary judgment on the copyright claim is DENIED.
3. The motion of Kenexa for partial summary judgment on counts I, II and III is GRANTED in part and DENIED as premature in part. It is granted in that count I for "unlawful raid" is DISMISSED. It is denied as premature in all other respects.
4. The motion of Kenexa for judgment on the pleadings on counts IV and VI is DENIED, and the alternative motion for summary judgment is DENIED as premature.

IT IS FURTHER ORDERED that parties shall attempt to work out the outstanding discovery issues without judicial intervention and if such discussions fail shall contact the Chambers of Judge M. Faith Angell to resolve any pending discovery disputes.

Not Reported in F.Supp.2d, 2001 WL 1450592 (E.D.Pa.), 61 U.S.P.Q.2d 1394

**Motions, Pleadings and Filings (Back to top)**

- 2:00cv05523  (Docket)
                                        (Oct. 31, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.