# EXHIBIT C

Case 1:04-cv-01278-KAJ   Document 230-4   Filed 10/27/2005   Page 1 of 9

LEXSEE 1992 U.S. DIST. LEXIS 2464

SAMICK MUSIC CORP., a California corporation, Plaintiff, v. DELAWARE MUSIC INDUSTRIES, INC., et al., Defendants.

Civil Action 91-23 – CMW

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1992 U.S. Dist. LEXIS 2464

February 12, 1992, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff music corporation filed an action against defendant music company for breach of contract, and against defendant individuals, as guaranties for the company, pertaining to the sale of pianos. The company filed a motion to amend its answer to include counterclaims involving the corporation's alleged fraud in representations made regarding the construction of the pianos.

**OVERVIEW:** The corporation filed a breach of contract action against the company. After the company filed an answer, the court entered a scheduling order, which set a cutoff date for discovery. The parties twice stipulated to an extension of the scheduling order's cutoff date. After all of the discovery had been completed, the company filed a motion for leave to amend its answer to assert a counterclaim against the corporation for their misrepresentations regarding their piano keyboards. The company maintained that the Federal Rules of Civil Procedure favored granting leave to amend, and that the corporation would not be substantially prejudiced by allowing the amendment. The corporation opposed the motion because of the company's undue delay in filing it, and contended that an amendment would prejudice the corporation and be futile. The court found that the company failed to provide sufficient justification for failing to file a counterclaim prior to the close of discovery, that the corporation would suffer prejudice, and that the counterclaim was not compulsory.

**OUTCOME:** The court denied the company's motion for leave to amend.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN1] *Fed. R. Civ. P. 15* states that amendment by leave of the court shall be freely given when justice requires.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN2] Amendment of a complaint is generally not permitted when there is evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN3] Whether leave to amend a pleading is to be permitted is within the sound discretion of the court.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN4] The test for permitting amendment to a pleading under *Fed. R. Civ. P. 15(a)* is that in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given. Of course, the grant or denial of an opportunity to amend is within the discretion of the court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*
[HN5] In a motion to amend a pleading, initially it is the movant's burden to articulate some satisfactory explanation why amendment should be permitted when leave of the court is required.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings*

[HN6] If a counterclaim is compulsory in nature, amendment is further encouraged.

*Civil Procedure > Preclusion & Effect of Judgments > Res Judicata*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims*
[HN7] The operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. A counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy requires that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently. Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties.

*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims & Cross-Claims*
[HN8] In order to determine whether such a relationship exists to find something to be a compulsory counterclaim, the following questions must to be answered: (1) Is there a logical relationship between the two claims? (2) Are the issues of fact and law raised by the claim and counterclaim largely the same? (3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction? (4) Would substantially the same evidence support or refute both the claim and the counterclaim? If these questions can be answered affirmatively then the court can conclude that a compulsory counterclaim is present.

**COUNSEL:** [*1] Allen M. Terrell, Jr., Esquire and David L. Zicherman, Esquire of Richards, Layton & Finger, Wilmington, Delaware. Attorneys for Plaintiff.

Roger A. Akin, Esquire and Christopher J. Curtin, Esquire of Sawyer & Akin, Wilmington, Delaware. Attorneys for Defendants.

**JUDGES:** Wright

**OPINIONBY:** CALEB M. WRIGHT

**OPINION:**

OPINION

Wilmington, Delaware

Wright, Senior Judge.

This action was commenced on January 14, 1991 by Samick Music Corporation ("Samick") against Delaware Music Industries, Inc. ("DMI") and four individual defendants. In essence, the complaint alleges that DMI is liable for breach of contract and the individual defendants are liable as they signed guaranty agreements, in their personal capacities, to obtain the floor plan financing which was allegedly breached. (Docket Item 1). DMI and the individual defendants filed a joint answer on March 13, 1991. (Docket Item 9).

Presently before the Court is the defendants' motion to amend their answer to include numerous counterclaims not previously raised. The defendants' motion to amend was filed on January 6, 1992 and, while the motion was a "talking motion", no opening brief was filed by the defendants. (Docket Item 35). On January 21, 1992 the plaintiff [*2] filed its answering brief and appendix. (Docket Item 36). On January 28, 1992, by way of letter, the defendants replied to the plaintiff's brief. n1 (Docket Item 38). On January 30, 1992 the plaintiff wrote the Court to "address several of the more outrageous misstatements made in defendants' Reply Memorandum." (Docket Item 39). For the reasons stated below, the defendants' motion to amend their answer is denied.

