# EXHIBIT D

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 1095601 (S.D.N.Y.), 1999-2 Trade Cases P 72,734
**(Cite as: 1999 WL 1095601 (S.D.N.Y.))**

C

**Motions, Pleadings and Filings**

United States District Court, S.D. New York.
STUDENT ADVANTAGE, INC. Plaintiff,
v.
COLLEGECLUB.COM, Defendant.
No. 99 Civ. 8604(JSR).

Dec. 3, 1999.

*MEMORANDUM ORDER*

RAKOFF, J.

**\*1** On August 3, 1999, plaintiff Student Advantage, Inc. ("Student Advantage"), a student marketing company, commenced this action against a competitor, defendant CollegeClub.com ("CollegeClub"), claiming, *inter alia*, false advertising, unfair competition, and tortious interference with contract. The gravamen of plaintiff's complaint is that CollegeClub's web site and promotional materials falsely advertise that students joining CollegeClub will receive discounts at over 100,000 merchants when in fact a substantial number of the listings for merchants and/or discounts are fraudulent, nonexistent, inaccurate, or unlawfully obtained. CollegeClub promptly moved to dismiss or, in the alternative, to transfer venue to the Southern District of California. In addition to opposing the motions, Student Advantage moved to file an Amended Complaint ("AC") pursuant to Rule 15(d), Fed.R.Civ.P. On October 29, 1999, the Court telephonically advised the parties that it would grant plaintiff's motion and deny defendant's motions. This Memorandum Order will serve to confirm those rulings and briefly state the reasons therefor.

Plaintiff's first claims are for false advertising and false designation of origin and affiliation under the section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1). With respect to the false advertising claim, defendant in effect challenges whether plaintiff has adequately alleged falsity and materiality. "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *National Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995)). Materiality may be established by proving that the defendant "misrepresented an inherent quality or characteristic of the product." *Id.* (internal quotations omitted).

Lanham Act claims are not subject to any heightened pleading standard, *see John P. Villano Inc. v. CBS, Inc.,* 176 F.R.D. 130, 131 (S.D.N.Y.1997); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166-67 (1993), but rather need only satisfy the liberal notice pleading standard of Rule 8(a), Fed.R.Civ.P. Here, plaintiff alleges, *inter alia,* that CollegeClub maintains a web site that falsely lists a number of businesses that do not provide the advertised student discount, AC ¶ 15, and that CollegeClub falsely advertises that its members receive in excess of 100,000 discounts when the actual number of such discounts "is far less than 92,000," *id.* at ¶¶ 24-27. This is enough to adequately plead falsity. At the initial pleading stage, plaintiff need not list the name of every merchant that it alleges was falsely listed or deceived; plaintiff, moreover, specifically names a number of these merchants, AC ¶¶ 20, 28.

As to materiality, defendant contends that the alleged misrepresentations are not material in that they are not likely to influence purchasing decisions. *National Basketball Ass'n,* 105 F.3d at 855. However, inasmuch as both Student Advantage and CollegeClub rely on contracts requiring exclusive agreements on the part of the merchants, a merchant has in effect to chose between the companies. It is reasonably inferrable from the Amended Complaint that many merchants would likely choose to contract with CollegeClub, rather than Student Advantage, because they were misled into believing that CollegeClub provided access to many more students than the latter. Moreover, subsequent to its telephonic rulings on the instant motion, the Court held a preliminary injunction hearing, at which it determined as a matter of fact that there was a likelihood that merchants would be misled and that plaintiff would succeed on the merits of this claim. *See* Transcript, Hearing of Nov. 29, 1999.

**\*2** As to plaintiff's alternative Lanham Act claim for false

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d    Page 2
Not Reported in F.Supp.2d, 1999 WL 1095601 (S.D.N.Y.), 1999-2 Trade Cases P 72,734
**(Cite as: 1999 WL 1095601 (S.D.N.Y.))**

designation of origin, defendant argues that it fails to allege sufficient dissemination to the public. See *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 942 F.Supp. 209, 216 (S.D.N.Y.1996). The complaint, however, alleges that defendant "has used deceptive solicitation techniques to convince potential sponsors that CollegeClub is part of, affiliated with, or the same company as, Student Advantage" by, *inter alia*, "directly telling potential sponsors that Student Advantage and CollegeClub are 'the same.' " AC ¶ 32. This is more than sufficient for pleading purposes. Defendant's reliance on *Fashion Boutique, supra,* is misplaced since there the court dismissed the Lanham Act claim on summary judgment and only "[a]fter years of discovery" had revealed the inadequacy of plaintiff's proof of dissemination. See *Fashion Boutique*, 942 F.Supp. at 216-17.

