## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                             )
                                           )
    Plaintiff/Counter-Defendant.       )    Civil Action No. 04-1278-KAJ
                                           )
    vs.                                )    Hon. Kent A. Jordan
                                           )
PECHINEY PLASTIC PACKAGING, INC.,          )
                                           )    **REDACTED**
    Defendant/Counter-Plaintiff.       )
                                           )

### PECHINEY'S REPLY BRIEF IN SUPPORT OF ITS
### MOTION FOR LEAVE TO AMEND

N. Richard Powers (#494)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: (302) 888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312) 222-9350

REDACTED VERSION
FILED 11/3/05

Dated: October 27, 2005

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................1

ARGUMENT.......................................................................................................4

   I.  Pechiney's Motion to Add the Inequitable Conduct Defense and
      Counterclaim Should be Granted Because the Amendment is Timely and
      Will Not Prejudice Cryovac. ...........................................................................5

      A.  Pechiney's Inequitable Conduct Defense and Counterclaim Are Timely. ............5

      B.  Cryovac Will Not Be Prejudiced By Adding The Inequitable Conduct
         Defense and Counterclaim. ..........................................................................7

  II. Pechiney Has Demonstrated Good Cause to Add its Business Torts
     Counterclaims. ..............................................................................................8

      A.  Pechiney's Business Torts Counterclaims Were Timely Filed. ................8

         1.  Pechiney Could Not Have Filed Its Lanham Act Claim Before Taking
            the Depositions of Cryovac's Witnesses..............................................9

         2.  Pechiney's Descriptions of the Testimony Are Accurate. ..................11

         3.  Pechiney Has Not Argued, And Does Not Intend to Argue That It
            Needed The Depositions to Know Whether Cryovac's Statements
            Were False. ...................................................................................14

      B.  Cryovac's Claim That Pechiney Abused the Discovery Process To
         Develop Its Business Torts Counterclaims Is Inaccurate and Irrelevant.............15

      C.  Cryovac Will Not Be Prejudiced by This Amendment...........................17

      D.  Pechiney's Proposed Business Torts Counterclaims State Valid Causes of
         Action. .....................................................................................................18

    CONCLUSION ............................................................................................20

## TABLE OF AUTHORITIES

### CASES

*Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999)........................................19

*Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed.
    Cir. 2001) ........................................................................................................6, 7, 9

*Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F. Supp. 2d 430
    (D. Del. 2003) ..............................................................................................................4

*Collegenet, Inc. v. XAP Corp.*, 2004 U.S.Dist. LEXIS 21059 (D. Or. Oct. 12, 2004) .................19

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376 (7th Cir. 2003) ............................16

*Enzo Life Sci., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003).............................4, 5, 6

*Enzo Life Sciences, Inc. v. Digene Corp.*, 295 F. Supp. 2d 424 (D. Del. 2003) ...........................10

*Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir. 1996) ................................................18

*Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228 (3d Cir. 2003) ........................................................11

*John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130 (S.D.N.Y. 1997) ......................................19, 20

*Johnson & Johnson v. Quality Pure Manufacturing, Inc.*, 484 F. Supp. 975 (D.N.J. 1979).........11

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2003)..................................................................18

*Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (E.D. Pa. 1985)......................19

*Pain Prevention Laboratories, Inc. v. Electric Waveform Laboratoriess, Inc.*, 657 F.
    Supp. 1486 (N.D. Ill. 1987) ..............................................................................19, 20

*Pulsecard, Inc. v. Discover Card Services, Inc.*, 917 F. Supp. 1488 (D. Kan. 1996) ..................16

*Reynolds v. Avalon*, 799 F. Supp. 422, (D. N.J. 1992) ....................................................................3

*S&W Enterprises, L.L.C v. Southtrust Bank of Alabama*, 315 F.3d 533 (5th Cir. 2003) ...............4

*Samick Music Corp. v. Delaware Music Industrial, Inc..*, 1992 U.S. Dist. LEXIS 2464
    (D. Del. Feb. 12, 1992) ................................................................................................4

*Stiffel Co. v. Westwood Lighting Group*, 658 F. Supp. 1103 (D.N.J. 1987).................................11

*Student Advantage, Inc. v. Collegeclub.com,* 1999 WL 1095601 (S.D.N.Y. Dec. 3, 1999) .........19

*Tommy Hilfiger Licensing, Inc. v. Supervalu, Inc.,* 1999 U.S.Dist. LEXIS 2625 (E.D. Pa. Mar. 8, 1999)..........................................................................................................................11

*Waldrep Brothers Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.,* 992 F.2d 59 (4th Cir. 1993) ......................................................................................................16, 17, 18

