REDACTED--Public Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,

     Plaintiff/Counter-Defendant,

     v.

PECHINEY PLASTIC PACKAGING, INC.,

     Defendant/Counter-Plaintiff.

)
)
)
)
)
)
)
)
)
)
)

C.A. No.: 04-1278 (KAJ)

**CONFIDENTIAL –
FILED UNDER SEAL**

## PLAINTIFF CRYOVAC'S BRIEF IN OPPOSITION TO PECHINEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF LOST PROFITS

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
  TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Martin I. Fuchs
Courtney B. Meeker
Mark J. Feldstein
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: November 18, 2005

Redacted Version Filed 11/29/05

REDACTED--Public Version
Confidential and Subject to Protective Order

## TABLE OF CONTENTS

I.     INTRODUCTION AND NATURE AND STAGE OF PROCEEDINGS ..........................1

II.    SUMMARY OF ARGUMENT ................................................................................2

III.   STATEMENT OF MATERIAL FACTS ...................................................................3

IV.    ARGUMENT .........................................................................................................7

       A.    Applicable Law........................................................................................7

             1.    Summary judgment is inappropriate where there  are genuine
                   issues of material fact in dispute...................................................7

             2.    The mere existence of a competing product does  not make the
                   product an acceptable substitute ...................................................8

             3.    A competing product is not a non-infringing alternative  if it
                   infringes patents other than the patent-in-suit............................10

             4.    A competing product is not a non-infringing alternative  if it is not
                   available for purchase ...................................................................11

             5.    Patentee may recover lost profits regardless of the presence or
                   absence of acceptable non-infringing alternatives.......................11

       B.    Whether Curwood's Bone-in Packaging Products Are  Acceptable Non-
             Infringing Alternatives Raises a Genuine  Issue of Material Fact
             Precluding Summary Judgment .............................................................12

             1.    A genuine issue of material fact remains as to whether  Curwood's
                   competing products are acceptable substitutes ...........................12

             2.    A genuine issue of material fact remains as to whether  Curwood's
                   competing products are non-infringing..........................................17

             3.    A genuine issue of material fact remains as to whether  Curwood's
                   competing products are available....................................................18

             4.    The acceptable non-infringing alternative element should  have
                   limited influence because Pechiney ignored the alleged  substitute
                   in electing to sell an infringing product ........................................19

       C.    Even If the Fact-Finder Found Curwood's Bone-in Packaging Products
             Were Acceptable Non-Infringing Alternatives, Cryovac  Would Still Be
             Entitled to Lost Profits For Its Proportion of the Hypothetical "But For"
             Distribution of Infringing Sales ...........................................................20

REDACTED--Public Version
Confidential and Subject to Protective Order

D.    Even If the Fact-Finder Found Curwood's Bone-In Packaging Products
Were Acceptable Non-Infringing Alternatives, Cryovac Would Still Be
Entitled to Lost Profits For the Sales It Would Have Made

**Redacted**

.........................................................................................................20

V.    CONCLUSION.............................................................................................................23

REDACTED--Public Version
Confidential and Subject to Protective Order

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Advanced Medical Optics, Inc. v. Alcon Inc.*,
    361 F. Supp. 2d 404 (D. Del. 2005)...................................................................7, 8, 10, 11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...........................................................................................7

*Ericsson, Inc. v. Harris Corp.*,
    352 F.3d 1369 (Fed. Cir. 2003)...........................................................................11

*Fonar Corp. v. General Electric Co.*,
    107 F.3d 1543 (Fed. Cir. 1997)........................................................................9, 12

*Grain Processing Corp. v. America Maize-Products Co.*,
    185 F.3d 1341 (Fed. Cir. 1999)...........................................................................16

*King Instruments Corp. v. Perego*,
    65 F.3d 941 (Fed. Cir. 1995)...........................................................................8, 20

*Minco, Inc. v. Combustion Engineering, Inc.*,
    95 F.3d 1109 (Fed. Cir. 1996)........................................................................8, 12

*Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ..................................................................... passim

*Rite-Hite Corp. v. Kelley Co., Inc.*,
    56 F.3d 1538 (Fed. Cir. 1995)..................................................................8, 10, 11, 21

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.*,
    953 F.2d 1360 (Fed. Cir. 1991)...........................................................................9

*State Industries, Inc. v. Mor-Flo Industries, Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989)................................................................... passim

*Stryker Corp. v. Intermedics Orthopedics, Inc.*,
    96 F.3d 1409 (Fed. Cir. 1996)...........................................................................10

*TWM Manufacturing Co., Inc. v. Dura Corp.*,
    789 F.2d 895 (Fed. Cir. 1986)........................................................................9, 12

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991)...........................................................................9

REDACTED--Public Version
Confidential and Subject to Protective Order

*WMS Gaming Inc. v. International Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999).............................................................................11

*Zygo Corp. v. Wyko Corp.*,
    79 F.3d 1563 (Fed. Cir. 1996).................................................................11, 18, 19

## FEDERAL STATUTES

35 U.S.C. § 284.................................................................................................3, 8, 20

Fed. R. Civ. P. 56..................................................................................................7, 12

REDACTED--Public Version
Confidential and Subject to Protective Order

## I.    INTRODUCTION AND NATURE AND STAGE OF PROCEEDINGS

Pursuant to paragraph 10 of the December 14, 2005, Scheduling Order [D.I. 22],

Cryovac, Inc. ("Cryovac") hereby responds to Pechiney Plastic Packaging Inc's ("Pechiney")

Memorandum in Support of Pechiney's Motion for Partial Summary Judgment on Lost Profits

("Pechiney's Memorandum").    Specifically, Cryovac opposes Pechiney's Motion because

genuine issues of material fact exist as to whether Cryovac is entitled to lost profits under the

damages theory addressed by Pechiney and because Cryovac is entitled to lost profits under

alternative approaches to determining lost profits that Pechiney ignored.  An Affidavit by Karl

Deily in support of Cryovac's Opposition to Pechiney's Motion is submitted herewith. [Exhibit

("Ex.")[1] N.]

On May 19, 2005, pursuant to paragraph 3(d) of the Scheduling Order [D.I. 22], Cryovac

submitted the Expert Report of damages expert James J. Nawrocki, which provided a detailed

analysis of Cryovac's lost profits related to patent infringement damages and as a result of

tortious interference by Pechiney.  [Ex. K at p. 5-7, 13-26.] Also pursuant to the Scheduling

Order, Cryovac submitted two additional reports by Mr. Nawrocki on July 25, 2005 [Ex. L] and

August 30, 2005 [Ex. M], rebutting the opinions of Pechiney's damages expert Mr. Larry Evans

and supplementing his prior opinions.  Mr. Nawrocki's opinions regarding lost profits include a

discussion of facts in evidence supporting his opinion that acceptable non-infringing alternatives

to the patented product do not exist.  [*See e.g.*, Ex. L at pp. 3-6.]  Mr. Nawrocki's opinions also

---

[1] Citations to "Ex. __ " in this brief refer to exhibits found in the Appendix of Exhibits To
Plaintiff Cryovac's Brief in Opposition to Pechiney's Motion for Partial Summary Judgment of
Lost Profits ("Appendix").  Mr. Deily's Affidavit is Ex. N therein.  The exhibits cited in Mr.
Deily's Affidavit are included in the Appendix as well.

REDACTED--Public Version
Confidential and Subject to Protective Order

discuss other evidence of record in support of the award of lost profits to Cryovac. [*See e.g.*, Ex. K at pp. 25-26.]

Fact and expert discovery has closed, and notwithstanding the documentary evidence presented by Pechiney in its Memorandum, considerable additional documentary and testimonial evidence supporting the award of lost profits to Cryovac exists in the record, creating at the very least, genuine issues of material fact for trial.

