IN THE UNITED STATES DISTRICT COURT     REDACTED

FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                            )
                                         )
    Plaintiff/Counter-Defendant,       )
                                         )
    v.                                 )     C.A. No.:  04-1278 (KAJ)
                                         )
PECHINEY PLASTIC PACKAGING, INC.,        )     **CONFIDENTIAL –**
                                         )     **FILED UNDER SEAL**
    Defendant/Counter-Plaintiff.       )


## PLAINTIFF CRYOVAC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO EXCLUDE EXPERT TESTIMONY PURSUANT TO PRINCIPLES ANNOUNCED IN DAUBERT

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
   TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
Attorneys for Plaintiff Cryovac, Inc.

Of Counsel:

Ford F. Farabow, Jr.
Joann M. Neth
Martin I. Fuchs
Courtney B. Meeker
Mark J. Feldstein
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, NW
Washington, D.C.  20001-4413
(202) 408-4000

Dated:  December 5, 2005

## TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    ARGUMENT........................................................................................................2

    A.     Dr. Mount's Opinion     REDACTED
                       Is Not Derived by the Scientific Method ......................2

    B.     Dr. Mount's Opinion Is Inadmissible Because It Is Based on a Type of
         Information Not Reasonably Relied Upon by Experts in His Field .......................5

    C.     Dr. Mount's Opinion Is Not Objectively Verifiable................................................7

    D.     Dr. Mount's Opinion Will Not Assist the Trier of Fact...........................................8

    E.     Dr. Mount's Opinion Will Unfairly Prejudice Cryovac and Confuse the
         Jury..........................................................................................................................8

    F.     Dr. Mount's Opinions     REDACTED     are Not
         Admissible ...............................................................................................................9

    G.     Mr. Evans' Legal Opinions Are Improper and Should Be Excluded ....................11

    H.     Mr. Evans' Opinions     REDACTED     Are
         Outside His Area of Expertise and Should be Excluded ........................................12

    I.     Pechiney's                          Argument Concedes the  Bases of
         Cryovac's Motion to Exclude this Testimony ......................................................15

         1.     Pechiney Does Not Dispute that Mr. Evans Has No Qualifications
                   REDACTED                    .............................................15

         2.     Pechiney Does Not Dispute that Expert Witnesses Are Not
              Permitted to Opine     REDACTED
                 ..............................................................................15

         3.     Pechiney Does Not Dispute that Mr. Evans' Testimony  Does Not
              Rely on Any Recognized Methodology....................................................19

III.   CONCLUSION...................................................................................................20

DB01:1927100.1                                                         063527.1001

# TABLE OF AUTHORITIES

## Cases

*Advanced Med. Optics, Inc. v. Alcon Inc.*,
   2005 U.S. Dist. LEXIS 5803, *26-27 (D. Del. Apr. 7, 2005) ................................................. 15

*Allen v. IBM Corp.*,
   No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016, at *133 (D. Del. May 19, 1997) ................... 9

*Chemipal Ltd. v. Slim-Fast Nutritional Foods International, Inc.*,
   350 F. Supp. 2d 582 (D. Del. 2004) ........................................................................................ 7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579, 591-92 (1993) ......................................................................................... passim

*DSU Medical Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ................................................................................ 14

*Finnigan Corp. v. ITC*,
   180 F.3d 1354 (Fed. Cir. 1999) .............................................................................................. 6

*Grain Processing Corp. v. Am. Maize-Prods. Co.*,
   185 F.3d 1341, 1353 (Fed. Cir. 1999) .................................................................................. 14

*In re Paoli Railroad Yard PCB Litig.*,
   35 F.3d 717, 762 (3d Cir. 1994) ............................................................................................. 7

*In re TMI Litigation*,
   193 F.3d 613, 697-98 (3d Cir. 1999) ...................................................................................... 6

*Loeffel Steel Prods, Inc. v. Delta Brands, Inc.*,
   No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718, *31, *33, *38 (N.D. Ill. July 22, 2005) ... 13, 14

*Media Sport & Arts v. Kinney Shoe Corp.*,
   No. 95 Civ. 3901 (PKL), 1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct. 19, 1999) ............... 19

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043, 1051 (Fed. Cir. 2001) .................................................................................. 12

