IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

REDACTED

|  |  |  |
|---|---|---|
| CRYOVAC, INC., | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-1278-KAJ |
| PECHINEY PLASTIC PACKAGING, INC., | ) | |
| | ) | ~~CONFIDENTIAL -- FILED~~ |
| Defendant/Counter-Plaintiff. | ) | ~~UNDER SEAL~~ |
| | ) | |
| | ) | |

## PLAINTIFF CRYOVAC'S REPLY BRIEF SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT THAT PECHINEY INFRINGES CLAIM 11 OF THE SHAH '419 PATENT

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

Of Counsel:
Ford F. Farabow
Joann M. Neth
Martin I. Fuchs
Mark J. Feldstein
Courtney B. Meeker
Rebecca D. Hess
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Plaintiff, CRYOVAC, INC.

Dated: December 5, 2005

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT..........................................................................................................2

        A.      DEFINITION OF "ARRANGED SYMMETRICALLY"............................................2

                1.      "Arranged symmetrically" is not superfluous ................................2

                2.      Pechiney's criticism of Cryovac's claim construction
                        misapprehends the purpose of claim construction...........................3

                3.      Cryovac's claim construction is consistent with Federal Circuit precedent.....5

                4.      One can readily determine whether films with  more
                        than 7 layers are covered by claim 11..............................................8

        B.      CLEARSHIELD™ IS "COEXTRUDED" AS  BOTH PARTIES DEFINE
                "COEXTRUDED" ........................................................................................10

                1.      Pechiney misapprehends Cryovac's definition of "coextruded" ...................10

                2.      Cryovac has provided overwhelming evidence that ClearShield™
                        was "coextruded" under both parties' definitions of "coextruded"...............14

        C.      CRYOVAC HAS PRESENTED EVIDENCE JUSTIFYING
                SUMMARY JUDGMENT OF INFRINGEMENT BY
                CLEARSHIELD™ FILMS GENERALLY ...............................................................16

III.    CONCLUSION.....................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.,*
  346 F.3d 1082 (Fed. Cir. 2003)...................................................................................................7, 9

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.,*
  132 F.3d 701 (Fed. Cir. 1997)......................................................................................................7, 9

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,*
  214 F.3d 1302 (Fed. Cir. 2000)..................................................................................................7-8

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
  45 F.3d 1550 (Fed. Cir. 1995).........................................................................................................20

*Martin v. Barber,*
  755 F.2d 1564 (Fed. Cir. 1985).................................................................................................2, 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986).................................................................................................................10, 20

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.,*
  395 F.3d 1364 (Fed. Cir. 2005).......................................................................................................7

*Pause Tech. LLC v. TiVo Inc.,*
  419 F.3d 1326 (Fed. Cir. 2005).......................................................................................................7

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005)...................................................................................................5, 9

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
  400 F.3d 901 (Fed. Cir. 2005).........................................................................................................9

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
  378 F.3d 1396 (Fed. Cir. 2004).......................................................................................................7

*Senmed, Inc. v. Richard-Allan Medical Indus., Inc.,*
  888 F.2d 815 (Fed. Cir. 1989).....................................................................................................7, 9

*Sulzer Textil A.G. v. Picanol N.V.,*
  358 F.3d 1356 (Fed. Cir. 2004).......................................................................................................3

*Vitronics Corp. v. Conceptronic, Inc.,*
  90 F.3d 1576 (Fed. Cir. 1996).....................................................................................................6, 9

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.,*
  200 F.3d 795 (Fed. Cir. 1999)...............................................................................................3, 4, 8

Rules

Fed. R. Civ. P. 56(e)....................................................................................................................20

## I.    INTRODUCTION

Cryovac files this Reply Brief in response to Pechiney's Memorandum in Opposition to Cryovac's Motion for Summary Judgment of Infringement ("Pechiney's Opposition") (D.I. 239). Pechiney's Opposition did not raise any genuine issues of material fact that would prevent granting Cryovac's summary judgment motion on infringement (D.I. 201, 202), which set forth overwhelming, undisputed evidence that what is sold as "ClearShield" infringes Cryovac's U.S. Patent No. 4,755,419 ("the '419 patent").

Pechiney does not dispute (and therefore raises no genuine issues of fact) that under either party's claim construction its ClearShield™ product is a plastic film having at least seven layers, "comprising" (a) "a core layer comprising an ethylene vinyl alcohol copolymer," (b) "two intermediate layers each comprising a polyamide," (c) "two outer layers each comprising a polymeric material or blend of polymeric materials," and (d) "two layers, each comprising an adhesive polymeric material which adhere each of said intermediate layers to a respective outer layer," where those layers are arranged c/d/b/a/b/d/c and the film is "oriented" as orientation is defined in the '419 patent. (C.S.J. Ex. 7,[1] Pechiney's Supp. Admission Response nos. 13, 3, 4.) When the intended and correct meaning of Cryovac's definition of "a coextruded film" is applied, as set forth and explained in Cryovac's Initial Brief on Claim Construction (D.I. 203), then Pechiney also cannot deny that ClearShield™ is "a coextruded film" under both parties' definitions of that term. (*Id.*; Pechiney's Responsive Memorandum on Claim Construction, D.I. 240, p. 27.) Pechiney also does not deny that ClearShield™ has "at least seven layers arranged symmetrically" under Cryovac's definition of that term. Rather, Pechiney only denies it contains layers "arranged symmetrically" under Pechiney's legally untenable definition of that term,

