IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Civil Action No. 04-1278-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| PECHINEY PLASTIC PACKAGING, INC., | ) | |
| | ) | **REDACTED** |
| Defendant/Counter-Plaintiff. | ) | |

<u>**PROPOSED FINAL PRETRIAL ORDER**</u>
(Volume 1 of 2)

| | |
|---|---|
| **Of Counsel:**<br><br>Ford F. Farabow, Jr.<br>Joann M. Neth<br>Martin I. Fuchs<br>Rebecca D. Hess<br>Courtney Meeker<br>Mark J. Feldstein<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, N.W.<br>Washington, D.C.  20001-4413<br>(202) 408-4000 | **YOUNG CONAWAY STARGATT &<br>  TAYLOR LLP**<br><br>John W. Shaw (No. 3362)<br>Karen E. Keller(No. 4489)<br>Michele Sherretta (No. 4651)<br>Elena C. Norman (No. 4780)<br>1000 West Street, 17th Floor<br>P.O. Box 390<br>Wilmington, DE 19801<br>(302) 571-6600<br><br>*Attorneys for Plaintiff/Counter-Defendant<br>  Cryovac, Inc.* |
| **Of Counsel:**<br><br>Donald R. Cassling<br>Steven R. Trybus<br>Shelly Smith<br>Patrick L. Patras<br>Gregory D. Bonifield<br>Brian P. O'Donnell<br>Joseph A. Schouten<br>Sara E. Tonnies<br>JENNER & BLOCK LLP<br>One IBM Plaza<br>Chicago, IL 60611-7603<br>(312) 222-9350<br><br>Date: April 19, 2006 | **CONNOLLY BOVE LODGE & HUTZ LLP**<br><br>N. Richard Powers (No. 494)<br>Rudolf E. Hutz (No. 484)<br>The Nemours Building<br>1007 N. Orange St.<br>P.O. Box 2207<br>Wilmington, DE 19899<br>(302) 658-9141<br><br><br>*Attorneys for Defendant/Counter-Plaintiff<br>  Pechiney Plastic Packaging, Inc.* |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-1278-KAJ |
| PECHINEY PLASTIC PACKAGING, INC. | ) | |
| | ) | **CONFIDENTIAL --** |
| Defendant/Counter-Plaintiff. | ) | **FILED UNDER SEAL** |
| | ) | |
| | ) | |

## PROPOSED FINAL PRETRIAL ORDER

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure. This Proposed Final Pretrial Order was created in accordance with the Court's Scheduling Order (D.I. 22, ¶¶ 15-16), the sample proposed final pretrial order attached thereto, the Court's Trial Management Order (D.I. 23, ¶ 1), and Delaware Local Rule 16, which set forth the procedures for preparing, exchanging, and filing drafts of the proposed pretrial order. The parties understand that filing this Proposed Final Pretrial Order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3). (*See* Court's Scheduling Order, D.I. 22, ¶ 15.)

**Plaintiff's Counsel:**

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Michele Sherretta (No. 4651)
Elena C. Norman (No. 4780)
YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801
(302) 571-6600

Of Counsel:
Ford F. Farabow
Joann M. Neth
Martin I. Fuchs
Rebecca D. Hess
Courtney B. Meeker
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C.  20001
(202) 408-4000


**Defendant's Counsel:**

N. Richard Powers (No. 494)
Rudolf E. Hutz (No. 484)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE  19899
(302) 658-9141

Of Counsel:
Donald R. Cassling
Steven R. Trybus
Shelley Smith
Patrick L. Patras
Gregory D. Bonifield
Brian P. O'Donnell
Joseph A. Schouten
Sara E. Tonnies
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL  60611-7603
(312) 222-9350

I.    **Nature of the Case**

In this case, plaintiff Cryovac, Inc. ("Cryovac") has accused defendant Pechiney Plastic Packaging, Inc. ("Pechiney") of infringing claim 11 of U.S. Patent No. 4,755,419 ("the '419 patent"), and of willfully and knowingly using that infringement to cause one of plaintiff's customers (National Beef, Inc.) to breach two sales contracts it had with Cryovac. Pechiney responded that: (a) it did not infringe Cryovac's patent, (b) Cryovac's patent is invalid, (c) Cryovac's patent is unenforceable due to inequitable conduct, (d) Cryovac's tortious interference claims are preempted by the federal patent laws, (e) Cryovac never had a binding contract with National Beef, (f) Pechiney did not, and could not have known of the existence of a binding contract between Cryovac and National Beef because National Beef did not believe itself to be bound by such a contract and (g) Pechiney merely exercised its legal right to seek and win National Beef's business for itself.

