# EXHIBIT 3

**Exhibit 3:  Pechiney's Essential Facts at Issue and Expected Proofs Thereon**

Pechiney believes the following are Contested Issues of Fact to be decided:

1.      Has Pechiney proven that claim 11 of the '419 patent is anticipated by the prior art?

2.      What is the level of ordinary skill in the art to which claim 11 of the '419 patent pertains?

3.      What is the scope and content of the prior art?

4.      What are the differences, if any, between the prior art and the subject matter of claim 11 of the '419 patent?

5.      Has Pechiney proven contemporaneous independent development of the invention of claim 11 of the '419 patent?

6.      Does the disclosure of the '419 patent inform persons ordinarily skilled in the art about the boundaries of the subject matter of claim 11?

7.      What is the full scope of the invention of claim 11?

8.      Did the written description of the '419 patent enable one of ordinary skill in the art to make and use the full scope of the invention of claim 11 without undue experimentation?

9.      Has Pechiney proven that claim 11 of the '419 patent is invalid under the written description requirement of 35 U.S.C. § 112, ¶ 1?

10.     Has Pechiney proven that material information was not provided to the patent examiner during the prosecution of the '419 patent?

11.     Has Pechiney proven that material information was withheld with the requisite intent during the prosecution of the '419 patent?

Exhibit 3 to the Pretrial Order
Page 1 of 19

12.    If Cryovac has met its burden of proof on all of the elements of the claim of tortious interference with prospective business relations, was Pechiney's solicitation of National Beef's business proper competition and therefore covered under the competitive privilege?

Exhibit 3 to the Pretrial Order
Page 2 of 19

**Pechiney's Expected Proof Regarding Issues on Which it Bears The Burden of Proof**

Pechiney will provide evidence that claim 11 of the '419 patent is invalid as anticipated under 35 U.S.C. § 102 by the prior art. Pechiney will provide testimony from its expert, Dr. Eldridge Mount, that the invention of claim 11 is anticipated as outlined in his reports. Pechiney will provide evidence that claim 11 is anticipated by prior art patents and publications, as well as by public use, knowledge and prior invention that was not abandoned, suppressed or concealed. Pechiney also will provide relevant factual testimony regarding this issue.

Pechiney also will provide evidence that claim 11 of the '419 patent is invalid under 35 U.S.C. § 103 because the claimed subject matter would have been obvious to one of ordinary skill in the art at the time of the alleged invention. Dr. Mount will provide testimony regarding the obviousness of claim 11 as outlined in his reports. Pechiney also will provide relevant factual testimony as to this issue.

Pechiney also will provide evidence of secondary considerations showing that the subject matter of claim 11 would have been obvious at the time of the alleged invention. For example, Pechiney will provide evidence of independent invention by others. Pechiney will provide testimony from Dr. Mount and from fact witnesses relating to this issue. To the extent that Cryovac attempts to provide evidence of secondary considerations of nonobviousness, Pechiney will provide evidence to negate any inference of nonobviousness showing for example the lack of the requisite nexus between Cryovac's alleged evidence of secondary considerations of nonobviousness and the subject matter of claim 11 of the '419 patent. Pechiney will provide testimony from both Dr. Mount and from fact witnesses regarding this issue.

Pechiney also will provide evidence that claim 11 is invalid under 35 U.S.C. § 112, ¶ 1

Exhibit 3 to the Pretrial Order
Page 3 of 19

because the '419 patent does not enable one of ordinary skill in the art to practice the full scope of the invention of claim 11 without undue experimentation. Dr. Mount will provide testimony that claim 11 is not enabled as outlined in his reports. Pechiney also will provide relevant factual testimony on this issue.

Pechiney further will provide evidence that claim 11 is invalid under 35 U.S.C. § 112, ¶ 1 for failing to meet the written description requirement. Pechiney will provide testimony from Dr. Mount as outlined in his reports and from fact witnesses on this issue.

Pechiney will provide evidence regarding the inequitable conduct that occurred during prosecution of U.S. Patent Application Serial No. 06/842,600 ("the '600 application"), which became the '419 patent. In particular, Pechiney will provide evidence that United States Patent No. 4,572,854 to Dallmann et al. ("the '854 patent") was not disclosed during the prosecution of the '419 patent.

The examiner for the '600 application, Thomas J. Herbert, issued an Office Action on May 8, 1987 rejecting claims 1-23 of the '600 application under 35 U.S.C. § 103 as being unpatentable over Sheptak in view of Mueller. Cryovac's prosecuting attorney for the '600 application filed an Amendment on May 22, 1987 in response to the May 8, 1987 Office Action. In the May 22, 1987 Amendment, Cryovac's attorney argued:

Claims 1,6, and 14 have been amended to clarify that:

(1)    at least seven layers are claimed; and that

(2)    these layers are symmetrically arranged.

Sheptak only teaches five layers, symmetrically arranged (14) and the overall eight layer structure (S) of the reference is assymetric.

Exhibit 3 to the Pretrial Order
Page 4 of 19

If, as the Examiner has argued, it would be obvious to employ the outer layers of Mueller at the outer layers in Sheptak, one of two structures would result. In the first, the outer layers 15 of five-layer film 14 of Sheptak would have the blends disclosed in Mueller. The second possibility would be that one of the layers 15 (adjacent the porous mass of glass fibers comprising batt 13) and layer 20 would be the "outer" layers of Mueller.

In either hypothetical, an oriented coextruded film having at least seven layers arranged symmetrically is not achieved.

As a result of the May 22, 1987 Amendment, the Examiner issued a Notice of Allowability on July 24, 1987 allowing all of the claims of the '600 application. Claim 1 of the '600 application became claim 11 of the '419 patent as issued.

Prior to Cryovac filing the May 22, 1987 Amendment, Examiner Edith Buffalow, the examiner for a copending Cryovac application, U.S. Serial No. 06/938,945 ("the '945 application"), issued an Office Action on May 12, 1987 listing the '854 patent as one of the references cited. The May 12, 1987 Office Action for the '945 application was addressed to the same Cryovac attorney prosecuting the '600 application.

Cryovac's prosecuting attorney was aware of the '854 patent at least as early as May 12, 1987. The '854 patent discloses an oriented coextruded film having at least seven layers arranged symmetrically. Cryovac could not have made the argument that "an oriented coextruded film having at least seven layers arranged symmetrically is not achieved" in its May 22, 1987 Amendment had Cryovac disclosed the '854 patent to Examiner Herbert.

Moreover, Cryovac's attorney disclosed the '854 patent in a copending Cryovac application, U.S. Serial No. 06/834,694 ("the '694 application") by filing an Information Disclosure Statement on January 12, 1988 ("January 12, 1988 IDS for the '694 application"). The '694 application resulted in the issuance of U.S. Patent No. 4,746,562 to Fant ("the Fant '562 patent"). Cryovac argues in this litigation that the '562 patent does not disclose an oriented

Exhibit 3 to the Pretrial Order
Page 5 of 19

film. Claim 11 of the '419 patent recites "An <u>oriented</u> coextruded film having at least seven layers arranged symmetrically...." Because the '854 patent discloses an <u>oriented</u> coextruded film having seven layers arranged symmetrically, the '854 patent is more material to the patentability of the claims of the '600 application than it was to the claims of the '694 application. Thus, Cryovac's attorney's citation of the '854 patent during the prosecution of the '694 application is proof of the materiality of the '854 patent to the '600 application.

The '854 patent is not listed in the '419 patent as one of the "References Cited" and there is no indication in the prosecution history of the '600 application that Cryovac ever disclosed the '854 patent prior to the time the '41 9 patent issued. Cryovac's attorney offered no explanation as to why he did not disclose the '854 patent in the prosecution of the '600 application. Based upon the lack of an explanation by Cryovac's attorney as to why the reference was cited in the Fant prosecution but not in the '419 prosecution and in balance with the materiality of the reference, the failure to cite the '854 patent in view of the arguments made during prosecution constitutes inequitable conduct.

Pechiney will provide evidence from Dr. Mount regarding the disclosure of the '854 patent, the Fant '562 patent and the prosecution of the '419 patent. Pechiney also will provide evidence from fact witnesses regarding this issue.

If the Jury finds that Cryovac has met its burden of proof on all of the elements of tortious interference with prospective business relations by a preponderance of the evidence, Pechiney will provide evidence that all of Pechiney's actions with regard to National Beef, including Pechiney's solicitation of National Beef's business for bone-in bags, were for the purpose of securing National Beef's business for Pechiney, were proper acts of competition, and therefore were covered under the competitive privilege.

Exhibit 3 to the Pretrial Order
Page 6 of 19

**Pechiney's Expected Proof Regarding Issues on Which Cryovac Bears The Burden of Proof**

**Infringement of Claim 11 of Cryovac's U.S. Patent 4,755,419:**

PECHINEY'S RESPONSE: Pechiney did not infringe claim 11 of the '419 patent for the reason, among others, that the layers in its Clearshield® products are not "arranged symmetrically," as required by claim 11. In addition, Pechiney has no liability for patent infringement because claim 11 of the '419 patent is invalid and the '419 patent is unenforceable based upon Cryovac's inequitable conduct during prosecution.

**Pechiney's Willful Infringement of the '419 Patent:**

PECHINEY'S RESPONSE: Pechiney sought and obtained oral and written opinions of noninfringement prior to, during and after development and marketing of its ClearShield products, as part of its prudent and good faith behavior in developing and marketing ClearShield products. During the process of formulating its opinions, outside patent counsel became aware of the '419 patent in connection with their investigation of whether there were patents that were barriers to Pechiney's development of ClearShield products. However, as that outside counsel stated in its oral opinions and in the subsequent written confirmation of the opinion of non-infringement, the reasonable conclusion reached by counsel was that the '419 patent did not present a barrier to development and marketing of ClearShield, because ClearShield did not infringe any claims of the '419 patent. As a result, it is not true that Pechiney viewed the '419 patent as an infringement "problem."

Exhibit 3 to the Pretrial Order
Page 7 of 19

It is not true that the only opinion of counsel that Pechiney received before it began selling Clearshield products was the written opinion letter from McDermott Will & Emery ("MW&E") of April 28, 2003. In addition to that written confirmation of counsel's opinion, Pechiney and various employees of Pechiney received oral opinions of noninfringement from MW&E. It is not true that those opinions were inadequate, contradictory, improperly conclusory or legally incompetent. It is also not true that those opinions were based on words that do not appear in the claims or that MW&E did not consider the '419 patent specifications in preparing its opinions.

Pechiney proceeded with the capital investment necessary to develop, produce and market ClearShield products only after being assured by respected outside patent counsel that ClearShield products did not infringe any patents, including the '419 patent. Certain Pechiney employees speculated that Cryovac might sue, despite the lack of infringement, because Cryovac then had approximately 95% of the market with its BoneGuard patch bag, and would go to great lengths to protect its market share and to keep others out of the market. Pechiney projected that ClearShield products would be profitable and that profitability was a major reason why Pechiney developed and marketed the ClearShield products. Pechiney also believed that it had a competitive privilege to seek to expand its market share in a market in which Cryovac then controlled 95% of the market.

Pechiney's subsequent written opinions of noninfringement were timely and are relevant in establishing the lack of willful infringement. One of the subsequent opinions was issued shortly after the Court of Appeals for the Federal Circuit issued the *Phillips* opinion, and is relevant to show Pechiney's continuing good faith and that the *Phillips* decision on the proper way to construe claims did not alter or weaken counsel's original opinions of noninfringement.

Exhibit 3 to the Pretrial Order
Page 8 of 19

All of these later written opinions were issued at various stages of ClearShield development, production and marketing, and are all relevant to show Pechiney's continuing good faith and prudent behavior and the lack of willfulness for any ClearShield activities occurring after the dates of those opinions.

