# EXHIBIT 14

**Exhibit 14: _In Limine_ Requests by Cryovac**

I.    **PECHINEY SHOULD BE PRECLUDED FROM OFFERING EVIDENCE FROM MR. GILBERT AND MR. DIMAS THAT ALLIED'S FILM C WAS ORIENTED**

Mr. Gilbert should be precluded from testifying at trial regarding the orientation of film C because (1) he lacks first hand knowledge regarding how the film was made and (2) his testimony recalling long-past events is uncorroborated and is, therefore, insufficient as a matter of law to invalidate the '419 patent and would be confusing to the jury. For these same reasons, and in addition to the objections set forth in Cryovac's objections to Pechiney's exhibit list, Mr. Gilbert's August 16, 2005, declaration [Tab A (DX 690)] should be excluded from evidence.

Mr. Gilbert does not profess to have any first hand knowledge as to how the films supplied to him by Allied were made, or if they were oriented, how they were oriented. Thus, Mr. Gilbert has no basis for opining as to whether the films were "oriented" as the term "oriented" is used in the patent-in-suit, and he should be prohibited from doing so in accordance with the requirements of Rule 701(a). F.R.E. 701(a) (limiting a lay witness's testimony to those opinions or inferences which are "rationally based on the perception of the witness").

Mr. Gilbert instead declares that it is his "recollection" that some of the physical tests he performed on the films showed that film C was oriented. However, he does not provide any physical records corroborating his recollection of these tests or their results, and Pechiney's expert Dr. Mount concedes that neither the Allied News Release nor the Journal of Commerce article provide any disclosure on how to orient [Tab B (Mount 8/4/05 tr.) at 183:9-13]. Not a shred of evidence corroborates Mr. Gilbert's statement that Allied's film C was oriented. "It is rare indeed that some physical record (_e.g._, a written document such as notes, letters, invoices, notebooks, or a sketch or drawing or photograph showing the device, a model, or some other

Exhibit 14 of the Pretrial Order
Page 1 of 21

contemporaneous record) does not exist." *Woodland Trust v. Flowertree Nursery Inc.*, 148 F.3d 1368, 1373 (Fed. Cir. 1998). For this very reason,"[t]he law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." *Finnigan Corp. v. ITC*, 180 F.3d 1354, 1366 (Fed. Cir. 1999); *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1218 (Fed. Cir. 2002) (The Federal Circuit affirmed the exclusion of uncorroborated testimonial evidence offered to establish invalidity of a patent because it was "unreliable and potentially confusing to the jury."); *IMX, Inc. v. Lendingtree*, LLC, 405 F. Supp. 2d 479, 490 n.6 (D. Del. 2005) (Uncorroborated testimony is not anticipatory prior art as a matter of law.).

Indeed, Mr. Gilbert's two decade old uncorroborated recollection is inconsistent with the contemporaneous Allied News Release and an internal Allied document, which indicate that film C was not oriented. In the Allied News Release, one of the documents Pechiney relies upon, there is a film key that expressly states the films' structures. [Tab C (DX 127) at PPPI 008495.] This key states that film F was "(oriented)," whereas, film C was not. [*Id.*] Moreover, the designation of "(oriented)" does not merely modify the polypropylene or "PP" layer; rather, an oriented polypropylene layer is noted as "OPP" elsewhere in the key. [*Id.*] The same is true with respect to the non-prior art 1987 Journal of Food Science article. [Tab D (DX 217).] In that article, film E was identified as "(oriented)," and film C was not. [*Id.* at PPPI 008454.]

Mr. Gilbert's recollection that film C was oriented is also contradicted by a document produced by Pechiney on November 28, 2005, after the close of discovery. [Tab E (DX 002).] In what appears to be an undated, confidential Allied Corporation document describing the films referred to in the Allied News Release, film F is referred to as "the oriented coextrusion." [*Id.* at PPPI 014283.] In light of this evidence, it is clear that the word "oriented" in the Allied News

Exhibit 14 of the Pretrial Order
Page 2 of 21

Release description of film F referred to film F in its entirety and did not merely modify polypropylene.

Additionally, this newly-produced confidential Allied Corporation document also includes the hand-written notation that "Item B is unoriented" followed by the statement that "[i]t's questionable here whether the addition of orientation provides that much more barrier for the money." [Tab E at PPPI 014284.] Film B, like film C, is not indicated as being oriented in the Allied News Release film key. [Tab C at PPPI 008495.] Rather, only film F is indicated as being oriented therein [*id.*], which is consistent with the newly-produced Allied document [Tab E at PPPI 014288-89], and compels the conclusion that only film F, and not film C, was oriented. Thus, Mr. Gilbert's twenty year old, uncorroborated memory that film C was oriented is contradicted by this newly-produced evidence as well.

Such inconsistencies are at the heart of the corroboration requirement. *See Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.*, 143 U.S. 275, 284 (1892) (wherein, the Supreme Court recognized over one hundred years ago that such evidence is "unsatisfactory" due to "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury"). Furthermore, "the need for corroboration exists regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation . . . or is uninterested but testifying on behalf of an interested party." *Finnigan*, 180 F.3d at 1367.

If offered at trial, Mr. Gilbert's wholly uncorroborated testimony regarding the alleged orientation of film C would be insufficient as a matter of law to establish invalidity of Cryovac's '419 patent. *See Texas Digital*, 308 F.3d at 1218. Therefore, it would be confusing to the jury to permit the testimony, and the jury may even be confused into thinking that Mr. Gilbert's

Exhibit 14 of the Pretrial Order
Page 3 of 21

"recollection" was corroborated by other Pechiney witnesses. To avoid such confusion, Mr.

Gilbert's testimony should be precluded and his declaration should be excluded from evidence.

Additionally, for these same reasons, Mr. Dimas should be precluded from testifying at

trial and his August 15, 2005, declaration [Tab F (DX 688)] should be excluded from evidence.

Like Mr. Gilbert, Mr. Dimas does not profess to have any first hand knowledge as to how the

films supplied by Allied were made, or if they were oriented, how they were oriented.

Therefore, his testimony is prohibited under Rule 701(a). Furthermore, Mr. Dimas's testimony

does not corroborate Mr. Gilbert's "recollection," and permitting Mr. Dimas to testify regarding

the Allied films may confuse the jury into thinking that he is corroborating Mr. Gilbert's

"recollection." *See Texas Digital*, 308 F.3d at 1218.

Exhibit 14 of the Pretrial Order
Page 4 of 21

## II.    PECHINEY SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING ITS TWO POST-INFRINGEMENT, POST-LAWSUIT OPINION LETTERS

Pechiney should be precluded from offering evidence at trial regarding the two opinion of counsel letters it obtained long after its infringing activity began and even after this infringement suit had been filed.   Because such late opinion letters are not relevant to an issue to be decided by the jury (i.e., willfulness), the opinions themselves (DX 590 and 672) should be excluded under Fed. R. Evid. 402 and 403 as irrelevant and likely confusing and/or misleading to the jury. Likewise, the author of the two late opinions, Jonathan Spadt, should not be allowed to offer testimony regarding those opinions, since such testimony would also not be relevant and would confuse and/or mislead the jury.  Fed. R. Evid. 701(b).

After Pechiney had notice of the '419 patent, it obtained an opinion of counsel, albeit inadequate and impermissibly conclusory, on April 28, 2003 from McDermott Will & Emery which mentioned the '419 patent. (DX 383.)  Pechiney began selling its accused ClearShield product in early 2004. (DX 479; PX 322.)   Cryovac then sued Pechiney on September 20, 2004 for infringing Cryovac's '419 patent.   (PX 7.)   Then, more than a year after launching its ClearShield product, and after this infringement suit was filed, Pechiney obtained two additional opinion of counsel letters from the firm RatnerPrestia on January 14, 2005 and July 20, 2005, respectively.  (DX 590 and 672.)  Both of those later "post-launch" opinions were authored by Jonathan Spadt.  (Id.)  Pechiney has placed both 2005 opinion letters on its exhibit list as

Exhibit 14 of the Pretrial Order
Page 5 of 21

Defendant's Exhibit 590 and 672, and Pechiney has listed Mr. Jonathan Spadt as a witness that Pechiney "will call."[1]  (Pretrial Order Exhibit 6.)

It is well-settled law that a potential infringer's affirmative duty to exercise due care to determine whether or not he is infringing includes "the duty to seek and obtain competent legal advice *before* the initiation of any possible infringing activity." *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380,1389-1390 (Fed. Cir. 1983) (emphasis in original).  In *Underwater Devices,* the Federal Circuit upheld a finding of willful infringement in part because the Defendant "did not receive the opinion of its patent counsel until...long after infringement had commenced and even after the complaint for the instant case was filed." *Id.* at 1390.  In another patent case involving pre- and post-infringement opinions, the District of Delaware further held that "[t]he proper reading of *Underwater Devices* is that only the pre-infringement opinions were relevant for the purposes of determining willfulness." *Studiengesellschaft Kohle mbH v. Dart Industries, Inc.*, 666 F. Supp. 674, 694 (D.Del. 1987).  Since Pechiney's two 2005 opinion letters were not obtained pre-infringement, they are "not relevant for purposes of determining willfulness." *Id.*

Whether an infringer's conduct is willful or not should be determined as of the time the infringing activity begins or soon after the party has notice of the existence of the relevant patent. In *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999), the Federal Circuit stated that the district court did not abuse its discretion in excluding evidence of post-infringement acts because "[t]he proper time to assess willfulness is at the time the infringer

---

[1] Although Cryovac amended its complaint to include a charge of <u>willful</u> infringement on July 29, 2005, Jonathan Spadt was not identified by Pechiney until *October 6, 2005* --long after the close of discovery on August 19, 2005--as a person "likely to have discoverable information that Pechiney may use to support[] its claims and defenses."

