# EXHIBIT 15

### Exhibit 15: Pechiney's Motions *in Limine*

**I.    Pechiney's Motion *in Limine* No. 1 on Deily Testimony**

Cryovac should not be permitted to introduce testimony from Karl Deily, a Cryovac sales executive, on the alleged unacceptability to customers of the bone-in meat packaging products sold by its competitor, Curwood (the "Curwood products"). This testimony is inadmissible under Rule 602 and Rule 701 of the Federal Rules of Evidence because (1) Mr. Deily has no personal knowledge concerning whether any customer found that Curwood products were unacceptable, or whether any customer would have continued to buy from Cryovac rather than Curwood if Pechiney had not introduced Clearshield; and (2) Mr. Deily is not qualified to render an opinion that the performance of Curwood products was insufficient to meet any customer's technical requirements.

On November 18, 2005, in an effort to defeat Pechiney's Motion for Partial Summary Judgment on Lost Profits (*see* D.I. 193-194), Cryovac filed with this Court an affidavit from Mr. Deily opining that National Beef and Packerland would not have purchased Curwood products because those products would have been unacceptable for a variety of reasons. *See* Affidavit of Karl Deily in Support of Cryovac's Memorandum in Opposition to Pechiney's Motion for Partial Summary Judgment of Lost Profits (herein after "Affidavit"), D.I. 244, Exhibit N. Pechiney moved to strike the Affidavit on December 5, 2005 on the grounds that it is not based on personal knowledge, lacks foundation, and is speculative and conclusory. *See* Pechiney's Motion to Strike The Affidavit of Karl Deily In Support of Cryovac's Memorandum in Opposition to Pechiney's Motion for Partial Summary Judgment on Lost Profits, D.I. 279 and D.I. 281. That motion is pending. Based on the submission of this Affidavit, Pechiney believes

that Cryovac will call Mr. Deily to testify at trial on the lack of acceptability of Curwood products to National Beef and Packerland. He should be barred from doing so.

Rule 602 of the Federal Rules of Evidence provides that, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Mr. Deily has no personal knowledge that any particular customers found that the Curwood products were unacceptable, yet he opines on their unacceptability to customers generally. Mr. Deily's lack of personal knowledge is highlighted by the indisputable factual record in this case that Curwood has in fact sold its bone-in meat packaging products to *some* customers, so the Curwood products are clearly acceptable to those customers. *See* Pechiney's Memorandum in Support of Its Motion for Partial Summary Judgment on Lost Profits (D.I. 194) at p. 8 (and sources cited therein). It is axiomatic that, if Curwood's bags are acceptable to some customers, they cannot be unacceptable generally.

In his affidavit, the only grounds Mr. Deily disclosed for claiming personal knowledge on this subject were that he was "knowledgeable about Cryovac's bone-in meat packing products and those of its competitors in addition to the demands and product needs of the customers for these products." (Affidavit, ¶ 2.) He does not claim that he was ever directly involved in any negotiations with customers concerning the sale of bone-in meat packaging, or that he attended even a single meeting with customers where Curwood products were discussed.

Based solely on general knowledge of the industry he has gained as a Cryovac sales executive, Mr. Deily claims that the Curwood products are unacceptable to customers because they do not have "all of the beneficial characteristics of Cryovac's [products]." (Affidavit, ¶ 4.) While he purports to rely on certain documents relating to the performance of the Curwood products, many of which consist of Cryovac's own self-serving findings (*id.* ¶ 5), he does not

claim that he has personal knowledge that any customer ever determined that Curwood products were unacceptable because they lacked the alleged "beneficial characteristics" of Cryovac's products. In fact, the only direct, competent evidence provided during discovery of the views of an actual customer concerning the acceptability of bone-in meat packaging was that it was not performance, but price, that motivated the customer to switch suppliers.

REDACTED

Mr. Deily identifies several additional grounds to support Cryovac's position that Curwood products are unacceptable to customers, but he lacks personal knowledge to testify as to any of these matters. For example, Mr. Deily claims that Curwood products were unacceptable to customers because Curwood does not offer a complete line of bone-in packaging products and because Curwood has not demonstrated a consistent ability to service bone-in bag customers (Affidavit, ¶¶ 6-7), but he has no personal knowledge that any customer ever found Curwood products unacceptable for these reasons.

Likewise, Mr. Deily claims that the unacceptability of Curwood products can be inferred by the fact that National Beef and Packerland have previously purchased their bone-in bags from Cryovac rather than from Curwood, and that customers "tend to buy" Cryovac's bags. (Affidavit, ¶¶ 5, 8). He does not claim, however, that he has personal knowledge of the reasons National Beef, Packerland, or any other customer purchased Cryovac's products rather than Curwood's, and there are a host of reasons for such a decision other than the "unacceptability" of Curwood products.

REDACTED

To the extent that Mr. Deily's testimony consists of inferences and opinions based on alleged facts of which he has no personal knowledge, this testimony is inadmissible under Rule 701 as well as Rule 602. Rule 701 states that "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are: (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Because Rule 701 requires that any opinions or inferences of lay witnesses must be "rationally based on the perception of the witness," the rule bars lay witnesses from giving speculative opinion testimony that is not based on the witness' own perception. *See Washington v. Dept. of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) ("speculative opinion testimony by lay witnesses -- i.e., testimony not based upon the witness's perception -- is generally considered inadmissible"). For this reason, Mr. Deily cannot be permitted to make inferences or give opinions at trial to support Cryovac's position that if Pechiney had not introduced its Clearshield product, customers for bone-in meat packaging, such as National Beef and Packerland, would have purchased these products from Cryovac rather than from Curwood. (Affidavit ¶ 9.)

Mr. Deily's opinion testimony that Curwood products are unacceptable is also inadmissible under Rule 701 because it is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. As noted above, Mr. Deily relies on the purportedly inferior performance of Curwood products, but Mr. Deily does not have any technical background or training in polymer engineering or any other pertinent discipline that would qualify him to testify on the technical performance of Curwood products. *See, e.g., Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 (3d Cir. 1995) (finding that

allowing a witness "to offer a technical opinion which he lacks the necessary knowledge and experience to make, runs afoul of the requirements of Rule 701."). Accordingly, Rule 701 bars Mr. Deily from offering an opinion that is based on the performance of Curwood products.

For all these reasons, Cryovac should be prevented from introducing any testimony of Mr. Deily that the Curwood products are unacceptable based on any alleged facts of which Mr. Deily lacks personal knowledge and/or lacks technical expertise, including but not limited to testimony that the Curwood products did not match the performance of Cryovac's products, Curwood's service was inferior to Cryovac's, Curwood did not offer a complete line of products, or that some customers purchased Cryovac's products rather than Curwood products.

## II.     Pechiney's Motion *in Limine* No. 2 on Nawrocki Testimony

Pechiney moves pursuant to Fed. R. Civ. P. 26 and 37 for an order barring Cryovac's damages expert, James J. Nawrocki, from testifying at trial on damages opinions that Cryovac failed to disclose in discovery. Specifically, Cryovac should not be permitted to introduce undisclosed expert testimony from Mr. Nawrocki concerning new theories on lost profits damages for patent infringement that Cryovac has asserted since the close of expert discovery, or on unjust enrichment damages for tortious interference.[1]

Under Federal Rules of Civil Procedure 26(a)(2)(B), a party must make detailed disclosures of expert testimony, and under Rule 37(c)(1), a party failing to fulfill these disclosure obligations cannot introduce expert opinion testimony at trial. As provided in Federal Rule

---

[1]  Pechiney had assumed that Cryovac did not intend to present any opinion testimony from Mr. Nawrocki on the calculation of unjust enrichment damages for tortious interference because Mr. Nawrocki did not disclose an opinion on this subject in any of his reports or deposition testimony. Pechiney's counsel called Cryovac's counsel on March, 22, 2006 to confirm that Cryovac did not intend to introduce at trial any opinion testimony on unjust enrichment damages for tortious interference. On March 23, 2006, Cryovac responded, refusing to stipulate to the exclusion of opinion testimony on this subject.

