

Westlaw.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 23112268 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Briefs and Other Related Documents  
Only the Westlaw citation is currently available.  
United States District Court,D. Delaware.  
MEDTRONIC AVE, INC., Plaintiff,  
v.  
CORDIS CORPORATION, Defendant.  
**No. Civ. 03-402-SLR.**

Dec. 11, 2003.

Patricia Smink Rogowski, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Philip Henry Bangle, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiffs.  
Steven J. Balick, Ashby & Geddes, Wilmington, DE, for Defendants.

MEMORANDUM ORDER  
ROBINSON, J.

I. INTRODUCTION

*1 On September 5, 2003, the court issued a memorandum order granting Cordis's motion to stay pending arbitration and denying Medtronic AVE's motion to enjoin arbitration. (D.I.95) On September 16, 2003, Medtronic AVE filed a motion under Local Rule 7.1.5 for reargument or, in the alternative, for clarification of the court's order. (D.I.96) The court heard oral argument on this motion on November 18, 2003. The court has jurisdiction over this action pursuant to 35 U.S.C. §§ 1331 and 1388(a).

II. BACKGROUND

On November 4, 1997, Johnson & Johnson and Cordis Corporation (collectively referred to as "J & J") entered into a settlement and license agreement ("the Agreement") with Medtronic, Inc. ("Medtronic") to settle litigation between the parties and to grant certain license rights to each other concerning stents and certain catheters. (*See* D.I. 62, exh. 2 at 1)

On January 15, 1998, J & J acquired IsoStent, the beStent and Wiktor product lines, and U.S. Patent No. 5,643,312 ("the Fischell patent"). (D.I. 98 at 6) The parties amended the Agreement (the "First Amendment") on April 21, 1998 to include the Fischell patent within the Agreement provisions. (*See* D.I. 62, exh. 8 at 1) Particularly, J & J granted Medtronic and its affiliates a license to practice the Fischell patent in exchange for a royalty.

Also on April 21, 1998, the parties amended the Agreement for a second time (the "Second Amendment") in anticipation of the possible purchase of Schneider, a vascular business owned by Pfizer.

> FN1. Medtronic ultimately did not purchase Schneider, so the Second Amendment did not become effective. It, however, was fully executed by both J & J and Medtronic. (D.I. 97 at 7)

In 1999, Medtronic acquired Arterial Vascular Engineering ("AVE") and formed Medtronic AVE, Inc. ("Medtronic AVE"), a wholly-owned subsidiary of Medtronic. Medtronic AVE brought suit against Cordis in 2002 in the Eastern District of Texas alleging infringement of United States Patent Nos. 5,292,331; 5,674,278; 5,879,382; and 6,344,053 (collectively "the Boneau patents"). (D.I. 5 at ¶ 10) Specifically, Medtronic AVE asserted that Cordis knowingly and willfully makes, uses, sells, or offers to sell cardiac stents that practice one or more claims of the Bonaeu patents. (*Id.*) Cordis responded by asserting a license defense and by attempting to initiate arbitration under the terms of the Agreement. (D.I. 8 at 23) The case was transferred to this court in April 2003 following Cordis's motion to transfer. (D.I.68)

> FN2. Micheal D. Boneau is the sole inventor named on the Boneau patents.

III. STANDARD OF REVIEW

A motion for reargument under Local Rule 7.1.5 is the "functional equivalent" of a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). *See Jones v. Pittsburgh Nat'l Corp.,* 899 F.2d 1352 (3d Cir.1990). The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Café ex-rel. Lou-Ann, Inc.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23112268 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

v. Quinteros, 176 F.3d 669, 677 (3d Cir.1999). Accordingly, a court may alter or amend its judgment if the movant demonstrates at least one of the following: (1) a change in the controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error of law or fact or to prevent manifest injustice. *Id.*

## IV. DISCUSSION

**\*2** The Supreme Court has explained that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The Supreme Court also has acknowledged that the question of arbitrability is to be decided by the court, not the arbitrator. *Id.* at 649. Based upon these guiding principles, the court must answer two threshold questions before compelling an unwilling party to arbitrate. First, the court must determine whether a valid agreement to arbitrate exists between the parties. *See PaineWebber Inc. V. Hartmann,* 921 F.2d 507, 511 (3d Cir.1990) (citing *AT & T Techs.,* 475 U.S. at 649; *John Wiley & Sons, Inc. V. Livingston,* 376 U.S. 543, 546-47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Laborers' Int'l Union v. Foster Wheeler Corp.,* 868 F.2d 573, 576 (1964)). Second, the court must decide whether the specific dispute falls within the substantive scope of the valid agreement. *Id.* "If a court determines that a valid arbitration agreement does not exist or that the matter at issue clearly falls outside of the substantive scope of the agreement, then it is obliged to enjoin arbitration." *PaineWebber,* 921 F.2d at 511. "If, on the other hand, the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *Id.* (citing *AT & T Techs.,* 475 U.S. at 649-50; *Beck v. Reliance Steel Prods. Co.,* 860 F.2d 576 (3d Cir.1988)). The Supreme Court has recognized that " '[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' *AT & T Techs.,* 475 U.S. at 650 (quoting *Warrior & Gulf,* 363 U.S. at 582-83).

