# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                              )
                                            )
    Plaintiff/Counter-Defendant       )     Civil Action No. 04-1278-KAJ
                                            )
        vs.                       )     Hon. Kent A. Jordan
                                            )
PECHINEY PLASTIC PACKAGING, INC.,           )
                                            )
    Defendant/Counter-Plaintiff.      )

## DEFENDANT PECHINEY PLASTIC PACKAGING, INC.'S PROPOSED JURY INSTRUCTIONS PART I

The following jury instructions are submitted by Pechiney Plastic Packaging, Inc.

("Pechiney").

# TABLE OF CONTENTS

PRELIMINARY JURY INSTRUCTIONS ................................................ 3
    Duty of Jury ............................................................................... 3
    Evidence...................................................................................... 3
    Burden of Proof.......................................................................... 5
    The Nature of the Case .............................................................. 6
    The Patent System, Generally.................................................... 9
    How a Patent is Obtained......................................................... 11
    The Parts of a Patent ............................................................... 13
    Video and Glossary.................................................................. 15
    GLOSSARY OF PATENT TERMS.......................................... 16
    Conduct of the Jury.................................................................. 17
    Some Logistical Information .................................................... 20
    Course of the Trial ................................................................... 22

1.    General Introduction ................................................................ 25

2.    Evidence Defined..................................................................... 27

3.    Direct and Circumstantial Evidence ........................................ 28

4.    Consideration of Evidence ....................................................... 29

5.    Statements of Counsel.............................................................. 30

6.    Credibility of Witnesses........................................................... 31

7.    Expert Testimony..................................................................... 33

8.    Number of Witnesses ............................................................... 34

9.    The Parties and Their Contentions........................................... 35

    9.1    The Nature of the Case ................................................. 36
    9.2    Cryovac's Contentions................................................. 37
    9.3    Pechiney's Contentions................................................ 38
    9.4    Summary of Issues ....................................................... 39

10.    Burdens of Proof ...................................................................... 40

11.    The Patent System.................................................................... 41

12.    The Claim of the Patent in Suit................................................ 42

    12.1    Construction of the Claim............................................ 43
    12.2    Limitations of the Claim at Issue ................................ 44
            12.2.1  Limitations of the Claim at Issue [Alternative] ........ 45
    12.3    "Comprising"............................................................... 46

13.    Invalidity—in General ............................................................. 47

    13.1    Written Description...................................................... 48
    13.2    Enablement .................................................................. 49

13.3    The Prior Art ................................................................................................. 51
        13.3.1 Prior Art—Date of Invention ................................................... 52
        13.3.1 Prior Art—Date of Invention [Alternative] ............................ 53
        13.3.2 Prior Art—Prior Public Use or Knowledge ............................ 55
        13.3.3 Prior Art—Prior Printed Publication ...................................... 57
        13.3.4 Prior Art—Prior Patents .......................................................... 58
        13.3.5 Prior Art—Prior Invention ...................................................... 59
13.4    Anticipation/Lack of Novelty ........................................................... 61
13.5    Obviousness ...................................................................................... 64
        13.5.1 The Scope and Content of the Prior Art .................................. 66
        13.5.2 Differences Between the Invention of the Claim and the Prior Art ......... 67
        13.5.3 Level of Ordinary Skill ............................................................ 68
        13.5.4 Objective Indications Concerning Obviousness ...................... 69
        13.5.5 Independent Invention by Others ............................................. 71
        13.5.6 Determination of Obviousness ................................................. 72

14.    Willful Infringement ..................................................................................... 73
14.1    Knowledge of the Patent ................................................................... 75
14.2    Licenses ............................................................................................. 76
        14.2.1 Accused Infringer's Patents ..................................................... 77
14.3    Notice of Infringement ...................................................................... 78
14.4    Advice of Counsel ............................................................................. 79
14.5    Copying or Designing Around a Patent ............................................. 81

15.    Damages for Patent Infringement—in General .......................................... 82
15.1    Compensatory Patent Damages ........................................................ 83
15.2    Date Damages Begin and End ........................................................... 84
15.3    Burden of Proof ................................................................................. 86
15.4    Two Types of Damages—Lost Profits and Reasonable Royalty ......... 87
15.5    Entire Market Value Rule .................................................................. 88
15.6    Lost Profits—in General .................................................................... 89
15.7    Lost Profits Due to Lost Sales .......................................................... 90
        15.7.1 Demand ..................................................................................... 91
        15.7.2 Manufacturing and Marketing Ability ..................................... 92
        15.7.3 Absence of Acceptable Non-infringing Substitutes ................ 93
15.8    Amount of Lost Profits ...................................................................... 94
15.9    Reasonable Royalty ........................................................................... 95
        15.9.1 What Is a Reasonable Royalty? ............................................... 96
        15.9.2 Factors for Determining a Reasonable Royalty ....................... 97
15.10   Total Patent Infringement Damages .................................................. 99
15.11   Closing Statement--Patent Infringement Damages ........................... 100

16.    Tortious Interference with a Contractual Relationship - Generally ................ 101

16.1    Tortious Interference with a Contractual Relationship --Elements of Liability.................................................................................................. 102
16.2    Requirement of a Contract ...................................................................... 103
16.3    Use of Extrinsic Evidence to Construe Contract .................................. 104
16.4    Definitions of Types of Extrinsic Evidence............................................ 105
16.5    Rules for Applying Extrinsic Evidence .................................................. 106
16.6    Requirement of Knowledge ..................................................................... 107
16.7    Requirement of Intent .............................................................................. 108
16.8    Requirement of "Malice" ......................................................................... 109
16.9    Proper or Improper Interference Defined ............................................. 110
16.10   Pechiney's Motive .................................................................................... 111
16.11   Requirement That the Breach Be Proximately Caused by the Defendant's Conduct...................................................................................................... 112
16.12   Breach Defined ........................................................................................ 113
16.13   Breach Required........................................................................................ 114
16.14   Proximate Cause ...................................................................................... 115
17.     Damages for Tortious Interference with Contract ............................................. 116
17.1    Recoverable Elements of Damages for Interference with Contract.................... 117
17.2    Duty to Mitigate Damages ....................................................................... 119
18.     Tortious Interference with Prospective Contractual Relations ......................... 120
18.1    Expectancy Requirement .......................................................................... 122
18.2    Knowledge Requirement .......................................................................... 123
18.3    Intentional Interference ............................................................................ 124
18.4    Requirement of "Malice" .......................................................................... 125
18.5    Proper or Improper Interference Defined .............................................. 126
18.6    Pechiney's Motive ..................................................................................... 127
18.7    Causation Requirement ............................................................................ 128
18.8    Competition as Proper or Improper Interference .................................. 129
18.9    Damage to Plaintiff Proximately Resulting from Conduct.................... 130
19.     Damages for Tortious Interference with Prospective Contractual Relations.................. 131
19.1    Compensatory Damages ........................................................................... 133
20.     Deliberations and Verdict ...................................................................................... 136
20.1    Duty to Deliberate .................................................................................... 138
20.2    Court Has No Opinion .............................................................................. 139

iii

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                              )
                                           )
    Plaintiff/Counter-Defendant     )    Civil Action No. 04-1278-KAJ
                                           )
         vs.                        )    Hon. Kent A. Jordan
                                           )
PECHINEY PLASTIC PACKAGING, INC.,          )
                                           )
    Defendant/Counter-Plaintiff.    )

## PRELIMINARY JURY INSTRUCTIONS

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for guidance on your role as jurors in this case.

