# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC.,      )
     )
         Plaintiff/Counter-Defendant    )    Civil Action No. 04-1278-KAJ
     )
               vs.      )    Hon. Kent A. Jordan
     )
PECHINEY PLASTIC PACKAGING, INC.,    )
     )
         Defendant/Counter-Plaintiff.    )

## DEFENDANT PECHINEY PLASTIC PACKAGING, INC.'S PROPOSED JURY INSTRUCTIONS PART II

The following jury instructions are submitted by Pechiney Plastic Packaging, Inc.

("Pechiney").

**14.     Willful Infringement**

Cryovac contends that Pechiney willfully infringed claim 11 of the '419 patent. I have already determined that Pechiney's products infringed claim 11 of the '419 patent, but you must independently decide whether or not Cryovac has proven, by clear and convincing evidence, that Pechiney's infringement was willful. Willfulness is a determination about Pechiney's state of mind. My determination that Pechiney infringed does not establish that Pechiney's infringement was willful. Whether Pechiney's infringement was willful or not is an independent decision that you, the jury, must make.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care to investigate whether or not his or her activities or proposed activities will infringe any valid claim of the patent. Cryovac must prove that Pechiney willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement by Pechiney of the '419 patent, Cryovac must prove two things with clear and convincing evidence:

1.     that Pechiney actually knew of the '419 patent; and

2.     that Pechiney had no good faith basis for believing either:

(a) that its ClearShield products did not infringe claim 11 of the '419 patent, or

(b) that claim 11 of the '419 patent was invalid.

To determine whether Pechiney acted with a good faith belief that it did not infringe claim 11 of the '419 patent or that claim 11 was invalid, or whether Pechiney willfully infringed claim 11 of the '419 patent, you must consider all of the facts and circumstances, including the strength of the defenses raised by Pechiney in this trial. No single fact alone determines whether

infringement was willful or nonwillful. The significance of each fact depends upon the totality of the circumstances.

Among the facts you should consider in your determination of willfulness are:

a.    Whether Pechiney learned of the '419 patent through its own diligence or by receiving a notice from Cryovac;

b.    Whether Pechiney applied for its own patents for its products;

c.    Whether Pechiney ever obtained licenses under other parties' patents to make its products;

d.    Whether Cryovac told Pechiney about the '419 patent and, if so, when that occurred and how Pechiney acted after receiving notice;

e.    Whether Pechiney obtained and followed the advice of a lawyer; and

f.    Whether Pechiney tried to avoid infringement by designing around the claims of the '419 patent.

The issue of willful infringement is relevant to the amount of damages to which Cryovac is entitled. If you decide that Pechiney willfully infringed claim 11 of the '419 patent, then it is my job to decide whether or not to award increased damages to Cryovac.

AUTHORITY:    1993 USDC Del. § 3.18 [generally]; 2004 IPAS Del. § 3.13 [generally]; ABA § 8 [generally]; AIPLA Willful Infringement [generally]; *Golden Blount, Inc. v. Robert H. Peterson Co.*, 2006 WL 335607 (Fed. Cir. Feb. 15, 2006); *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987).

**14.1    Knowledge of the Patent**

Your determination of willfulness should consider how Pechiney learned about the '419

patent.  Whether Pechiney learned of the '419 patent through its own diligence or only by notice

from Cryovac is a relevant factor in the totality of the circumstances determining willfulness.

Finding a patent and proceeding to study it can indicate that an accused infringer did not ignore

the relevant patents in the field.

AUTHORITY:        *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 823 (Fed. Cir.
                  1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp.
                  674 (D. Del. 1987), *aff'd* , 862 F.2d 1564 (Fed. Cir. 1988).

## 14.2    Licenses

That an accused infringer believes its products require licenses under some patents but not others is a strong factor against a finding of willful infringement.

A patent license is a legal right from a patent owner that gives the license holder the right to make a product covered by the patent without getting sued for infringement under the patent.

Whether Pechiney obtained licenses from other patent owners is a relevant factor you should consider in your determination of willfulness. Seeking licenses can indicate that an accused infringer takes a realistic approach to patents and determines when it does or does not need a patent license to avoid infringement.

AUTHORITY:       *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985);
                 *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674,
                 689, 694 (D. Del. 1987), *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988).

### 14.2.1 Accused Infringer's Patents

One factor justifying a finding of non-willfulness is an accused infringer's good faith belief that it is practicing under its own patents and not infringing other patents.

Whether Pechiney applied for its own patents on its products is a relevant factor you should consider in your determination of willfulness.

AUTHORITY:     *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985); *Union Carbide Corp. v. Tarancon Corp.* 742 F. Supp. 1565, 1576 (N.D. Ga. 1990); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674, 689, 694 (D. Del. 1987), *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988).

**14.3    Notice of Infringement**

Other considerations relevant to willfulness are whether the patent owner notified the accused infringer about the alleged infringement, when that occurred, and how the accused infringer acted after receiving notice.

You can consider how vigorously Cryovac enforced its rights in the '419 patent against other potential infringers.  You can also consider the timing of when the '419 patent issued, when Pechiney began making its infringing products, whether Cryovac notified Pechiney of the infringement of the '419 patent, and when Cryovac filed suit against Pechiney for infringement of the'419 patent.

AUTHORITY:    *Americal Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459 (Fed. Cir. 1985); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674, 695 (D. Del. 1987), *aff'd* , 862 F.2d 1564 (Fed. Cir. 1988).

**14.4    Advice of Counsel**

Another consideration in your determination of whether or not Pechiney's infringement was willful is whether Pechiney obtained and followed the competent advice of a lawyer. The obtaining and following of a lawyer's advice can be evidence that infringement was not willful.

In evaluating Pechiney's reliance on the advice of a lawyer, you should consider when Pechiney obtained the advice, the quality of the information Pechiney provided to the lawyer, the competence of the lawyer's opinion, and whether or not Pechiney relied upon the advice.

Advice is competent if it was based upon a reasonable examination of the facts and law relating to validity and/or infringement issues, consistent with the standards and practices generally followed by competent lawyers. You should consider both the qualifications of the person giving the opinion and the content of the opinion.

Reliance on a lawyer's opinion was reasonable if the opinion provided the kind of analysis that would give the defendant confidence that a proper opinion had been reached. Because lawyers' opinions usually describe infringement in terms of probabilities rather than certainties, reliance on an opinion stating that a product might be found to infringe a patent would not necessarily be unreasonable.

That Pechiney's lawyer's opinion on infringement of the '419 patent turned out to be different from my determination on infringement does not make the lawyer's advice regarding the '419 patent incompetent. Whether or not the lawyer may have made errors in reaching the conclusion, or factors justifying the opinion may later have been shown to be incorrect, is not relevant to a determination that reliance on the lawyer's advice was or was not reasonable.

