REDACTED -- Public Version, filed 5/15/06

# TAB A

**REDACTED -- Public Version, filed 5/15/06**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CRYOVAC, INC., )
          Plaintiff/Counter-Defendant )
)
      v. )
) Civil Action No. 04-1278-KAJ
PECHINEY PLASTIC PACKAGING, INC. )
) **CONFIDENTIAL –**
          Defendant/Counter-Plaintiff. ) **FILED UNDER SEAL**
)
)

## CRYOVAC'S PROPOSED JURY INSTRUCTIONS

REDACTED -- Public Version, filed 5/15/06

## TABLE OF CONTENTS

I.  CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS ........................... 1

    A.  INTRODUCTION ................................................................................. 1

    B.  PATENT LAW .................................................................................... 2

    C.  GLOSSARY OF PATENT TERMS ....................................................... 5

    D.  PATENT CLAIMS -- GENERALLY .................................................... 6

    E.  DUTIES AS JURORS ......................................................................... 7

    F.  EVIDENCE ......................................................................................... 8

    G.  WITNESSES - CONFLICTS IN TESTIMONY ................................... 10

    H.  EXPERT WITNESSES ...................................................................... 12

    I.  DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................... 13

    J.  BURDENS OF PROOF ..................................................................... 14

    K.  NATURE OF THE CASE .................................................................. 15

    L.  UNCONTESTED FACTS .................................................................. 20

    M.  GENERAL INSTRUCTIONS ............................................................. 22

    N.  CONDUCT OF THE JURY ............................................................... 23

    O.  INSTRUCTIONS ON TAKING NOTES ............................................. 24

    P.  LOGISTICAL INFORMATION  [AGREED] ...................................... 26

    Q.  COURSE OF THE TRIAL  [AGREED] .............................................. 28

II.  CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS ......................................... 29

    1.  GENERAL INSTRUCTIONS ............................................................. 29

        1.1  INTRODUCTION & JURORS' DUTIES  [AGREED] .......................... 29

        1.2  DUTIES AS JURORS ........................................................... 30

1.3    EVIDENCE DEFINED  [AGREED] ........................................................ 32

1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE  [AGREED] ............ 34

1.5    CONSIDERATION OF EVIDENCE  [AGREED] ................................. 35

1.6    STATEMENTS OF COUNSEL  [AGREED] ......................................... 36

1.7    CREDIBILITY OF WITNESSES  [AGREED] ...................................... 37

1.8    EXPERT TESTIMONY  [AGREED] ...................................................... 39

1.9    NUMBER OF WITNESSES  [AGREED] ............................................... 40

1.10   BURDENS OF PROOF ........................................................................... 41

2.    PATENT INSTRUCTIONS -- WILLFUL INFRINGEMENT ........................... 42

2.1    WILLFUL INFRINGEMENT .................................................................. 42

2.2    WILLFUL INFRINGEMENT -- TIMING OF ADVICE ....................... 45

2.3    WILLFUL INFRINGEMENT -- COMPETENCY OF ADVICE ........... 46

2.4    WILLFUL INFRINGEMENT -- GOOD FAITH RELIANCE ............... 48

3.    TORTIOUS INTERFERENCE WITH CONTRACT ......................................... 49

3.1    GENERALLY ........................................................................................... 49

3.2    ELEMENTS OF LIABILITY ................................................................... 50

3.3    EXISTENCE OF A CONTRACT BETWEEN CRYOVAC AND
       NATIONAL BEEF ................................................................................... 51

3.3.1  INTENT TO ENTER INTO A CONTRACT ......................................... 53

3.3.2  THE TEST FOR A REQUIREMENTS CONTRACT ............................ 54

3.3.3  COURSE OF DEALING ......................................................................... 56

3.3.4  COURSE OF PERFORMANCE ............................................................. 57

3.3.5  TRADE USAGES IN INDUSTRY ......................................................... 58

3.3.6  CAUTIONARY INSTRUCTION ........................................................... 59

3.4    KNOWLEDGE ................................................................ 61

3.5    INTENTIONAL CONDUCT BY PECHINEY THAT CAUSED
       BREACH OF CONTRACT BETWEEN CRYOVAC AND
       NATIONAL BEEF ........................................................... 62

3.5.1  INTENT ....................................................................... 62

3.5.2  INTENT – UNLAWFUL ACTS ........................................ 64

3.5.3  CAUSATION OF BREACH .............................................. 65

3.5.4.  PROXIMATE CAUSE OF INJURY ................................... 67

3.6    LACK OF JUSTIFICATION ............................................. 68

3.7    INJURY ....................................................................... 70

4.    TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL
      RELATIONS ........................................................................ 71

4.1    GENERALLY ................................................................ 71

4.2    ELEMENTS OF LIABILITY ............................................. 73

4.3    EXISTENCE OF BUSINESS RELATIONSHIP OR
       EXPECTANCY ............................................................... 74

4.4    KNOWLEDGE ................................................................ 75

4.5    INTENTIONAL CONDUCT BY PECHINEY WHICH CAUSED
       A BREACH OF BUSINESS RELATIONSHIP OR
       EXPECTANCY BETWEEN CRYOVAC AND NATIONAL
       BEEF ........................................................................... 76

4.5.1  INTENT ....................................................................... 77

4.5.2  INTENT – UNLAWFUL ACTS ........................................ 79

4.5.3  CAUSATION OF BREACH .............................................. 80

4.5.4  PROXIMATE CAUSE OF INJURY ................................... 81

4.6    COMPETITIVE PRIVILEGE ........................................... 82

5.    PATENT INSTRUCTIONS -- VALIDITY ...................................... 84

DB01:2094972.1                                                        063527.1001

| | | |
|---|---|---|
| 5.1 | VALIDITY | 84 |
| 5.2 | PRESUMPTION OF VALIDITY | 85 |
| 5.3 | THE WRITTEN DESCRIPTION REQUIREMENT | 86 |
| 5.4 | ENABLEMENT | 87 |
| 5.5 | NO UNDUE EXPERIMENTATION | 88 |
| 5.6 | ANTICIPATION - GENERALLY | 89 |
| 5.7 | CLAIM CONSTRUCTION | 90 |
| 5.8 | PRIOR ART -- DATE OF INVENTION | 91 |
| 5.9 | REDUCTION TO PRACTICE -- DATE OF INVENTION | 92 |
| 5.10 | PRIOR ART -- BURDEN | 93 |
| 5.11 | PRIOR PUBLIC KNOWLEDGE OR USE | 94 |
| 5.12 | PRIOR INVENTION | 95 |
| 5.13 | PRIOR PUBLICATION | 97 |
| 5.14 | ANTICIPATION REQUIRES AN ENABLING DISCLOSURE | 98 |
| 5.15 | OBVIOUSNESS | 99 |
| 5.16 | SCOPE AND CONTENT OF THE PRIOR ART | 100 |
| 5.17 | DIFFERENCES OVER THE PRIOR ART [AGREED] | 102 |
| 5.18 | LEVEL OF ORDINARY SKILL | 103 |
| 5.19 | MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS | 104 |
| 5.20 | OBVIOUSNESS - HINDSIGHT | 105 |
| 5.21 | OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS | 106 |
| 5.22 | OBVIOUS TO TRY | 108 |
| 6. | PATENT DAMAGES | 109 |

