II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.4    KNOWLEDGE

To find for Cryovac, you must also find that Pechiney knew of the existence of Cryovac's

contract or contracts with National Beef.  To have knowledge means that Pechiney has

information concerning the contract or contracts which was discovered by Pechiney or was

brought to Pechiney's attention by others.  In this regard, knowledge may be found to exist if,

from the facts and circumstances of which Pechiney had knowledge, Pechiney should have

known of the existence of the contract or contracts between Cryovac and National Beef.

For this purpose, it is not necessary that Pechiney had actual knowledge of the specific

contract or contracts between Cryovac and National Beef, that Pechiney had a copy of any

specific contract or contracts, or that Pechiney knew the legal particulars of the contract or

contracts.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*,
§ 2.4.1 (Requirement of Knowledge for Tortious Interference with Prospective Relations), at 74;
§ 1.3.2 (Requirement of Knowledge for Tortious Interference with Contract), at 15 (4th ed.
2005).  Note that the virtually identical knowledge requirement from the element for tortious
interference with prospective relationship is used here to conform to the instructions for that tort
and avoid jury confusion. *See also D56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 916 (N.D. Ill.
1997); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 450 (N.Y. 1980);
*Howard v. Youngman,* 81 S.W.3d 101, 114 (Mo. Ct. App. 2002) (facts and circumstances known
to defendant may be sufficient to find knowledge despite a lack of knowledge of particulars of
contract).

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

3.5    INTENTIONAL CONDUCT BY PECHINEY THAT CAUSED BREACH OF CONTRACT BETWEEN CRYOVAC AND NATIONAL BEEF

### 3.5.1   INTENT

Cryovac also must prove that Pechiney intended to induce National Beef to breach its contract or contracts with Cryovac. Conduct is intentional if it was done deliberately, with the purpose of inducing National Beef to breach its conduct with Cryovac. If you find that Pechiney's conduct was not intentional, then you must find for Pechiney.

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act. Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence. Although witnesses may see and hear, and may be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing. Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of contrary evidence, draw an inference that Pechiney, by Pechiney's conduct intended the natural and probable consequences of its actions.

Thus, determining whether the defendant intentionally interfered with the contract between Cryovac and National Beef, you may look at Pechiney's conduct. In the absence of evidence to the contrary, you may infer from Pechiney's conduct, or lack of conduct, that Pechiney intended those natural and probable consequences that one standing in like circumstances and possessing like knowledge should expect.

62

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a (Requirement of Intent) (verbatim), at 17; § 1.3.3.b (Intent Defined) (verbatim), at 18; § 1.3.3.c (Proof of Intent) (verbatim), at 19; § 1.3.3.e (Summary of Requirement of Intent) (verbatim), at 22 (4th ed. 2005).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.5.2   INTENT – UNLAWFUL ACTS

Should you find that Pechiney's conduct in interfering with Cryovac's contractual

relationship with National Beef was itself unlawful, you may find the necessary intent, without

anything more.

In this case, I have already determined that Pechiney infringes the '419 patent.  You

should, therefore, find this element satisfied.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.f. (Unlawful Acts as Satisfying Intent Element), at 23 (4th ed. 2005)  The ABA instruction differs from the instruction submitted herein because the Court has already found, as a matter of law, that Pechiney infringed the '419 patent.

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.5.3    CAUSATION OF BREACH[12]

Cryovac also must show that Pechiney's intentional conduct caused a breach of one or

both of the contracts between Cryovac and National Beef.  A breach means that National Beef, in

the absence of legal excuse or impossibility of performance, failed to perform  any promise that

forms the whole or part of the contract.  A breach may occur with regard to either an express or

implied provision of the contract.  An express provision is one that is specifically agreed to by

the parties either orally or in writing.  An implied provision is one that is recognized by the

parties to exist and bind them in their actions despite the fact that it was not specifically spelled

out in the contract.  An implied provision often arises out of terms that were expressly set forth

in the contract and agreed to by the parties, and an implied promise constitutes a valid part of the

contract.

You, the jury, must then determine whether Pechiney was responsible for National Beef's

failure to perform the alleged contract or contracts with Cryovac as agreed.  This means that,

before you can decide in favor of Cryovac, you must find by a preponderance of the evidence

that, but for the actions of Pechiney, the contract or contracts that were not performed would

otherwise have been performed.

---

[12]  Note that the causation element appears in the substantive instructions between the
elements of intent and lack of justification in accordance with the ABA instructions.  This
diverges with the order of instructions in the general overview of the elements of the tort.
*See* Instruction 3.2, Elements of Liability.  To avoid jury confusion, we suggest that the
order of the elements in Instruction 3.2, Elements of Liability, be reordered to track the
order of the substantive instructions.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.a (Requirement That the Breach be Proximately Caused by the Defendant's Conduct) at 24 (4th ed. 2005); § 1.3.4.c (Casual Relationship:  Generally), at 26.

DB01:2094972.1                                                                                                      063527.1001

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.5.4.  PROXIMATE CAUSE OF INJURY

If you find that Cryovac did suffer the losses claimed, you must then determine whether Pechiney's conduct was the proximate cause of Cryovac's loss or damage.

In this regard, Pechiney's conduct will be considered to be the proximate cause of Cryovac's loss or damage if you find that it was a substantial factor in causing that loss or damage.  It need not be the *only* cause.  The conduct will be a substantial factor in causing the loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss or damage, considering a number of other contributing factors, such as whether Pechiney's conduct created a condition or chain of events that was continuous and active up to the time of the damage to the Cryovac, and the lapse of time between Pechiney's conduct and the damage to Cryovac.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.d. (Proximate Cause) (verbatim), at 27.

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.6    LACK OF JUSTIFICATION

You must next determine whether or not Pechiney's conduct was improper.  Should you find that the means Pechiney employed to induce the breach of contract between Cryovac and National Beef were unlawful in and of themselves, then you must find that Pechiney's conduct was improper, regardless of any justification that Pechiney may claim.  In this case, I have already determined that Pechiney infringes the '419 patent.  You should therefore, find this element satisfied.