> n1 The Court notes that while the letter memorandum did not comply with the local rules of this Court, the letter was accepted by the Court and made part of the record. (Docket Item 38). Further, the plaintiff, by way of letter, indicated that they would not file a motion to strike although the letter memorandum did not comply with local rules and contained information that should have been included in the opposition's opening brief. (Docket Item 39).

I. Factual and Procedural Background

As previously noted, this action was commenced on January 14, 1991. (Docket Item 1). An answer was filed by the defendants [*3] on March 13, 1991 (Docket Item 9) and a scheduling order was entered on April 4, 1991. (Docket Item 11). Pursuant to the scheduling order discovery was to end on September 13, 1991. (Docket Item 11). Discovery was undertaken by the parties but they failed to complete it by the cutoff date and thus, on September 13,

1991 a stipulation and proposed order to amend the Rule 16(b) dates was submitted to the Court. (Docket Item 22). The Court granted the extension of the scheduling order which provided for discovery to end on November 22, 1991 and dispositive motions to be filed by December 3, 1991.

The parties continued with discovery until it became apparent that they would not be able to secure the deposition of one person within the time allotted for discovery. As a result, the parties submitted a stipulation and proposed order to extend discovery until January 30, 1992 for the sole purpose of deposing this one individual, all other discovery having been completed by the November 22, 1991 date. (Docket Item 34). The Court granted this motion on November 25, 1991. The order indicated that other dates would be extended in a like manner. Thus, as the Court understood it, the deadline for [*4] filing dispositive motions was extended until February 13, 1992. Therefore, at the time the motion to amend was filed, all discovery was completed with the exception of deposing the one person for which the extension was granted. Because of the nature of the motion and the arguments made by the parties, the Court finds it appropriate to briefly summarize the parties positions on this motion.

According to DMI, the motion to amend is for the purpose of adding a counterclaim n2 which seeks injunctive and declaratory relief as well as damages concerning "another aspect of the relationship between the parties." (Docket Item 35, para. 3). The counterclaim is based on the defendants' allegations that the plaintiff, while representing that the soundboard of the pianos they sold were made entirely of "spruce" or "Alaskan Sitka Spruce," actually Samick was manufacturing and selling pianos that had a soundboard made of a thin spruce veneer over a philippine mahogany core. (Docket Item 35, paras. 11, 12, 15). As a result of this action by Samick the defendants contend they may be liable to their customers to whom they sold these pianos for Consumer Fraud pursuant to *6 Del. C. § 2513(a)* and § [*5] 2543(a) and thus seek injunctive and declaratory relief. (Docket Item 35, Proposed Amended Answer, Fourth Counterclaim).

   n2 Although reference throughout the motion to amend is to "a counterclaim" in fact five counterclaims based on the same operative facts are sought to be added by DMI.

Further, defendant DMI seeks damages from Samick for allegedly violating the following: (1) *6 Del. C. § 2513(a)* relating to consumer fraud, (2) *6 Del. C. § 2532(a)*, (2), (4), (5), (7), (9) and (12) which bars the use of deceptive trade practices, (3) for breach of an express warranty, and (4) *15 U.S.C. § 2310*(d), commonly referred to as the Magnuson-Moss Act. According to the defendants, Samick is in violation of the above for intentionally or with reckless disregard for the truth, misrepresenting the composition of the soundboard of its pianos in connection with their sale and advertisement to DMI and the public. (Docket Item 35, Proposed Amended Answer).

According to the defendants' motion, the motion should be granted on the grounds [*6] of judicial economy. (Docket Item 35, para. 6). In support thereof, DMI states that the action is not time barred, that the parties have included this issue in all depositions to date, that the issue should be part of the trial as it may bear on the credibility of the plaintiff and that having trial on this issue in conjunction with the original complaint will not materially affect the length of the trial. (Docket Item 35, paras. 6(a) - 6(d)). Thus, according to DMI, Samick will not be prejudiced by permitting amendment. (Docket Item 35, para. 7).

Finally, the motion indicates "that this would be a compulsory counterclaim, since the facts arise from the same core of operative facts, eg. the sale of pianos to DMI by Samick." (Docket Item 35, para. 8). Thus, according to the defendant the Federal Rules of Civil Procedure would encourage amendment. n3 Finally, the defendant cites [HN1] *Rule 15 of the Federal Rules of Civil Procedure* and emphasizes that amendment by leave of the Court shall be freely given when justice requires. (Docket Item 35, para. 9).

   n3 The defendant refers to Rule 12 in the motion, however counterclaims are governed by Rule 13 and the language quoted by the defendant comes from Rule 13.