Furthermore, the "breadth of dissemination, although important, is not dispositive" because "the primary focus is the degree to which the representations in question explicitly target relevant consumers." *Gordon and Breach Science Publishers S.A. American Inst. of Physics,* 905 F.Supp. 169, 182 (S.D.N.Y.1995) In this regard, plaintiff has alleged that at least "several sponsors" had entered into agreements with CollegeClub rather than Student Advantage on account of the confusion engendered by CollegeClub's agents, AC ¶ 32, thus raising a reasonable inference that "an appreciable number" of merchants may "be misled, or indeed simply confused" about the two student discount organizations, *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 1999 WL 191527, at *4 (S.D.N.Y. Apr. 7, 1999).

Accordingly, the Court denies defendant's motion to dismiss plaintiff's claims under § 43(a) of the Lanham Act. Because the standard for setting forth a claim of unfair competition under New York common law is "essentially the same" as for stating a claim under section 43(a) of the Lanham Act, *Gmbh v. American Showcase, Inc.,* 1998 WL 557600,*4 n. 5 (S.D.N.Y. Sept. 1, 1998), the Court also denies defendant's motion to dismiss plaintiff's unfair competition claim under New York common law.

Turning to the claims under sections 349 and 350 of the New York General Business Law ("NYGBL"), a plaintiff bringing such claims "must allege conduct that affects the public interest," *Nadel v. Play by Play Toys & Novelties, Inc.,* 34 F.Supp.2d 180, 186 (S.D.N.Y.1999); see also *Genesco Entertainment, Inc. v. Koch,* 593 F.Supp. 743, 751 (S.D.N.Y.1984) (Weinfeld, J.), and that includes harm to consumers, see *Horn's, Inc. v. Sanofi Beaute, Inc.,* 963 F.Supp. 318, 328 (S.D.N.Y.1997); see also *Hertz Corp. v. Avis, Inc.* 867 F.Supp. 208, 213-14 (S.D.N.Y.1994). Although Student Advantage has sued CollegeClub primarily as a competitor, see, e.g. AC ¶¶ 32, 35, Student Advantage also claims that its demand for injunctive and other relief seeks to prevent "irreparable injury to the public," AC ¶ 37--a somewhat vague allegation that plaintiff's counsel more sharply defined at oral argument to include the harm suffered by students who unwittingly purchase goods or services for which they think they will obtain a student discount by virtue of their CollegeClub membership but for which they instead must pay the regularly advertised price since the merchant had been falsely listed on CollegeClub's discount directory and thus has no contractual obligation to provide that student with any such discount. Transcript of Hearing, October 29, 1999 ("Tr.") at 49-51. Given these allegations, the Court concludes that it cannot determine at this juncture that there exists no set of facts that would sustain plaintiff's claims under NYGBL §§ 349 and 350 and that defendant's motion to dismiss plaintiff's claims under the NYGBL must therefore be denied. See *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

*3 In its sixth and final cause of action, Student Advantage alleges tortious interference with contract and with prospective business advantage under New York law. With respect to tortious interference with contract, a plaintiff must allege "(1) the existence of a valid contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional interference with the contract, and (4) damages." *Waste Services, Inc. v. Jamaica Ash & Rubbish Removal Co., Inc.,* 691 N.Y.S.2d 150, 152 (App. Div.2d Dep't 1999) (per curiam). [FN1] Here, plaintiff alleges that defendant has attempted to induce merchants to breach their contracts (many of which contain exclusivity clauses) (AC ¶¶ 18-20, 62-64), that defendant knew about these contracts (AC ¶¶ 18-20), that such interference was intentional (AC ¶¶

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1095601 (S.D.N.Y.), 1999-2 Trade Cases P 72,734
**(Cite as: 1999 WL 1095601 (S.D.N.Y.))**

Page 3

19-20), and that plaintiff has suffered damages because of such breach (AC ¶ 66). Accordingly, plaintiff has adequately stated a claim for tortious interference with contract.