*Welton v. Consolidated Rail Corp.,* 1993 U.S.Dist. LEXIS 138 (E.D. Pa. Jan. 4, 1993)................4

## STATUTES

Fed. R. Civ. P. 9(b) ...........................................................................................................................18

Fed. R. Civ. P. 12(b) .........................................................................................................................18

Fed. R. Civ. P. 16(b) .................................................................................................................. passim

Rest. 2d. (Torts) § 767 .......................................................................................................................16

Rest. 2d. (Torts) § 768 .......................................................................................................................16

# INTRODUCTION

On September 20, 2005, Pechiney moved for leave to amend its original counterclaims against Cryovac to add claims for violations of the Lanham Act, the Illinois Deceptive Trade Practices Act, state law injurious falsehood and state law unfair competition (collectively, the "business torts"). (D.I. 172, Ex. 1, ¶¶ 27-84.) Pechiney also moved for leave to add an inequitable conduct counterclaim and affirmative defense. (*Id.*, Ex. 1, pp. 6-9, ¶¶ 20-26.)

Pechiney has demonstrated good cause under Rule 16(b) for adding an inequitable conduct counterclaim and affirmative defense. That counterclaim and affirmative defense could not have been brought before the deposition of Mr. Quatt, the prosecuting attorney for the '419 patent, because

<strong>REDACTED</strong>

Because Cryovac's experts have already opined on the disclosure of the Dallmann reference,[1] and because the inequitable conduct claim can be tried during the currently scheduled trial period, at the end of each day's presentation to the jury, Cryovac would not be prejudiced by permitting this amendment. By contrast, because Pechiney's inequitable conduct claim is compulsory, Pechiney would suffer irreversible prejudice if it were not permitted to bring its inequitable conduct claim in this action.

Pechiney has also demonstrated good cause for adding its business torts counterclaims. These counterclaims are based on the same evidence that Pechiney may introduce at trial in

---

[1]    In the event that Cryovac still feels it necessary to file an additional supplemental expert report on the materiality of the Dallmann reference, Pechiney would have no objection, and that report should have no impact on the current trial schedule.

support of its competitive privilege defense,[2] regardless of whether the Court permits it to add these business torts counterclaims. Cryovac's primary arguments against permitting Pechiney to amend its complaint to add these counterclaims are:

> (1) that the counterclaims are untimely, because the facts necessary to plead the counterclaims were known to Pechiney before taking the depositions of Cryovac's witnesses;
>
> (2) that Pechiney improperly used the depositions of Cryovac employees solely as a discovery fishing expedition to develop its business torts counterclaims, rather than to discover facts relevant to its existing defenses;
>
> (3) that Cryovac would be prejudiced by the amendments because it would have to investigate the conduct and knowledge of its own employees relating to Pechiney's allegations; and
>
> (4) that the requested amendment is futile because the business torts counterclaims would not withstand a motion to dismiss under Rule 12(b)(6).

As discussed herein, none of these arguments have merit. First, Pechiney could not have filed its business torts counterclaims before the Cryovac depositions were taken because the documents Cryovac produced did not provide any evidence as to (1);

(2)

(3):                    **REDACTED**

                                                                    (4)

---

2    Indeed, Pechiney took the position that these documents were relevant to Pechiney's competitive privilege defense long before filing its Motion for Leave to Amend. For instance, Pechiney informed Cryovac of Pechiney's position in a letter dated August 11, 2005. (August 11, 2005 letter, Ex. 1.)

**REDACTED**      These are all questions that were answered in

Pechiney's favor during discovery.

Second, Cryovac's claims that Pechiney's discovery was an improper "fishing

expedition" are baseless, inconsistent and improper. They are baseless because evidence of

Cryovac's own competitive practices is not only relevant to Pechiney's competitive-privilege

defense, but is "reasonably calculated to lead to the discovery of admissible evidence," the

pertinent standard for the scope of discovery under Rule 26. They are inconsistent because the

discovery arose directly out of internal business documents produced by Cryovac. They are

improper because any complaints about discovery practices are properly the subject of discovery

motions, and are not relevant to a motion to amend.

Third, Cryovac cannot credibly argue that it is prejudiced by having to interview its own

salespeople.