## II.     SUMMARY OF ARGUMENT

Summary judgment is inappropriate where there are genuine issues of material fact in dispute. In this case, genuine issues of material fact exist with respect to whether Curwood's bone-in packaging products were acceptable non-infringing alternatives available during the period of Pechiney's infringement in accordance with the *Panduit* test for the determination of lost profits. Specifically, contrary to Pechiney's allegations, there are material issues of fact as to whether Curwood's bone-in packaging products are (1) acceptable alternatives, (2) non-infringing alternatives, and (3) available alternatives, such that the denial of summary judgment of lost profits is warranted.

Moreover, even if the fact-finder determines that an acceptable non-infringing alternative exists, Cryovac would still be entitled to lost profits for a portion of Pechiney's infringing sales under the alternative approach to lost profits set forth in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989), which entitles the patentee to lost profits for a hypothetical but-for distribution of the infringer's sales irrespective of whether acceptable non-infringing substitutes exist or not. For this additional reason, Pechiney's Motion should be denied.

Confidential and Subject to Protective Order REDACTED--Public Version

Furthermore, under the broad language of 35 U.S.C. § 284, Cryovac is entitled to lost profits for the sales it would have made

Redacted

## III.    STATEMENT OF MATERIAL FACTS

In this patent infringement action, Cryovac is asserting that Pechiney's bone-in packaging product, ClearShield®, infringes Cryovac's U.S. Patent No. 4,755,419.

Redacted

_____

Redacted

Confidential and Subject to Protective Order REDACTED--Public Version

*Redacted*

REDACTED--Public Version
Confidential and Subject to Protective Order

Redacted

REDACTED--Public Version
Confidential and Subject to Protective Order

Redacted

REDACTED--Public Version
Confidential and Subject to Protective Order

Redacted

IV.    **ARGUMENT**

    A.    **Applicable Law**

        1.    **Summary judgment is inappropriate where there**
             **are genuine issues of material fact in dispute**

Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 404, 408 (D. Del. 2005). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to

Redacted Version Filed 11/29/05

REDACTED--Public Version
Confidential and Subject to Protective Order

the proceeding. *Id.* at 248. In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor. *Id.* at 255. In ruling on motions for summary judgment, the Judge's function is not to weigh the evidence, but to determine whether there is a genuine factual issue for trial. *Id.* at 255.

### 2. The mere existence of a competing product does not make the product an acceptable substitute

A patentee is entitled to full compensation for any damages it suffered as a result of infringement. 35 U.S.C. § 284. "[A]dequate damages can include lost profits due to diverted sales. . . ." *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1118 (Fed. Cir. 1996). "To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales." *State Indus., Inc.*, 883 F.2d at 1577. The patentee is still entitled to lost profits for its sales of a competing product not covered by the patent within the market. *King Instruments Corp. v. Perego*, 65 F.3d 941, 949 (Fed. Cir. 1995) (affirming the award of lost profits based on patentee's sales of an unpatented product that it sold rather than a patented product); *see also Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1546-47 (Fed. Cir. 1995) (agreeing with the district court's determination that patentee's lost sales of a product not covered by the patent-in-suit but in direct competition with the infringing product were reasonably foreseeable and, therefore, were compensable).

"One acceptable means to establish entitlement to lost profit damages is by satisfying the four factor *Panduit* test." *Advanced Med. Optics*, 361 F. Supp. 2d at 418 (emphasis added). In *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978), the Federal Circuit set forth a four factor test for proving lost profits, requiring proof of: (1) demand

REDACTED--Public Version
Confidential and Subject to Protective Order

for the patented product; (2) the absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profits lost.

In this case, Pechiney improperly characterizes the *Panduit* test as the exclusive means of proving lost profits. However, even then Pechiney only challenges the second element of the test, the absence of acceptable non-infringing alternatives. In proving a case for lost profits under the *Panduit* test, a patentee needs to show a "reasonable probability" that there were no acceptable alternatives. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1544 (Fed. Cir. 1991).