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
   No. 02-148-GMS, 2004 U.S. Dist. LEXIS 18638, *33-34 (D. Del. Sept. 15, 2004) ............. 2, 3

*Price v. Symsek*,
   988 F.2d 1187, 1195 (Fed. Cir. 1993) ................................................................................... 5

DB01:1927100.1

063527.1001

*Revlon Consumer Prods. Corp. v. L'Oreal S.A.,*
   No. 96-192 MMS, 1997 U.S. Dist. LEXIS 4117 at *10
   (D. Del. Mar. 26, 1997) ................................................................................................ 11

*Sandt Technology, Ltd. v. Resco Metal and Plastics Corp.,*
   264 F.3d 1344, 1351 (Fed. Cir. 2001) ....................................................................... 6

*State Industries, Inc. v. Mor-Flo Industries, Inc.,*
   883 F.2d 1573, 1577-78 (Fed. Cir. 1989) ............................................................... 12

*Surace v. Caterpillar, Inc.,*
   111 F.3d 1039, 1055-56 (3d Cir. 1997) ............................................................. 14, 15

*Texas Digital Systems, Inc. v. Telegenix, Inc.,*
   308 F.3d 1193 (Fed. Cir. 2002) ................................................................................ 9

*TWM Mfg. Co., v. Dura Corp.,*
   789 F.2d 895, 901 (Fed. Cir. 1986) ................................................................... 10, 14

*Washburn & Moen Mgf. Co. v. Beat 'Em All Barbed-Wire Co.,*
   143 U.S. 275 (1892)................................................................................................... 6

## Other Authorities

*Fed. R. Evid. 701 Advisory Committee Note to 2001 Amendments* ............................................. 13

## Rules

Fed. R. Civ. Pro. 26(a)(2)(B) ................................................................................................ 10

Fed. R. Evid. 403 .................................................................................................................... 1

Fed. R. Evid. 701 .................................................................................................................. 13

Fed. R. Evid. 702 ..................................................................................................... 1, 7, 13, 20

Fed. R. Evid. 703 ............................................................................................................... 1, 5

063527.1001

## I.     INTRODUCTION

In its Answering Brief Opposing Cryovac's Motion to Exclude Expert Testimony [D.I. 252], Pechiney argues that Cryovac's motion [D.I. 200] goes to the weight of the expert testimony and not its admissibility.  To the contrary, Cryovac's motion is directed squarely at the admissibility of this expert testimony.

Specifically, Dr. Mount's opinion that

REDACTED

Thus, Dr. Mount's opinion was not derived by the scientific method, is not objectively verifiable, and should be excluded under Fed. R. Evid. 702. Moreover, because     REDACTED     are not reasonably relied upon by an expert in the field of polymer science or packaging film technology, this opinion should be excluded under Fed. R. Evid. 703.  Furthermore, because this opinion was untimely, thereby unfairly prejudicing Cryovac, and because it may potentially cause jury confusion, it should be excluded under Fed. R. Evid. 403 as well.

As for Dr. Mount's opinion     REDACTED     under Fed. R. Evid. 702.

With regard to Mr. Evans' opinion that     REDACTED     opinion by a lawyer and should not be permitted.  Nor should Mr. Evans be allowed to testify as to     REDACTED     has no education or experience in this area.  And, Mr. Evans should not be allowed to give opinions made without proper qualifications and without following any recognized methodology with respect

REDACTED

Because Cryovac's motion goes to the admissibility of the testimony, and not its weight, exclusion of the testimony under a *Daubert* motion is proper.

## II.    ARGUMENT

### A.    Dr. Mount's Opinion of  REDACTED  Is Not Derived by the Scientific Method

Dr. Mount's reliance on

REDACTED

is <u>not</u> in

accord with the scientific method. Pechiney attempts to obscure the fact that

REDACTED    [D.I.

252 at 7-11.] However, as explained in Cryovac's Opening Brief [D.I. 200 at 4-7], these references

do not provide a basis for Dr. Mount's opinion that

REDACTED

Pechiney argues that Cryovac does not contest that    REDACTED

scientific methods and procedures. [D.I. 252 at 7.] But

REDACTED

These circumstances are in fact akin to

those in *Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, No. 02-148-GMS, 2004 U.S. Dist. LEXIS

18638, *33-34 (D. Del. Sept. 15, 2004), where plaintiff's expert relied on representations in

defendant's marketing materials rather than analyzing cord blood samples herself, and the court held

that her opinions were based on "legally improper methodology that was unreliable as a matter of

law under *Daubert*." The present case is no different.