---

[1] In this reply brief, citations to "C.S.J. Ex. __" refer to the exhibits attached to Cryovac's summary judgment brief on infringement (D.I. 202, "Cryovac's Opening Brief in Support of its Motion for Summary Judgment That Pechiney Infringes Claim 11 of the Shah '419 Patent"). Citations to "Ex. __" refer to exhibits attached to this reply brief.

which attempts to insert additional limitations and conflicts with the intrinsic record for the '419 patent. (*Id.*)

## II.    ARGUMENT

### A.    DEFINITION OF "ARRANGED SYMMETRICALLY"

In its Opposition, Pechiney does not argue that ClearShield™ avoids infringement under Cryovac's construction of the limitation "at least seven layers arranged symmetrically." Rather, Pechiney only disagrees with Cryovac's construction of that term, arguing that (1) it renders the term "superfluous," and (2) it makes it unclear whether films with more than seven layers are included in the claim. (P. Opposition, pp. 8-13.) Both reasons are unfounded. Because the intrinsic record mandates Cryovac's construction of "at least seven layers arranged symmetrically," and because Pechiney does not raise any genuine issues of material fact regarding ClearShield's actual structure, summary judgment on infringement should be granted. *See Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985) ("A dispute as to the legal issue of claim construction does not preclude summary judgment" on infringement).

### 1.    "Arranged symmetrically" is not superfluous

Pechiney argues that Cryovac's construction renders the "arranged symmetrically" limitation meaningless because, it argues, claim 11 subparagraphs (a) - (d) alone "compel" the conclusion that the film layers always be in the order c/d/b/a/b/d/c. (P. Opposition, p. 10.) This argument is meritless and focuses only on seven-layer films while completely ignoring that the claim term covers films with "at least seven layers arranged symmetrically." As explained in Cryovac's Responsive Brief on Claim Construction, Pechiney overlooks, among other things, the situation of eight-layer films. (D.I. 248, p. 31.) Such films are excluded from claim 11 by the "at least seven layers arranged symmetrically" phrase, but would not necessarily be excluded by subparagraphs (a) - (d). For example, without the "arranged symmetrically" limitation, claim 11 would permit an additional layer (e) to be included between the EVOH (a) layer and one of the

intermediate polyamide-containing (b) layers, e.g., c/d/b/e/a/b/d/c. Due to the presence and location of the single (e) layer, however, there would not be an equal number of layers arranged in the same order on either side of the EVOH layer. Thus, eight-layer films such as this would meet subparagraphs (a) through (d), but not the limitation "at least seven layers arranged symmetrically." To fall within claim 11, no matter how many additional layers are added adjacent to both sides of the EVOH layer, the film must still have all of the "at least seven layers arranged symmetrically." Therefore, "at least seven layers arranged symmetrically" is not a superfluous claim term.[2]

### 2. Pechiney's criticism of Cryovac's claim construction misapprehends the purpose of claim construction

Pechiney criticizes Cryovac's claim construction of "at least seven layers arranged symmetrically" for not providing the ability to determine whether films having more than seven layers meet claim 11. (P. Opposition, p. 11.) This criticism misapprehends the purpose of the court's claim construction. Moreover, the criticism is irrelevant to the determination on summary judgment that Pechiney's ClearShield™ has "at least seven layers arranged symmetrically" and that it has infringed claim 11 of the '419 patent.

The purpose of the court's claim construction is to instruct the jury sufficient to decide the issues presented. See Sulzer Textil A.G. v. Picano N.V., 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("[T]he district court must instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'") Moreover, "only those terms need be construed that are in controversy, **and only to the extent necessary to resolve the controversy.**" *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (emphasis added).

---

[2] Pechiney states, "Cryovac cannot now argue that this added limitation ['arranged symmetrically'] does not mean anything." (P. Opposition, p. 10.) Indeed, Cryovac is not arguing that the phrase is meaningless.

063527.1001

Here, although the jury could readily do so, it will not need to determine whether films having *more than* seven layers meet claim 11. Pechiney has admitted that ClearShield™ is a seven- layer film. (C.S.J. Ex. 7, no. 13.) In addition, Cryovac has already admitted that if you create a nine-layer film by adding tie layers between each of the nylon layers and the EVOH layer in ClearShield™, the resulting film would satisfy the "at least seven layers arranged symmetrically" limitation. (Ex. 12, Cryovac's Response to Pechiney's Request for Admission No. 25.) Cryovac also did not dispute that the unoriented nine-layer film designated as Film C in the Allied News Release, which adds tie layers between each of the nylon layers and the EVOH layer satisfies the "at least seven layers arranged symmetrically" limitation. (D.I. 241, pp. 24-28.) Thus, there are no controversies for the jury to resolve with respect to the application of the "at least seven layers arranged symmetrically" limitation to films having more than seven layers. Because the jury does not need to resolve any controversy concerning the application of this claim limitation to any films having more than seven layers, there is no reason why the Court's claim construction for this limitation should specifically address such films. *Vivid*, 200 F.3d at 803.[3]

In any event, there is no dispute that ClearShield™ is a seven-layer film. (C.S.J. Ex. 7, no. 13.) Accordingly, whether or not films having more than seven layers read on claim 11 is irrelevant to the disposition of the present motion, which concerns whether ClearShield™, a seven-layer film, infringes claim 11.