The '419 patent was granted to the named inventor Gautam Shah, based on his patent application Serial No. 06/842,600 filed March 21, 1986. The '419 patent is assigned to Cryovac. The '419 patent is directed to an oriented coextruded film having at least seven layers arranged symmetrically and including certain categories of materials in various of the layers. On September 20, 2004, Cryovac sued Pechiney for infringing claim 11 of the '419 patent, based on Pechiney's manufacture, use, sale and/or offer to sell products under the trademark "ClearShield.®" 35 U.S.C. § 271(a). Pechiney denied infringement and sought a declaratory judgment of noninfringement from this Court. The Court found that all ClearShield® products other than DZ-9004-1 infringed claim 11 of the '419 patent.

REDACTED

patent. The Court also determined that Cryovac's tortious interference claims were not preempted by the federal patent laws.

Cryovac also argues that Pechiney's infringement of claim 11 was willful. Pechiney had knowledge of Cryovac's '419 patent prior to selling ClearShield products, and Cryovac argues that Pechiney knew or should have known that the '419 patent would cover its ClearShield products. Pechiney argues that it took reasonable steps to make sure that its ClearShield products would not infringe the '419 patent. Pechiney further argues that it obtained opinions on the infringement issue, including a written opinion of noninfringement from outside patent counsel at McDermott, Will & Emery. Pechiney also argues that it took all those reasonable steps before undertaking the significant capital expenditures necessary to produce and sell ClearShield products. Cryovac argues that the opinions of noninfringement were not adequate or competent opinions of counsel and that Pechiney did not rely on those opinions in good faith. Pechiney argues that the opinions were not only competent and adequate when originally rendered, but that they were updated and confirmed by subsequent independent opinions of counsel from the law firm of RatnerPrestia. The subsequent opinions of counsel from the law firm of RatnerPrestia are the subject of Cryovac's *in limine* request no. 2 filed in this Pretrial Order, since Cryovac contends the *later* opinions are not relevant to the issue of willfulness.

Cryovac's tortious interference claims allege that Pechiney intentionally interfered with sales contracts dated March 20, 2003 and January 14, 2004 with National Beef. Cryovac alleges a lengthy and ongoing contractual relationship with third-party customer National Beef. National Beef is a beef-packer with plants in Dodge City and Liberal, Kansas, along with executive offices in Kansas City, Missouri. Cryovac claims that Cryovac and National Beef entered into four written requirements contracts, plus several amendments to those agreements.

Cryovac further contends that National Beef purchased 100% of its bone-in, boneless, and chub film packaging requirements from Cryovac under these agreements.

Pechiney contends that National Beef was not contractually obligated to purchase any products from Cryovac. Even if National Beef and Cryovac had a contractual relationship, Pechiney asserts that Cryovac cannot carry its burden because Pechiney never had knowledge of any binding contractual relationship between National Beef and Cryovac, and because Pechiney did not engage in any wrongful conduct in its dealings with National Beef. Finally, Pechiney asserts that its solicitation of National Beef falls within the scope of its lawful privilege to compete in this market and is not wrongful or improper even if the sale of ClearShield products is determined to infringe claim 11 of the '419 patent, so long as that infringement was not willful and intentional.

Cryovac seeks damages for Pechiney's tortious interference with an agreement entered into on March 20, 2003 and an agreement entered into on January 14, 2004.

Pechiney alleges that claim 11 of the '419 patent is invalid due to anticipation, obviousness, lack of enablement, lack of a written description and/or indefiniteness. As noted above, Pechiney is also seeking a declaratory judgment of invalidity from this Court.