**Tortious Interference:**

 **A. Existence of a Contract and/or Reasonable Expectation of a Contractual Relationship**

  1. <u>Contract Formation</u>

PECHINEY'S RESPONSE: Cryovac and National Beef did not enter into binding requirements contracts. Instead, the evidence will demonstrate that their arrangements amounted to non-binding pricing agreements, in which National Beef was never contractually obligated to purchase anything from Cryovac, but would receive certain rebates, services and discounts if it purchased a certain minimum amount. In fact, as National Beef executive Terry Wilkerson will testify,   REDACTED

Cryovac and National Beef manifested their agreement to proceed under a non-binding pricing agreement which did not obligate National Beef to purchase any products at all from Cryovac, but under which Cryovac promised certain benefits if National Beef in fact made purchases above a certain minimum amount. Pechiney has filed a motion for summary judgment seeking a ruling that the parties' agreements do not constitute binding and enforceable contracts, and that motion is currently pending before the court. The parties' negotiations did not demonstrate an objective agreement to be bound. To the contrary, particularly during the period from August of 2003 through March of 2005, both National Beef and Cryovac consistently acted

Exhibit 3 to the Pretrial Order
Page 9 of 19

as though there were no binding agreements between them and, indeed, Cryovac's sales manager

for the National Beef account knew from his discussions with National Beef during this time

period that National Beef did not consider itself to be in a binding contractual relationship with

Cryovac.

        2.    <u>Contract Terms</u>

PECHINEY'S RESPONSE: While the two non-binding pricing agreements between

Cryovac and National Beef are unambiguous, the clear and express language of those agreements

make clear that there is no minimum purchase requirement contained anywhere within the four

corners of those agreements, and that National Beef is not required by the clear and express

language of those agreements to purchase a single bag from Cryovac. Cryovac witnesses were

unable to point to any language in those agreements providing for any penalty to National Beef if

it failed to purchase a single bag (other than its inability to take advantage of price rebates and

discounts made available for a large number of purchases, which inability does not amount to a

legally recognized penalty at all). Each of the elements of the contract referred to by Cryovac as

objectively demonstrating National Beefs commitment to purchase its requirements from

Cryovac are completely consistent with a non-binding pricing agreement under which National

Beef is not required to purchase a single bag from Cryovac.

        i.    <u>The Parties' Negotiations</u>

PECHINEY'S RESPONSE: The parties' conduct during negotiation of the 2004 non-

binding pricing agreement does not demonstrate the existence of binding agreements between the

parties. To the contrary, it demonstrates the parties' contemporaneous belief that they were not

currently under a binding agreement, and that what they were negotiating was not a binding

Exhibit 3 to the Pretrial Order
Page 10 of 19

agreement, a fact that was, moreover, communicated to and expressly understood by Cryovac during the parties' negotiations.

ii.     Course of Dealing

PECHINEY'S RESPONSE: The provisions cited by Cryovac as supporting a finding that National Beef was contractually bound to purchase its packaging requirements from Cryovac are consistent with the non-binding pricing agreements that the parties actually executed. For example, the "minimum purchasing numbers" cited by Cryovac are expressly and unambiguously only minimum amounts that National Beef must purchase if it is to receive particular price rebates or discounts, and the agreements provide for no penalties if National Beef decides not to purchase a single bag from Cryovac. Moreover,

REDACTED

. In fact, as National Beef executive Steve

James will testify,                    REDACTED

         However, even if                REDACTED                              ts

         , that would not have required National Beef to do so going forward.

REDACTED

         Prior to 2004, the lowest cost provider was Cryovac. After 2004, it was Pechiney. As National Beef has testified, and as Pechiney recognizes and accepts,

REDACTED

         . To date, however, Cryovac has refused to consider offering National Beef a pricing structure that would be sufficient to undercut Pechiney's prices

Exhibit 3 to the Pretrial Order
Page 11 of 19

and terms. That internal decision of Cryovac's is the only thing keeping Cryovac from recovering National Beefs business even today.

National Beef never committed itself contractually to place all of its business with Cryovac. Each of the factors cited by Cryovac in support of its argument that there were binding requirements contracts between Cryovac and National Beef are consistent with there being only a non-binding pricing agreement between the parties. National Beef did not purchase all of its packaging requirements from Cryovac, but, even if National Beef had done so, that would have proven only that National Beef bought from Cryovac when it was the low-cost producer, but that National Beef was free to switch to another producer if that producer offered a technically sufficient, lower-cost product.

National Beef never committed itself contractually to place all of its business with Cryovac. Each of the factors cited by Cryovac in support of its argument that there were binding requirements contracts between Cryovac and National Beef are consistent with there being only a non-binding pricing agreement between the parties. National Beef did not purchase all of its packaging requirements from Cryovac, but, even if National Beef had done so, that would have proven only that National Beef bought from Cryovac when it was the low-cost producer, but that National Beef was free to switch to another producer at its option.

# REDACTED

The evidence will demonstrate that Pechiney does not have 100% of National Beefs packaging business and that Cryovac is free to

Exhibit 3 to the Pretrial Order
Page 12 of 19

seek National Beefs business at any time by providing a lower cost alternative to the ClearShield products.

National Beef never committed itself contractually to place all of its business with Cryovac. Each of the factors cited by Cryovac in support of its argument that there were binding requirements contracts between Cryovac and National Beef is consistent with there being only a non-binding pricing agreement between the parties. National Beef never purchased all of its packaging requirements from Cryovac, but, even if National Beef had done so, that would have proven only that National Beef bought from Cryovac when it was the low-cost producer, but that National Beef was free to switch to another producer if that producer offered a technically sufficient, lower-cost product at its option.

 **REDACTED** The evidence will demonstrate that Pechiney does not have 100% of National Beefs packaging business and that Cryovac is free to seek National Beefs business at any time by providing a lower cost alternative to ClearShield.

   iii. Course of Performance

PECHINEY'S RESPONSE: National Beef never purchased all of its packaging requirements from Cryovac, but, even if National Beef had done so, that would have proven only that National Beef bought from Cryovac when it was the low-cost producer, but that National Beef was free to switch to another producer if that producer offered a technically sufficient, lower-cost product.

   iv. Trade Usage

PECHINEY'S RESPONSE: The evidence will not establish that the phrase "supply contract" is equivalent to the term "requirements contract," as understood in the industry. In

Exhibit 3 to the Pretrial Order
Page 13 of 19

addition, Cryovac would need expert opinion testimony to establish trade usage and Cryovac has

not offered such expert opinion within the time limitations set forth in the Court's scheduling

order of December 14,2004. *Steuart Petroleum Co. v. Salomon, Inc.*, 1989 WL 100517, *6 (Del.

Super. Ct. Aug. 21,1989) (holding that a "a party must usually call an expert witness" to establish

a trade usage); *see also* J. White & R. Summers, Uniform Commercial Code (3d Ed.) at 140. As

a result, Cryovac should not be permitted to introduce such testimony. To the extent Cryovac

seeks to introduce such testimony through Karl Deily, Pechiney has filed a motion in limine

seeking to bar Mr. Deily from giving improper opinion testimony of this type. That motion

should also be construed to bar similar testimony by any other Cryovac witness.

      3.    Reasonable Business Expectancy

      PECHINEY'S RESPONSE: The evidence, including the conduct of Cryovac and

National Beef from August of 2003 through March of 2005, will demonstrate that Cryovac had

no reasonable prospect of binding National Beef to a requirements contract. Indeed, the evidence

will demonstrate that National Beef has a policy of not entering such agreements and that the real

reason Cryovac lost the National Beef business was its refusal to offer pricing terms as favorable

as Pechiney was willing to offer. To the extent that Cryovac desires to get the National Beef

business back, all it has to do is to offer National Beef sufficiently more favorable pricing terms.

It is Cryovac's unwillingness to do so that is preventing Cryovac from getting additional business

from National Beef, and not anything that Pechiney has done.

    **B.**   **Pechiney's Knowledge of the Requirements Contract**

      PECHINEY'S RESPONSE: Pechiney could not have known of any binding requirements

contracts between Cryovac and National Beef. First, as described in earlier Pechiney responses,

Pechiney's summary judgment motion and the evidence will demonstrate that there were no

Exhibit 3 to the Pretrial Order
Page 14 of 19

binding requirements contracts between those parties. Second, the only two entities that would

have known whether there was a binding requirements contracts between Cryovac and National

Beef were the two contracting parties themselves. The evidence will show that National Beef did

not believe that it was subject to a binding requirements contract, and its conduct and

communications with Pechiney during the fall of 2003 and to the present day have been

consistent with that belief. The evidence will further show that Cryovac's conduct from August

2003 until March of 2005, when it moved to amend its complaint to add a tortious interference

count, was consistent with a reasonable belief that there was not, and never had been, a binding

requirements contract between Cryovac and National Beef. Pechiney was never told by a

National Beef General Manager that National Beef was contractually bound to purchase its

packaging requirements from Cryovac and denies that any statement that National Beef had

previously purchased its supplies from Cryovac demonstrated that it was contractually bound to

do so. Because it was unaware that any binding agreements existed, Pechiney did not ask about,

nor was it told, the specific terms of the 2003 and 2004 alleged agreements between Cryovac and

National Beef. Pechiney did not know that Cryovac's pricing to National Beef was contingent on

having 100% of their business. Indeed, far from containing a requirement that National Beef

purchase its packaging requirements from Cryovac, Cryovac's alleged contracts with National

Beef clearly state only that certain of its discounts and cash rebates are contingent upon National

Beef buying a minimum **REDACTED** ackaging, and there is no penalty in either of those

alleged contracts if National Beef fails to buy a single bag. Thus, even if Pechiney had been

aware of the terms of Cryovac's alleged contracts, which it was not, Pechiney had no reason to

think that Cryovac's pricing was contingent on getting 100% of National Beefs business.

Pechiney did not write a letter to National Beef acknowledging that Pechiney knew that Cryovac

Exhibit 3 to the Pretrial Order
Page 15 of 19

was National Beefs existing 100% supplier. Pechiney's testimony and internal documents will not show that Pechiney knew National Beef was planning to and did award a contract to a single company to supply 100% of National Beefs packaging needs. To the contrary, the evidence will demonstrate that National Beef did not in fact award 100% of its packaging requirements to Pechiney and **REDACTED**

Pechiney did not confirm any obligation to Cryovac on the part of National Beef in any of its negotiations with National Beef. Pechiney admits that its internal profit projections, in evaluating how much it could lower its prices, were based in part on assuming that National Beef would purchase 100% of certain types of packaging from Pechiney, but denies that it understood that National Beef would be contractually committed to doing so, and, in fact, asserts affirmatively that National Beef made clear that they would not enter into a contractually binding commitment to do so.

### C.    Pechiney's Intentional Interference with the Requirements Contract or Cryovac's Business Expectancy

PECHINEY'S RESPONSE: Pechiney developed and manufactured its ClearShield products with the intent of selling the products to as many customers as possible, including National Beef. Before developing its ClearShield products, Pechiney had been able to sell its packaging products to customers, but hoped to increase its sales with the addition of its ClearShield bone-in meat packaging products.

### D.    Pechiney's Interference with the Requirements Contract or Cryovac's Business Expectancy was Improper

PECHINEY'S RESPONSE: Pechiney did not infringe the '419 patent. However, if a jury were to conclude otherwise, that infringement cannot itself, as a matter of law, constitute the type and level of wrongful conduct necessary to establish tortious interference, unless the jury also

Exhibit 3 to the Pretrial Order
Page 16 of 19

finds that the infringement was both willful, and committed with the malicious intent to interfere with the alleged contracts between Cryovac and National Beef. *L & M Enter., Inc.. v. BEZSensors & Sys. Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000) That legal issue is currently the subject of a Pechiney motion for summary judgment and a Cryovac motion in limine. To permit Cryovac to establish wrongful conduct through non-willful and non-intentional infringement of the patent laws is contrary to the pre-emption authorities and other authorities previously cited in Pechiney's motion for summary judgment. The evidence will demonstrate that, if Pechiney is determined to have infringed, that infringement was neither willful nor intentional.