Exhibit 14 of the Pretrial Order
Page 6 of 21

received notice, making the relevance of later developments…questionable at best." (internal citations omitted.)

Similarly, in *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals*, 149 F.Supp.2d 659, 662 (Fed. Cir. 2001), Defendant Zenith wanted to rely on an opinion of counsel obtained after the "infringing act" occurred, in order to defeat a charge of willful infringement. However, the Federal Circuit reiterated that "[t]he willfulness of allegedly infringing activity is determined as of the date the activity began or the date on which the alleged infringer became aware of the patent, whichever is later. [citation omitted], accord *Odetics* ('The proper time to assess willfulness is at the time the infringer received notice,' making the relevance of later developments 'questionable at best.')" The Federal Circuit explained that "[s]uch later developments, however, would **not** be probative of Zenith's state of mind when it undertook the act of infringement." *Id.* at 663 (emphasis added).

Likewise, in *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259 (Fed. Cir. 1997), the infringer had obtained a total of eight opinions of counsel over the span of several years. Four opinions were obtained before the infringing activity began and four were obtained after the infringing activity had begun. The Federal Circuit reversed the district court's ruling of no willful infringement, stating that "the district court could only rely on those four opinions received prior to marketing [the] infringing catheter product in determining the reasonableness of [the infringer's] actions." *Id.*

As in *Critikon*, and consistent with the opinions in *Studiengesellschaft Kohle mbH*, *Odetics*, and *Eli Lilly*, the two opinions Pechiney obtained after Pechiney began selling ClearShield and after this infringement lawsuit began should not be relied upon by the fact-finder in determining the reasonableness of Pechiney's pre-infringing activity. Those two 2005 opinion letters were not obtained during the earlier, pertinent timeframe relevant for determining the

Exhibit 14 of the Pretrial Order
Page 7 of 21

willfulness of the infringer's actions. Evidence that is not relevant to an issue to be decided (e.g., willfulness of infringement) should be excluded under F.R.E. 402. Moreover, allowing such evidence in the record could only serve to confuse or mislead the jury into thinking that such evidence is relevant or should be considered when deciding the issue of willfulness. For this reason, the evidence should be excluded under Fed. R. Evid. 403.

Thus, consistent with Federal Circuit and District of Delaware case law, as well as the Rules of Evidence 402 and 403, Pechiney's two post-launch, post-lawsuit opinions (DX 590 and 672), obtained long _after_ the infringing activity began and _after_ this infringement suit was filed, are too late to be considered in a willful infringement determination and should be excluded from evidence. Moreover, just as the late opinions themselves should be excluded, the jury should also not hear live testimony regarding the late opinions. Layperson testimony from such witnesses as the author of the opinion (Jonathan Spadt)[2] should not be allowed, since it would also not be relevant and could only serve to confuse the jury in violation of F.R.E. 402, 403 and 701(b). Such testimony would likely only confuse or mislead the jury into wrongly thinking that the late opinions should be considered in determining the willfulness of Pechiney's infringement, which according to the Federal Circuit should be determined _at the time infringement began_ and _not_ after the infringement suit was filed--when the two later opinions were obtained. _See Odetics, Inc. v. Storage Tech. Corp.; Eli Lilly and Co. v. Zenith Goldline Pharma._ In addition, if the testimony by Mr. Spadt is not relevant to the issue of willfulness, then having him testify does nothing more than waste the court's and jury's time--also in violation of F.R.E. 403 and 701.

---

[2] Pechiney has never identified Mr. Spadt as being an "expert" of any kind.

Exhibit 14 of the Pretrial Order
Page 8 of 21

## III. PECHINEY SHOULD BE PRECLUDED FROM OFFERING EVIDENCE REGARDING THE MEANING OF CLAIM TERMS

Pechiney should be precluded from offering into evidence at trial deposition testimony and trial exhibits regarding the meaning of claim terms. Once the court has construed the meaning of the claim terms, it is improper to offer evidence or argue in an inconsistent manner. *Colassi v. Cybex Int'l, Inc.,* No. Civ.A.02-11909 RWZ, 2005 WL 1972558, *1 (D. Mass.). As one district court explained, evidence reflecting "a claim construction other than the Court's... have no relevance to the issues for trial and will be excluded." *EZ Dock, Inc. v. Schafer Sys., Inc.,* No. Civ. 98-2364 (RHK/AJB), 2003 WL 1610781, *7, n4 (D. Minn.)

For this reason, Pechiney should be precluded from offering into evidence deposition testimony about the meaning of the claim terms from depositions taken before the Court construed the claims. Because the witnesses did not have the benefit of the Court's claim constructions at the time of their deposition, the probative value of this deposition testimony is substantially outweighed by the danger of confusing the jury. For this reason, such testimony should be excluded under F.R. Evid. 403.[3]

Such testimony about the meaning of claim terms is particularly objectionable when it comes from lay witnesses who were not testifying based on the context of the patent-in-suit. This is because claim construction requires consideration of the claim terms in context of the complete claim and the full specification, as the patent as a whole is "a fully integrated written

---

[3] The following Pechiney designations come from depositions taken before the Court construed the claims and concern the meaning of claim terms:  Ahlgren 87:8-88:20, 109:6-20, 131:6-20; Fant 55:21-56:9, 89:22-92:5; Garland 26:8-27:18; Kay 157:8-13, 158:13-159:2, 161:14-162:1, 163:8-10, 167:6-21, 198:22-25, 201:11-14; Kimmel 25:3-14, 33:12-22, 57:11-18, 61:14-63:17, 72:8-74:1, 75:2-14, 81:8-20, 161:6-22, 258:8-12; Quatt 105:7-108:6, 115:17-22, 116:4-117:6, 124:10-16, 126:2-127:16, 128:14-129:8, 150:11-151:4, 206:11-207:5; Shah 14:18-16:20, 17:8-19:15, 27:2-28:5, 173:2-11, 194:2-11, 194:22-195:13, 197:13-199:2, 201:3-14; Stringer 124:25-125:23; Wilkes 220:4-222:18, 239:5-12, 240:5-15; and Wofford 80:8-81:3.

Exhibit 14 of the Pretrial Order
Page 9 of 21

instrument." *Markman v. Westview Instruments, Inc., 52 F.3d 967, 978 (Fed. Cir. 1995)* (en

banc), aff'd, *517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996); Phillips v. AWH Corp.*,

415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*) ("Importantly, the person of ordinary skill in the

art is deemed to read the claim term not only in the context of the particular claim in which the

disputed term appears, but in the context of the entire patent, including the specification."); *In re*

*Fout*, 675 F.2d 297, 300 (CCPA 1982) ("Claims must always be read in light of the

specification."). Testimony directed to the meaning of claim terms that is not based on the

context of the claim and patent specification as a whole is, therefore, incomplete and irrelevant.

*Vanderlande Industries Nederland BV v. International Trade Commission*, 366 F.3d 1311, 1321

(Fed. Cir. 2004) (out of context definitions are irrelevant to claim construction).

Here Pechiney seeks to offer deposition testimony about the meaning of claims terms

from lay witnesses who had not read the '419 patent.[4]  Such out-of-context testimony about the

meaning of claim terms is irrelevant and should be excluded under F.R. Evid. 402.

Likewise, dictionary definitions of the claim terms are not based on the context of the

patent-in-suit.  Such out-of-context definitions are thus irrelevant and should be excluded from

evidence under F.R. Evid. 402.  To the extent they have any probative value, it is far-outweighed

by the danger of confusing the jury.  Thus, such dictionary definitions of claim terms should be

excluded under F.R. Evid. 403 as well.[5]

---

[4]  The following Pechiney deposition designations are out-of-context testimony about the
meaning of claim terms from lay witnesses who had not read the '419 patent:  Ahlgren 87:8-
88:20, 109:6-20, 131:6-20; Fant 55:21-56:9, 89:22-92:5; Garland 26:8-27:18; Kay 157:8-13,
158:13-159:2, 161:14-162:1, 163:8-10, 167:6-21, 198:22-25, 201:11-14; Stringer 124:25-125:23;
and Wofford 80:8-81:3.

[5]  The following Pechiney trial exhibits are, or include, dictionary definitions of claim terms:
DX 44, DX 46, DX 49, DX 65, DX 85, DX 184 and DX 292.

Exhibit 14 of the Pretrial Order
Page 10 of 21

Finally, Pechiney's exhibits DX 708 and DX 709 should also be excluded from evidence. DX 708 and DX 709 are the claim construction chart Cryovac proposed to the Court and the parties' joint claim chart showing both parties' proposed claim constructions, respectively. Those charts were exchanged between the parties and provided to the Court before the Court had construed the claim terms, and relate **only** to the issue of claim construction, which is not relevant to an issue being decided by the jury and would only serve to confuse the jury. Therefore, DX 708 and DX 709 should be excluded under F.R. Evid. 402 and 403.  Similarly, DX 714 is a declaration by Pechiney's technical expert Dr. Mount submitted by Pechiney in support if its *Markman* brief opining on the claim construction this Court should adopt.  This declaration includes paragraphs that relate only to construing claim terms, which are not relevant to any issue being decided to by the jury, and could only confuse the jury.  Thus, DX 714 should also be excluded under F.R. Evid. 402 and 403.