37(c)(1), "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). *See also Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th Cir. 2002); *Nicolas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3rd Cir. 2000); *Pell v. E.I. duPont de Nemours & Co.*, 231 F.R.D. 186, 194 (D. Del. 2005).

The prejudice to Pechiney from the introduction of trial testimony on expert opinions from Mr. Nawrocki that Cryovac failed to disclose is obvious. As stated in the Advisory Committee Notes to Rule 26(a)(2), "This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26(a)(2), Advisory Committee Note (1993 Amendments); *see also Jacobsen,* 287 F.3d at 953. Because Pechiney was unaware of these opinions from Mr. Nawrocki, Pechiney had no opportunity to question Mr. Nawrocki on these opinions during his depositions or to introduce its own expert opinions to rebut Mr. Nawrocki's testimony.

On the subject of lost profits damages, Mr. Nawrocki opined in his May 19, 2005 report that Cryovac was entitled to lost profits **REDACTED** for patent infringement. *See* Expert Report of James J. Nawrocki, May 19, 2005 at 5-6. He has never disclosed any opinions relating to two damages theories Cryovac advanced long after all the expert reports had been submitted and all the expert depositions had been taken. First, in a summary judgment brief Cryovac filed on November 18, 2005, Cryovac asserted that it was entitled to lost profits for

patent infringement even if Curwood's products were acceptable non-infringing alternatives based on sales Cryovac would have under its alleged "contracts with National Beef and long term sales relationship with National Beef and Packerland." (Plaintiff Cryovac's Brief in Opposition to Pechiney's Motion for Partial Summary Judgment of Lost Profits dated Nov. 18, 2005 at 20-22.) This theory is not supported by any opinions disclosed in Mr. Nawrocki's reports.

On March 23, 2006, Cryovac submitted to Pechiney its Itemized Statement of Damages, which asserted a second new claim for an award of lost profits for patent infringement. Specifically, Cryovac claims it is entitled to lost profits for patent infringement of between **REDACTED** based on the assumption that "Cryovac would have made 100% of Pechiney's infringing sales to National Beef and 90% of Pechiney's infringing sales to other customers." (Exhibit 13: Cryovac's Itemized Statement of Damages). Mr. Nawrocki never disclosed an opinion on this theory for calculating damages. Because Cryovac provided its Itemized Statement of Damages at approximately 9:30 p.m. (CST) the evening before motions in limine were due, Pechiney also seeks the exclusion of all other previously undisclosed opinion testimony of Mr. Nawrocki that Cryovac seeks to introduce at trial to support damages theories and calculations set forth in its Itemized Statement of Damages.

Cryovac should also be barred from presenting expert testimony of Mr. Nawrocki on the amount of unjust enrichment damages that should be awarded if Cryovac prevails on its tortious interference counts because he did not disclose any opinion on this topic during discovery, either in his expert reports or during his depositions. In his initial report dated May 19, 2005, Mr. Nawrocki stated that he had "been asked to calculate the unjust enrichment obtained by Pechiney resulting from its alleged tortious interference" but that he was "not able to calculate the total

unjust enrichment damages" at that time because he had not received complete information on ClearShield sales and profits. *See* Expert Report of James J. Nawrocki, May 19, 2005 at 27. Mr. Nawrocki went on to file two additional damages reports, one on July 25, 2005 and another on August 30, 2005. Neither report disclosed an opinion on the amount of alleged unjust enrichment damages despite the fact that Pechiney had provided extensive information on its Clearshield profits and sales before Mr. Nawrocki submitted these additional reports.

For example, in interrogatory answers Pechiney provided to Cryovac on April 29, 2005, Pechiney disclosed its Clearshield sales as of March 31, 2005. By July of 2005, Pechiney had produced Clearshield sales and profits records and Cryovac had deposed the Pechiney witnesses with knowledge of Pechiney's Clearshield sales and profits. Much of this information was provided to Cryovac before Mr. Nawrocki's initial May 2005 report, and all of it was provided before Mr. Nawrocki submitted his last report in August of 2005.

In sum, Cryovac should not be permitted to introduce any opinions from Mr. Nawrocki on the calculation of unjust enrichment damages because no such opinions were ever disclosed, and there are no grounds for asserting substantial justification for non-disclosure.

### III.    Pechiney's Motion *in Limine* No. 3 on Duplicative Technical Expert Testimony

Cryovac should be barred under Rule 403 of the Federal Rules of Evidence from introducing duplicative testimony from its two technical experts, Dr. Robert M. Kimmel and Dr. Garth L. Wilkes.[2] Any probative value of testimony from two experts on the same subjects is

---

[2]    On March 15, 2006, counsel for Pechiney informed counsel for Cryovac that Pechiney would object to any duplicative expert testimony from Dr. Kimmel and Dr. Wilkes. Counsel for Cryovac responded on March 20, 2006, stating that although Cryovac did not intend to offer duplicative testimony, both Dr. Kimmel and Dr. Wilkes would testify regarding the opinions set forth in their expert reports. As explained herein, significant portions of the reports of Dr. Kimmel and Dr. Wilkes are virtually identical in substance and so, any such testimony would likely be duplicative.

substantially outweighed by unfair prejudice to Pechiney, which is presenting only one technical

expert, by confusion of the issues, by misleading the jury, and by resulting in needless

presentation of cumulative evidence.

Rule 403 provides that, "Although relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence." Fed. R. Evid. 403. This rule has been applied to exclude duplicative or

cumulative expert testimony. *See PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 2003 U.S. Dist.

LEXIS 17137, *8-9 (D. Del. Sept. 30, 2003). To avoid the prejudice resulting from the

presentation of repetitive or cumulative evidence, the trial court may limit the number of expert

witnesses. *See* 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice and

Procedure, § 5220 (1978) (*citing* 6 Wigmore, Evidence § 1908 (3d ed. 1940)); *Robinson v.*

*Thomas*, 1995 U.S. Dist. LEXIS 15078 *20 (N.D. Ill. Oct. 10, 1995) (both of plaintiff's experts

were permitted to testify, but limited to non-cumulative and non-repetitive testimony); *Allendale*

*Mutual Ins. Co. v. Bull Data Sys., Inc.*, 1994 U.S. Dist. LEXIS 12933 *20 (N.D.Ill. Sept. 9,

1994)(granting motion in limine to preclude duplicative testimony by two experts).

While Cryovac's summary of their respective testimony in the Final Pretrial Order sets

forth the topics on which each witness will focus, Cryovac also states that each expert "will

testify" on the opinions in their reports. There are extensive portions of Dr. Kimmel's and Dr.