### A. Whether Medtronic AVE Is Bound by the Agreement

In the instant case, the parties disagree as to whether the arbitration provisions of the Agreement apply to this dispute. Medtronic AVE argues that it is not bound by the terms of the Agreement because it was not a signatory party. Cordis asserts that section 11.02(a) of the Agreement binds Medtronic AVE to arbitration. Section 11.02(a) provides that the Agreement "shall be binding upon and inure to the benefit of Medtronic, J & J and their respective Affiliates." (D.I. 62, exh. 2 at 22) (emphasis added) Section 1.01 defines "Affiliate" to mean an entity that is "[1] controlled by such party, on the Effective Date or, ... [2] becomes controlled by such party, after the Effective Date." (*Id.* at 1) (emphasis added) Reading these provisions together, Cordis claims that Medtronic AVE must engage in arbitration because it qualifies as an Afflate since it came under Medtronic's control after the Effective Date of the Agreement.

**\*3** According to the well-settled rules of contract construction, "the language of a contract is to be given its plain and ordinary meaning. Where the provisions of a contract are plain and unambiguous, 'evidence outside the four corners of the document as to what was actually intended is generally inadmissible." ' *Universal Studios, Inc. v. Viacom, Inc.,* 705 A.2d 579, 589 (Del.Ch.1997) (footnotes omitted). Contract language "is not rendered ambiguous simply because the parties do not agree upon its proper construction" or "because the parties in litigation differ concerning its meaning." *City Investing Co. Liquidating Trust v. Continental Cas. Co.,* 624 A.2d 1191, 1198 (Del.1993).

Applying these standards to the facts at bar, the court agrees with Cordis's interpretation of the Agreement. Based on the plain language of sections 11.02(a) and 1.01, the court finds that the parties intended for companies that become controlled by either Medtronic or J & J after the Effective Date to be subject to all of the terms of the Agreement. Consequently, the court rules that a valid agreement to arbitrate exists between Cordis and Medtronic AVE.

### B. Whether the Dispute Over the Boneau Patents Falls Outside the Substantive Scope of the Agreement

In its September 5, 2003 memorandum opinion, the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23112268 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

court did not reach the issue of whether the Boneau patents fell within the scope of the Agreement because, as noted by Cordis, to answer this question is essentially to reach the merits of the dispute. However, the court is now convinced that it is duty bound to address the second prong of the arbitrability inquiry for, "if the court must, to decide the arbitrability issue, rule on the merits, so be it." *Independent Lift Truck Builders Union v. Hyster Co., 2 F.3d 233, 236 (7th Cir.1993)*. Therefore, the court must determine whether it may be said with "positive assurance" that the dispute at bar regarding the Boneau patents falls outside the substantive scope of the Agreement.

The court begins its analysis by recognizing that the substantive scope of the Agreement is difficult to ascertain. Specifically, section 5.02(a) describes the issues which must be submitted to arbitration:
To the extent that there are issues of [1] validity of any ... Royalty Bearing Licensed Patents, or of [2] infringement of any ... Royalty Bearing Licensed Patents by a given product, or [3] whether a given product is or is not in the Field, those issues shall be submitted to binding arbitration.

(D.I. 62, exh. 2 at 13) In further characterizing the scope of arbitrability, section 1.03 of the Agreement defines "Licensed Patents" to mean

> FN3. Section 5.02(a) further states that "any dispute, claim, or controversy arising under this Agreement which relates to patent matters, the resolution of which is not specifically provided for [above] ... shall be resolved pursuant to binding arbitration." (*Id.*) Of course, the open question is whether this dispute "arises" under the Agreement, so this section is not helpful to the arbitrability analysis. Neither is section 10.01 of the Agreement illuminating, as it likewise provides that any dispute "arising from or relating to this Agreement ... (excluding all disputes related to patent matters) ... shall be resolved by binding Alternative Dispute Resolution." (*Id.* at 21) (emphasis added)

any and all patents claiming subject matter useful in the Field that are issued in any country from patent applications filed on or before the Effective Date ... and that are either (i) owned by Medtronic or its Affiliates or J & J or its Affiliates on the Effective Date, or (ii) licensed to Medtronic or its Affiliates or J & J or its Affiliates on the Effective Date.
**\*4** (*Id.* at 2) (emphasis added) Despite the apparent clarity of the bolded language above, section 1.01 of the Agreement defines "Affiliates" to include entities that become controlled by a party after the Effective Date. Given this internal inconsistency, an argument could be made that a patent owned by an entity on the Effective Date comes within the scope of section 1.03 (and, therefore, within the scope of section 5.02(a)) when that entity becomes an after-acquired affiliate. This interpretation arguably is consistent with the parties' general intent to include such after-acquired affiliates within the scope of the Agreement, the very purpose of which is to resolve patent disputes between the parties and their affiliates without the need for litigation.