## Duty of Jury

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts, as you find them, to the law I will provide to you at the close of the evidence. You must follow my instructions on the law whether you agree with them or not.

Nothing I may say or do during the course of the trial is intended to indicate what your verdict should be.

## Evidence

The evidence from which you will find the facts will consist of the testimony of witnesses, and the documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1.      Statements, arguments, and questions by lawyers are not evidence.

2.       Objections to questions are not evidence.  Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the Rules of Evidence.  You should not be influenced by a lawyer's objection or by my ruling on the objection.  If I sustain or uphold the objection, you should ignore the question or document in question.  If I overrule an objection and allow the matter into evidence, treat the testimony or document like any other evidence.  If I instruct you that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only.  If this does occur during the trial, I will try to clarify the issue for you at that time.

3.       I reemphasize, you should not consider testimony and documents I have excluded and not admitted into evidence.

4.       Anything you see or hear outside the Courtroom is not evidence and must be disregarded.  You are to decide this case solely on the evidence presented here in the Courtroom.

There are two kinds of evidence: direct and circumstantial.  Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  I will give you further instructions on these as well as other matters at the end of the case, but have in mind that you may consider both kinds of evidence.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.  I will give you some guidelines for determining the credibility of witnesses at the end of the case.

**Burden of Proof**

This is a civil case. Both of the parties are asserting claims against one another and so each party has, for the claims it is asserting against the other, a burden of proof. In this particular case, two different levels of proof will be required, depending on the particular claim.

Certain claims must be proven by a burden we call the preponderance of the evidence. That means the party asserting the claim has to produce evidence which, when considered in the light of all the facts, leads you to believe that what that party claims is more likely true than not. To put it differently, if you were to put the claimant's evidence and the other party's evidence on opposite sides of a scale, the evidence on the claimant's side would have to make the scales tip somewhat to its side. If the claimant fails to meet that burden, your verdict must be for the other side.

Certain other claims in this case will have to be proven by a higher burden that we call clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.

Some of you may have heard the term "proof beyond a reasonable doubt." That is a standard in criminal cases and it does not apply to a civil case. You should, therefore, put it out of your mind in considering whether or not the parties have met their burdens of proof by a preponderance of the evidence in this case.

AUTHORITY:    Hon. Kent A. Jordan, *Preliminary Jury Instructions - Civil, available at* http://www.ded.uscourts.gov/KAJmain.htm ("KAJ Instructions"); *Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware*, promulgated March 1993 ("1993 USDC Del.") [regarding clear and convincing evidence].

5

## The Nature of the Case

In this case, plaintiff Cryovac, Inc. has accused defendant Pechiney Plastic Packaging, Inc. of infringing one of its patents, and of knowingly using that infringement to cause one of plaintiff's customers (National Beef, Inc.) to break an alleged sales contract it had with plaintiff and to start buying goods from defendant. Defendant denies these accusations and argues that plaintiff's patent was invalid, that it had a good faith belief that it did not infringe, that plaintiff never had a binding contract with National Beef, that it did not know of any binding contract between plaintiff and National Beef and that defendant had a legal right to seek and win National Beef's business for itself. I will refer to Cryovac, Inc. as "Cryovac" and Pechiney Plastic Packaging, Inc. as "Pechiney."

Cryovac owns United States Patent No. 4,755,419. This patent relates to certain types of multilayer plastic films intended for packaging various articles including perishable food products. During the trial, the parties may offer evidence to familiarize you with this technology.

The named inventor is Gautam P. Shah.

Patents are often referred to by their last three digits. The patent in this case may be called the '419 patent by the lawyers and witnesses during this trial. It may also be called "Cryovac's patent," or "the Shah Patent."

Cryovac argues that, when Pechiney made and sold plastic film bags under the trademark "ClearShield" to Cryovac's former customer, National Beef, that Pechiney knew that its ClearShield bags infringed the '419 patent, but that Pechiney intentionally made those sales anyway. Pechiney argues that the '419 patent was invalid because it did not add any new developments to inventions which predated it.

6

It is Cryovac's burden to establish, by clear and convincing evidence, that Pechiney willfully infringed the '419 patent. It is Pechiney's burden to prove that '419 patent was invalid by clear and convincing evidence.

In this case, Cryovac is contending that Pechiney's allegedly knowing and willful infringement of its '419 patent enabled it to cause one of Cryovac's customers, National Beef, to break a sales contract for plastic bags that it allegedly had with Cryovac and to begin buying its plastic bags from Pechiney. Pechiney contends that Cryovac never had a binding contract with National Beef and that Pechiney had no knowledge of any such contract. Pechiney further contends that it had the legal right to compete for and to win National Beef's business, even though Cryovac had been National Beef's prior supplier of plastic bags. I have already determined as a matter of law that Pechiney infringed claim 11 of the '419 patent. It is Cryovac's burden to prove (1) that Pechiney's infringement of the '419 patent was both knowing and willful; (2) if it was knowing and willful, then that knowing and willful infringement was what enabled Pechiney to win the National Beef account; (3) that Cryovac had a binding sales contract with National Beef at the time that Pechiney won the National Beef account; and (4) that Pechiney knew that Cryovac and National Beef had a binding sales contract at the time that Pechiney won the National Beef account. Pechiney has no burden on these issues.

Cryovac claims that it suffered damages as a result of Pechiney's infringement in the form of lost profits that Cryovac would have made if Pechiney had not infringed or at least a reasonable royalty on each of Pechiney's sales of an infringing product. I will explain to you at the end of the case how lost profits are calculated and how a reasonable royalty is determined. Cryovac has the burden of proving the damages it is entitled to as a result of any infringement.