AUTHORITY:    1993 USDC Del. § 3.18 [generally]; 2004 IPAS Del. § 3.13 [generally]; ABA § 8 [generally]; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 n.9, 830 (Fed. Cir.

79

1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987), *aff'd* , 862 F.2d 1564 (Fed. Cir. 1988).

**14.5**    **Copying or Designing Around a Patent**

Another factor you should consider in determining willfulness is whether or not, in designing its ClearShield products, Pechiney tried to "design around" the '419 patent by designing products that Pechiney believed did not infringe the patent claims. Evidence that Pechiney attempted to avoid infringement by designing around the patent claims, even if that attempt was unsuccessful, is evidence that infringement was not willful.

The fact that Pechiney may have been wrong and that the '419 patent was infringed by Pechiney's products does not mean that Pechiney's infringement was willful. All that is required to avoid a finding of willful infringement is that Pechiney had a good faith belief that it did not infringe or that the patent was invalid, and that Pechiney's belief was reasonable under all of the circumstances.

AUTHORITY:    2004 IPAS Del. § 3.13 [generally]; ABA § 8 [modified for this case]; *Rolls-Royce, Ltd. v. GTE Valeron Corp.*, 800 F.2d 1101, 1109-10 (Fed. Cir. 1986); *State Indus. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).

**15.    Damages for Patent Infringement—in General**

If, after considering all of the evidence and the law as I have stated it, you find that claim 11 of the '419 patent was invalid, then your verdict should be for Pechiney and you need go no further in your deliberations on the patent issues.

You should not make any findings about damages in that situation.

If, however, you find that claim 11 was valid, then you must determine what damages Pechiney should pay to Cryovac for infringement. Remember, however, that you cannot award any damages to Cryovac for any infringement that occurred after the term of the '419 patent expired.

The fact that I am instructing you about damages does not mean that Cryovac is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that claim 11 was valid.

AUTHORITY:          1993 USDC Del. § 6.1 [modified]; ABA § 11.1 [generally].

**15.1    Compensatory Patent Damages**

If you find that claim 11 of the '419 patent was valid, then Cryovac is entitled to damages adequate to compensate for Pechiney's infringement.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent is entitled to damages adequate to compensate for the infringement, but these damages may not be less than what a reasonable royalty would be for the use made of the invention by the infringer. In determining damages, you must decide how much financial harm Cryovac suffered by reason of the infringement. You must decide the amount of money that Cryovac would have made had Pechiney not infringed.

Damages are only to compensate Cryovac, to put Cryovac into the financial position it would have been in if Pechiney had not infringed. You may not add anything to the amount of damages to punish Pechiney, or to set an example. Cryovac has the burden of proving each element of its damages by a preponderance of the evidence.

It is not relevant to the question of damages whether Pechiney benefited from, realized profits from, or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate Cryovac for Pechiney's infringement. Adequate compensation should return Cryovac to the position it would have occupied had there been no infringement. You must consider the amount of injury suffered by Cryovac without regard to Pechiney's gains or losses from the infringement.

AUTHORITY:         1993 USDC Del. § 6.1 [modified]; 2004 IPAS § 5.2 [modified and expanded]; ABA § 11.2 [adding last paragraph]; AIPLA Damages § 1 [generally].

**15.2    Date Damages Begin and End**

Cryovac can recover damages for infringement that occurred only after Cryovac gave notice to Pechiney of its patent rights and before the term of the '419 patent expired.

The term of the '419 patent expired on March 21, 2006. Cryovac cannot recover any damages for any infringement that occurred after that date. After a patent's term has expired, anyone can freely practice the claimed invention. You must not award any damages to Cryovac for any infringement of the '419 patent that occurred after March 21, 2006.

The date on which patent damages begin to be calculated is the date that Cryovac first gave notice to Pechiney of its claim of patent infringement. It is Cryovac's burden to prove by a preponderance of the evidence that it gave notice to Pechiney and when it gave that notice.

Cryovac can give notice in two ways. The first way is to give notice to the public in general. Cryovac can do this by placing the word "patent" or the abbreviation "PAT." with the number of the '419 patent on substantially all the products it sold that included the patented invention. This type of notice is effective from the date Cryovac began to mark substantially all of its products that use the patented invention with the patent number. If Cryovac did not mark substantially all of its products that use the patented invention with the patent number, then Cryovac did not provide notice in this way.

A second way Cryovac can provide notice of its patent is to tell Pechiney that Pechiney is infringing the '419 patent and to identify Pechiney's products that are infringing. This type of notice is effective from the time it is given.

As I said, Cryovac may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling Pechiney of its infringement. If you find that Cryovac did not do either of these before beginning this lawsuit, then Cryovac can only recover

damages for infringement that occurred after it sued Pechiney on September 20, 2004, and before the term of the patent expired on March 21, 2006.

AUTHORITY:    2004 IPAS Del. § 5.4 [generally]; ABA § 11.3 [adding second paragraph]; AIPLA Damages § 2 [modified for this case and combination with other instructions].

**15.3    Burden of Proof**

Cryovac has the burden of proving damages by a preponderance of the evidence. Cryovac is only entitled to damages that it can prove with reasonable certainty.

Reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Cryovac's right to recover. On the other hand, Cryovac is not entitled to speculative damages. That is, you should not award any amount for loss that, although possible, is remote or the result of mere conjecture or guessing. You may base your evaluation of reasonable certainty on opinion evidence.

Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

AUTHORITY:        1993 USDC Del. § 6.3 [modified for clarity]; 2004 IPAS Del. § 5.3
                  [modified for clarity].

**15.4    Two Types of Damages—Lost Profits and Reasonable Royalty**

There are two methods for computing damages for patent infringement. The first method is lost profits. The second is called a reasonable royalty. These methods are alternatives for computing damages. If you find that claim 11 of the '419 patent was valid, you must award either lost profits or a reasonable royalty for each infringing sale of these products that Pechiney made after receiving notice of the '419 patent and before the term of the '419 patent expired. You cannot, however, award Cryovac both lost profits and a reasonable royalty for the same sale. And you cannot award Cryovac either lost profits or a reasonable royalty for any sales that Pechiney made after the term of the '419 patent expired on March 21, 2006.

Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner for the nonexclusive right to practice the patent and that the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

In determining damages, you should first determine whether or not Cryovac has proven its entitlement to lost profits. If you find that Cryovac is not entitled to lost profits, then you should calculate damages based upon a reasonable royalty.

AUTHORITY:        2004 IPAS Del. § 5.5 [expanded]; ABA § 11.4 [expanded]; AIPLA
                  Damages § 3 [expanded].