DB01:2094972.1                                          063527.1001

6.1    PATENT DAMAGES - GENERALLY ................................ 109

6.2    COMPENSATORY PATENT DAMAGES IN GENERAL ................. 110

6.3    PATENT DAMAGES - BURDEN OF PROOF ..................................... 111

6.4    TWO TYPES OF PATENT DAMAGES - LOST PROFITS AND REASONABLE ROYALTY ...................................................... 112

6.5    PATENT LOST PROFITS - GENERALLY ......................................... 113

6.6    PATENT LOST PROFITS - CRYOVAC'S COMPETING PRODUCT ...................................................................... 114

6.7    PATENT LOST PROFITS - *PANDUIT* APPROACH ......................... 115

6.8    PATENT LOST PROFITS - MARKET SHARE APPROACH ............ 117

6.9    PATENT LOST PROFITS - ACCELERATED ENTRY/HEAD START ........................................................................... 118

6.10    FUTURE PATENT PROFITS - DETERMINATION ........................... 119

6.11    REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES ..................................................................... 120

6.12    FACTORS FOR DETERMINING REASONABLE ROYALTY FOR PATENT DAMAGES .................................................... 122

6.13    PATENT DAMAGES INTEREST  [AGREED] .................................. 124

7.    DAMAGES FOR BUSINESS TORT CLAIMS ................................. 125

7.1    GENERALLY ......................................................................... 125

7.2    DAMAGES:  IMPOSSIBILITY OF PRECISE CALCULATION NO BAR TO RECOVERY ........................................................ 126

7.3     RECOVERABLE ELEMENTS OF DAMAGES ................................. 127

7.4    MITIGATION/LOST VOLUME SELLER ........................................ 128

8.    DELIBERATION AND VERDICT ................................................. 130

**REDACTED -- Public Version, filed 5/15/06**

## I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### A.    INTRODUCTION

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for guidance on your role as jurors in this case.

What I will now say is intended to introduce you to the trial and the law that you will apply to evaluate the evidence that you will hear. I will also give you detailed instructions on the law at the end of the trial. All of my instructions are important, and you should consider them together as a whole. Please listen carefully to everything I say.

This is a case about patent infringement and tortious interference with contracts. As I mentioned earlier, the parties are Cryovac, Inc., the plaintiff, and Pechiney Plastic Packaging, the defendant. Cryovac owns U.S. Patent Number 4,755,419 granted to Mr. Shah by the United States Patent and Trademark Office. You may hear that patent referred to as "the '419 patent" for short, or "the Shah patent," or "the patent in suit" by the lawyers and witnesses in the case. As we will discuss in more detail later, Cryovac contends that Pechiney's infringement of its '419 patent was "willful" and that Pechiney interfered with Cryovac's business contracts. Pechiney argues that claim 11 of Cryovac's '419 patent is invalid and that it did not interfere with Cryovac's contracts.

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### B.    PATENT LAW

Now let me tell you a little bit about patent law.  Patent law comes from the United States Constitution.  The Constitution grants Congress the power to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." With this power, Congress enacted the patent laws.

Tangible goods, processes and methods may be patented.  For a good, process or method to be patentable, it must be new and useful.  In addition, a good, process or method is patentable only if, when the good, process or method was invented, it was not obvious to a person having ordinary skill in the field of the invention.  You will sometimes hear people call the field of invention the relevant "art."

Under the patent laws, the United States Patent and Trademark Office in the Washington, D.C. area, which we refer to as the PTO, examines patent applications and determines whether an invention should be granted a United States patent.  A patent application must include a number of things, including a detailed description of the invention that is sufficiently full, clear, concise and exact to enable any person skilled in the art of the invention to make and use the invention and a disclosure of the best mode of carrying out the invention known to the inventor at the time the application is filed.  The application includes a written description of the invention, called a "specification," and may include drawings that illustrate the invention.  A patent specification ends with one or more numbered sentences that are called the patent's claims

2

REDACTED -- Public Version, filed 5/15/06

and that particularly and distinctly define the subject matter that the inventor regards as his or her invention.

When the PTO receives a patent application, it is assigned to an examiner, who examines the application, including the claims, to determine whether the application complies with the requirements of the patent laws. The examiner reviews files of prior work of others, typically in the form of earlier patents and publications. This type of material is called "prior art," which simply means things which were already known in the scientific or technical field pertaining to the invention. Documents founds in the search of prior art are called "references." In conducting the search of prior art, the examiner notes in writing on the file the classes or subclasses of art searched. All of the papers concerning the examination of a patent application before the PTO are called the "prosecution history" or "file wrapper."

If, after reviewing the prior art maintained at the PTO, the examiner concludes that the claims presented by the applicant defined the applicant's claimed invention (over the most relevant known prior art), the application is granted as a U.S. patent.

A patent gives its owner the right to exclude others from making, using or selling the patented invention throughout the United States for a specific period of time, usually 20 years from the date the application was filed with the PTO. A person who, without the patent owner's permission, makes, uses, sells, offers to sell or imports into the United States a patented invention is infringing that patent.

Sometimes in a court case, you are also asked to decide about validity, that is, whether the patent should have been allowed at all by the PTO. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in

DB01:2094972.1

063527.1001

light of the prior art or whether other requirements of patentability have been met.  In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner.  There are several reasons for this.  For example, there may be facts or arguments that the examiner did not consider, such as prior art that was not located by the PTO or provided by the applicant.  Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner.  There is, of course, also the possibility that mistakes were made or important information overlooked.  Examiners have a lot of work to do, and no process is perfect.  That said, a patent is presumed to be valid unless proven otherwise.  Accordingly, a party trying to prove a patent is invalid has the burden to prove an issued patent is *not* valid *by clear and convincing evidence.*  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.

You will hear many of the terms I used in this description during the trial.  They are summarized in a "Glossary of Patent Terms," which will be given to you.

**REDACTED -- Public Version, filed 5/15/06**

I.    **CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS**

C.    **GLOSSARY OF PATENT TERMS**

Claims
: That part of a patent which defines the limits and boundaries of the patent grant.  These are found at the end of the patent specification in the form of numbered paragraphs.

Disclosure or
Description
: That part of the patent specification which explains how the claimed invention works and usually includes drawings.

File Wrapper or
Prosecution History
: The written record of proceedings in the Patent Office including the original patent application and subsequent communications between the Patent Office and applicant.

Patent Application
: The initial papers filed in the United States Patent and Trademark Office (Patent Office or PTO) by an applicant.  These typically include a specification, drawings and the oath (Declaration) of applicant.

Patent Examiners
: Personnel employed by the Patent Office who review (examine) patent applications to determine whether they meet legal requirements.

Reads On
: A patent claim "reads on" a device or method when each required part (requirement) of the claim is found in the device or method.

References
: Items of prior art (as the law defines it).

Requirement
: A required part of an invention set forth in a patent claim.  The word "requirement" is often used interchangeably with the word "limitation."

Specification
: That part of the patent application or patent which describes the invention and concludes with one or more claim.

5

I.     CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### D.     PATENT CLAIMS -- GENERALLY

The claims of a patent are the numbered sentences at the end of a patent. The claims describe the invention made by the inventor. This is what the patent owner owns and what the patent owner may prevent others from making, selling, or offering to sell. Claims may describe products, such as machines or chemicals, or they may describe methods for making or using a product. Each claim of a patent represents separate patent protection given to a patent owner. The law does not require infringement of all the claims in a patent. There is infringement and entitlement to damages if a single claim of the patent has been infringed.