Otherwise, the determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.    whether Pechiney violated a statute or engaged in conduct that was otherwise unlawful;

2.    the nature of Pechiney's conduct;

3.    Pechiney's motive;

4.    Cryovac's interests with which Pechiney interfered;

5.    the interests Pechiney sought to advance;

6.    the social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

7.    the proximity or remoteness of Pechiney's conduct to the interference claimed by Cryovac; and

8.    the relationship among Cryovac, National Beef, and Pechiney.

**Authority:**  *See* Restatement (Second) of Torts, § 767, cmts. (a) & (c) (interference may be improper even though innocent means are employed); American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35-37 (4th ed. 2005), § 1.4.3 at 37.

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 3.7    INJURY

If you conclude that Pechiney's conduct did cause Cryovac to sustain injury, then you

may award such damages as will reasonably compensate Cryovac for the losses Cryovac has

sustained from that breach of its contract or contracts with National Beef.  I will instruct you

later on the calculation of such damages.


**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*,
§ 1.3.4 (Proximate Cause) at 27, § 1.5 (Compensatory Damages) at 46 (4th ed. 2005).

DB01:2094972.1                                                                                063527.1001

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

4.    **TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

### 4.1    GENERALLY

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference, and is entitled to the protection of organized society, through the courts, whenever that right is unlawfully invaded.

In this case, if you find that Cryovac and National Beef did not form a contract in January 2004, Cryovac seeks damages from Pechiney for alleged interference with Cryovac's prospective business relationship with National Beef, or expectation of such relationship. That is, Cryovac contends that, because of Pechiney's conduct, Cryovac was prevented from entering into a four-year contract for various food packaging products with National Beef as of January 14, 2004, and as a result Cryovac suffered monetary loss. The question for you to decide is whether Cryovac's expectancy was in fact invaded by Pechiney, and whether, under all of the factors I will instruct you to consider, any such invasion was improper.

There are five elements that Cryovac must prove to prevail on its claim. If you find from your consideration of all of the evidence that Cryovac has proved each of these elements by a preponderance of the evidence, Cryovac will prevail on its intentional interference with prospective contractual relationship claim. If Cryovac prevails on this claim, then you will consider the question of the amount of money damages that may be awarded, under the instructions I will give you.

71

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation,*
§ 2.2.1 (Theory of Interference with Prospective Advantage) at 70 (4th ed. 2005).

063527.1001

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.2    ELEMENTS OF LIABILITY

To find Pechiney liable for tortious interference with prospective contractual advantage, you, the jury, must find from a preponderance of the evidence:

1.    There was a valid business relationship between Cryovac and National Beef or Cryovac had an expectancy of entering into a contract with National Beef;

2.    Pechiney knew or should have known of the business relationship or expectancy of contract between Cryovac and National Beef;

3.    Pechiney's conduct caused the loss of the business relationship or expectancy;

4.    Pechiney acted intentionally to either end the relationship or prevent the expectancy; and

5.    Pechiney's conduct proximately caused Cryovac's damages.

If you find that Cryovac has proved each of these elements by a preponderance of the evidence, then you will consider the question of the amount of money damages under instructions I will give you.

**Authority:**  *See* American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.2 (Elements of Liability) (verbatim), at 71 (4th ed. 2005).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.3    EXISTENCE OF BUSINESS RELATIONSHIP OR EXPECTANCY

Cryovac contends that, at the time of the National Beef's conduct, there existed a business relationship between Cryovac and National Beef or an expectancy of such relationship. You must first determine whether there existed a business relationship or expectancy of business relationship between Cryovac and National Beef.

In determining this question, the business relationship or expectancy of such relationship between Cryovac and National Beef need not be evidenced by a contract. It is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct between Cryovac and National Beef from which there would be a reasonable expectation of future economic benefit. Cryovac must show this expected benefit with some degree of specificity, such that it is a realistic expectation, but it need not be shown with certainty, because prospective things in nature are necessarily uncertain. The law requires more than a mere hope or optimism; what is required is a reasonable likelihood or probability.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.3 (Existence of Relationship) at 72-73 (4th ed. 2005).

DB01:2094972.1                                                                                                                063527.1001

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.4    KNOWLEDGE

To find for Cryovac, you must also find that Pechiney knew or had reason to know of

Cryovac's business relationship with National Beef or its negotiations and potential four-year

contract with National Beef.  To have knowledge means that Pechiney has information

concerning the business relationship or expectancy which was discovered by Pechiney or was

brought to Pechiney's attention by others.  In this regard, knowledge may be found to exist if,

from the facts and circumstances of which Pechiney had knowledge, Pechiney should have

known of the existence of the business relationship or expectancy between Cryovac and National

Beef.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.4
(Knowledge), at 74 (4th ed. 2005).

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.5     INTENTIONAL CONDUCT BY PECHINEY WHICH CAUSED A BREACH OF BUSINESS RELATIONSHIP OR EXPECTANCY BETWEEN CRYOVAC AND NATIONAL BEEF

You, the jury, must determine whether Pechiney was responsible for preventing Cryovac

from entering into the relationship with National Beef.  In other words, you must decide whether,

except for the interference from Pechiney, Cryovac was reasonably certain to have continued its

relationship or fulfilled the expectancy with  National Beef.

Pechiney's conduct will be deemed to be responsible for Cryovac's failure to

enter into the relationship if it was a substantial factor in causing National Beef not to enter into

the relationship or fulfill the expectancy with the plaintiff.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.5
(Causation) (verbatim), at 75 & § 2.5.2 (Substantial Factor) (verbatim), at 76 (4th ed. 2005).