[*7]

In response, the plaintiff argues that while leave to amend should be freely given, this does not mandate the Court to permit amendment in every case. (Docket Item 36, p. 10). [HN2] Amendment of a complaint is generally not permitted when there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." (Docket Item 36, p. 10 citing *Foman v. Davis, 371 U.S. 178, 182 (1962)*). Thus, the plaintiff contends that the motion to amend should be denied for at least three reasons: (1) the defendants have unduly delayed the filing of the motion, (2) permitting amendment at this late date will be highly prejudicial to Samick, and (3) the amendment would prove futile. (Docket Item 36, p. 11).

As the first ground against permitting amendment the

plaintiff argues that Rule 16(b) scheduling orders are at the heart of case management and without a specific showing of good cause should not be disregarded. (Docket Item 36, p. 12). Thus, in accord with the scheduling order, any amendments to the pleadings necessarily had to be made by June 14, 1991 [*8] and the plaintiffs failure to provide any good cause reason for failure to abide by this date should necessarily cause their motion to be denied. (Docket Item 36, pp. 12-13).

Further in support of its argument that the motion is untimely and thus should be denied, Samick contends that the defendant is met with the same burden of showing good cause pursuant to *Rule 15(a) of the Federal Rules of Civil Procedure*. (Docket Item 36, p. 13). Samick contends, and the Court must agree, that the defendants failed to provide any explanation for their failure to file the proposed counterclaims at an earlier date. As a result, Samick alleges that the motion must be denied because the defendants have wholly failed to meet their burden to show good cause or to provide explanations as to why justice requires permitting the amendment. (Docket Item 36, p. 14).

Finally on this point, Samick contends that the defendants will be unable to make a showing of good cause and thus denial of the motion is appropriate. In so contending, Samick proposes that the purpose of Rule 15(a) is to permit amendment when the matters that are to be included were not known at the time the original pleading was filed and that [*9] is not the case here. (Docket Item 36, p. 15). According to Samick, the defendants knew of the essential facts in April of 1990, eight months before the filing of the complaint and one year before the filing of the original answer. (Docket Item 36, pp. 16-20). Thus, because the defendants failed to act on the knowledge they possessed until seven months beyond the date provided for amending pleadings in the Rule 16(b) scheduling order and two months after discovery had essentially ended, the Court should not permit amendment on the grounds of bad faith and dilatory tactics or failure to meet their burden of showing good cause in the delay of filing the amendment. (Docket Item 36, pp. 20-21).

Samick also contends that to permit amendment would result in prejudice to Samick and prejudice to the non-moving party is "the touchstone for the denial of a motion for leave to amend." (Docket Item 36, p.22). In support thereof, Samick contends that the original complaint and answer allege a "simple debt collection action" with issues that are "simple and straightforward." (Docket Item 36, p.22). Now, according to Samick, the defendants wish to introduce five counterclaims relating to alleged [*10] misrepresentations and fraudulent conduct on the part of Samick. (Docket Item 36, p. 23). Thus, what was once a simple action will now become a convoluted trial requiring evaluation of technical information through expert testimony and consideration of numerous state and federal statutes, not previously part of this case, will be required. (Docket Item 36, pp. 23-24). Samick urges, consistent with courts of other jurisdictions, that the Court deny the motion as it will introduce many new issues and enlarge the scope and complexity of the case after discovery has closed. (Docket Item 36, pp. 24-25).

Further, Samick contends that because discovery has ended the introduction of these issues at this time will be unduly prejudicial to Samick as discovery on these issues was not pursued and it no longer has the right to conduct discovery. (Docket Item 36, pp. 26-27). Finally, with respect to discovery, Samick contends that if discovery is reopened in order to permit them an opportunity to defend these additional counterclaims they again will be prejudiced. (Docket Item 36, p. 29). In support of this argument Samick points to the additional discovery and the burden of this discovery that [*11] will result.

Further, and more compelling in the Court's view, Samick indicates that the original case is currently in pretrial stages, discovery having ended and can proceed rapidly; if discovery is to be re-opened delay of a year or more may result. Thus, according to Samick, this simple debt collection action will be unnecessarily delayed by a substantial amount of time. (Docket Item 36, p. 32). All in all, Samick contends that the above factors all lead to the conclusion that Samick will be unduly prejudiced if the amendment is permitted. (Docket Item 36, pp. 33-36).