> FN1. Contrary to defendant's suggestion, *NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.,* 641 N.Y.S.2d 581 (1996) (Ct.App.1996), does not establish a heightened pleading requirement for tortious interference with contract, but rather concerned, *inter alia,* whether the expectation that shareholders would approve a merger agreement was "entitled to the same protection that would have been accorded a legally enforceable right to performance under that agreement." 641 N.Y.S.2d at 585-86.

Tortious interference with prospective contract rights requires "more culpable conduct on the part of the defendant." *NBT,* 641 N.Y.S.2d at 585. Student Advantage has, however, met this additional requirement by alleging that CollegeClub knowingly induced merchants to breach their exclusive contracts with Student Advantage in a manner that, if true, would have wrongfully prevented Student Advantage from "continuing in a specific business relationship." *Korn v. Princz,* 641 N.Y.S.2d 283, 283 (App. Div., 1st Dep't 1996); *see also WFB Telecommunications, Inc. v. NYNEX Corp.,* 590 N.Y.S.2d 460, 461 (App. Div., 1st Dep't 1992).

In short, all aspects of defendant's motion to dismiss are denied. Defendant also moves pursuant to 28 U.S.C. § 1404(a) to transfer venue from the Southern District of New York to the Southern District of California. "Whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross-Country) Productions, Inc. v. United Artist Corp.,* 865 F.2d 513, 520 (2d Cir.1989). In determining whether a transfer is warranted, a district court considers a number of factors, including the convenience of witnesses, the location of relevant documents, the convenience of the parties, the weight accorded plaintiff's choice of forum, and the interests of justice. *See, e.g., Halliwell v. Moran Towing and Transp. Co., Inc.,* 1999 WL 258260, at *1 (S.D.N.Y. Apr. 29, 1999); *Pilates, Inc. v. Pilates Institute, Inc.,* 891 F.Supp. 175, 183 (S.D.N.Y.1995). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendant makes "make a clear and convincing showing that the balance of convenience favors" the defendant's choice. *Orb Factory Ltd. v. Design Science Toys Ltd.,* 6 F.Supp.2d 203, 210 (S.D.N.Y.1998) (internal quotation omitted).

*4 Here, defendant has failed to carry that burden. Among other things, while plaintiff's principal place of business is in Massachusetts, a New York forum is clearly more convenient to it than a West Coast venue and should still, therefore, be accorded substantial weight. Moreover, plaintiff alleges that numerous representatives of CollegeClub "canvassed New York and other eastern locations" to solicit students and procure contracts with merchants in violation of plaintiff's preexisting contractual rights. Plaintiff further alleges that the false listings on defendant's current web site relate primarily to merchants located in New York and along the East Coast. Indeed, although more of the individual merchants named in the Amended Complaint are from California than from any other individual state, a clear majority of the merchants are located on the East Coast as opposed to the West Coast. *See* AC ¶ 28; Tr. at 74-75.

While some of defendant's employees and/or former employees may ultimately have to travel to New York to testify, neither this nor the modest inconvenience of transporting documents to New York overcomes the presumption in favor of plaintiff's choice of forum in a case that has been shown to have significant New York and/or East Coast-based ties. Although CollegeClub also relies on the fact that its web site, on which many of the allegedly false representations appear, is ultimately based in San Diego, CollegeClub maintains the web site in New York and cannot defeat an otherwise proper venue merely because that web site emanates from another jurisdiction. *See Ty, Inc. v. Collett,* 1999 WL 300290, at *4-5 (N.D.Ill. May 6, 1999); *Frontline Test Equipment, Inc. v. Greenleaf Software, Inc.,* 10 F.Supp.2d 583, 590-91 (W.D.Va.1998).

The Court has considered defendant's other arguments and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-01278-KAJ   Document 230-5   Filed 10/27/2005   Page 5 of 5

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1095601 (S.D.N.Y.), 1999-2 Trade Cases P 72,734
(Cite as: 1999 WL 1095601 (S.D.N.Y.))

Page 4

finds them to be without merit. Accordingly, plaintiff's motion to file an amended complaint is granted and defendant's motions to dismiss and to transfer venue are hereby denied.

SO ORDERED.

Not Reported in F.Supp.2d, 1999 WL 1095601 (S.D.N.Y.), 1999-2 Trade Cases P 72,734

**Motions, Pleadings and Filings (Back to top)**

• 1:99cv08604 (Docket) (Aug. 03, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.