**REDACTED**

Far from being prejudicial to Cryovac, this is a task that Cryovac should have

undertaken before

**REDACTED**

Finally, Pechiney's proposed business torts counterclaims are sufficient to withstand a

motion to dismiss, even assuming the stringent pleading requirements for alleging fraud apply,

because they include allegations of specific false statements

**REDACTED**

## ARGUMENT

Under Rule 16(b), a court shall modify its schedule "upon a showing of good cause." Fed. R. Civ. P. 16(b). The "good cause" requirement must be considered "in conjunction with Rule 15(a)'s directive that leave to amend a complaint must be 'freely given.'" *Reynolds v. Avalon*, 799 F. Supp. 422, 450 (D. N.J. 1992). "Good cause" is established when the moving party shows that even though it acted diligently it still could not meet the court's scheduling order. *See* Fed. R. Civ. P. 16(b), Advisory Comm. Notes (1983 Amend.); *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, 295 F. Supp. 2d 430, 433 (D. Del. 2003) (granting defendant's leave to amend its counterclaim where defendant was unaware of the basis for negligence claims until the deposition of a plaintiff employee that occurred after the deadline for amendments); *see also Welton v. Consol. Rail Corp.*, 1993 U.S. Dist. LEXIS 138, *3 (E.D. Pa. Jan. 4, 1993).

In a Rule 16(b) case with facts on all fours with Pechiney's pending motion to amend, *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003), the court permitted the defendant to amend its answer and counterclaim under Rule 16(b) to add inequitable conduct because the defendant did not have sufficient facts to plead inequitable conduct before deposing the inventors. 270 F. Supp. 2d at 490. Based on *Enzo*, Pechiney's proposed amendments clearly satisfy the requirements of Rule 16(b) because they could not have been filed before Pechiney deposed Cryovac's witnesses.

By contrast, Cryovac asks this Court to adopt the Fifth Circuit's unique "four-part test" for determining good cause under Rule 16(b). *S&W Enters., L.L.C v. Southtrust Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). The Fifth Circuit's "four-part test" has not been adopted by the Third Circuit, by any other Circuit, or by any district court outside the Fifth

-4-

Circuit. In addition, *S&W* was decided before *Enzo* and *Callaway,* yet both of these District of Delaware cases determined that good cause existed without resort to *S&W*'s "four-part test."[3]

## I.   PECHINEY'S MOTION TO ADD THE INEQUITABLE CONDUCT DEFENSE AND COUNTERCLAIM SHOULD BE GRANTED BECAUSE THE AMENDMENT IS TIMELY AND WILL NOT PREJUDICE CRYOVAC.

### A.    Pechiney's Inequitable Conduct Defense and Counterclaim Are Timely.

Cryovac argues that Pechiney unfairly delayed in pleading its inequitable conduct counterclaim and affirmative defense because Pechiney had sufficient information concerning the prior art to assert inequitable conduct before Mr. Quatt's deposition, and because his testimony added no additional information relevant to this issue. (D.I. 182, pp. 33-34.)

In making this argument, Cryovac avoids discussing *Enzo Life Sciences,* a Delaware case cited in Pechiney's motion, which is directly on point. In *Enzo,* the defendant sought to add a counterclaim of inequitable conduct after the time for amending pleadings had passed. 270 F. Supp. 2d. at 486. The defendant based its proposed amended counterclaim on evidence obtained in the depositions of the inventors. *Id.* The plaintiff argued that the defendant had the information necessary to plead an inequitable conduct counterclaim before taking these depositions, and therefore, could not demonstrate "good cause" to amend its counterclaims. *Id.* at 487. In rejecting the argument that the defendant's motion to amend was untimely, the court in *Enzo* held:

---

[3]   Cryovac also relies on an unreported case, *Samick Music Corp. v. Delaware Music Indus., Inc..* 1992 U.S. Dist. LEXIS 2464 (D. Del. Feb. 12, 1992), for the proposition that motions to add permissive counterclaims will not be granted under Rule 16(b) because they do not satisfy the Fifth Circuit's four-part test. (D.I. 182, pp. 13-14). In fact, the court in *Samick* did not even address Rule 16(b), and based its decision to deny the amendment motion under Rule 15 on its findings regarding delay and prejudice. *Samick,* 1992 U.S. Dist. LEXIS 2464, *18, 20. The court's discussion of its finding that the proposed counterclaims were permissive followed its statements, at the end of its opinion, that "the Court is mindful that if a counterclaim is compulsory in nature, amendment is further encouraged." *Id.* at 21-22.

> Although [plaintiff/counter-defendant] contends that the facts underlying the inequitable conduct allegations were available to Digene in the public prosecution history of the '581 patent, the Court concludes that since the Rule 9(b) "pleading with particularity" requirement is implicated with regard to an inequitable conduct claim, [defendant/counter-plaintiff] was prudent and possibly required to confirm the factual allegations through discovery.