To be "acceptable" the alternative must have the same advantages and performance capabilities as the patented product such that the consumers would be satisfied by the alternative. *See Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (holding that the award of lost profits was supported by substantial evidence that no acceptable alternatives existed where available alternatives to patented MRI technology would have led to significant compromise in speed and quality); *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) (holding that the special master's determination that the alleged substitutes did not have all the beneficial characteristics of the patented device supported the determination that there were no acceptable alternatives); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991). The "[m]ere existence of a competing device does not make that device an acceptable substitute." *TWM*, 789 F.2d at 901; *see also Uniroyal*, 939 F.2d at 1545 (stating that even if a percentage of the relevant market is held by competitors, it did not necessarily follow that acceptable non-infringing substitutes existed in the market). "[I]f purchasers are motivated to purchase because of particular features available only from the

Confidential and Subject to Protective Order REDACTED--Public Version

patented product, products without such features--even if otherwise competing in the marketplace--would not be acceptable noninfringing substitutes." *Advanced Med. Optics*, 361 F. Supp. 2d at 419-20 (denying motion for partial summary judgment that patentee is not entitled to lost profits because, in part, there remains an issue of fact as to whether consumers purchased the products based on a particular feature available only in the patented product).

Furthermore, the acceptable substitute element "must be viewed of limited influence where the infringer knowingly made and sold the patented product for years while ignoring the substitute." *Panduit*, 575 F.2d at 1162, n.9; *TWM*, 789 F.2d at 902. "There are substitute products for virtually every patented product," the availability of which should not diminish the value of the right to exclude others from making and selling the patented product. *Panduit*, 575 F.2d at 1162, n.9; *see also Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1418, n. 3 (Fed. Cir. 1996) (noting that appellants' "argument that there were acceptable non-infringing substitutes is undermined by the fact that appellants have been found to have willfully infringed the [] patent"). Willful infringement is an issue for the jury in the present case.

### 3.    A competing product is not a non-infringing alternative if it infringes patents other than the patent-in-suit

In determining whether a product is "non-infringing" for purposes of the *Panduit* test, the patent-in-suit is not the only patent for consideration of infringement. *See State Indus.*, 883 F.2d at 1576, 1578 (considering patents not in-suit in determining whether non-infringing acceptable alternatives to the patented product existed). Rather, the acceptable non-infringing alternative must not infringe any patent, *i.e.*, it must be a legally viable alternative. *Id.; see also Rite-Hite Corp.*, 56 F.3d at 1548 (holding that a substitute was not an acceptable non-infringing substitute under *Panduit* because it was also a device patented by patentee although that patent was not in-suit).

REDACTED--Public Version
Confidential and Subject to Protective Order

4.    A competing product is not a non-infringing alternative
if it is not available for purchase

"[I]f a device is not available for purchase, a defendant cannot argue that the device is an acceptable noninfringing alternative for the purposes of avoiding a lost profits award." *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996). "A lost profits award reflects the realities of sales actually lost, not the possibilities of a hypothetical market." *Id.*

5.    Patentee may recover lost profits regardless of the presence
or absence of acceptable non-infringing alternatives

As noted earlier, while the four factor test of *Panduit* is one standard way of proving lost profits, it is not an exclusive standard. *State Indus.*, 883 F.2d at 1577; *see also Advanced Med. Optics, supra*; *Rite-Hite Corp.*, 56 F.3d at 1548 ("[O]ther fact situations may require different means of evaluation, and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being compensable."). A plaintiff may meet the "but for" requirement for proving lost profits in other ways. For example, the Federal Circuit has also approved awarding lost profits for diverted sales in an amount equal to the patentee's fraction of past sales in lieu of accounting for acceptable non-infringing alternatives in the application of the *Panduit* test. *State Indus.*, 883 F.2d at 1578-1580; *see also WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999) (stating that "[t]he district court's methodology for computing damages is discretionary . . . " and affirming the court's award of lost profits based on a market share approach).