REDACTED

063527.1001

[D.I. 252 at 8.] Thus, Dr. Mount's reliance on another's mere recollection is as lacking in supporting data in accord with the scientific method as the expert's reliance on marketing materials for technical information in *Pharmastem*.

Pechiney argues that Dr. Mount's expert opinion that REDACTED , citing the Journal of Commerce article, the Allied News Release, and the Journal of Food Science article. [D.I. 252 at 6-11.] The 1983 Journal of Commerce article, however, is a newspaper article and not a peer-reviewed scientific article. [Exhibit ("Ex.") 10.[1]] Moreover, REDACTED The undated Allied News Release was not peer-reviewed, REDACTED [Ex. 11.] And the 1987 Journal of Food Science Article, published too late to qualify as prior art, REDACTED [Pech. Unified App. Ex. 19 (D.I. 216).] Rather, it too REDACTED `"[3] [*Id*. at PPPI 008454.]

---

[1]    References to "Ex. 1-17" refer to exhibits attached to Cryovac's Opening Brief. Exhibits 18-21 are submitted herewith.

[2]    At paragraph 16 of his Declaration, Mr. Gilbert reports that REDACTED

[Ex. 8.] This is inconsistent with the Allied News Release, which reports that REDACTED

[Ex. 11 at PPPI 008498.] A newly produced Allied document [Ex. 18 at PPPI 014281] also suggests REDACTED . Additionally, the Allied News Release does not indicate that REDACTED " [*See* Ex. 11 at PPPI 008495 in the Table 1 film key; *see also* Affidavit of Garth L. Wilkes, D.I. 242 at ¶ 19.]

[3]    There are also inconsistencies between the Journal of Food Science article and the Allied News Release, such that it appears the articles are referring to different studies of different
(continued on next page)

REDACTED

produced by Pechiney just one week ago, on November 28, 2005. [Ex. 18.]

" [*Id*. at PPPI 014283, PPPI 014289.] In

light of this evidence, it is clear that the word "oriented" in the Allied New Release description of

film F referred to film F in its entirety and did not      REDACTED

D.I. 252 at 9; Pech. Decl. 7 at ¶¶ 34-36 (D.I. 257).]

This newly-produced confidential Allied Corporation document also includes the hand-

written notation that        REDACTED

" [Ex. 18 at PPPI

014284; *see also id.* at PPPI 014283 and PPPI 014289.]        REDACTED

. [Ex. 11 at PPPI 008498.]   Rather, only film F is

indicated as being oriented therein. [*Id.*]

[Ex. 18 at PPPI 014288-89       REDACTED

and compels the conclusion that only film F, and not film C, was oriented.

REDACTED

Furthermore, Pechiney's new argument that the permeation rates reported for film C in the

Allied News Release are consistent with that of an "oriented multilayer film exhibiting high barrier

---

(continued from previous page)
    films. In the Journal of Food Science article, film C is a seven layer structure [Pech. Unified
    App. Ex. 19 at PPPI 008454 (D.I. 216)]; whereas, in the Allied News Release, film C is a
    nine layer structure [Ex. 11 at PPPI 008498]. Additionally, the Allied News Release reports
    structures and data for two films not disclosed in the Journal of Food Science article, and the
    labeling of film structures do not correspond either. [Pech. Unified App. Ex. 19 at PPPI
    008454 (D.I. 216); Ex. 11 at PPPI 008498.]

- 4 -

properties" [D.I. 252 at 11]                REDACTED

the data reported for the other films. First, film D, which is <u>not</u> described as oriented, was given the

highest rating for barrier properties. [*See* Ex. 18 at PPPI 014288-89, PPPI 014295.] Second, film C

had a higher (*i.e.*, worse) methyl ethyl ketone permeability (0.9) than <u>unoriented</u> film B (0.65) or

<u>oriented</u> film F (<0.1), even though film C had more layers and was thicker than both films B and F.