---

[3] If the Court decides that the claim construction for "at least seven layers arranged symmetrically" needs to further address films having more than seven layers, Cryovac suggests that the Court add the following sentence to Cryovac's claim construction:

> If the film has more than seven layers, then the additional layers must also be arranged in pairs in the same order on each of the opposite sides of the core layer.

This construction is consistent with the patentee's distinction of the Sheptak eight-layer film during the '419 patent's prosecution history. (D.I. 243, Exhibit DD at CR056-000155.)

### 3.   Cryovac's claim construction is consistent with Federal Circuit precedent

Cryovac's claim construction is consistent with Federal Circuit precedent, whereas Pechiney's is not. As the Federal Circuit reiterated in its recent *en banc* decision in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005), the patent specification "is the single best guide to the meaning of a disputed term." In that regard, the Federal Circuit noted that "it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so. . . . One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Id.* at 1323 (citation omitted).

This is what the '419 patent specification is doing when it teaches a person of ordinary skill in the art how to make the invention by instructing, among other things, that the outer layers of the film can vary in thickness:

> outer layers 16 and 18 preferably **each comprise** from about 20% to 40% and more preferably from about 25% to about 35% of the total thickness of the multilayer film.

(C.S.J. Ex. 2, '419 patent at col. 5, lns. 41-44, emphasis added) and can include small amounts of slip and antiblock additives:

> This blend [used for outer layers 16 and 18] will typically contain small amounts of slip and antiblock additives.

(*Id.* at col. 5, lns. 29-30.)

Cryovac's claim construction is consistent with these teachings from the patent specification as to how a person of ordinary skill in the art can make the invention of the '419 patent. Pechiney's claim construction, like its Opposition brief, however, simply ignores these teachings from the '419 patent specification. In fact, Pechiney's entire argument as to why its proposed claim construction is consistent with Federal Circuit precedent never once mentions or cites to the intrinsic record. (P. Opposition, p. 14.) Here, contrary to Pechiney's argument, the

term "seven layers arranged symmetrically" must be construed to allow varying layer thicknesses and additive amounts, otherwise the Court would be excluding the specification's preferred embodiments--something the Federal Circuit has instructed "is rarely, if ever, correct." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (an interpretation of a claim term which would exclude a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support, which is wholly absent in this case").

Rather than focus on the intrinsic record, Pechiney attempts to read into the meaning of "at least seven layers arranged symmetrically" requirements for "mirror image" thickness and composition for corresponding layers and a specific "geometrical center line." None of these limitations are included in the claim, and to add them as Pechiney proposes contradicts Federal Circuit authority. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1091 (Fed. Cir. 2003) (improper to read limitations into a claim where the written description did "not contain an indication of the patentee's clear intent to limit the [claim] to something less than the scope of the plain language"). Moreover, Pechiney's construction conflicts with the understanding of one skilled in the art, who, according to Pechiney's expert, Dr. Mount, would have already and independently understood that the two outer layers of a multilayer film will generally have different levels of slip and antiblock to provide the different properties necessary for processing. (C.S.J. Ex. 5 at 242:4 - 245:12.)  Further, Pechiney's proposal to require "mirror image" thicknesses is contrary to the understanding of one skilled in the art, since it is generally not possible to get perfectly identical thicknesses. (Cryovac's Rule 26(a)(2) Expert Report of Dr. Robert Kimmel, D.I. 206, Exhibit 25 at p. 11; Stringer Depo. Tr., D.I. 206, Exhibit 33 at 116:4-117:3.)  Pechiney cannot circumvent the problems of its overly stringent and unsupported requirement for "mirror image" thickness by resorting to manufacturing tolerances to allow for some thickness variations.  Unless specifically claimed, "[m]anufacturing tolerances are immaterial to the interpretation of claim language." *Senmed, Inc. v. Richard-Allan Medical*

*Indus., Inc.*, 888 F.2d 815, 820 n.10 (Fed. Cir. 1989).

Cryovac's construction of "at least seven layers arranged symmetrically" does not make

the words "arranged symmetrically" superfluous for the reasons stated on pages 2 to 3, *supra*. In

any event, Pechiney overstates the application of this claim construction "canon" which Pechiney

claims requires a different definition of "at least seven layers arranged symmetrically"--a

definition which contradicts the intrinsic record in this case. To the contrary, it is well settled

that rigid application of canons is inappropriate when doing so does not give words their plain

and customary meaning or contradicts the intrinsic record--as Pechiney tries to do in this case.

*Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1409-1410 (Fed. Cir. 2004) ("while

interpretations that render some portion of the claim language superfluous are disfavored, where

neither the plain meaning nor the patent itself commands a difference in scope between two

terms, they may be construed identically"); *Bell & Howell Document Mgmt. Prods. Co. v. Altek

Sys.*, 132 F.3d 701, 707 (Fed. Cir. 1997) (error for district court to give term 'integrally bonded'

a different meaning from 'free of adhesive' to prevent superfluous term, because "[b]eing

'integrally bonded' and 'free of adhesive' are mutually reinforcing definitions rather than being

superfluous" and did not add any structural significance to the claim; "defining a state of affairs

with multiple terms should help, rather than hinder, understanding").[4]

---

[4] The cases Pechiney cites to support its argument (P. Opposition, 7-8, 9, 10) can be distinguished from the present case, since in those cases parties were advocating definitions which contradicted the word's ordinary meaning. For example, in *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1369, 1372 (Fed. Cir. 2005), the plaintiff tried to argue that the word "about" meant "exactly," and the Federal Circuit only held that the term "should be given its ordinary meaning of 'approximately,'" stating, "By construing 'about' to mean its accepted and ordinary meaning of 'approximately,' the phrase 'alendronic acid basis' is no longer excess verbiage." Thus, the court in *Merck* was simply applying the "accepted and ordinary meaning" of the word in question, which Pechiney is advocating this Court not do in requiring identical thicknesses and identical amounts of slip and block additives in the respective outer layers. In *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1334 (Fed. Cir. 2005), the plaintiff tried to argue that the word "predetermined" did not mean a duration determined before operation. Thus, the plaintiff in *Pause* was suggesting a definition contrary to the plain meaning of a word, which Cryovac is not advocating here. In *Elekta Instrument S.A. v. O.U.R. Scientific*

Indeed, Cryovac explicitly told the patent examiner during prosecution when adding the phrase "arranged symmetrically" that it was clarifying the scope of the invention. (D.I. 206, Exhibit 3 at CR0056-000155.) Thus, the phrase "arranged symmetrically" is not superfluous and should not be given a meaning which contradicts the intrinsic record.

### 4.    One can readily determine whether films with more than 7 layers are covered by claim 11

Pechiney criticizes Cryovac for allegedly never stating whether a nine-layer film would or would not be covered by claim 11. (P. Opposition, pp. 11-12.) Cryovac is not aware of any case law (and Pechiney cites none) that requires a patentee (when proposing a claim construction) to explicitly name all possible embodiments of an invention and explain how each embodiment would be treated under the patentee's claim construction. To the contrary, as explained above, the Federal Circuit has instructed that claim construction is only needed "to the extent necessary to resolve the controversy." *Vivid,* 200 F.3d at 803.

Pechiney <u>also</u> seems to have forgotten that it posed a hypothetical nine-layer film in Pechiney's First Set of Requests for Admissions (no. 25) which "added a tie layer between each of the nylon layers and the EVOH layer" to the seven-layer film structure in the specification (i.e., PE/tie/nylon/<u>tie</u>/EVOH/<u>tie</u>/nylon/tie/PE or c/d/b/<u>e</u>/a/<u>e</u>/b/d/c). Cryovac answered that such a nine-layer film <u>would</u> infringe claim 11 of the '419 patent. (Ex. 12, Adm. no. 25.)

Nevertheless, Pechiney claims to be completely perplexed by whether a nine-layer film such as c/d/b/e/a/e/b/d/c would be covered by claim 11. (P. Opposition, pp. 11-12.) However, the analysis is not difficult and could certainly be done by one of ordinary skill in the art reading

---

*Int'l, Inc.,* 214 F.3d 1302, 1307 (Fed. Cir. 2000), contrary to Pechiney's implication, the Federal Circuit did not choose a definition because it gave terms different meanings. The Federal Circuit only held that "[t]he district court erred in its claim construction because it did not accord the claim language its ordinary meaning." Here, Cryovac is advocating a definition consistent with not only the ordinary meaning of the claim term but also the intrinsic record.

the '419 patent. Claim 11 subparagraphs (a) through (d) only allow for additional layers to be placed adjacent to one or both sides of the EVOH layer, e.g., c/d/b/__/a/__/ b/d/c. However, as discussed above in light of the '419 patent's prosecution history, eight-layer films in which only <u>one</u> layer is added to one side of the EVOH layer will not satisfy the "at least seven layers <u>arranged symmetrically</u>" limitation, and thus would not be covered by claim 11. If, however, an equal number of additional layers are placed in the same order on either side of the EVOH layer, e.g., c/d/b/e/a/e/b/d/c or c/d/b/e/f/a/f/e/b/d/c, and the other claim limitations are met, then the film is covered by claim 11.