Pechiney contends that claim 11 of the '419 patent was anticipated under 35 U.S.C. § 102(a), (b), (e) and/or (g) by (a) an article by Earl Hatley, (b) a film made by Mr. Hatley and sent to Dr. Seymour Gilbert for testing, (c) U.S. Patent No. 4,746,562 ("the '562 patent") to Cryovac employee Ennis Fant, (d) a film made by Mr. Fant that is the subject of the '562 patent, (e) U.S. Patent No. 5,055,355, (f) U.S. Patent No. 4,572,854 to Dallmann ("the Dallmann Patent"), (g) translation of Japanese Utility Model Application Publication Number 60-27000, Application Number 54-84842 and (h) other prior art references identified and analyzed in the expert reports of Pechiney's technical expert, Dr. Mount. Pechiney notes that such references

will be identified in accordance with 35 U.S.C. § 282. Cryovac denies that any of these disclose and enable Mr. Shah's invention claimed in claim 11 of the '419 patent. Cryovac further argues that Pechiney has not proven by clear and convincing evidence that the type of film covered by claim 11 was in public use or patented or described in a printed publication prior to Mr. Shah's date of invention. Pechiney believes that Cryovac should be barred from offering any evidence, or making any argument, to try to establish a date of invention earlier than the filing date of the '419 patent as described in Pechiney's Motion in Limine No. 4.

In arguing that claim 11 would have been obvious, Pechiney argues that the subject matter of claim 11 would have been obvious to one of ordinary skill in the art at the time of the alleged invention. Cryovac argues, on the contrary, that the claim 11 films would not have been obvious to one of ordinary skill in the art to which the invention pertains as of Mr. Shah's date of invention; that one of ordinary skill would not have been motivated (before Mr. Shah's date of invention) to make a film covered by claim 11 and that such a person would not have had a reasonable expectation of success in doing so.

Pechiney further contends that the full scope of the subject matter of claim 11 was not enabled by the '419 specification. Cryovac, on the other hand, argues that the '419 specification (in combination with what was known in the art) provided sufficient information and details for one of ordinary skill in the art to make and use the films covered by claim 11 without undue experimentation as of March 21, 1986, when Mr. Shah's patent application was filed.

Pechiney also contends that claim 11 is invalid for failure to comply with the written description requirement of 35 U.S.C. § 112. Pechiney contends that the '419 patent specification does not show that the inventor possessed, at the time of filing, the subject matter of claim 11 as ultimately issued after several amendments. Cryovac, on the other hand, maintains that the '419

specification contains a written description of Mr. Shah's invention with sufficient information to show a person skilled in the art that Mr. Shah was in possession of the invention of claim 11 at the time Mr. Shah's patent application was filed. In that regard, Cryovac contends that there is clear support in the '419 specification that the thickness of the individual layers in the films of Mr. Shah's invention may differ or vary independently (e.g., different outer layer thicknesses). Likewise, Cryovac contends that it was understood by one of ordinary skill in the art (and indicated in the '419 specification) that outer layers of Mr. Shah's invention may contain differing amounts of slip and antiblock additives or processing aids.

Pechiney also contends that claim 11 is invalid as indefinite because the '419 patent does not give sufficient guidance for a competitor to determine whether the layers of a film are "arranged symmetrically" and that this claim language was not present in any of the claims as filed, but rather was added during prosecution in response to a prior art rejection. Cryovac, on the other hand, argues that based on reading the '419 specification and claim 11, one skilled in the art would understand what is covered by claim 11 as issued, because claim 11 particularly points out and distinctly claims the subject matter that Mr. Shah considered his invention.