 **REDACTED**

The evidence will demonstrate that those Cryovac tactics extended far beyond mere litigation, to include trade disparagement of Pechiney's products and services, for example.

### Damages Adequate to Compensate Cryovac for Patent Infringement

PECHINEY'S RESPONSE: As discussed in previous responses, the evidence will demonstrate that Pechiney acted prudently and in good faith in developing and marketing its ClearShield products. Mere infringement does not automatically result in an award of lost profits, as Cryovac claims in its statement above. The evidence will show that, in the event the jury determines that Pechiney infringed the '419 patent, that lost profits are not appropriate,

Exhibit 3 to the Pretrial Order
Page 17 of 19

because Cryovac cannot prove that any sales that were lost to Pechiney would have been made by Cryovac "but for" Pechiney's infringement. The evidence will show, for example, that National Beefs decision to purchase from Pechiney was based on cost, not on any attribute of ClearShield film that relates to claim 11. Moreover, there were multiple acceptable non-infringing alternatives to the ClearShield products that were or would have been available during the period of alleged infringement. Thus, even if the jury concludes that there was infringement, the damages adequate to compensate Cryovac for that infringement would be a reasonable royalty of between 2% and 3%. Any proper award to Cryovac for patent infringement damages must be limited to the time period prior to the expiration of the '419 patent.

## Damages Adequate to compensate Cryovac for Tortious Interference

PECHINEY'S RESPONSE: The evidence will demonstrate that National Beef never committed itself to purchase all of its packaging requirements from Cryovac. The evidence will also show that it was and has been National Beeps policy to purchase its packaging needs from the lowest-cost provider of technically sufficient packaging. The evidence will also demonstrate that the parties' conduct was consistent with that policy and that the sole reason that Cryovac lost the National Beef business is that it refused to offer more favorable pricing terms and guarantees than those offered by Pechiney. Furthermore, it is only Cryovac's continued refusal to offer more favorable pricing terms that prevents Cryovac from regaining the packaging business from National Beef. Cryovac is not entitled to damages under any theory for any infringement prior to the filing of this litigation because it has not met its burden of proving that it gave notice to the public that one of more of its products are covered by the '419 patent, as required by 35 U.S.C. § 287. *[Cryovac points out that Pechiney told Cryovac to add this last sentence at 5:10 p.m. the*

Exhibit 3 to the Pretrial Order
Page 18 of 19

*night before the Pretrial Order was to be filed with the Court.  Cryovac objects to Pechiney adding this untimely issue to the case for all the reasons set forth in Section X.G. of the Pretrial Order.]*

Exhibit 3 to the Pretrial Order
Page 19 of 19

# EXHIBIT 4

## Exhibit 4

## Agreed to Issues of Law to be Decided by the Court

The parties agree that the following are the issues of law to be decided by the Court:

**Issue 1:**     **If Cryovac and National Beef formed contracts in March 2003 and January 2004, whether any ambiguities exist in those contracts that require admission of extrinsic evidence?**

> Authority:

> *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del. 1992)

**Issue 2:**     **If Cryovac and National Beef formed contracts in March 2003 and January 2004, the construction of any unambiguous terms of these contracts.**

> Authority:

> *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1195 (Del. 1992)

**Issue 3:**     **Whether interference with contractual and prospective contractual relations may be improper even though innocent means are employed.**

> Authority:

> RESTATEMENT (SECOND) OF TORTS, § 767 cmt. c (1979);  RESTATEMENT (SECOND) OF TORTS, § 766c;  RESTATEMENT (SECOND) OF TORTS, § 768;  *DP--Tek, Inc. v. AT&T Global Info. Solutions Co.,* 100 F.3d 828 (10th Cir. 1996);  *Waldenrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.,* 992 F.2d 59 (4th Cir. 1993);  *Ball Corp. v. Xidex Corp.,* 967 F.2d 1440 (10th Cir. 1992);  *All Pro Maids, Inc. v. Layton,* 2004 Del. Ch. 116 (Del. Ch. Aug. 9, 2004);  *Enzo Life Sciences Inc. v. Digene Corp.,* 295 F.Supp.2d 424 (D. Del. 2003);  *Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737 (Mo. Ct. App. 1984);  Am. Bar Ass'n, MODEL JURY INSTRUCTIONS: BUSINESS TORTS LITIGATION (3rd ed. 1996) § 2.09(2).

Exhibit 4 to the Pretrial Order
Page 1 of 9

<u>Issue 4:</u>     Whether or not Cryovac is entitled to prejudgment and/or post-judgment interest for any damage due to Pechiney's infringement of the '419 patent and, if so, how much?

> <u>Authority:</u>
>
> *General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983); *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Nickson Indus., Inc. v. Rol Mfg. Co. Ltd.*, 847 F.2d 795 (Fed. Cir. 1988).

<u>Issue 5:</u>     If Pechiney is found to have willfully infringed the '419 patent, whether Cryovac is entitled to enhanced damages or an award of attorneys' fees?

> <u>Authority:</u>
>
> *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir. 1986); *Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996); *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997); *Tate Access Floors, Inc. v. Maxcess Technologies, Inc.*, 222 F.3d 958 (Fed. Cir. 2000); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338 (Fed. Cir. 2000); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785 (Fed. Cir. 1995); *Read Corp v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992); *Paper Converting Machine Co. v. Magna-Graphics Corp.*, 745 F.2d 11 (Fed. Cir. 1984).

<u>Issue 6:</u>     If Pechiney prevails and the '419 patent is found to be unenforceable due to inequitable conduct, whether the case is exceptional under 35 U.S.C. § 285?

> <u>Authority:</u>
>
> *eSpeed, Inc. v. Brokertec USA, L.L.C.*, --- F.Supp.2d ----, 2006 WL 416860 (D. Del. Feb. 22, 2006); *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047 (Fed. Cir. 1987); *Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688 (Fed. Cir.), *cert. denied*, 469 U.S. 851 (1984); *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*, 910 F.2d 804 (Fed. Cir. 1990); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527 (Fed. Cir. 1995); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990); *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1984).

Exhibit 4 to the Pretrial Order
Page 2 of 9

Issue 7:      If this case is found to be exceptional under 35 U.S.C. § 285, the amount of

reasonable attorney fees pursuant to 35 U.S.C. § 285 to which the prevailing party is

entitled.

Authority:

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983); *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527 (Fed. Cir. 1995); *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805 (Fed. Cir. 1990); *Hughes v. Novi American, Inc.*, 724 F.2d 122 (Fed. Cir. 1984).

Issue 8:      The amount of costs to which the prevailing party is entitled.

Authority:

*Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056 (Fed. Cir. 1983);  *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983);  Fed. R. Civ. P. 54(d); *Smith v. SEPTA*, 47 F.3d 97, 99 (3rd Cir. 1995).

## Agreed to Equitable Issue To Be Decided By Court

The parties agree that the following is the equitable issue to be decided by the Court:

Issue 9:      Whether the '419 patent is unenforceable due to inequitable conduct because

Mr. Quatt did not disclose U.S. Patent No. 4,572,854 (the Dallmann patent) to the U.S.

Patent and Trademark Office during prosecution of the '419 patent?

Authority:

*Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872-877 (Fed. Cir. 1988) (en banc);  *Digital Control Inc. v. Charles Machine Works*, 437 F.3d 1309 (Fed. Cir., Feb. 8, 2006);  *FMC Corp. v. Manitowac Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1440 (Fed. Cir. 1991);  *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co. Inc.*, 439 F.3d 1335 (Fed. Cir. 2006);  *Novo Nordisk Pharms., Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1359 (Fed. Cir. 2005);  *Bruno Independent Living Aids v. Acorn Mobility Servs.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005);  *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1275 (Fed. Cir. 2001);  *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256-57 (Fed. Cir. 1997);  *Molins PLC v. Textron*, 48 F.3d 1172 (Fed. Cir. 1995); *Merck & Co. v. Danbury Pharmacal, Inc.*, 873 F.2d 1418, 1421-22 (Fed. Cir. 1989).

Exhibit 4 to the Pretrial Order
Page 3 of 9

## Pechiney's Proposed Issues of Law

**Pechiney Issue 1:**    Whether the references relied upon by Pechiney are prior art to claim 11 of the '419 patent under 35 U.S.C. § 102?

Pechiney's Authority:

35 U.S.C. §§ 102(a), (b), (e), (g); *Novo Nordisk Pharms., Inc., v. Bio–Technology General Corp.*, 424 F.3d 1347, 1354-55 (Fed. Cir. 2005); *Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1280-81 (Fed. Cir. 2005); *Smithkline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1342-43 (Fed. Cir. 2005); *Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir. 2001); *Verdegaal Brothers, Inc. v. Union Oil Co.*, 814 F.2d 628, 631-32 (Fed. Cir. 1987).

Cryovac's Authority:

*Loral Fairchild v. Matsushita Elec. Indus. Co. Ltd.*, 266 F.3d 1358, 1361-63, 1365 (Fed. Cir. 2001); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996); 35 U.S.C. §§ 102(a), (b), (e), (g).

**Pechiney Issue 2:**    Whether claim 11 is enabled under 35 U.S.C. § 112, ¶ 1.

Pechiney's Authority:

*Plant Genetics Sys. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1339-40 (Fed. Cir. 2003); *In re Vaeck*, 947 F.2d 488, 495 (Fed. Cir. 1991).

Cryovac's Authority:

*Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1359-1361 (Fed. Cir. 1998); *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564-65 (Fed. Cir. 1996); *Koito Mfg., Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1155-1156 (Fed. Cir. 2004); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334-36 (Fed. Cir. 2003).

**Pechiney Issue 3:**    Whether claim 11 of the '419 patent is invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Exhibit 4 to the Pretrial Order
Page 4 of 9

Pechiney's Authority:

*IPLX Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005);
*Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005).

Cryovac's Authority:

*Metabolite Labs., Inc. v. Laboratory Corp. of Am. Holdings,* 370 F.3d 1354, 1366 (Fed.
Cir. 2004); *Energizer Holdings, Inc. v. Int'l Trade Comm'n,* 435 F.3d 1366, 1371 (Fed.
Cir. 2006); *Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n,* 161
F.3d 696, 706 (Fed. Cir. 1998); *Exxon Research and Eng'g Co. v. United States,* 265
F.3d 1371, 1380 (Fed. Cir. 2001).


**Pechiney Issue 4:**    **Has Pechiney proven by clear and convincing evidence that claim 11**

**of the '419 patent is invalid under 35 U.S.C. § 103, in light of the scope and content of the**

**prior art, the differences between claim 11 and the prior art, the level of ordinary skill in**

**the art, and the impact of relevant secondary considerations, if any, because the claimed**

**invention would have been obvious to one of ordinary skill in the art at the time of the**

**alleged invention?**

Pechiney's Authority:

*Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966); *Motorola, Inc. v. Interdigitial
Tech. Co.,* 121 F.3d 1461, 1472 (Fed. Cir. 1997); *Para-Ordnance Mfg., Inc. v. SGS
Importers Int'l, Inc.,* 73 F.3d 1085, 1088 (Fed. Cir. 1995); *B.F. Goodrich Co. v. Aircraft
Braking Sys. Corp.,* 72 F.3d 1577, 1582 (Fed. Cir. 1996); *In re GPAC Inc.,* 57 F.3d 1573,
1577 (Fed. Cir. 1995); *Ryko Mfg. Co. v. Nu-Star Inc.,* 950 F.2d 714, 715-16 (Fed. Cir.
1991); *Merck & Co. v. Biocraft Lab., Inc.,* 874 F.2d 804, 807-08 (Fed. Cir. 1989); *FMC
Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 527 (Fed. Cir. 1987); *EWP Corp. v.
Reliance Universal, Inc.,* 755 F.2d 898, 905 (Fed. Cir. 1985); *Stratoflex, Inc. v. Aeroquip
Corp.,* 713 F.2d 1530, 1035 (Fed. Cir. 1983).