Exhibit 14 of the Pretrial Order
Page 11 of 21

IV.  **PECHINEY SHOULD BE PRECLUDED FROM INTRODUCING EXTRINSIC EVIDENCE THAT IS IRRELEVANT TO THE INTERPRETATION OF CRYOVAC'S TWO REQUIREMENTS CONTRACTS WITH NATIONAL BEEF.**

It is a black-letter principle that the Court is obligated to interpret the meaning of contract as a matter of law. Associated/ACC Int'l, Ltd. v. DuPont Flooring Sys. Franchise Co., 2002 U.S. Dist. LEXIS 6464, at *8-10 (D. Del. Mar. 28, 2002). Where contract terms are unambiguous, extrinsic evidence of contract meaning cannot be considered at all. Id. Moreover, even when extrinsic evidence may be considered, evidence of the parties' subjective understanding of contract meaning and evidence of the written terms of other contracts is not admissible.

Pechiney's summary judgment briefs, its deposition designations, and its trial exhibit list indicate that Pechiney will attempt to violate all three of these black-letter rules. Cryovac therefore seeks an order *in limine* under Federal Rules of Evidence 402 and 403 barring Pechiney from introducing irrelevant and prejudicial extrinsic evidence of contract meaning during the trial.

A.  **Subjective Understanding of Contract Meaning Is Not Admissible for Any Purpose.**

Contracts are to be interpreted from the vantage point of objectively reasonable people in the position of the contracting parties. Demetree v. Commonwealth Trust Co., 1996 Del. Ch. LEXIS 112, at *11 (Del. Ch. Aug. 27, 1996) ("the contract's construction should be that which would be understood by an objective reasonable third party") (Tab G); Caniglia v. Nigro Corp., 441 S.W.2d 703, 712 (Mo. 1969).

As a result, the contracting parties' subjective understanding of the contract is never admissible as evidence of contract meaning. See, e.g., SBC Interactive, Inc. v. Corporate Media Partners, 1997 Del. Ch. LEXIS 180, at *13 (Del. Ch. Dec. 24, 1997) (excluding affidavit stating the parties' intended meaning of a contract because affiant "never asserted that he communicated his understanding to the other partners or that they otherwise were aware of his interpretation. A party's

Exhibit 14 of the Pretrial Order
Page 12 of 21

subjective, undisclosed understanding of a contract's meaning is not legally effective to prove contractual intent.") (Tab H); <u>Bannon v. Knauss</u>, 320 S.E.2d 470, 472 (S.C. Ct. App. 1984) ("Interpretation of the contract is governed by the objective manifestation of the parties' assent at the time the contract was made. It does not depend on the subjective, after the fact meaning one party assigns to it.") (internal citations omitted); <u>Don King Equip. Co. v. Double D Tractor Parts</u>, 115 S.W.3d 363, 369 (Mo. Ct. App. 2003) ("In Missouri, courts look to the parties' objective manifestations of intent to determine whether there was a 'meeting of the minds.' A person's subjective intent is irrelevant. It is the actions, and not the intentions or suppositions, of the parties that determine whether or not there is a contract and the terms of the contract.") (internal citations omitted).

Pechiney's opening brief in support of its Motion for Summary Judgment on Tortious Interference Claims dedicated an entire section to National Beef's subjective intent, titled "National Beef's Understanding of the January 13, 2004 Letter." (D.I. 198 at 4-6). As just one of many examples, Pechiney's brief claimed:

REDACTED

<u>Id.</u> at 6 (citing Wilkerson Dep. Tr. at 45:12-18).

Pechiney has designated the same testimony and exhibits cited in this portion of its brief for use at trial. Pechiney has also attempted to use subjective understandings of its own requirements contracts (which is relevant to damages) as evidence. Under Rule 402, and the cases cited above, no evidence of subjective understanding of any contract should be admissible.

**B.    Evidence about Other Contracts Is Not Admissible for Any Purpose.**

During discovery, Pechiney spent many deposition hours eliciting testimony about other contracts between Cryovac and third parties. Pechiney has designated almost all of this testimony for presentation at trial.

Exhibit 14 of the Pretrial Order
Page 13 of 21

Like evidence of the subjective intent of the contracting parties, the meaning of contracts between different parties is not admissible extrinsic evidence relevant to the meaning of contract terms between other parties. See, e.g., Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc., 1996 Del. Ch. LEXIS 39, at *14-*15 (Del. Ch. Mar. 15, 1996) (rejecting argument that agreements entered into by plaintiff with other shareholders, that may contain similar terms, were relevant) (Tab I); Inspiration Leasing, Inc. v. US West Fin. Serv., Inc., 1988 U.S. Dist. LEXIS 6272, at *2 (S.D.N.Y. June 24, 1988) ("The parties' rights and obligations arise out of the four corners of the contract at issue. It seems to me very doubtful that defendant's calculations in respect of unrelated transactions would lead to the discovery of evidence admissible in this litigation.") (Tab J); MII Exports, Inc. v. Leyden Shipping Corp., 1989 U.S. Dist. LEXIS 5970, at *2 (S.D.N.Y. May 31, 1989) (holding defendant's dealings with customers other than plaintiff have no bearing on the questions at issue in the case) (Tab K).

The reason is straightforward – much more than the written word is often necessary to interpret the meaning of contracts for the sale of goods. UCC 2-208 cmt. 2 ("Under this section a course of performance is always relevant to determine the meaning of an agreement."). As a result, presentation of evidence limited to just the written words in contracts between other parties is likely to confuse and mislead the jury. Moreover, if Pechiney presents evidence of specific terms from other contracts, several mini-trials will likely result, as Cryovac will need to counter this evidence with information about the entire negotiation context in order to give the jury a complete and accurate picture of the third party contractual relationships. Even Pechiney's Rule 30(b)(6) witness on third party contracts (Robert Taylor, Pechiney's Vice President of Meat & Dairy Packaging) admitted that Pechiney's third party contracts could not be understood without understanding the "evolution" the agreements, the customary practices between the parties, and the long-term contractual relationship with the other party.

Exhibit 14 of the Pretrial Order
Page 14 of 21

For these reasons, all evidence of Cryovac's third party contracts should excluded under Rules 402 and 403.

### C.    Extrinsic Evidence Generally Is Not Admissible Because the Contracts Are Unambiguous.

Some types of extrinsic evidence may be properly offered by Pechiney if this Court were to conclude that the two Cryovac requirements contracts with National Beef are, on their face, ambiguous. However, absent a determination that the contracts are ambiguous, Pechiney should be prohibited from admitting any extrinsic evidence on the issue of contract interpretation.

The first step in contract interpretation is determining whether the agreement, on its face, is unambiguous and clearly conveys the parties' intent, or whether the terms of the agreement could be subject to multiple interpretations and are therefore ambiguous. Comrie v. Enterasys Networks, Inc., 837 A.2d 1, 13 (Del. Ch. 2003) ("In a dispute involving contract interpretation, the court must first examine the entire agreement to determine whether the parties' intent can be discerned from the express words used or, alternatively, whether its terms are ambiguous."). "Contract language is not ambiguous simply because the parties disagree on its meaning. 'Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'" Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co., 616 A.2d 1192, 1196 (Del. 1992); see also Mell v. New Castle County, 2004 Del. Super. LEXIS 259, *9 (Del. Super. Aug. 4, 2004) ("'Ambiguity may exist if the terms of the contract are inconsistent, or when there is a reasonable difference of opinion as to the meaning of words or phrases.'") (Tab L).

If the terms of the contract are clear and unambiguous, "Delaware courts will not consider extrinsic evidence to determine the intent of the parties." O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 290 (Del. 2001); Eagle Indus. v. DeVilbiss Health Care, 702 A.2d 1228, 1233 (Del. 1997)

Exhibit 14 of the Pretrial Order
Page 15 of 21

(same). Instead, when "the terms are clear on their face, 'the court must apply the meaning that would be ascribed to the language by a reasonable third party.'" <u>True Commc'ns v. Publicis S.A.</u>, 711 A.2d 34, 38 (Del. Ch. 2001), *aff'd*, 705 A.2d 244 (Del. 1997). "In construing a contract, extrinsic evidence is only used if the parties' intent cannot be derived from the plain meaning of the contract." <u>Sussex Equip Co. v. Burke Equip. Co.</u>, 2004 Del. LEXIS 492, *4 (Del. Oct. 26, 2004) (Tab M).

We explained in our Answering Brief opposing Pechiney's motion for summary judgment on tortious interference issues why Cryovac's two contracts with National Beef are clearly and unambiguously requirements contracts. D.I. 250 at 17-21. Accordingly, Pechiney should be prohibited from admitting any evidence extrinsic of the contract to further its interpretation.

Exhibit 14 of the Pretrial Order
Page 16 of 21

## V.  PECHINEY SHOULD BE PROHIBITED FROM PRESENTING EVIDENCE RELATED TO THE TRADE DISPARAGEMENT COUNTERCLAIMS THAT PECHINEY WAS BARRED FROM BRINGING IN THIS CASE.

One month after fact discovery closed, Pechiney moved to add permissive counterclaims relating to alleged trade disparagement by Cryovac. D.I. 172. Pechiney predicated its proposed counterclaims on (i) unpublished internal Cryovac sales presentations made 6 to 12 months after Pechiney's tortious interference occurred in which Cryovac's employee[s] allegedly stated that Pechiney's products and services had certain shortcomings and (ii) an internal Cryovac memo, also written 6 months after Pechiney's tortious interference occurred, wherein a Cryovac executive talked generally about "de-stabilizing" competitors.