Wilkes' reports that are, in substance, virtually identical. (*See, e.g.,* Wilkes Report at ¶ 142,

Kimmel June 17 Rebuttal Report at p. 63; Wilkes Report at ¶ 144, Kimmel June 17 Rebuttal

Report at p. 71; Wilkes Report at ¶ 57, Kimmel June 17 Rebuttal Report at p. 22; Wilkes Report

at ¶ 128, Kimmel June 17 Rebuttal Report at p. 27; Wilkes Report at ¶ 86, Kimmel June 17

Rebuttal Report at p. 35; Wilkes Report at ¶ at 108, Kimmel June 17 Rebuttal Report at pp. 39-40; Wilkes Report at ¶ 99, Kimmel June 17 Rebuttal Report at p. 46; Wilkes Report at ¶¶ 16-17, Kimmel June 17 Rebuttal Report at p. 8.) Both Dr. Kimmel and Dr. Wilkes give opinions on (1) the manufacture of multilayer plastic films, including the process of orientating and coextruding plastic films (Wilkes Report at ¶¶ 27-28, Kimmel Report at pp. 5-6); (2) whether the '419 patent covers Pechiney's ClearShield products (Wilkes Report at ¶ 144, Kimmel Report at pp. 15-31); (3) the same prior art references that form the basis of Pechiney's anticipation and obviousness invalidity claim and defense (Wilkes Report at ¶¶ 50-140, Kimmel June 17 Rebuttal Report at pp. 16-52; Wilkes July 15 Rebuttal and Supplemental Report at ¶¶ 1-7, Kimmel July 11 Supplemental Expert Report at pp. 2-6); and (4) evidence of non-obviousness in response to Pechiney's invalidity claim. (Wilkes Report at ¶ 142, Kimmel June 17 Rebuttal Report at pp. 63-64.)

Cryovac should be barred under Rule 403 from presenting opinion testimony from its two technical experts on the issues listed above, on any other issues covered in the reports or deposition testimony of both experts and on any issues they may attempt to discuss for the first time at trial. Any probative value of this duplicative testimony is substantially outweighed by the prejudice to Pechiney, which is presenting only one technical expert, and by the other factors set forth in Rule 403, including the likelihood that this evidence would confuse the issues, mislead the jury, and result in the needless presentation of cumulative evidence.

IV.    **Pechiney's Motion *in Limine* No. 4 on Date of Invention**

Pechiney moves *in limine* pursuant to Fed. R. Evid. 403 for an order precluding Cryovac from arguing for a date of invention for claim 11 of the '419 patent earlier than the March 21, 1986 filing date of the application that led to the '419 patent.

Cryovac bears the burden of proving that it is entitled to a date of invention earlier than the filing date of the '419 patent. *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986). To be entitled to an earlier invention date, Cryovac would need evidence of conception of the subject matter of claim 11 by the named inventor, Gautam Shah, beyond the mere testimony of Mr. Shah. Cryovac has withheld documents that are allegedly Shah's two invention disclosures as privileged. Cryovac should not be allowed at trial to try to prove a date of invention prior to the filing date after having invoked the privilege to cut off discovery by Pechiney.

Conception occurs when the inventor has "a definite and permanent idea of the complete and operative invention . . . ." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). Conception requires that the inventor have possession of all limitations of the claimed invention. *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1263 (Fed. Cir. 2002). Conception must be proven by corroborating evidence that shows that the inventor disclosed to others his "'completed thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985) (citation omitted). Corroboration is required to prevent fraud by providing independent confirmation of the inventor's claims. *Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997). Mr. Shah's self-serving testimony, standing alone, is insufficient proof of his alleged conception.[3] *Price v. Symsek*, 988 F.2d 1187, 1194-95 (Fed. Cir. 1993).

---

[3]   Corroborating evidence of conception is especially critical in this case because another inventor at Cryovac discovered the same seven-layer film structure, just before Mr. Shah, down the hall from Mr. Shah's laboratory. Cryovac employee, Reverend Ennis Fant, developed a symmetrical film with the structure LLDPE/tie/Nylon/EVOH/Nylon/tie/LLDPE. (Ex. A, Fant Dep. Tr., 84:16-87:4.) Rev. Fant's symmetrical film had the same general components and structure as Mr. Shah's developmental films but was made on the machine assigned to Rev. Fant's department instead of the one assigned to Mr. Shah's department.

Cryovac contends that that Mr. Shah conceived of the subject matter of claim 11 on or before April 2, 1985. (Ex. C, Shah 30(b)(6) Dep. Tr., 9:19-21; 32:14-16.) However, Cryovac has produced no evidence sufficient to prove this conception date.[4] Mr. Shah's mere uncorroborated assertion that he "conceived" of the subject matter of claim 11 by April 2, 1985 cannot carry Cryovac's burden.

Mr. Shah, Cryovac's designated Rule 30(b)(6) representative on the issue of conception, identified two categories of evidence as support for Cryovac's contention that conception occurred prior to the filing date: (1) two documents that allegedly are "invention disclosures" by Shah, and (2) notebook pages relating to two films made by Tommy Kay said to be the two examples in the '419 patent.

As to the first category, Cryovac withheld the alleged invention disclosures, listing them on its privilege log (Ex. D.) as documents 20 and 21. Cryovac asserts that the two withheld documents refer to the invention disclosures of FDX 1570 and FDX 1572, which were two Cryovac developmental films which later became Examples 1 and 2 of the '419 patent. According to Cryovac, these documents show that Mr. Shah conceived of the subject matter of claim 11. (Ex. C, Shah 30(b)(6) Dep. Tr., 9:16-21, 21:22-22:9.) Cryovac attempted to rely in the 30(b)(6) deposition on information allegedly contained in privileged documents 20 and 21 without providing the documents. (Ex. C, Shah 30(b)(6) Dep. Tr., 20:14-22:9.) When Pechiney's counsel inquired as to the contents of the withheld documents, Mr. Shah was

---

Rev. Fant's invention and Mr. Shah's invention overlapped so much that Cryovac merged them into a single application for foreign filing of European Patent Application 023609982, Oxygen Barrier Film Packaging, dated 27/02/87. (Ex. B.)

[4]    Indeed, it appears that Mr. Shah did not conceive of the subject matter of claim 11 even as of the filing date. As filed, none of the claims recited any "symmetrical" or "symmetrically" limitation. Mr. Quatt, the prosecuting attorney, added the "arranged symmetrically" limitation in response to a prior art rejection.

instructed not to answer based on privilege. (Ex. C, Shah 30(b)(6) Dep. Tr., 24:17-21.)

Pechiney's counsel expressly warned Cryovac:

> "You're not entitled to assert privilege on it, however, and then try
> to use it as evidence to show a conception. So, at this point, I
> would officially state that if you are going to try to rely on it, this is
> the time to disclose it because we're here in a 30(b)(6) deposition
> for which it would be used. And, if it's not disclosed now, we're
> going to move to strike it to the extent you try to bring it in later,
> the document itself, or any facts about it."

(Ex. C, Shah 30(b)(6) Dep. Tr., 25:4-16.)

Cryovac cannot have it both ways. Having withheld these documents during discovery, Cryovac cannot now rely at all on their alleged contents. *Pack v. Beyer,* 157 F.R.D. 219, 221-22 (D.N.J. 1993) (citing *Kinoy v. Mitchell,* 67 F.R.D. 1, 15 (S.D.N.Y. 1975)) (granting plaintiff's motion in limine to preclude defendant from using privileged information at trial). The party must either assert the privilege and be barred from using the information at trial, or disclose the information so that the party can rely on the evidence. *Id.* at 220.

Similarly, Cryovac should not be allowed to rely later on self-serving evidence on this issue "while withholding potentially damaging information under the guise of the attorney-client privilege." *Greene, Tweed, Inc. v. DuPont Dow Elastomers, L.L.C.,* 202 F.R.D. 418, 421 (E.D. Pa. 2001) (citing *Mushroom Assoc. v. Monterey Mushrooms, Inc.,* 1992 U.S. Dist. LEXIS 19664, No. 91-1092, at *10 (N.D. Cal. May 19, 1992)).