> FN4. Section 1.02 provides that the "Field" of interest is that of stents and catheters (including balloon catheters), excluding those for use in angioplasty, guide catheters, guide wires, and stents and grafts for the treatment of aneurysmal disease. (*Id.*) Section 1.04 defines "Royalty Bearing Licensed Patents" as a subset of patents selected from the group of Licensed Patents. (*Id.*)

Having reconsidered the entirety of the Agreement in light of recent events, however, the court concludes that disputes related to the patents of after-acquired affiliates do not arise under the Agreement and, therefore, are not arbitrable. The court rests its conclusion on several factors. First, setting aside the reference to after-acquired affiliates, the parties were very specific when describing the scope of arbitration; to wit, in section 5.02(a) of the Agreement and section 10 of exhibit B to the Agreement, the parties specifically identified the disputes subject to arbitration and the arbitrator's expected responses to such. (*See* D.I. 62, exh. 2 at B-1, B-5)

Furthermore, both amendments to the Agreement demonstrate an intent to exclude from the ambit of the Agreement the patents of after-acquired affiliates. The parties entered into the First Amendment in order to establish license rights to the Fischell patent. They entered into the Second Amendment to establish license rights to patents potentially obtained via the purchase of Schneider. Moreover, in the Second Amendment, the parties modified Article I of the Agreement to specifically add the category of "After-Acquired Patents", defined as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2003 WL 23112268 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

any and all patents claiming subject matter useful in the Expanded Field that are issued in any country from patent applications filed on or before March 3, 1998 ... which patents or patent applications, are after the Effective Date: (i) acquired by Medtronic or its Affiliates or by J & J or its Affiliates from a third party or through the acquisition of a third party, other than an acquisition of a Major Competitor ... or (ii) licensed to Medtronic or its Affiliates or to J & J or its Affiliates.

> FN5. New section 1.06 defines the "Expanded Field" to mean "stents, catheters (including balloon catheters) for delivery of stents, and balloon catheters used for balloon angioplasty." (D.I. 62, exh. 9 at 3)

(D.I. 62, exh. 9 at 4) (emphasis added) By this language, one can infer that the patents of after-acquired affiliates were not intended to be within the scope of the Agreement as originally drafted.

Finally, the parties' intentions are illustrated through their conduct. Cordis, as defendant in this litigation, has advanced the position that the dispute at bar involving the patents of an after-acquired affiliate is subject to the arbitration provisions of the Agreement. Cordis, as plaintiff in litigation initiated in October 2003, has asserted that three of its patents, which appear to fall within the scope of sections 1.03 and 5.02(a), have been infringed by an after-acquired affiliate. *See Cordis Corp. v. Medtronic AVE, Inc.,* No. 03-04441 (N.D.Cal.) (filed on October 1, 2003). Although the court finds the Agreement surprisingly oblique to have been endorsed by two sophisticated parties, nevertheless, the court finds the California case a closer fit to the Agreement than the dispute at bar. By choosing litigation instead of arbitration to enforce its patents, Cordis has demonstrated that the scope of the Agreement is narrow and that it would be inappropriate to employ arbitration to defend against Medtronic's patents.

> FN6. *See Cordis Corp. v. Medtronic AVE, Inc.,* No. 03-04441 (N.D.Cal. October 1, 2003).

### V. CONCLUSION

*5 For the reasons stated, the court concludes that the dispute at bar does not fall within the arbitration provisions of the Agreement.

THEREFORE, at Wilmington this 11th day of December, 2003,

IT IS ORDERED that Medtronic AVE's motion for reargument or, in the alternative, for clarification (D.I.96) is granted.

IT IS FURTHER ORDERED that the court's previous order (D.I.95) is vacated. Cordis' motion to stay pending arbitration (D.I.76) is denied and Medtronic AVE's motion to enjoin arbitration (D.I.61) is granted.

D.Del.,2003.  
Medtronic Ave, Inc. v. Cordis Corp.  
Not Reported in F.Supp.2d, 2003 WL 23112268 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00402 (Docket) (Apr. 18, 2003)

END OF DOCUMENT