7

Pechiney denies that Cryovac is entitled to any damages for patent infringement and that any profits Cryovac claims to have lost were merely speculative.

Cryovac also claims that it suffered damages as a result of Pechiney's alleged improper interference with Cryovac's relationship with National Beef. Cryovac has the burden of establishing the existence and amount of those damages.

At the end of the case, I will give you instructions on the law that you will apply in determining whether Cryovac has proven the claims against it makes against Pechiney.

**The Patent System, Generally**

Patents are issued by the United States Patent and Trademark Office, which is part of our government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be products, compositions, or methods for doing something, or for using or making a product or composition.

The owner of a valid patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent in the United States. However, the owner of a valid patent has no right to prevent others from making, using, offering for sale, selling or importing any product not covered by the language of the patent claims at issue and the owner of an invalid patent has no rights at all arising out of the invalid patent.

A patent is granted for a set period of time, which, in this case, was 20 years from the time the application for the '419 patent was filed. Once a patent expires, anyone is free to use the invention covered by the patent. The '419 patent expired on March 21, 2006. Even though the '419 patent has expired, however, Cryovac may still be entitled to damages for infringement that occurred before the expiration of the '419 patent's term.

During the term of the patent, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent.

To be entitled to patent protection an invention must be new, useful and nonobvious. A patent cannot legally take away the right to use that which was already known before the invention was made, or that which was obvious from what was already known. Thus, a patent

9

will not be valid if it deprives people of the right to use old or known products or processes, or of their right to use products or processes that were obvious at the time the invention was made. That which was already known at the time of the invention is called the "prior art." You will hear about the prior art relating to the '419 patent during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.

AUTHORITY:        Section of Litigation, American Bar Association, MODEL JURY
                  INSTRUCTIONS: PATENT LITIGATION (2005) ("ABA") § 2.2 [modified by
                  adding second sentence of second paragraph, deleting sentence on
                  enforcement].

## How a Patent is Obtained

The U.S. Patent and Trademark Office is the agency of our government that examines patent applications and issues patents. When an applicant for a patent files an application with the Patent Office, the application is assigned to a Patent Examiner. The Patent Examiner examines the application, including the claims, to determine whether or not the described invention meets the requirements for patentable inventions under the U.S. Patent Laws.

The Examiner reviews files of prior work of others in the form of patents and publications. This type of material is called "prior art." Documents found in this search of prior works are called "references."

The Patent Examiner advises the applicant of his or her findings in a paper called an "office action." The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, by making changes or amendments to the claims, or by submitting new claims. If the Examiner concludes that the legal requirements have all been satisfied, he or she "allows" the claims and a patent is issued.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution." The record of papers relating to the patent prosecution is referred to as the prosecution history, the file history, or the file wrapper. The prosecution history becomes available to the public when the patent issues.

Sometimes in a court case such as this one, you are asked to decide whether the patent should have been allowed at all by the Patent Office. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of

11

the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner. There are several reasons for this. For example, there may be facts or arguments that the Examiner did not consider, such as prior art that was not located by the Patent Office or provided by the applicant. Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner. There is, of course, also the possibility that mistakes were made or important information was overlooked. Examiners have a lot of work to do, and no process is perfect.

AUTHORITY:    "1993 USDC Del." [generally]; Intellectual Property Advisory Subcommittee of the United States District Court for the District of Delaware, *Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware* (June 2004 draft) ("2004 IPAS Del."), *available at* www.ycst.com/ip/patent.html [last two paragraphs]; ABA § 2.5 [adding second, fifth, and sixth paragraphs]; American Intellectual Property Law Association, *Model Patent Jury Instructions* (Oct. 2005), *available at* http://www.aipla.org ("AIPLA") § I [generally].

**The Parts of a Patent**

You have been provided with a copy of the '419 patent. Please refer to this patent as I identify its different sections.

A patent includes two basic parts: first, a written description of the invention, which may include drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

The cover page of the '419 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the '419 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are the drawings. The '419 patent has one drawing, which appears as Figure 1 on the next page. A drawing depicts various aspects or features of the invention. It is described in words later in the patent specification.

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '419 patent begins at column 1, line 1, and continues to column 9, line 4. It includes a background section, a summary of the invention, definitions, and a detailed description of the invention, including some examples.

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts, referred to as "claim limitations." In

13

the '419 patent, the claims begin at column 9, line 6 and continue to the end of the patent, at column 12, line 7.

In this case, we will be concerned only with claim 11 of the '419 patent. Claim 11 begins at the bottom of column 9 and goes to line 9 of column 10. Pechiney contends that claim 11 was invalid.

The language of this patent claim may not be clear to you, or the parties may dispute its meaning. I will instruct you [now/at the end of the case] about the meaning of some of the language in this claim. You must use the meanings I give you when you decide the issue of invalidity.

AUTHORITY:     ABA §§ 2.3 [modified for '419 patent and by adding last two paragraphs], 2.4 [last two paragraphs].

14

**<u>Video and Glossary</u>**

I will now show you a video about the patent system in the United States.

**[Show Federal Judicial Center video "An Introduction to the Patent System."]**

You will hear many of the terms used in the video during this trial. They are summarized in a glossary of patent terms which will be given to you shortly along with a copy of these preliminary instructions. Feel free to refer to this glossary throughout the trial.

AUTHORITY:        1993 USDC Del. [generally]; 2004 IPAS Del.

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| **Application** | The initial papers filed in the United States Patent and Trademark Office (also called the Patent Office or PTO) by an applicant for a patent. These papers typically include a specification, drawings and the oath (declaration) of the applicant. |
| **Assignment** | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| **Claims** | That part of a patent which defines the metes and bounds of the invention and the scope of the patent owner's exclusive rights during the life of the patent. These are found at the end of the patent specification in the form of numbered paragraphs. |
| **Disclosure of description** | That part of the patent specification which explains how the invention works and usually includes a drawing. |
| **Examiner** | Person employed by the Patent Office having expertise in a technical area who reviews (examines) patent applications to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention. |
| **File wrapper or Prosecution history** | The written record of proceedings between the applicant and the Patent Office. It includes the original patent application and subsequent communications between the Patent Office and applicant. |
| **Office action** | Communication from the Patent Examiner regarding the specification of a patent application and/or the claims pending in the patent application. |
| **Ordinary skill in the art** | The level of experience, education, and/or training that those individuals who work in the area of the invention possess. |
| **Prior art** | Any information which is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to the filing date of the patent application. Prior art may include patents, publications, presentations, and products. |
| **References** | Any item of prior art used to determine patentability. |
| **Specification** | That part of the patent application or patent which describes the invention and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. |

AUTHORITY:    1993 USDC Del. [modified by rearranging and adding "Office action" and "Ordinary skill in the art"]; AIPLA ["Office action" and "Ordinary skill in the art"].

**Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, bring it to my attention promptly. There are important reasons for this, including the need for you to keep an open mind throughout the presentation of evidence.

Second, do not read or listen to anything touching on this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case. Please don't do any sleuthing on the internet, for example. You are to decide the case upon the evidence presented to you here in court.

Again, do not reach any conclusion as to the claims until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you wish to, you may take notes during the evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom deputy will arrange for pens, pencils, and paper. If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. And remember that they are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. However, you should not assume that the transcripts will be available for

your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of the testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1.     Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2.     Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Over-indulgence in note-taking may be distracting. You, the jurors, must pass on the credibility of witnesses; hence, you must observe the demeanor and appearance of each person on the witness stand to assist you in passing on his or her credibility. Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation itself.

3.     Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a stimulant to your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

18

4.    <u>Do not take your notes away from court</u>.  I repeat, at the end of each day, please leave your notes in the jury room.  At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

AUTHORITY:        KAJ Instructions; 1993 USDC Del. [modified for clarity and combination with other instructions]; 2004 IPAS Del. [modified for clarity and combination with other instructions].

19

**Some Logistical Information**

1.     Temperature -- dress in layers.  It is difficult for our landlord, the Government Services Administration, to maintain a constant temperature in the building.  That is particularly true when the seasons are changing and the temperature outside can be erratic.  So bring a sweater or jacket you can wear if the air conditioning is overdone but which you can take off if things get too warm.

2.     Jury Stickers -- Please wear the stickers you've been given that identify you as jurors.  We don't have specialized access for you to the elevators or other common areas in the building.  You will be sharing those with the representatives of the parties and others who have business with the Court.  Everyone wants to help you maintain the appropriate detachment you must have in order to avoid being influenced by things outside the courtroom.  By wearing your stickers, you help the parties and others to preserve that detachment.  And please, do not be offended if the attorneys or court personnel or others involved in the trial seem stand-offish when you see them in the elevators or elsewhere in the building.  Again, they are not trying to be unfriendly, but they are obligated to avoid contact with you outside the context of the presentations in the courtroom.

3.     Security System and Timeliness -- You'll recall that when you came into the building today, you had to go through a security screening system.  If you had a cell phone, you had to check that in with one of the Court Security Officers.  Such screening can cause delays, so please plan your arrival time at court in a manner that will allow you to be in the jury room before 9:00 a.m. each day of trial so that you can all come in and be seated together in the jury box promptly at 9:00.  I should note that, sometimes, the other participants in this proceeding may cause you to wait.  You will have done your part and arrived in the morning or after a break

20

so that we can begin on time and yet you will be left in the jury room. I promise that I will do my utmost to hold such delays to the absolute minimum. We may be able to eliminate them entirely, but there are times during the course of a trial when matters arise which could not reasonably have been anticipated and which require the Court's attention. For example, the attorneys may have a legal issue which they help resolving and in which it would not be appropriate to have you involved. If we have to deal with matters outside your presence, please be patient. Likewise, if I am required to deal with other proceedings, I ask your indulgence. Neither the Court nor the parties mean you any disrespect by a delay. On the contrary, your willingness to serve and the sacrifice of your time is deeply appreciated by all of us involved in these proceedings.

    4.    Schedule -- A few additional words about the daily schedule: as I mentioned, we will begin taking testimony each day at 9:00 a.m. We will plan to have a break at mid-morning (at about 10:30), to recess for a one-hour lunch at approximately 12:30, to have a mid-afternoon break (at about 3:00), and to conclude the taking of testimony by 4:30 p.m. sharp. You can plan that you will be able to leave court each day by 4:30.

AUTHORITY:        KAJ Instructions.

**Course of the Trial**

      The trial will now begin.  First, each side may make an opening statement.  An opening statement is neither evidence nor argument.  It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

      After the opening statements, the plaintiffs will present their witnesses, and defendants may cross-examine them.  Then the defendants will present their witnesses, and plaintiffs may cross-examine them.  Both sides may offer documents in evidence..

      When all the evidence is in, the attorneys will make their closing arguments to summarize and interpret the evidence for you and I will give you instructions on the law.  You will then retire to deliberate on your verdict.

AUTHORITY:        KAJ Instructions.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,                                      )
                                                    )
    Plaintiff/Counter-Defendant              )     Civil Action No. 04-1278-KAJ
                                                    )
    vs.                                      )     Hon. Kent A. Jordan
                                                    )
PECHINEY PLASTIC PACKAGING, INC.,                   )
                                                    )
    Defendant/Counter-Plaintiff.             )


## JURY INSTRUCTIONS


Date: _____

23

# TABLE OF CONTENTS

1.    **General Introduction**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if the defendant is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole. .

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

AUTHORITY:      Uniform Jury Instructions in the United States District Court for the District of Delaware (Rev: 1/18/06) ("Uniform Del.").

2.     **Evidence Defined**

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

AUTHORITY:        Uniform Del..

3.    **Direct and Circumstantial Evidence**

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

AUTHORITY:        Uniform Del.

4.    **Consideration of Evidence**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

AUTHORITY:        Uniform Del.

5.    **Statements of Counsel**

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

AUTHORITY:        Uniform Del.

**6.    Credibility of Witnesses**

You are the sole judges of each witness's credibility. You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

AUTHORITY:     Uniform Del.

7.    **Expert Testimony**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

AUTHORITY:      Uniform Del.

## 8.     Number of Witnesses

One more point about witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

AUTHORITY:          Uniform Del.

**9.    The Parties and Their Contentions**

I will now review for you the parties in this action and the positions of the parties that you will have to consider in reaching your verdict.

AUTHORITY:        ABA § 4.

**9.1     The Nature of the Case**

As I have told you, this is a civil case and it involves U.S. Patent No. 4,755,419, which is owned by Cryovac. Patents are often referred to by their last three digits. The patent in this case has been referred to as the '419 patent, the Shah patent or Cryovac's patent.

AUTHORITY:          ABA § 4.1 [modified for clarity].

### 9.2     Cryovac's Contentions

Cryovac, the plaintiff in this case, has asserted three separate contentions, or claims, against Pechiney, the defendant in this case.

First, Cryovac contends that Pechiney's infringement of claim 11 of the '419 patent was willful. Cryovac has the burden to prove willful infringement by clear and convincing evidence.