**15.5    Entire Market Value Rule**

The "entire market value rule" allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product. So, if you find that Cryovac has proven by a preponderance of the evidence that customers demanded a ClearShield product because of the features recited in claim 11 of the '419 patent, you may award damages based on the value of the entire product. However, if you find that customer demand for ClearShield products was based on something other than the patented features, you should award damages based only on the value of the patented features to the customer and not the value of the entire product.

AUTHORITY:            1993 USDC Del. § 6.4 [modified]; 2004 IPAS Del. § 5.6.

**15.6    Lost Profits—in General**

I will first instruct you about lost profit damages. Simply stated, lost profit damages are the profits Cryovac lost because of the infringement. They are not the profits Pechiney actually made.

Cryovac says that it lost profits because Pechiney's infringement took away sales that Cryovac would have made. This is called lost profits due to lost sales.

Cryovac has the burden to show that it was more probable than not that but for the infringement, Cryovac would have made all the sales or a portion of the sales that Pechiney made of the ClearShield products before the term of the '419 patent expired. You must determine what the customers who purchased ClearShield products would have done if the infringement had not occurred. That is, you must determine which of Pechiney's profits from sales of ClearShield products derive from the invention recited in claim 11 of the '419 patent, and not from other features of the ClearShield products.

Remember, if you find that Pechiney proved that claim 11 of the '419 patent was invalid, there can be no damages of any kind. Also, you cannot award any damages for profits lost because of sales Pechiney made after the term of the '419 patent expired on March 21, 2006.

AUTHORITY:        2004 IPAS Del. § 5.7 [generally]; ABA § 11.5 [generally]; AIPLA
                  Damages § 4 [expanded].

**15.7    Lost Profits Due to Lost Sales**

[This instruction to be modified if jury not to consider availability of noninfringing alternatives and/or to consider lost sales of Cryovac product not covered by '419 patent.]

Lost sales are those sales, if any, that Cryovac lost because of Pechiney's infringement during the term of the '419 patent.

To prove that it lost sales, Cryovac must prove that it was more probable than not that it would have made additional sales if Pechiney had not made the infringing sales.

In order to recover lost profits damages for the sales that Pechiney made, Cryovac must prove the following:

1.    There was a demand for products with the features recited in claim 11 of the '419 patent;

2.    Cryovac had the ability to meet the market demand;

3.    No acceptable non-infringing substitutes were available; and

4.    The amount of the profit Cryovac would have made but for Pechiney's sales.

Cryovac may receive damages for lost sales only on those products that compete with Pechiney's products that I found were infringing.  Cryovac may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

AUTHORITY:        2004 IPAS Del. § 5.8 [modified]; ABA § 11.6 [expanded].

**15.7.1 Demand**

[This instruction to be modified if jury to consider sales of Cryovac product not covered by '419 patent.]

One of your considerations when deciding whether Cryovac lost sales was the demand for products having the features recited in claim 11 of the '419 patent. Demand for the patented product can be proven by significant sales of Pechiney's products containing the patented features. However, if you find that Pechiney generated new or different markets by sales efforts or by creating demand because of features other than those recited in claim 11 of the '419 patent, the sales of Pechiney's products cannot establish a demand for the patented product.

AUTHORITY:    AIPLA Damages § 6 [deleting reference to plaintiff's patented product].

91

### 15.7.2 Manufacturing and Marketing Ability

Another of your considerations when deciding whether Cryovac lost sales is whether or not Cryovac has proved that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.

Cryovac must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for Pechiney's infringement.

Cryovac also must prove that it had the capability to market and sell the additional patented products.

AUTHORITY:          ABA § 11.6.1; AIPLA Damages § 9.

### 15.7.3 Absence of Acceptable Non-infringing Substitutes

[This instruction to be deleted if jury not to consider whether acceptable noninfringing alternatives to patented product were available.]

Another consideration in determining whether or not Cryovac lost sales due to Pechiney's infringement is whether, if Pechiney's infringing products were not available, some or all of the people who bought from Pechiney would have bought a different, non-infringing product from Pechiney or from somebody else, rather than buy from Cryovac. In that regard, you should consider a product sold by one of Cryovac's licensees to be a non-infringing product.

A non-infringing substitute is a product that is or can be sold competitively in the marketplace, but which does not infringe the '419 patent. A product does not infringe a patent when it either (a) is sold based on a license under that patent, or (b) does not include all the features required by the patent. An acceptable non-infringing substitute is available if, during the damages period, a competitor, or Pechiney, had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and customers would have accepted the substitute such that Pechiney could have sold the substitute instead of making its infringing sales at the time those infringing sales were made. If you determine that Pechiney's customers would just as likely have purchased a non-infringing acceptable product, then Cryovac has not shown it lost those sales but for Pechiney's sales.

In deciding whether or not people who bought from Pechiney would have bought a non-infringing product from Pechiney or somebody else, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product. You must consider the specific purchasers of ClearShield products, not purchasers generally.

AUTHORITY:        ABA § 11.6.2 [expanded]; AIPLA Damages § 7 [modified].

93

**15.8    Amount of Lost Profits**

[Subject to Pechiney's In Limine Requests regarding lost profits.]

If Cryovac has proved that it lost profits due to infringement by Pechiney during the term of the '419 patent, then you are to determine the amount of profits that Cryovac lost. Cryovac must prove the amount of its lost profits to a reasonable probability. That is, the amount of lost profits damages should not include amounts that are merely speculative. Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

Cryovac is permitted to calculate its lost profits on lost sales by computing the lost revenue for its competing product and then subtracting from that figure the amount of additional costs and expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc. Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale. These are called fixed costs. Any costs which do not vary with increased production or scale should not be subtracted from the lost revenue when determining damages.

Remember that no lost profits are permitted for lost sales occurring after the expiration of the term of the '419 patent on March 21, 2006.

AUTHORITY:       ABA § 11.8 [first paragraph, deleting reference to defendant's records];
                 AIPLA Damages § 10 [second paragraph].

**15.9    Reasonable Royalty**

If you find that Cryovac has proved lost profits as a result of Pechiney's infringing sales, then the damages award, if any, to Cryovac should be those lost profits.

If, however, you find that claim 11 of the '419 patent was valid but that Cryovac has not proved that it should recover lost profits, or has only proved lost profits for some of Pechiney's infringing sales, then for those infringing sales for which you do not award lost profits, you should determine the amount Cryovac has proved to be a reasonable royalty.

A reasonable royalty is the minimum permissible measure of damages set by the patent laws. It is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty. You may not award a reasonable royalty for any sales made after the term of the '419 patent expired on March 21, 2006.

AUTHORITY:        1993 USDC Del. § 6.10 [generally]; 2004 IPAS Del. § 5.14 [generally]; ABA § 11.9 [expanded]; AIPLA Damages § 13 [generally].