If any person makes, uses, sells, or offers to sell what is covered by a patent claim without the patent owner's permission, then that person is said to *infringe* the patent. Earlier in this case, I ruled that all of Pechiney's ClearShield® products except product specification DZ-9004-1 did, in fact, infringe claim 11 of the '419 patent.

**Authority**:     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 3.2.1, *citing Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

**REDACTED -- Public Version, filed 5/15/06**

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### E.    DUTIES AS JURORS

Now a word about your duties as jurors. Trial by jury is one of the cornerstones of our free society. Faithful performance by you of your duties is vital to the administration of justice.

You have two main duties as jurors. The first is to decide what the facts are based on the evidence that you will see and hear in court. Deciding what the facts are is your job, not mine, and nothing that I will say or do should influence your determination of the facts in any way. In deciding what the facts are, you must not engage in guesswork or speculation. You must not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. Each side is entitled to the same fair and impartial consideration.

Your second duty is to take the principles of law that I explain to you and apply them to the facts in reaching your verdict. It is my job to instruct you about the law, and you are bound by the oath you just took to follow my instructions, even if you personally disagree with them. This includes these instructions and the instructions that I will give you during and after the trial. All of my instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, preliminary instruction on "Duties as Jurors" at page 7.

**REDACTED -- Public Version, filed 5/15/06**

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

F.    EVIDENCE[1]

The evidence from which you will find the facts will consist of the testimony of witnesses, and the documents and other things admitted into evidence.   In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1.    Statements, arguments, and questions by lawyers are not evidence.

2.    Objections to questions are not evidence.   Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the Rules of Evidence.   You should not be influenced by a lawyer's objection or by my ruling on the objection.   If I sustain or uphold the objection, you should ignore the question or document in question.   If I overrule an objection and allow the matter into evidence, treat the testimony or document like any other evidence.   If I instruct you that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only.   If this does occur during the trial, I will try to clarify the issue for you at that time.

3.    I reemphasize, you should not consider testimony and documents I have excluded and not admitted into evidence.

---

[1] These preliminary instructions are taken from Judge Jordan's Chambers website Preliminary Jury Instructions at pages 1-2.

4.      Anything you see or hear outside the Courtroom is not evidence and must be disregarded.   You are to decide this case solely on the evidence presented here in the Courtroom.

There are two kinds of evidence: direct and circumstantial.   Direct evidence is direct proof of a fact, such as testimony of an eyewitness.   Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.   I will give you further instructions on these as well as other matters at the end of the case, but have in mind that you may consider both kinds of evidence.

[2]Use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Make your decisions about the trial based only on the evidence, as I have defined it here, and nothing else.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject.   I will give you some guidelines for determining the credibility of witnesses at the end of the case.

---

[2] These next two paragraphs come from the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, preliminary instruction on evidence at page 9.

DB01:2094972.1                                                                      063527.1001

**REDACTED -- Public Version, filed 5/15/06**

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### G.    WITNESSES - CONFLICTS IN TESTIMONY

You are the sole judges of the credibility of the witnesses and the weight their testimony deserves. For example, you may be guided by the appearance and demeanor of the witnesses as they testified and the witnesses' apparent fairness in giving their testimony. Other factors which may influence your evaluation of a witness' credibility include the existence of evidence that is inconsistent with the testimony 'given or evidence that at some other time the witness said or did something (or failed to say or do something) that was different from the testimony the, witness gave at trial. You may also consider any bias or interest the witness may have in the outcome of these proceedings.

You should remember that a simple mistake does not necessarily mean that the witness is' not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness makes a misstatement, you must consider whether it is simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

If you find the testimony in this case to be in conflict, it will be your duty at the end of the case to reconcile the conflicts if you can. If you cannot do so, it is your duty to disregard that portion of the testimony that you, in your judgment, consider not to be worthy of credit.

Lastly, the number of witnesses presented is not important; concentrate on how believable the witnesses are and how much weight you believe their testimony deserves.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the

10

District of Delaware, preliminary instruction on "Witnesses -- Conflicts in Testimony" at page 10.

.

**REDACTED -- Public Version, filed 5/15/06**

I.     CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### H.    EXPERT WITNESSES

When scientific, technical or other specialized knowledge may be helpful to the jury, a person who has special knowledge, skill, education, training or experience in that technical field, called an expert witness, is permitted to state an opinion on those matters.

The value of this kind of testimony depends upon the qualifications and skill of the witness, the sources of the witness's information, and the reasons supplied for any opinions given. You should consider this kind of testimony like all other testimony you hear and weigh it by the same tests. However, as with any other witness, you are not required to accept any expert's opinions. It will be up to you to decide whether to rely upon them.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, preliminary instruction at page 12.

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### I.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

In this trial, the parties may present "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of an eyewitness that, if you believe the testimony, directly proves a fact. For example, if a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of facts and circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

The law makes no distinction between direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, preliminary instruction at page 11.

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

<u>**J.    BURDENS OF PROOF**</u>

Cryovac has the burden to prove that Pechiney tortiously interfered with Cryovac's

contracts by a preponderance of the evidence. That means Cryovac must produce evidence that,

when considered in light of all of the facts, leads you to believe that what Cryovac claims is

more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's

evidence on the opposite sides of a scale, the evidence supporting Cryovac's claims would have

to make the scales tip somewhat on its side.

In this case, Pechiney is arguing that Cryovac's patent is not valid.  A patent, however, is

presumed to be valid unless proven otherwise.  Accordingly, Pechiney has the burden to prove

the '419 is *not* valid *by clear and convincing evidence*.  Clear and convincing evidence is

evidence that produces an abiding conviction that the truth of a fact is highly probable. The

burden to prove a fact by clear and convincing evidence is a *heavier* burden than the burden to

prove that fact by a preponderance of the evidence.

In addition, Cryovac must prove its claim of willful infringement by clear and convincing

evidence.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in

this case and you should, therefore, not consider it at all in your deliberations.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, preliminary instruction on "Burden of Proof" at page 8; Judge Jordan's
Chambers website Preliminary Jury Instructions at page 3.

14

## I.     CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### K.     NATURE OF THE CASE

In this case, plaintiff Cryovac, Inc. ("Cryovac") has accused defendant Pechiney Plastic Packaging, Inc. ("Pechiney") of infringing claim 11 of U.S. Patent No. 4,755,419 ("the '419 patent"), and of willfully and knowingly using that infringement to cause one of plaintiff's customers (National Beef, Inc.) to breach two sales contracts it had with Cryovac.  Pechiney responded that: (a) it did not infringe Cryovac's patent, (b) Cryovac's patent is invalid, (c) Cryovac never had a binding contract with National Beef, (d) Pechiney did not, and could not have known of the existence of a binding contract between Cryovac and National Beef because National Beef did not believe itself to be bound by such a contract and (e) Pechiney merely exercised its legal right to seek and win National Beef's business for itself.