DB01:2094972.1                                                                                          063527.1001

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 4.5.1  INTENT

Cryovac also must prove that Pechiney intended to induce National Beef to cease its business relationship or expectancy with Cryovac.  Conduct is intentional if it was done deliberately, with the purpose of inducing National Beef to breach its conduct with Cryovac.  If you find that Pechiney's conduct was not intentional, then you must find for Pechiney.

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act.  Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence.  Although witnesses may see and hear, and may be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing.  Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of evidence to the contrary, you may infer from Pechiney's conduct that Pechiney intended the natural and probable consequences of its actions.

In determining whether the defendant intentionally interfered with the business relationship or expectancy between Cryovac and National Beef, you may look at the Pechiney's conduct.  In the absence of evidence to the contrary, you may infer from Pechiney's conduct, or lack of conduct, that Pechiney intended those natural and probable consequences that one standing in like circumstances and possessing like knowledge should expect.  If you thereby find that Pechiney's conduct was in willful violation of a known right of Cryovac, then the requisite intent was present.

77

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3 (Requirement of Intent) (verbatim), at 17; § 1.3.3.b (Intent Defined) (verbatim), at 18; § 1.3.3.c (Proof of Intent) (verbatim), at 19; § 1.3.3.e (Summary of Requirement of Intent) (verbatim), at 22 (4th ed. 2005). *See also* §§ 2.6.1-2.6.3 (Intentional interference in context of claim for Tortious Interference With Prospective Contractual Relationship). Note that the virtually identical intent requirement from the element for tortious interference with contract is used here to conform to the instructions for that tort and avoid jury confusion.

78

REDACTED -- Public Version, filed 5/15/06

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.5.2   INTENT – UNLAWFUL ACTS

Should you find that Pechiney's conduct in interfering with Cryovac's relationship with National Beef was itself unlawful, you may find the necessary intent, without anything more.

In this case, I have already determined that Pechiney infringes the '419 patent.  You should, therefore, find this element satisfied.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.f at 23 (Unlawful Acts as Satisfying Intent Element) (4th ed. 2005).

79

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.5.3   CAUSATION OF BREACH

You, the jury, must determine whether Pechiney was responsible for preventing Cryovac from entering into the relationship with National Beef.  In other words, you must decide whether, except for the interference of Pechiney, Cryovac was reasonably certain to have entered into the relationship or fulfilled the expectancy with National Beef.

Pechiney's conduct will be deemed to be responsible for Cryovac's failure to enter into the relationship if it was a substantial factor in causing National Beef not to enter into the relationship or fulfill the expectancy with Cryovac.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.5.1 (Causation Generally), at 75, and § 2.5.2 (Substantial Factor), at 76 (4th ed. 2005).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.5.4   PROXIMATE CAUSE OF INJURY

If you find that Cryovac did suffer the losses claimed, you must then determine whether Pechiney's conduct was the proximate cause of Cryovac's loss or damage.

In this regard, Pechiney's conduct will be considered to be the proximate cause of Cryovac's loss or damage if you find that it was a substantial factor in causing that loss or damage.  It need not be the *only* cause.  The conduct will be a substantial factor in causing the loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss or damage, considering a number of other contributing factors, such as whether Pechiney's conduct created a condition or chain of events that was continuous and active up to the time of the damage to the Cryovac, and the lapse of time between Pechiney's conduct and the damage to Cryovac.

**Authority:**  American Bar Association, Model Jury Instructions: Business Torts Litigation, § 1.3.4.d. (Proximate Cause), at 27; § 1.5 (Compensatory Damages) at 46; § 2.8.3 (Substantial Factor), at 86 (4th ed. 2005).  Note that the virtually identical intent requirement from the element for tortious interference with contract is used here to conform to the instructions for that tort and avoid jury confusion.

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 4.6    COMPETITIVE PRIVILEGE

Pechiney asserts that its conduct was proper because it occurred during the course of competition between Pechiney and Cryovac.  The law recognizes that one is justified or privileged to cause a third party not to enter into or continue a business relationship or expectancy with one's competition as long as the conduct relates to competition between the two competitors and the party is acting, at least in part, to advance its own interests in such competition, and as long as the party does not use wrongful means to compete.

You must first determine, then, whether the conduct of the defendant relates to competition between Pechiney and Cryovac for the business of National Beef.  If you find that it does, then you will determine whether Pechiney's purpose was, at least in part, to advance Pechiney's interest in competing with Cryovac.  For example, if you should find that Pechiney was seeking to acquire the business diverted from Cryovac for itself, then as long as Pechiney's conduct was at least in part directed to that end, the fact that you may find it was also motivated by other reasons will not render it improper in the eyes of the law -- unless, as explained below, such conduct itself violated the law.

Unlawful conduct by Pechiney would defeat this " competitive privilege" defense.  In this case, I have already determined that Pechiney infringes the '419 patent.  You may not, therefore, find that Pechiney can claim the benefit of the  competitive privilege defense.  The defense is foreclosed as a matter of law.

**REDACTED -- Public Version, filed 5/15/06**

**Authority:**  American Bar Association, Model Jury Instructions: Business Torts Litigation, § 2.9.2 at 91, & Comment, at 91-92 ("[a]s noted above, unlawful conduct would defeat any [competitive] privilege") (4th ed. 2005); See also § 1.4.5 (Self-Interest as Proper or Improper Interference) at 40-41.

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

5.     PATENT INSTRUCTIONS -- VALIDITY

### 5.1     VALIDITY

Pechiney contends that claim 11 of the '419 patent is invalid for failure to satisfy the

legal requirements of patentability.  In particular, Pechiney contends that claim 11 is invalid for

anticipation, obviousness, lack of enablement, lack of a written description, and indefiniteness.  I

will instruct you on each of these defenses.