Samick also contends that the defendants' proposed counterclaims are futile and thus denial of the amendment is appropriate. (Docket Item 36, p. 37). Because the Court finds that the motion should be denied on other grounds previously mentioned, the specifics of this contention will not be addressed.

The reply memorandum of DMI indicates that the counterclaims should be permitted because all counterclaims, old and new are based on alleged misrepresentations by Samick and all claims should be resolved in one suit. (Docket Item 38, p. 1). Thus, defendant concludes, these issues should be permitted in the trial on the [*12] original complaint because "misrepresentation is part of this lawsuit and the evidence of the misrepresentations in the soundboard is consistent with the pattern of misrepresentation which the debt action is being defended upon." (Docket Item 38, p.3).

Further, DMI argues that Samick is not prejudiced by permitting amendment of the answer at this stage. In so arguing DMI states:

Case 1:04-cv-01278-KAJ   Document 230-4   Filed 10/27/2005   Page 6 of 9

Page 5
1992 U.S. Dist. LEXIS 2464, *12

It is ridiculous for Samick to complain that it is prejudice [sic] by this amendment. Samick knew of the existence of the problem of its misrepresentations concerning its soundboards, first, because its product literature is inconsistent with its manufacturing (the facts of which it must have known) and secondly because DMI notified them of the existence and importance of this issue prior to the on-set of the litigation. The necessary documents, production, drafting of advertising documents and knowledgeable personnel are all within Samick's custody and control.

In fact, Samick opened the door to the issue in this litigation by affirmatively questioning DMI personnel about it in the first two depositions taken in the case. That it is prejudicial to Samick's case does not mean that it is prejudicial [*13] to allowance of the amendment. Samick has not lost the ability to take discovery nor will Samick be held to answer a claim that is no longer within the period of limitations. Samick has had knowledge of the existence of the allegations as long as the defendants and since the evidence is in its possession, custody and control, have had greater access to it than defendants.

Finally, discovery is not complete in any event. Discovery can be re-opened when justice requires despite the existence of a pre-trial order and justice so requires in this case.

(Docket Item 38, p. 3, as in the original).

Finally, DMI indicates that justice requires permitting amendment of the answer and allowing discovery to be reopened. n4 In support of this contention DMI states the following:

> n4 The heading of DMI's response is "Justice requires amendment of the complaint and allowing discovery to be reopened." Further, in the text of this section the defendants state that given the facts justice would require permitting amendment of the complaint. The Court notes that the use of the word complaint by the defendants throughout this section was erroneous as the motion is to amend the answer. The Court has taken the argument presented as though requesting leave to amend the answer.

[*14]
The facts of the grotesque nature of Samick's fraud in misrepresenting the composition of the most crucial component of the pianos it manufactures and sells, a component, the composition of which is a material factor in the decision to even buy one piano versus another and to pay the additional price required of a solid spruce or all spruce soundboard as advertised in Samick literature to the hundreds of Delawareans who purchased pianos through Samick and the thousands who have purchased Samick on the same misrepresentations throughout the United States should be sufficient in justice to require allowing the amendment to the complaint.

The liability that Samick's actions have exposed DMI to should in justice allow amendment to the complaint. The threats and denials from Samick when challenged with this allegation before suit was filed should in justice justify amendment of the complaint. Samick's denials continuing through this litigation until Mr. Brand's acknowledgement of the fraud perpetrated throughout the United States should, in justice, require amendment of the complaint.

In addition, Samick has known of the fraud since it perpetrated it through misrepresentations [*15] in Samick's catalogs and through its manufacture and distribution of products that it knew did not conform to those advertising representations. Its knowledge and intentional concealment should, in justice, justify amendment of the complaint.

Moreover, all depositions taken to date have included the allegations concerning the soundboards. This includes those taken by Samick's attorneys, which were the first depositions taken in the case. It was not until November 20, 1991 that Jack Brand, a Samick employee, the Regional Sales Representative for the New York Region made any confirmation of the existence of the misrepresentation, and his knowledge of it and the fact that it occurred for a period measured in years, at the minimum. Exhibit 6.

Finally, discovery is not complete. Since Mr. Visceglie's deposition is still being scheduled and he is yet another Samick employee (former) with important information concerning all of the issues in the complaint and the answer and counterclaim as well as the amended answer and counterclaims and Samick professed inability to have its former employee consent to cooperative depositions when in fact DMI has now secured that agreement, there [*16] will be no prejudice to Samick.