*Id.* at 489.[4] Pechiney, like the defendant/counter-plaintiff in *Enzo*, needed to take the deposition of Mr. Quatt in order to plead its inequitable conduct counterclaim and affirmative defense.[5]

The need to depose Mr. Quatt before filing Pechiney's inequitable conduct claim is also supported by the rule that the prosecuting attorney's reasonable explanation of representations to the PTO negates a claim of inequitable conduct. *See, e.g., Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.,* 267 F.3d 1370, 1376-77, 1384 (Fed. Cir. 2001) (involving, among other things, the prosecuting attorney's conflicting deposition testimony). Thus,

REDACTED

---

4    The quoted language is taken from the section of the court's opinion discussing amending the pleading under Rule 15(a). The court, however, used this same reasoning in its finding that "good cause" existed under Rule 16(b). *Id.* at 490.

5
REDACTED
(D.I. 182, p.
34.)

6    Cryovac also argues that Pechiney's reliance
REDACTED
(D.I. 182, p. 34.) Because Cryovac

Cryovac cannot escape precedent of *Enzo*, which required Pechiney to have deposed Quatt before Pechiney could assert this defense.

**B.     Cryovac Will Not Be Prejudiced By Adding The Inequitable Conduct Defense and Counterclaim.**

Cryovac also argues that it will suffer prejudice if Pechiney is allowed to add its inequitable conduct counterclaim to this action. (D.I. 182, p. 35.)  Specifically, Cryovac claims that it will be prejudiced because it does not have the opportunity to have its experts opine on the issue of the materiality of the Dallmann reference.  (*Id.*)

Cryovac's claim of prejudice is unfounded, however, because Cryovac's

**REDACTED**

In addition, Cryovac's experts have already submitted four export reports supplementing their prior opinions, after submitting their rebuttal reports,[9] so Cryovac can hardly argue that it is prejudiced by having to file another report.

**REDACTED**

Moreover, as the Court observed in the October 6, 2005, telephone conference, Pechiney's inequitable conduct counterclaim and affirmative defense will not be tried before the

---

[7]    Specifically, Cryovac argues in its brief,

(D.I. 182, p. 10.)  Likewise,         **REDACTED**

(Expert Report of Dr. Garth L. Wilkes, dated June 17, 2005, Ex. 2, pp. 37-42; *see also* Rebuttal Expert Report of Dr. Robert M. Kimmel, dated June 17, 2005, Ex. 3, pp. 26-29.)

[8]    Pechiney also objects to Cryovac's arguments on the merits of Pechiney's inequitable conduct defense and counterclaim on the grounds that these arguments are completely irrelevant to the pending motion to amend.  (D.I. 182, p. 10.)  Pechiney reserves all of its rights to rebut these arguments at the appropriate stage in this proceeding.

[9]    *See, e.g.,* Second Supplemental Report of Dr. Robert M. Kimmel dated August 17, 2005, Ex. 4.

-7-

jury. Because there is no need for additional discovery and the issue of inequitable conduct will not be presented to the jury, the addition of this counterclaim and affirmative defense will not delay or prolong the trial of this matter.

Finally, although Cryovac will not be prejudiced if Pechiney's motion is granted, Pechiney will suffer grave prejudice if its motion is denied. As Cryovac implicitly admits in its opposition brief, Pechiney's inequitable conduct counterclaim is compulsory. Therefore, if Pechiney is unable to bring its inequitable conduct claim in this suit, it will lose it.

In sum, Pechiney's motion to add a defense and counterclaim for inequitable conduct should be granted because Pechiney could not, under applicable law, have asserted its inequitable conduct defense and counterclaim until after the prosecuting attorney's deposition had been taken, and because Cryovac will not be prejudiced by the addition of this defense and counterclaim.

## II. PECHINEY HAS DEMONSTRATED GOOD CAUSE TO ADD ITS BUSINESS TORTS COUNTERCLAIMS.

### A. Pechiney's Business Torts Counterclaims Were Timely Filed.

As explained in its Motion to Amend, Pechiney could not have filed its business torts counterclaims under applicable pleading requirements before taking the depositions of Cryovac's Vice President of New Business Development, James Mize, its Vice President of Sales and Marketing for North America, Jeffrey Gardner, and its President, Stuart Prosser. It was only during these depositions that Pechiney learned that:

1)

**REDACTED**

2)

3)

4)

**REDACTED**

5)

In response, Cryovac argues that Pechiney could have filed its Lanham Act claim before the Cryovac depositions because Pechiney only relies on these depositions to establish knowledge of falsity and motive, neither of which is required to plead a violation of this statute. (D.I. 182, pp. 14-15.)  Cryovac also argues that (1) Pechiney "misquoted" the Cryovac depositions (*id.,* pp. 15-19); (2) Pechiney could have filed its business torts counterclaims as soon as it received      **REDACTED**      (*id.,* pp. 19-20); and (3) if Pechiney were to later argue that it needed the depositions to establish that      **REDACTED**

**REDACTED**      this argument would be wrong (*id.*).  As shown below, Cryovac's  arguments are based on misstatements of the law, distortions of the evidence, speculation as to Pechiney's future arguments, and irrelevant attempts to dispute the merits of Pechiney's counterclaims.