If a patentee can show that it has an established fraction of sales, then a court may award a patentee lost profits for diverted sales for a share of the infringing sales based on the patentee's fraction of sales and award the patentee a reasonable royalty on the remaining infringing sales. *See State Indus.*, 883 F.2d at 1577-1581; *see also Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377 (Fed. Cir. 2003) (affirming award of lost profits where patentee reconstructed the "but for"

REDACTED--Public Version
Confidential and Subject to Protective Order

market by segmenting the hypothetical market and determined its lost profits based on its sales fraction). Thus, under the *State Industries* approach for calculating lost profits, "the presence or absence of acceptable non-infringing alternatives does <u>not</u> matter." 883 F.2d at 1578 (emphasis added).

**B.     Whether Curwood's Bone-in Packaging Products Are Acceptable Non-Infringing Alternatives Raises a Genuine Issue of Material Fact Precluding Summary Judgment**

In this case, whether acceptable non-infringing alternatives were available during the period of Pechiney's infringement is material to the determination of lost profits to be awarded to Cryovac. Because genuine issues exist with respect to these material facts, summary judgment regarding lost profits is precluded. Fed. R. Civ. P. 56. Specifically, contrary to Pechiney's allegations, there are material issues of fact as to whether Curwood's bone-in packaging products are (1) acceptable alternatives, (2) non-infringing alternatives, and (3) available alternatives, such that the denial of summary judgment of lost profits is warranted.

**1.     A genuine issue of material fact remains as to whether Curwood's competing products are acceptable substitutes**

The "mere existence" of a competing product does not make that product an acceptable substitute. *TWM*, 789 F.2d at 901. Rather, as the Federal Circuit explained in *Fonar*, to be an acceptable alternative, the product must have the same advantages and performance capabilities as the patented product. 107 F.3d at 1553. In that case, there was no acceptable alternative to the patented MRI technology in part because the alternatives "would have led to a significant compromise in speed and quality in comparison to using [the patented technology]." *Id.* Similarly, in *Minco*, the record showed a preference for the patentee's fused silica, such that two suppliers exited the market in deference to the patented product and the only remaining non-infringing supplier was a "last resort." 95 F.3d at 1119. The Federal Circuit held that there was

REDACTED--Public Version
Confidential and Subject to Protective Order

ample support that the patentee would have had a "reasonable probability of making these sales but for the infringement." *Id.*

### Redacted

                                             Therefore, Cryovac would have made the sales but for Pechiney's infringing product.

Redacted

Confidential and Subject to Protective Order     REDACTED--Public Version

Redacted

REDACTED--Public Version
Confidential and Subject to Protective Order

**Redacted**

Pechiney, however, has not offered any testimony that Curwood's products are acceptable non-infringing substitutes.  Instead, Pechiney selectively picks and chooses portions of documents in an effort to support its argument, while ignoring statements contained in the same document that contradict its position.

*Redacted*

however, there is clearly a factual dispute as to whether Curwood's product possesses this advantage.

REDACTED--Public Version
Confidential and Subject to Protective Order

**Redacted**

Other evidence cited by Pechiney is merely a Curwood advertisement

. [*See* Pechiney Ex. 27            .] Pechiney repeatedly cites such marketing material in

support of its assertion that Curwood's products exhibit all of the advantages of the '419 patent.

[                          Pechiney Ex. 27

nothing more than Curwood's self-promotion, not evidence of product acceptance.

Pechiney's conclusory statement that Curwood's sales of its bone-in products

"indisputably" proves the acceptability of the product is contrary to the substantial Federal

Circuit case law holding that a product is not an acceptable non-infringing alternative based on

its competitive role alone. Pechiney twice cited *Grain Processing Corp. v. Am. Maize-Prods.*

*Co.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999), for the proposition that "[m]arket sales alone be [sic]

sufficient to 'defeat a case for lost profits.'" [D.I. 194 at p. 5 and 8.] However, that case actually

states that it is market sales of an acceptable non-infringing substitute that may defeat a case for

lost profits. *Grain Processing*, 185 F.3d at 1352 (emphasis added). The market sales are