[*Id.* at PPPI 014292, PPPI 014280-81.]    Thus, in this case, better barrier properties were not

indicative of orientation.

### B.    Dr. Mount's Opinion Is Inadmissible Because It Is Based on a Type of Information Not Reasonably Relied Upon by Experts in His Field

Although Rule 703 permits experts to rely on hearsay evidence if it is of the type

reasonably relied upon in their particular field in forming opinions,    REDACTED

is not the type of data reasonably relied upon by experts in Dr. Mount's field. [*See* D.I. 242 at ¶ 4

("[U]ndocumented recollections from more than 20 years ago[] are not a type of material reasonably

relied upon by an expert in the field of polymer science or packaging film technology to understand

or make conclusions concerning film compositions, structures, or properties.").] Pechiney advocates

a "rule of reason" analysis to establish that Mr. Gilbert's declaration is corroborated. [D.I. 252 at

12.] Even considering "all pertinent evidence," as discussed in Cryovac's Opening Brief and above,

the only evidence affirmatively addressing the question of orientation contradicts

REDACTED            [4] Furthermore, unlike the circumstances in *Sandt Technology,*

---

[4]    *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993), cited by Pechiney for the proposition that the evidence, "when viewed as a whole, is more than sufficient to corroborate Dr. Gilbert's declaration" is not helpful. [D.I. 252 at 12.] In *Price*, an employee offered an affidavit corroborating the date a document was prepared. The court noted that this was "[u]nlike a situation where an inventor is proffering oral testimony attempting to remember specifically what was conceived and when it was conceived, a situation where, over time, honest witnesses can convince themselves that they conceived the invention . . . ." *Id.* at (continued on next page)

*Ltd. v. Resco Metal and Plastics Corp.,* 264 F.3d 1344, 1351 (Fed. Cir. 2001), cited by Pechiney [D.I. 252 at 13], there are no corroborating physical records made contemporaneously with the invention that address the question of orientation. Rather, as pointed out by Pechiney, not "a shred of evidence" of the films is available. [D.I. 252 at 8.]

Pechiney's argument that it is reasonable for an expert to rely on Mr. Gilbert's declaration because Mr. Gilbert is not a party to the case and his studies were performed long ago is contrary to well-established Supreme Court and Federal Circuit case law. [D.I. 252 at 14.] Such testimonial evidence is "unsatisfactory" due to "the forgetfulness of witnesses, their liability to [make] mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury. . . ." *Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892). This is true "regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation . . . or is uninterested but testifying on behalf of an interested party." *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1367 (Fed. Cir. 1999).                                    REDACTED

Finally, contrary to Pechiney's interpretation [D.I. 252 at 13, n.7], *In re TMI Litigation,* 193 F.3d 613, 697-98 (3d Cir. 1999) is applicable to the present circumstances. In that case, the expert relied on summaries of health history information prepared by individuals aligned with plaintiffs' counsel. Likewise, in this case, Dr. Mount is relying on recollections of Mr. Gilbert, an individual

---

(continued from previous page)

1195. Furthermore, the court stated that the delay between the event and trial is a factor bearing on whether the inventor's testimony has been adequately corroborated. *Id.* at 1195, n.3. Thus, contrary to Pechiney's assertions [D.I. 252 at 12], the passage of almost twenty years since the studies were performed          REDACTED

aligned with Pechiney's counsel, rather than the actual data or technical records themselves. Thus, "[c]ommon sense alone suggests that such evidence is 'based on an unreliable source of information.'" *Id.* at 698 (internal citation omitted); *see also In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994).

### C.     Dr. Mount's Opinion Is Not Objectively Verifiable

Dr. Mount's opinions based upon Mr. Gilbert's declaration are not objectively verifiable because there is no evidence supporting Mr. Gilbert's recollection. Pechiney admits that not "a shred of evidence" from the films exists. [D.I. 252 at 8.]

REDACTED

Pechiney alleges that Dr. Mount's conclusion that

REDACTED

' [D.I. 252 at 15.]