The only "evidence" Pechiney cites to support its criticism regarding films with more than seven layers is what Pechiney perceives as inconsistencies in Dr. Kimmel's construction of claim 11. (P. Opposition, pp. 12-13.) Dr. Kimmel, one of Cryovac's technical experts, was attempting to interpret various hypotheticals posed by Pechiney's counsel at his deposition. (*Id.*) An expert can be relied upon to help understand technical terms or the state of the art, but a party <u>cannot</u> rely on a technical expert's testimony for claim construction--when the expert's testimony is inconsistent with the intrinsic evidence. *Phillips,* 415 F.3d at 1318 (a court should discount any expert testimony at odds with the claim construction mandated by the intrinsic record).[5] As the Federal Circuit explained thoroughly in *Vitronics Corp. v. Conceptronic, Inc.,* the claim must be read in light of the patent specification; expert testimony "may not be used to vary or contradict the claim language." 90 F.3d at 1584. Expert testimony "often only indicates what a particular expert believes a term means," and such testimony may not be used "to vary claim terms from how they are defined, even implicitly, in the specification or file history." *Id.* at 1584-85.

In any event, Pechiney's disagreement with Cryovac's definition of "at least seven layers

---

[5] *See also Playtex Prods., Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 908 (Fed. Cir. 2005); *Bell & Howell,* 132 F.3d at 706.

arranged symmetrically," while unjustifiable and incorrect in light of the '419 patent's intrinsic record, does <u>not</u> raise any genuine issues of material fact which would preclude summary judgment of infringement. *See Martin*, 755 F.2d at 1567.

    B.    CLEARSHIELD™ IS "COEXTRUDED" AS BOTH PARTIES DEFINE "COEXTRUDED"

        1.    Pechiney misapprehends Cryovac's definition of "coextruded"

Pechiney's Opposition argues that if the Court accepts Cryovac's claim constructions, then Cryovac did not show ClearShield™ was "coextruded" under Cryovac's definition of that limitation.[6] (P. Opposition, pp. 15-18.) This allegation is based on a misapprehension of Cryovac's definition of "coextruded." When using the reasonable, logical interpretation of "coextruded film" set forth and explained in Cryovac's Initial Brief on Claim Construction (D.I. 203, pp. 21-22), copious undisputed evidence cited in Cryovac's summary judgment brief shows that ClearShield™ film is, in fact, coextruded under both parties' definitions of coextruded. Hence Pechiney has not raised a genuine issue of material fact to prevent summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In the context of the claim limitation "oriented coextruded film," Cryovac's definition of "coextruded film" is a "film formed by coextrusion in which the layers of the film are extruded together simultaneously." (C.S.J. Ex. 1, p. 1.) Cryovac clearly explained in its Initial Brief on Claim Construction (D.I. 203, pp. 21-22) and again in its Responsive Brief on Claim Construction (D.I. 248, pp. 16-17) that this means the film is entirely coextruded rather than having some layers coextruded and other layers added in subsequent steps by other methods such

---

[6] Pechiney "admits that products sold under the trademark ClearShield™ are comprised of coextruded film as Pechiney construes the phrase 'coextruded film.'" (C.S.J. Ex. 7, Pechiney's Supp. Admissions, no. 13.)

063527.1001

as lamination or extrusion lamination.[7] This is how "coextruded" is used in the '419 patent itself. The '419 patent teaches that "[t]he polymer melts were coextruded through a multilayer coextrusion die." (C.S.J. Ex. 2 at col. 7, lns. 14-15.)

Pechiney's Opposition erroneously proposes that Cryovac's definition requires all the layers to "come together at precisely the same moment within the coextrusion die." (Pechiney's Responsive Memo. on Claim Construction (D.I. 240), p. 27, FN 5.) This is clearly not what the '419 patent or Cryovac suggested. Neither Cryovac's express claim construction nor its explanation thereof states anything with respect to "com[ing] together at precisely the same moment within the coextrusion die." (Id.) Pechiney is again attempting to read in baseless and unstated limitations. There is simply no support for this additional limitation in the '419 patent or Cryovac's proposed definition.

To be clear, Cryovac does not now and has never contended that "coextrusion" requires all the molten polymers to meet at the same point in the interior of a coextrusion die before being extruded together from the die. As explained in Cryovac's Opening Brief on Claim Construction, a coextruded film, where all the layers are extruded together simultaneously, can be contrasted with films formed by other methods, such as lamination, where at least some layers are formed separately and then subsequently joined together. (D.I. 203, pp. 21-22; C.S.J. Ex. 2 ('419 patent) at col. 1, lns. 48-59, citing U.S. Patent No. 4,421,823 to Theisen et al. and

---

[7] Pechiney alleges that "Cryovac hides its claim construction position from its summary judgment brief" and that "Cryovac does not even state its proposed claim construction for 'coextruded film' in its summary judgment brief" because "Cryovac knows its motion is doomed if it cannot gloss over this matter." (P. Opposition, p. 16 (emphasis in original omitted).) This is simply not true. Cryovac fully discussed the claim limitation "oriented coextruded film," which includes the fact that the film is coextruded. (C.S.J., pp. 4-5, 8-9.) Pechiney also ignores the fact that on page 4 of its brief Cryovac cited several sources of evidence showing that ClearShield™ is a coextruded film. Cryovac also cited repeatedly to the parties' claim chart (C.S.J. Ex. 1), which included Cryovac's (and Pechiney's) definitions of "coextruded film." (e.g., C.S.J., pp. 8, 9, 11, 13.) Cryovac's Initial Brief on Claim Construction (filed concurrently with the summary judgment motion) also discusses Cryovac's definition of "coextruded film" in detail. (D.I. 203, pp. 21-22.) Thus, Cryovac was certainly not trying to "hide" its construction of "coextruded."