Pechiney also alleges as a defense and as a declaratory judgment counterclaim that the '419 patent is unenforceable due to inequitable conduct because Cryovac's attorney Mr. Quatt intentionally did not disclose a highly material reference (U.S. Patent No. 4,572,854, "the Dallmann patent") to the U.S. Patent and Trademark Office (USPTO) during the prosecution of Mr. Shah's '419 patent application and that arguments that Mr. Quatt made during prosecution could not have been made had Mr. Quatt disclosed the Dallmann patent to the USPTO. Pechiney alleges that Mr. Quatt's disclosure to the USPTO of the Dallmann patent during the prosecution of another Cryovac application that became the Fant '562 patent (Serial Number 06/834,694, in

the name of inventor Ennis Fant and drawn to coextruded multi-layer films with the same layer structure and order as the films claimed in the Shah '419 patent) proves both the materiality of the Dallmann patent and the requisite intent for a conclusion of inequitable conduct.

Cryovac denies this inequitable conduct allegation and argues both that the Dallmann patent is not material and that Mr. Quatt had no intent to deceive the USPTO. More specifically, Cryovac argues the '854 Dallmann patent was not material to the patentability of the '419 patent, since it was merely cumulative or less material than other references already before the Examiner which contained the features of the Dallmann film(s). Cryovac argues in that regard that instead of establishing (either by itself or in combination with other information), the unpatentability of the '419 patent, the Dallmann patent actually teaches away from Mr. Shah's invention. Furthermore, Cryovac argues Mr. Quatt could have made the same arguments during prosecution to distinguish Mr. Shah's invention from prior art even if Dallmann had been considered, and that considering Dallmann would not have enabled the Examiner to make any stronger rejections against the patentability of Mr. Shah's invention.

Cryovac also contends that Mr. Quatt did not have any intent to deceive the Patent Office by not specifically citing the Dallmann patent during the prosecution of the '419 patent, since he did not recognize the '854 Dallmann patent as being relevant or material to Mr. Shah's application. In that regard, Cryovac points out that when the Examiner cited the '854 Dallmann patent during the Fant '945 prosecution, the Examiner did not discuss the reference or use it as the basis for any rejection. Cryovac notes that due to the volume of prosecution in which he was involved, it was not Mr. Quatt's practice to study references cited by an Examiner if those references were not the basis of any rejection or if the references were not discussed by the Examiner. Cryovac maintains that Mr. Quatt's citation of fourteen references, including the '854

Dallmann patent, during the subsequent Fant '694 prosecution was not based on a review of the references, but rather was a ministerial act of ensuring that all of the references cited in the earlier Fant '945 and Fant '100 prosecutions were before the Examiner for the Fant '694 prosecution.

Cryovac contends that Mr. Quatt prosecuted the application leading to the Shah '419 patent in good faith. Cryovac notes that Mr. Quatt filed *five* information disclosure statements during the prosecution of the '419 patent, bringing to the Examiner's attention all of the prior art of which Mr. Quatt was aware that was possibly relevant to the patentability of the '419 patent.

Cryovac seeks damages for infringement of the '419 patent in the form of lost profits and, alternatively, a reasonable royalty on Pechiney's sales of ClearShield products. Because Cryovac also claims that Pechiney's alleged infringement was willful, Cryovac seeks enhanced damages, as well as reasonable attorneys' fees. Additionally, Cryovac seeks pre-judgment and post-judgment interest. 35 U.S.C. §§ 284 and 285. Cryovac also seeks damages for Pechiney's tortious interference with Cryovac's contracts with National Beef.

Pechiney maintains that it did not infringe a valid patent, and that Pechiney does not infringe the patent as properly construed. Pechiney further contends that even if the jury finds in Cryovac's favor on the issues of infringement and validity and the Court finds in Cryovac's favor on the issue of inequitable conduct, it is not liable for lost profits and that a reasonable royalty would be not more than 2 %. Pechiney further contends that Cryovac cannot recover damages for sales after the date of the verdict in this case, or for sales that Cryovac could have recaptured if it had acted to mitigate damages. Pechiney also contends that Cryovac is not entitled to damages under any theory for any infringement prior to the filing of this litigation because it has not met its burden of proving that it gave notice to the public that one or more of

its products are covered by the '419 patent as required by 35 U.S.C. § 287. Additionally,
Pechiney contends that damages for tortious interference cannot be calculated because the
alleged contracts do not contain a quantity term.