Cryovac's Authority:

*Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.,* 183 F.3d 1347, 1356 (Fed. Cir. 1999);
*Gillette Co. v. S.C. Johnson & Son, Inc.,* 919 F.2d 720, 726 (Fed. Cir. 1990); *Lindemann
Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.,* 730 F.2d at 1452, 1462 (Fed. Cir.
1984).

Exhibit 4 to the Pretrial Order
Page 5 of 9

<u>Pechiney Issue 5:</u>     Whether Cryovac is entitled to lost profits for a portion of the hypothetical "but-for" distribution of Pechiney's sales irrespective of whether acceptable noninfringing alternatives to the patented product were available?

> <u>Pechiney's Authority:</u>
>
> *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.,* 1 F.3d 1214 (Fed. Cir. 1993); *DePuy, Inc. v. Zimmer Holdings, Inc.,* No. 02-4023 (N.D. Ill. 2005)(Order Granting Def.'s Mot. Limine, May 10, 2005).
>
> <u>Cryovac's Authority:</u>
>
> *See* this Court's April 17, 2006 Memorandum Opinion in this case (D.I. 306 at p.26); *State Indus., Inc., v. Mor-Flo Indus., Inc.,* 883 F.2d 1573, 1577-78, 1580 (Fed. Cir. 1989); *Ericsson, Inc. v. Harris Corp.,* 352 F.3d 1369, 1377-78 (Fed. Cir. 2003); *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1360-61 (Fed. Cir. 1999); *Advanced Medical Optics, Inc. v. Alcon Inc.,* 361 F. Supp.2d 404, 418 (D. Del. 2005).

<u>Pechiney Issue 6:</u>     Whether Cryovac is entitled to lost profits for its sales of a product competing with Pechiney's infringing products but not covered by the patent-in-suit?

> <u>Pechiney's Authority:</u>
>
> *King Instrument Corp. v. Perego,* 65 F.3d 941, 949 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1546-47 (Fed. Cir. 1995).
>
> <u>Cryovac's Authority:</u>
>
> *See* this Court's April 17, 2006 Memorandum Opinion in this case (D.I. 306 at pp. 25-26); *King Instrument Corp. v. Perego,* 65 F.3d 941, 949 (Fed. Cir. 1995); *Rite-Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1546-47 (Fed. Cir. 1995)

<u>Pechiney Issue 7:</u>     Whether the writings relied upon by Cryovac to form the alleged contracts between Cryovac and National Beef with which Pechiney allegedly tortiously interfered contain a binding quantity or exclusivity term.

Exhibit 4 to the Pretrial Order
Page 6 of 9

Pechiney's Authority:

Uniform Commercial Code § 2-201; KAN. STAT. ANN. § 84-2-201; MO. ANN. STAT. § 400.2-201; S.C. CODE ANN. § 36-2-201; *Simmons Foods, Inc. v. Hill's Pet Nutrition*, 270 F.3d 723 (8th Cir. 2001); *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421 (6th Cir. 1998); *Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989); *Gull Labs., Inc. v. Diagnostic Tech., Inc.*, 695 F. Supp. 1151 (D. Utah 1988); *Integrated Micro. Sys., Inc. v. NEC Home Elecs. (USA), Inc.*, 329 S.E.2d 554 (Ct. App. Ga. 1985).

Cryovac's Authority:

*See* Cryovac's Answering Brief in Opposition to Pechiney's Motion for Partial Summary Judgment on Tortious Interference Claims (D.I. 250) at pp. 15-32; *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001).

**Pechiney Issue 8:**    **If the writings relied upon by Cryovac to form the alleged contracts between Cryovac and National Beef do not contain a binding quantity or exclusivity term, do the writings form enforceable contracts even without such terms?**

Pechiney's Authority:

Uniform Commercial Code § 2-201; KAN. STAT. ANN. § 84-2-201; MO. ANN. STAT. § 400.2-201; S.C. CODE ANN. § 36-2-201; *Simmons Foods, Inc. v. Hill's Pet Nutrition*, 270 F.3d 723 (8th Cir. 2001); *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421 (6th Cir. 1998); *Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989); *Gull Labs., Inc. v. Diagnostic Tech., Inc.*, 695 F. Supp. 1151 (D. Utah 1988); *Integrated Micro. Sys., Inc. v. NEC Home Elecs. (USA), Inc.*, 329 S.E.2d 554 (Ct. App. Ga. 1985).

Cryovac's Authority:

*See* Cryovac's Answering Brief in Opposition to Pechiney's Motion for Partial Summary Judgment on Tortious Interference Claims (D.I. 250) at pp. 15-32; *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001).

**Pechiney Issue 9:**    **If the writings contain a binding quantity or exclusivity term that can be determined from the language of the writings, without resort to parol evidence, what is the quantity of products that National Beef is required to purchase from Cryovac?**

Exhibit 4 to the Pretrial Order
Page 7 of 9

Pechiney's Authority:

Uniform Commercial Code § 2-201; KAN. STAT. ANN. § 84-2-201; MO. ANN. STAT. § 400.2-201; S.C. CODE ANN. § 36-2-201; *Simmons Foods, Inc. v. Hill's Pet Nutrition*, 270 F.3d 723 (8th Cir. 2001); *Orchard Group, Inc. v. Konica Med. Corp.*, 135 F.3d 421 (6th Cir. 1998); *Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989); *Gull Labs., Inc. v. Diagnostic Tech., Inc.*, 695 F. Supp. 1151 (D. Utah 1988); *Integrated Micro. Sys., Inc. v. NEC Home Elecs. (USA), Inc.*, 329 S.E.2d 554 (Ct. App. Ga. 1985).

Cryovac's Authority:

*See* Cryovac's Answering Brief in Opposition to Pechiney's Motion for Partial Summary Judgment on Tortious Interference Claims (D.I. 250) at pp. 15-32; *Comrie v. Enterasys Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch. 2003); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 290 (Del. 2001).

**Pechiney Issue 10:**    **If the March 3, 2003 and January 13, 2004 letters from Cryovac to National Beef are determined to constitute enforceable contracts between Cryovac and National Beef, whether any ambiguities exist in the March 3, 2003 or January 13, 2004 contracts.**

Authority:

*Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1995 (Del. 1992).

**Pechiney Issue 11:**    **Whether proof that interference with contractual and prospective contractual relations is improper requires proof that wrongful means are employed or whether it is sufficient to prove that innocent means are employed?**

Pechiney's Authority:

RESTATEMENT (SECOND) OF TORTS, § 767 cmt. c (1979); *L & M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284 (10th Cir. 2000).

Exhibit 4 to the Pretrial Order
Page 8 of 9

Cryovac's Authority:

RESTATEMENT (SECOND) OF TORTS, § 767 cmt. c (1979); *Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737 (Mo. Ct. App. 1984).

The parties disagree as to whether the above listed Pechiney Issues 1-11 are issues of law to be decided by the Court. Cryovac maintains that Pechiney's Issue 1 is a factual issue for the jury to decide. *See Mahurkar v. C.R. Bard, Inc.,* 79 F.3d 1572, 1578 (Fed. Cir. 1996) ("[T]his court concludes that no reasonable jury could have found clear and convincing evidence that the Cook catalog was prior art.")

Cryovac also contends that it is well-settled Supreme Court law "that any legal issues for which a trial by jury is timely and properly demanded be submitted to a jury." *Dairy Queen, Inc. v. Wood,* 369 US 469, 473 (1962). Cryovac notes that in the present case a jury demand was timely and properly submitted. Thus, Cryovac maintains that Pechiney's Issues 2, 3, and 4 are legal issues that must be submitted to the jury with appropriate jury instructions as to the law to be applied by the jury.

Cryovac further maintains that Pechiney's Issues 5 and 6 are legal issues already decided by the Court in Cryovac's favor in the Court's April 17, 2006 Memorandum Opinion. (D.I. 306 at pp. 25-26.)

Cryovac further maintains that Pechiney's Issues 7, 8, 9, 10, and 11 mix legal and factual questions, are factual issues, assume factual issues that must be submitted to the jury, misstate the law, and/or misstate Cryovac's contentions.

Exhibit 4 to the Pretrial Order
Page 9 of 9

# EXHIBIT 5

## Exhibit 5: Witnesses Cryovac Expects to Call

I.    Expert witnesses:

A.    Dr. Robert M. Kimmel

Dr. Kimmel will testify based on his opinions set forth in his expert reports (dated May 19, June 17, 2005, June 17, 2005, July 11, 2005, and August 18, 2005. Dr. Kimmel will testify about the manufacture structure, and analysis of multilayer plastic films, including Pechiney's ClearShield™ product. Dr. Kimmel will also testify that Pechiney's ClearShield™ product infringes claim 11 of the '419 patent. Dr. Kimmel will also testify that Cryovac sells a product (LID 1050) covered by claim 11 of the '419 patent. Dr. Kimmel may also testify in rebuttal regarding any testimony or evidence within his field of expertise (design, structure, and manufacture of films) introduced at trial by Pechiney. (*Pechiney objects to any testimony of Dr. Kimmel that is duplicative of the proposed testimony of Dr. Wilkes; Pechiney further objects to Dr. Kimmel offering any testimony on the doctrine of equivalents as he has never opined on this issue.*)

B.    Dr. Garth L. Wilkes

Dr. Wilkes will testify regarding the opinions set forth in his expert reports (dated June 17, 2005, July 15, 2005, and January 2, 2006), his affidavit (dated November 17, 2005), and at his deposition on July 20, 2005. As discussed therein, Dr. Wilkes will testify regarding the validity of the '419 patent, and (1) that films covered by claim 11 of the '419 patent are not anticipated by any of the publications relied on by Pechiney, (2) that films covered by claim 11 of the '419 patent would not have been obvious to one of ordinary skill in the art at the time Mr. Shah's invention was made, including that such a person would not have been motivated to make such a film, that the prior art taught away from such a film, and that such a person would not

Exhibit 5 of the Pretrial Order
Page 1 of 6

have had a reasonable expectation of success that such a film could be made and would be useful, (3) that the film of claim 11 of the '419 patent was unexpectedly superior than prior art films, and (4) that the commercial embodiments of claim 11 (Cryovac's LID 1050 and Pechiney's ClearShield™) were commercially successful due to the merits of the invention of claim 11 of the '419 patent.

Dr. Wilkes will also testify that the specification of the '419 patent (in combination with knowledge existing in the art at the time the '419 patent application was filed) enabled a person of ordinary skill in the art to make and use the invention of claim 11 without undue experimentation as of the date Mr. Shah's patent application was filed. If necessary, Dr. Wilkes will also testify that the subject matter of claim 11 is definite and fully supported by a written description in Mr. Shah's patent application and that this description is sufficient to show that Mr. Shah had possession of this invention when the patent application was filed.