Cryovac opposed the proposed trade disparagement claims because the claims were raised late, because the claims were unrelated to the existing patent and tortious interference claims, and because the facts alleged failed to state a claim. D.I. 182. The Court denied Pechiney's motion as untimely and specifically stated the claims "were not sufficiently related" to the patent infringement and tortious interference claims. D.I. 261 at 5. The court also stated that, if Pechiney wanted to bring these claims, it should do so in a different lawsuit. Id. Pechiney now seeks to insert the very same facts that it alleged to support its trade disparagement motion into this case. This evidence should be excluded under Federal Rules of Evidence 402 and 403.

### A.  Pechiney's Trade Disparagement Evidence Is Not Relevant and Should be Excluded Under Federal Rule of Evidence 402.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. For Pechiney's trade disparagement evidence to be relevant, Pechiney must demonstrate how the evidence would impact a determination on the patent infringement or tortious interference claims in the case. It has not – and cannot – do so. The "facts" Pechiney is

Exhibit 14 of the Pretrial Order
Page 17 of 21

seeking to present at trial occurred months after Pechiney's alleged tortious interference began. Whether or not Cryovac engaged in trade disparagement months later and Cryovac's alleged motivation for initiating this suit provide no insight into whether Cryovac and National Beef had a contract, whether Pechiney interfered with that contract, or whether Pechiney infringed the '419 patent – which are the issue of consequence in this action. See Foremost Promotions, Inc. v. Pabst Brewing Co., 15 F.R.D. 128, 130 (N.D. Ill. 1953) ("It is difficult to see how an inquiry into the circumstances surrounding the instigation of the action could affect the substance of the claim."); In re Fine Paper Antitrust Litigation, 751 F.2d 562, 587 (3d Cir. 1984) ("We fail to see how motives of the objectors other than the obvious financial one of maximizing their recovery, would make any fact of consequence to the determination of reasonable fees more or less probable."); THK America, Inc. v. NSK, Ltd., 917 F. Supp. 563, 569 (N.D. Ill. 1996) (excluding evidence relating to defendant's previously denied counterclaims because such evidence was only marginally relevant and highly prejudicial).

At oral argument on Pechiney's motion to amend, Pechiney for the first time asserted that these facts might be relevant to a defense of competitive privilege (Pechiney made no claim that its trade disparagement and related evidence was in any way relevant to any other claim or defense in the case – even in its reply brief supporting its motion to amend, let alone in its contention interrogatory responses). D.I. 261 at 5. The Court responded that it was not making a judgment in the context of the motion to amend as to the relevance of these facts to competitive privilege. Id. at 6. There is, however, no relationship between Cryovac's alleged conduct and whether Pechiney's interference with Cryovac's customer should be excused pursuant to a competitive privilege. The competitive privilege, for example, does not even apply to tortious interference with contractual relations, only to prospective contractual relations. Restatement (Second) of Torts § 768 cmt. h. The Restatement's discussion of competitive privilege makes no mention of an injured party's conduct as being relevant to this issue. Id. §§ 767, 768. Restatement comment e, moreover, makes

Exhibit 14 of the Pretrial Order
Page 18 of 21

clear that "[i]f the actor [e.g., Pechiney] employed wrongful means [here, patent infringement], he is not justified under the rule stated in this Section." Evidence of alleged trade disparagement by Cryovac and alleged efforts to "de-stabilize" the competition – occurring months after Pechiney wrongfully caused National Beef to breach its contracts with Cryovac is not of any consequence to whether Pechiney acted pursuant to a privilege.

Pechiney's "evidence" of alleged trade disparagement also arises months after Pechiney's own wrongful conduct.

**REDACTED**

If Cryovac did not make the allegedly disparaging statements to the customer with whom Pechiney tortiously interfered – and Pechiney's only evidence of the alleged disparagement arose months after its tortious interference – how can the evidence be relevant? There simply is no issue the jury must decide to which this evidence has any consequence.

Exhibit 14 of the Pretrial Order
Page 19 of 21

**B.    Pechiney's Trade Disparagement Evidence, Even if Relevant, Should Still be Excluded under Rule 403 Because the Risk of Unfair Prejudice Substantially Outweighs Any Probative Value.**

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes, Fed. R. Evid. 403. In this case, any probative value of Pechiney's trade disparagement evidence far outweighs the prejudice to Cryovac and would further confuse or mislead the jury.

Pechiney's trade disparagement evidence will prejudice Cryovac and confuse the jury because the evidence has great potential to focus the trial on Cryovac's conduct rather than Pechiney's interactions with National Beef or whether Pechiney's products infringe the '419 patent. For example, this evidence could lead the jury to conclude that the case does involve claims for unlawful trade practices and unfair competition. The Ninth Circuit in Lifshitz v. Walter Drake & Sons, Inc., 806 F.2d 1426, 1431-32 (9th Cir. 1986), commented on a similar situation:

> Here, the district court concluded after careful consideration that the probative value of the evidence was outweighed by the considerable amount of time its admission would consume and the confusion it would cause the jury by raising questions relating to the validity of Lifshitz's patent, which was no longer an issue in this case.

In addition to confusing or misleading the jury, to the extent Pechiney attempts to admit evidence suggesting that Cryovac had improper motives in initiating this suit, such evidence would create a risk that the jury could make a decision on an improper basis, thereby unfairly prejudicing Cryovac. Sunstar, Inc. v. Alberto-Culver Co., 2004 U.S. Dist. LEXIS 16855, at *15-16 (N.D. Ill. Aug. 23, 2004) (excluding evidence of business reasons for adopting a trademark because "[e]vidence of [defendant's] business reasons for adopting the 1999 Mark . . . may cause jury

Exhibit 14 of the Pretrial Order
Page 20 of 21

confusion regarding the relevant infringement standard or suggest a decision on an improper bias and unfairly prejudice [plaintiff] by suggesting that business reasons or lack of improper intent constitute a valid defense to infringement.").

Finally, presentation of this evidence is prejudicial for all of the same reasons that it would have been prejudicial to add Pechiney's trade disparagement claims so late in the case. See D.I. 182 at 23-29. To give just one example, there is a serious question about whether the alleged statements are true or, at worst, permissible comparative opinions. Comparative statements are not actionable or wrongful at all and allowing them into evidence therefore creates significant possibilities of prejudice to Cryovac. Licata & Co. v. Goldberg, 812 F. Supp. 403, 408 (S.D.N.Y. 1993) (oral conversations claiming plaintiff could no longer provide adequate "service" not likely to succeed on the merits because the description was non-actionable opinion "at the opposite pole from clearly definable media advertising or printed material," and that allowing such a claim would discourage "[r]obust debate between competitors on matters of opinion"). Moreover, Cryovac should be permitted to establish that the opinions of its personnel were accurate, which will chew up valuable trial time and will shift the jury's focus from the claims at issue.

Finally, Pechiney's evidence is highly prejudicial and misleading because it has no evidence that any of the allegedly disparaging statements were ever made to any Pechiney customer, let alone to the Cryovac customer with whom Pechiney wrongfully interfered. Admission of this evidence has great potential to harm Cryovac, as it would permit Pechiney to make assertions about alleged statements to customers without any foundation at all and to hope that jury will base its decision about these alleged statements rather than the elements of the patent infringement and tortious interference claims.

Exhibit 14 of the Pretrial Order
Page 21 of 21

# PECHINEY'S RESPONSES TO CRYOVAC'S *IN LIMINE* REQUESTS

## Pechiney's Responses To Cryovac's *In Limine* Requests

### I. Dr. Gilbert and Dr. Dimas Should Be Permitted To Testify That ANR Film C Was Oriented.

The Court should deny Cryovac's motion to preclude Pechiney from offering evidence from Dr. Gilbert and his laboratory assistant, Dr. Dimas, that ANR Film C was oriented.[1] Pechiney argues that if ANR Film C is oriented,[2] it renders claim 11 invalid. Cryovac moves to preclude Dr. Gilbert and Dr. Dimas from providing testimony showing that ANR Film C is oriented. Cryovac argues that such evidence from Dr. Gilbert should be precluded because Dr. Gilbert "lacks first hand knowledge regarding how the film was made," and his testimony is supposedly uncorroborated. Both of Cryovac's arguments are wrong. *First*, Dr. Gilbert does have personal knowledge that ANR Film C was oriented based on his own studies of the film. *Second*, Cryovac is wrong on its corroboration argument because Dr. Gilbert is not himself an interested witness or an alleged prior infringer whose testimony needs to be corroborated. However, even assuming corroboration is necessary, Dr. Gilbert's testimony and Dr. Dimas's testimony are sufficiently corroborated. Accordingly, Cryovac's motion should be denied.

### A. Dr. Gilbert Has Firsthand Knowledge That ANR Film C Was Oriented.

Under FRE 701(a), a witness may testify to his opinion if it is "rationally based" on his perception and is "helpful to a clear understanding" of his testimony or the "determination of a fact in issue." Rule 701(a) requires the witness to have firsthand knowledge of the factual

---

[1] In its motion, Cryovac describes ANR Film C as "Allied's Film C." Pechiney used the term ANR Film C to describe this film in its Memorandum in Support of Pechiney's Motion for Summary Judgment on Patent Issues (D.I. 196) and will do so in this response as well.
[2] Pechiney is aware that the Court has construed "oriented" to include a process limitation such that a film is "oriented" only if the orientation is "accomplished by a racking or blown bubble process." (D.I. 304 at 9, 14.) Even if Dr. Gilbert's testimony were to not go so far as identifying the specific process used to orient ANR Film C, Pechiney could still use his testimony that the film was oriented, albeit by some unnamed process, at a minimum to prove that claim 11 is invalid as obvious.

predicates that form the basis for the testimony. Fed. R. Evid. 701(a) advisory committee's notes. Here, Dr. Gilbert's testimony that ANR Film C was oriented is rationally based on his own perceptions. Dr. Gilbert has firsthand knowledge of the facts underlying his testimony that ANR Film C was oriented because he personally performed studies on the film. The results of his studies of ANR Film C proved to Dr. Gilbert that the film was oriented Cryovac misses the mark with its argument that Dr. Gilbert lacks firsthand knowledge regarding "how the film was made." Dr. Gilbert knows that the film was oriented. That he did not personally observe this step does not prevent his knowing the film was oriented any more than a home buyer not having observed a room being painted would prevent the home buyer from knowing the color of the room.