Thus, the Court should also bar any reliance on the second category of evidence that Cryovac relies on for an earlier date of invention: the notebook pages regarding the production of FDX 1570 and FDX 1572 by Tommy Kay on April 2 and April 3, 1985. There is no properly corroborated evidence whatsoever that ties those films to any conception by Mr. Shah. Moreover, while Pechiney cannot say for certain what Cryovac fears from the invention disclosures, those documents plainly do not show conception of the subject matter of claim 11 or

Cryovac would have been sure to produce them. More likely, they would show that Mr. Shah viewed the FDX 1570 and FDX 1572 as two distinct inventions, not as embodiments of a single broader invention. Indeed, Cryovac has admitted that one invention disclosure was directed to FDX 1570 and the other to FDX 1572. (Ex. C, Shah 30(b)(6) Dep. Tr., 23:14-17.) In any event, without these documents, Pechiney was denied a line of cross-examination regarding Mr. Kay's work and so Cryovac should not be allowed to rely on that either.

Cryovac admits that there is no evidence, documentary or otherwise, that films FDX 1570 and FDX 1572 were conceived by Mr. Shah other than information allegedly contained on documents listed in Cryovac's privilege log. (Ex. C, Shah 30(b)(6) Dep. Tr., 20:4-22:9.) Pechiney agrees with this admission because none of the Exhibits used in Mr. Shah's 30(b)(6) deposition show that Mr. Shah had "a *definite* and *permanent* idea of the *complete* and operative invention."

The exhibits used in the deposition also do not show that Mr. Shah had conceived of each claim limitation, especially under Cryovac's claim construction. (*See* Cryovac's Initial Brief on Claim Construction (D.I. 203) at 24.) For example, the exhibits do not show that Mr. Shah conceived that his invention "does not limit the thickness of the layers... [or] the amounts of recited components or additives that may be included in the layers." (*Id.*) Thus, Cryovac withheld the only documents that could possibly corroborate Mr. Shah's alleged earlier conception and admitted that their remaining evidence was insufficient. Cryovac cannot possibly meet its burden of proving an earlier date of invention and should therefore be precluded from introducing any evidence relating to an alleged earlier date of invention. Any such evidence could only confuse the jury and unfairly prejudice Pechiney.

Pechiney would be unfairly prejudiced if Cryovac is allowed to argue for an earlier invention date when it has no competent evidence of Shah's conception of the subject matter of claim 11. Under Rule 403, evidence may be excluded if its probative value is outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Fed. R. Evid. 403. Pechiney was denied discovery concerning the withheld documents, and Cryovac cannot now rely on the alleged contents of documents that it refused to produce or on later self-serving evidence that cannot be properly assessed without the prior invention disclosure. It is axiomatic that the attorney-client privilege cannot be used as both a sword and a shield. *In re Rhone-Poulenc Rorer, Inc.*, 1998 U.S. App. LEXIS 33192, at *5 (Fed. Cir. Dec. 21, 1998) ("[A party] may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.") (citation omitted).

## V.    Pechiney's Motion *in Limine* No. 5 on Doctrine of Equivalents

Pechiney hereby moves *in limine* for an order precluding Cryovac from introducing evidence or argument, including expert testimony, concerning infringement under the doctrine of equivalents.[5]

Cryovac should be barred from asserting infringement of claim 11 of the '419 patent under the doctrine of equivalents because it did not disclose the necessary expert testimony on that issue during discovery. In order to prove infringement under the doctrine of equivalents, a patentee must provide specific expert testimony and argument establishing that an accused

---

[5]    Pechiney presumes that Cryovac does not intend to raise the doctrine of equivalents as Cryovac did not include any opinions relating thereto in its expert witness reports and did not raise any argument defending against Pechiney's motion for summary judgment of noninfringement under the doctrine of equivalents. Pechiney's counsel called Cryovac's counsel on March, 22, 2006 to confirm that Cryovac did not intend to raise the doctrine of equivalents at trial. On March 23, 2006, Cryovac responded, refusing to stipulate to the exclusion of evidence relating to infringement under the doctrine of equivalents, thereby forcing Pechiney to file the present motion.

product meets each limitation of the claim. As a result, if the patentee does not disclose such testimony in an expert report under Rule 26(a)(2)(B), Fed. R. Civ. P., it is not allowed to allege infringement of that claim under the doctrine of equivalents. Despite having two technical experts, Cryovac has not provided the necessary expert analysis, and indeed has not even made a general allegation of infringement under the doctrine of equivalents. As a result, under controlling law, and in order to ensure that Cryovac does not ambush Pechiney with such an accusation at trial, Cryovac should be precluded from alleging, or offering any evidence at trial purporting to show, infringement under the doctrine of equivalents.[6]

A plaintiff is precluded from asserting infringement under the doctrine of equivalents if it has not provided the necessary analysis from an expert witness in an expert report. The Federal Circuit requires specific testimony and argument:

> [A] patentee must ... provide *particularized testimony and linking argument* as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented *on a limitation-by-limitation basis*. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996) (emphasis added); *see also, Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1322-23 (Fed. Cir. 2003) ("[T]he evidentiary requirements for proof of infringement under the doctrine of equivalents ... require ... provid[ing] evidence 'on a limitation-by-limitation basis' ... [and][t]hat evidence must have included 'particularized testimony and linking argument.'") (citations omitted)).

---

6   Pechiney has also moved for summary judgment of non-infringement under the doctrine of equivalents because of prosecution history estoppel. If the Court grants summary judgment for Pechiney on this issue, the present motion *in limine* would be unnecessary.

Moreover, "infringement analysis under *the doctrine of equivalents requires a separate analysis from literal infringement*." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1378 (Fed. Cir. 2003) (emphasis added) *citing Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1425 (Fed. Cir. 1989). This separate analysis is necessary to ensure that the doctrine of equivalents is not used to "erase a plethora of meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement." *Texas Instruments*, 90 F.3d at 1567. Accordingly, a patentee that does not provide the required analysis is "foreclosed from invoking the substantive application of the doctrine of equivalents." *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1364 (Fed. Cir. 2005).

Based on this controlling Federal Circuit precedent, this Court has precluded evidence of infringement under the doctrine of equivalents when the patentee has not provided "particularized testimony and linking argument" in an expert report. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 114, 115, 120 (D. Del. 2004) (granting motion *in limine* precluding patentee from "introducing any evidence of alleged infringement under the doctrine of equivalents"). An expert cannot provide testimony at trial that was not disclosed in an expert report. Fed. R. Civ. P. 26(a)(2)(B); *Honeywell*, 347 F. Supp. 2d at 120. Without expert testimony setting forth the required analysis, the patentee cannot carry its burden of proving infringement under the doctrine of equivalents, and the accused infringer "would be entitled to a directed verdict of non-infringement under the doctrine of equivalents." *Honeywell*, 347 F. Supp. 2d at 120. Accordingly, the patentee is not permitted to introduce any evidence of such infringement at trial. *Id.* at 115, 120.

Here, Cryovac has not disclosed the necessary particularized expert testimony, and should therefore be barred from asserting infringement under the doctrine of equivalents. In

*Honeywell*, "[c]onclusory assertions of infringement under the doctrine" were not enough to escape an order in limine. *Id.* at 120. Cryovac never even made such conclusory assertions, and it certainly did not provide notice of any particularized testimony and linking argument for each claim limitation. Cryovac submitted a total of five reports from two technical experts: opening, rebuttal and supplemental reports from Dr. Robert M. Kimmel and opening and rebuttal reports from Dr. Garth L. Wilkes. Neither expert even alleged infringement under the doctrine of equivalents, much less provided the analysis required by the Federal Circuit. As a result, under this Court's precedent articulated in *Honeywell*, Cryovac should be precluded from presenting any argument or evidence purporting to show infringement under the doctrine of equivalents, including any expert testimony by Drs. Kimmel or Wilkes.