Second, Cryovac claims that Pechiney tortiously interfered with two contracts formed on March 20, 2003, and January 14, 2004, between Cryovac and National Beef.

Finally, Cryovac claims that even if there was no contract between Cryovac and National Beef that Pechiney tortiously interfered with Cryovac's prospective contractual relations with National Beef.

Cryovac contends that it is entitled to damages for patent infringement caused by Pechiney's actions and damages for tortious interference caused by Pechiney's actions.

Cryovac must prove all of the elements of tortious interference by a preponderance of the evidence.

You must decide whether Cryovac has proved any of these contentions and what amount of damages, if any, Cryovac has proved for patent infringement and for tortious interference.

AUTHORITY:     ABA § 4.2 [modified for this case].

**9.3    Pechiney's Contentions**

Pechiney denies that any infringement of claim 11 of the '419 patent was willful. Pechiney contends that it acted on the good faith belief that it did not infringe claim 11. Pechiney has no burden of proof to meet regarding willful infringement.

Pechiney contends that claim 11 of the '419 patent was invalid for a number of reasons that I will tell you about shortly. You must decide whether Pechiney has proved by clear and convincing evidence that claim 11 was invalid.

Pechiney contends that its dealings with National Beef were proper and were justified and privileged.

Pechiney contends that Cryovac and National Beef did not have a contract.

Pechiney also contends that even if there was a contract between Cryovac and National Beef, Pechiney did not know there was such a contract.

If you decide that Cryovac has not proved that it had a contract with National Beef, or that Pechiney had knowledge of that contract, or that Pechiney improperly interfered with that contract or a prospective contract between Cryovac and National Beef, then you must find for Pechiney on the tortious interference claims. Pechiney has no burden of proof to meet regarding its dealings with National Beef.

AUTHORITY:        ABA § 4.3 [modified for this case].

**9.4    Summary of Issues**

To prevail on any one of the claims for which it has the burden of proof, a party must prove every essential element of that claim. If Cryovac has failed to establish even one essential element of a claim by failing to meet the standard for the amount of evidence required to prove that element, you should find for Pechiney as to that claim.

If you find for Cryovac on a claim, then you must consider whether Pechiney has established the essential elements of an affirmative defense that relates to that claim. Pechiney has the burden to prove the essential elements of its defenses, but you need not consider whether Pechiney has met this burden unless you first find for Cryovac on the related claim.

Pechiney has no burden to prove that it did not willfully infringe claim 11 of the '419 patent, or that it did not improperly interfere with a contract or prospective contract between Cryovac and National Beef. The burdens of proving willful infringement and tortious interference are Cryovac's.

**10.    Burdens of Proof**

Cryovac has the burden of proving its claim of willfulness against Pechiney by clear and convincing evidence. Clear and convincing evidence is evidence that produces a firm belief or conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence and requires a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not, however, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Cryovac has the burden of proving its charge of tortious interference by what is called a preponderance of the evidence. That means that Cryovac has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence for each of these claims one at a time on the opposite sides of a scale, the evidence supporting Cryovac's claim would have to make the scales tip somewhat on its side.

Pechiney is urging that claim 11 of Cryovac's patent was invalid. Pechiney has the burden of proving that claim 11 of the '419 patent was invalid by clear and convincing evidence.

In determining whether any fact in issue has been proved you may, unless I instructed you otherwise, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Keep in mind that "proof beyond a reasonable doubt" does not play any part in this civil case and you should, therefore, not consider it at all in your deliberations.

AUTHORITY:          1993 USDC Del. § 1.3 [modified for parties, clarity and combination with other instructions]; 2004 IPAS Del. § 1.3 [modified for parties, clarity and combination with other instructions].

**11.** **The Patent System**

At the beginning of the trial, I gave you some general information about patents and the patent system, and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

AUTHORITY:     2004 IPAS Del. § 3 [generally]; ABA § 5.

12.    **The Claim of the Patent in Suit**

Before you can decide whether claim 11 of Cryovac's patent was invalid you will have to understand about patent claims. The claims of a patent are the numbered sentences at the end of the patent. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. The claims define what the patent owner owns and what the patent owner may prevent others from making and selling.

In this case, you are to consider only claim 11 of the '419 patent, which begins at the bottom of column 9 of the patent.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

AUTHORITY:    1993 USDC Del. § 3.1 [modified for validity, clarity and combination with other instructions]; 2004 IPAS § 3.2.1 [modified for validity, clarity and combination with other instructions]; ABA § 6 [generally and last paragraph]; AIPLA Infringement § 1 [modified to limit to validity].

## 12.1    Construction of the Claim

In deciding whether or not claim 11 was invalid, the first step is to understand the meaning of the words used in the patent claim.

It is my job as Judge to determine what the words in the patent claim mean and to instruct you about those meanings. You must accept the meanings I give you and use them when you decide whether claim 11 of the '419 patent was invalid.

It may be helpful to refer to the copy of the '419 patent that you have been given as I discuss the claim at issue here. Claim 11 is toward the end of the patent, starting at the bottom of column 9.

AUTHORITY:         ABA § 6.1; AIPLA Infringement § 2 [second paragraph].

**12.2    Limitations of the Claim at Issue**

You must use the definitions of the words used in claim 11 that I provide to you in your consideration of the invalidity issues. I have defined two terms in claim 11.

The term "**oriented**" as used in claim 11 of the '419 patent means, with reference to a polymeric material, "*heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process.*"

The term "**arranged symmetrically**" as used in claim 11 of the '419 patent means "*putting the layers in a desired symmetrical order when the film is viewed in cross-section, so that the layers are in the same order on each side of the core of the film, for example c/d/b/a/b/d/c. This claim phrase limits only the arrangement of the layers, and does not require precise identity in the thickness of the layers or the amounts of recited components or additives that may be included in the layers.*"

The term "**core layer**" as used in claim 11 of the '419 patent means "*the layer in a multilayer film surrounded by an equal number of layers on both sides.*"

If you are not sure what is meant by any term in claim 11 that I have not defined, you should use the ordinary meaning of the term in the context of the specification and drawing of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent. The ordinary meaning is the meaning that the term would have had to a person of ordinary skill in the art of multilayer film packaging at the time of the invention described in claim 11 of the '419 patent.

AUTHORITY:        ABA § 6.6 [first sentence]; AIPLA Infringement § 2 [generally]; *Phillips v. AWH Corp.* 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, Civil Action No. 04-1278-KAJ (D. Del. Apr. 13, 2006); Cryovac's Initial Brief on Claim Construction, Oct. 19, 2005.