### 15.9.1  What Is a Reasonable Royalty?

A royalty is an amount of money that someone pays a patent owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.  It is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Cryovac and Pechiney, with both parties operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

You are to decide what a reasonable royalty would be based on circumstances as of the time just before Pechiney began selling the infringing products.  You should assume that Pechiney and Cryovac knew all pertinent information at the time of the hypothetical negotiation. You should also assume that Cryovac was willing to grant Pechiney a license to sell the patented invention and that Pechiney was willing to pay for that license.  You may consider in your determination of reasonable royalty damages any actual profits by Pechiney after that time, but only if you determine that those profits were foreseeable at the time the infringement began.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Pechiney's use of the patented invention, including the opinion testimony of experts.

AUTHORITY:    1993 USDC Del. § 6.10 [generally]; 2004 IPAS Del. § 5.14 [generally]; ABA § 11.9.1 [generally]; AIPLA Damages §§ 14 [generally], 16 [generally].

### 15.9.2 Factors for Determining a Reasonable Royalty

In deciding the value of a reasonable royalty, you may consider the factors that Cryovac and Pechiney would have considered in setting the amount Pechiney should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

[NOTE: DELETE FACTORS NOT SUPPORTED BY EVIDENCE IN THE CASE]

1. Royalties other licensees paid to Cryovac under the '419 patent.

2. Royalties Pechiney or others paid for the use of other patents comparable to the '419 patent.

3. Whether Cryovac had a policy of licensing or not licensing the '419 patent or other patents.

4. Whether Cryovac and Pechiney are competitors.

5. Whether being able to use the patented invention helps in making sales of other products or services.

6. The profitability of the products made using the '419 patent, and whether they were commercially successful or popular.

7. The advantages and benefits of using the patented invention over products not claimed in the '419 patent.

8. The extent of Pechiney's use of the patented invention and the value of that use to Pechiney.

9. The portion or percentage of the profit or selling price that is customarily paid in the plastic bag industry for use of patented inventions comparable to the inventions claimed in the '419 patent.

10. The portion of the profit from sales of ClearShield products that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements, the manufacturing process, business risks, or features or improvements developed by Pechiney.

11. Expert opinions as to what would be a reasonable royalty.

12. Other economic factors that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

AUTHORITY:     1993 USDC Del. § 6.11 [generally]; 2004 IPAS Del. § 5.14.1 [generally]; ABA § 11.9.1 [modified for clarity]; AIPLA Damages § 15 [generally].

### 15.10   Total Patent Infringement Damages

After making your findings concerning lost profits damages and reasonable royalty damages for patent infringement, if any, you should arrive at a total damages amount to award to Cryovac for patent infringement.  This amount should include the amount of lost profits damages for patent infringement that Cryovac has proved.  It also should include the reasonable royalty damages for that portion of the patent infringement for which Cryovac did not prove lost profits damages.

You should not award both lost profits and a reasonable royalty for the same sale of an infringing product by Pechiney.

AUTHORITY:     ABA § 11.10 [modified by adding last paragraph].

**15.11  Closing Statement--Patent Infringement Damages**

In determining the issue of damages for patent infringement, remember that the law does not permit an award of a greater sum than the monetary loss which Cryovac actually suffered as a result of Pechiney's alleged infringement.  The law also does not permit an award of damages for any patent infringement occurring after the expiration of the term of the patent.  If, following my instructions, you find that Cryovac is entitled to damages, in fixing the amount of those damages you may not include or add to an otherwise fair award any sum for purposes of punishing Pechiney or to set an example.

You should also not include any interest amount in your damages calculation.  It is my job to award interest.  You should not consider interest in any way.

Remember that the fact that I have instructed you regarding damages should not be construed as suggesting which party should prevail in this case or that I have any opinion one way or the other.  I am giving you these instructions on damages only to guide you in the event that the evidence leads you to find in favor of Cryovac.

AUTHORITY:     1993 USDC Del. §§ 6.12 [modified for clarity and by adding paragraph on interest], 6.13 [modified for clarity]; 2004 IPAS Del. §§ 5.15 [modified], 5.16 [generally].

**16.     Tortious Interference with a Contractual Relationship - Generally**

I will now instruct you on the tortious interference claims in this case.

In addition to its claims against Pechiney for patent infringement, Cryovac also contends that Pechiney interfered with two contracts that Cryovac had with National Beef.

The law recognizes that one who intentionally and improperly causes a third party to breach a contract with another party is responsible to that party for the loss suffered as a result of the third party's breach of contract.

Cryovac alleges that Pechiney tortiously interfered with two separate packaging contracts that existed between Cryovac and National Beef, one dated March 2003 and one dated January 2004, both of which obligated National Beef to purchase the goods identified in the contracts from Cryovac.

Pechiney contends that Cryovac and National Beef were not operating under a binding and enforceable contract. Pechiney also contends that even if Cryovac and National Beef had had a valid contract, Pechiney had no knowledge of this contract. Pechiney further contends that Pechiney's conduct in selling ClearShield products to National Beef was proper.

AUTHORITY:     *See e.g.*, American Bar Association, *Model Jury Instructions: Business Torts Litigation*, at 8 (4th ed. 2005).

**16.1    Tortious Interference with a Contractual Relationship --Elements of Liability**

For Cryovac to recover on this claim against Pechiney, Cryovac must prove, by a preponderance of the evidence, that each of the following six elements have been met:

1.    At the time of Pechiney's acts, there was at least one binding contract between Cryovac and National Beef, dated March 2003 and/or January 2004;

2.    Pechiney either knew or, under the circumstances, should have known of the existence of a binding contract between Cryovac and National Beef;

3.    Pechiney intentionally interfered with a binding contract between Cryovac and National Beef;

4.    There was no justification for Pechiney's conduct;

5.    Pechiney's allegedly unjustified conduct in willfully and maliciously infringing the Cryovac patent was the cause of National Beef's breach of a binding contract with Cryovac; and

6.    Cryovac suffered injury as a result of Pechiney's conduct.

I will now explain each of these elements.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.1 (Inducing Breach of Contract: Elements of Liability: Generally), at 8 (4th ed. 2005) [modified]; *See Acorn USA Holdings LLC v. Premark Int'l, Inc.*, 2003 WL 22861168, *3 (Del. Super. Ct. July 16, 2003) (stating that tortious interference with contract requires "a subsequent breach caused by [defendant's] wrongful conduct"); *Dangeles v. Muhlenfeld*, 548 N.E.2d 45 (Ill. Ct. App. 1989) (same); *Schott v. Beussink*, 950 S.W.2d 621, 628-29 (Mo. Ct. App. 1997) ("A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach of contract.").

**16.2    Requirement of a Contract**

One of the elements Cryovac must prove by a preponderance of the evidence to prevail on its tortious interference with contract claim is that Cryovac was party to a binding contract with National Beef that was in effect at the time of Pechiney's alleged interference.