The '419 patent was granted to the named inventor Gautam Shah, based on his patent application Serial No. 06/842,600 filed March 21, 1986.  The '419 patent is assigned to Cryovac. The '419 patent is directed to an oriented coextruded film having at least seven layers arranged symmetrically and including certain categories of materials in various of the layers.   On September 20, 2004, Cryovac sued Pechiney for infringing claim 11 of the '419 patent, based on Pechiney's manufacture, use, sale and/or offer to sell products under the trademark "ClearShield.$^®$" 35 U.S.C. § 271(a).  Pechiney denied infringement and sought a declaratory judgment of noninfringement from this Court.  The Court found that all of Pechiney's ClearShield$^®$ products except product specification DZ-9004-1 infringed claim 11 of the '419 patent.

DB01:2094972.1                                                                                          063527.1001

**REDACTED -- Public Version, filed 5/15/06**

Cryovac also argues that Pechiney's infringement of claim 11 was willful. Pechiney had knowledge of Cryovac's '419 patent prior to selling ClearShield products, and Cryovac argues that Pechiney knew or should have known that the '419 patent would cover its ClearShield products. Pechiney argues that it took reasonable steps to make sure that its ClearShield products would not infringe the '419 patent. Pechiney further argues that it obtained opinions on the infringement issue, including a written opinion of noninfringement from outside patent counsel at McDermott, Will & Emery. Pechiney also argues that it took all those reasonable steps before undertaking the significant capital expenditures necessary to produce and sell ClearShield products. Cryovac argues that the opinions of noninfringement were not adequate or competent opinions of counsel and that Pechiney did not rely on those opinions in good faith.

Cryovac's tortious interference claims allege that Pechiney intentionally interfered with sales contracts dated March 20, 2003 and January 14, 2004 with National Beef. Cryovac alleges a lengthy and ongoing contractual relationship with third-party customer National Beef. National Beef is a beef-packer with plants in Dodge City and Liberal, Kansas, along with executive offices in Kansas City, Missouri. Cryovac claims that Cryovac and National Beef entered into four written requirements contracts, plus several amendments to those agreements. Cryovac further contends that National Beef purchased 100% of its bone-in, boneless, and chub film packaging requirements from Cryovac under these agreements.

Pechiney contends that National Beef was not contractually obligated to purchase any products from Cryovac. Even if National Beef and Cryovac had a contractual relationship, Pechiney asserts that Cryovac cannot carry its burden because Pechiney never had knowledge of any binding contractual relationship between National Beef and Cryovac, and because Pechiney

16

did not engage in any wrongful conduct in its dealings with National Beef. Finally, Pechiney asserts that its solicitation of National Beef falls within the scope of its lawful privilege to compete in this market and is not wrongful or improper.

Cryovac seeks damages for Pechiney's tortious interference with an agreement entered into on March 20, 2003 and an agreement entered into on January 14, 2004.

Pechiney alleges that claim 11 of the '419 patent is invalid due to anticipation, obviousness, lack of enablement, lack of a written description and/or indefiniteness. As noted above, Pechiney is also seeking a declaratory judgment of invalidity from this Court.

Pechiney contends that claim 11 of the '419 patent was anticipated under 35 U.S.C. § 102(a), (b), (e) and/or (g) by (a) an article by Earl Hatley, (b) a film made by Mr. Hatley and sent to Dr. Seymour Gilbert for testing, (c) U.S. Patent No. 4,746,562 ("the '562 patent") to Cryovac employee Ennis Fant, (d) a film made by Mr. Fant that is the subject of the '562 patent, (e) U.S. Patent No. 5,055,355, (f) U.S. Patent No. 4,572,854 to Dallmann ("the Dallmann Patent"), (g) translation of Japanese Utility Model Application Publication Number 60-27000, Application Number 54-84842 and (h) other prior art references identified and analyzed in the expert reports of Pechiney's technical expert, Dr. Mount. Cryovac denies that any of these disclose and enable Mr. Shah's invention claimed in claim 11 of the '419 patent. Cryovac further argues that Pechiney has not proven by clear and convincing evidence that the type of film covered by claim 11 was in public use or patented or described in a printed publication prior to Mr. Shah's date of invention.

In arguing that claim 11 would have been obvious, Pechiney argues that the subject matter of claim 11 would have been obvious to one of ordinary skill in the art at the time of the

17

alleged invention. Cryovac argues, on the contrary, that the claim 11 films would not have been obvious to one of ordinary skill in the art to which the invention pertains as of Mr. Shah's date of invention; that one of ordinary skill would not have been motivated (before Mr. Shah's date of invention) to make a film covered by claim 11 and that such a person would not have had a reasonable expectation of success in doing so.

Pechiney further contends that the full scope of the subject matter of claim 11 was not enabled by the '419 specification. Cryovac, on the other hand, argues that the '419 specification (in combination with what was known in the art) provided sufficient information and details for one of ordinary skill in the art to make and use the films covered by claim 11 without undue experimentation as of March 21, 1986, when Mr. Shah's patent application was filed.

Pechiney also contends that claim 11 is invalid for failure to comply with the written description requirement of 35 U.S.C. § 112. Pechiney contends that the '419 patent specification does not show that the inventor possessed, at the time of filing, the subject matter of claim 11 as ultimately issued after several amendments. Cryovac, on the other hand, maintains that the '419 specification contains a written description of Mr. Shah's invention with sufficient information to show a person skilled in the art that Mr. Shah was in possession of the invention of claim 11 at the time Mr. Shah's patent application was filed.

Pechiney also contends that claim 11 is invalid as indefinite because the '419 patent does not give sufficient guidance for a competitor to determine whether the layers of a film are "arranged symmetrically" and that this claim language was not present in any of the claims as filed, but rather was added during prosecution in response to a prior art rejection. Cryovac, on the other hand, argues that based on reading the '419 specification and claim 11, one skilled in

18

the art would understand what is covered by claim 11 as issued, because claim 11 particularly points out and distinctly claims the subject matter that Mr. Shah considered his invention.

Cryovac seeks damages for infringement of the '419 patent in the form of lost profits and, alternatively, a reasonable royalty on Pechiney's sales of ClearShield products. Cryovac also seeks damages for Pechiney's tortious interference with Cryovac's contracts with National Beef.

Pechiney maintains that it did not infringe a valid patent, and that Pechiney does not infringe the patent as properly construed. Pechiney further contends that even if the jury finds in Cryovac's favor on the issues of infringement and validity and the Court finds in Cryovac's favor on the issue of inequitable conduct, it is not liable for lost profits and that a reasonable royalty would be not more than 2 %. Additionally, Pechiney contends that damages for tortious interference cannot be calculated because the alleged contracts do not contain a quantity term.

At the end of the case, I will give you instructions on the law that you will apply in determining whether Cryovac has proven the claims it makes against Pechiney.

**Authority:**    Judge Jordan's Chambers website Preliminary Jury Instructions at page 3; Nature of the Case section in the Proposed Final Pretrial Order filed by the parties on April 19, 2006.

19

**REDACTED -- Public Version, filed 5/15/06**

I.    **CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS**

L.    **UNCONTESTED FACTS[3]**

The parties agree that the following facts are undisputed:

1.    U.S. Patent No. 4,755,419 ("the '419 patent") titled "Oxygen Barrier Oriented Shrink Film" issued from the United States Patent and Trademark Office ("USPTO") on July 5, 1988.