**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.

DB01:2094972.1                                                                    063527.1001

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.2    PRESUMPTION OF VALIDITY

The granting of a patent by the United States Patent Office carries with it the presumption

that the patent's subject matter is new, useful and constitutes an advance that was not, at the time

the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the

absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in

issuing the patent. Nevertheless, once the validity of a patent has been put at issue, it is the

responsibility of the jury to review what the Patent Office has done consistent with these

instructions on the law.

The Defendant, Pechiney, has the burden of proving invalidity of claim 11 by clear and

convincing evidence.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.1, *citing* 35 U.S.C. § 282; *Ethicon, Inc. v. Quigg*, 849 F.2d
1422, 1427 (Fed. Cir. 1988); *Tristrata Technology, Inc. V. ICN Pharma., Inc.*, C.A. No. 01-150-
JJF, D.I. 165 (D. Del. Nov. 21, 2003).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.3    THE WRITTEN DESCRIPTION REQUIREMENT

Pechiney contends that claim 11 of the '419 is invalid because it lacks an adequate written description. The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as a patent. The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the applicant made the invention having each of the elements described in the claims.

Therefore, to prove a claim invalid for lack of an adequate written description, Pechiney must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that Mr. Shah had possession of the invention (at the time of the application) as that invention was finally claimed in the issued patent. No particular form of written description is required.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.2, *citing Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (citing *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.4    ENABLEMENT

Pechiney also contends the patent is invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the invention. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art.  Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention. Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.3, *citing* 35 U.S.C. § 112; *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-02 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.5    NO UNDUE EXPERIMENTATION

Where the specification in the patent provides guidance in selecting the operating parameters that would yield the claimed result, it is fair to conclude that the experimentation required to make a particular embodiment is not 'undue.'

For Pechiney to prove that claim 11 is invalid due to lack of an enabling disclosure, Pechiney must prove by clear and convincing evidence that one of ordinary skill in the art upon reading the '419 patent at the time Mr. Shah's patent application was filed could not have made Mr. Shah's invention without undue experimentation.

**Authority:**    *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1359 (Fed. Cir. 1998); *Koito Mfg., Co., Ltd. v. Turn-Key-Tech, LLC,* 381 F.3d 1142, 1155-56 (Fed. Cir. 2004); *PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1565 (Fed. Cir. 1996).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

<u>5.6    ANTICIPATION - GENERALLY</u>

Pechiney contends that the invention covered by claim 11 of the '419 patent is invalid because it is not new.  A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If it is not new, we say that it was "anticipated" by the prior art.  "Prior art" is the legal term used to describe what others had done in the field before the invention was made, and may include patents and publications.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.  It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents.

An invention that is "anticipated" by the prior art is not entitled to patent protection. To prove that an invention is "anticipated," Pechiney must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the elements of the claimed invention.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 4.5.

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.7    CLAIM CONSTRUCTION

It is the Court's duty under the law to define what the claimed invention is. I have made

my determination and I will now instruct you on the meaning of claim 11 of the '419 patent. You

must use the meaning that I give you for each patent term to make your decision as to whether a

prior art reference anticipates all elements of the claimed invention. You must ignore any

different definitions used by the witnesses or the attorneys. The meaning of the term "oriented"

in claim 11 of the '419 patent is:

> "heated and stretched to realign the molecular configuration, this
> stretching accomplished by a racking or blown bubble process."

The meaning of the term "arranged symmetrically" in claim 11 of the '419 patent is:

> "putting the layers in a desired symmetrical order when the film is
> viewed in cross-section, so that the layers are in the same order on
> each side of the core of the film, for example c/d/b/a/b/d/c. This
> claim phrase limits only the arrangement of the layers, and does
> not require precise identity in the thickness of the layers or the
> amounts of recited components or additives that may be included
> in the layers."

**Authority**:    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 3.3.2, *citing Tristrata Technology, Inc. v. ICN Pharma., Inc.*,
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003). *See also* Judge Jordan's Opinion and
Order dated April 13, 2006 regarding claim construction in this case.

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 5.8    PRIOR ART -- DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is March 21, 1986.  Ordinarily, art dated before the application filing date is prior art to the patent claims.

There is, however, an exception under which art dated before the application filing date is not prior art. This occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

**Authority**:  Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.9    REDUCTION TO PRACTICE -- DATE OF INVENTION

To establish an actual reduction to practice, Cryovac must show: (1) Mr. Shah had constructed an embodiment of his invention that met all the limitations of the claim, and (2) that he determined the invention would work for its intended purpose, which may or may not necessitate some testing of the embodiment.

Once the invention has been shown to work for its intended purpose, reduction to practice is complete. This is the date of invention.

**Authority:**    Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1; *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998); *Loral Fairchild v. Matsushita Elec. Indus. Co., Ltd.*, 266 F.3d 1358, 1362-63 (Fed. Cir. 2001)

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 5.10    PRIOR ART -- BURDEN

Because of the statutory presumption of patent validity, Pechiney bears the burden of proving by clear and convincing evidence that the art Pechiney relies on is prior to Mr. Shah's date of invention.

A reference, publication, patent, or public knowledge or use that is dated *after* the inventor reduces his invention to practice (i.e., the inventor makes his invention and the invention is shown to work for its intended purpose), *cannot* invalidate the inventor's patent claim.

**Authority:**    Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1; *Loral Fairchild v. Matsushita Elec. Indus. Co., Ltd.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.11    PRIOR PUBLIC KNOWLEDGE OR USE

Pechiney contends that claim 11 of the '419 patent is invalid as anticipated because Pechiney argues the invention defined in claim 11 was publicly known or in public use prior to Mr. Shah's date of invention.  It is important to remember that the prior knowledge and use must be *public knowledge and use*.  That is, it must have been *accessible to the public*.

Determining whether a use was a "public use" requires considering and weighing such factors as the nature of the activity that occurred in public, the public access to and knowledge of the public use, and whether there was any confidentiality obligation imposed on persons who observed the use.  All of the circumstances must be considered.