There is, furthermore, no prejudice to Samick on its debt count since, Delaware law provides for prejudgment and post-judgment interest on claims. Samick's brief attempts to thrust all responsibility for discovery delays on the defendants when in fact, some of the delays were necessitated by the availability of Samick personnel and counsel and the inability of either party to locate a former Samick employee.

(Docket Item 38, pp. 4-5, as in the original). Thus, concludes DMI:

Whether or not there is liability in view of and the defense based on misrepresentation by Samick concerning the documents which were signed based on misrepresentation goes to the heart of the case and should include these additional issues as well in the interest of judicial economy.

For the foregoing reasons, DMI's motion for leave to amend the complaint should be granted and discovery should be re-opened to cure any of Samick's complaints of prejudice as a consequence of the pre-trial order. n5

(Docket Item 38, p.5, as in the original).

> n5 The Court assumes that any reference to a pre-trial order is actually meant to be a reference to the Rule 16(b) scheduling order as no pretrial order has yet been filed in this case.

[*17]
II. Discussion

Pursuant to Rule 13(f) and *Rule 15 of the Federal Rules of Civil Procedure* the defendants have requested leave to amend their answer to add five additional counterclaims. As a preliminary matter, the Court notes that [HN3] whether leave to amend a pleading is to be permitted is within the sound discretion of the Court. *Zenith Radio Corp. v. Hazeltine, 401 U.S. 321, 330 (1971); Foman v. Davis, 371 U.S. 178, 182 (1962); Cornell & Co., Inc. v. Occupational Safety and Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978); Arch. Coatings Assoc. v. Applied Coatings Intern, 103 F.R.D. 442, 444 (E.D. Pa. 1984).*

The United States Supreme Court in Foman v. Davis articulated [HN4] the test for permitting amendment to a pleading under Rule 15(a) as follows:

In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules [*18] require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman, 371 U.S. at 182.* Thus, it is incumbent on the Court to determine, under the specific circumstances of this case, whether amendment of the answer is appropriate.

[HN5] Initially it is the movant's burden to articulate some satisfactory explanation why amendment should be permitted when leave of the Court is required. *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking, 93 F.R.D. 858, 865 (D.C. Del. 1982)* ("In the instant case it is not necessary for the Court to find that plaintiff has acted in bad faith in seeking the amendment. It is clear that plaintiff has provided no satisfactory explanation for its long delay in filing its motion to amend. Undue delay which is not satisfactorily explained is equivalent to bad faith."). In this case, the Court finds that the movant has been wholly unable [*19] to provide an adequate justification for failing to raise the counterclaims earlier.

The essential facts for any potential counterclaim based on misrepresentations of the soundboard composition were known to the defendants no later than December 10, 1990 as evidenced by a letter from a DMI representative (and defendant in this suit) to Samick regarding this issue. (Docket Item 37, A-186). Further, the Court finds that the essential facts underlying these allegations were probably known to the defendants much earlier. In April, 1990 DMI received notice from the United States Department of Agriculture that the sample provided them was not spruce as Samick's literature claimed. (Docket Item 38, Exhibit 4). Therefore, insofar as the counterclaims are based on the assertion that the literature claimed one thing and the product contained another, DMI has been unable to show this Court why they failed to raise the proposed counterclaims until such a late date.

Further, Samick's allegation that a Samick employee did not confirm the misrepresentation until November 20, 1991 is unavailing. (Docket Item 38, p.4). The Court finds that the facts essential to bring the counterclaim were known, [*20] as stated above, sometime between April and December, 1990. The Court finds that DMI would not need, nor would normally have, any admission by Samick regarding the alleged discrepancy in composition and advertising representations in order to bring a counterclaim. This would be a fact that, if ever, would normally arise during discovery. The Court finds that undue delay in bringing this counterclaim is present and the defendants have failed to provide the Court with any reasonable explanation for the delay.

As a further basis for denying this motion to amend the Court finds that substantial prejudice to Samick would re-

sult. Unlike the issues presented in the original complaint which are based on a breach of contract and collection of debt, the issues sought to be added at this stage are much more involved. The issues in the original complaint are nearing the trial stage and to interject issues dealing with fraud and misrepresentation of a very different character at this stage would be prejudicial to the plaintiff.

Although DMI aggressively argues that discovery on the issues in the proposed counterclaims has been undertaken throughout the discovery phase the Court cannot agree. During [*21] some depositions references were made to the alleged discrepancies in the soundboard material and the representations in the sales literature but this does not in any way constitute discovery on these issues. The Court finds that mere inquiry into some of these issues would not, by any standards, comprise discovery of the outstanding issues.