      1.    **Pechiney Could Not Have Filed Its Lanham Act Claim Before Taking the Depositions of Cryovac's Witnesses.**

Cryovac claims that Pechiney could have filed its Lanham Act claim before the Cryovac witnesses' depositions because Pechiney relies solely on testimony concerning knowledge of falsity and motive, when falsity and notice are not required to plead a Lanham Act claim. These contentions are inaccurate.

-9-

First, Pechiney could not have filed its Lanham Act claims based solely

**REDACTED**

(Motion for Leave to Amend, D.I. 172, ¶ 11, *citing*

Ex. K.)

Pechiney's ability to show that Cryovac's disparaging comments represent "commercial

advertising" as required by the Lanham Act. *See Enzo Life Sci., Inc. v. Digene Corp.,* 295 F.

Supp. 2d 424, 427-28 (D. Del. 2003).

Similarly,

**REDACTED**

(D.I. 172, Ex. 1, Ex. H pp. 177-78.)  In his deposition,

Mr. Gardner was asked:

Q.

A.

**REDACTED**

Second, while evidence of knowledge and motive are not required to plead a Lanham Act

claim, such evidence is highly relevant to establishing liability and damages under the Act.  As

the court held in *Johnson & Johnson v. Quality Pure Mfg., Inc.,* 484 F. Supp. 975, 983 (D.N.J.

1979), evidence "that defendants had no good faith basis" for a claim in a television commercial

comparing their product to the plaintiff's product was relevant to establishing a violation of the

Lanham Act. *See also Stiffel Co. v. Westwood Lighting Group*, 658 F. Supp. 1103, 1111 (D.N.J.

1987) (*citing Johnson & Johnson* for the proposition that "absence of credible substantiation for

an advertising claim is a violation of the Lanham Act"). Courts have also held that evidence of

wrongful intent is relevant to the award of defendant's profits, treble damages and attorney's fees

under the Act. *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242 (3d Cir. 2003) (holding that

defendant's intent is an important factor in determining whether to an award of defendant's

profits is appropriate); *Tommy Hilfiger Licensing, Inc. v. Supervalu, Inc.*, 1999 U.S. Dist. LEXIS

2625, *7 (E.D. Pa. Mar. 8, 1999).

Here, the

**REDACTED**

(D.I. 172, Ex. 1, ¶ 38.)

Because the new information Pechiney obtained from depositions of Cryovac's witnesses

was important to satisfying Pechiney's Rule 11 obligations, Pechiney is justified under the good

cause requirement of Rule 16(b) in filing its proposed Lanham Act counterclaim after the

depositions. *Enzo Life Sci., Inc.*, 270 F. Supp. 2d at 490.

**2.     Pechiney's Descriptions of the Testimony Are Accurate.**

Cryovac also claims that Pechiney misquoted the depositions of Cryovac's witnesses to

show that their testimony was relevant to Pechiney's business torts counterclaims. (D.I. 182, pp.

15-19.) This claim is not supported by the record.

Specifically, Cryovac claims that Pechiney questioned Mr. James Mize about an email:

(1) after "*remov[ing]*" an attachment to the email that "*had been produced with the attachment*

-11-

*as a single document*" and (2) after being "warned" in the deposition that the document was incomplete. (*Id.*, p. 18) (first emphasis added). Cryovac's accusations are false.

First, Cryovac's claim that the email exhibit Pechiney used in the Mize deposition had been produced with the attachment as a single document is unfounded. (*See* D.I. 182, p. 18, Exs. L, M.) After receiving Cryovac's accusations, Pechiney searched its database of Cryovac's electronic production and determined that, out of the three banker's boxes of Cryovac documents bearing Mr. Mize's name, Cryovac produced at least six identical copies of the email used in Mr. Mize's deposition, and five of those copies were each logged as a *separate* document apart from the attachment. Only one of those six copies was logged by Cryovac with the attachment in a single document. There is thus no support for Cryovac's accusation that Pechiney intentionally removed the attachment to an email to confuse Mr. Mize during his deposition.[10]