"evidence of availability of a substitute." *Id.* (emphasis added). While sales of a product may

demonstrate availability of that product, the non-infringing product must also demonstrate the

**Redacted**

Confidential and Subject to Protective Order REDACTED--Public Version

benefits of the patented product to be an acceptable non-infringing alternative as explained above. *See* IV.A.2. *supra.*

Finally, Pechiney incorrectly applies the "but for" test and ignores important facts when it erroneously concludes that there is "no legitimate argument that National Beef would not have purchased Curwood bags" in the absence of Pechiney's ClearShield® products and Cryovac's BoneGuard® products. [D.I. 194 at pp. 8-9 and fn. 4.] First, Pechiney's omission of Cryovac's BoneGuard® product from the selection of products available to the customer but for the infringing Pechiney product is contrary to well-established Federal Circuit law and is, therefore, legally erroneous. *See* Section IV.A.2. *supra.* [*See also, e.g.,* Ex. K at pp. 13, 17-18.]

**Redacted**

Thus, there is at least a genuine issue of material fact as to whether Curwood's bone-in meat packaging products are acceptable alternatives.     Accordingly, Pechiney's summary judgment must be denied.

> **2.     A genuine issue of material fact remains as to whether Curwood's competing products are non-infringing**

Whether an alternative product infringes the patent-in-suit is not the only infringement inquiry when determining whether a product is "non-infringing" for purposes of the *Panduit* test. *See State Indus.,* 883 F.2d at 1576, 1578.  In *State Industries,* the district court found that all but

REDACTED--Public Version
Confidential and Subject to Protective Order

one of patentee's competitors sold products made using the patented method-in-suit or another patent, <u>not in-suit</u> and, therefore, there was only one non-infringing competing product, which was found to be an unacceptable substitute. *Id.* at 1576. Although the patentee was ultimately awarded lost profits based on the market share approach, the Federal Circuit stated that if the other competitors did infringe the patent-in-suit or another of the patentee's patents, the patentee would have been entitled to the competitors' share of the defendant's sales as well. *Id.* at 1578.

In this case, there remains a genuine issue of material fact as to whether Curwood's bone-in meat packaging products are non-infringing alternatives because, as in *State Industries*, Curwood's products may infringe patents other than the patent-in-suit. Contrary to Pechiney's representations, Cryovac does not admit that Curwood's bone-in products are non-infringing. [D.I. 194 at pp. 6-7.]

**Redacted**                                                    Thus, a genuine

issue of material fact remains as to whether or not Curwood's bone-in packaging products are non-infringing if they are found to be acceptable substitutes, which Cryovac does not concede that they are.

> **3.     A genuine issue of material fact remains as to whether Curwood's competing products are available**

A device must also be available for purchase to be an acceptable non-infringing alternative to the patented device for the purposes of avoiding a lost profits award. *See Zygo Corp.*, 79 F.3d at 1571. In this case, in the event Curwood's bone-in packaging products are determined to be non-infringing and acceptable, a genuine issue of material fact still remains as to whether Curwood's products are available.

**Redacted**

REDACTED--Public Version
Confidential and Subject to Protective Order

Redacted

4.     **The acceptable non-infringing alternative element should have limited influence because Pechiney ignored the alleged substitute in electing to sell an infringing product**

In *Panduit*, the Federal Circuit noted that the acceptable non-infringing substitute element "must be viewed of limited influence where the infringer knowingly made and sold the patented product for years while ignoring the substitute." *Panduit*, 575 F.2d at 1162, n.9. In this case, Pechiney also knowingly made and sold its ClearShield® product for years[5] while ignoring the alleged Curwood substitute, which was available for sale prior to Pechiney's entry into the market. Pechiney's failure to design a non-infringing product, despite the alleged availability of another product characterized by Pechiney as "non-infringing" and "acceptable" diminishes the influence of Pechiney's allegations when considering the factual issue of whether acceptable non-infringing alternatives exist.