. [Ex. 8 at ¶¶ 16-17.] Thus, Dr. Mount's, or anyone else's, ability to understand the tests is irrelevant. These circumstances are therefore similar to those in *Chemipal Ltd. v. Slim-Fast Nutritional Foods International, Inc.*, 350 F. Supp. 2d 582 (D. Del. 2004), where the court excluded expert testimony as "not objectively verifiable" because the expert relied upon growth figures whose accuracy he did not verify and did not demonstrate how he translated this information to a growth rate for the product at issue. *Id.* at 594. Likewise, here, Dr. Mount is relying on Mr. Gilbert's recollections, which cannot be verified.

**D.    Dr. Mount's Opinion Will Not Assist the Trier of Fact**

Despite attempts in its Answering Brief to sidestep the definition it has set forth for the term "oriented" [D.I. 252 at 15-16], Pechiney itself defined "oriented" by reference to the process by which the film is made – *e.g.,* as "A polymeric material which has been heated and stretched to realign the molecular configuration." [D.I. 200 at 6, n.3 (emphasis added).] Pechiney's claim that the process is irrelevant is thus belied by their own claim construction. Moreover, it remains evident from Mr. Gilbert's declaration that

REDACTED

Thus, there is no evidence as to how the films reported in the Allied News Release were made, let alone if they were oriented within the meaning of claim 11 of the '419 patent.

**E.    Dr. Mount's Opinion Will Unfairly Prejudice Cryovac and Confuse the Jury**

In its attempt to rebut Cryovac's assertion that Cryovac would be unfairly prejudiced by allowing Dr. Mount to rely on Mr. Gilbert's declaration, Pechiney glosses over the fact that Mr. Gilbert's declaration and Dr. Mount's report were untimely. [*See* D.I. 252 at 17-19.] Mr. Gilbert's declaration was produced the same day discovery closed, and Dr. Mount's report was submitted almost a month after the close of discovery and almost five months after the May 19, 2005, deadline for submission of Pechiney's expert reports on invalidity – despite the fact that Pechiney had Mr. Gilbert on its payroll as a consulting expert. That the court permitted additional discovery on the contract issue to resolve a discovery dispute, does not excuse Pechiney's late disclosure of Dr. Mount's report.

Additionally, it would be confusing to the jury to permit Dr. Mount to testify as to Mr. Gilbert's uncorroborated testimony because Mr. Gilbert's testimony is insufficient as a matter of

law  REDACTED In *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), the Federal Circuit affirmed the exclusion of uncorroborated testimonial evidence offered to establish invalidity of a patent because it was "unreliable and potentially confusing to the jury . . . ." *Id.* at 1218. In this case, Mr. Gilbert's testimony is not corroborated as explained above. Consequently, it would also be confusing to the jury to allow Dr. Mount to rely on Mr. Gilbert's testimony. It may even convey an unwarranted sense that Dr. Mount is corroborating Mr. Gilbert's testimony. To avoid such confusion, both Mr. Gilbert's declaration and Dr. Mount's opinions thereon should be excluded.

F.    **Dr. Mount's Opinions**  REDACTED  **are Not Admissible**

Contrary to Pechiney's representation [D.I. 252 at 20], Dr. Mount's report does not contain

REDACTED    In the report's one and a half page discussion of   REDACTED

[Ex. 2 at 31-32.]

REDACTED    [Ex. 12 at 280-285, 300-312.] Rather, Dr. Mount's opinions are improperly based on   REDACTED   . [Ex. 2 at 31-32.] *See Allen v. IBM Corp.*, No. 94-264-LON, 1997 U.S. Dist. LEXIS 8016, at *133 (D. Del. May 19, 1997) ("[I]t is well recognized that an expert opinion must be based on facts, rather than premised on unsupported assumptions and speculation . . . .").

Pechiney attempts to cure this deficiency with over four pages of attorney argument about

REDACTED    However, Pechiney cannot put words into Dr. Mount's mouth, and Dr. Mount's opinions remain unsupported and, therefore, unreliable. Dr. Mount's opinion that   REDACTED

- 9 -

REDACTED

[5] The two documents cited in Cryovac's Opening Brief [*see* D.I. 200 at 7-8] are the only evidence identified by Dr. Mount as supporting his opinions.[6] Pechiney's argument that these documents only relate to one of the possible alternatives only underscores the fact that Dr. Mount has not offered any supporting evidence, even faulty evidence,

REDACTED

Pechiney proceeds to discuss Cryovac films and documents that allegedly support Dr. Mount's opinions. [D.I. 252 at 21-24.]