characterizing the '823 patent as being directed to an extrusion laminate where various materials
are bonded to a substrate (D.I. 206, Exhibit 21 at col. 2, lns. 19-28 ("The laminate material is
prepared in a two-part operation. [First, an] outer surface layer of biaxially oriented polymer is
extrusion-laminated with an intermediate layer of polymeric material to a su[b]strate... [Second,
a] layer of heat-sealable polymeric material is then extrusion-coated onto the special polymer
surface of the material obtained in the final operation.").) The distinction between a film formed
only partially by coextrusion and one formed by coextruding all the layers together is made by
Cryovac's proposed definition.

The fact that the layers of a coextruded film are extruded together simultaneously in a
single process, consistent with Cryovac's proposed definition, is supported by both parties'
experts. For instance, Dr. Kimmel testified that "there are various ways of assembling a
multilayer film. Coextrusion is one of those ways in which, as described in my report and in Dr.
Mount's report, and it involves extruding all of the material simultaneously." (Ex. 13, Kimmel
Depo. Tr. at 35:19 - 36:3.) Similarly, Pechiney's expert, Dr. Mount, explained that "the polymer
[layer] combinations [in coextruded films] were produced in a single operation rather than by
combining materials produced in multiple operations...." (Mount expert report, D.I. 213, Exhibit
5, Tab A, p. 5.) Accordingly, in contrast to Pechiney's attempt to twist the meaning of
Cryovac's proposed definition to read in unstated requirements that the molten polymers contact
each other at the same point within the coextrusion, the experts agree that coextrusion involves
"a single process" where the materials are coextruded "simultaneously" and not "by combining
materials produced in multiple operations."

Indeed, Pechiney's own responsive memorandum on claim construction recognizes the
incorrectness of Pechiney's absurd interpretation (D.I. 240, p. 27):

> As set forth by both parties at the technical tutorial, the process of
> coextrusion begins with the materials being melted in extruders, then
> being brought together in a coextrusion die. In the coextrusion die, the

12

various layers of the multilayer film are brought together in some fashion and then exit the die together. If "extruded together simultaneously" is meant to cover no more than leaving the coextrusion die at the same time, this is inherently a part of the coextrusion process and need not be stated. If, on the other hand, the "extruded together simultaneously" language is intended to mean that all of the layers in the claimed multilayer film must come together at precisely the same moment within the coextrusion die (rather than, for example being built by first bringing together the core layer and the intermediate layers, then adding the adhesive layers and then finally the outer layers), there is no evidence that the ordinary meaning of "coextruded film" encompasses that.

Cryovac agrees that there is no evidence to support a definition of "coextruded film" that requires all layers to "come together at precisely the same moment within the coextrusion die." (Id.) Rather, in Cryovac's definition, layers of the coextruded film being "...extruded together simultaneously" simply means that all the layers of what becomes the "coextruded film" are extruded together at the same time, or as Pechiney phrased it in its claim construction brief, the layers are "leaving the coextrusion die at the same time." (Id.) Cryovac's definition neither says nor implies anything about when precisely the film layers come into contact with one another inside the coextrusion die, but only that when the layers are extruded (i.e., come out of the die) they are extruded together simultaneously. Indeed, even Pechiney recognizes that all the film layers are "leaving the coextrusion die at the same time" (i.e., simultaneously) and that this "is inherently a part of the co-extrusion process." (Id.)

As explained in Cryovac's Initial Brief on Claim Construction, the phrase "extruded together simultaneously" needs to be stated in the Court's claim construction because it distinguishes films in which some of the layers in the multilayer film are added after coextrusion, e.g., if three of the layers are extruded together and additional layers or films are subsequently laminated or attached to the coextruded film. (D.I. 203, pp. 21-22; see also D.I. 248, pp. 16-17.) Examples of films excluded by Cryovac's definition of "coextruded film" (in addition to other differences) include those in:  the '355 (DeAntonis) patent (only nylon/EVOH/nylon is coextruded and other layers may be added by a coating process) (Wilkes Aff. (D.I. 242), Ex. B,

13

¶ 41); the '852 patent (three layers are coextruded and a "separate heat sealable polymer film"

may be adhered "by extrusion laminating the separate polymeric film to the fifth layer") (*Id.*,

¶ 112); and the Blackwell article (additional layers may be added to a five layer coextrusion film

by "secondary lamination of the five layer composite to other layer(s)") (*Id.*, ¶ 72). In fact, two

patents (to Sheptak and Hirt) cited during prosecution were just such films with additional layers

added to a previously coextruded film. Cryovac added the word "coextruded" to the claim to

clarify the scope of the invention and distinguish it from those films.[8] (D.I. 206, Exhibit 3 at

CR056-000136, -000139.) Thus, Pechiney's arguments regarding the limitation "coextruded"

are based on an obviously erroneous interpretation of Cryovac's definition of that term.