**II.    Jurisdiction**

A.    This is an action by Cryovac for damages; Pechiney is counterclaiming for
declaratory judgments.

B.    The jurisdiction of the Court is not disputed.

C.    This Court has jurisdiction over the subject matter of this case under 28 U.S.C.
§§ 1331, 1338(a), and 1367. Venue is proper in this judicial district under 28 U.S.C. §§ 1391
and 1400. Pechiney is a Delaware corporation and this Court has personal jurisdiction over
Pechiney.

**III.    Statements of Facts**

A.    **Undisputed Facts**

Pursuant to the Court's Scheduling Order (D.I. 22, ¶ 15) and the sample pretrial order
referred to and attached therein, the parties submit **Exhibit 1**, which sets forth facts which are not
disputed and have been agreed to by the parties. These proposed stipulated facts require no
proof at trial, will become a part of the evidentiary record in the case, and may be read to the
jury.

B.    **Issues of Fact to be Decided**

Pursuant to paragraph 1(b) of the Court's Trial Management Order (D.I. 23) and Delaware Local Rules 16.4(d)(4), (8), (9), and (10), the parties each submit the essential facts in issue and their expected proofs.

Plaintiff Cryovac's issues of fact and expected proofs are set forth in **Exhibit 2**.

Defendant Pechiney's issues of fact and expected proofs are set forth in **Exhibit 3**.

IV.    **Agreed to Issues of Law**

Pursuant to paragraph 1(a) of the Court's Trial Management Order (D.I. 23), and as set forth in Delaware Local Rule 16.4(d)(5), **Exhibit 4** contains the parties' joint statement of legal issues which the parties agree remain to be decided by the Court.  Exhibit 4 also contains additional issues proposed by Pechiney, which Cryovac does not agree are issues of law to be decided by the Court for the reasons set forth in Exhibit 4.

V.    **Witnesses**

A.    **Witnesses Plaintiff Cryovac Expects to Call**

The list of expert and fact witnesses whom Cryovac expects to call, as well as summaries of its experts' testimony, are set forth in **Exhibit 5.**

B.    **Witnesses Defendant Pechiney Expects to Call**

The list of expert and fact witnesses whom Pechiney expects to call, as well as summaries of its experts' testimony, are set forth in **Exhibit 6.**

C.    **Trial Procedures Regarding Witnesses.**  Each party shall provide to the other party a written list of witnesses that it intends to call, as well as copies of all the exhibits (not

including demonstratives, the procedures for which are described below) to be used in each witness' testimony, by 9:30 a.m. on the calendar day before the trial day on which the witnesses are expected to be called. Between 6:30 p.m. and 7:30 p.m. on the day notice is given, the parties will meet and confer to attempt to resolve any objections to exhibits to be used with the witness.

If a party calls an employee of an opponent during that party's case-in-chief, the parties agree that the employee shall be treated as an adverse witness (*i.e.*, leading questions may be asked on direct examination), and that the party's employer may not ask leading questions when the witness is tendered for cross-examination.

D.    **Rebuttal Witnesses.**    Each party may call such rebuttal witnesses as may be necessary. However, the party calling a rebuttal witness must identify the witness to the other party no later than 9:30 a.m. the calendar day before the witness is to take the stand. The parties disagree as to whether all rebuttal witnesses must have been previously disclosed in the Pretrial Order. Pechiney notes that section V.D. of the sample "Proposed Final Pretrial Order" that accompanied the December 14, 2004 Scheduling and Trial Management Order states that "[e]ach of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party."

E.    **Deposition Testimony.**

Pursuant to paragraph 1(e) of the Court's Trial Management Order, the testimony designated by Cryovac which may be offered at trial through deposition testimony is listed in **Exhibit 7**. Pechiney's counter-designations are indicated therein as well. Pechiney's summary of objections are included in **Exhibit 8**. The testimony designated by Pechiney which may be offered at trial through deposition testimony is listed in **Exhibit 9**. Cryovac's counter-

designations are indicated therein as well.  Cryovac's summary of objections are included in

**Exhibit 10**.

Based on the evidence, arguments, and testimony presented by the parties during the trial,
for some witnesses identified above the parties may wish to offer *less* testimony from the
deposition than was originally preserved by designation in Exhibits 7-10 attached hereto.