Dr. Wilkes will also testify about the prosecution history of the '419 patent (_Pechiney objects to any expert testimony by Dr. Wilkes on the prosecution history as he is not qualified to give such testimony_) and that U.S. Patent No. 4,572,854 (the Dallmann patent) is merely cumulative or less material than the references already before the USPTO during prosecution of the '419 patent. In that regard, Dr. Wilkes will testify that the Dallmann patent, in fact, taught away from the invention of the '419 patent. (_Pechiney objects to any expert testimony by Dr. Wilkes on the "materiality" of the Dallmann patent as he has never opined on this issue._) Consistent with the above, Dr. Wilkes may also testify in rebuttal to any testimony or evidence introduced at trial by Pechiney which is within Dr. Wilkes's field of expertise (polymers and polymer films, their physical and chemical properties, processing, and applications of those films). For example, Dr. Wilkes may provide rebuttal testimony to rebut Dr. Mount's testimony

Exhibit 5 of the Pretrial Order
Page 2 of 6

about the existence of acceptable non-infringing alternatives to ClearShield™, should the court permit Dr. Mount to give such testimony.  (*Pechiney objects to any testimony of Dr. Wilkes that is duplicative of the proposed testimony of Dr. Kimmel; Pechiney further objects to Dr. Wilkes offering any testimony on the doctrine of equivalents as he has never opined on this issue.*)

C.    James J. Nawrocki

Mr. Nawrocki will testify based on his opinions set forth and discussed in his reports (dated May 19, 2005, July 25, 2005, and August 30, 2005) and at his depositions (given on July 12, 2005 and September 1, 2005) and in response to any testimony offered by Pechiney on damages issues.  His opinions relate to the subject of damages resulting from Defendant's infringement of the '419 patent and tortious interference with Cryovac's contracts with National Beef.  His opinions will include an economic analysis of Cryovac's lost profits, an economic analysis of a reasonable royalty on the '419 patent, Cryovac's damages from Pechiney's tortious interference, and appropriate measures of pre-judgment interest.  Consistent with the above, Mr. Nawrocki may also testify in rebuttal to any testimony or evidence introduced by Pechiney that is within his field of expertise (*e.g.*, analyzing licenses and calculating reasonable royalties and lost profits).  (*Pechiney objects to any opinion testimony of Mr. Nawrocki that was not disclosed prior to the close of expert discovery, including opinions on 1) unjust enrichment damages; 2) lost profits for patent infringement assuming that Curwood's products are acceptable non-infringing alternatives based on sales Cryovac allegedly would have made under alleged contracts with National Beef and Packerland; 3) lost profits based on the assumption that Cryovac would have made 100% of Pechiney's allegedly infringing sales to National Beef and 90% of Pechiney's allegedly infringing sales to other customers; and 4) any other previously undisclosed opinions contained in Cryovac's Itemized Statement of damages.*)

Exhibit 5 of the Pretrial Order
Page 3 of 6

II.    Fact Witnesses:[1]

Kelly Ahlgren (by deposition)
100 Rogers Bridge Rd
Duncan, SC 29334

Duane Buelow (by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

Richard Company (live and/or by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

Karl Deily (live)
100 Rogers Bridge Rd
Duncan, SC 29334

Michael Douglas (by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

Reverand Ennis Fant (by deposition)
4 Smokerise Ct
Greenville, SC 29607

Steven L.  Fuller (live and/or by deposition)
2 Woodberry Drive
Greenville, SC 29615

Steve Garland (by deposition)
100 Rogers Bridge Rd
Duncan, SC 29334

Mr. Tom Grabowski (live and/or by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

---

[1] Cryovac reserves the right to call any person live for whom Pechiney objects to using deposition testimony.

Exhibit 5 of the Pretrial Order
Page 4 of 6

Mr. Steve James (by deposition)
National Beef Packaging Co., LLC
12200 N. Ambassador Drive
Kansas City, MO 64163

Tommy Kay (by deposition)
409 E. Butler Road
Mauldin, SC 29662

Mr. Frank Kitchell (live and/or by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

James Mize (live and/or by deposition)
100 Rogers Bridge Rd
Duncan, SC 29334
(*Pechiney objects to James Mize testifying by deposition*)

Chad Mueller (live and/or by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

Mark Quatt (live)
100 Rogers Bridge Rd
Duncan, SC 29334

Gautam P. Shah (live and/or by deposition)
100 Rogers Bridge Rd
Duncan, SC 29334
(*Pechiney objects to Gautam P. Shah testifying by deposition*)

David Stringer (by deposition)
206 Shadow Wood Drive
Simpsonville, SC 29681

Robert Taylor (live and by deposition)
8770 West Bryn Mawr Ave
Chicago, Illinois 60631

Exhibit 5 of the Pretrial Order
Page 5 of 6

Terry Wilkerson (by deposition)
National Beef Packaging Co., LLC
12200 N. Ambassador Dr.
Kansas City, MO 64163

Mr. George Wofford (by deposition)
100 Rogers Bridge Rd
29334

Mr. Anthony York (live)
100 Rogers Bridge Road
Duncan, SC  29334

Exhibit 5 of the Pretrial Order
Page 6 of 6

# EXHIBIT 6

## Exhibit 6:  Witnesses Pechiney Expects to Call

I.    Expert Witnesses:

A.    Larry Evans  (live)

Larry Evans will offer expert testimony regarding the reasonable royalties Cryovac would be entitled to recover assuming Cryovac prevails on its patent infringement claim, the unavailability of lost profits for sales after March of 2006 as damages for patent infringement, the reasons he did not calculate lost profits damages for patent infringement and the impossibility of calculating with any certainty either lost profits or unjust enrichment damages for tortious interference.  Mr. Evans will also provide testimony concerning the qualifications of Cryovac's damages expert, James Nawrocki, the methodology Mr. Nawrocki employed to formulate his opinions, the contents of his reports, and his deposition and trial testimony.

Finally, to the extent that Cryovac's expert witnesses are permitted to testify regarding damages opinions that were not previously disclosed in their expert reports or during their depositions, or to testify regarding facts not previously disclosed in their reports or during their depositions, Mr. Evans will give expert testimony addressing those opinions and/or facts. *[Cryovac objects to Dr. Evans' testimony for all the reasons set forth in Cryovac's Opening and Reply Briefs in Support of Cryovac's Motion to Exclude Expert Testimony Pursuant to Principles Announced in Daubert.  This motion is pending before the Court.]*

Exhibit 6 of the Pretrial Order
Page 1 of 7

B.    Dr. Eldridge Mount  (live)

Dr. Mount will testify regarding the technology relating to the '419 patent and the manufacture of the accused ClearShield® products. Dr. Mount will testify that the accused ClearShield products, and each of them, do not infringe claim 11 of the '419 patent.

Dr. Mount will also testify that claim 11 of the '419 patent is invalid because it is anticipated by the prior art references, that claim 11 of the '419 patent is invalid as the subject matter of claim 11 would have been obvious to one of ordinary skill in the art at the time the invention was made over the disclosures of the prior art taken alone or in proper combination (including testifying about the scope and content of the prior art, the level of skill in the art, the differences, if any, between the prior art and the subject matter of claim 11, and any secondary considerations) and that claim 11 of the '419 patent is invalid because the '419 patent does not provide an adequate written description of or an enabling disclosure of the subject matter of claim 11 of the '419 patent. *[Cryovac objects to Dr. Mount's testimony regarding his opinions on invalidity based on the uncorroborated recollections of Mr. Gilbert, for all the reasons set forth in Cryovac's Opening and Reply Briefs in Support of Cryovac's Motion to Exclude Expert Testimony Pursuant to Principles Announced in Daubert. This motion is pending before the Court.]* Dr. Mount will testify regarding the materiality of U.S. Patent No. 4,572,854 to the '419 patent. *[Cryovac objects to Dr. Mount testifying regarding the materiality of U.S. Patent No. 4,572,854 to the '419 patent prosecution because Pechiney did not seek leave of the Court to submit such expert testimony when Pechiney moved to amend to add its unenforceability defense and counterclaim and because Dr. Mount did not provide an expert report on this subject.]* Dr. Mount will also testify about the existence of acceptable noninfringing alternatives to ClearShield® film. *[Cryovac objects to Dr. Mount testifying regarding his opinions on the*

Exhibit 6 of the Pretrial Order
Page 2 of 7

*acceptability of non-infringing alternatives, for all the reasons set forth in Cryovac's Opening*

*and Reply Briefs in Support of Cryovac's Motion to Exclude Expert Testimony Pursuant to*

*Principles Announced in Daubert. This motion is pending before the Court.]*

Dr. Mount will also provide testimony concerning the qualifications of Cryovac's

technical experts Dr. Kimmel and Dr. Wilkes, the methodology Drs. Kimmel and Wilkes

employed to formulate their opinions, the contents of their reports, and their deposition and trial

testimony.

The detailed reasons for his opinions are set forth in his expert reports dated May 19,

2005, June 17, 2005, July 1, 2005, and September 13, 2005, the exhibits thereto, and in his

deposition.

Finally, to the extent that Cryovac's expert witnesses are permitted to testify regarding

infringement, validity, or noninfringing alternative opinions that were not previously disclosed in

their expert reports or during their depositions or to testify regarding facts or opinions not

previously disclosed in their reports or during their depositions, Dr. Mount will give expert

testimony addressing those opinions and/or facts.

II.    Fact Witnesses Pechiney Will Call:

    a.    Luis Bogran  (live)
       908 W. Verdigris Parkway
       Catoosa, OK  74015

    b.    Michael Douglas  (live or by deposition)
       2301 Industrial Drive
       Neenah, WI  54956

    c.    Margaret Duncan  (live)
       McDermott, Will & Emery
       227 West Monroe
       Chicago, IL  60606-5906

Exhibit 6 of the Pretrial Order
Page 3 of 7

d.  Seymour Gilbert  (live)
    Rutgers University (retired)
    48 Rolling Hills
    Lenox, MA  01240

*[Cryovac objects to Pechiney calling Dr. Gilbert as a witness for all the reasons set forth in Cryovac's in limine request #1 in Exhibit 14 of the Pretrial Order.]*

e.  Ilene Gordon  (live)
    8770 West Bryn Mawr Avenue
    Chicago, IL  60641

f.  Tom Grabowski  (live or by deposition)
    8770 West Bryn Mawr Avenue
    Chicago, IL  60641

g.  Steven James  (by deposition)
    National Beef Packaging Co., LLC
    12200 N. Ambassador Drive
    Kansas City, MO  64163

h.  Frank Kitchel  (live or by deposition)
    8770 West Bryn Mawr Avenue
    Chicago, IL  60641

i.  Chad Mueller  (live or by deposition)
    Scholle Corporation
    200 W. North Avenue
    Northlake, IL  60164

j.  Mark Quatt  (live or by deposition)
    100 Rogers Bridge Road
    Duncan, SC  29334

*[Cryovac objects to Pechiney using Mr. Quatt's deposition for any purpose other than contradicting or impeaching Mr. Quatt pursuant to Fed. R. Civ. P. 32(a)(1). Mr. Quatt is not an officer, director, managing agent or 30(b)(6) witness and thus his deposition testimony is not admissible pursuant to Fed. R. Civ. P. 32(a)(2). Nor is his testimony permitted pursuant to any of the subparagraphs of Fed. R. Civ. P. 32(a)(3).]*

k.  Stephen Scherrer  (live)
    McDermott, Will & Emery
    227 West Monroe
    Chicago, IL  60606-5096

l.  Gautam Shah  (live or by deposition)
    100 Rogers Bridge Road
    Duncan, SC  29334

Exhibit 6 of the Pretrial Order
Page 4 of 7

m.　Jonathan Spadt  (live)
Ratner Prestia
Suite 301
One Westlakes, Berwyn
P.O. Box 980
Valley Forge, PA  19482
*[Cryovac objects to Pechiney calling Mr. Spadt as a witness for
all the reasons set forth in Cryovac's in limine request #2 in
Exhibit 14 of the Pretrial Order.]*

n.　Robert Taylor  (live or by deposition)
8770 West Bryn Mawr Avenue
Chicago, IL  60641

o.　Terry Wilkerson  (by deposition)
National Beef Packaging Co., LLC
12200 N. Ambassador Drive
Kansas City, MO  64163

III.　Fact Witnesses Pechiney May Call:

a.　Kelly Ray Ahlgren  (live or by deposition)
100 Rogers Bridge Road
Duncan, SC  29334

b.　Duane Buelow  (live or by deposition)
2301 Industrial Drive
Neenah, WI  54956

c.　Richard Company  (live or by deposition)
8770 West Bryn Mawr Avenue
Chicago, IL  60631

d.　Karl Deily  (live or by deposition)
100 Rogers Bridge Road
Duncan, SC  29334

e.　Stratos Dimas  (live)
3 Concord Farms
575 Virginia Road
Concord, MA  01742
*[Cryovac objects to Pechiney calling Dr. Dimas as a witness for
all the reasons set forth in Cryovac's in limine request #1 in
Exhibit 14 of the Pretrial Order.]*

f.　Ennis M. Fant  (live or by deposition)
4 Smokerise Court
Greenville, SC  29607