Dr. Gilbert conducted studies on films for Allied Chemicals while working as a Professor of the Food Sciences Department at Rutgers University in the 1980s. As Dr. Gilbert already has testified by declaration, Allied supplied Dr. Gilbert with films to test. (Ex. O, Gilbert Decl. ¶¶ 7, 9.) His work included tests using the both the Instron Tester, which provided stress data relating to orientation, and the Cross Polarization Tester which provided visual evidence of orientation. (Ex. O, Gilbert Decl. ¶ 15.) Dr. Gilbert testified that ANR Film C was oriented based on his work, including the results from the Instron Tester and the Cross Polarization Tester. (Ex. O, Gilbert Decl. ¶ 16.) Having conducted the studies for Allied, Dr. Gilbert's testimony that ANR Film C was oriented is relevant and admissible evidence under FRE 701.

## B.    Dr. Gilbert's Testimony is Corroborated, if Corroboration is Required.

Cryovac's argument that Dr. Gilbert's testimony is not corroborated is wrong for at least two reasons. First, Dr. Gilbert is a "nonparty testifying about an unpatented invention," so the "rule requiring corroboration is not applicable." *Eisenberg v. Alimed, Inc.*, 2000 WL 1119743,

CHICAGO_1394661_2

2000 U.S. App. LEXIS 19121, at *12 (Fed. Cir. Aug. 8, 2000).[3] Second, even if the Court finds that corroboration is necessary, a web of relevant evidence corroborates Dr. Gilbert's testimony.

Cryovac fails to recognize that "corroborating evidence is needed *only* to counterbalance the self-interest of a testifying inventor against the patentee" and that some witnesses do not have a sufficient personal stake in the outcome of the trial "to justify triggering application of the corroboration rule." *Thomson v. Quixote Corp.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999) (emphasis added). *Thomson* held that "testimony of the presumed [third-party] inventors *did not have to be corroborated*." *Id.* (emphasis added).

Under *Thomson*, Dr. Gilbert is not interested enough to "justify triggering application of the corroboration rule," thereby defeating Cryovac's corroboration argument without further analysis. Dr. Gilbert is not the inventor of ANR Film C, has no interest in the film, and is not a party to the litigation. Dr. Gilbert merely received the film from Allied and directed a number of tests on it. (Ex. O, Gilbert Decl. ¶¶ 7-9.) His testimony is admissible even absent corroboration.

*Finnigan Corp. v. ITC*, 180 F.3d 1354 (Fed. Cir. 1999) was decided after *Thomson* and thus is not controlling to the extent it conflicts with *Thomson*.[4] In *Finnigan*, a "rule of reason" analysis was employed to assess the sufficiency of the corroboration. *Id.* "[T]he law does not impose an impossible standard of 'independence' on corroborative evidence by requiring that every point ... be corroborated by evidence having a source totally independent from the

---

[3] Pechiney recognizes that *Eisenberg* is an unpublished opinion but references it as a public record showing how the Federal Circuit affirmed a decision of the Massachusetts district court that several claims of a patent were invalidated based on the uncorroborated testimony of a disinterested witness. *See* Fed. Cir. R. Rule 47.6(d).

[4] *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed. Cir. 1988) ("prior decisions of a panel of the [Federal Circuit] are binding precedent on subsequent panels unless and until explicitly overruled *en banc*. Where there is direct conflict, the precedential decision is the first.") (citations omitted).

3

inventor; indeed, such a standard is the antithesis of the rule of reason." *Knorr v. Pearson*, 671 F.2d 1368, 1374 (CCPA 1982). Dr. Gilbert's testimony is admissible even under *Finnigan*.

Under *Finnigan*, Dr. Gilbert's testimony regarding the orientation of ANR Film C is sufficiently corroborated using the "rule of reason," wherein the Court must consider "*all* pertinent evidence" so that a sound determination of credibility may be reached. *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993). Dr. Gilbert's testimony is sufficiently corroborated by both documents and the testimony of his assistant at the time, Dr. Dimas.[5]

Dr. Gilbert's testimony is corroborated by documentary evidence including: (a) the Journal of Commerce Article (Ex. P, DX 123); (b) the Journal of Food Science Article (Ex. Q, DX 217); and (c) the Allied News Release (Ex. R, DX 127). The Allied News Release and Journal of Food Science Article disclose that ANR Film C was 1.40 mils thick, which would have indicated to one of ordinary skill in the art that ANR Film C was oriented because it would be extremely difficult to make a nine-layer film having a thickness of only 1.40 mils without stretching the melt or reheated film to achieve this thickness. This stretching would orient the film. (Ex. S, Mount Decl. ¶21, Tab A, Report 31.) Also, the permeation rates of ANR Film C are consistent with permeation rates of an oriented multilayer film exhibiting high barrier properties. (Ex. O, Gilbert Decl. ¶¶ 18.)

Additionally, the Journal of Commerce Article and the Journal of Food Science Article disclose that ANR Film C was Gelbo flexed[6] to simulate shipping and handling conditions. (Ex. P, DX 123, Ex. R, DX 217.) Orientation was one of the factors considered in analyzing a film's performance in the Gelbo flexing. (Ex. O, Gilbert Decl. ¶¶ 13-14.)

---

[5] Like Dr. Gilbert, Dr. Dimas also is not the inventor of ANR Film C and does not have an interest in this film. Thus, his testimony does not require corroboration for the same reasons as Dr. Gilbert's testimony and should not be precluded.

[6] Dr. Gilbert describes Gelbo flexing in his declaration. (Ex. O, Gilbert Decl. ¶ 13.)

4

Although legally unnecessary, Dr. Gilbert's testimony is corroborated by a host of evidence that confirms that ANR Film C was oriented. Additionally, Dr. Gilbert has personal knowledge about the orientation of ANR Film C because he performed physical tests on the film with the Instron Tester and the Cross Polarization tester.

Cryovac's argument that Dr. Gilbert's testimony is contradicted by the documents is pure fiction. In truth, Cryovac has not cited any document stating that ANR Film C was unoriented. Rather, Cryovac infers that conclusion based on its interpretation of the documents. Pechiney disagrees. Cryovac's wish that ANR Film C be "unoriented" does not change the documents to read that way. Cryovac can argue its inferences to the jury. Such inferences, however, are not a proper basis to exclude Dr. Gilbert's corroborated testimony that ANR Film C is oriented. Dr. Gilbert's testimony is relevant evidence that is supported by the record and is permissible under F.R.E. 701(a). Cryovac's motion should be denied.

## II. Mr. Spadt's Opinions Should Not Be Excluded.

The Court should deny Cryovac's motion *in limine* relating to two opinion letters by attorney Jonathan Spadt of RatnerPrestia, who independently reached the same conclusion that attorney Margaret Duncan of McDermott Will & Emery reached: the ClearShield products do not infringe claim 11 of the '419 patent because they do not have "at least seven layers arranged symmetrically." When Cryovac sought leave to file a second amended complaint to add a willfulness charge, Cryovac admitted that opinions of counsel were "crucial in making a willful infringement determination." (D.I. 133, ¶ 11.) Now, Cryovac seeks to deprive Pechiney from offering this "crucial" evidence, while ignoring the fact that "[t]he test of relevance under the Federal Rules of Evidence is low." *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998).

### A. Mr. Spadt's Opinions Are Relevant Because The Jury Can Rely On Them As A Basis to Find That Pechiney's Alleged Infringement Was Not Willful.

A willfulness determination requires analysis of the totality of the circumstances. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1381 (Fed. Cir. 2005). Here, the jury should be allowed to consider Mr. Spadt's opinions because they tend to show that Pechiney's alleged infringement was not willful. Indeed, reliance on a competent opinion letter of counsel is often a compelling factor in a willfulness analysis. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). Here, Mr. Spadt's 26-page, January 14, 2005, opinion letter on the '419 patent concluded that the then-current ClearShield structures did not infringe

**REDACTED**          does not have its seven layers arranged symmetrically."

(Ex. T, DX 590, at 23-24.) Thus, Mr. Spadt's January 14, 2005, opinion letter is relevant to the willfulness issue.

Mr. Spadt's July 20, 2005 opinion letter is a short three-page update after the Federal Circuit's decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). Mr. Spadt

6

concluded that "[o]ur opinion of non-infringement does not change based on the recent *Phillips*

decision." (Ex. U, DX 672, at 1.) It was on July 29, 2005, after Pechiney had received both of

Mr. Spadt's opinions that Cryovac, for the first time, alleged that Pechiney's infringement was

willful. (D.I. 133.) Thus, none of the three opinion letters in question was procured in an effort

to fend off a willfulness charge. To the contrary, the facts show that Pechiney was acting in

good faith in making sure that its ClearShield products would not infringe the '419 patent.

Pechiney is entitled to present this evidence to the jury that will be asked to evaluate the totality

of the circumstances.