For the reasons set forth above, Pechiney respectfully requests that the Court preclude Cryovac from introducing at trial any argument or evidence, including any testimony of Dr. Kimmel or Dr. Wilkes, on the issue of infringement under the doctrine of equivalents.

**Cryovac's Responses to Pechiney's *In Limine* Requests**

I.    **Response to Pechiney's *In Limine* Request No. 1 Regarding Karl Deily's Testimony**

Pechiney has moved to prevent Karl Deily from testifying at trial that Curwood's bone-in meat packaging products are not acceptable non-infringing alternatives.  Contrary to Pechiney's allegations, Mr. Deily's testimony on this subject is based his first hand factual knowledge, and therefore, it is admissible under Rule 602 of the Federal Rules of Evidence.  Moreover, Mr. Deily's opinion that had Pechiney not introduced its ClearShield® product, National Beef and Packerland (now a division of Smithfield) would have continued to buy their bone-in packaging products from Cryovac, is permissible lay opinion testimony under Rule 701 of the Federal Rules of Evidence, and also should be permitted at trial.

A.    **Mr. Deily's Testimony Is Based on Personal Knowledge**

Pechiney argues that Mr. Deily should be prevented from testifying as to the unacceptability of Curwood's products under Rule 602 for lack personal knowledge.  The facts Mr. Deily is expected to testify about, however, are based on his personal knowledge in full conformity with Third Circuit requirements.  Indeed Pechiney's unsupported lawyer's argument that Mr. Deily lacks personal knowledge is contrary to the evidence of record.

When Mr. Deily was deposed on August 19, 2005, he discussed his extensive involvement interacting with customers and maintaining customer relationships during his employment at Cryovac.  [Tab E (Deily 8/19/05 tr.) at 229:20-231:1.]  As Mr. Deily testified at his deposition, he has spent approximately ten years in his current position as Vice President of Cryovac North America and in his previous position as Vice President of Cryovac's Food Products North America.  In those roles, he conducted business negotiations, discussed future business, and obtained an understanding of customer buying habits, competitor selling trends, and an understanding of how customers make decisions to buy from Cryovac and its competitors.  [*Id.* at 228:12-17, 230:6-231:1,

Exhibit 15 of the Pretrial Order
Page 1

231:17-232:3 (emphasis added).]    During this time he has negotiated 40-50 contracts with customers for fresh red meat and he has had discussions with customers, such as National Beef, about the contracting practices of Cryovac's competitors. [*Id.* at 226:21-227:11, 233:16-234:15.]

Additionally, in his Affidavit, Mr. Deily identified a specific instance of which he was aware in which National Beef had to select a replacement for Pechiney's ClearShield product at one of its meat-packing operations and chose Cryovac, not Curwood. [D.I. 245 at ¶ 8.] This is further evidence that Mr. Deily's anticipated testimony is based on his personal knowledge from his role as Vice President of Cryovac North America.

The Third Circuit has explained that for testimony to be based on personal knowledge requires that "what the witness represents as his knowledge must be an impression derived from his own senses. And this impression must be gauged by the geographic proximity of the witness to the event, the length of time involved, and the existence of proper conditions for the exercise of powers of observation and perception." *Joy Mfg. Co. v. Sola Basic Indus., Inc.*, 697 F.2d 104, 111-12 (3d Cir. 1982) (holding that, in his position as Supervisor of Production Control, the witness had "extensive personal knowledge" of plaintiff's plants), citing *United States v. Barber*, 442 F.2d 517, 526 (3d Cir. 1971). In this case, Mr. Deily derived the facts he is expected to testify about from his own senses during the normal course of his employment at Cryovac. Mr. Deily's geographic proximity to the events he will discuss arises from his responsibility to be knowledgeable not only of Cryovac's bone-in packaging products but also those of Cryovac's competitors, as well as the product needs of the customers for these products. [D.I. 245 at ¶ 2.] Pechiney's allegation that Mr. Deily "does not claim that he was ever directly involved in any negotiations with customers concerning sales of bone-in meat packaging, or that he attended even a single meeting with customers where Curwood products were discussed," without any citation to the record, is flatly refuted by Mr. Deily's deposition testimony described above.

Exhibit 15 of the Pretrial Order
Page 2

Mr. Deily's regular involvement in matters related to bone-in packaging products at Cryovac clearly created the proper conditions for the exercise of his "powers of observation and perception" that led to his knowledge of the facts he is expected to testify about (*e.g.*, deficiencies in Curwood's bone-in packaging products and services and National Beef's preference for Cryovac products over Curwood's when problems with Pechiney's ClearShield® arose). *See Joy Mfg.*, *supra*. Furthermore, in his position as Vice President, Mr. Deily has a breadth of exposure to customers and knowledge of the competition that a salesman or research scientist would not. Thus, Mr. Deily is competent to testify as to the facts surrounding the unacceptability of Curwood's bone-in packaging products as noninfringing alternatives.

Contrary to Pechiney's assertion, the sale of Curwood's products to some customers does not evidence that they are acceptable to those customers, nor does it "highlight" Mr. Deily's alleged lack of personal knowledge. Federal Circuit case law holds that a product is not an acceptable non-infringing alternative based on its availability alone. *See Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1351-52, 1355 (Fed. Cir. 1999) (Market sales are "evidence of availability of a substitute," and are not sufficient alone to show that the product is an acceptable noninfringing substitute.); *see also Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (stating that even if a percentage of the relevant market is held by competitors, it did not necessarily follow that acceptable non-infringing substitutes existed in the market). Rather, for a product to be an acceptable noninfringing alternative, it must have the same advantages and performance capabilities as the patentee's product such that the consumers would be satisfied by the alternative. *See Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997) (holding that the award of lost profits was supported by substantial evidence that no acceptable alternatives existed where available alternatives to patentee's MRI technology would have led to significant compromise in speed and quality).

Exhibit 15 of the Pretrial Order
Page 3

**REDACTED**

Because Mr. Deily will testify as to impressions derived from his own senses in performing his duties on behalf of Cryovac and his interactions with customers, not mere beliefs or opinions, his testimony is proper under Third Circuit precedent and, therefore, Pechiney's motion should be denied. *See Joy Mfg. supra.*

**B.    Mr. Deily's Lay Opinion Is Proper Under Federal Rule of Evidence 702**

Contrary to Pechiney's allegation, Mr. Deily will not give improper opinion testimony, rather his opinion that had Pechiney not introduced its ClearShield® product, National Beef and Smithfield would have continued to buy their bone-in packaging products from Cryovac as they had done in the past is permissible lay opinion testimony under Rule 701. His lay opinion is (1) rationally based on his perception, (b) helpful to a clear understanding of the determination of damages to be awarded to Cryovac, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

As explained above, and in Plaintiff Cryovac's Answering Brief In Opposition to Pechiney's Motion to Strike the Affidavit of Karl Deily [D.I. 295], Mr. Deily has personal knowledge of the facts on which he will rely in forming his opinion. This personal knowledge encompasses bone-in meat packing products from Cryovac and its competitors, as well as the

Exhibit 15 of the Pretrial Order

Page 4

demands and product needs of the customers for these products, including National Beef and Smithfield. His personal knowledge also includes what actually happened in the real world when National Beef had to select a replacement for some of Pechiney's ClearShield® product. These facts perceived by Mr. Deily logically support his opinion; therefore, his opinion is rationally based on his perception in accordance with Rule 701. *See Joy Mfg.*, 697 F.2d at 110-11.