### 12.2.1  Limitations of the Claim at Issue [Alternative]

In your determinations of whether Pechiney's infringement of claim 11 of the '419 patent was willful and whether claim 11 was valid, you should apply the following definitions to these terms:

The term "**oriented**" as used in claim 11 of the '419 patent means, with reference to a polymeric material, "*heated and stretched to realign the molecular configuration.*"

The term "**arranged symmetrically**" as used in claim 11 of the '419 patent means "*putting the layers in a desired symmetrical order when the film is viewed in cross-section, that is, putting the layers in an order so that the geometrical center line of the core layer is the geometrical center line of the film and there is correspondence in the size (thickness) and composition of layers on opposite sides of the core layer resulting in the corresponding layers being mirror images of each other with the same thickness and the same chemical composition.*"

The term "**core layer**" as used in claim 11 of the '419 patent means "*the layer in a multilayer film surrounded by an equal number of layers on both sides.*"

If you are not sure what is meant by any other term in claim 11 that is not defined here, you should use the ordinary meaning of the term in the context of the specification and drawing of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent. The ordinary meaning is the meaning that the term would have had to a person of ordinary skill in the art of multilayer film packaging at the time of the invention described in claim 11 of the '419 patent.

AUTHORITY:      Defendant's [Proposed] Order Construing Claim Language, Oct. 19, 2005;
                Cryovac's Initial Brief on Claim Construction, Oct. 19, 2005.

## 12.3   "Comprising"

[Subject to Cryovac agreeing to Pechiney's instruction 12.2.]

The beginning portion, or preamble, of claim 11 of the '419 patent uses the word "comprising." "Comprising" is a term of art used in patent claim language which means that the named elements are essential, but other elements may be added and still form a product within the scope of the claim.

For example, a claim to a table comprising a tabletop, legs and glue would cover a table that includes each of those elements, even if the table also includes additional elements such as wheels on the table's legs.

Based on this explanation, if you find a prior art reference included all of the components of claim 11 of the '419 patent, the fact that it may also have included additional components is irrelevant.

AUTHORITY:           1993 USDC Del. § 3.11 [generally]; 2004 IPAS Del. § 3.3.3 [modified for clarity]; ABA § 6.5.1 [modified for clarity].

13.    **Invalidity—in General**

I will next discuss in more detail the standards by which the legal adequacy of a patent specification, both the disclosure and the claims, is to be judged. Pechiney contends that claim 11 of the '419 patent was invalid.

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you when we discuss Pechiney's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Pechiney has challenged the validity of claim 11 of the '419 patent and contends that it failed to satisfy the legal requirements of patentability. Pechiney has the burden to prove the invalidity of claim 11 by clear and convincing evidence. When the validity of a patent has been put at issue, it is the responsibility of the jury to determine patentability, especially where the particular prior art has not been considered by the Patent Office Examiner.

I will now explain to you each of Pechiney's grounds for invalidity in detail. In making your determination as to invalidity, you should consider only claim 11.

AUTHORITY:        1993 USDC Del. § 4.1 [generally]; 2004 IPAS Del. §§ 4 [generally], 4.1 [generally]; ABA § 9 [expanded].

**13.1     Written Description**

Pechiney contends that claim 11 of the '419 patent was invalid because the patent lacked an adequate written description to support this claim.

The patent law requires that the description in the patent specification of the invention must be complete to ensure that the inventor was in possession of the invention at the time the patent application was filed. This is referred to as the "written description requirement."

To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.

Pechiney bears the burden of establishing by clear and convincing evidence that the '419 patent lacked an adequate written description of the invention covered by claim 11 at the time the application was filed.

If you find that Pechiney has proved that it is highly probable that the '419 patent did not contain an adequate written description of each and every limitation of claim 11, then you must find that claim 11 was invalid.

AUTHORITY:          ABA § 3.2.4 [expanded]; AIPLA Written Description Requirement [third
                    paragraph].

## 13.2    Enablement

[This instruction to be given only if jury to decide whether claim 11 was enabled.]

Pechiney also contends that claim 11 of the '419 patent was invalid because the patent specification lacked an enabling disclosure.

The patent laws require that the written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the full scope of the invention.  This is referred to as the enablement requirement.  If the patent does not enable a skilled person to practice the product or process of a patent claim, then the claim is invalid.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement.  A written description is enabling so long as undue experimentation is not needed to make or use the invention.  A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

The enablement defense does not require proof that the inventor intended to withhold information; all that is required is a failure to teach how to practice the invention.  In other

words, if a person of ordinary skill in the art could not carry out the process without undue experimentation, the patent claim is invalid.

For a patent claim to be enabled for purposes of validity, the written description must enable persons of skill in the field of the invention to make and use the full scope of the claimed invention. The scope of a validly enabled patent claim cannot be greater than the scope of the disclosure telling how to make and use the invention claimed. Put another way, an enabling disclosure also must inform persons skilled in the art about the boundaries of the claimed invention so they know what the patent does and does not cover.

Pechiney contends that claim 11 of the '419 patent was invalid for lack of enablement. If you find that Pechiney has proven by clear and convincing evidence that the written that the written description of the '419 patent did not enable a skilled person to make and use the full scope of all products covered by claim 11 without undue experimentation, then you must find that the claim was invalid.

AUTHORITY:    1993 USDC Del. § 4.2 [expanded and modified]; 2004 IPAS § 4.3 [expanded and modified]; ABA § 9.1.2 [expanded]; AIPLA Enablement [generally]; *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999).

**13.3    The Prior Art**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

The prior art to the '419 patent includes the following:

First, anything that was invented by another person in this country before the date of invention of the subject matter of claim 11 of the '419 patent, if the other person did not abandon, suppress, or conceal his or her prior invention.

Second, anything that was publicly known or used in the United States by someone other than the inventor before the date of invention of the subject matter of claim 11 of the '419 patent.

Third, anything that was in public use or on sale in the United States more than one year before the application for the '419 patent was filed, that is, before March 21, 1985.

Fourth, anything that was described in a patent granted on an application filed in the United States before the date of invention of the subject matter of claim 11 of the '419 patent.

Fifth, anything that was patented or described in a printed publication anywhere in the world before the date of invention of the subject matter of claim 11 of the '419 patent, or before March 21, 1985, which was one year before the application for the '419 patent was filed.

AUTHORITY:        1993 USDC Del. § 4.8.1 [generally]; 2004 IPAS Del. § 4.8.1 [generally];
                  ABA § 9.3 [rearranged and modified for clarity].