A contract is a legally binding agreement between two or more parties. A contract for the sale of goods exists if the parties have evidenced an intent to be bound and have reached agreement on at least the quantity of goods the buyer agrees to purchase from the seller or that the buyer is required to buy all of its requirements of the goods identified in the contract exclusively from the seller.

Whether a binding contract exists, and the terms of that contract, may be ascertained from the language used in the alleged contract, the parties' course of performance, their course of dealing, and applicable usages of the trade, in that order. I will explain each of these terms to you in a moment, as well as how you are to apply them.


AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.1.a (Requirement of a Contract) at 10 (4th ed. 2005) [modified]; UCC § 2-201, cmt. 1; UCC § 2-306; UCC § 1-303.

**16.3    Use of Extrinsic Evidence to Construe Contract**

A course of performance or course of dealing between the parties or usage of trade may be used to ascertain the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement. A course of performance is also relevant to show a waiver or modification of any term inconsistent with the course of performance.

AUTHORITY:        UCC, Section 1-303(e) and (f).

**16.4    Definitions of Types of Extrinsic Evidence**

A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

A "usage of trade" is any practice or method of dealing having such regularity of observance in a place or trade as to justify an expectation that it will be observed with respect to the transaction in question.

AUTHORITY:        UCC, Section 1-303(a), (b) and (c).

**16.5    Rules for Applying Extrinsic Evidence**

Unless you find from the parties' course of performance that they have waived or agreed to modify an express term of their written contract, then you must, whenever reasonable, construe the express terms of the written agreement and any applicable course of performance, course of dealing, and usage of trade as consistent with each other. Where there is a conflict between the parties' express terms and the other types of extrinsic evidence, then you must follow the parties' express written terms, unless you find that those terms have been modified or waived by the parties' course of performance. Where the parties' express terms and course of performance are consistent, then you must apply those in preference to their course of dealing and usage of trade. Finally, where the parties' express terms, course of performance and course of dealing are consistent, then you must apply those in preference to the usage of trade.

AUTHORITY:        UCC, Section 1-303(e) and (f).

**16.6    Requirement of Knowledge**

In order to establish tortious interference with contract, Cryovac must also prove by a preponderance of the evidence that Pechiney knew or had reason to know of the existence of a binding contract between Cryovac and National Beef.  The requirement of knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of a binding contractual relationship between Cryovac and National Beef.

If you find that, even though there was a valid and binding contract between Cryovac and National Beef, Pechiney did not know of its existence, then you must conclude that Pechiney did not tortiously interfere with that contract.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.2 (Requirement of Knowledge) at 15 (4th ed. 2005); *DP-Tek, Inc. v. AT&T Global Info. Solutions Co.*, 891 F. Supp. 1510, 1519-20 (D. Kan. 1995); *Preston v. Preston*, 823 S.W.2d 48, 49-50 (Mo. Ct. App. 1991).

**16.7     Requirement of Intent**

Cryovac must show by a preponderance of the evidence that Pechiney intended to cause National Beef to breach a binding contract with Cryovac. Conduct is intentional if done deliberately, with the purpose of causing National Beef to breach a binding contract with Cryovac.

If you find that Pechiney did not intend to cause National Beef to breach a binding contract with Cryovac, then you must find for Pechiney.

AUTHORITY:     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a at 17 (4th ed. 2005).

**16.8     Requirement of "Malice"**

To find for Cryovac, you must find that Pechiney acted with malice.  Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse—that is, the willful violation of a known right.  In proving malice, it is not necessary for Cryovac to prove that Pechiney acted with hatred, ill will, or spite.

On the other hand, if you find that Pechiney had a proper purpose for its conduct, you must find for Pechiney on this claim.

AUTHORITY:     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.d (4th ed. 2004).[modified]; *L & M Enter., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284 (10th Cir. 2000).

**16.9    Proper or Improper Interference Defined**

Cryovac must also prove by a preponderance of the evidence that Pechiney's conduct was improper. The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.    the nature of Pechiney's conduct, including whether Pechiney willfully and maliciously infringed Cryovac's patent;

2.    Pechiney's motive;

3.    Cryovac's interests with which Pechiney interfered;

4.    the interest that Pechiney sought to advance;

5.    the social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6.    the proximity or remoteness of Pechiney's conduct to the interference claimed by Cryovac; and

7.    the relationship among Cryovac, National Beef, and Pechiney.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35-37 (4th ed. 2005); *See* Restatement (Second) of Torts, § 767.

**16.10   Pechiney's Motive**

Should you find that Pechiney acted solely to injury Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interests of Pechiney's own), then you must find that Pechiney's conduct was improper, regardless of any justification Pechiney may claim.  Some ill will on the part of Pechiney is permissible, providing Pechiney acted in substantial part with a proper purpose in mind.

AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.4. (4th ed. 2005).

**16.11  Requirement That the Breach Be Proximately Caused by the Defendant's Conduct**

If you find that Cryovac has proved, by a preponderance of the evidence, that Pechiney

engaged in improper conduct by willfully and maliciously infringing Cryovac's patent, you must

then determine whether that improper conduct was the reason National Beef failed to perform the

alleged contract with Cryovac as agreed.  This means that, before you can decide in favor of

Cryovac, you must find by a preponderance of the evidence that, but for willful and malicious

infringement by Pechiney of Cryovac's patent, the binding contract that was not performed

would otherwise have been performed.

AUTHORITY:        American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.c (Causal Relationship: Generally) at 26 (4th ed. 2005) [modified]; *See Acorn USA Holdings LLC v. Premark Int'l, Inc.,* 2003 WL 22861168, *3 (Del. Super. Ct. July 16, 2003) (stating that tortious interference with contract requires "a subsequent breach caused by [defendant's] wrongful conduct"); *Dangeles v. Muhlenfeld,* 548 N.E.2d 45 (Ill. Ct. App. 1989) (same); *Schott v. Beussink,* 950 S.W.2d 621, 628-29 (Mo. Ct. App. 1997) ("A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach of contract.").

**16.12   Breach Defined**

Breach of contract means the failure of a party to a contract, in the absence of legal excuse or impossibility of performance, to perform any promise that forms the whole or a material part of the contract.

AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.a at 24 (4th ed. 2005)[modified].

**16.13  Breach Required**

For Cryovac to prevail on its claim against Pechiney, you must find that the contract in question was breached.  This means you must find that National Beef failed to perform as agreed under the contract.

In this case, Cryovac contends that its contract with National Beef required National Beef to buy all of its flexible packaging products from Cryovac and that National Beef's purchase of ClearShield products from Pechiney was a breach by National Beef of this contract.