2.    The '419 patent was based on U.S. Patent Application Serial No. 06/842,600, which was filed March 21, 1986.

3.    The named inventor of the '419 patent is Gautam P. Shah.

4.    The '419 patent was originally assigned to "W.R. Grace & Co., Cryovac Div." and is now assigned to Cryovac, Inc.

5.    Mr. Shah was an employee of "W.R. Grace & Co., Cryovac Div." when his patent application was filed.

6.    Mr. Shah now works for Cryovac, Inc.

7.    Cryovac is a Delaware corporation with a place of business at 100 Rogers Bridge Road, Duncan, South Carolina 29334.

8.    Pechiney Plastic Packaging, Inc. is a Delaware corporation having its principal place of business at 8770 West Bryn Mawr Avenue, Chicago, Illinois  60631.

9.    Pechiney designed, manufactures and sells various products under the trademark "ClearShield®."

---

[3] There's actually no indication where the Judge should read the "Uncontested Facts," so I thought here would be a logical place.

**REDACTED -- Public Version, filed 5/15/06**

10.     ClearShield® products include a seven-layer film.

**REDACTED**

13.     Cryovac sells a product commonly known as Boneguard or TBG® patch bags.

14.     ClearShield® products compete with Boneguard and/or TBG® patch bags made by Cryovac.

**REDACTED**

18.     "Ethylene vinyl alcohol" is commonly abbreviated as "EVOH."

19.     Nylon is a "polyamide."

20.     "PA" is often used in the industry as an abbreviation for "polyamide."

21.     Claim 11 is the only claim of the '419 patent being asserted by Cryovac against Pechiney in this lawsuit.

22.     The '419 patent expired March 21, 2006.

21

**REDACTED -- Public Version, filed 5/15/06**

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

**M.    GENERAL INSTRUCTIONS**

Until this case is submitted to you for your deliberation, you are to keep an open mind and not decide any issue in this case. You also must not discuss this case with anyone, remain within hearing of anyone discussing it, or read, watch, or listen to any discussion of the case in any news or entertainment media. After this case has been submitted to you, you must discuss this case only in the jury room when all members of the jury are present.

It is important that you wait until all the evidence is received and you have heard my instructions on the applicable rules of law before you deliberate among yourselves. The only evidence you may consider will be the evidence presented at trial. Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not do any outside reading on this case and do not in any other way try to learn about the case outside the courtroom.

The reason for these rules, as I am certain you will understand, is that you must decide this case solely on the evidence presented at the trial.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, preliminary "General Instruction" at page 13.

REDACTED -- Public Version, filed 5/15/06

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### N.    CONDUCT OF THE JURY

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.   If anyone should try to talk to you about the case, bring it to my attention promptly.   There are important reasons for this, including the need for you to keep an open mind throughout the presentation of evidence.

Second, do not read or listen to anything touching on this case that is not admitted into evidence.   By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.   In addition, do not try to do any independent research or investigation on your own on matters relating to the case.   Please don't do any sleuthing on the internet, for example.   You are to decide the case upon the evidence.

Again, do not reach any conclusion as to the claims until all of the evidence is in.   Keep an open mind until you start your deliberations at the end of the case.

**Authority:**    Judge Jordan's Chambers website Preliminary Jury Instructions at pages 3-4.

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

<u>O.    INSTRUCTIONS ON TAKING NOTES</u>

If you wish to, you may take notes during the evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law.   My Courtroom deputy will arrange for pens, pencils, and paper.   If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. And remember that they are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial.   However, you should not assume that the transcripts will be available for your review during your deliberations.   Nor should you consider notes that you or fellow jurors may take as a kind of written transcript, Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of the testimony during your deliberations.   Here are some other specific points to keep in mind about note taking:

1.    <u>Note-taking is permitted, not required</u>.   Each of you may take notes.   No one is required to take notes.

2.    <u>Be brief</u>.   Do not try to summarize all of the testimony.   Notes are for the purpose of refreshing memory.   They are particularly helpful when dealing with measurements, times, distances, identities, and relationships.   Over-indulgence in note-taking may be distracting.   You, the jurors, must pass on the credibility of witnesses; hence, you must observe the demeanor and appearance of each person on the witness stand to assist you in passing on his

or her credibility.   Note-taking must not distract you from that task.   If you wish to make a note, you need not sacrifice the opportunity to make important observations.   You may make your note after having made an observation itself.

3.     <u>Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors</u>.   In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes.   As I mentioned earlier, your notes are not official transcripts.   They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial.   They are valuable, if at all, only as a stimulant to your memory.   Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case.   You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

4.     <u>Do not take your notes away from court</u>.   I repeat, at the end of each day, please leave your notes in the jury room.   At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

**Authority:**     Judge Jordan's Chambers website Preliminary Jury Instructions at pages 4-5.

DB01:2094972.1                                                                                                                063527.1001

**REDACTED -- Public Version, filed 5/15/06**

I.    CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

### P.    LOGISTICAL INFORMATION  [AGREED]

1.    <u>Temperature</u> — dress in layers.  It is difficult for our landlord, the Government Services Administration, to maintain a constant temperature in the building.   That is particularly true when the seasons are changing and the temperature outside can be erratic.  So bring a sweater or jacket you can wear if the air conditioning is overdone but which you can take off if things get too warm.

2.    <u>Jury Stickers</u> — Please wear the stickers you've been given that identify you as jurors.  We don't have specialized access for you to the elevators or other common areas in the building.   You will be sharing those with the representatives of the parties and others who have business with the Court.   Everyone wants to help you maintain the appropriate detachment you must have in order to avoid being influenced by things outside the courtroom.   By wearing your stickers, you help the parties and others to preserve that detachment.   And please, do not be offended if the attorneys or court personnel or others involved in the trial seem stand-offish when you see them in the elevators or elsewhere in the building.   Again, they are not trying to be unfriendly, but they are obligated to avoid contact with you outside the context of the presentations in the courtroom.

3.    <u>Security System and Timeliness</u> — You'll recall that when you came into the building today, you had to go through a security screening system.   If you had a cell phone, you had to check that in with one of the Court Security Officers.   Such screening can cause delays, so please plan your arrival time at court in a manner that will allow you to be in the jury room

before 9:00 a.m. each day of trial so that you can all come in and be seated together in the jury box promptly at 9:00 I should note that, sometimes, the other participants in this proceeding may cause you to wait.   You will have done your part and arrived in the morning or after a break so that we can begin on time and yet you will be left in the jury room.   I promise that I will do my utmost to hold such delays to the absolute minimum.   We may be able to eliminate them entirely, but there are times during the course of a trial when matters arise which could not reasonably have been anticipated and which require the Court's attention.   For example, the attorneys may have a legal issue which they need help resolving and in which it would not be appropriate to have you involved.   If we have to deal with matters outside your presence, please be patient.   Likewise, if I am required to deal with other proceedings, I ask your indulgence. Neither the Court nor the parties mean you any disrespect by a delay.   On the contrary, your willingness to serve and the sacrifice of your time is deeply appreciated by all of us involved in these proceedings.

    4.    <u>Schedule</u> — A few additional words about the daily schedule: as I mentioned, we will begin taking testimony each day at 9:00 a.m. We will plan to have a break at mid-morning (at about 10:30), to recess for a one-hour lunch at approximately 12:30, to have a mid-afternoon break (at about 3:00), and to conclude the taking of testimony by 4:30 p.m. sharp.   You can plan that you will be able to leave court each day by 4:30.