Moreover, the public knowledge or use must enable one of ordinary skill in the art to practice the invention in order to invalidate the patent.

One who relies on prior public knowledge and use to defeat validity must sustain such anticipation by clear and convincing proof.

**Authority:**    *Soundscriber Corp. v. United States,* 360 F.2d 954, 960 (Ct. Cl. 1966);  *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1574 (Fed. Cir. 1995);  *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.,* 343 F.Supp.2d 272, 306 (D. Del. 2004).

94

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.12    PRIOR INVENTION

Pechiney contends that the '419 patent is invalid because someone else invented the invention before the patentee did.

In the United States, a patent is awarded to the first inventor. A patent claim is invalid if: (i) the invention defined by that claim was invented by another person in the United States before it was invented by the patentee; and (ii) that other person did not abandon, suppress or conceal the invention.

A party abandons, suppresses or conceals the invention if, after reducing the invention to practice, the party unreasonably delays making the invention public, selling it or otherwise using it for a commercial purpose.

There is no particular length of delay that is per se unreasonable. You must decide whether, under the facts before you, any delay between the reduction to practice and public disclosure was reasonable or excused. In making this determination, you should consider the length of the delay period, the existence and nature of any activity during the delay period, or the lack of activity during the delay period. If there was a lack of activity, consider the cause of the resumption of activity.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed with an enabling disclosure or when the invention is actually made and is shown to work for its intended purpose. Thus, if another person reduces to practice an invention before the inventor on the patent, then the invention reduced to practice by the other person generally will be prior art.

**REDACTED -- Public Version, filed 5/15/06**

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.5.3, *citing* 35 U.S.C. §§ 102, 151; *Dow Chemical Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1342 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362 (Fed. Cir. 2000); *Checkpoint Systems, Inc. v. U.S., Intern. Trade Comm'n*, 54 F.3d 756,761-63 (Fed. Cir. 1995); *Eaton v. Rockwell*, C.A. No. 97-421 -JJF (June 30, 1998); *Arigenetics v. Monsanto, et al.*, CA. No. 96-505-RRM (Jan. 30, 1998); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.13    PRIOR PUBLICATION

Pechiney contends that claim 11 of the '419 patent was anticipated because Pechiney

argues that the invention defined in that claim was described in a prior publication, such as an

article or another patent.  A patent claim may be anticipated and invalid if Pechiney can prove by

clear and convincing evidence that the entire invention defined by that claim was described in a

printed publication either: (i) before Mr. Shah made his invention; or (ii) more than one year

before Mr. Shah's patent application was filed.

For a printed publication to anticipate claim 11 of the '419 patent, Pechiney must show

that the printed publication, when read by a person of ordinary skill in the art, expressly or

inherently embodies or discloses a product containing each element of Cryovac's claim 11.  The

disclosure in the printed publication must be complete enough to enable one of ordinary skill in

the art to practice the invention without undue experimentation.   In determining whether the

disclosure is enabling, you should take into account what would have been within the knowledge

of a person of ordinary skill in the art at the time, and you may consider expert testimony and

other publications that shed light on the knowledge such a person would have had at that time.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.5.4, *citing* 35 U.S.C. § 102; *Northern Telecom, Inc. v.
Datapoint Corp.*, 908 F.2d 931, 936-37 (Fed. Cir. 1990); *Honeywell International, Inc. v.
Hamilton Sundstrand Corp.*, C.A. No. 99-309-GMS (Feb. 15, 2001); *Baxter International, Inc. v.
Cobe Laboratories, Inc.*, 88 F.3d 1054 (Fed. Cir. 1996); *Tristrata Technology, Inc. v. ICN
Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.14    ANTICIPATION REQUIRES AN ENABLING DISCLOSURE

To be enabling means the prior art must disclose particular materials and a particular methodology to produce the claimed invention such that one of ordinary skill in the art could practice the claimed invention without undue experimentation.

Prior art United States patents are presumed to be enabled for what that prior art patent discloses. The presumption of enablement, however, may be overcome by showing that the prior art patent's disclosure does not disclose particular materials or a particular methodology to produce the claimed invention. There is no presumption of enablement for any prior art other than United States patents.

If prior art does not provide enough information to enable one of ordinary skill to make the invention of claim 11 of the '419 patent, then that prior art cannot invalidate the claim by anticipation.

**Authority:**    *Novo Nordisk Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1355-56 (Fed. Cir. 2005); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354-55 (Fed. Cir. 2003); *Constant v. Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1569 (Fed. Cir. 1988); *Integra LifeSciences I Ltd. v. Merck KGaA,* 50 U.S.P.Q. 1846, 1851 (S.D. Calif. 1999).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.15    OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of *ordinary* skill in the art at the time it was made by the inventor.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Pechiney.

2.    Identify the differences, if any, between claim 11 of the '419 patent and the prior art identified by Pechiney.

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the '419 patent was made.

4.    Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8, *citing Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkie Lures v. Gene Lerew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 0l-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

99

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.16    SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not the claimed invention would

have been obvious to one of ordinary skill in the art, you must first determine the scope and

content of the prior art. This means that you must determine what prior art is reasonably

pertinent to the particular problem that Mr. Shah faced. Prior art is reasonably pertinent if it is in

the same field as the claimed invention or is from another field that a person of ordinary skill

would look to in trying to solve the problem the named inventor was trying to solve. Prior art

includes the following:

1.    Patents that issued before Mr. Shah's date of invention;

2.    Patents having a publication date before Mr. Shah's date of invention;

3.    U.S. Patents that have a filing date prior to Mr. Shah's date of invention;

4.    Anything in public use or on sale in the United States before Mr. Shah's
date of invention;

5.    Anything that was publicly known or used by others in this country before
Mr. Shah's date of invention; and

6.    Anything that was made or built or any process that was used in this
country by another person before Mr. Shah's date of invention, where the
thing made or built or the process used was not abandoned, suppressed or
concealed.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court
of the District of Delaware, Instruction 4.8.1, *citing Tristrata Technology, Inc. v. ICN*

DB01:2094972.1                                                                                      063527.1001

*Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 864 (Fed. Cir. 1993).