DMI further tries to convince the Court that Samick cannot claim prejudice because they knew of the purported fraud and made inquiry during depositions on these issues. This is contrary to basic logic. Even if the Court accepts DMI's position that Samick knew of the alleged misrepresentations and they inquired during some depositions into these matters, one cannot make a leap then that they would not be prejudiced (even if discovery were re-opened) by the need to defend a lawsuit they did not know would be forthcoming. The prejudice is obvious in the protraction of time to have their claims heard and the need for extensive discovery on these issues. Although Samick may be entitled for pre and post-judgment interest this cannot act to compensate them for the time it would take to get their claims before the Court.

Finally, the Court is mindful [*22] that [HN6] if a counterclaim is compulsory in nature, amendment is further encouraged. The only indication that this counterclaim is compulsory is DMI's bald assertion to that effect. (See Docket Item 35, para. 8 wherein the defendants state: "This would be a compulsory counterclaims, since the facts arise from the same core of operative facts, eg. the sale of pianos to DMI by Samick." See also Docket Item 38, p.1 wherein the defendants, in citing Miller & Kane, Federal Practice and Procedure: Civil 2d § 1430, state: "Policy favors resolution of all claims in one suit; amendment allowed even after judgment; compulsory counterclaims are especially favored."). Again, the Court cannot agree.

The Court of Appeals for the Third Circuit has articulated the following test for determining if a counterclaims is compulsory or merely permissive:

*Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961),* established that [HN7] the operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim.

[A] counterclaim is logically related to the opposing party's claim where separate [*23] trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy requires that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of res judicata compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently.

Thus, a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties. The Great Lakes analysis has been generally used by several federal courts as was noted by the Supreme Court in *Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469, 94 S.Ct. 2504, 2506, n.1, 41 L.Ed.2d 243 (1974).*

*Xerox Corp. v. SCM Corp., 576 F.2d 1057, 1059 (3d Cir. 1978).*

The Sixth Circuit [*24] Court of Appeals has posited the test in a slightly different light. [HN8] In order to determine whether such a relationship exists to find something to be a compulsory counterclaim that Court instructed the following questions to be answered:

(1) Is there a logical relationship between the two claims?

(2) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(3) Would res judicata bar a subsequent suit on the counterclaim if the court were not to take jurisdiction?

(4) Would substantially the same evidence support or refute both the claim and the counterclaim?

*In re Rebel Coal Company, Inc., 944 F.2d 320, 322 (6th Cir. 1991)* (citing *Maddox v. Kentucky Fin. Co., Inc., 736 F.2d 380, 382 (6th Cir. 1984)).* If these questions could be answered affirmatively then the Court can conclude that a compulsory counterclaim is present. Id.

Regardless of the test applied in this case, the Court does not find the proposed claims to be compulsory in nature. The basic issues are completely separate, the facts to support each of the claims are separate, evidence that

would need to be shown are dissimilar, res judicata would [*25] not bar a second suit on the proposed counterclaims and the only relationship between the two sets of claims is that they involve the same parties. There appears to be no logical relationship between the claims, facts, legal theories, or evidence thus, the Court concludes that the proposed counterclaims are not compulsory in nature and to deny the motion will not work an injustice on the defendants. n6

> n6 The defendants indicate in their opening papers that the action is not time barred. (Docket Item 35, para. 6(a)). Further, by letter to opposing counsel dated December 17, 1991 seeking agreement to this motion to amend, the defendants stated the following:
> I am writing to request your agreement to the enclosed amendment to the answer and counterclaims filed in this case. As you can see, it brings the soundboard issue directly to bear in the litigation. I believe the Court would permit this amendment in the interest of judicial economy under Rules 13(f) and 15(a). Moreover, in the event a separate suit is necessary, I believe it could be consolidated with this action due to the discovery taken in this case.
>
> Finally, a separate action would probably be brought as a class-action. In view of these reasons, please let me know your position concerning the proposed amendment within one week of the date of this letter.
> (Docket Item 35, p. 8). Therefore, the Court concludes that the defendants have provided the Court with the clearest reasoning as to why denying this motion will not create an injustice. The statute of limitations has not run, they can bring a separate action and likely will do so as a class action. Thus, the Court concludes that, under these circumstances, the interests of justice do not require permitting amendment of the answer.

[*26]
III. Conclusion

For the foregoing reasons, defendants' motion to amend the answer will be denied. An appropriate order will be answered.