Nor did Cryovac's counsel ever tell Pechiney's counsel during the Mize deposition that Pechiney should not examine Mize on the email exhibit because an attachment was missing. In fact, Cryovac's attorney did not assert *any* objections to Pechiney's use of the email exhibit, on the grounds of incompleteness or otherwise. The only reference Cryovac's attorney made during the Mize deposition to an attachment to the email was to ask, after the examination of Mize on the email had been completed, and after the parties had returned from a break, whether counsel for Pechiney had a copy of the attachment. Cryovac's counsel asked, "And you don't have the attachment that's listed?" and Pechiney's attorney answered, "No." (D.I. 172, Ex. 1, Ex. K, pg. 181-86.) Cryovac's counsel did not say anything during the deposition to put Pechiney on

---

[10] Indeed, Pechiney's counsel said to Mize, immediately after handing him the email exhibit: "I'm not sure why it's been produced this way, Mr. Mize, but it appears to be several copies of the identical email, as best I can tell. But, feel free to look through it, obviously." (D.I. 172, Ex. 1, Ex. K, pg. 181)

notice that Cryovac had any objection to the use of this email exhibit.  Cryovac's accusations

that Pechiney engaged in "egregious" conduct relating to this exhibit are therefore baseless and

inappropriate.

Finally,

REDACTED

(*Id.,* pp. 181-86.)

In addition, Cryovac accuses Pechiney of misquoting deposition transcripts and exhibits.

These accusations are false.  (*See* D.I. 182, pp. 15-18.)  The exhibits and testimony quoted by

Cryovac say exactly what Pechiney says that they said.  For instance, Cryovac asserts that

Pechiney's

REDACTED

testimony explaining that memorandum, were

inaccurate.  (*Id.,* pp. 16-17.)  Additionally, Cryovac attacks Pechiney's use

REDACTED

(D.I. 182, p. 17.)  In both cases, Pechiney's quotations are accurate.  (*See* D.I.

172, Ex. 1, ¶¶ 41, 49-50, Exs. J, M, K.)

Finally, Cryovac falsely claims that Pechiney misrepresented

(D.I. 182, pgs. 15-16.)  Cryovac suggests

that

REDACTED

(*Id.*)  Given Cryovac's

(*See* D.I. 172, Ex. 1, ¶ 37, Ex. E)

REDACTED

### 3.   Pechiney Has Not Argued, And Does Not Intend to Argue That It Needed The Depositions to Know Whether Cryovac's Statements Were False.

Under a heading entitled "Pechiney Could Have Pleaded the Elements in Its Counter-Claim after Reviewing Documents Produced in May," Cryovac makes two arguments.  First, Cryovac speculates that Pechiney may argue in its reply brief that the depositions were necessary to discover whether Cyrovac's statements were false.  (D.I. 182, pp. 19-22.)  However, Pechiney has always known that Cryovac's                    REDACTED                    were false, and has no intention of arguing otherwise.

Second,

REDACTED

(*Id.*, p. 21).[11]  Cryovac also

(*Id.*)  Not only is this hearsay speculation inadmissible and utterly unconvincing,[12] but Cryovac offers this testimony to support arguments

---

[11]  Cryovac also disputes that there is any testimony to support the portion of a sentence in Pechiney's motion that states:                    (D.I. 182, p. 22.)
Cryovac is wrong.            REDACTED
(D.I. 172, Ex. 1, Ex. H, pp. 177, l. 20 - 178, l. 2.)

[12]

REDACTED

on the merits of Pechiney's business torts counterclaims that have no bearing whatsoever on whether Pechiney's motion to amend should be granted.

### B. Cryovac's Claim That Pechiney Abused the Discovery Process To Develop Its Business Torts Counterclaims Is Inaccurate and Irrelevant.

In the opening pages of its brief, Cryovac claims that Pechiney improperly used the depositions of Cryovac's witnesses to develop permissive counterclaims unrelated to the main action. (D.I. 182, p. 2.) This accusation is unfounded. As explained below, Pechiney obtained the testimony at issue to support its defenses to Cryovac's tortious interference claims, and this testimony is therefore directly related to the "claims and defenses of the parties," under Rule 26. The fact that this testimony also establishes the elements of Pechiney's proposed counterclaims does not provide any support for Cryovac's claim that Pechiney's discovery practices were improper.

In addition, if Cryovac believed it had any legitimate discovery disputes concerning the scope of Pechiney's questioning during depositions of Cryovac's witnesses, the proper way to raise those would have been in discovery motions. Garden-variety discovery complaints have no relevance to a motion to amend.