---

[5] On October 12, 2005, in its Second Amended Complaint for Patent Infringement, Cryovac added a claim of willful infringement against Pechiney. No motion for summary judgment has been filed by Pechiney as to its willful conduct, making this a potential jury issue.

Confidential and Subject to Protective Order

**C.    Even If the Fact-Finder Found Curwood's Bone-in Packaging
Products Were Acceptable Non-Infringing Alternatives, Cryovac
Would Still Be Entitled to Lost Profits For Its Proportion
of the Hypothetical "But For" Distribution of Infringing Sales**

Under the alternative approach to lost profits set forth in *State Industries*, the patentee is

entitled to lost profits whether acceptable non-infringing substitutes exist or not. 883 F.2d at

1577-78. In *State Industries*, the Federal Circuit affirmed the determination of a hypothetical

"but for" distribution of sales among multiple competitors based on the elimination of the

infringing sales and the award of lost profits to patentee of patentee's determined fraction of

those infringing sales. *Id.*

Therefore, regardless of whether Curwood's bone-in packaging products are acceptable

non-infringing substitutes as Pechiney alleges, Cryovac is still entitled to lost profits.


Redacted


. Thus,

even if the fact-finder determines that acceptable non-infringing alternatives exist, Cryovac

would still be entitled to lost profits for this portion of Pechiney's infringing sales.

**D.    Even If the Fact-Finder Found Curwood's Bone-In Packaging Products
Were Acceptable Non-Infringing Alternatives, Cryovac Would Still Be
Entitled to Lost Profits For the Sales It Would Have Made**

Redacted

The broad language of 35 U.S.C. § 284 "imposes no limitation on the types of harm

resulting from infringement that the statute will redress" and "awards damages for any injury as

long as it resulted from the infringement." *King Instruments Corp.*, 65 F.3d at 947. Therefore,

in the present case, Cryovac is entitled to lost profits for the sales it would have made

Redacted

Confidential and Subject to Protective Order REDACTED--Public Version

Redacted

*See State Indus., Inc.*, 883
F.2d at 1578; *Rite-Hite Corp.*, 56 F.3d at 1548 ("Generally, the *Panduit* test has been applied
when a patentee is seeking lost profits for a device covered by the patent in suit. However,
*Panduit* is not the *sine qua non* for proving "but for" causation.  If there are other ways to show
that the infringement in fact caused the patentee's lost profits, there is no reason why another test
should not be acceptable.  Moreover, other fact situations may require different means of
evaluation, and failure to meet the *Panduit* test does not *ipso facto* disqualify a loss from being
compensable.").

Redacted

REDACTED--Public Version

Confidential and Subject to Protective Order

**Redacted**

For

this additional reason, Pechiney's Motion should be denied.

Confidential and Subject to Protective Order REDACTED--Public Version

## V.    CONCLUSION

Because genuine issues of material fact remain as to whether lost profits should be awarded to Cryovac under the *Panduit* test and alternative bases for the award of lost profits to Cryovac exist, the Court should deny Pechiney's Motion for Partial Summary Judgment of Lost Profits.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Martin I. Fuchs
Courtney B. Meeker
Mark J. Feldstein
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C. 20001-4413
(202) 408-4000

Attorneys for Plaintiff Cryovac, Inc.

Dated: November 18, 2005

REDACTED--Public Version

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on November 18, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following non-registered participants in the manner indicated.

**BY FEDERAL EXPRESS**

> Steven R. Trybus, Esquire
> Jenner & Block LLP
> One IBM Plaza
> Chicago, IL 60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Michele Sherretta*
_____
John W. Shaw (No. 3362)
Michele Sherretta (No. 4651)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
msherretta@ycst.com

Attorneys for Plaintiff Cryovac, Inc.

Redacted Version Filed 11/29/05

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on November 29, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

N. Richard Powers, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE 19899


YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Michele Sherretta*

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta (No. 4651)
msherretta@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600


Attorneys for Plaintiff Cryovac, Inc.