REDACTED

Fed. R. Civ. Pro. 26(a)(2)(B) (the "written report" must contain "a complete statement of all opinions to be expressed and the basis and reasons therefor").

REDACTED

,[7] Pechiney's

---

5       Contrary to Pechiney's allegation [D.I. 252 at 20], Cryovac does not concede that REDACTED The testimony cited by Pechiney only addresses whether particular hypothetical films are non-infringing. Notably, Cryovac's experts REDACTED [*See e.g.*, Pech. Depo. Ex. 220 at 167:21 to 168:20 (D.I. 254); Ex. 21 at 161:13 to 163:17.]

6       REDACTED

        *See TWM Mfg. Co., v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) (holding that the special master's determination that the alleged substitutes did not have all the beneficial characteristics of the patented device supported the determination that there were no acceptable alternatives).

7       For example, neither Pechiney nor Dr. Mount have demonstrated that Cryovac's LID 1050S is available as an non-infringing alternative, and the evidence indicates that it is not available. [Ex. 19 at 155:22 to 156:6 REDACTED .] Moreover, LID 1050S was sold as a lid film and not as a film to be used for bone-in meat

(continued on next page)

- 10 -

lawyers' discussion of these documents and films independent of Dr. Mount's expert reports is wholly irrelevant to whether Dr. Mount's expert opinions are supported.

### G.    Mr. Evans' Legal Opinions Are Improper and Should Be Excluded

Contrary to Pechiney's representation that Mr. Evans only cites to case law to

REDACTED                          [D.I. 252 at 32], Mr. Evans repeatedly and

improperly    REDACTED    -    Indeed, Pechiney's own statements in its Answering

Brief prove Cryovac's argument.   For example, Pechiney admits that

REDACTED

. . ." [D.I. 252 at 24,

33.] These are legal opinions that impermissibly usurp the role of the court.  *See Revlon Consumer*

*Prods. Corp. v. L'Oreal S.A.*, No. 96-192 MMS, 1997 U.S. Dist. LEXIS 4117 at *10 (D. Del. Mar.

26, 1997) (prohibiting expert witness from testifying "as to substantive issues of patent law . . . .")

Not only does Mr. Evans    _    REDACTED

This is one of the very reasons such legal opinions are prohibited.  *See id.* at *9, n.3 ("The

Federal Circuit recently noted one of the hazards of permitting expert testimony on patent law: . . .

'We encourage exercise of the trial court's gatekeeper authority when parties proffer, through

purported experts . . . markedly incorrect law.'").   As detailed in Cryovac's Answering Brief

Opposing Pechiney's Motion for Partial Summary Judgment of Lost Profits [D.I. 244], even if

REDACTED

---

(continued from previous page)
packaging.  ClearShield, on the other hand, is used for bone-in meat packaging.  There is no evidence in the record that LID 1050S would be suitable for bone-in meat packaging even if it were available.

entitled to lost profits (1) under the alternative approach to lost profits set forth in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989), (2) in view of its contracts with National Beef Packing, LLC ("National Beef"), and (3) based on Cryovac's longstanding and exclusive supply relationship for bone-in packaging with National Beef and Packerland Packaging. Mr. Evans' legal opinion that ι            REDACTED

**H.    Mr. Evans' Opinions on     REDACTED**
**Are Outside His Area of Expertise and Should be Excluded**

Cryovac does not seek to reverse the burden of establishing that Cryovac is entitled to lost profits by moving to exclude Mr. Evans' unsupported damages opinions. Rather, Cryovac merely seeks to hold Pechiney and Mr. Evans to the fundamental principle that the record support an expert's opinion, including his factual assumptions. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1051 (Fed. Cir. 2001) ("[W]here an expert's opinion is predicated on factual assumptions, those assumptions must also find some support in the record."). In this case, Mr. Evans'    REDACTED    are not supported by the record and should be excluded.