### 2. Cryovac has provided overwhelming evidence that ClearShield™ was "coextruded" under both parties' definitions of "coextruded"

Cryovac's summary judgment brief set forth abundant evidence showing that

ClearShield™ is a coextruded film under both parties' claim constructions. (*See* C.S.J., pp. 4, 8-

9.) Indeed, Pechiney's own expert Dr. Mount testified        REDACTED

REDACTED                           . (C.S.J. Ex. 5 at 13:20-14:2.) Pechiney argues that this

testimony does not support Cryovac's position because Dr. Mount "was not asked to use

Cryovac's novel claim construction in answering that question." (P's Opposition, p. 17.)

However, Dr. Mount had previously defined what he meant by "coextruded" in his expert report

wherein he explained that in coextruded films "the polymer combinations were produced in a

single operation rather than by combining materials produced in multiple operations." (D.I. 213,

Exhibit 5, Tab A (Mount expert report), p. 5.) Thus,          REDACTED

---

[8] From Amendment date-stamped February 17, 1987: "The applicant also draws attention to the construction of the Sheptak film, which is not totally coextruded, but relies on extrusion lamination in order to adhere the oriented polypropylene outer layer to the coextruded substrate. The Hirt reference offers no description of the manner of construction, but it appears unlikely that a totally coextruded film is envisioned. The reference does teach that one of the two sheets 1 and 2 may also be an aluminum foil, suggesting a laminated, not coextruded structure." (D.I. 206, Exhibit 3 at CR056-000139.)

14

REDACTED

. Likewise, Pechiney's

PowerPoint slides at the April technical tutorial before this Court identified that a step in the

ClearShield™ film manufacturing process was to "Co-extrude melted plastic layers." (C.S.J.

Ex. 6, p. 12.)

Contrary to Pechiney's statements on pages 16-17 of its Opposition, Mr. Douglas also

testified at his Rule 30(b)(6) deposition        REDACTED

C.S.J. Ex. 4 at 68:4-9.)  This testimony was cited in Cryovac's

summary judgment brief on page 4.  Mr. Douglas's Second Declaration does not contradict

Cryovac's position. (D.I. 257, Exhibit 6.)        REDACTED

This,

however, was made clear by Pechiney's counsel at the April 22, 2005 technical tutorial hearing

wherein it was explained that "these melted plastic layers [in ClearShield™] are co-extruded

through a seven layer die" (D.I. 63 at 30:23-24), which "bring those seven plastics in, seven

layers in to combine them together" (*Id.* at 31:12-13), and that "[a]fter this co-extrusion; then

[the co-extruded film] comes out of the die" (*Id.* at 31:18-19).  This is entirely consistent with

Cryovac's definition of coextrusion.  Indeed,

REDACTED

Thus, not only does Pechiney admit that ClearShield™ is coextruded under Pechiney's

definition of coextruded (Pechiney's Supp. Admission, no. 13), but there is no dispute (applying

a correct understanding of Cryovac's definition) that ClearShield™ is coextruded under

Cryovac's definition as well.  In ClearShield™, all seven layers of the ClearShield™ film are

extruded together simultaneously.  That is, they leave the coextrusion die at the same time and

15

have no additional layers added subsequently.

C.    CRYOVAC HAS PRESENTED EVIDENCE JUSTIFYING
      SUMMARY JUDGMENT OF INFRINGEMENT BY
      CLEARSHIELD™ FILMS GENERALLY

As a last resort, Pechiney suggests that if the Court accepts Cryovac's claim construction and agrees that ClearShield™ infringes claim 11, then (Pechiney argues) Cryovac is only entitled to summary judgment on films made according to <u>one</u> Pechiney specification:    (P. Opposition, p. 18.) Pechiney fallaciously states that "Cryovac's motion for summary judgment offers evidence of the characteristics of film made in accordance with only a single ClearShield Product Specification --    REDACTED

(*Id.*) This is not true. To the contrary, Cryovac's summary judgment brief established infringement by the product Pechiney itself refers to generally as "ClearShield," not only films made by the REDACTED specification.

Indeed, the evidence cited in Cryovac summary judgment brief (and the arguments made therein) were <u>not</u> limited to ClearShield™ films made by the REDACTED Cryovac discussed the characteristics of ClearShield™ film on pages 4-13 of its brief and cited numerous different sources of evidence discussing the composition and structure of ClearShield™ film generally. *See, e.g.*, Pechiney's Supplemental Responses to Cryovac's First Set of Requests for Admissions (C.S.J. Ex. 7, nos. 3, 4, 13),[9]    REDACTED (C.S.J. Ex. 5, 13:20-14:16, 15:15-18:6, 18:11-14, 19:3-20:11, 20:19-24:20, 33:9-15, 34:14-17), an internal Pechiney PowerPoint presentation on ClearShield™ (C.S.J. Ex. 8), Pechiney's technical tutorial handouts provided to the Court (C.S.J. Ex. 6, pp. 5, 12), and Pechiney's