With respect to witnesses who will be presented by deposition, each party shall provide
notice of specific pages and lines of each deposition designation they intend to present to the jury
by 6:30 p.m. two calendar days before such testimony is to be presented.  With respect to
counter-designations, each party shall provide notice of specific page and lines of counter-
designations by 9:30 a.m. on the calendar day before such counter-designations will be offered.
With respect to depositions presented by video, the final video including counter-designations
must be provided to the opposing party by 1:00 p.m. on the calendar day before such video will
be offered.

Between 6:30 and 7:30 p.m. on the calendar day before such testimony is presented, the
parties will meet and confer to resolve any objections to such testimony.  If any objections are
not resolved by meet and confer, they will be presented to the Court before the presenting party
presents testimony by deposition.  If any objections to a deposition presented by video are
sustained, the revised video will be provided at least 2 hours before such video is offered in
Court.

The trial time allocated by the Court to each party to present its case will be reduced by
the duration of the designations or counter-designations that the party requests be presented or
read to the jury.  For each deposition, the party presenting the testimony shall provide the Court
Deputy with the number of lines designated and counter-designated by each party so that the

Court Deputy can allocate between the parties the amount of time it takes to enter the deposition testimony into evidence.

The parties shall not present to the jury any attorney objections or colloquies.

## VI.     Exhibits

Pursuant to paragraph 1(d) of the Trial Management Order, Fed. R. Civ. P. 26(a)(3)(c), and as set forth in Local Rule 16.4(d)(6), the parties provide the following information regarding exhibits:

**Plaintiff Cryovac's Exhibits.**     Cryovac's list of exhibits that it may present at trial, other than those used solely for impeachment, is submitted as **Exhibit 11**.  Exhibit 11 also includes Pechiney's objections to certain Cryovac exhibits, as well as Cryovac's basis for the admissibility of the exhibits to which Pechiney objected.

**Defendant Pechiney's Exhibits.**     Pechiney's list of exhibits that it may present at trial, other than those used solely for impeachment, is submitted as **Exhibit 12**.  Exhibit 12 also includes Cryovac's objections to certain Pechiney exhibits, as well as Pechiney's basis for the admissibility of the exhibits to which Cryovac objected.

**Exhibit Copies.**  Each party has provided the other party copies of the exhibits on its exhibit list.  The parties agree that upon specific request, each party shall supply the other party with the best copy it has of any specific exhibit from its own exhibit list.

**Demonstrative Exhibits.**     The parties agree that each party must provide to the other a copy of any demonstratives it will use no later than 6:00 p.m. the night before such a demonstrative can be used.  The parties agree that this notice provision for demonstrative exhibits shall not apply to demonstrative exhibits created in the courtroom during testimony, to

the enlargement, highlighting, etc. of trial exhibits or of testimony. Between 7:30 p.m. and 8:00 p.m. on the day notice is given, the parties will meet and confer to attempt to resolve any objections to demonstrative exhibits.

**Delaware AO-187 Exhibit List.** Pursuant to paragraph 1(d) of the Court's Trial Management Order, each party will present to the Courtroom Deputy a copy of its completed AO-187 Exhibit List in hardcopy and in electronic format on Friday, June 9, 2006, one business day before the trial is scheduled to begin. The parties agree to provide each other with an identical copy of what each party files with the Courtroom Deputy, *i.e.*, a hardcopy and electronic copy of the party's AO-187 exhibit list, no later than 6:00 p.m. on June 9, 2006.

## VII.  Damages

An itemized statement from Plaintiff Cryovac setting forth all damages, including special damages, and Pechiney's response thereto are provided in **Exhibit 13**.

## VIII.  Bifurcated Trial

The parties do not seek a bifurcated trial in this case.

## IX.  *In Limine* Requests

Pursuant to the Court's Trial Management Order (D.I. 23, ¶ 1(g)) and Scheduling Order (D.I. 22, ¶ 16), Plaintiff Cryovac provides its *in limine* requests, as well as Pechiney's responses to those requests, in **Exhibit 14**.  Defendant Pechiney's *in limine* requests, as well as Cryovac's responses to those requests, are set forth in **Exhibit 15**.