Exhibit 6 of the Pretrial Order
Page 5 of 7

g.  Stephen L. Fuller  (live or by deposition)
    2 Woodberry Drive
    Greenville, SC  29615

h.  Jeffrey Gardner  (live or by deposition)
    100 Rogers Bridge Road
    Duncan, SC  29334

i.  Steven B. Garland  (live or by deposition)
    100 Rogers Bridge Road
    Duncan, SC  29334

j.  Jennifer Ghate  (live)
    8770 W. Bryn Mawr Avenue
    Chicago, IL  60631

k.  Earl Hatley  (live)
    Honeywell International, Inc.
    101 Columbia Road
    Morristown, NJ  07962

l.  Mike Hoover  (live)
    2556 Wellington Court
    Evanston, IL  60201-4975

m.  Roger Kaas  (live)
    ISO Poly Films, Inc.
    101 ISO Parkway
    Gray Court, SC  29645

n.  Tommy Kay  (live or by deposition)
    409 E. Butler Road
    Mauldin, SC  29662

o.  Robert Kimmel  (live or by deposition)
    Clemson University
    233 Poole Agricultural Center
    Box 340320
    Dept. of Packaging Science
    Clemson, SC  29634-0320

*[Cryovac objects to Pechiney using Dr. Kimmel's deposition for
any purpose other than contradicting or impeaching Dr. Kimmel
pursuant to Fed. R. Civ. P. 32(a)(1).  Dr. Kimmel is not an
officer, director, managing agent or 30(b)(6) witness and thus
his deposition testimony is not admissible pursuant to Fed. R.
Civ. P. 32(a)(2).  Nor is his testimony permitted pursuant to any
of the subparagraphs of Fed. R. Civ. P. 32(a)(3).]*

p.  James Mize  (live or by deposition)
    100 Rogers Bridge Road
    Duncan, SC  29334

Exhibit 6 of the Pretrial Order
Page 6 of 7

q.    Stuart Prosser  (live or by deposition)
      100 Rogers Bridge Road
      Duncan, SC  29334

*[Cryovac objects to Pechiney using Mr. Prosser as a witness for
all the reasons set forth in Cryovac's in limine request #5 in
Exhibit 14 of the Pretrial Order.]*

r.    F. David Stringer  (live or by deposition)
      206 Shadow Wood Drive
      Simpsonville, SC  29681

s.    Garth L. Wilkes  (live or by deposition)
      3345 Laurel Drive
      Blacksburg, VA  24060

*[Cryovac objects to Pechiney using Dr. Wilkes' deposition for
any purpose other than contradicting or impeaching Dr. Wilkes
pursuant to Fed. R. Civ. P. 32(a)(1).  Dr. Wilkes is not an
officer, director, managing agent or 30(b)(6) witness and thus
his deposition testimony is not admissible pursuant to Fed. R.
Civ. P. 32(a)(2).  Nor is his testimony permitted pursuant to any
of the subparagraphs of Fed. R. Civ. P. 32(a)(3).]*

t.    Jay Wilson  (live or by deposition)
      100 Rogers Bridge Road
      Duncan, SC  29334

u.    George Wofford  (live or by deposition)
      100 Rogers Bridge Road
      Duncan, SC  29334

v.    Anthony York  (live or by deposition)
      100 Rogers Bridge Road
      Duncan, SC  29334

*[In addition to these general objections, Cryovac incorporates its specific objections set forth in
Cryovac's Objections to Pechiney's Deposition Designations in Exhibit 10 of the Pretrial
Order.]*

Exhibit 6 of the Pretrial Order
Page 7 of 7

# EXHIBIT 7

**Exhibit 7: Cryovac's Deposition Designations and Pechiney's Counter-Designations**

| | | |
|---|---|---|
| **Kelly Ray Ahlgren**<br><br>8/10/2005 | Cryovac Designations | 6:9-12; 8:21-9:9; 11:11-15; 13:17-19; 14:7-12; 23:15-17; 26:20-27:6; 48:11-12; 48:14-15; 55:2-8; 55:22-56:11; 57:20-58:3; 58:5-7; 61:14-62:5; 67:4-5; 67:9-68:2; 68:18-22; 69:5-13; 72:18-73:4; 74:7-16; 77:4-10; 77:13-78:3; 78:6-15; 78:20-79:1; 79:3-4; 79:6-14; 80:14-81:1; 81:10-82:7; 82:14-84:6; 85:4-5; 85:7; 85:9-15; 101:21-103:1; 107:16-17; 107:20-108:3; 159:18-20; 159:22-160:6; 179:9-12; 179:15-21; 199:10-11; 199:13-17; 203:2-8; 217:4-7; 217:10-21; 222:3-8; 223:1-14; 229:11-232:2 |
| | Pechiney Counter-Designations | 13:20-14:2; 14:18-15:7; 24:12-15; 51:21-52:2; 52:9-53:22; 58:8-14; 59:2-10; 67:6-8; 69:1-4; 69:14-70:2; 70:6-18; 73:21-74:6; 78:4-5; 74:16-19; 79:2; 79:5; 79:15-80:13; 81:2-9; 82:8-13; 84:7-19; 85:16-19; 100:4-11; 103:2-9; 106:10-107:7; 107:18-19; 160:7-13; 180:1-18; 199:19-22; 200:9-14; 212:17-213:8; 217:2-3; 222:9-22; 223:22-224:10 |
| **Duane Buelow**<br><br>7/27/2005 | Cryovac Designations | 12:4-5; 13:11-16; 14:20-15:7; 15:15-16:10; 17:7-12; 17:15-19; 18:11-19:11; 19:17-20:20; 21:5-7; 21:10-11; 25:5-26:6; 39:1-3; 39:18-20; 40:15-41:4; 42:22-43:8; 44:1-15; 45:2-46:8; 47:7-14; 49:18-50:5; 52:17-53:8; 60:20-22; 61:20-62:2; 67:1-68:17; 77:20-78:20; 79:2-4; 79:8-14; 80:20-81:4; 81:15-21; 82:19-83:2; 83:5-9; 87:10-15; 87:20-88:3; 112:7-8; 112:11-15; 112:17-113:3; 118:2-4; 118:10-16; 124:22-125:3; 125:6-7; 127:17-20; 128:5-13; 141:3-142:2; 142:15-143:9; 143:21-144:16; 145:12-22; 146:8-10; 146:12-14; 146:19-147:21; 148:1-9; 148:20-149:2; 149:11-16; 150:3-6; 151:8-9; 152:3-6; 153:1-13; 153:20-154:5; 154:10-17; 156:21-157:5; 158:4-7; 161:12-21; 164:10-16; 165:18-166:11; 172:12-18; 174:18-175:22; 177:16-178:7; 178:10-11; 178:14-179:5; 179:17-20; 180:16-20; 181:12-20; 183:5-11; 183:14-22; 195:19-21; 196:1-2; 196:5-8; 196:15-197:21; 206:4-207:6; 208:5-16; 215:8-9; 215:13-216:9; 216:18-19; 216:22-217:5; 217:7-22; 218:3-10; 219:11-220:10; 222:21-223:5 |

Exhibit 7 to the Pretrial Order<br>Page 1 of 10

| | | |
|---|---|---|
| | Pechiney Counter-Designations | 24:5-25:4; 39:11-14; 40:8-14; 44:16-45:1; 47:15-18; 50:6-21; 62:3-6; 83:3-4; 112:9-10; 125:4-5; 128:2-4; 146:4-5; 146:11; 149:3-10; 151:10-152:2; 153:14-19; 154:6-9; 154:18-156:20; 157:6-158:1; 166:12-18; 178:12-13; 183:12-13; 216:20-21; 218:1-2 |
| **Richard Company**<br><br>8/23/2005 | Cryovac Designations | 4:22-5:2; 5:8-6:6; 6:14-7:1; 7:4-5; 8:10-14; 8:19-9:5; 9:9-13; 10:2-6; 10:16-12:5; 12:15-14:20; 15:14-21; 16:8-17:1; 17:13-19:15; 20:6-13; 21:7-23:3; 23:17-21; 25:15-19; 26:4-27:15; 28:19-29:2; 29:14-31:3; 31:12-32:18; 33:2-35:18; 36:10-38:1; 38:16-21; 40:22-41:6; 43:17-44:11; 44:22-45:9; 45:19-46:6; 46:16-47:10; 48:5-49:18; 50:3-50:16; 52:2-20; 53:4-8 |
| | Pechiney Counter-Designations | 19:16-20:5; 38:2-15 |
| **Michael Douglas**<br><br>8/3/2005 | Cryovac Designations | 12:3-4; 13:10-14:6; 14:18-20; 15:2-5; 15:14-16:11; 17:22-18:6; 18:15-19; 24:4-22; 25:8-15; 26:5-9; 26:19-27:11; 30:14-31:4; 32:5-14; 33:9-15; 33:22-34:11; 34:16-20; 35:13-16; 36:8-9; 37:6-17; 45:22-46:4; 49:1-5; 50:3-12; 52:1-6; 56:3-5; 56:9; 56:15-19; 57:4-12; 61:2-21; 63:20-22; 67:14-22; 68:11-14; 69:3-10; 70:5-9; 72:6-19; 74:22-76:8; 77:21-78:1; 79:20-81:5; 83:14-16; 84:11-14; 88:17-89:2; 90:10-22; 101:21-102:1; 102:16-21; 103:16-104:9; 105:22-106:3; 106:10-16; 110:13-17; 111:1-4; 111:19-112:5; 116:13-117:3; 118:7-9; 119:6-120:4; 121:4-123:11; 124:3-4; 124:8-17; 125:3-6; 128:7-10; 130:8-11; 132:21-133:7; 133:12-133:21; 134:8-11; 141:5-10; 142:1-7; 142:9-11; 142:22-143:4; 144:14-145:1; 145:16-146:8; 148:19-21; 151:4-7; 154:8-19; 160:4-7; 160:9-16; 160:21-161:1; 161:21-162:6; 162:13-16; 163:16-18; 164:6-165:14; 168:22-169:10; 170:5-12; 171:10-20; 174:3-16; 175:11-22; 181:19-182:1; 183:22-185:14; 188:8-14; 189:14-20; 190:7-20; 191:12-21; 193:8-194:7; 194:14-195:19; 196:2-6; 196:17-197:18; 198:1-22; 199:4-200:10; 203:18-204:16; 205:2-9; 205:19-206:6; 206:16-19; 207:10-22; 208:16-209:8; 209:12-15; 209:18-210:2; 210:17-19; 211:2-11; 212:15-213:18; 214:11-215:14; 216:17-217:2; 226:14-17; 227:2-9; 231:2-9; 231:16-232:13; 233:5-17; 248:21-249:1; 249:5-7; 249:21-250:2; 251:7-15; 251:21-252:2; 252:5-7; 252:11-18; 253:1-11 |