Opinion letters are not irrelevant just because they are written after the alleged

infringement commences as Cryovac's motion suggests. *See*, *Transmatic, Inc. v. Gulton Indus.,*

*Inc.*, 849 F. Supp. 526 (E.D. Mich. 1994), *aff'd in relevant part*, 53 F.3d 1270 (Fed. Cir. 1995);

*see also*, *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996) (affirming

finding of no willful infringement after considering opinion letter where infringer did not consult

patent attorney for eight months after receiving notice that it was infringing); *Polysius Corp. v.*

*Fuller Co.*, 709 F. Supp. 560, 577 (E.D. Pa. 1989) ("[a]lthough the letter opinion, plaintiffs'

exhibit no. 46, postdates some infringing conduct, it is nevertheless an indicia of good faith").

In *Transmatic*, the infringer obtained six opinion letters, the latter three of which the

court deemed "especially relevant to the question of willfulness." *Transmatic*, 849 F. Supp. at

532. The defendant's president testified that defendant started producing the accused device

prior to receipt of the last opinion letter. *Id.* at 534. He characterized his request for the last

opinion letter as a "double-check" that there was no infringement. *Id.* at 534. The plaintiff

challenged the defendant's reliance on the last opinion letter because it came after infringement

began. The court rejected plaintiff's argument in finding no willful infringement:

7

> Moreover, the fact that Mr. Relson's letter was issued sometime
> after Defendant began producing the accused device does not
> change the Court's belief, after looking at the totality of the
> circumstances, that (1) Mr. Relson's opinion that Defendant would
> not infringe . . . was thorough and competent, and (2) that
> Defendant could and did rely in good faith on that opinion. . . .
> *[T]he Court does not believe that the last letter, simply by virtue
> of being issued after infringement began, could not be part of the
> basis of a reasonable, good faith belief that the accused device
> did not infringe.*

*Id.* at 537 (emphasis added). The Federal Circuit affirmed the finding of no willful infringement.

*Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1279 (Fed. Cir. 1995).

Cryovac argues that Mr. Spadt's opinions do not cross the low hurdle for relevance,

relying on distinguishable cases: *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717

F.2d 1380, 1390 (Fed. Cir. 1983) (affirming willfulness finding where infringer did not receive a

first opinion from its patent counsel until "long after" infringement had commenced);

*Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987) (refusing

to consider an opinion letter written by litigation counsel five years after suit was filed); *Odetics,

Inc. v. Storage Tech. Corp.*, 185 F.3d 1259 (Fed. Cir. 1999) (does not even involve opinions, but

rather a waived Section 102(g) defense and the result of an earlier jury trial, both of which

occurred "years after" the infringer learned of the patent); *Eli Lilly & Co. v. Zenith Goldline

Pharms.*, 149 F. Supp. 2d 659 (S.D. Ind. 2001)[7] (discovery dispute holding that patentee is not

entitled to discovery of opinions written after infringement is completed where a party had

waived privilege on earlier opinion); and *Critikon, Inc. v. Becton Dickinson Vascular Access,

Inc.*, 120 F.3d 1253 (Fed. Cir. 1997) (finding infringer cannot rely on four opinions received

after infringement commenced where they were directed to the same category of products (short-

nosed catheters) as the four opinions received before infringement commenced).

---

[7] *Eli Lilly* is from the Southern District of Indiana, not the Federal Circuit as stated by Cryovac.

In fact, *Eli Lilly* stated that "when a party is charged with wilful infringement, what is relevant is that party's state of mind *during the time when it is taking actions which allegedly infringe the patent.*" *Eli Lilly*, 149 F. Supp. 2d at 664 (quoting *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass. 1995) (emphasis original in *Eli Lilly*)). Here, Mr. Spadt's opinion letters occurred during the time that Cryovac contends that Pechiney was infringing.

Moreover, "[s]ignificant design changes, in most instances, would require a new opinion of counsel." *Critikon*, 120 F.3d at 1259 (citing *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1481 (Fed. Cir. 1988)). Here, Mr. Spadt's opinions dealt with a different category of products

**REDACTED**                   than Ms. Duncan's earlier opinions

If anything,

*Critikon* compelled Pechiney to have obtained Mr. Spadt's subsequent opinions.

Finally, as the *Dart* court concluded, the "ultimate teaching" of the Federal Circuit's cases "is that the willfulness determination is highly fact-based, and failure to consider the totality of circumstances or the imposition of *per se* requirements is an error of law." *Dart*, 666 F. Supp. at 687. "The opinion simply must, in the context of the particular case, justify a good faith belief that the patent was not infringed." *Id.* Thus, Mr. Spadt's opinions are relevant to the willfulness issue.

### B. Mr. Spadt's Opinions Are Relevant Because They Rebut Cryovac's Claim That Ms. Duncan's Opinion Letter Is Incompetent.

Mr. Spadt's opinions also are relevant because they show that Cryovac is wrong in arguing that Ms. Duncan's opinion letter (Ex. V, DX 764) is incompetent. Cryovac has not argued that Mr. Spadt's opinion letters are incompetent. Thus, the competency of Ms. Duncan's opinion letter is confirmed by its parallel conclusions to Mr. Spadt's unchallenged opinion letters. For example, independently of one another, both Ms. Duncan and Mr. Spadt concluded

9

that the preamble was a limitation to claim 11, that determining whether the layers of the film

were arranged symmetrically required, *inter alia*,

**REDACTED**

and that the ClearShield

structures they considered did not infringe claim 11 under the doctrine of equivalents. Each of

the parallel conclusions in the opinion letters demonstrates the soundness of Ms. Duncan's

opinion letter and the reasonableness of Pechiney's reliance thereon.

### C. Mr. Spadt's Opinions Also Are Relevant To Cryovac's Tortious Interference Claim.

Mr. Spadt's opinions also are relevant because they show that Pechiney did not act

improperly in dealing with potential customers as Cryovac argues in its tortious interference

claims. Mr. Spadt's opinions show Pechiney's good faith in marketing its ClearShield products.

Cryovac does not dispute that Mr. Spadt's opinions are relevant to Cryovac's tortious

interference claim.

Mr. Spadt's opinions easily meet the low threshold for relevance. Cryovac does not

seriously argue that, if relevant, Mr. Spadt's opinions should be excluded under Rule 403. Mr.

Spadt's opinion letters are highly probative. Mr. Spadt's opinions are not unfairly prejudicial

and are certainly not cumulative, particularly in light of Cryovac's challenge to Ms. Duncan's

opinion letter as incompetent.

Cryovac's motion should be denied as Mr. Spadt's opinions are relevant for at least the

following reasons: (1) they form bases on which Pechiney can rely to show it had a reasonable,

good faith belief that it did not infringe; (2) they show that Ms. Duncan's opinion letter was

competent; and (3) they show Pechiney's good faith with respect to Cryovac's tortious

interference claim.

10

**III. Cryovac's Motion In Limine III Should Be Denied Because The Evidence It Seeks To Exclude Is Relevant To Willfulness And Invalidity.**

The Court should deny Cryovac's *In Limine* Request No. III.  That request attempts to preclude Pechiney from offering into evidence various exhibits and deposition testimony because Cryovac alleges that such evidence is only relevant to "the meaning of claim terms."[8] (Cryovac's *In Limine* Requests ("ILR") at 9.)  Cryovac's *in limine* request rests on a basic misunderstanding of the probative value of this evidence.  Pechiney will not introduce the evidence in question at trial to advocate a claim construction because that is an issue of law decided by the Court, not a matter for the jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996).  Rather, Pechiney intends to introduce the evidence at issue to establish how certain technical terms have been understood by persons of ordinary skill in the art.  As such, this evidence is therefore relevant to at least two issues: willfulness and invalidity, and should be admitted into evidence. *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 2004 WL 2260626, at *1 (N.D. Ill. Oct. 1, 2004)("Evidence is excluded on a motion *in limine* only if the evidence is clearly inadmissible for *any* purpose.")(emphasis added).

*First,* the evidence Cryovac is seeking to exclude is relevant to rebut Cryovac's allegation that Pechiney willfully infringed the '419 patent.  Pechiney expects to prove that there can be no willful infringement here because Pechiney relied in good faith on competent opinions of counsel, which found that Pechiney's ClearShield products did not infringe the '419 patent.  Pechiney anticipates that Cryovac will argue that it was not reasonable for Pechiney to rely on these opinions and that the opinions were not adequate, and in particular, that the claim

---

[8]     Cryovac's request that the Court exclude DX 709 is moot because Pechiney has agreed to withdraw this exhibit from its exhibit list.  Cryovac's attempt to exclude DX 708, however, should be rejected.  DX 708 is a draft of Cryovac's proposed claim construction.  It is relevant to the reasonableness of Pechiney's opinions of counsel, which will likely be an issue in the jury's determination of willful infringement.

11

construction analysis was inadequate. The evidence Cryovac argues should be precluded is relevant to this analysis. Pechiney intends to offer this evidence in part to prove that the claim construction conclusions in the opinions of counsel were reasonable because they are consistent with the ordinary meaning of the claim terms. Thus, this evidence is admissible and Cryovac's request *in limine* should be denied.

*Second,* the evidence should be admitted because it is relevant to Pechiney's arguments that the '419 patent is invalid in light of the prior art. Cryovac neglects to understand that the evidence that it is seeking to exclude relates to the ordinary meaning of certain terms in the prior art references, and therefore to what the prior art disclosed to a person of ordinary skill. Indeed, most of the dictionary entries Cryovac refers to were published more than a year prior to the March 1986 filing date of the patent and are themselves prior art to the '419 patent. (DX 44, 46, 49, 65 and 85.) DX 49 actually consists of a prior art article from 1973 with pages from a 1973 dictionary defining terms used in that article. This evidence, and all the other exhibits and deposition testimony Cryovac is attempting to exclude, are plainly relevant to Pechiney's invalidity case, and Cryovac's motion *in limine* therefore fails as a matter of law.