Because Mr. Deily's opinion is based on perceived facts, it follows that his opinion is not based on scientific, technical, or other specialized knowledge that otherwise should be the subject of expert testimony within the scope of Fed. R. Evid. 702. *See also Merritt Logan, Inc., v. Fleming Co.*, 901 F.2d 349, 360 (3d Cir. 1990) (finding that a business owner's personal knowledge of his business was sufficient personal knowledge to make the witness eligible to testify as to how lost profits could be calculated in that case and was not required to qualify as an expert). Therefore, Mr. Deily's opinion also satisfies the third requirement of Rule 701.[1]

Accordingly, because Mr. Deily's lay opinion fully complies with all three requirements of Fed. R. Evid. 701, it constitutes permissible lay opinion testimony, and Pechiney's motion should be denied.

---

[1] Pechiney does not contend that the second requirement of Rule 701, that the opinion be helpful to a clear understanding of a fact in issue, is not met.

Exhibit 15 of the Pretrial Order
Page 5

**II.    Response to Pechiney's *In Limine* Request No. 2 Regarding James Nawrocki's Testimony**

Pechiney has moved to prevent James Nawrocki, Cryovac's damages expert, from testifying at trial on allegedly undisclosed damages opinions for patent infringement and unjust enrichment damages for tortious interference. Contrary to Pechiney's allegations, all of the opinions regarding damages for patent infringement that Mr. Nawrocki will provide at trial were timely disclosed. Moreover, Mr. Nawrocki will not be providing any opinions on unjust enrichment for tortious interference at trial.[2]

**A.    Mr. Nawrocki Does Not Offer Legal Opinions, Nor Should He**

Pechiney alleges that there is no support in Mr. Nawrocki's expert reports for Cryovac's legal theory, that even if Curwood's products are found to be acceptable noninfringing alternatives Cryovac is still entitled to lost profits based on its contracts with National Beef and long term sales relationship with Packerland (now a division of Smithfield). This is not true. In Mr. Nawrocki's expert reports, he calculated Cryovac's patent infringement damages based upon lost profits from sales to National Beef and Packerland. [Tab G (PTX 29) at 5-18; Tab H (PTX 30) at 3-6; Tab I (PTX 31) at 3-5; Tab J (Nawrocki 7/12/05 tr.) at 108.] In determining lost profits in those reports, Mr. Nawrocki specifically relied on the fact that Cryovac had a history of selling its TBG bag and other products to National Beef and Packerland. [Tab G at 9, 13, 17; Tab H at 3; Tab J at 237:5-10.]

Pechiney appears to argue that Mr. Nawrocki should have opined in his expert reports that Cryovac was legally entitled to lost profits for its share of sales among competitors, even if

---

[2] The parties mutually agreed to the schedule for exchanging portions of the Proposed Pretrial Order, including the date on which Cryovac would provide Cryovac's Itemized Statement of Damages and on which the parties would exchange motions *in limine*. Pursuant to that mutual agreement, Cryovac's Itemized Statement of Damages was provided to Pechiney on the agreed date, *i.e.*, March 23, 2006. Cryovac's Itemized Statement of Damages does not include any unjust enrichment damages for tortious interference and Mr. Nawrocki will not opine on this subject at trial.

Exhibit 15 of the Pretrial Order
Page 6

Curwood's products were an acceptable noninfringing alternatives.  Such testimony would have been an improper legal opinion.  *See Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, No. 96-192 MMS, 1997 U.S. Dist. LEXIS 4117 at *10 (D. Del. Mar. 26, 1997) (prohibiting expert witness from testifying "as to substantive issues of patent law . . . .").  It is not Mr. Nawrocki's role as a damages expert to provide legal opinion in that regard.[3]  Rather, Mr. Nawrocki's role is to assist the jury in determining the damages Cryovac is entitled to based upon the jury's resolution of factual issues.  In that regard, Mr. Nawrocki has provided arithmetic calculations to show the jury how the damages vary depending on how the jury resolves those factual issues.  These arithmetic calculations are fully supported by the lost profits and reasonable royalty opinions Mr. Nawrocki provided in his expert reports. [Tab G at 5-18; Tab H at 3-6; Tab I at 3-5; Tab J at 108.]

### B.     Mr. Nawrocki's Opinions Set Forth in Cryovac's Itemized Statement of Damages Were Timely Disclosed

Pechiney alleges that Mr. Nawrocki should be prohibited from opining on the lost profits/reasonable royalty damages set forth in Cryovac's Itemized Statement of Damages (Exhibit 13 to the Proposed Pretrial Order) because he did not previously disclose this approach for calculating damages.  To the contrary, Mr. Nawrocki's opinions were properly disclosed in accordance with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, and he should be permitted to testify as to them at trial.

In Mr. Nawrocki's expert reports, he calculated Cryovac's patent infringement damages based upon lost profits from sales to National Beef and Packerland, which are the two lost customers that Mr. Nawrocki and Cryovac were aware of at the time. [Tab G at 5-18; Tab H at 3-6; Tab I at 3-5.]  In addition, Mr. Nawrocki stated that a reasonable royalty rate is applicable to the

---

[3] In contrast to Mr. Nawrocki's restraint in not providing improper legal opinions, Pechiney's expert Mr. Evans provided several impermissible legal opinions that are the subject of Cryovac's pending *Daubert* motion [D.I. 200].

Exhibit 15 of the Pretrial Order
Page 7

extent lost profits are not awarded or applicable. [Tab G at 6, 18; Tab I at 3.]  In that regard, Mr. Nawrocki determined the reasonable royalty rate to be between 17% and 20%. [Tab I at 3, 5.]  Mr. Nawrocki also stated that his patent damages calculations "may also be used in a combination or hybrid of lost profits for certain sales and reasonable royalty damages for the remaining sales." [Tab G at 6, 18; *see also* Tab J at 108:10-14.] Pechiney did not bring a *Daubert* motion to exclude any of these opinions.

In March 2006, Pechiney supplemented its response to Cryovac's discovery request regarding the sales of its ClearShield® products. [Tabs K (PTX 452), L (PTX 453), and M (PTX 454).]  The supplemental information Pechiney provided included a listing of previously unidentified customers in addition to National Beef and Smithfield, as well as sales totals through the expiration of the '419 patent. [*Id.*]  This information had been requested by Cryovac during discovery.  Mr. Nawrocki used this newly produced information to provide the damages calculations contained in Cryovac's Itemized Statement of Damages.  As Mr. Nawrocki opined in his expert reports, Cryovac's Itemized Statement of Damages includes calculations based entirely on lost profits, calculations based entirely on reasonable royalties, and a calculation that is a "combination or hybrid of lost profits for certain sales and reasonable royalty damages for the remaining sales" as he indicated he would in his expert report. [Tab G at 6.] These calculations are entirely consistent with the opinions on lost profits and reasonable royalties provided in Mr. Nawrocki's expert reports. [Tab G at 5-18; Tab H at 3-10; Tab I at 3-5.]

Cryovac, and Mr. Nawrocki, are "substantially justified" in relying on this new information first produced by Pechiney in March 2006.  It is illogical for Pechiney to suggest that, prior to the August 2005 close of discovery, Mr. Nawrocki should have provided his complete patent damages opinion on sales and customer information Pechiney did not even disclose to Cryovac until March 2006, which covered sales that extended to March 21, 2006.  In essence, Pechiney is seeking to

Exhibit 15 of the Pretrial Order
Page 8

immunize itself from liability for sales it did not report to Cryovac until March 2006. Certainly that would not be fair.