### 13.3.1 Prior Art—Date of Invention

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art. Subject to Pechiney's In Limine Request No. 4.]

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

Under the patent laws, the date of invention for the '419 patent is the date that the patent application was filed describing all the features and limitations of the claimed invention. That date was March 21, 1986.

AUTHORITY: ABA § 9.3.1 [modified]; *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1064 (Fed. Cir. 2005); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1314 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996).

### 13.3.1 Prior Art—Date of Invention [Alternative]

[This instruction to be given if Cryovac is allowed to introduce evidence of an invention date earlier than March 21, 1986. Subject to Pechiney's In Limine Request No. 4.]

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

Under the patent laws, the date of invention is generally the date that the patent application was filed. In this case, that date is March 21, 1986. Ordinarily, art that came before the application's filing date is prior art to the patent.

There is, however, a circumstance under which art dated before the application filing date is not prior art. This occurs when the inventor on the patent conceived of and actually reduced the invention to practice before the date of the art.

Conception of the invention occurs when the inventor has the idea of the complete claimed invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort.

The actual production of the invention is referred to as an "actual reduction to practice." An invention is said to be "actually reduced to practice" when it is made and shown to work for its intended purpose. If the inventor conceives of and actually reduces the invention to practice before the date of the art, the art is not prior art to the patent claim. However, there can be no actual reduction to practice under the law if the inventor has not yet conceived of every aspect of the claimed invention.

AUTHORITY: ABA § 9.3.1 [modified]; *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1064 (Fed. Cir. 2005); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1314 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996).

### 13.3.2 Prior Art—Prior Public Use or Knowledge

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances. The first is where the invention was publicly known or used by someone other than the inventor before the date of invention by the inventor on the patent. The second is where the inventor, the patent owner, or anyone else publicly used the invention more than one year before the application for the patent was filed.

In both circumstances, the public use or knowledge must have been in the United States. Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

If the inventor or the patent owner used the invention for commercial purposes, that use will be prior art even if it was done in secret.

Use or knowledge by someone other than the inventor or patent owner may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent. In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public. Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claim is irrelevant. A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

To be considered public, prior art need not have been available to every member of the public. It only must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents. An invention is publicly used if it is used by a

55

person who is not under any limitation, restriction, or obligation of secrecy to the inventor or

patent owner.

In this case, Pechiney relies on *[to be inserted later]* as a prior public use.

AUTHORITY:    2004 IPAS § 4.5 [generally and regarding public availability]; ABA
§ 9.3.5 [expanded and rearranged]; AIPLA Anticipation § 3 [regarding
public use].

56

### 13.3.3 Prior Art—Prior Printed Publication

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

Printed publications from anywhere in the world are prior art to the '419 patent if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the '419 patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it. It is not necessary that the publication be available to every member of the public. Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public. Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the '419 patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims. The date of invention is irrelevant to this category of prior art.

In this case, Pechiney relies on *[to be inserted later]* as a prior art printed publication to claim 11 of the '419 patent.

AUTHORITY:        ABA § 9.3.8.

**13.3.4 Prior Art—Prior Patents**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

An issued patent may be prior art to a patent claim under a number of different circumstances.

First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before the inventor conceived and made the claimed invention.

Second, a patent issued anywhere in the world more than one year before the application for the '419 patent was filed may be prior art to claim 11, regardless of the date of invention of the subject matter of claim 11 of the '419 patent. The date of invention is irrelevant to this category of prior art.

Third, a U.S. patent may be prior art to a patent claim even if the patent issued after the date of invention of the claimed invention. This occurs when another person filed the patent application for that U.S. patent before the inventor conceived and made the claimed invention.

In this case, Pechiney relies on *[to be inserted later]* as a prior art patent to claim 11 of the '419 patent. The application for the *[to be inserted later]* patent was filed on *[to be inserted later]*, which was before the application for the '419 patent was filed on March 21, 1986.

AUTHORITY:        ABA § 9.3.10 [modified for clarity].

### 13.3.5  Prior Art—Prior Invention

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

An invention made by another person before the inventor on the '419 patent made the invention is prior art to claim 11, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduced an invention to practice before the inventor on the '419 patent, then the reduction to practice by the other person will be prior art to claim 11. It is not necessary that the second inventor know of the earlier invention.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, Pechiney contends that *[to be inserted later]* was a prior invention to claim 11 of the '419 patent.

59

AUTHORITY:     ABA § 9.3.9.

**13.4    Anticipation/Lack of Novelty**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. Under the U.S. patent laws, an invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a claim of a patent must prove anticipation by clear and convincing evidence. In this case, Pechiney contends that the invention of claim 11 of the '419 patent was anticipated.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

The prior art need not describe an invention as preferred or desirable to be an anticipating reference. A prior art reference's disclosure includes not only embodiments it says are preferred, but also any embodiments described or inferred as inferior.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider not only what is expressly stated or present in the item of prior art, but also what is

inherently present. Something is inherent in an item of prior art if it is always present in the prior art or the natural result of an operation taught in the prior art. Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.

A prior public use of a patented invention that was accidental, unrecognized, or unappreciated can still be an invalidating anticipation, even if the user did not intend to use the invention, or even realize he or she had done so.

I have told you that you are to interpret the term "oriented" in claim 11 of the '419 patent as meaning "heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process." For the purpose of anticipation, you are to interpret "oriented" as meaning that the molecular configuration was realigned. You are not to consider whether an oriented film product in the prior art was heated or was stretched by a racking or blown bubble process. How a product in the prior art was made is not relevant to whether the prior art product anticipated a patent claiming the same product.

To prove anticipation of claim 11 of the '419 patent, Pechiney does not need to prove that a product in the prior art was made by heating and stretching or by a racking or blown bubble process or by any other particular process. The anticipating product could have been made by the process described in the '419 patent, by a different process, or by some unknown process.

In this case, Pechiney contends that claim 11 of the '419 patent was invalid because it was anticipated by *[to be inserted later]*. If you find that Pechiney has proved that it is highly probable that claim 11 was anticipated, then you must find that the claim was invalid.

AUTHORITY:    2004 IPAS Del. § 4.5 [expanded]; ABA § 9.6 [expanded]; AIPLA
              Anticipation § 1 [expanded and modified for combination with other
              instructions]; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312,

1317 (Fed. Cir. 2006); *In re Fulton*, 391 F.3d 1195, 1200-01 (Fed. Cir. 2004).