If you find that National Beef was allowed to buy products from someone other than Cryovac, then your verdict must be for Pechiney.

AUTHORITY:       American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.b at 25 (4th ed. 2005)[modified].

114

**16.14    Proximate Cause**

If you find that Cryovac did suffer the losses claimed, and that Pechiney willfully and maliciously infringed Cryovac's '419 patent, you must then determine whether Pechiney's wrongful conduct was the proximate cause of Cryovac's losses.  In this regard, Pechiney's infringement will be considered to be the proximate cause of Cryovac's losses if the infringement was a substantial factor in causing those losses.  It need not be the only cause.

Conduct will be a substantial factor in causing loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss, considering a number of other contributing factors, such as whether Pechiney's infringement created a condition or chain of events that was continuous and active up to the time of the damage to Cryovac, and the lapse of time between Pechiney's infringement and the damage to Cryovac.

AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.d at 24 (4th ed. 2005)[modified].

**17.    Damages for Tortious Interference with Contract**

If you find that Cryovac has proven that Pechiney more probably than not interfered with an existing contract between Cryovac and National Beef by proving each and every element of the tortious interference claims Cryovac is asserting, and that Pechiney's actions were not justified, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac sustained from National Beef's breach of its contract.

Cryovac has the burden of proving to a reasonable certainty any damages it suffered. Additionally, Cryovac is not permitted to recover for any damages that could reasonably have been avoided or for amounts that could reasonably have been lessened.

AUTHORITY:        American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.1 at 46-47 (4th ed. 2005)[modified]; ABA Torts Litigation § 6.II.A.2 at 243-244.

**17.1    Recoverable Elements of Damages for Interference with Contract**

In determining the amount of damages, if any, for Pechiney's interference with the contract between Cryovac and National Beef, you may consider whether Cryovac suffered any measurable loss of profits by reason of Pechiney's conduct. You should be guided by the rule that Cryovac is entitled to any profits that Cryovac would, with reasonable certainty, have enjoyed, were it not for the breach of its contract by National Beef.

For lost profits to be recovered, there must be a reasonable basis for computing them. In making these calculations, you may consider Cryovac's past earnings and losses, based on National Beef's actual purchases and Cryovac's actual expenses. However, you should consider those past profits and losses in light of the uncertainties and contingencies by which they probably would have been affected. For example, you may take into consideration future uncertainties such as increased competition and increased operating costs. You should also consider all of the other evidence concerning National Beef's actual current packaging requirements, such as National Beef's current purchases of packaging products from all sources, and any normal increase or decrease in business that might have been reasonably expected in the light of past developments and existing conditions. Losses and profits that are mere guesses, speculative, remote, or uncertain should not be considered.

In calculating the amount of profits Cryovac may have lost, you should subtract any costs for expenses that Cryovac saved by not having to perform under its contract with National Beef. Cryovac is permitted to calculate its lost profits on lost sales by computing the lost revenue from the contract with the National Beef and then subtracting from that figure the amount of additional costs and expenses that it would have incurred in making those lost sales, including but not limited to the cost of the goods, sales costs, packaging, shipping, etc.

In addition to lost profits, Cryovac is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce its damages and to recover business it lost due to Pechiney's wrongful conduct.

Whether or not Pechiney actually anticipated or contemplated that these losses would occur is not a relevant factor for you to consider.

If you find that Cryovac is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that Cryovac has sustained any substantial damages, then you may return a verdict for Cryovac on this claim and fix the amount of the damages in a nominal sum such as one dollar. Such a verdict would determine the rights of the parties, and I can then issue orders directing their future conduct. Unlike damages for patent infringement, there is no minimum amount of damages that must be awarded if you find that Pechiney tortiously interfered with a contract between Cryovac and National Beef. Your verdict on the amount of damages for tortious interference is a separate consideration from your verdict on liability.

AUTHORITY:     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.3 (4th ed. 2004) [modified]; American Bar Association, *Model Jury Instructions: Business Torts Litigation*, §§ 1.5.3, 2.10[2]  (3d ed. 1996) [modified]; ABA Torts Litigation § 6.II.A.3 [generally].

**17.2   Duty to Mitigate Damages**

The injured party must make a reasonable effort, whether successful or not, to minimize the losses it suffers as a result of the defendant's conduct. To mitigate a loss means to take steps to reduce the loss. If an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have reduced it under the same circumstances. This reduction, however, must be measured with reasonable probability.

AUTHORITY:        Delaware Pattern Jury Instructions, Civil § 22.26 (2000) [modified]; ABA Torts Litigation § 6.II.A.2 at 243-244.

119

**18.    Tortious Interference with Prospective Contractual Relations**

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference, and is entitled to the protection of organized society, through the courts, whenever that right is unlawfully invaded.

In this case, if you find that Cryovac did not have a binding contract with National Beef, Cryovac seeks damages from Pechiney for alleged interference with Cryovac's prospective contractual relations with National Beef. That is, Cryovac contends that, because of Pechiney's wrongful conduct, Cryovac was prevented from entering into a binding four-year requirements contract for various food packaging products with National Beef as of January 14, 2004, and as a result Cryovac suffered monetary loss.

Pechiney contends that Cryovac did not have a reasonable expectation that it would have a binding four-year contract with National Beef that would prevent National Beef from buying goods from Pechiney, that Pechiney had no knowledge or reason to know of any such expectation, that Pechiney did not engage in any wrongful conduct in negotiating with National Beef for its business, and that Pechiney's conduct was protected by the competitive privilege.

AUTHORITY:        American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.1 (4th ed. 2005).

**18.1    Elements of Liability**

To find liability for interference with prospective advantage, you, the jury, must find that Cryovac has proven, by a preponderance of the evidence, each of the following:

1.    Cryovac had a reasonable expectation that it would have secured a binding four-year requirements contract with National Beef in the future;

2.    Pechiney, at the time the acts complained of were committed, knew of this expected contractual relationship between Cryovac and National Beef, or under the circumstances should have known of it;

3.    Pechiney acted intentionally to prevent Cryovac from getting a binding four-year requirements contract with National Beef;

4.    Pechiney's conduct was improper and unjustified under the factors I will instruct you to consider;

5.    Pechiney's willful and malicious infringement of the '419 patent was the cause of Cryovac not securing a binding four-year requirements contract with National Beef; and

6.    As a direct and proximate result of Pechiney's infringement of the '419 patent, Cryovac suffered damage.

If you find that Cryovac has proved each and every one of these elements by a preponderance of the evidence, then you must consider the question of the amount of money damages, if any, to award to Cryovac under instructions I will give you.

If you find that Cryovac has failed to prove even one of these elements, then you must find for Pechiney and against Cryovac.

Authority:  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.2 (4th ed. 2005) [modified]; ABA Torts Litigation § 2.II [generally].