**Authority:**    Judge Jordan's Chambers website Preliminary Jury Instructions at pages 6-7.

I.     CRYOVAC'S PROPOSED PRELIMINARY JURY INSTRUCTIONS

## Q.     COURSE OF THE TRIAL  [AGREED]

The trial will now begin.   First, each side may make an opening statement.   An opening statement is neither evidence nor argument.   It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, the plaintiffs will present their witnesses, and defendants may cross-examine them, Then the defendants will present their witnesses, and plaintiffs may cross-examine them.   Both sides may offer documents in evidence.

When all the evidence is in, the attorneys will make their closing arguments to summarize and interpret the evidence for you and I will give you instructions on the law, You will then retire to deliberate on your verdict.

**Authority:**     Judge Jordan's Chambers website Preliminary Jury Instructions at pages 7-8.

DB01:2094972.1                                                                                         063527.1001

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

    1.     GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION & JURORS' DUTIES[4] [AGREED]

Members of the jury, now that you have heard all the evidence in the case, it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

**Authority:**     Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[4] The "Introduction" section (including the paragraphs on the duties of jurors) was taken from the Jury Instructions on Judge Jordan's Chambers website at pages 1-2.

                                              

**REDACTED -- Public Version, filed 5/15/06**

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.2    DUTIES AS JURORS

Members of the Jury, it is important that you bear in mind the distinction between your

duties and my duties. You have two main duties as jurors. The first one is to decide what the

facts are from the evidence that you saw and heard here in court. You are the sole judges of the

facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing

I have said or done during this trial was meant to influence your decisions about the facts in any

way.

Your second duty is to take the law that I give you, apply it to the facts, and decide

(1) whether Cryovac has shown by clear and convincing evidence that Pechiney's infringement

is willful, (2) whether Pechiney has proven by clear and convincing evidence that claim 11 of the

'419 patent is invalid, (3) whether Cryovac has shown by a preponderance of the evidence that

Pechiney tortiously interfered with Cryovac's contract or contracts with National Beef; or its

expectation of entering into a relationship with National Beef, and (4) the damages to which

Cryovac is entitled.

Now, as far as my duty is concerned, I have the duty of advising you about the law that

you should apply to the facts as you find them. You are not to consider whether the principles I

state to you are sound or whether they accord with your own views about policy. You are bound

by the oath that you took at the beginning of the trial to follow the instructions that I give you,

even if you personally disagree with them. You must accept them despite how you feel about

their wisdom. This includes the instructions that I gave you before and during the trial, and these

30

**REDACTED -- Public Version, filed 5/15/06**

instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Authority**:     Uniform Jury Instructions in the United States District Court for the District of Delaware.

31

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.3    EVIDENCE DEFINED[5]   [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

---

[5] The "Evidence Defined" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at pages 2-3.

32

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

REDACTED -- Public Version, filed 5/15/06

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE[6]  [AGREED]

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[6] The "Direct and Circumstantial Evidence" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 3.

DB01:2094972.1                                                                           063527.1001

**REDACTED -- Public Version, filed 5/15/06**

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.5    CONSIDERATION OF EVIDENCE[7]  [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Authority:**    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[7] The "Consideration of Evidence" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 4.

063527.1001

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.6    STATEMENTS OF COUNSEL[8] [AGREED]

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

**Authority:**    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[8] The "Statements of Counsel" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 4.

36

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.7    CREDIBILITY OF WITNESSES[9]  [AGREED]

You are the sole judges of each witness's credibility. You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all. But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial. You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other

---

[9] The "Credibility of Witnesses" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at pages 4-5.

**REDACTED -- Public Version, filed 5/15/06**

things inaccurately.  If a witness has made a misstatement, you must consider whether it was

simply an innocent lapse of memory or an intentional falsehood, and that may depend upon

whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.


**Authority**:     Uniform Jury Instructions in the United States District Court for the District of
Delaware.

38

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.8     EXPERT TESTIMONY[10]  [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Authority**:     Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[10] The "Expert Testimony" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 6.

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.9     NUMBER OF WITNESSES[11]  [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[11] The "Number of Witnesses" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website.

DB01:2094972.1                                                                                                     063527.1001

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 1.10     BURDENS OF PROOF

Cryovac must prove its claim of willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. The burden to prove a fact by clear and convincing evidence is a *heavier* burden than the burden to prove that fact by a preponderance of the evidence.

Cryovac has the burden to prove that Pechiney tortiously interfered with Cryovac's contracts by a preponderance of the evidence. That means Cryovac must produce evidence that, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence on the opposite sides of a scale, the evidence supporting Cryovac's claims would have to make the scales tip somewhat on its side.

Pechiney is arguing that Cryovac's patent is not valid. A patent, however, is presumed to be valid unless proven otherwise. Accordingly, Pechiney has the burden to prove the '419 is *not* valid *by clear and convincing evidence*.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 1.3, *citing Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 2.    PATENT INSTRUCTIONS -- WILLFUL INFRINGEMENT

#### 2.1    WILLFUL INFRINGEMENT

Earlier in this case before the jury was convened, I considered what was covered by claim 11 of the '419 patent and then compared what the claim covered to the ClearShield® products Pechiney manufactures and sells.  I determined that all of Pechiney's ClearShield® products except DZ-9004-1 did, in fact, infringe claim 11 of Cryovac's '419 patent.

You should accept Pechiney's infringement as a fact.  Cryovac contends that Pechiney's infringement was also "willful."

When a company such as Pechiney becomes aware that a patent may have relevance to its activities, that company has a duty to exercise due care and investigate whether or not its activities infringe any valid claim of that patent before the initiation of any possible infringing activity.  If that company does not do so and infringes the patent claims, then the infringement is "willful."

To establish willful infringement, Cryovac must prove two things with clear and convincing evidence:

1.    That Pechiney was aware of the '419 patent, and

2.    That Pechiney proceeded with its infringing activities without having a reasonable good faith belief that the '419 patent was invalid or that the patent was not infringed.

DB01:2094972.1                                                                                    063527.1001

REDACTED -- Public Version, filed 5/15/06

To determine whether Pechiney acted with a reasonable good faith belief or whether Pechiney willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Pechiney in this trial and the following factors:

1.  In designing the product accused of infringement, whether Pechiney intentionally copied Cryovac's invention or a product made by Cryovac that is covered by the patent, or whether Pechiney instead tried to "design around" the patent by designing a product that Pechiney believed did not infringe the patent claims. Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

2.  When Pechiney became aware of the patent, whether Pechiney formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Defendant obtained and followed the advice of a competent lawyer before the initiation of any possible infringing activity. Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful.

3.  Whether Pechiney actually relied on the legal opinions it obtained as legitimate advice as to whether ClearShield products infringed Cryovac's patent, or whether Pechiney merely sought the legal opinions for their potential evidentiary value in future litigation, which could suggest that

43

**REDACTED -- Public Version, filed 5/15/06**

Pechiney did not rely on the opinions of counsel in good faith and may be

evidence that infringement was willful.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 3.13, has been modified to reflect the Federal Circuit's recent holding in *Applied Medical Resources Corp. v. United States Surgical Corp.,* 435 F.3d 1356, 1365 (Fed. Cir. 2006).