DB01:2094972.1                                                     063527.1001

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.17   DIFFERENCES OVER THE PRIOR ART [AGREED]

You must next consider the differences, if any, between the prior art and the claimed

invention. Although it is proper for you to consider differences between the claimed invention

and the prior art, you should not focus only on the differences, because the test is whether the

claimed invention as a whole would have been obvious over all of the prior art.  Claim 11 must

be considered in its entirety.

**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.8.2, *citing Tristrata Technology, Inc. v. ICN Pharma, Inc.*,
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.18    LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed

invention pertains at the time the claimed invention was made. Factors to be considered in

determining the level of ordinary skill in the pertinent art include the educational level of the

inventor, the types of problems encountered in the art, the prior art patents and publications, the

activities of others and prior art solutions to the problems encountered by the inventor, the

sophistication of the technology, and the education of others working in the field.

**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.8.3, *citing Tristrata Technology, Inc. v. ICN Pharma., Inc.*,
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

103

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.19   MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS

Once the prior art is assembled and considered, you should determine whether the prior

art, considered as a whole, suggests the claimed invention. Prior art references may be combined

to show obviousness *if* there is some motivation or suggestion to combine the references *and* if

the combination would be reasonably likely to achieve the goal of the invention. *Both* the

suggestion or motivation to combine *and* the expectation of success must be found in the prior

art.

**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.8.4, citing In re Dembiczak, 175 F.3d 994, 999 (Fed. Cir.
1999); C.R. Bard, Inc. v. M3 Sys. Inc., 157 F.3d 1340, 1352 (Fed. Cir. 1998); Gambro Lundia
AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1579 (Fed. Cir.. 1997); Tristrata Technology,
Inc. v. ICN Pharma., Inc., C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.20    OBVIOUSNESS - HINDSIGHT

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claim in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the '419 patent as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Instead, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.5, *citing In re Dembiczak*, 175 F.3d 994,999 (Fed. Cir. 1999); *Tristrata Technology, inc. v. ICN Pharma., Inc.*, C.A. No. 0l-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

105

II.     **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

## 5.21   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must also consider the following objective evidence that may tend to show the *non*-obviousness of claim 11:

1.     Commercial success or lack of commercial success of products covered by the patents in suit;

2.     A long-felt need in the art that was satisfied by the invention of the '419 patent;

3.     The failure of others to make the invention;

4.     Copying of the invention by others in the field;

5.     Unexpected results achieved by the invention;

6.     Praise of the invention by the infringer or others in the field;

7.     Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

8.     Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product *other than* those claimed

106

Case 1:04-cv-01278-KAJ    Document 328-3    Filed 05/15/2006    Page 47 of 72

**REDACTED -- Public Version, filed 5/15/06**

in claim 11 of the '419 patent, then any commercial success may have no relation to the issue of obviousness.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.6, *citing ISCO Int'l v. Conductus, Inc.*, C.A. No. 01 -487-GMS; *Ransomes, Inc. v. Great Dane Power Equip.*, 232 F.3d 911 (Fed. Cir. 2000) (unpublished); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01.-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

107

DB01:2094972.1                                                                                                063527.1001

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 5.22   OBVIOUS TO TRY

The evidence might indicate to you that what Mr. Shah did was obvious to try.  If so, this

does *not* indicate the patent is invalid for obviousness.  "Obvious to try" is *not* the standard;

rather, it is whether the invention as a whole would have been obvious to those of ordinary skill

in the pertinent art at the time Mr. Shah made the invention.


**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.8.7, *citing Tristrata Technology, Inc. v. ICN Pharma., Inc.*,
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

108

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

6.    PATENT DAMAGES

### 6.1    PATENT DAMAGES - GENERALLY

If, after considering all of the evidence and the law as I have stated it, you have

determined that clear and convincing evidence shows that infringed claim 11 of the '419 patent

is invalid, then your verdict should be for Pechiney and you need go no further in your

deliberations.  If claim 11 of the '419 patent is valid, you must then turn to the issue of damages.

**Authority:**  Uniform Jury Instructions for Patent Cases in the United States District Court for the
District of Delaware 2004, Instruction 5.1.

DB01:2094972.1                                    063527.1001

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 6.2    COMPENSATORY PATENT DAMAGES IN GENERAL

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Pechiney benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Pechiney did not foresee that it would cause Cryovac damage at the time that it infringed claim 11. The only issue is the amount necessary to adequately compensate Cryovac for Pechiney's infringement. Adequate compensation should return Cryovac to the position it would have occupied had there been no infringement.

**Authority**: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.2.

110

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 6.3    PATENT DAMAGES - BURDEN OF PROOF

Cryovac has the burden of proving damages by a preponderance of the evidence and is

entitled to all damages that can be proven with reasonable certainty.  On the one hand,

reasonable certainty does not require proof of damages with mathematical precision.  Mere

difficulty in ascertaining damages is not fatal to Cryovac's right to recover.  On the other hand,

Cryovac is not entitled to speculative damages; that is, you should not award any amount of loss

that, although possible, is wholly remote or the result of mere conjecture.  You may base your

evaluation of reasonable certainty on opinion evidence.  Any doubts regarding the computation

of the amount of damages should be resolved against Pechiney and in favor of Cryovac.


**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the
District of Delaware 2004, Instruction 5.3.

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

6.4    TWO TYPES OF PATENT DAMAGES -
LOST PROFITS AND REASONABLE ROYALTY

There are two types of damages for patent infringement.

The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.

The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

**Authority:**  AIPLA's Model Patent Jury Instructions (Version 1.1, February 2006), Instruction 12.2;  The Federal Circuit Bar Association Model Patent Jury Instructions[13], Instruction 12.2.