Pechiney sought testimony from Cryovac's witnesses concerning their attempts to counter Pechiney's introduction of a competing product in order to support Pechiney's defense of competitive privilege. Under the competitive privilege, a defendant cannot be held liable for tortious interference based on the defendant's efforts to compete with the plaintiff unless these

REDACTED

(D.I. 172, Ex. 1, Ex. E.) (emphasis added).

efforts involve "wrongful" or "improper" conduct. Rest. 2d. (Torts) § 768. In determining whether the competitive privilege has been abused by the use of "wrongful" or "improper" practices, courts evaluate the "nature of the conduct," and "the actor's motive." Rest. 2d. (Torts) § 767.

Based on this approach, courts have held that the competitive privilege bars a claim for tortious interference when the "nature of the [defendant's] conduct" consists of offering lower prices, persuading a potential customer that the defendant can do a better job or giving potential customer's truthful information about the defendant's products. *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 917 F. Supp. 1488, 1500 (D. Kan. 1996) (holding that "simply 'giving someone a better deal' does not constitute wrongful means"); *Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.*, 992 F.2d 59, 63 (4th Cir. 1993) (holding that "[b]usiness rivalry that promotes lower prices, better products, or more efficient services is justified" under the competitive privilege); *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 399 (7th Cir. 2003) (holding that defendant's "recruiting" of customers was privileged because defendant claims were truthful).

But in cases where the defendant's motive and intent was to harm its competitor, rather than to compete legitimately for its competitor's business, and the defendant has engaged in improper activities to achieve this goal, the competitive privilege will no longer protect the defendant from liability. *See, e.g., Waldrep Bros. Beauty Supply, Inc.*, 992 F.2d at 63 (observing that "business conduct that seeks to impose costs on rivals in order to gain advantage in the market is not [privileged]").

In this case, Cryovac has based its tortious interference claim on Pechiney's sales of its ClearShield product to one of Cryovac's customers, after Pechiney had engaged in extensive

efforts to ensure that its ClearShield product did not infringe any Cryovac patents. In demonstrating that Pechiney was protected from liability under the competitive privilege, Pechiney intends to show that, unlike Pechiney, Cryovac's competitive practices were intentionally designed to destroy Pechiney's ability to compete in the market for bone-in red meat packaging. Because this evidence will already be presented as part of Pechiney's defense, Pechiney moved to bring its business torts counterclaims in this action once it discovered the information necessary to establish a good faith basis for such claims.

### C.     Cryovac Will Not Be Prejudiced by This Amendment.

The prejudice Cryovac suggests it will suffer in the event Pechiney's motion is granted is not the type of prejudice that warrants denial of Pechiney's motion and is insignificant or irrelevant. Nearly all of Cryovac's arguments that it will suffer prejudice are directed at the alleged burden of requiring Cryovac to determine the extent and nature of its own tortious activity. For instance, Cryovac asserts that it will need to conduct discovery to determine: (1) "Whether the Allegedly False Statements Attributed to Cryovac in the Proposed Counterclaims Were, in fact, Made to Customers or Potential Customers of Pechiney"; (2) "Whether Any of the Statements Allegedly Made Are Actionable"; and (3) "If Actionable at All, Whether Any Alleged Statements Are, in Fact, Literally False." (D.I. 182, pp. 23-25.) This is certainly not the type of prejudice that warrants denial of Pechiney's motion. Cryovac should have determined whether the statements discussed in Pechiney's counterclaims were false before

REDACTED

REDACTED

Additionally, Cryovac makes the unpersuasive claim that it will need extensive discovery from Pechiney. (*Id.*, pp. 24, 26-29.) However, the information relevant to Pechiney's counterclaims is almost entirely in Cryovac's possession, including the customers to whom Cryovac communicated its disparaging comments. To the extent that Cryovac needs additional

discovery relating to Pechiney's damages, this discovery will be narrow, and should not take a significant amount of time.

Finally, Cryovac claims prejudice resulting from the need to obtain discovery from third parties. To the extent limited discovery from third parties is necessary, Cryovac is free, just as Pechiney is, to conduct interviews outside of the formal discovery channels and any prejudice to Cryovac is, therefore, insignificant.

### D.    Pechiney's Proposed Business Torts Counterclaims State Valid Causes of Action.

Finally, Cryovac argues that Pechiney's motion should be denied on the grounds of futility. (D.I. 182, pp. 31-32.) Courts assess the issue of futility using the same stringent standard that applies to a motion to dismiss under Rule 12(b)(6). *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996). This standard requires the court to accept all well-pleaded allegations as true and to draw all factual inferences in the light most favorable to the party asserting the claims. *Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir. 2003).