As set forth in Cryovac's Opening Brief [D.I. 200 at 22-25] and above [§§ II.A-F., *supra*], Pechiney has not set forth any factual evidence    REDACTED

REDACTED    and Mr. Evans is not qualified to opine on this technical matter. While it would be appropriate for Mr. Evans to rely on admissible evidence from a technical expert    REDACTED    [*see* D.I. 252 at 29], Dr. Mount's opinions on this point are inadmissible for the reasons set forth in Cryovac's Opening Brief and herein, and therefore, Mr. Evans' opinions relying thereon are unsupported. [D.I. 200 at 16-22; §§ II.A-F., *supra*.]

Pechiney cannot cure this evidentiary deficiency by arguing that

REDACTED

[D.I. 252 at 29.]  As a preliminary matter, none of those people filed an expert report or were identified as having specialized technical knowledge under Rule 701. *See also Fed. R. Evid. 701 Advisory Committee Note to 2001 Amendments* ("Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing.").  Allowing Mr. Evans to act as the "mouthpiece" for the opinions of another witness would violate the Rules. *See Loeffel Steel Prods, Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2005 U.S. Dist. LEXIS 15718, *31, *33, *38 (N.D. Ill. July 22, 2005) (excluding damages expert's opinion regarding economic loss because it was unsupported assumption as it was based upon information from defendant's employees, who did not testify regarding this information).

REDACTED

In the absence of admissible opinions from Dr. Mount

REDACTED

[Ex. 14 at 39:4 to 40:7.] Nor

does Pechiney assert he has technical expertise to opine

REDACTED

- 13 -

REDACTED                              *See Loeffel Steel Prods, Inc.*, No.

01 C 9389, 2005 U.S. Dist. LEXIS 15718 at *31, *33, *38.

Pechiney relies on *DSU Medical Corp. v. JMS Co.*, 296 F. Supp. 2d 1140 (N.D. Cal. 2003),

to support its contention that Mr. Evans can opine    REDACTED

[D.I. 252 at 28.] In *DSU*, however, the expert was permitted to opine as to whether the

alternatives were actually available and not whether they were acceptable alternatives. Thus, the

expert did not try to testify to technical matters outside his area of expertise. *See id.* at 1149-50. If

the district court in *DSU* had permitted him to do so, that would be inconsistent with Supreme Court

and Third Circuit law. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993) (The

expert's opinion must "have a reliable basis in the knowledge and experience of his discipline.");

*Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055-56 (3d Cir. 1997) (affirming the exclusion of expert

testimony regarding technical subject matter in which the expert had no education or experience).

Because Mr. Evans'    REDACTED

, his opinion should be excluded.

---

8    Pechiney incorrectly asserts that    REDACTED

. [D.I. 252 at 30.]
Rather, as Cryovac explained in its Answering Brief to Pechiney's Motion for Partial
Summary Judgment of Lost Profits [D.I. 244], the market sales must be of an acceptable
non-infringing substitute to defeat a case for lost profits. *Grain Processing Corp. v. Am.
Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). Market sales are evidence of
availability of a substitute, but there must also be evidence that the non-infringing product
has the benefits of the patented product to be an acceptable non-infringing alternative. *See
TWM Mfg. Co.*, 789 F.2d at 901.

- 14 -



I.    Pechiney's REDACTED Argument Concedes the
Bases of Cryovac's Motion to Exclude this Testimony

1.    **Pechiney Does Not Dispute that Mr. Evans Has No Qualifications**
REDACTED

Pechiney does not contest that an "expert's opinion must be confined" to the expert's field of specialized knowledge or training.  Pechiney also does not contest the facts that Cryovac marshaled in its Opening Brief to demonstrate Mr. Evans has no specialized knowledge or training

REDACTED    [D.I. 252 at 29-30.]

Because he lacks the necessary specialized knowledge and training, Mr. Evans should not be permitted to testify about REDACTED

*See Surace*, 111 F.3d at 1055-56

(affirming exclusion of expert testimony of electromechanical engineer where testimony "'hinged on habituation,' an area in which [the expert] has no training and no experience," despite expert's contention that he is "'highly familiar with the concept'" through his work experience); *Advanced Med. Optics, Inc. v. Alcon Inc.*, 2005 U.S. Dist. LEXIS 5803, *26-27 (D. Del. Apr. 7, 2005) ("Dr. Olson's qualifications as a renowned ophthalmologist are not questioned, but he is not qualified to render an opinion on fluidics systems or chamber stability. . . .  Dr. Olson would be outside his area of expertise if permitted to testify in this regard.").    REDACTED