---

[9] Cryovac's Requests for Admissions ask for information on "products sold under the trademark ClearShield™." Pechiney did not object to this category of films and answered all Requests for Admission admitting characteristics of "products sold under the trademark ClearShield™" <u>without any reference to</u> hus, Cryovac's citations to Pechiney's Admissions applied to ClearShield™ generally. (C.S.J. Ex. 7.)

counsel's statements during the technical tutorial before this Court (C.S.J. Ex. 9 at 33:2-7). <u>All</u> of that evidence cited in Cryovac's summary judgment brief discussed ClearShield™ film <u>generally</u> and <u>none</u> of the evidence cited above was limited to films made by the specification. That evidence shows that what Pechiney generally sells as "ClearShield" contains every claim element in claim 11.

Furthermore, Pechiney was required to produce a Rule 30(b)(6) witness to identify from all the ClearShield™ specifications (PPPI 010619-010956), which ones involved a production, use, sale, or offer to sell films. (Ex. 14, Cryovac Rule 30(b)(6) deposition notice Schedule A topics (m)-(p).) In response, Pechiney produced Mr. Michael Douglas,





(C.S.J. Ex. 4 at 20:7-21:5, 8:1-11:5.) Pechiney has not amended or updated that testimony by its designated Rule 30(b)(6) witness. Thus, Pechiney through its 30(b)(6) witness represented to Cryovac

The only caveat mentioned by Pechiney's 30(b)(6) witness was .

17

According to Pechiney's summary judgment memorandum on patent issues (D.I. 196, p. 9) and

the specifications attached thereto, REDACTED

. (D.I. 209, Exhibit 103 at A1220-

23 (PPPI 010619-622) and A1526-28 (PPPI 010925-28.)  Therefore, what is true of the

specification/films is also true of the          specification/films.

REDACTED

REDACTED

18

(*Id., see also* 28:6-14.)

REDACTED

Finally, Pechiney suggests that films made according to one specification REDACTED

would not infringe claim 11 of the '419 patent. (P. Opposition, pp. 18-19.) Cryovac agrees that

a film made with the layer compositions described in REDACTED would not infringe claim 11 of

the '419 patent to the extent that it does not contain a common polymeric material in the outer

layers of the film. REDACTED

(according to Pechiney) does not share a common polymeric material in the outer layers of the

film, and thus does not infringe under Cryovac's claim construction.  This is evidenced by

Pechiney's Motion for Summary Judgment on Patent Issues, wherein Pechiney stated that there

are

REDACTED

' (Ex. 15, Douglas 30(b)(6) Depo. Tr. at 15:13-15, 20:7-21:5; D.I. 209,

Exhibit 103 at A1255-59.)

_____

REDACTED

19

Hence, Pechiney's argument that Cryovac is not entitled to summary judgment on any

ClearShield™ films made by specifications other than **REDACTED** is baseless. It is nothing more

than mere "attorney argument" and is incapable of precluding summary judgment. *Glaverbel*

*Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1562 (Fed. Cir. 1995).

## III.    CONCLUSION

Although the burden shifted to Pechiney to "set forth specific facts showing that there is

a genuine issue for trial," Pechiney has not done so. Fed. R. Civ. P. 56(e). Even when viewed in

the light most favorable to Pechiney, the record taken as a whole could not lead a rational trier of

fact to find for Pechiney, so there is no genuine issue for trial. *See Matsushita Elec.*, 475 U.S. at

587. Therefore, the Court should grant Cryovac's Motion for Summary Judgment that Pechiney

Infringes Claim 11 of the '419 Patent.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
YOUNG CONAWAY STARGATT &
    TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
jshaw@ycst.com

Of Counsel:
Ford F. Farabow
Joann M. Neth
Martin I. Fuchs
Mark J. Feldstein
Courtney B. Meeker
Rebecca D. Hess
FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000

Attorneys for Plaintiff, CRYOVAC, INC.

Dated: December 5, 2005

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on December 5, 2005, copies of the foregoing document were served upon the following counsel of record in the manner indicated:

**BY HAND DELIVERY**

N. Richard Powers, Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
P. O. Box 2207
Wilmington, DE  19899

**BY FEDERAL EXPRESS**

Steven R. Trybus, Esquire
Jenner & Block LLP
One IBM Plaza
Chicago, IL  60611-7603

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Michele Sherretta*

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta (No. 4651)
msherretta@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600

Attorneys for Plaintiff Cryovac, Inc.

## CERTIFICATE OF SERVICE

I, Michele Sherretta, hereby certify that on December 12, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such document is available for viewing and downloading to the following counsel of record:

> N. Richard Powers, Esquire
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 North Orange Street
> P. O. Box 2207
> Wilmington, DE 19899

YOUNG CONAWAY STARGATT & TAYLOR, LLP

John W. Shaw (No. 3362)
jshaw@ycst.com
Michele Sherretta (No. 4651)
msherretta@ycst.com
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

Attorneys for Plaintiff Cryovac, Inc.