## X.    Limitations, Reservations and Other Matters

A.    **Date and Length of Trial.**  The trial is currently scheduled to begin on June 12, 2006, pursuant to the Court's First Amended Scheduling Order (D.I. 237).  The probable length of trial is 10 days.  Pursuant to the Court's Scheduling Order (D.I. 22, ¶ 17), each party will have a total of 22.0 hours to present its case in full, including opening and closing arguments, transition statements, direct testimony, cross-examinations, redirect testimony, and recitation of deposition testimony.

Mark appropriate box:          Jury ____X____
                               Non-jury _____

B.    **Number of Jurors.**  There shall be eight jurors.

C.    **Jury Voir Dire.**  Pursuant to paragraph 1(h) of the Court's Trial Management Order, paragraph 16 of the Court's Scheduling Order, and Delaware Local Rule 47.1, each party may submit up to ten "yes/no" voir dire questions to the Court no later than May 10, 2006, at least three business days before the pretrial conference.  The parties will provide the Court with a copy of that submission on computer diskette in Word Perfect format.

D.    **Jury Instructions and Special Verdict Form.**  Pursuant to section 1(i) of the Court's Trial Management Order, paragraph 16 of the Court's Scheduling Order, and Delaware Local Rule 51.1, the parties will confer and file proposed jury instructions with the Court no later than May 10, 2006, at least three business days before the pretrial conference.  Pursuant to section 1(j) of the Court's Trial Management Order and Local Rule 51.1(c), each party may submit a special verdict form with the Court no later than May 10, 2006, at least three business days before the pretrial conference.  The parties will provide the Court with a copy of those submissions on computer diskette in Word Perfect format.

E.    **Issue of Inequitable Conduct:**

    1.    **Issue of Inequitable Conduct to be Tried to the Court**

Pursuant to the Court's prior rulings, the parties agree that the issue of inequitable conduct will be tried to the Judge outside the presence of the jury, between June 12 and June 24, 2006. Cryovac believes that time used by each party on the issue of inequitable conduct shall count towards the 22 hours allotted by the Court for presentation of the party's case. Pechiney will request at the pretrial conference that the Court clarify whether the time used on presentations not before the jury on the inequitable conduct issue counts toward the 22 hours.

    2.    **Expert Testimony Regarding Inequitable Conduct**

It is Cryovac's understanding that pursuant to the Court's prior rulings, expert testimony regarding inequitable conduct shall be limited to the testimony of Cryovac's expert Dr. Wilkes set forth in Dr. Wilkes's January 2, 2006 expert report filed with leave of the Court granted at the November 21, 2005 hearing on Pechiney's motion to amend to add Pechiney's unenforceability defense and counterclaim. It is Pechiney's understanding that Pechiney's expert Dr. Mount will testify before the jury on the disclosures in the Dallmann patent as part of the invalidity presentation. Pechiney believes that the Court can consider that testimony on the issue of materiality without further testimony by Dr. Mount.

F.    **Stipulations Regarding Exhibits.**   The parties agree that duplicate copies of documents (e.g., copies that are identical except for Bates number) may be omitted from this pre-trial order and that no party will object to use of a copy of a document with a witness (whether testifying live or by deposition) on grounds that the exhibit marked at a deposition has a different Bates number than the exhibit used at trial.

The parties continue to work to see if they can reach a further stipulation regarding authenticity of exhibits. Cryovac has proposed and Pechiney has rejected the following:

> "Each document produced by the parties in this action shall be deemed authentic and a non-hearsay statement under Federal Rules of Evidence 801(d)(2) and 901, unless:
>
> 1.    From the face of the document it is clear that the producing party was not the author of the document; or
>
> 2.    Either party has a good faith basis to assert that a particular document was altered, that the producing party was not the author of the document, or is for some reason not an accurate copy of the document as maintained in the files of the producing party."