Exhibit 7 to the Pretrial Order
Page 2 of 10

| | Pechiney Counter-Designations | 18:22-19:9; 25:16-26:4; 36:2-7; 52:10-16; 53:4-10; 55:17-56:2; 57:13-21; 76:17-20; 81:11-83:6; 83:17-20; 96:15-97:6; 105:3-11; 107:17-22; 111:5-18; 112:6-22; 113:19-114:1; 114:14-18; 130:12-131:8; 134:12-16; 141:19:22; 143:5-9; 146:9-14; 154:20:155:1; 157:4-20; 159:10-160:3; 161:2-6; 162:7-12; 172:1-11; 188:1-7; 199:1-3; 201:1-21; 229:4-7; 253:12-16 |
|---|---|---|
| **Michael Douglas**<br><br>8/3/2005<br><br>30(b)(6) | Cryovac Designations | 7:6-7; 12:3-4; 12:16-22; 15:11-16:17; 18:22-19:9; 20:7-21:5; 23:13-15; 24:7-15; 25:9-22; 30:20-32:11; 33:7-13; 34:6-16; 35:6-37:3; 41:5-21; 42:16-43:8; 44:10-12; 46:4-8; 52:8-55:7; 55:17-57:3; 58:1-16; 64:5-65:2; 68:4-14; 69:4-71:1; 71:17-72:2 |
| | Pechiney Counter-Designations | 12:12-15; 13:1-9; 17:6-10; 21:6-12; 24:16-19; 33:2-6; 38:1-12; 43:9-11; 65:3-6; 69:3; 71:2-5 |
| **Ennis M. Fant**<br><br>7/19/2005 | Cryovac Designations | 6:11-14; 6:17-7:1; 8:20-9:12; 10:3-15; 20:3-8; 21:18-23:3; 23:18-20; 24:1; 39:19-22; 42:9-19; 44:22-46:13; 47:7-48:14; 54:21-55:9; 67:1-10; 67:18-68:6; 68:9-69:4; 119:6-7; 119:11-13; 119:19-21; 126:11-22; 132:11-133:1; 133:3; 133:5-8; 133:10-16; 133:18; 133:22-135:5 |
| | Pechiney Counter-Designations | 9:13-17; 9:22-10:2; 20:18-21:17; 23:4-17; 23:21-22; 119:8-10; 132:2; 132:10; 133:17 |
| **Steven L. Fuller**<br><br>8/18/2005 | Cryovac Designations | 4:6-7; 5:3-8; 6:15-18; 36:9-20; 47:14-19; 111:25-112:5; 113:4-12; 113:24-114:6; 114:16-115:4 |
| | Pechiney Counter-Designations | None |
| **Steven B. Garland**<br><br>8/9/2005 | Cryovac Designations | 8:10-14; 10:22-11:4; 13:6-21; 41:19-42:3; 43:6-9; 44:8-10; 83:1-4; 83:6-7; 98:3-8; 110:22-111:5; 113:14-17 |
| | Pechiney Counter-Designations | 40:15-41:8; 83:5 |

Exhibit 7 to the Pretrial Order<br>Page 3 of 10

| Thomas Grabowski 7/29/05 | Cryovac Designations | 11:11-18; 38:1-5; 44:13-49:8; 53:6-54:17; 55:7-56:7; 57:4-59:5; 59:13-62:5; 63:18-65:14; 67:15-68:12; 70:10-17; 71:14-73:16; 73:21-74:19; 74:22-76:2; 77:13-78:2; 78:11-15; 79:7-85:13; 85:16-86:11; 86:14-87:19; 88:8-91:1; 91:4-22; 97:13-98:20; 99:17-101:18; 102:21-22; 104:1-107:11; 107:14-108:22; 109:3-15; 109:18-110:5; 110:8-18; 110:21-112:9; 112:12-113:21; 114:2-13; 114:16-115:5; 115:8-17; 115:20-116:5; 119:21-120:10; 121:11-15; 122:16-124:14; 124:19-127:2; 127:5-9; 127:11-128:9; 131:1-3; 131:9-132:1; 133:12-21; 134:2-137:11; 137:14-139:12; 139:20-141:3; 141:9-10; 141:12-16; 142:1-19; 143:19-146:1; 146:4-16; 149:6-17; 150:4-8; 150:20-151:5; 151:10-17; 152:16-17; 152:19-153:22; 154:8-155:5; 155:11-156:16; 159:1-160:4; 161:13-162:18; 163:1-165:6; 165:10-19; 166:2-6; 166:10-22; 167:10-13; 167:22-168:11; 168:13-172:7; 172:10-14; 175:5-176:21; 177:13-20; 178:11-179:13; 179:16-180:1; 180:14-18; 180:21-181:9; 181:12-182:7; 184:2-185:18; 187:11-15; 187:18-188:7; 188:10-18; 191:19-20; 192:8-15; 197:1 -10; 198:14-17; 198:20-199:12; 199:18-20; 200:1-10; 201:10-202:15; 202:21-203:11; 205:15-206:19; 207:4-13; 207:16-20; 208:1-21; 209:4-5; 210:4-5; 210:18-19; 210:22-212:14; 212:22-214:1; 214:4-216:16; 217:1-219:5; 221:16-18; 223:9-233:3; 233:6-22; 234:3-8; 234:11-20; 235:1-3; 235:15-236:14; 236:18-237:7; 237:10-238:4; 238:10-13; 239:1-10; 242:16-243:12; 244:14-16; 246:2-14; 246:17-19; 252:2-5; 252:8-10; 252:19-253:14; 255:1-18; 255:21-256:2; 256:12-16; 256:19-22; 257:3-9; 257:17-20; 258:12-260:19; 260:22-261:10 |
| | Pechiney Counter-Designations | 52:14-53:5; 87:20-88:7; 98:21-22; 103:6-22; 120:13-121:10; 155:6-10; 208:22-209:3; 235:4-10 |
| Steven James 9/7/05 | Cryovac Designations | 7:20-25; 17:16-18:3; 18:17-22; 19:14-20:23; 27:10-13; 27:15-22; 32:8-21; 33:8-15; 33:22-25; 34:9-20; 35:22 36:14; 37:9-14; 37:19-38:2; 38:18-23; 39:4-5; 39:8-47:4; 47:8-24; 51:21-25; 53:2-10 |
| | Pechiney Counter-Designations | 22:19-25; 24:1-5; 34:8; 38:24-39:3; 47:5-7; 52:1-18; 52:24-53:1 |

Exhibit 7 to the Pretrial Order
Page 4 of 10

| | | |
|---|---|---|
| **Tommy Kay**<br><br>8/16/2005 | Cryovac Designations | 3:22-23; 6:3-11; 6:23-7:13; 8:23-25; 9:3-16; 10:3-11; 12:20-14:9; 14:17-15:3; 16:3-9; 16:15-17:2; 19:14-20:5; 32:20-22; 42:10-24; 46:11-15; 48:19-49:2; 52:12-53:5; 55:6-10; 55:13-56:7; 90:5-8; 92:13-15; 112:18-113:8; 121:15-20; 126:9-24; 127:3-19; 128:4-7; 128:11-129:8; 129:18-24; 139:3-7; 139:11-17; 172:11-21; 195:21-196:25; 203:13-25; 204:4-7 |
| | Pechiney Counter-Designations | 6:12-22; 15:14-16:2; 20:6-16; 46:3-5; 49:3-13; 90:22-91:1; 126:25-127:2; 129:9-17; 139:18-140:5; 195:9-18; 204:1-3; 204:8-205:2 |
| **Frank Kitchel**<br><br>7/28/05 | Cryovac Designations | 13:14-15; 14:11-13; 14:18-21; 15:2-4; 29:20-22; 31:13-32:5; 32:16-33:1 ; 38:10-19; 39:3-14; 45:20-46:5 ; 46:10-48:1; 52:8-9; 53:21-54:9; 54:20-55:17; 55:20-56:3; 67:20-68:14; 69:14-70:6; 70:9-15; 72:8-73:14; 73:18-20; 74:3-9; 75:7-13; 76:1-9; 77:2-3; 79:3-22; 83:16-84:15; 86:9-13; 86:18-87:2; 87:11-14; 87:17; 88:6-15; 88:18-89:9; 89:15-18; 90:17-22; 95:13-96:3; 96:6-12; 101:20-102:14; 103:20-105:20 ; 106:6-17; 107:12-19; 108:11-109:1; 109:9-15; 126:8-16; 129:2-22; 132:1-17; 140:22-141:3; 150:6-9; 150:13-16; 172:17-22; 174:4-16; 175:1-176:11; 177:12-179:12; 179:18-21; 180:2-6; 184:3-19; 186:1-10; 187:20-188:4; 188:14-189:13; 190:3-191:12; 192:2-193:18; 194:8-195:17; 196:13-20; 197:3-10; 197:16-200:12; 202:12-19; 208:21-209:3; 209:21-210:20; 211:14-214:19; 215:8-217:7; 218:3-219:1; 219:14-221:14; 222:16-224:15; 225:1-9; 225:17-21; 226:4-15; 229:1-5; 229:17-230:2; 230:7-231:17; 232:19-235:12; 241:1-13; 242:12-20; 243:11-20; 245:1-246:3; 246:13-247:1; 253:19-254:1; 254:16-255:9; 256:7-10; 256:14-257:5; 257:16-258:15; 258:22-261:3; 262:8-13; 262:20-266:6; 267:16-268:3; 269:19-270:15; 277:13-16; 279:15-280:10; 284:22-285:1; 285:6-7; 285:14-286:1; 286:7-11; 286:18-287:13; 289:6-14; 291:14-292:2; 292:5-17 |
| | Pechiney Counter-Designations | 52:11-53:15; 70:16-72:7; 73:21-74:2; 75:14-22; 77:4-79:2; 80:1-22; 95:6-12; 96:13-16; 107:20-108:6; 109:2-8; 109:16-21; 130:3-11; 150:10-12; 173:1-9; 176:12-21; 184:20-185:22; 188:5-13; 189:14-190:2; 201:7-202:11; 209:13-20; 210:21-211:7; 214:20-215:7; 217:8-218:2; 230:18-231:17; 243:21-244:9; 253:12-18; 254:2-9; 257:6-15; 269:5-18; 281:10-16 |

Exhibit 7 to the Pretrial Order<br>Page 5 of 10

| Chad Mueller<br><br>7/7/2005<br><br>Volume I | Cryovac Designations | 6:3-4; 12:5-13; 12:16-22; 13:4-14:1; 17:4-8; 17:14-19; 18:2-15; 20:6-11; 22:7-14; 25:9-26:12; 28:5-9; 32:7-9; 32:19-33:9; 39:21-40:17; 40:22-42:1; 42:7-13; 43:7-16; 46:14-47:9; 47:15-48:3; 48:7-48:22; 65:10-15; 66:20-67:11; 68:6-9; 68:16-69:1; 69:12-71:6; 74:10-75:5; 76:5-10; 79:4-8; 79:18-80:3; 83:11-18; 109:11-21; 110:7-14; 111:18-114:4; 114:19-21; 115:6-12; 116:6-16; 117:20-118:1; 118:8-122:10; 124:8-15 |
|---|---|---|
| | Pechiney Counter-Designations | 14:2-13; 18:16-20; 40:18-21; 44:6-8; 47:10-14; 71:13-72:1; 72:19-73:3; 115:13-20 |
| Chad Mueller<br><br>7/8/2005<br><br>Volume II | Cryovac Designations | 146:9-147:7; 147:15-148:5; 161:12-162:1; 162:5-19; 162:22-163:5; 164:10-12; 164:16-18; 166:7-16; 169:2-170:15; 175:12-176:1; 176:21-177:16; 185:8-16; 186:5-9; 187:1-190:7; 190:18-20; 191:4-11; 191:18-21; 192:11-15; 193:2-18; 194:3-196:2; 196:14-197:1; 197:12-198:9; 202:10-205:3; 205:10-13; 206:4-18; 207:7-12; 209:11-21; 212:21-213:2; 213:6-10; 215:2-5; 217:4-218:14; 220:8-221:1; 221:14-223:21;225:5-226:1; 235:13-18; 239:6-10; 240:5-241:3; 243:10-15; 244:1-15; 246:2-7; 248:1-19; 250:6-17; 264:20-265:2; 267:11-268:16; 269:2-18; 270:7-271:11; 271:18-272:11; 273:1-4; 276:6-15; 280:3-6; 280:20-281:4; 290:18-291:11; 291:19-292:4; 292:12-292:19; 292:21-293:9; 293:12-18; 295:14-296:2; 297:15-298:2; 298:13-18; 299:2-8; 300:7-12; 307:20-308:19 |
| | Pechiney Counter-Designations | 148:6-10; 185:17-186:4; 191:12-17; 207:13-16; 213:3-5; 248:20-249:2; 249:7-11; 271:12-17; 276:22-277:3; 293:19-294:2; 294:5; 294:7-19; 294:22; 295:2-3; 295:5-8; 295:11-13; 296:3-7; 298:3-8 |