Cryovac's arguments for exclusion fail in the face of the high probative value of this evidence. Cryovac first contends that certain testimony should be barred because it is allegedly "inconsistent" with the Court's claim construction, and because the witnesses did not "have the benefit of the Court's claim construction at the time of their deposition." (ILR at 10.) Cryovac lists a series of deposition excerpts in a footnote, but never addresses any of them specifically, and does not explain how any of them are inconsistent with the Court's claim construction. This evidence is probative on the issues of willfulness and invalidity, and Pechiney will not be offering the evidence to the jury to attempt to rebut the Court's claim construction. Indeed,

because the evidence is relevant to multiple issues, Cryovac's motion is premature. In *Colassi v. Cybex Int'l, Inc.*, which Cryovac itself cites, the court agreed that evidence should not be offered in a manner inconsistent with the court's claim construction, but declined to exclude any evidence, ruling that "what specific evidence and arguments fit within this ruling are left for trial." 2005 WL 1972558, at *1 (D. Mass. Aug. 16, 2005).

The fact that the witnesses gave deposition testimony before the Court issued its claim construction is immaterial, since the witnesses testified concerning *their understandings* of the terms, not the Court's, and their understanding is relevant to the issues of willfulness and validity. Moreover, if this reasoning was correct, all of the deposition testimony in this case (and most deposition testimony in every other patent case) would be excluded, as claim construction rulings are usually not issued before the close of discovery.

Likewise, Cryovac's argument that certain other testimony along with exhibits containing excerpts from dictionaries should be excluded because they are allegedly "not based on the context of the claim or the patent specification as a whole" is beside the point. (ILR at 10.) This evidence shows how persons of ordinary skill have understood the meaning of certain technical terms and is therefore relevant to both willfulness and validity. Significantly, Cryovac has not cited a single case where dictionary definitions were excluded from evidence, or where deposition testimony was barred because the witness had not read the patent. Instead, Cryovac is forced to rely on cases standing for the unremarkable position that claim construction is for the court, rather than the jury. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)(en banc)(finding that claim construction is an issue for the court); *In re Fout*, 675 F.2d 297, 300 (CCPA 1982)(stating that claims must be read in light of the specification when the Court construes as a matter of law whether the preamble of a claim should be prior art);

*Vanderlande Industries Nederland BV v. ITC*, 366 F.3d 1311, 1321 (Fed. Cir. 2004)(finding that a general use dictionary, as opposed to a technical dictionary, was not persuasive to the court in construing the claims as a matter of law). Here, because the evidence in question will not be offered at trial to establish what a claim term means for the purposes of claim construction, it does not matter that the witness or the authors of a dictionary had not read the patent as a whole. Cryovac's argument has no basis.

In sum, Cryovac's In Limine Request No. III is a legally improper attempt to bar highly probative evidence and should be rejected.

**IV. The Contract Evidence Cryovac Seeks to Exclude is Relevant And Not Unfairly Prejudicial To Cryovac.**

In essence, Cryovac argues that extrinsic evidence that is damaging to Cryovac is inadmissible because the alleged contracts with National Beef are unambiguous requirements contracts, but that extrinsic evidence favorable to Cryovac is admissible because Cryovac's alleged contracts with National Beef are ambiguous. While it is permissible to argue in the alternative, that is not what Cryovac has done here. Instead, Cryovac is asking the Court to impose a higher evidentiary burden on Pechiney than the one it wants to see imposed on Cryovac.

If the Court determines that the alleged contracts between Cryovac and National Beef are unambiguous, then it is the Court's duty to construe them. *Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 726-27 (8th Cir. 2001). For the reasons set forth in Pechiney's motion for summary judgment on the tortious interference issues, the Court should conclude that those alleged contracts are not binding contracts at all, because they unambiguously lack either a quantity or an exclusivity term, and those terms, when absent, cannot be supplied by extrinsic evidence. (*See* D.I. 198 at 24-27; D.I. 279 at 13-18.) On the other hand, if the Court were to find that the alleged contracts between National Beef and Cryovac were ambiguous as to quantity, exclusivity, price or other terms, then *both* Pechiney and Cryovac must be allowed to resort to extrinsic evidence to explain the ambiguous terms, not just Cryovac.

Specifically, in the event that the Court determines that the alleged contracts are ambiguous, then Cryovac's motion to exclude two categories of extrinsic evidence that favor Pechiney should be denied. First, National Beef's understanding of the non-binding nature of its relationship with Cryovac is admissible under the very cases cited by Cryovac in support of its motion *in limine*, because that subjective understanding was objectively manifested to Cryovac

15

during negotiations. For example, in *SBC Interactive, Inc. v. Corporate Media Partners,* 1997

Del. Ch. LEXIS 180, *13 (Del. Ch. Dec. 24, 1997), the court held that an affidavit relating to

party intent was inadmissible because the affiant "never asserted that he communicated his

understanding to the other partners or that they otherwise were aware of his interpretation."

National Beef's understanding of its relationship with Cryovac is also admissible because it is

highly probative on the critical issue of whether Pechiney had knowledge of the alleged

contractual relationship between Cryovac and National Beef. Second, Cryovac's representative

non-binding pricing agreements are relevant to refuting Cryovac's argument that the mere

presence of certain clauses in the alleged National Beef contracts, such as the *force majeure*

clause, proves the parties' intent to be bound, because those same clauses are also present in

agreements that Cryovac has admitted are not binding.

   Accordingly, the extrinsic evidence Cryovac seeks to exclude satisfies the standard for

relevance under Federal Rule of Evidence 402. Under Rule 402, "[t]he test of relevance ... is

low." *Failla v. City of Passaic,* 146 F.3d 149, 159 (3d Cir. 1998). Based on this standard, the

Third Circuit has held that evidence is relevant if it has "*any* tendency to prove a consequential

fact" and irrelevant "only when it has *no* tendency to prove the fact." *Id.* (emphasis added)

(citation and quotation omitted). Therefore, the Federal Rules of Evidence "giv[e] judges great

freedom to admit evidence, [and] diminish[] substantially their authority to exclude evidence as

irrelevant." *Spain v. Gallegos,* 26 F.3d 439, 452-54 (3d Cir. 1994).

   Moreover, the extrinsic evidence Cryovac has moved to bar cannot be excluded under

Rule 403, as this rule states that relevant evidence may only be excluded if "its probative value is

*substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

16

of cumulative evidence." Fed. R. Evid. 403 (emphasis added). "Evidence should be excluded

under Rule 403 only sparingly since the evidence excluded is concededly probative." *Spain,* 26

F.3d at 453 (citation and quotation omitted). "The balance under the rule should be struck in

favor of admissibility." *Id.* (citations and quotation omitted).

If the Court does permit the introduction of extrinsic evidence concerning the alleged

contracts between Cryovac and National Beef, then Pechiney should not be barred from

introducing the evidence that is the subject of Cryovac's motion. While Pechiney agrees that

Cryovac's alleged contracts with National Beef are unambiguous, Pechiney has also

demonstrated in its summary judgment briefs that these alleged agreements are not binding

contracts at all, because they unambiguously lack either a quantity term or an exclusivity

provision and are therefore unenforceable for lack of mutuality. (D.I. 198 at 20-24; D.I. 279 at

11-18.) In fact, Cryovac has never been able to identify any *unambiguous* quantity term or

exclusivity provision in either of the alleged contracts with National Beef.[9]   Because Cryovac

cannot, as a matter of law, supply the missing quantity term or exclusivity provision through

extrinsic evidence, the alleged contracts could never be construed as binding requirements

contracts. (*See* D.I. 198 at 24-27; D.I. 279 at 13-18.)

If the Court were nevertheless to conclude that the alleged contracts between Cryovac

and National Beef were ambiguous and that the parties were entitled to prove the presence or

absence of a quantity term or an exclusivity provision through resort to extrinsic evidence, then

*both* parties should obviously be permitted to do so, and not just Cryovac. Having relied

extensively on extrinsic evidence to argue that the alleged contracts were binding, including

---

[9] Indeed, the primary UCC case relied upon by Cryovac for its proposition held that the district court had properly found that the alleged agreement was *ambiguous* and the jury could find either that the agreement was or was not a requirements contract. *See Porous Media Corp. v. Midland Brake, Inc.,* 220 F.3d 954, 959-60 (8th Cir. 2000).

course of dealing and trade usage evidence (*see* Pretrial Order Ex. 4 at 4-7), and on numerous documents and communications as evidence of the terms and content of the alleged contracts (Ex. W, DX 693), Cryovac cannot simultaneously argue that Pechiney is barred from doing so.

Assuming that the alleged contracts with National Beef are deemed to be ambiguous, then evidence of National Beef's understanding of its relationship with Cryovac is relevant and admissible under the circumstances of this case to show whether National Beef and Cryovac had a binding contractual relationship. While the general rule is that a party's undisclosed subjective intent is inadmissible for purposes of determining the existence or nature of a contract, a party's "overt manifestations" of its intent *are* admissible. *Sowell v. Townsends, Inc.*, 2000 WL 305502, * 11 (Del. Super. Ct. Jan. 26, 2000) (finding no contract existed where the "overt manifestations" of the parties showed that parties had different intentions)

REDACTED

CHICAGO_1394661_2

Evidence of National Beef's understanding of the non-binding nature of its relationship with Cryovac is admissible for the additional reason that it helps to prove that Pechiney did not have knowledge of a binding contractual relationship between Cryovac and National Beef. *See Failla*, 146 F.3d at 159 (explaining that relevant means that the evidence has "*any* tendency to prove a consequential fact") (emphasis added) (citation and quotation omitted). Cryovac cannot dispute the relevance of this evidence as it relates to Pechiney's lack of knowledge. As a result, Cryovac's motion must be denied.