Furthermore, Pechiney has not established that it would be prejudiced by permitting Mr. Nawrocki to testify on the subject matter at issue at trial. Aside from summarily stating that the prejudice to Pechiney is "obvious," Pechiney alleges that it did not have the opportunity to question Mr. Nawrocki regarding these opinions at his depositions or to introduce its own rebuttal expert testimony. To the contrary, Pechiney did question Mr. Nawrocki regarding his lost profits and reasonable royalty opinions that underlie the calculations set forth in Cryovac's Itemized Statement of Damages. [*See e.g.*, Ex. J at 11:10-13:21, 27:5-29:7, 38:7-39:21, 47:11-48:20, 51:1-55:21, 64:19-67:2, 115:6-118:16, 205:13-209:8; Tab N (Nawrocki 9/1/05 tr.) at 329:22-336:20, 337:4-345:4.] Furthermore, Cryovac has placed Pechiney on notice of Mr. Nawrocki's supplemental opinions based on the new information produced by Pechiney in March 2006 well in advance of trial such that Pechiney can prepare to cross examine him at trial on the subject and prepare Mr. Evans for rebuttal if necessary, which was the intent of the requirements in Rule 26(a)(2) as Pechiney points out in its motion.[4]

---

[4] The cases Pechiney cites do not support its *in limine* request. In one of the cases, *Pell v. E.I. DuPont De Nemours & Co.*, 231 F.R.D. 186 (D. Del. 2005), this Court held that the expert report failed to even come close to meeting the requirements for expert reports under Rule 26(a)(2)(B) and did not meet the requirements of *Daubert*, therefore, it would be excluded unless the deficiencies were remedied. In another, *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000), the court imposed discovery sanctions on defendant for delaying the disclosure of factual information, which made previously disclosed information inaccurate. The factual circumstances of both these cases are not remotely analogous to the present case. In *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002), which is not binding precedent on this Court, incomplete expert reports were stricken because it was clear from the reports that the experts intended to testify to substantially more information than what was contained in their reports because they had not completed their review of materials and expected to do additional research. Again, those facts are not analogous to the present circumstances where Mr. Nawrocki's reports are complete and he is merely supplementing his opinions based on discovery Pechiney just provided in March 2006.

Exhibit 15 of the Pretrial Order
Page 9

Because Cryovac and Mr. Nawrocki are justified in relying on the new information just produced by Pechiney in March 2006 and Pechiney will not be prejudiced by allowing it at trial, the Court should deny Pechiney's motion and permit Mr. Nawrocki to testify as to his opinions set forth in Cryovac's Itemized Statement of Damages. *See In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 792 (3d Cir. 1994) (reversing the district court's exclusion of expert testimony and holding that the prejudice to defendants is extremely minimal where the expert was properly identified and the defendants were aware of the general substance of his testimony despite the failure to identify the specifics of an issue on which he would opine).

### III.    Cryovac's Response to Pechiney's *In Limine* Request No. 3 Regarding Testimony by Cryovac Experts Drs. Kimmel and Wilkes

Cryovac notes that it was *Pechiney's choice* to offer only one technical expert in this case; therefore, it is not "unfairly prejudicial" for Cryovac to present two technical experts simply because Pechiney will only be presenting one. Nonetheless, it is not Cryovac's intention to present duplicative expert testimony at trial from its experts Dr. Robert Kimmel and Dr. Garth Wilkes. Cryovac confirmed this in a letter to Pechiney's counsel on March 20, 2006, stating "[i]t is not our intent to have Dr. Kimmel and Dr. Wilkes testify in a duplicative fashion." Thus, Pechiney's *in limine* request no. 3 is moot.

### IV.    Cryovac's Response to Pechiney's *In Limine* Request No. 4 Regarding Mr. Shah's Date of Invention

Pechiney seeks to prevent Cryovac from offering *any* evidence showing Mr. Shah's date of invention prior to March 21, 1986, the filing date of the '419 patent application. Pechiney's rationale for blocking such evidence, the non-disclosure of two Cryovac attorney-client privileged communications, is baseless and not supported by Federal Circuit precedent.

Exhibit 15 of the Pretrial Order
Page 10

### A.    Showing Date of Invention by Actual Reduction to Practice

"Because of the statutory presumption of patent validity, 35 U.S.C. § 282, at trial [Pechiney bears] the burden of proving by clear and convincing evidence that [the references it relies on were] published prior to [Cryovac's] reduction to practice." *Loral Fairchild v. Matsushita Elec. Indus. Co., Ltd.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001).[5]  In that regard, Cryovac bears "a burden of production to present evidence of its asserted actual reduction to practice prior to the filing date of its patent application." *Id.*  "Because [Cryovac] does not argue for conception plus diligence to establish a date of invention prior to the publication date of [Pechiney's references], but only an actual reduction to practice," only the actual reduction to practice evidence is relevant here. *Id.*

To establish an actual reduction to practice, a party must show: (1) the inventor constructed an embodiment of his invention that met all the limitations of the claim, and (2) that he determined the invention would work for its intended purpose, which may or may not necessitate some testing of the embodiment. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). "Once the invention has been shown to work for its intended purpose, reduction to practice is complete." *Loral Fairchild* at 1362-63. An inventor's testimony showing reduction to practice must be corroborated by "independent evidence." *Cooper v. Goldfarb*, 154 F.3d at 1330.[6]  The corroborating evidence can be oral testimony or physical evidence from a source other than the inventor, including testimony by non-inventors, laboratory notebooks, other documents, or even circumstantial evidence.[7] *Loral Fairchild* at 1364 (corroborating testimony came from inventor's

---

[5]  Pechiney miscites *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 449 (Fed. Cir. 1986). That citation does not address the parties' respective burdens.

[6]  "[I]t should be noted that no similar condition of 'corroboration' is imposed on an inventor's notebook or indeed on any documentary or physical evidence, as a condition for its serving as evidence of reduction to practice." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1169 (Fed. Cir. 2006).

[7]  "In order to corroborate a reduction to practice, it is not necessary to produce an actual over-the-shoulder observer. Rather, sufficient circumstantial evidence of an independent nature can satisfy the corroboration requirement. Furthermore, an actual reduction to practice does not require corroboration for every factual issue contested by the parties." *Cooper* at 1330
(continued on next page)

Exhibit 15 of the Pretrial Order
Page 11

co-worker); *Knorr v. Pearson,* 671 F.2d 1368, 1373-74 (CCPA 1982) ("[S]ufficient circumstantial evidence of an independent nature can satisfy the corroboration rule;" "The law does not impose an impossible standard of 'independence' on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence having a source totally independent of the inventor; indeed, such a standard is the antithesis of the rule of reason."); *Lacotte v. Thomas,* 758 F.2d 611, 613 (Fed. Cir. 1985)(testimony of inventor with written evidence in his notebook corroborated by evidence of his withdrawal of supplies to practice the invention and testimony of his co-worker was "more than adequate" to show corroborated reduction to practice).

At trial, Cryovac will show an actual reduction to practice of Mr. Shah's invention by August 30, 1985. The reduction to practice is evidenced by Mr. Shah's testimony, <u>as well as</u> independent corroborating evidence, that (1) an embodiment of Mr. Shah's invention was made that meets all the limitations of claim 11 of the '419 patent, and that (2) Mr. Shah determined the invention would work for its intended purpose by August 30, 1985. *Cooper v. Goldfarb,* 154 F.3d at 1327. First, Mr. Shah testified he directed the making of two embodiments of the claim 11 films on April 2 and 3, 1985. The making of these two embodiments is corroborated by entries in a non-inventor's laboratory research notebook and a Cryovac laboratory developmental films book (PTX 94 & PTX 95 at Tabs O & P), which record the manufacture of films having all the claim limitations of claim 11 of the '419 patent.[8] The laboratory notebook pages were signed, dated, and witnessed contemporaneously. Tommy Kay, the Cryovac technician who authored the lab notebook pages, authenticated under oath both sets of laboratory pages and verified that those pages reflected his work pursuant to Mr. Shah's instructions to make those specific films on April 2 and 3,

---

(continued from previous page)
   (reduction to practice proven by inventor's testimony corroborated by testimony from two coworkers).