**13.5    Obviousness**

An inventor also is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a person of ordinary skill in the art who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claim is invalid. Pechiney has the burden of proving by the highly probable standard that claim 11 of the '419 patent was invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether the invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the '419 patent. You should not use the '419 patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made. You must presume that this person would have known about all the relevant prior art.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope and content of the prior art that Pechiney is relying upon?

Second, what differences, if any, are there between the invention of claim 11 of the '419 patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention of the '419 patent was made?

Fourth, are there any objective indications of obviousness or nonobviousness?

Against this background, you must decide whether or not the subject matter covered by claim 11 of the '419 patent would have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

AUTHORITY:    1993 USDC Del. §§ 4.8 [generally], 4.8.5 [generally]; 2004 IPAS Del. §§ 4.8 [generally], 4.8.5 [generally]; ABA § 9.8; AIPLA Obviousness §§ 1 [generally], 6 [generally].

65

### 13.5.1 The Scope and Content of the Prior Art

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by claim 11 of the '419 patent. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

You must consider all disclosures of the prior art, including express or inherent disclosures of embodiments that were not preferred.

The prior art that you considered for anticipation purposes is also prior art for obviousness purposes.

In examining the prior art, you should take into account not only what it expressly discloses or embodies, but also anything that was inherent in that prior art.

AUTHORITY:      1993 USDC Del. § 4.8.1 [generally]; 2004 IPAS Del. § 4.8.1 [generally]; ABA § 9.8.1 [modified by adding last two paragraphs]; AIPLA Obviousness §§ 2, 6 [last paragraph]; *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995); *Merck & Co., Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989); *In re Grasselli*, 713 F.2d 731, 739 (Fed. Cir. 1983).

**13.5.2  Differences Between the Invention of the Claim and the Prior Art**

In reaching your conclusion as to whether or not the invention of claim 11 of the '419 patent would have been obvious, you should consider any differences between the prior art and the claimed invention.

In determining the differences between the invention covered by claim 11 of the '419 patent and the prior art, you should not look at the individual differences in isolation. You should note the differences, but you must also consider the invention recited in claim 11 as a whole and determine whether or not it would have been obvious in light of all of the prior art.

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the invention recited in claim 11 of the '419 patent. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art.

The prior art does not have to suggest that a particular combination would be the preferred or most desirable combination in order to provide motivation for an invention. The question is whether something in the prior art as a whole would suggest the obviousness of making the combination.

AUTHORITY:     1993 USDC Del. § 4.8.2 [generally]; 2004 IPAS Del. §§ 4.8.2 [generally], 4.8.4 [last paragraph]; ABA § 9.8.2 [generally]; AIPLA Obviousness § 4 [first paragraph]; *In re Fulton*, 391 F.3d 1195, 1200 (Fed. Cir. 2004); *In re Beattie*, 974 F.2d 1309, 1312 (Fed. Cir. 1992).


**WE WILL AGREE TO CRYOVAC'S 15.7 IN LIEU OF THIS INSTRUCTION. (WITHOUT ITALIC EMPHASIS)**

### 13.5.3  Level of Ordinary Skill

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention at the time the invention was made. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

AUTHORITY:    1993 USDC Del. § 4.8.3 [generally]; 2004 IPAS Del. § 4.8.3 [generally]; ABA § 9.8.3.

**13.5.4 Objective Indications Concerning Obviousness**

You also must consider what are referred to as objective indications of nonobviousness. If established by Cryovac, these factors weigh in favor of finding that the invention would not have been obvious. Some of these indications of nonobviousness are:

1.    Commercial success or lack of commercial success of products covered by claim 11 of the '419 patent;

2.    A long-felt need that was satisfied by the invention recited in claim 11 of the '419 patent;

3.    Failed attempts by others before Gautam Shah's work to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by Pechiney or others in the field;

7.    The taking of licenses under the '419 patent by others;

8.    Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

9.    Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

The presence of any of these objective indications may suggest that the invention was not obvious. However, these objective indications are only relevant to obviousness if there is a connection, or nexus, between the evidence showing any of them and the invention recited in claim 11 of the '419 patent. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those recited in claim 11 of the '419 patent, then any commercial success may have no relation to the issue of obviousness.

69

AUTHORITY:     1993 USDC Del. §§ 4.8.4 [modified for clarity and combination with other instructions], 4.8.6 [generally], 4.8.7 [generally]; 2004 IPAS Del. § 4.8.6 [modified for clarity]; ABA § 9.8.4 [modified for clarity and combination with other instructions]; AIPLA Obviousness § 8 [generally].

**13.5.5 Independent Invention by Others**

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of claim 11 of the '419 patent was also invented independently by other persons, either before the inventor of the '419 patent or at about the same time. Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

AUTHORITY:          1993 USDC Del. § 4.8.9 [first paragraph; AIPLA Obviousness § 9 [generally].

71

**13.5.6 Determination of Obviousness**

Pechiney contends that the invention recited in claim 11 of the '419 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of *[to be inserted later]* combined with *[to be inserted later]*. If you find that Pechiney has provided clear and convincing evidence of obviousness, then you must find that the claim was invalid for obviousness.

I have told you that you are to interpret the term "oriented" in claim 11 of the '419 patent as meaning "heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process." For the purpose of obviousness, you are to interpret "oriented" as meaning only that the molecular configuration was realigned. You are not to consider whether an oriented film product in the prior art was heated or was stretched by a racking or blown bubble process. To prove that claim 11 of the '419 patent was invalid for obviousness, Pechiney does not need to prove that a product in the prior art was made by heating and stretching or by a racking or blown bubble process or by any other particular process. How a product in the prior art was made is not relevant to whether its existence would have made a later claimed invention obvious.

AUTHORITY:     ABA § 9.8.5 [first paragraph]; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1317 (Fed. Cir. 2006).

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ

/s/ N. Richard Powers
N. Richard Powers (#494)
Rudolf E. Hutz (#484)
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel.: (302) 888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Patrick L. Patras (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
Gregory D. Bonifield
Joseph A. Schouten
Sara E. Tonnies
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois  60611
Tel.: (312) 222-9350

*Attorneys for Defendant/Counter-Plaintiff
Pechiney Plastic Packaging, Inc.*

Dated:  May 10, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2006 I electronically filed a copy of the foregoing with the Clerk of the Court using CM/ECF and served the following individuals in the manner indicated:

**BY ELECTRONIC MAIL
AND HAND DELIVERY**
John W. Shaw, Esquire
Karen E. Keller, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801

**BY ELECTRONIC MAIL
AND FEDERAL EXPRESS**

Ford F. Farabow, Jr., Esquire
Mark J. Feldstein, Esquire
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001

/s/ N. Richard Powers
N. Richard Powers