**18.1    Expectancy Requirement**

Cryovac contends that at the time of Pechiney's conduct, there existed an expectation of a binding four-year requirements contract between Cryovac and National Beef. You must first determine whether such an expectancy existed.

In determining this question, the expectancy need not be evidenced by a contract. It is sufficient if you find from the evidence that either prior dealings or a prior course of conduct between Cryovac and National Beef would have created a reasonable expectation of a future binding four-year requirements contract between Cryovac and National Beef. Cryovac must show this expected contract with some degree of specificity, such that it was a realistic expectation, but it need not be shown with absolute certainty.

More than a mere hope or optimism is needed. Although the law does not require a certainty, it does require a reasonable likelihood or probability of economic benefit from a valid prospective contract between Cryovac and National Beef.

For you to find for Cryovac on this claim, Cryovac must have proven by a preponderance of the evidence that there was a reasonable probability that it would have had a binding four-year requirements contract with National Beef under which National Beef would have purchased all of its flexible packaging products from Cryovac and none from Pechiney.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.3.1 (4th ed. 2005) [modified]; ABA Torts Litigation § 2.II.A [generally].

**18.2    Knowledge Requirement**

In order for you to find for Cryovac, you must also find that Pechiney knew or had reason to know that Cryovac had a reasonable expectation of entering into a binding four-year requirements contract with National Beef. Knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of Cryovac's expectancy of a binding four-year requirements contract with National Beef.

If you find that Pechiney did not or could not have known of Cryovac's expectation of a binding four-year requirements contract with National Beef, your verdict must be for Pechiney.

AUTHORITY:        American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.4 (Knowledge) at 74 (4th ed. 2005).

**18.3    Intentional Interference**

Cryovac must show by a preponderance of the evidence that Pechiney intended to prevent Cryovac from entering into a binding four-year requirements contract with National Beef. Conduct is intentional if done deliberately, with the purpose of preventing Cryovac from entering into a binding four-year requirements contract with National Beef. Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

In making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of evidence to the contrary, you may infer from Pechiney's conduct, or lack of conduct, that Pechiney intended the natural and probable consequences of its actions.

If you find that Pechiney's conduct was not intentional, because it was not done deliberately or knowingly for the purpose of preventing Cryovac from entering into a binding four-year requirements contract with National Beef, then you must find for Pechiney.

AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.6 (Intentional Interference) at 77-81 (4th ed. 2005).

**18.4    Requirement of "Malice"**

To find for Cryovac, you must also find that Pechiney acted with malice. Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse -- that is, the willful violation of a known right. Should you find that Pechiney acted solely to injure Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interest of Pechiney's own), then you must find for Cryovac, regardless of any justification Pechiney may claim. Some ill will on the part of Pechiney is permissible, providing that Pechiney acted in substantial part with a proper purpose in mind.

AUTHORITY:    ABA Torts §§ 1.03[4][d] (modified), 1.04[3] (modified); *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284 (10th Cir. 2000).

**18.5    Proper or Improper Interference Defined**

Cryovac must next prove by a preponderance of the evidence that Pechiney's conduct was improper. The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case and a balancing of the following factors:

1.    the nature of Pechiney's conduct, including whether Pechiney willfully and maliciously violated Cryovac's patents;

2.    Pechiney's motive;

3.    Cryovac's interests with which Pechiney interfered;

4.    the interest that Pechiney sought to advance;

5.    the social interests in protecting Pechiney's freedom of action and Cryovac's interests;

6.    the proximity or remoteness of Pechiney's conduct to the interference claimed by Cryovac;

7.    the relationship among Cryovac, National Beef and Pechiney.

AUTHORITY:        Restatement (Second) Torts, § 767.

### 18.6    Pechiney's Motive

Should you find that Pechiney acted solely to injury Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interests of Pechiney's own), then you must find that Pechiney's conduct was improper, regardless of any justification Pechiney may claim.  Some ill will on the part of Pechiney is permissible, providing Pechiney acted in substantial part with a proper purpose in mind.

AUTHORITY:        American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.4. (4th ed. 2005).

**18.7    Causation Requirement**

You must determine whether Pechiney was responsible for causing National Beef not to enter into a binding four-year requirements contract with Cryovac.

In other words, you must decide whether, except for Pechiney's infringement of the '419 patent, National Beef was reasonably certain to have entered into a binding four-year requirements contract with Cryovac.

If you find that National Beef more likely than not would not have entered into a binding four-year requirements contract with Cryovac even if Pechiney had not infringed the '419 patent, your verdict should be for Pechiney.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.5.1 (4th ed. 2005); *See Commerce Nat'l Ins. Servs., Inc. v. Buchler*, 120 Fed. Appx. 414, 418-19, 2004 WL 2786315 (3d Cir. 2004) (holding that "under Delaware law, a plaintiff must show …intentional, *wrongful* interference which induces or causes a breach or termination of the relationship or expectancy") (citation omitted) (unpublished opinion); *L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 45 F. Supp. 2d 879, 886-88 (D. Kan. 1999) (finding that plaintiff could not prevail on a tortious interference with prospective business advantage where wrongful conduct did not cause the loss of the plaintiff's prospective business relationship).

**18.8    Competition as Proper or Improper Interference**

Pechiney asserts that its conduct was proper because it occurred during the course of competition between Pechiney and Cryovac. The law recognizes that a person is justified in causing a third party not to enter into a contract with the person's competition as long as the conduct relates to competition between the two competitors and the person is acting, at least in part, to advance his or her own commercial interests in such competition, and as long as the person does not use wrongful means to compete.

You must first determine, then, whether Pechiney's conduct relates to competition between Pechiney and Cryovac for National Beef's business. If you find that it does, then you must determine whether Pechiney's purpose was, at least in part, to advance Pechiney's own commercial interest in obtaining National Beef's business.

For example, if you find that Pechiney was seeking to acquire the business diverted from Cryovac for itself, then as long as Pechiney's conduct was at least in part directed to that end, the fact that you may find it was also motivated by other reasons does not make it improper in the eyes of the law.

If you find that Pechiney's conduct was motivated solely by bad faith or ill will, and not at all for the advancement of competitive interests, you must find that the conduct was not justified and that it was improper.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.9.2 (4th ed. 2005); Restatement (Second) Torts § 768; *Weldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.,* 992 F.2d 59 (4th Cir. 1993).

**18.9    Damage to Plaintiff Proximately Resulting from Conduct**

You must also consider whether Pechiney's infringement of the '419 patent was the

proximate, or direct, cause of damages to Cryovac.

If you find that Pechiney's infringement of the '419 patent was not the proximate cause

of damage to Cryovac, your verdict must be for Pechiney.