44

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 2.2     WILLFUL INFRINGEMENT -- TIMING OF ADVICE

The patent infringer's affirmative duty to exercise due care to determine whether or not

the company is infringing the patent rights of others includes the duty to seek and obtain

competent legal advice *before* the initiation of any possible infringing activity.

Whether an infringer's conduct is willful should be determined as of the time the

infringing activity begins where the party has notice of the existence of the relevant patent.


**Authority**:     *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-1390
(Fed. Cir. 1983); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-
60 (Fed. Cir. 1997); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989).

DB01:2094972.1                                                                        063527.1001

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 2.3    WILLFUL INFRINGEMENT -- COMPETENCY OF ADVICE

To be effective as a defense to willful infringement, the advice or opinion obtained by the infringer must be legally "competent."   That means the advice or opinion of counsel must adequately analyze the patent specification and patent claims, provide foundation or reasoning for the opinion's conclusions, and include an analysis of the patent's file history.

The opinion letter should be reviewed objectively to determine whether it was obtained in a timely manner, whether the opinion provides an adequate foundation based on a review of all necessary facts and explained the conclusions in light of the applicable law, or whether the opinion is merely conclusory on its face.  Counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent invalid, not infringed, or unenforceable and that the opinion warranted a reasonable degree of certainty that the infringer had the legal right to conduct the infringing activity.

A non-infringement opinion of counsel, in particular, is not competent if the opinion is superficial and conclusory in nature, fails to provide an analysis of the specific patent claims and an interpretation of the claim language, or does not contain a meaningful discussion of the prosecution history or file history.  A non-infringement opinion should also address infringement of the broadest claims in the patent.

If the opinion is not competent, it cannot negate willful infringement.


**Authority:**    *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989); *Johns*

46

*Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998);  *SRI Int'l, Inc. v. Adv. Tech. Labs., Inc.*, 127 F.3d 1462, 1467 (Fed. Cir. 1997).

**REDACTED -- Public Version, filed 5/15/06**

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 2.4    WILLFUL INFRINGEMENT -- GOOD FAITH RELIANCE

To defend against willful infringement, in addition to obtaining a competent opinion of counsel prior to the start of the infringing activity, the infringer must *rely* on that competent opinion *in good faith* when proceeding with the infringing activities.

In considering the reasonableness of the accused infringer's reliance on an opinion of counsel, the opinion letter should be reviewed to determine whether they evidence an adequate foundation based on a review of all necessary facts or whether they are conclusory on their face.

The timing of the opinion of counsel can also play a role in whether the infringer reasonably relied on the opinion of counsel. For example, if the opinion is obtained *after* the infringing activity begins, it cannot have been reasonably relied upon before beginning the infringing activity.

Another example of not relying on the opinion of counsel in good faith is if Pechiney paid little attention to the opinion letters or was not concerned about its potential infringement, but rather sought legal opinions for their potential evidentiary value on the issue of willful infringement in future litigation. This could suggest that the infringer did not rely the opinions of counsel in good faith.

**Authority**:    *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743-44 (Fed. Cir. 1993); *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006).

48

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

3.    **TORTIOUS INTERFERENCE WITH CONTRACT**

### 3.1    GENERALLY

The law recognizes that one who intentionally and improperly induces or otherwise intentionally causes a third party not to perform a contract with another party is responsible to that party for the loss suffered as a result of the third-party's breach of contract.

Cryovac alleges that Pechiney tortiously interfered with two separate packaging contracts that existed between Cryovac and National Beef, one dated March 2003 and one dated January 2004, both of which obligated National Beef to purchase the goods identified in the contracts from Cryovac.

To prevail on this claim, there are five elements that Cryovac must prove by a preponderance of the evidence. I will describe the elements to you in a moment.

If you find from your consideration of all of the evidence that Cryovac has proved each of these elements by a preponderance of the evidence, then you will consider the question of the amount of money damages that may be awarded, under the instructions I will give you.

If you find, however, from your consideration of all of the evidence that Cryovac has not proved any one or more of these elements by a preponderance of the evidence, then Pechiney is not liable, and your verdict should be against Cryovac and for Pechiney.

**Authority:** *See e.g.*, American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.1 (Inducing Breach of Contract: Elements of Liability: Generally), at 8, 9 (4th ed. 2005).

49

**REDACTED -- Public Version, filed 5/15/06**

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.2     ELEMENTS OF LIABILITY

For Cryovac to recover on its claim against Pechiney, Cryovac must prove, by a preponderance of the evidence, each of the following six elements:

1.      that at the time of the acts of Pechiney, Cryovac was a party to at least one valid contract with National Beef, dated March 2003 and/or January 2004, to supply certain specified materials;

2.      Pechiney either knew of the existence of or, under the circumstances, should have known of the existence of at least one of those contracts;

3.      that the acts of Pechiney in inducing National Beef to breach its contract or contracts with Pechiney were intentional within the meaning of the word *intent*, which I will provide you with later in my instructions;

4.      that the conduct of Pechiney was improper under the factors I will instruct you to consider;

5.      that, as a proximate result of the acts of Pechiney, National Beef was induced to breach its contract with Cryovac; and

6.      that, as a direct and proximate result of Pechiney's conduct, Cryovac was damaged.

I will now explain each of these elements.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1 (Inducing Breach of Contract:  Elements of Liability:  Generally), at 8 (4th ed. 2005).

50

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

3.3    <u>EXISTENCE OF A CONTRACT BETWEEN CRYOVAC AND NATIONAL BEEF</u>

Cryovac argues that, pursuant to the contracts dated March 2003 and/or January 2004, National Beef was obligated to purchase its requirements of the specified goods from Cryovac, and in any event no less than $25 million of those goods.  Pechiney asserts that Cryovac and National Beef never had an enforceable contract because the alleged contracts fail to contain a written quantity term.

For you to find for Cryovac on its tortious interference with contract claim against Pechiney, you must find that Cryovac was party to one or more valid contracts with National Beef that were in full force and effect at the time of Pechiney's alleged interference and that at least one of those contracts was breached as a result of Pechiney's conduct.  In this case, the parties dispute the terms of the 2003 contract between Cryovac and National Beef; they dispute whether Cryovac and National Beef formed a contract in January 2004; and, if a contract was formed in January 2004, they dispute what the terms of that contract were.  I will now instruct you how to make this decision.

A contract may be defined simply as an oral or written agreement, which the law will enforce, to do or not to do a particular thing.  If all of the basic elements required by law for there to be a contract are present, a contract is deemed to be valid.  A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties.

Whether the contract exists, and the terms of that contract, are ascertained both from the language used in the alleged contract and by implication from other circumstances, including the

51

parties' course of dealing, usages of the trade or course of performance. I will explain each of

these terms to you in a moment.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation,*
§ 1.3.1.a (Requirement of a Contract), at 10 (4th ed. 2005) (note that model instruction's
references to requirements that contracts be based on adequate consideration, and that they not
be illegal, in restraint of trade, opposed to public policy, terminated, expired, or otherwise
rendered void have been omitted because none of those requirements are at issue in this case);
Del. P.J.I. Civ. § 19.1 (2000); UCC § 1-303 (defining course of dealing, course of performance
and trade usage); UCC § 2-204(3); UCC § 2-204(3) (amended 2003), 1 U.L.A. 392 (2004) (even
if one or more terms is left open, contract does not fail for indefiniteness if parties intend to make
contracts and there is basis for remedy); *See also Nanakuli Paving & Rock Co. v. Shell Oil Co.,*
664 F.2d 772, 795 (9th Cir. 1981) (the UCC modifies the common law and makes course of
dealing, usage of trade and course of performance part of every contract) and Cryovac's
Answering Brief in Opposition to Pechiney's Motion for Partial Summary Judgment on Tortious
Interference Claims (D.I. 250) ("Cryovac's Answering Brief") at 14 (same); UCC § 1-201(3) &
(11); UCC § 2-202(2), (amended 2003), 1 U.L.A. 389 (2004) (course of performance, course of
dealing and trade usage evidence may be used without determination of ambiguity).