---

[13] Need to identify version/year.

DB01:2094972.1                                    063527.1001

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

6.5    PATENT LOST PROFITS - GENERALLY

In this case, Cryovac is seeking lost profits as its patent damages. Lost profits damages are the profits Cryovac asserts it lost because of Pechiney's infringement. They are not the profits Pechiney actually made. Cryovac's lost profits may be in several forms, but are commonly in the form of lost sales. In this case, Cryovac must establish that Pechiney's infringement caused its lost profits. Thus, Cryovac must show that "but for" the infringement, Cryovac would have made the sales or profits that were allegedly lost.

**Authority**: Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.7.

.

113

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

<u>6.6</u>    <u>PATENT LOST PROFITS - CRYOVAC'S COMPETING PRODUCT</u>

Cryovac need not sell the patented invention to qualify for lost profits damages.  Rather, to adequately compensate Cryovac for Pechiney's infringement, Cryovac's damages include Cryovac's lost profits on competing products not covered by the infringed claim.

**Authority**:  *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995).

DB01:2094972.1                                                                063527.1001

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 6.7    PATENT LOST PROFITS - *PANDUIT* APPROACH

Cryovac is claiming that it lost sales because of Pechiney's infringement.  To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales.  A standard way of proving lost profits is for the patent owner to show:

1.    there was demand for the patented product;

2.    Cryovac had the ability to meet the market demand;

3.    no acceptable non-infringing substitutes were available; and

4.    the amount of profit Cryovac would have made.

If there are other ways to show that Pechiney's infringement in fact caused Cryovac's lost profits, that is acceptable as well.

Cryovac need not negate every possibility that purchasers of Pechiney's infringing products might have bought another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products.  However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute.

In proving its damages, Cryovac's burden of proof is not an absolute one, but rather a burden of reasonable probability.  If it is reasonably probable that Cryovac would have made some or all of the infringing sales, and it is reasonably probable what amount Cryovac would

have netted from the denied sales, then Pechiney is liable for the lost profits of those infringing

sales.

**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.8, modified in light of the Federal Circuit's decisions in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) and *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) ("If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable").

116

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 6.8    PATENT LOST PROFITS - MARKET SHARE APPROACH

It is not necessary for Cryovac to prove that Cryovac and Pechiney were the only two suppliers in the market for Cryovac to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "acceptable non-infringing substitutes" were available from suppliers who would have made only some, but not all, of the sales that were made by Pechiney, then Cryovac may be entitled to lost profits on a portion of the infringing sales. The burden is on Cryovac, however, to show a reasonable probability that it would have sold that portion if Pechiney's product had never existed. By the same token, even if you find that Cryovac and Pechiney were the only two suppliers of products having the advantages of the patented product, it does not necessarily mean that Cryovac would have made all Pechiney's sales. The burden is on Cryovac to show that its product competed in the same market with Pechiney' s product and that it would have made those sales if the infringement had not occurred.

**Authority**: AIPLA's Model Patent Jury Instructions (Version 1.1, February 2006), Instruction 12.9 (citing *Crystal Semiconductor Corp. v. Tritech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1354-55 (Fed. Cir. 2001); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989)).

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

### 6.9    PATENT LOST PROFITS - ACCELERATED ENTRY/HEAD START

As another part of your lost profits analysis, you must determine whether Cryovac has lost and will loose more sales to Pechiney after the '419 patent expired on March 21, 2006, than it would have lost if Pechiney first began selling its infringing product after the patent expired. In considering Cryovac's contention on head-start damages, you should be aware that after the patent is expired all parties, including Pechiney, can rightly sell a product with features covered by the expired patent.

In order to recover damages under this rule, Cryovac must prove by a preponderance of evidence that by infringing Cryovac's patent, Pechiney has made and will make sales after the expiration date of the patent that it would not have made had Pechiney waited until the day the patent expired to begin marketing the patented product.

If you find that Pechiney had made and will make a greater number of post-expiration sales than it would have made if it began selling its product after the patent expired, then you may award Cryovac lost profits on these additional sales provided Cryovac can also show: (i) that it would have made the additional sales Pechiney has and will make because of Pechiney's early entry into the market, and (ii) a reasonable calculation of the amount of damages.

**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.10.

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 6.10    FUTURE PATENT PROFITS - DETERMINATION

In considering the element of future profits, you should determine whether or not Pechiney's infringement of the '419 patent prevented Cryovac from earning profits that it would have earned but for that infringement. In determining whether or not any part of Cryovac's damages constitute future profits, you may consider the past experience of Cryovac and Pechiney in the business, the competition Cryovac would have had, and the general market conditions. Cryovac cannot rely upon mere speculation.

**Authority:** Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.13.

**REDACTED -- Public Version, filed 5/15/06**

II.    **CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS**

6.11    REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES

In this case, Cryovac alternatively seeks damages in the amount of a reasonable royalty for Pechiney's sales of infringing ClearShield® products. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Cryovac and Pechiney, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be February-March 2004 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Pechiney was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Pechiney. You must also assume that Cryovac would have been willing to grant a license. Finally, you must assume that both Cryovac and Pechiney knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Pechiney's use of the patented invention, including the opinion testimony of experts.

120

**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.14.

.

DB01:2094972.1                                                                                063527.1001

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 6.12    FACTORS FOR DETERMINING
### REASONABLE ROYALTY FOR PATENT DAMAGES

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    The royalties received by Cryovac for the licensing of others under the '419 patent;

2.    The rates paid by Cryovac, Pechiney, or others for the use of other patents comparable to the '419 patent;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Cryovac's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Cryovac and Pechiney, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of Pechiney, the existing value of the invention to Cryovac as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the '419 patent and the length of the licenses;

122

8.    The established profitability of the product made under the patent, its commercial success and its current popularity;

9.    The utility and advantages of Cryovac's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.   The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Cryovac, and the benefits to those who have used the invention;

11.   The extent to which Pechiney has made use of the invention, and any evidence that shows the value of that use;

12.   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Pechiney;

14.   The opinion testimony of qualified experts; and

15.   Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.14.1.