As part of its futility argument, Cryovac argues that Pechiney's proposed business torts counterclaims are subject to the heightened pleading standards of Rule 9(b) for claims of fraud or mistake. (D.I., 182, p. 31.) Although Cryovac gives the impression that this proposition is beyond dispute, there is substantial authority to the contrary. *See, e.g., Student Advantage, Inc. v. Collegeclub.com,* 1999 WL 1095601, *1 (S.D.N.Y. 1999) ("Lanham Act Claims are not subject to any heightened pleading standard."); *John P. Villano, Inc. v. CBS, Inc.,* 176 F.R.D. 130, 131 (S.D.N.Y. 1997) (declining to apply Rule 9(b) to Lanham Act claim); *Pain Prevention Lab, Inc. v. Elec. Waveform Labs, Inc.,* 657 F. Supp. 1486, 1494-95 (N.D. Ill. 1987) (holding that

it is inappropriate to apply Rule 9(b) to claims of disparagement under both the Illinois

Deceptive Trade Practices Act and common law disparagement).[13]

Two district courts within the Third Circuit have held that Lanham Act claims are not

subject to Rule 9(b) pleading standards. *Gallup, Inc. v. Talentpoint, Inc.,* 2001 WL 1450592,

*13 (E.D. Pa. Nov. 13, 2001); *Max Daetwyler Corp. v. Input Graphics, Inc.,* 608 F. Supp. 1549,

1556 (E.D. Pa. 1985). Both courts agreed that a Lanham Act claim *"need not satisfy all the*

*pleading requirements imposed under Rule 9."* *Gallup, Inc.,* 2001 WL 1450592, at *13

(emphasis added). *Max Daetwyler Corp.,* 608 F. Supp. at 1556 (same). The plaintiff need only

allege the "nature of an alleged misrepresentation" with sufficient specificity to notify the

defendant of the nature of the claims. *Gallup, Inc.,* 2001 WL 1450592, at *13; *Max Daetwyler*

*Corp.,* 608 F. Supp. at 1556. In *Max Daetwyler,* the court found that the plaintiff's general

allegation that the defendant misrepresented the "quality and nature" of a product did not satisfy

this pleading standard. 608 F. Supp. at 1556 . Pechiney's allegations, by contrast, allege specific

disparaging comments

**REDACTED**

Finally, there is good reason for not subjecting Pechiney's proposed business torts

counterclaims to the strictures of Rule 9(b): "One of the justifications underlying Rule 9(b) is

that in a fraud case a defendant personally or vicariously makes misrepresentations to the

plaintiff. . . ." *Pain Prevention Lab, Inc.,* 657 F. Supp. at 1495. The Rule 9(b) pleading

---

[13]  The only Circuit court case Cryovac cites is a Second Circuit case that explains the Rule 9(b)
standards, but does not apply these standards to Lanham Act claims. *See Anatian v. Coutts*
*Bank (Switzerland) Ltd.,* 193 F.3d 85, 88 (2d Cir. 1999). In fact, as one of Cryovac's own
cases acknowledges, "[n]o United States Circuit Court has held that as a general rule, all
false advertising Lanham Act claims . . . are subject to *Rule 9(b)*." *See Collegenet, Inc. v.*
*XAP Corp.,* 2004 U.S. Dist. LEXIS 21059, *5 (D. Or. Oct. 12, 2004).

standards for fraud are therefore inappropriate for Pechiney's business torts counterclaims, because these claims allege that disparaging comments were made to third-parties, not to Pechiney. In addition, courts have found that "nothing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement." *John P. Vilano, Inc.*, 176 F.R.D. at 131.

In sum, because Pechiney's proposed business torts counterclaims satisfy the relevant pleading requirements, there is no merit to Cryovac's futility argument.

### CONCLUSION

As is set forth above, Pechiney has established good cause to amend its counterclaims. Pechiney, therefore, respectfully requests this Court to grant its motion.

Respectfully submitted,

PECHINEY PLASTIC PACKAGING, INC.

Dated: October 27, 2005

By: _____
    N. Richard Powers (#494)

N. Richard Powers (#494)
Rudolf E. Hutz (#484)
CONNOLLY BOVE LODGE & HUTZ
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel: (302)888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Telephone: (312)222-9350

-20-

## CERTIFICATE OF SERVICE

I, N. Richard Powers, hereby certify that I caused true and correct copies of Pechiney's

Reply Brief in Support of its Motion to Amend to be served this 27th day of October, 2005 via

hand delivery on:

John W. Shaw, Esq.
Karen E. Keller, Esq.
YOUNG, CONAWAY, STARGATT,
& TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
Phone: (302) 571-6600
Fax: (302) 576-3334

and via Federal Express on:

Ford F. Farabow, Esq.
Joann M. Neth, Esq.
Michael J. Flibbert, Esq.
Courtney B. Meeker, Esq.
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Phone: (202) 408-4000
Fax: (202) 408-4400

N. Richard Powers