2.    **Pechiney Does Not Dispute that Expert Witnesses Are Not Permitted to Opine about**
REDACTED

Pechiney does not dispute that the law prohibits parties from offering "expert" testimony on REDACTED

[*See* D.I. 200 at 27-28.]  Pechiney also does not dispute that the

law prohibits parties from offering "expert" testimony about REDACTED

REDACTED    [*See id.*]

Pechiney, however, claims that Mr. Evans is only proposing the same type of testimony as plaintiff's damages expert, James Nawrocki. [D.I. 252 at 34-36.] This is factually wrong. Mr. Nawrocki simply assumed that REDACTED

Based on those assumptions – and without explanation as to the validity of those assumptions – Mr. Nawrocki opines as REDACTED In other words, Mr. Nawrocki limited his opinion to his area of expertise – damages.

REDACTED

[Pech. Unified App. Ex. 150 at 25-26 (D.I. 211).] In other words, just as patent damages experts commonly make the assumption, for purposes of their reasonable royalty analyses, that the patent in suit is infringed, enforceable, and not invalid, Mr. Nawrocki simply makes the assumption REDACTED

Similarly, Mr. Nawrocki made clear at his deposition that REDACTED

- 16 -

REDACTED

REDACTED

[Ex. 20 at 242-43 (emphasis added); *see also id.* at 253:18-254:14

REDACTED

REDACTED

[Ex. 3 (emphasis added).]  By this statement, Mr. Evans again assumes the role of the factfinder

and makes a conclusion about the legal effect of the facts in evidence.  This improper use of

expert testimony is precisely the same sort of testimony that was excluded in *Media Sport & Arts*

*v. Kinney Shoe Corp.*, No. 95 Civ. 3901 (PKL), 1999 U.S. Dist. LEXIS 16035 (S.D.N.Y. Oct.

19, 1999), as cited in Cryovac's Opening Brief [D.I. 200 at 28]:

> For the most part, however, Mr. Vuono's testimony does not concern practices in the sports marketing industry, on which he is qualified as an expert, but rather constitutes "legal opinions as to the meaning of the contract terms at issue." For example, his conclusions that the negotiations were not final, that the side letter was never accepted by Foot Locker, and that Foot Locker should not be found liable all impermissibly invade the province of the jury.

*Id.*, at *9-10.  In sum, Mr. Evans attempts to go much further  REDACTED [D.I. 252 at 1]

REDACTED

### 3.    Pechiney Does Not Dispute that Mr. Evans' Testimony Does Not Rely on Any Recognized Methodology.

Pechiney's Answering Brief appears to concede that course of dealing and course of

performance evidence is relevant to contract interpretation [D.I. 252 at 35], and Pechiney's brief

does not challenge the legal framework set forth in Cryovac's Opening Brief as to how a contract

should be interpreted.  Pechiney, however, never responds to Cryovac's contention that, if Mr. Evans

is

REDACTED

- 19 -

063527.1001

REDACTED                                   , Mr.

Evans' testimony should be excluded under Rule 702 for lack of basis and failure to use any

recognized methodology        ·    REDACTED

## III.    CONCLUSION

For all of the above reasons and those set forth in Cryovac's Opening Brief, the Court should

grant Cryovac's Motion to Exclude Expert Testimony Pursuant to the Principles Announced in

*Daubert.*

Of Counsel:
Ford F. Farabow
Joann M. Neth
Martin I. Fuchs
Mark J. Feldstein
Courtney B. Meeker
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Dated: December 5, 2005

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

Attorneys for Plaintiff Cryovac, Inc.

- 20 -

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on December 5, 2005, copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY HAND DELIVERY**

N. Richard Powers, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE  19899

**BY FEDERAL EXPRESS**

Steven R. Trybus, Esquire
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Michele Sherretta*

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta (No. 4651)
msherretta@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Attorneys for Plaintiff Cryovac, Inc.

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on December 12, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE  19899

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Michele Sherretta*

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta (No. 4651)
msherretta@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Attorneys for Plaintiff Cryovac, Inc.