Pechiney has proposed and Cryovac has rejected the following:

> "The parties do not object to any document for lack of authenticity if it was produced by one of the parties in this litigation unless (1) it appears to have been fraudulently created or altered, (2) the document includes handwriting and there is no indication who wrote the handwriting (such indication can be provided by the document itself or by testimony including deposition testimony), or (3) there is no indication who wrote the document and the document does not identify on its face that it was prepared on behalf of one of the parties. Likewise, the parties do not object to any document on hearsay grounds if it is clear from the face of the document that it was created by one of the parties or by an individual working for one of the parties, and it was not created or altered fraudulently or for litigation. The fact that a document was produced from a party's files alone, however, will not preclude a hearsay objection."

G.    **Other Matters.**   Pechiney reserves the right to modify its pretrial submissions as necessary based on the Court's recent rulings on claim construction (4/13/06) and on all other motions (4/17/06).  Cryovac opposes this purported reservation of rights to the extent that Pechiney attempts to add issues, facts, or other information not previously disclosed in this Pretrial Order.

H.    <u>**Cryovac's Objections to Pechiney's Responses to Cryovac's Statement of Damages.**</u>  Cryovac objects to Pechiney raising issues related to damages that were not

previously raised or discussed in Pechiney's expert reports, Pechiney's Rule 26(a)(1) disclosures, or Pechiney's responses to contention interrogatories directed to the issue of damages. Cryovac notes that these newly-raised issues include Pechiney's new positions regarding marking/notice, future sales, and the accuracy of calculations, which were raised by Pechiney for the first time on or after April 11, 2006. Cryovac points out that by that time, the parties had already exchanged initial and supplemental exhibit lists, the parties had already identified their witnesses, the parties had already exchanged their statements of issues of fact and expected proofs for all the issues in the case, and the parties had already exchanged *in limine* requests. Cryovac submits that allowing Pechiney to add these new positions to the case would be unfairly prejudicial to Cryovac. Therefore, Cryovac maintains that Pechiney should be precluded from raising such untimely damages issues. Cryovac argues that if Pechiney is allowed to argue and present evidence regarding these issues or positions, which were not disclosed to Cryovac in Pechiney's expert reports, Rule 26(a)(1) statements, or contention interrogatory responses, then Cryovac should be allowed to obtain needed discovery and to modify the necessary and appropriate sections of the Pretrial Order to present evidence responding to such positions.

Pechiney believes that its submissions are timely and notes that the so-called "not previously raised" issues simply address the failure of Cryovac to meet its burden on damages. Pechiney maintains that Pechiney's Response to Cryovac's Statement of Damages provided notice of these issues in a timely fashion and well in advance of filing the Pretrial Order. Also, Pechiney notes that any documents relevant to the marking issue should have been produced as Pechiney had promulgated several document requests to which marking information would have been responsive.

XI.   Certificate of Attempted Resolution of Controversy

Both parties certify that two-way communication has occurred between the parties in a good faith effort to explore the resolution of the controversy by settlement. However, no agreement has been reached.


IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court. This order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.


DATED: _____ , 2006


_____
UNITED STATES DISTRICT JUDGE


APPROVED AS TO FORM AND SUBSTANCE:

_____
ATTORNEYS FOR PLAINTIFF CRYOVAC

John W. Shaw  (No. 3362)
Karen E. Keller  (No. 4489)
Michele Sherretta  (No. 4651)
Elena C. Norman (No. 4780)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP

The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600

Of Counsel:
Ford F. Farabow
Joann M. Neth
Martin I. Fuchs
Rebecca D. Hess
Courtney B. Meeker
Mark J. Feldstein
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Ave., N.W.
Washington, D.C. 20001
(202) 408-4000


        /s/ N. Richard Powers
ATTORNEYS FOR DEFENDANT PECHINEY

N. Richard Powers (No. 494)
Rudolf E. Hutz (No. 484)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange St.
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Of Counsel:
Donald R. Cassling
Steven R. Trybus
Shelley Smith
Patrick L. Patras
Gregory D. Bonifield
Brian P. O'Donnell
Joseph A. Schouten
Sara E. Tonnies
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611-7603
(312) 222-9350