Exhibit 7 to the Pretrial Order<br>Page 6 of 10

| | | |
|---|---|---|
| **Gautam P. Shah**<br><br>8/11/2005 | Cryovac<br>Designations | 8:10-13; 11:14-12:7; 13:10-14:9; 33:15-34:11; 35:2-8; 35:10-13; 35:20-36:18; 41:1-6; 42:4-17; 47:21-49:2; 55:17-19; 55:21-56:4; 59:2-6; 59:11-20; 59:22-60:6; 60:16-19; 61:1-3; 61:5-6; 61:8-15; 63:5-9; 63:19-64:18; 64:22-65:4; 65:10-16; 65:20-66:8; 66:10-12; 66:18-21; 67:6-8; 68:18-22; 70:2-71:1; 73:2-19; 73:21-74:5; 75:3-7; 75:12-15; 80:9-17; 81:13-15; 82:7-12; 83:6-8; 83:10-12; 84:10-15; 85:5-8; 85:10-18; 90:10-20; 92:5-13; 92:18-93:1; 95:3-8; 95:20-96:6; 99:18-100:4; 100:11-101:10; 105:20-106:14; 116:18-117:1; 117:13-16; 117:18-119:8; 129:16-130:5; 131:12-19; 134:1-3; 135:15-18; 141:10-142:1; 144:15-20; 145:15-146:19; 146:21-148:3; 148:5-20; 148:22-149:15; 149:20-150:15; 169:15-17; 169:19-170:2; 170:4-6; 223:1-12; 223:14-20; 224:3-14; 258:11-259:11 |
| | Pechiney<br>Counter-<br>Designations | 33:12-14; 34:12-35:3; 41:19-42:2; 69:1-6; 74:6-75:2; 75:8-11; 80:18-21; 81:16-82:6; 83:1-5; 84:16-21; 85:19-86:9; 86:11-15; 90:21-91:1; 92:14-17; 96:7-11; 96:13-22; 100:5-10; 101:11-103:5; 103:7-105:5; 119:9-13; 134:4-9; 168:16-19; 168:21-169:10; 169:12-13 |
| **Gautam P. Shah**<br><br>8/11/2005<br><br>30(b)(6) | Cryovac<br>Designations | 6:9-13; 9:17-21; 10:19-21; 11:3-10; 15:1-12; 15:16-16:4; 16:16-18:10; 19:21-20:3; 21:22-22:9; 31:3-5; 31:20-32:1; 32:18-21; 34:9-12; 34:21-22; 35:3-4; 36:7-9; 36:12-17; 36:19-20; 37:16-18; 37:21-38:1; 38:6-15; 40:21-41:5 |
| | Pechiney<br>Counter-<br>Designations | 9:22-10:18; 31:6-19; 34:3-8; 34:13-20; 35:1-2; 35:5-36:6; 36:10-11; 36:18; 36:21-37:15; 37:19-20; 38:16-40:15 |
| **F. David Stringer**<br><br>8/19/2005 | Cryovac<br>Designations | 3:21-22; 5:1-8; 5:17-20; 6:22-7:2; 47:3-6; 55:23-56:5; 63:20-25; 79:25-80:3; 81:7-82:17; 83:4-85:2 |
| | Pechiney<br>Counter-<br>Designations | 46:16-47:2; 47:7-10; 56:6-9 |

Exhibit 7 to the Pretrial Order<br>Page 7 of 10

| **Robert Taylor**<br><br>7/14/2005 | Cryovac<br>Designations | 7:3-8; 7:15-8:15; 9:19-22; 10:2-4; 10:11-12:19; 12:21 -14:21; 15:4-6; 16:5-19:17; 21:9-22:9; 23:14-21; 24:1-9; 27:11-28:4; 29:11-14; 29:16-30:10; 30:16-31:3; 31:6-15; 32:1-33:14; 33:17-18; 34:5-35:7; 35:19-36:9; 37:5-38:17; 39:8-43:4; 43:13-44:4; 44:6-45:12; 45:21-48:21; 49:14-52:11; 52:14-54:14; 54:17-55:10; 55:13-21; 56:9-62:13; 63:12-65:20; 66:6-67:22; 68:11-69:20; 70:3-5; 71:17-20; 72:3-21; 73:18-86:21; 87:5-6; 87:9-93:17; 93:20-97:16; 98:1-112:5; 113:10-12; 116:1-117:13; 117:22-119:13; 119:20-122:21; 123:4-6; 125:3-13; 128:16-131:9; 131:11-132:16; 133:8-140:2; 140:9-145:16; 146:3-155:14; 156:8-159:19; 160:6-15; 161:3-162:8; 162:15-22; 163:13 -165:22; 166:2-4; 166:9-168:1; 168:4-169:1; 169:3; 171:11-14; 171:16- 175:15; 175:21-179:9; 183:7-8; 183:13-184:4; 186:13-188:3; 189:10-192:4; 192:21-199:17; 200:4-201:2; 201:11-202:11; 202:14-16; 203:1-14; 203:20-204:22; 205:9-10; 205:12-20; 206:21-210:8; 210:12-14; 210:17-211:3; 212:1-14; 213:4-214:10; 214:12-14; 214:20-215:4; 215:8-217:10; 219:22- 222:2; 222:9-224:6; 224:20-22; 225:8-230:3 |
| | Pechiney<br>Counter-<br>Designations | 10:7-10; 14:22-15:2; 22:6-8; 22:21-23:13; 26:22-27:10; 30:11-15; 31:16-21; 33:20-34:3; 36:14-16; 36:18-37:4; 65:21-66:5; 68:1-10; 69:21-70:2; 70:9-13; 70:18-71:16; 71:21-22; 72:22-73:13; 122:22-123:3; 123:19-125:2; 128:5-15; 132:17-133:7; 159:20-160:5; 179:11-12; 179:20-181:5; 181:12-14; 182:3-6; 184:5-186:6; 188:4-5; 188:10-16; 188:18-189:9; 217:16-218:2; 218:8-219:21; 224:7-18 |
| **Robert Taylor**<br><br>11/10/05<br><br>30(b)(6) | Cryovac<br>Designations | 9:7-10:6; 11:9-13; 13:12-21:9; 21:13-22:10; 22:14-23:18; 23:22-24:15; 24:17-36:9; 36:11-39:2; 39:4-41:7; 41:13-43:14; 43:20-44:10; 44:13-48:1; 48:3-49:2; 49:4-21; 50:17-51:8; 51:17-52:16; 53:4-22; 54:13-55:8; 55:10-58:10; 58:12-59:12; 60:20-61:21; 63:17-64:13; 64:17-68:2; 68:5-12; 68:16; 68:18-70:3; 70:7-71:4; 71:6-72:3; 72:5-74:8; 74:10-75:5; 75:11-20; 75:22-77:2; 77:13-80:7; 80:9-15; 80:18-82:15; 82:20-90:2; 91:11-96:2; 96:4-5; 96:8-108:1; 108:3-109:19; 110:2-111:13; 111:20-112:17; 113:8-115:17; 115:19-117:9; 117:21-120:22; 121:2-136:22; 137:3-14; 137:16-138:15; 138:17-142:12; 142:14-143:11; 143:13-147:15; 147:22-149:5; 153:15-154:18; 154:20-155:5; 155:8-156:14; 156:16-157:19; 158:3-159:18; 159:21-162:4; 162:6-18; 162:20-164:20; 164:22-167:18; 167:20-168:19; 169:3-11; 169:13-171:5; 171:13-173:7 |

Exhibit 7 to the Pretrial Order
Page 8 of 10

| | | |
|---|---|---|
| | Pechiney Counter-Designations | 11:7-9; 147:16-21; 159:19-20 |
| **Terry L. Wilkerson**<br><br>8/24/05 | Cryovac Designations | 12:7-13:4; 24:24-26:4; 35:13-36:16; 35:19-36:16; 40:13-41:14; 42:10-14; 43:17-45:10; 46:24-47:9; 48:18-49:10; 50:7-12; 51:12-52:7; 58:20-62:10; 62:12-16; 62:21-63:3; 63:7-23; 76:11-77:3; 77:20-79:25; 83:3-9; 99:9-100:6; 102:12-20; 106:16-107:9; 107:23-24; 108:4-111:16; 112:2-115:13; 115:14-115:23; 116:2-118:22; 119:5-23; 120:3-18; 120:24-122:3; 123:2-128:22; 129:2-132:21; 133:11-20; 134:1-2; 134:6-25; 135:3-136:3; 136:19-21; 137:2-139:12; 139:14-15; 140:25-141:17; 142:4-16; 143:9-144:19; 144:24-25; 145:3-5; 145:8; 145:24-148:11; 148:14-151:10; 151:15-153:3; 154:25-157:9; 157:12-25; 158:10-12; 158:22-159:7; 159:12-160:20; 161:17-164:5; 164:7-24; 165:13-14; 165:22-166:23; 167:3-14; 168:21-175:25; 176:9-20; 180:5-186:2; 186:5-187:7; 189:7-9; 189:13-23; 190:3-193:7; 193:20-197:11; 197:23-199:25; 201:4-9; 201:14-204:7; 204:11-205:19; 206:4-207:22; 207:25-208:9; 208:11-211:6; 211:9-213:13; 213:21-215:13; 215:20-216:18; 217:17-219:12; 219:16-17; 219:20-223:17; 226:3-6; 227:3-7; 232:8-233:1 |
| | Pechiney Counter-Designations | 45:10-46:20; 47:19-48:17; 52:23-53:3; 53:16-25; 56:2-10; 66:7-25; 69:15-71:5; 81:7-82:15; 89:9-90:3; 135:1-2; 225:21-226:2 |
| **George Wofford**<br><br>8/12/2005 | Cryovac Designations | 8:5-10; 10:14-21; 11:2-14; 12:14-19; 14:8-16; 17:2-10; 18:10-22; 24:17-25:1; 33:8-13; 34:4-6; 34:8-15; 81:4-20; 82:1-11; 82:14-83:17; 83:19-20; 83:22; 84:2-9; 84:21-85:13; 86:7-16; 86:18-87:2; 87:5-14; 87:16-88:1; 92:7-12; 98:22-99:10; 99:13-15; 99:17-19; 99:22-100:4; 100:6-8; 100:11-22; 105:17-20; 144:15-145:2; 145:5-10; 149:21-150:7; 154:8-9; 154:12; 154:14-155:5; 155:22-156:7; 156:9-18; 160:4-6; 160:8-10; 162:13-18; 163:1-8; 164:7-11; 164:16-22; 167:13-20; 167:22-168:3; 171:5-7; 171:20-172:11; 172:14-16; 195:22-196:5; 196:7-12; 196:15-197:8; 197:11; 197:13-17; 203:18-204:13; 208:2-16; 225:1-226:2; 228:15-229:19; 231:6-21; 232:13-234:2; 235:1-4; 236:8-237:17; 237:19-22; 238:12-239:7 |

Exhibit 7 to the Pretrial Order
Page 9 of 10

| | Pechiney Counter-Designations | 31:2-7; 31:18-32:6; 34:16-35:3; 84:10-20; 85:21-86:1; 88:2-15; 168:4-169:7; 171:12-15; 197:19-21; 204:14-22 |
|---|---|---|

Exhibit 7 to the Pretrial Order
Page 10 of 10