Cryovac's motion to exclude extrinsic evidence regarding Cryovac's use of the same contractual terms (such as *force majeure* clauses) in both non-binding and binding agreements should be rejected, as well. Cryovac will argue at trial that the presence of certain specific contractual terms in the Cryovac/National Beef documents (such as the word "agreement" and a *force majeure* clause) prove the parties' intent to be bound contractually. In rebutting that argument, Pechiney should be permitted demonstrate that these same terms are used by Cryovac (*see* D.I. 279 at 15 n.10) in agreements that Cryovac *admits* are non-binding. Thus, the mere presence of those terms in a Cryovac-drafted agreement does not prove anything one way or the other with respect to the parties' intent to be bound.

Evidence that Cryovac's binding and non-binding agreements have the same types of clauses is also relevant to the issue of Pechiney's knowledge of whether there was a binding contract between Cryovac and National Beef, as is the admission of Cryovac's 30(b)(6) witness that a stranger to the contract cannot determine the binding nature of a Cryovac contract without knowing all of the negotiations and past purchasing history between the contracting parties. (D.I. 279 at 10, n. 7.)

**V. Evidence Of Cryovac's Disparagement Of Pechiney Is Relevant To Cryovac's Claims And Is Not Unfairly Prejudicial To Cryovac.**

In its motion, Cryovac argues that evidence of Cryovac's disparagement of Pechiney and its products and services should be barred as irrelevant, or, if relevant, because the probative value of this evidence would be substantially outweighed by its prejudicial effect. Cryovac is wrong on both counts.

The relevance of the evidence of Cryovac's behavior in the marketplace amply satisfies the standard for admissibility under Rule 402 of the Federal Rules of Evidence. As the Third Circuit has held, "[t]he test of relevance under the Federal Rules of Evidence is low." *Failla v. City of Passaic,* 146 F.3d 149, 159 (3d Cir. 1998). Under this standard, evidence is relevant if it has "*any* tendency to prove a consequential fact" and irrelevant "only when it has *no* tendency to prove the fact." *Id.* (emphasis added) (citation and quotation omitted). Therefore, the Federal Rules of Evidence "giv[e] judges great freedom to admit evidence, [and] diminish[] substantially their authority to exclude evidence as irrelevant." *Spain v. Gallegos,* 26 F.3d 439, 452-54 (3d Cir. 1994) (reversing the district court's grant of a motion *in limine* based on relevance and prejudice) (citation and quotation omitted). Under this standard, evidence of Cryovac's business practices in competing with Pechiney in this market is relevant to show that Pechiney's conduct in seeking business from National Beef was not wrongful or improper and that Pechiney was protected by *its* privilege to compete with *Cryovac* in this marketplace.

In order to prevail on its tortious interference claims, Cryovac must prove that Pechiney's conduct was "improper" or "wrongful." *Waldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.,* 992 F.2d 59, 63 (4th Cir. 1993); *K&R Leasing Corp. v. Gen'l Motors Corp.,* 551 F. Supp. 842, 848-49 (N.D. Ill. 1982). Cryovac argues that the Restatement does not permit consideration of evidence of the competitive environment in the industry at issue in determining

20

whether a defendant's alleged behavior is "improper" or "wrongful." (Cryovac's Motion *in limine* V at 17-19.) The Restatement explicitly provides, however, that "[r]ecognized standards of business ethics and business customs and practices are pertinent, and consideration is given to concepts of fair play and whether the defendant's interference is not sanctioned by the rules of the game." *See* Rest. 2d (Torts) § 767, cmt. j (internal quotation marks omitted); *see also Geofreeze Corp. v. C. Hannah Constr. Corp.*, 588 F. Supp. 1341, 1345 (E.D. Pa. 1984) (finding that no tortious interference was shown where defendant acted in accord with the customs and standards in the business). Evidence of Cryovac's competitive conduct against Pechiney is obviously relevant to establishing whether Cryovac's claims that Pechiney engaged in wrongful behavior in seeking National Beef's business are undercut by Cryovac's own "concepts of fair play" and whether Pechiney's alleged interference is or is not "sanctioned by the rules of the game" as Cryovac itself "plays the game."[10]

Moreover, evidence of Cryovac's trade disparagement is also relevant to explain and put into context certain exhibits that Cryovac will erroneously argue show willful infringement. For example, Cryovac apparently intends to argue that Pechiney was indifferent as to whether the ClearShield products infringed any patents due to the fact that the anticipated profit margins these products were significant. (D.I. 250 at 7.)

The primary piece of evidence Cryovac cites for this argument is a memorandum authored by

**REDACTED**

---

[10] Cryovac also argues that "[t]he competitive privilege ... does not even apply to tortious interference with contractual relations, only to prospective contractual relations." (Cryovac's Motion *in limine* V at 18 (citation omitted).) This argument proves too much, because Cryovac is in fact pursuing a tortious interference with prospective contractual relations claim, and therefore the issue of competitive privilege would be relevant even under Cryovac's argument.

21

# REDACTED

Evidence of Cryovac's aggressive behavior in the fresh red meat marketplace is relevant to corroborate Mr. Company's explanation of his statement and to rebut Cryovac's claim that the statement demonstrates willful infringement. Indeed, this evidence confirms, as Mr. Company predicted, that Cryovac would go to great lengths to sustain its dominance in the fresh red meat segment of the market. (*See* D.I. 172, Ex. 1, ¶¶ 27-63.) Thus, the evidence of Cryovac's competitive practices in the market for fresh red meat packaging satisfies the standard for relevance as to Cryovac's claims for tortious interference and its claim of willful infringement.

Second, there is no basis for Cryovac's claim that evidence of its behavior within the fresh red meat marketplace should be excluded, even if it is deemed relevant, on the grounds of possible jury confusion or unfair prejudice. (Cryovac's Motion V at 20-21.) Under Rule 403, evidence may only be excluded if "its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403 (emphasis added). "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative." *Spain,* 26 F.3d at 453 (citation and quotation omitted). "The balance under the rule should be struck in favor of admissibility." *Id.* (citations and quotation omitted). In particular, the Third Circuit has held that courts should be very reluctant to exclude evidence based on Rule 403 prior to trial. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.,* 998 F.2d 1224, 1240-41 (3d Cir. 1993). Specifically, "in order to exclude evidence under Rule 403 at the pretrial stage, a court must have a record complete

22

enough *on the point at issue* to be considered a virtual surrogate for a trial record." *Id.* at 1240 (emphasis added) (citation and quotation omitted).

In support of its motion to exclude evidence of its disparagement of Pechiney's ClearShield products and related services, Cryovac argues that: (1) the evidence might confuse the jury as to the issues in the case; (2) the evidence might lead the jury to find against Cryovac "on an improper basis"[11]; and (3) the evidence would be unfairly prejudicial to Cryovac. (Cryovac Motion *in limine* V at 20-21.)

The Third Circuit's opinion in *Spain v. Gallegos,* 26 F.3d 439 (3d Cir. 1994) clarifies why each of these arguments is in error. In *Spain,* the plaintiff was suing her employer, the EEOC, for hostile work environment sexual harassment based on pervasive rumors that she was having an affair with her supervisor. *Id.* at 442. The rumors stemmed from the fact that the plaintiff often met privately with the supervisor. *Id.* In actuality, during these meetings, the supervisor was pressuring the plaintiff into loaning the supervisor money, a violation of EEOC policy. *Id.* The two were not having an affair. *Id.*

The EEOC attempted to bar evidence relating to the supervisor's acceptance and solicitation of loans from the plaintiff on the grounds that (1) that introduction of the supervisor's "questionable conduct would be highly likely to distract the jury from focusing on the claim of sexual harassment and would cause the factfinder to be inclined to punish the supervisor for his unethical conduct;" and (2) "that the evidence would make the jury more likely to turn a breach of ethics into a finding of sexual harassment." *Id.* at 452-53. The Third Circuit rejected these arguments and overruled the district court's decision to grant the EEOC's motion. *Id.* at 453. The court held that the asserted potential for danger did not "substantially outweigh[]" the

---

[11] Contrary to Cryovac's suggestion, Pechiney seeks only to use the evidence of Cryovac's competitive practices in this market for the purposes discussed herein.

CHICAGO_1394661_2

probative value of the evidence, which provided "an understanding" of the facts supporting the plaintiff's claims. *Id.*[12] Similarly here, the evidence of Cryovac's business practices in this market has significant probative value in providing an understanding of the facts asserted by Cryovac in support of its claims for tortious interference and willful infringement, and this probative value is not substantially outweighed by any Rule 403 considerations.

For these reasons, Cryovac's motion to bar evidence of its own competitive behavior in the marketplace is without merit and should be denied.

---

[12] In addition, as in *Spain,* the evidence of Cryovac's behavior in the marketplace is relevant to issues that are still very much part of the case. This fact distinguishes the case here from *Lifshitz v. Walter Drake & Sons, Inc.,* 806 F.2d 1426 (9th Cir. 1986). In that case, the court held that the disputed evidence was not relevant to any element of the plaintiff's claim and its only possible use would be for impeachment purposes. *Id.* at 1431. Additionally, the court found that the evidence would only "rais[e] questions relating [to an issue], which was no longer an issue in the case." *Id.* at 1432.

24