[8] These claim 11 films made under the direction of Mr. Shah were distinct from a film made by another Cryovac employee, Mr. Fant, referred to in footnote 3 of Pechiney's *in limine* request. As Mr. Fant testified, the Fant film was not oriented. (Fant depo. tr. 54:21-55:9, 132:14-133:14 at Tab Q.)

Exhibit 15 of the Pretrial Order
Page 12

1985. Mr. Kay testified that Mr. Shah told him to make these oriented coextruded films with seven layers and that Mr. Shah told him how to arrange the layers, what equipment to use and what chemical compounds to use in each layer. (Kay depo. tr. 126:9-24, 195:21-196:25 at Tab R.) Contrary to Pechiney's argument that there is no evidence corroborating Mr. Shah's conception, Mr. Kay's testimony corroborates that Mr. Shah had conceived of the invention by April 2 when Mr. Shah instructed Mr. Kay on how to make the films.[9] Mr. Kay's testimony that Mr. Shah instructed him what order and arrangement Mr. Kay should put the layers in, as well as what chemical components to put in each layer, also corroborates the "at least seven layers arranged symmetrically" element of claim 11, and shows that Mr. Shah was in possession of that element of his invention by April 2 & 3, 1985.[10] Thus, Cryovac will be able to show that Mr. Shah made an embodiment of his invention that met all the claim limitations of the claim.[11] *Cooper* at 1327.

As to the second *Cooper* requirement for proving an actual reduction to practice, Mr. Shah testified that he learned that the claim 11 films he designed and made in April 1985 were shown to work for their intended purpose at least by August 30, 1985 when Mr. Shah received back his requested analyses of the two embodiments. (Shah Rule 30(b)(6) depo. tr. 17:17-18:10 at Tab S.) This reduction to practice is corroborated by documentary evidence in the form of a Cryovac Technical Services report, which includes information generated by several non-inventors and test results reported to Mr. Shah on August 30, 1985. (PTX 97 at Tab T.) The test results included

---

[9] Pechiney deposed Mr. Kay, a retired Cryovac employee, three days before the close of discovery, i.e., after Pechiney deposed Cryovac's Rule 30(b)(6) witness.

[10] Contrary to Pechiney's argument in footnote 4 of its *in limine* request, the fact that the patent lawyer drafting Mr. Shah's patent application initially did not use the phrase "arranged symmetrically" in the application as filed does not negate Mr. Shah's conception, which is corroborated by Mr. Kay's testimony, the laboratory notebook pages, and the developmental films book pages. (PTX 94-95 at Tabs O & P.)

[11] Contrary to Pechiney's remark in the last paragraph on page 14 of its *in limine* requests, relative thickness of individual layers or amounts of slip/antiblock processing additives in the outer layers are not limitations present in claim 11, and therefore need not be shown to exist in the April 2 & 3, 1985 embodiments of claim 11 in order to prove Mr. Shah's reduction to practice thereof.

Exhibit 15 of the Pretrial Order
Page 13

information on the films' properties, such as tensile elongation modulus, tear propagation, free shrink, shrink tension, ball burst impact tests, optical properties, oxygen transmission rates, etc. (*Id.*) Thus, Cryovac will be able to show a reduction to practice by August 30, 1985. *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 593 (Fed. Cir. 1997) (reduction to practice occurred when results of third party testing of chemical compound were received and reviewed by the inventor such that the inventor had knowledge that the invention worked for its intended purpose); *Cooper* at 1330 (inventor's reduction to practice was proven by the inventor's testimony corroborated by testimony of his co-workers; "circumstantial evidence provided sufficient corroboration"). Thus, there is no valid reason (and Pechiney has argued none) to prevent Cryovac from proving Mr. Shah's actual reduction to practice of his invention by August 30, 1985 based on this evidence.

### B.    Cryovac Properly Withheld the Privileged Invention Disclosures

Cryovac properly withheld its attorney-client invention disclosure communications. The Federal Circuit has unequivocally held that such invention disclosures are privileged attorney-client communications entitled to protection from discovery. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805-806 (Fed. Cir. 2000). Furthermore, Pechiney's suggestion that because Cryovac asserted privilege on the invention disclosures, Cryovac must "fear" the information in the documents and the Court should "assume" the invention disclosures did *not* show conception of Mr. Shah's invention, is contrary to Federal Circuit law. The Federal Circuit has instructed that negative inferences or assumptions may not be made against a party who properly asserts a claim of privilege and withholds privileged documents from discovery. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GMBH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004) ("[T]he courts have declined to impose adverse inferences on invocation of the attorney-client privilege. We now hold that this rule applies to the same extent in patent cases as in other areas of law." (citations omitted)).

Pechiney does not seem to recognize that it is the *communication* or writing *itself* that is privileged, and *not* the underlying facts. *Synalloy Corp. v. Gray*, 142 F.R.D. 266, 268 (D. Del. 1992) ("[T]he protection of the privilege extends only to *communications* and not to facts. A fact is

Exhibit 15 of the Pretrial Order
Page 14

one thing and a communication concerning that fact is an entirely different thing." (italics in original)). Cryovac asserted privilege only for the attorney-client communications (i.e., the invention disclosures themselves). Pechiney obtained complete discovery of the underlying *facts*, i.e., that the films were conceived of before they were made on April 2 and 3, 1985, which is evidenced by the laboratory notebook pages cited above (PTX 94-95), as well as Mr. Kay's and Mr. Shah's testimony that Mr. Shah instructed Mr. Kay on how to make the films, that they were to be seven layers and what material to use for each layer. (Kay depo. tr. 126:9-24, 195:21-196:25, Shah Rule 30(b)(6) depo. tr. 38:6-15 at Tab U.)

Pechiney's argument that it would be unfairly prejudicial for Cryovac to use the privilege rules "as both a sword and a shield" is misguided. All the cases Pechiney cites for this argument involve a party asserting privilege and withholding information, and then later trying to use the withheld information in a defense to willful infringement allegations. That is certainly not the case here. Cryovac is not trying to use the invention disclosures in any way to refute any Pechiney allegations. Contrary to Pechiney's argument, the fact that Cryovac complied with its obligations under Fed. R. Civ. P. 30(b)(6) and made sure its witness knew the invention disclosures existed and that they had been withheld on the ground of attorney-client privilege, does not mean Cryovac was relying on them.

Cryovac does not need the invention disclosures to prove the actual reduction to practice of the invention. Moreover, since the invention disclosures are dated in *May 1985* they cannot possibly support an argument by Pechiney that the actual reduction to practice occurred after August 30, 1985. Therefore, Pechiney cannot be prejudiced at all by Cryovac not producing the privileged communications.

Because Cryovac can show by corroborated evidence that Mr. Shah actually reduced his invention to practice by August 30, 1985, Cryovac should not be prevented from presenting such evidence because of Cryovac's assertion of privilege for attorney-client communications, which are not relied on to the show when the actual reduction to practice occurred. Hence, Pechiney's *in limine* request no. 4 should be denied.

Exhibit 15 of the Pretrial Order
Page 15

V.    **Cryovac's Response to Pechiney's *In Limine* Request**
      **No. 5 Regarding the Doctrine of Equivalents**

Since there are no differences between Pechiney's ClearShield® products and what is claimed in claim 11 of the '419 patent, the doctrine of equivalents does not apply.    Rather, Pechiney's ClearShield® products *literally infringe* claim 11 of the '419 patent.    Accordingly, as Cryovac explained in its summary judgment briefing, Cryovac does not intend to assert patent infringement under the doctrine of equivalents.    Thus, Pechiney's *in limine* request no. 5 is moot.

Exhibit 15 of the Pretrial Order
Page 16