AUTHORITY:          American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.8[1]- [3] (3d ed. 1996) modified]; ABA Torts Litigation § 2.II.D [generally].

**19.     Damages for Tortious Interference with Prospective Contractual Relations**

Now I will turn to the question of damages and what can be considered in determining an award of money in this case for Cryovac's claim against Pechiney of tortious interference with a prospective contract. By including damages in these instructions, I do not wish to suggest or imply anything about the issue of liability or about whether any damages have been proved in this case.

If you find that Pechiney did not interfere with an existing contract between Cryovac and National Beef, but that it did interfere with a reasonable expectancy of a binding four-year requirements contract between Cryovac and National Beef, then it is my duty to tell you what damages Cryovac would be entitled to recover. By including these instructions to you on damages, I do not wish to suggest or imply anything about the issue of liability or about whether any damages have been proved in this case, or that I have any opinion one way or the other.

The damages amount for the claim of tortious interference with a prospective contract will be the sum that you believe, from the evidence, will fairly and reasonably compensate Cryovac for any damage Cryovac has suffered by reason of the acts complained of and for the anticipated profits of which Cryovac was deprived, provided they are of such a nature to be beyond the speculative stage.

In order for Cryovac to recover any damages on this claim, you must find that Cryovac has proven each of the following requirements:

1.     Pechiney's actions were a direct cause of the damages Cryovac seeks;

2.     Cryovac has proven the existence of damages with a reasonable certainty; and

3.     Cryovac could not reasonably have avoided or lessened the damages.

AUTHORITY:     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.10[1]- [2] [modified] (3d ed. 1996); ABA Torts Litigation § 6.II.A.2 [generally].

**19.1    Compensatory Damages**

In determining the damages, if any, to award to Cryovac if you find that Pechiney interfered with a prospective binding four-year requirements contract between Cryovac and National Beef, you may consider whether Cryovac suffered any measurable loss of profits as a result of Pechiney's conduct.  In this case, Cryovac claims that its business was affected because of a loss of profits it would have earned but for Pechiney's conduct.

For lost profits to be recovered, there must be a reasonable basis for computing them.  In making these calculations, you may consider Cryovac's past earnings and losses, based on National Beef's actual purchases and Cryovac's actual expenses.  However, you should consider those past profits and losses in light of the uncertainties and contingencies by which they probably would have been affected.  For example, you may take into consideration future uncertainties such as increased competition and increased operating costs. You should also consider all of the other evidence concerning National Beef's actual current packaging requirements, such as National Beef's current purchases of packaging products from all sources, and any normal increase or decrease in business that might have been reasonably expected in the light of past developments and existing conditions. Losses and profits that are mere guesses, speculative, remote, or uncertain should not be considered.

Damages, if any, should be restricted to such losses, if any, as were proved by facts from which their existence is logically and legally inferable.  The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, but not those that are contingent and uncertain or mere speculation.

Although a qualified person may make estimates concerning probable profits or losses of a going business, you should, in weighing all such evidence, take into consideration, among other things:

1.    The truth or falsity of the basis of such estimates;

2.    The knowledge or lack of knowledge of the witness of all of the conditions on which the estimate is based;

3.    Whether the facts assumed as a basis for an estimate rest upon actual accounts and records kept in the ordinary course of business rather than in uncertain recollections; and

4.    The witness's knowledge in the particular line of business about which he or she testified.

From all of the evidence in this case bearing on the subject, you should determine for yourselves the probability or improbability, and the amount, of profits Cryovac anticipated.

Difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you, the jury, should use your best judgment in determining the amount of such damages, if any, based upon the evidence. Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

That Pechiney did not actually anticipate or contemplate that these losses would occur is not a relevant factor for you to consider.

If you find that Cryovac is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that Cryovac has sustained any substantial damages, then you may return a verdict for Cryovac on this claim and fix the amount of the compensatory damages in a nominal sum such as one dollar. Such a verdict would

determine the rights of the parties, and I can then issue orders directing their future conduct. Unlike damages for patent infringement, there is no minimum amount of damages that must be awarded if you find that Pechiney tortiously interfered with a prospective contract between Cryovac and National Beef. Your verdict on the amount of damages for tortious interference is a separate consideration from your verdict on liability.

AUTHORITY:    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.10[2] (3d ed. 1996)[modified].

**20.     Deliberations and Verdict**

I will now end by explaining some things about your deliberations in the jury room and about your possible verdicts.

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges--judges of the facts. Your sole interest is to seek the truth from the evidence in the case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

136

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other, about this case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

AUTHORITY:        Uniform Del.

**20.1    Duty to Deliberate**

You are now free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment.  Do not ever change your mind just because other jurors see things differently, or just to get the case over with.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

AUTHORITY:          1993 USDC Del. § 7.3 [modified for clarity]; 2004 IPAS Del. § 6.3
                    [modified by adding last sentence of first paragraph].

**20.2    Court Has No Opinion**

I want to finish by cautioning you again that nothing I have said or done during this trial, nothing about these instructions, and nothing in the form of the verdict was meant to suggest or convey to you what I think your verdict should be or to influence your decision in favor of either party. What the verdict shall be is the sole and exclusive duty and responsibility of the jury. You must decide the case yourselves based solely on the evidence presented.

AUTHORITY:          Uniform Del.; 1993 USDC Del. §§ 7.2 [modified for clarity and combination with other instructions], 7.4 [modified for clarity]; 2004 IPAS Del. § 6.4 [modified for clarity].

Respectfully submitted,

CONNOLLY BOVE LODGE & HUTZ


/s/ N. Richard Powers
N. Richard Powers (#494)
Rudolf E. Hutz (#484)
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Tel.: (302) 888-6266

Donald R. Cassling (Admitted *pro hac vice*)
Steven R. Trybus (Admitted *pro hac vice*)
Shelley Smith (Admitted *pro hac vice*)
Patrick L. Patras (Admitted *pro hac vice*)
Brian P. O'Donnell (Admitted *pro hac vice*)
Gregory D. Bonifield
Joseph A. Schouten
Sara E. Tonnies
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
Tel.: (312) 222-9350

*Attorneys for Defendant/Counter-Plaintiff*
*Pechiney Plastic Packaging, Inc.*

Dated:  May 10, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2006 I electronically filed a copy of the

foregoing with the Clerk of the Court using CM/ECF and served the following individuals in the

manner indicated:

**BY ELECTRONIC MAIL
AND HAND DELIVERY**
John W. Shaw, Esquire
Karen E. Keller, Esquire
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE  19801

**BY ELECTRONIC MAIL
AND FEDERAL EXPRESS**

Ford F. Farabow, Jr., Esquire
Mark J. Feldstein, Esquire
Finnegan, Henderson, Farabow,
  Garrett & Dunner, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001

/s/ N. Richard Powers
N. Richard Powers