.

.

52

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.1    INTENT TO ENTER INTO A CONTRACT

To determine whether a contract or contracts exists between Cryovac and National Beef, the first question you must answer is whether the parties intended to enter into a contract. This inquiry should be conducted from the vantage point of an objectively reasonable person in the position of the contracting parties. To determine intent, you may look to the language the parties used during negotiations and in the agreement, as well as other circumstances, including the course of dealing, course of performance, and trade usages in the industry.

**Authority:** UCC § 2-204(3); UCC § 2-204(3) (amended 2003), 1 U.L.A. 392 (2004) (even if one or more terms is left open, contract does not fail for indefiniteness if parties intend to make contract and there is basis for remedy); *See Demetree v. Commonwealth Trust Co.,* 1996 Del. Ch. LEXIS 112, at *11 (Del. Ch. Aug. 27, 1996) ("contract's construction should be that which would be understood by an objective reasonable third party"); Cryovac's Answering Brief (D.I. 250) at 16 (same); *See* UCC § 1-303 (defining course of dealing, course of performance and trade usage); UCC § 1-201(3) & (11); UCC § 2-202(2) (amended 2003), 1 U.L.A. 389 (2004) (course of performance, course of dealing and trade usage evidence may be used without determination of ambiguity).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.2    THE TEST FOR A REQUIREMENTS CONTRACT

The parties dispute whether National Beef was obligated to purchase anything from Cryovac, even if Cryovac and National Beef formed an agreement.  Cryovac asserts that National Beef agreed to purchase from Cryovac its requirements for the goods specified in the parties' writings.  Pechiney asserts that National Beef was not obligated to buy anything from Cryovac.

The test for whether a parties' contract is a requirements contract is whether the contract objectively demonstrates that the buyer committed to purchase all or some portion of its requirements of the identified goods from the seller.  The promise to purchase exclusively from one supplier may be either implicit or explicit.  No specific words are required to create a requirements contract.  The test is what the parties objectively agreed.  To determine what the parties objectively agreed, you may look to the language of the alleged contract, the parties' communications while negotiating the contract, as well as the other types of circumstances such as course of dealing, course of performance, and trade usages in the industry.

Therefore, the written terms of the  requirements contract or contracts need not expressly require National Beef to purchase all of its requirements of specified goods from Cryovac, although the language of the agreement may imply that meaning.  You may or may not find that Cryovac and National Beef, by their statements and actions, manifested their understanding that one or both of their agreements required National Beef to buy all of its needs for those products from Cryovac, and no one else, for the term of the agreement or agreements.

54

**Authority:** *See Essco Geometric v. Harvard Indus.*, 46 F.3d 718, 728 (8th Cir. 1995) ("the UCC does not require certain particular words to enforce a requirements contract"); Cryovac's Answering Brief (D.I. 250) at 18 (same); *Kansas Power & Light Co. v. Burlington N.R. Co.*, 740 F.2d 780, 789 (10th Cir. 1984) (any writing that shows a requirements contract will also satisfy the statute of frauds); UCC § 2-202(2) (amended 2003), 1 U.L.A. 389 (2004) (course of performance, course of dealing and trade usage without determination of ambiguity); UCC § 1-303 (defining course of performance, course of dealing and trade usage); 3 Fed. Jury Prac & Inst. § 126.01 (5th ed. 2005, pocket part).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.3   COURSE OF DEALING

I will now explain what the words "course of dealing," "course of performance," and "trade usage" mean.  If two parties have dealt with each other before entering into a contract, this is called "course of dealing."  Course of dealing may be considered to determine whether an agreement exists and to explain and supplement the written terms of a contract.  Course of dealing is defined as the sequence of the parties' previous conduct which is fairly regarded as establishing a common basis of understanding for interpreting their expressions and conduct.

**Authority:**  UCC § 1-303(b) (defining course of dealing).

REDACTED -- Public Version, filed 5/15/06

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.4    COURSE OF PERFORMANCE

If two parties have begun to perform a contract, such performance is called their "course of performance." Course of performance may be considered to determine whether an agreement exists and to explain and supplement the written terms of the agreement. For example, it may be relevant to the existence or the meaning of a contract if the course of performance involved repeated occasions for performance by one party with knowledge of the nature of the performance and opportunity for objection to it by the other party, and the second party has accepted or acquiesced in such performance without objection.

**Authority:** UCC § 1-303(a) (defining course of performance).

DB01:2094972.1

063527.1001

REDACTED -- Public Version, filed 5/15/06

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.5   TRADE USAGES IN INDUSTRY

"Trade usage" is defined as any practice or method of dealing having such regularity of observation in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question.  Trade usage may also be a considered to determine whether an agreement exists and to explain and supplement the written terms of the agreement.

**Authority:**  UCC § 1-303(c) (defining trade usage).

DB01:2094972.1

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.3.6   CAUTIONARY INSTRUCTION

Contract law is not concerned with parties' undisclosed ideas and intents.  It gives heed only to their communications and overt acts, and a parties' undisclosed ideas, personal understanding, and unexpressed intentions cannot be considered in deciding whether a contract was formed or what the terms of the contract mean.  Intent may be shown by written or spoken words or by other acts or conduct; an internal or unexpressed intention not to be bound is ineffective.

The appropriate question therefore is whether objectively reasonable persons in the position of Cryovac and National Beef would understand that they were entering into a requirements contract or contracts.  As I explained previously, you may also look to other circumstances to determine whether the parties intended to enter into a contract or contracts and what the terms of that contract or contracts were.  Therefore, to determine whether a contract or contracts existed between Cryovac and National Beef, and what the terms of that contract or contracts were, you are entitled to look at the language of the alleged contracts, the parties' communications during their negotiations, the course of dealing between Cryovac and National Beef, trade usages in the industry, and the performance of the alleged contracts between Cryovac and National Beef.

**Authority:**  John Edward Murray, Jr., *Murray on Contracts*, § 30 (discussing objective vs. subjective assent) and § 89[F] (discussing use of evidence relating to course of performance, course of dealing and trade usage) (internal citation omitted) (4th ed. 2001); 3 Fed. Jury Prac. & Instr. § 126.01 (5th ed.).  *See also* Restatement (Second) of Contracts § 17 cmt. c (1981)

**REDACTED -- Public Version, filed 5/15/06**

("mental reservation of a party to a bargain does not impair the obligation he purports to undertake"); *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1070 (Del. 1997) ("an overt manifestation of assent, not a subjective intent, controls the formation of a contract"); Cryovac's Answering Brief (D.I. 250) at 33 (same); UCC § 1-201(a)(3) (defining agreement as "the bargain of the parties in fact as found in their language or inferred from other circumstances) (internal citation omitted) (4th ed. 2001).

60