DB01:2094972.1                                                                                                    063527.1001

II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 6.13    PATENT DAMAGES INTEREST  [AGREED]

None of the parties' calculations include interest.  Therefore, in arriving at your damages

calculation, you should not consider interest in any way because it is the function of the Court to

award interest.


**Authority**:  Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.15.

DB01:2094972.1                                                     063527.1001

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 7.    DAMAGES FOR BUSINESS TORT CLAIMS

#### 7.1    GENERALLY[14]

The law recognizes that plaintiffs are entitled to compensatory damages where they have established intentional interference with contractual relations or prospective contractual relations. Compensatory damages will consist of the plaintiff's direct economic losses and out-of-pocket expenses resulting from the defendant's conduct.  In other words, the defendant is liable for all damages suffered by the plaintiff that were caused by the defendant's conduct.

Accordingly, should you find that Pechiney is liable for procuring or causing a breach of one or both of Cryovac's contracts with National Beef then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from that breach of its contract or contracts.

Similarly, should you find that Pechiney is liable for interfering with Cryovac's business relationship or expectancy of business relationship with National Beef, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from the loss of a business relationship with National Beef.

---

[14] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, at 46-47 (4th ed. 2005).

## II.     CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 7.2     DAMAGES:  IMPOSSIBILITY OF PRECISE CALCULATION NO BAR TO RECOVERY[15]

If you find that Cryovac has in fact suffered damage to its business or property, the fact that the precise amount of damage may be difficult to ascertain does not impair Cryovac's right to recover damages.  Although you may not render a verdict based upon mere speculation or guesswork, Cryovac is allowed some reasonable leeway in its method and proof of damage.

Although the law places a burden upon Cryovac to prove such facts as will enable you, the jury, to arrive at the amount of damages with reasonable certainty, it is not necessary that Cryovac prove the amount of those damages with mathematical precision.  It is required that Cryovac present only such evidence as might reasonably be expected to be available under the circumstances.

You are permitted to determine the amount of damage by estimation or approximation, as long as a reasonable basis for such estimate or approximation is shown with reasonable certainty. You may use any formula or theory for determining damages that is based upon the evidence in the case and that you believed to be reasonable; you are not bound to reject a formula or theory simply because it does not measure damages to the exact dollar and cent.

---

[15] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, at 48 (4th ed. 2005).

**REDACTED -- Public Version, filed 5/15/06**

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 7.3    RECOVERABLE ELEMENTS OF DAMAGES[16]

In determining the amount of compensatory damages, you may consider whether Cryovac suffered any measurable loss of profits by reason of Pechiney's conduct. You should be guided by the rule that Cryovac is entitled to any profits that Cryovac would, with reasonable certainty, have enjoyed, were it not for Pechiney's tortious interference with contract or tortious interference with contractual relations, you are entitled to consider Cryovac's past earnings in its business and, in particular, those past earnings resulting from contracts of the nature of the contract in this case. You should also consider all of the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of lost profits.

---

[16] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, at 49 (4th ed. 2005).

II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 7.4    MITIGATION/LOST VOLUME SELLER

Generally, the measure of damages for one who is harmed by a breach of contract is tempered by a rule requiring that the injured party make a reasonable effort, whether successful or not, to minimize the losses suffered. To mitigate a loss means to take steps to reduce the loss. Generally, if an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have produced under the same circumstances. This reduction, however, must be measured with reasonable probability.

Here, however, the general rule does not apply. Pechiney is not entitled to raise the defense of mitigation because Cryovac is a "lost volume seller." A "lost volume seller" is one whose supply of particular goods exceeds the market demand for such goods. Because, regardless of whether there has been a breach of contract, such seller is in a position to satisfy all buyers who are willing to deal with him or her, typical damage provisions do not adequately compensate him or her for the profits lost as a result of the lost sales opportunity stemming from a contractual breach. If a "lost volume seller" resells the goods it expected to sell to the original buyer to a third-party, it usually deprives itself of a sale to that third party that it would have enjoyed absent the contractual breach.

Therefore special damages rules apply in the case of a lost volume seller. The measure of damages for a "lost profit seller" is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages, due allowance for costs reasonably incurred, and due credit for payments or proceeds of resale. Incidental damages include any commercially reasonable charges, expenses or commissions

128

incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.

**Authority:**  Delaware Pattern Jury Instructions, Civil § 22.26 (2000); 67A Am. Jur. 2d *Sales* §1004 (2004) ("defining lost volume seller"); UCC § 2-708 and § 2-710.

**REDACTED -- Public Version, filed 5/15/06**

## II.    CRYOVAC'S PROPOSED FINAL JURY INSTRUCTIONS

### 8.    DELIBERATION AND VERDICT[17]

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

---

[17] The "Deliberation and Verdict" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at pages 7-9.

REDACTED -- Public Version, filed 5/15/06

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any hint as to what verdict I think you should find. What the verdict shall be is your sole and exclusive duty and responsibility.

That concludes the part of my instructions explaining the rules for considering the testimony and evidence. Now let me finish up by explaining how you may communicate questions or messages to the Court.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the Jury Officer. The question will be given to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally sent to me through the foreperson, who by custom of this Court is juror Number 1.

One more thing about messages. Do not ever write down or tell anyone else how you stand on your votes. For example, do not write down or tell anyone else that you are split 6-2, or 4-4, or whatever your vote happens to be. That should stay secret until you are finished.

Let me finish by repeating something I said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in favor of either party. You must decide the case yourselves based on the evidence presented.

DB01:2094972.1

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

**Authority:**     Uniform Jury Instructions in the United States District Court for the District of Delaware.

DB01:2094972.1

063527.1001