REDACTED -- Public Version, filed 5/15/06

# TAB B

**REDACTED -- Public Version, filed 5/15/06**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-1278-KAJ |
| PECHINEY PLASTIC PACKAGING, INC. | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |


**CRYOVAC'S OBJECTIONS/COMMENTS**

**TO PECHINEY'S PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

I.    Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction .................5

    A.    The Nature of the Case: ................................................................................5

    B.    The Patent System, Generally.....................................................................11

    C.    How a Patent is Obtained...........................................................................15

    D.    The Parts of a Patent .................................................................................19

    E.    Video and Glossary:...................................................................................23

          GLOSSARY OF PATENT TERMS.............................................................24

II.   Cryovac's Objections/Comments To Pechiney's Final Jury Instruction..........................26

    1.    General Introduction: .................................................................................26

    9.2   Cryovac's Contentions:...............................................................................28

    9.3   Pechiney's Contentions:..............................................................................31

    9.4   Summary of Issues:.....................................................................................33

    10.   Burdens of Proof:........................................................................................35

    12.   The Claim of the Patent in Suit:..................................................................38

    12.2  Limitations of the Claim at Issue: ..............................................................39

    12.2.1 Limitations of the Claim at Issue [Alternative]: ......................................41

    12.3  Comprising:................................................................................................43

    13.   Invalidity--in General: ...............................................................................45

    13.1  Written Description:....................................................................................48

    13.1  Written Description.....................................................................................48

    13.2  Enablement: ...............................................................................................50

    13.3  The Prior Art:.............................................................................................53

    13.3.1 Prior Art--Date of Invention: ..................................................................55

    13.3.2 Prior Art--Prior Public Use or Knowledge: ............................................57

13.3.3 Prior Art--Prior Printed Publication: ....................................................60

13.3.4 Prior Art--Prior Patents: ....................................................................62

13.3.5 Prior Art--Prior Invention: ..................................................................64

13.4    Anticipation/Lack of Novelty: .............................................................66

13.5    Obviousness: .....................................................................................69

13.5.1 The Scope and Content of the Prior Art: ............................................72

13.5.3 Level of Ordinary Skill: .....................................................................74

13.5.4 Objective Indications Concerning Obviousness: ..................................75

13.5.5 Independent Invention by Others: ......................................................77

13.5.6 Determination of Obviousness: ..........................................................79

14.     Willful Infringement: ..........................................................................81

14.1    Knowledge of the Patent: ...................................................................85

14.2    Licenses: ...........................................................................................86

14.2.1 Accused Infringer's Patents: ..............................................................88

14.3    Notice of Infringement: ......................................................................90

14.4    Advice of Counsel: ............................................................................92

14.5    Copying or Designing Around a Patent: ..............................................94

15.     Damages for Patent Infringement--in General: ....................................96

15.1    Compensatory Patent Damages: .........................................................98

15.2    Date Damages Begin and End: ..........................................................100

15.3    Burden of Proof: ..............................................................................103

15.4    Two Types of Damages--Lost Profits and Reasonable Royalty: ..........105

15.5    Entire Market Value Rule: .................................................................107

15.6    Lost Profits--in General: ...................................................................108

15.7    Lost Profits Due to Lost Sales: .........................................................110

DB01:2095760.2                                                                    063527.1001

15.7.1  Demand: ........................................................................................................112

15.7.2  Manufacturing and Marketing Ability: ...............................................................113

15.7.3  Absence of Acceptable Non-Infringing Substitutes: ............................................114

15.8    Amount of Lost Profits: .....................................................................................116

15.9    Reasonable Royalty: ..........................................................................................118

15.9.1  What is a Reasonable Royalty?: ..........................................................................120

15.9.2  Factors for Determining a Reasonable Royalty: ..................................................122

15.10   Total Patent Infringement Damages: ..................................................................124

15.11   Closing Statement--Patent Infringement Damages: .............................................125

Pechiney's Instruction No. 16.  Tortious Interference with a Contractual
Relationship – Generally ....................................................................................127

Pechiney's Instruction No. 16.1.  Tortious Interference with a Contractual
Relationship --Elements of Liability .....................................................................1301

Pechiney's Instruction No. 16.2.  Requirement of a Contract ......................................1334

Pechiney's Instruction No. 16.3.  Use of Extrinsic Evidence to Construe Contract ........137

Pechiney's Instruction No. 16.4.  Definitions of Types of Extrinsic Evidence................138

Pechiney's Instruction No. 16.5.  Rules for Applying Extrinsic Evidence .....................140

Pechiney's Instruction No. 16.6.  Requirement of Knowledge ......................................141

Pechiney's Instruction No. 16.7.  Requirement of Intent ..............................................141

Pechiney's Instruction No. 16.8.  Requirement of "Malice" ..........................................143

Pechiney's Instruction No. 16.9.  Proper or Improper Interference Defined ..................146

Pechiney Instruction 16.10:  Pechiney's Motive .........................................................148

Pechiney's Instruction No. 16.11.  Requirement ..........................................................149

Pechiney Instruction 16.12:  Breach Defined ..............................................................151

Pechiney Instruction 16.13:  Breach Required ............................................................152

Pechiney Instruction 16.14:  Proximate Cause ............................................................153

DB01:2095760.2                                                               063527.1001

Pechiney's Instruction No. 17.  Damages for Tortious Interference with Contract .........156

Pechiney Instruction 17.1 Recoverable Elements of Damages for Interference
     with Contract ................................................................................................158

Pechiney's Instruction No. 17.2.  Duty to Mitigate Damages ..........................................161

Pechiney's Instruction No. 18.  Tortious Interference with Prospective
Contractual Relations ........................................................................................................162

Pechiney's Instruction No. 18.1.  Elements of Liability ...................................................164

Pechiney's Instruction No. 18.2.  Expectancy Requirement .............................................167

Pechiney's Instruction No. 18.3.  Knowledge Requirement .............................................169

Pechiney's Instruction No. 18.4.  Intentional Interference ...............................................170

Pechiney's Instruction No. 18.5.  Requirement of "Malice" ............................................172

Pechiney's Instruction No. 18.6.  Proper or Improper Interference Defined ...................175

Pechiney's Instruction No. 18.7.  Pechiney's Motive ......................................................178

Pechiney's Instruction No. 18.8.  Causation Requirement ...............................................179

Pechiney's Instruction No. 18.9.  Competition as Proper or Improper Interference ........181

Pechiney's Instruction No. 19.  Damages for Tortious Interference with
Prospective Contractual Relations ...................................................................................183

Pechiney's Instruction No. 19.1.  Compensatory Damages..............................................185

20.     Deliberations and Verdict .................................................................................188

20.1    Duty to Deliberate............................................................................................190

20.2    Court Has No Opinion .....................................................................................192

DB01:2095760.2                  063527.1001

I.    Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction

A.    The Nature of the Case:

**Pechiney's Instruction**

A.    **The Nature of the Case**

In this case, plaintiff Cryovac, Inc. has accused defendant Pechiney Plastic Packaging, Inc. of infringing one of its patents, and of knowingly using that infringement to cause one of plaintiff's customers (National Beef, Inc.) to break an alleged sales contract it had with plaintiff and to start buying goods from defendant. Defendant denies these accusations and argues that plaintiff's patent was invalid, that it had a good faith belief that it did not infringe, that plaintiff never had a binding contract with National Beef, that it did not know of any binding contract between plaintiff and National Beef and that defendant had a legal right to seek and win National Beef's business for itself. I will refer to Cryovac, Inc. as "Cryovac" and Pechiney Plastic Packaging, Inc. as "Pechiney."

Cryovac owns United States Patent No. 4,755,419. This patent relates to certain types of multilayer plastic films intended for packaging various articles including perishable food products. During the trial, the parties may offer evidence to familiarize you with this technology.

The named inventor is Gautam P. Shah.

Patents are often referred to by their last three digits. The patent in this case may be called the '419 patent by the lawyers and witnesses during this trial. It may also be called "Cryovac's patent," or "the Shah Patent."

Cryovac argues that, when Pechiney made and sold plastic film bags under the trademark "ClearShield" to Cryovac's former customer, National Beef, that Pechiney knew that its ClearShield bags infringed the '419 patent, but that Pechiney intentionally made those sales

anyway. Pechiney argues that the '419 patent was invalid because it did not add any new developments to inventions which predated it.

It is Cryovac's burden to establish, by clear and convincing evidence, that Pechiney willfully infringed the '419 patent. It is Pechiney's burden to prove that '419 patent was invalid by clear and convincing evidence.

In this case, Cryovac is contending that Pechiney's allegedly knowing and willful infringement of its '419 patent enabled it to cause one of Cryovac's customers, National Beef, to break a sales contract for plastic bags that it allegedly had with Cryovac and to begin buying its plastic bags from Pechiney. Pechiney contends that Cryovac never had a binding contract with National Beef and that Pechiney had no knowledge of any such contract. Pechiney further contends that it had the legal right to compete for and to win National Beef's business, even though Cryovac had been National Beef's prior supplier of plastic bags. I have already determined as a matter of law that Pechiney infringed claim 11 of the '419 patent. It is Cryovac's burden to prove (1) that Pechiney's infringement of the '419 patent was both knowing and willful; (2) if it was knowing and willful, then that knowing and willful infringement was what enabled Pechiney to win the National Beef account; (3) that Cryovac had a binding sales contract with National Beef at the time that Pechiney won the National Beef account; and (4) that Pechiney knew that Cryovac and National Beef had a binding sales contract at the time that Pechiney won the National Beef account. Pechiney has no burden on these issues.

Cryovac claims that it suffered damages as a result of Pechiney's infringement in the form of lost profits that Cryovac would have made if Pechiney had not infringed or at least a reasonable royalty on each of Pechiney's sales of an infringing product. I will explain to you at the end of the case how lost profits are calculated and how a reasonable royalty is determined.

Page 6

Cryovac has the burden of proving the damages it is entitled to as a result of any infringement. Pechiney denies that Cryovac is entitled to any damages for patent infringement and that any profits Cryovac claims to have lost were merely speculative.

Cryovac also claims that it suffered damages as a result of Pechiney's alleged improper interference with Cryovac's relationship with National Beef. Cryovac has the burden of establishing the existence and amount of those damages.

At the end of the case, I will give you instructions on the law that you will apply in determining whether Cryovac has proven the claims against it makes against Pechiney.

### Cryovac's Objection

*Cryovac objects to Pechiney's proposed preliminary instruction on "The Nature of the Case" because it misstates Cryovac's contentions, includes misstatements of the law, causes confusion, omits Cryovac claims, and is poorly organized. Cryovac's proposed jury instruction, which is based on the "Nature of the Case" section of the parties' jointly-filed Pretrial Order, is a more accurate summary of the nature of this case. If the Court does not adopt Cryovac's proposed jury instruction, however, Cryovac provides the following redlined version of Pechiney's proposed jury instruction to fix its misstatements and omissions and to make it clearer and better organized:*

### *Pechiney's Proposed Jury Instruction with Cryovac's changes...*

In this case, plaintiff Cryovac, Inc. (which I will refer to as Cryovac) has accused defendant Pechiney Plastic Packaging, Inc. (which I will refer to as Pechiney) of infringing one of its Cryovac's patents, and of knowingly using that infringement to cause one of plaintiff's Cryovac's customers (National Beef, Inc.) to break an alleged sales contract it had with plaintiff

~~Cryovac~~ and to start buying goods from ~~defendant~~Pechiney.  ~~Defendant~~ Pechiney denies these

accusations and argues that ~~plaintiff's~~ Cryovac's patent was invalid, that it had a good faith

belief that it did not infringe, that ~~plaintiff~~ Cryovac never had a binding contract with National

Beef, that ~~it~~ Pechiney did not know of any binding contract between ~~plaintiff~~ Cryovac and

National Beef and that ~~defendant~~ Pechiney had a legal right to seek and win National Beef's

business for itself.  ~~I will refer to Cryovac, Inc. as "Cryovac" and Pechiney Plastic Packaging,~~

~~Inc. as "Pechiney."~~

Cryovac owns United States Patent No. 4,755,419.  This patent relates to certain types of

multilayer plastic films intended for packaging various articles including perishable food

products.  During the trial, the parties may offer evidence to familiarize you with this technology.

The named inventor is Gautam P. Shah.

Patents are often referred to by their last three digits.  The patent in this case may be

called the '419 patent by the lawyers and witnesses during this trial.  It may also be called

"Cryovac's patent," or "the Shah Patent."

~~Cryovac argues that, when Pechiney made and sold plastic film bags under the trademark~~
~~"ClearShield" to Cryovac's former customer, National Beef, that Pechiney knew that its~~
~~ClearShield bags infringed the '419 patent, but that Pechiney intentionally made those sales~~
~~anyway.~~ The Court has already found that when Pechiney made and sold plastic film bags under
the trademark "ClearShield," Pechiney infringed Cryovac's '419 patent.  Cryovac maintains that
this infringement was willful because Pechiney did not have a good faith basis for believing that
it was not infringing before initiating the infringing conduct.  It is Cryovac's burden to establish,
by clear and convincing evidence, that Pechiney willfully infringed the '419 patent.

063527.1001

Pechiney argues that the '419 patent was invalid because it did not add any new developments to inventions which predated it. Because a patent is presumed valid, it is Pechiney's burden to prove invalidity by clear and convincing evidence. Cryovac contends that Pechiney has not met that high burden.

It is Cryovac's burden to establish, by clear and convincing evidence, that Pechiney willfully infringed the '419 patent. It is Pechiney's burden to prove that '419 patent was invalid by clear and convincing evidence.

In this case, Cryovac is also contending that Pechiney's allegedly knowing and willful infringement of its '419 patent enabled it to cause one of Cryovac's customers, National Beef, to break a sales contract for plastic bags that it allegedly had with Cryovac and to begin buying its plastic bags from Pechiney. Pechiney contends that Cryovac never had a binding contract with National Beef and that Pechiney had no knowledge of any such contract. Pechiney further contends that it had the legal right to compete for and to win National Beef's business, even though Cryovac had been National Beef's prior supplier of plastic bags. I have already determined as a matter of law that Pechiney infringed claim 11 of the '419 patent. It is Cryovac's burden to prove (1) that Pechiney's infringement of the '419 patent was both knowing and willful; (2) if it was knowing and willful, then that knowing and willful infringement was what enabled Pechiney to win the National Beef account; (3) that Cryovac had a binding sales contract with National Beef at the time that Pechiney won the National Beef account; and (4) that Pechiney knew that Cryovac and National Beef had a binding sales contract at the time that Pechiney won the National Beef account. Pechiney has no burden on these issues.

Cryovac claims that it suffered damages as a result of Pechiney's infringement in the form of lost profits for sales that Cryovac would have made if Pechiney had not infringed and or

DB01:2095760.2                                                                                        063527.1001

at least a reasonable royalty on ~~each of~~ any other Pechiney's sales of an infringing product. I will explain to you at the end of the case how lost profits are calculated and how a reasonable royalty is determined. Cryovac has the burden of proving the damages it is entitled to as a result of ~~any~~ the patent infringement found by the Court. Pechiney denies that Cryovac is entitled to any damages for patent infringement and that any profits Cryovac claims to have lost were merely speculative.

Cryovac also claims that it suffered damages as a result of Pechiney's alleged improper interference with Cryovac's relationship with National Beef. Cryovac has the burden of establishing the existence and amount of those damages by a preponderance of the evidence. That is a lesser burden than clear and convincing evidence.

At the end of the case, I will give you instructions on the law that you will apply in determining whether Cryovac has proven the claims ~~against~~ it makes against Pechiney that I have not already decided.

I.    **Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction**

B.    **The Patent System, Generally:**

**Pechiney's Instruction**

B.    **The Patent System, Generally**

Patents are issued by the United States Patent and Trademark Office, which is part of our government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be products, compositions, or methods for doing something, or for using or making a product or composition.

The owner of a valid patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent in the United States. However, the owner of a valid patent has no right to prevent others from making, using, offering for sale, selling or importing any product not covered by the language of the patent claims at issue and the owner of an invalid patent has no rights at all arising out of the invalid patent.

A patent is granted for a set period of time, which, in this case, was 20 years from the time the application for the '419 patent was filed. Once a patent expires, anyone is free to use the invention covered by the patent. The '419 patent expired on March 21, 2006. Even though the '419 patent has expired, however, Cryovac may still be entitled to damages for infringement that occurred before the expiration of the '419 patent's term.

During the term of the patent, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent.

To be entitled to patent protection an invention must be new, useful and nonobvious. A patent cannot legally take away the right to use that which was already known before the invention was made, or that which was obvious from what was already known. Thus, a patent will not be valid if it deprives people of the right to use old or known products or processes, or of their right to use products or processes that were obvious at the time the invention was made. That which was already known at the time of the invention is called the "prior art." You will hear about the prior art relating to the '419 patent during the trial, and I will give you more instructions about what constitutes prior art at the end of the case.

AUTHORITY:    Section of Litigation, American Bar Association, MODEL JURY INSTRUCTIONS: PATENT LITIGATION (2005) ("ABA") § 2.2 [modified by adding second sentence of second paragraph, deleting sentence on enforcement].

## Cryovac's Objection

*Cryovac objects to Pechiney's proposed preliminary instruction on "The Patent System, Generally" because it contains incorrect statements of the law and because it omits the Court's prior ruling regarding Pechiney's infringement thereby causing confusion by creating the impression that infringement is yet to be determined by the jury. Pechiney's proposed jury instruction is also incomplete and confusing in that it creates the impression that patentability was not already determined by the U.S. Patent Office. Cryovac's proposed jury instruction is a more accurate summary of the patent system. If the Court does not adopt Cryovac's proposed jury instruction, however, Cryovac provides the following redlined version of Pechiney's proposed jury instruction to fix its misstatements and omissions:*

*Pechiney's Proposed Jury Instruction with Cryovac's changes…*

**The Patent System, Generally**

Patents are issued by the United States Patent and Trademark Office, which is part of our government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be products, compositions, or methods for doing something, or for using or making a product or composition.

The owner of a valid patent has the right, for the life of the patent, to prevent others from making, using, offering for sale, selling or importing the invention covered by the patent in the United States. ~~However, the owner of a valid patent has no right to prevent others from making, using, offering for sale, selling or importing any product not covered by the language of the patent claims at issue and the owner of an invalid patent has no rights at all arising out of the invalid patent.~~

A patent is granted for a set period of time, which, in this case, was 20 years from the time the application for the '419 patent was filed. Once a patent expires, anyone is free to use the invention covered by the patent. The '419 patent expired on March 21, 2006. ~~Even though the '419 patent has expired, however, Cryovac may still be entitled to damages for infringement that occurred before the expiration of the '419 patent's term.~~

During the term of the patent, if another person makes, uses, offers to sell, sells or imports something that is covered by the patent without the patent owner's consent, that person is said to infringe the patent. <u>Here the Court has already determined that Pechiney has infringed Cryovac's patent.</u>

To be entitled to patent protection an invention must be new, useful and nonobvious. <u>Here the United States Patent Office has determined that the invention was new, useful and</u>

nonobvious and that is why the Patent Office granted Cryovac a patent. A patent cannot legally take away the right to use that which was already known to the public before the invention was made, or that which was obvious from what was already publicly known. Thus, a patent will not be valid if it deprives people of the right to use old or publicly known products or processes, or of their right to use products or processes that were obvious from what was publicly known at the time the invention was made. That which was already publicly known at the time of the invention is called the "prior art." You will hear about the prior art relating to the '419 patent during the trial, and I will give you more instructions about what constitutes prior art at the end of the case. Because the United States Patent Office granted Cryovac's patent, it is presumed that the invention was not publicly known or obvious over the prior art at the time the invention was made and it is up to Pechiney to prove the contrary.

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

I.    **Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction**

C.    How a Patent is Obtained:

**Pechiney's Instruction**

C.    **How a Patent is Obtained**

The U.S. Patent and Trademark Office is the agency of our government that examines

patent applications and issues patents. When an applicant for a patent files an application with

the Patent Office, the application is assigned to a Patent Examiner. The Patent Examiner

examines the application, including the claims, to determine whether or not the described

invention meets the requirements for patentable inventions under the U.S. Patent Laws.

The Examiner reviews files of prior work of others in the form of patents and

publications. This type of material is called "prior art." Documents found in this search of prior

works are called "references."

The Patent Examiner advises the applicant of his or her findings in a paper called an

"office action." The Examiner may "reject" the claims if he or she believes they do not meet the

requirements for patentable inventions. The applicant may respond to the rejection with

arguments to support the claims, by making changes or amendments to the claims, or by

submitting new claims. If the Examiner concludes that the legal requirements have all been

satisfied, he or she "allows" the claims and a patent is issued.

This process, from the filing of the patent application to the issuance of the patent, is

called "patent prosecution." The record of papers relating to the patent prosecution is referred to

as the prosecution history, the file history, or the file wrapper. The prosecution history becomes

available to the public when the patent issues.

Sometimes in a court case such as this one, you are asked to decide whether the patent

should have been allowed at all by the Patent Office. A party accused of infringement is entitled

to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner. There are several reasons for this. For example, there may be facts or arguments that the Examiner did not consider, such as prior art that was not located by the Patent Office or provided by the applicant. Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner. There is, of course, also the possibility that mistakes were made or important information was overlooked. Examiners have a lot of work to do, and no process is perfect.

| | |
|---|---|
| AUTHORITY: | "1993 USDC Del." [generally]; Intellectual Property Advisory Subcommittee of the United States District Court for the District of Delaware, *Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware* (June 2004 draft) ("2004 IPAS Del."), *available at* www.vcst.com/ip/patent.html [last two paragraphs]; ABA § 2.5 [adding second, fifth, and sixth paragraphs]; American Intellectual Property Law Association, *Model Patent Jury Instructions* (Oct. 2005), *available at* http://www.aipla.org ("AIPLA") § I [generally]. |

### Cryovac's Objection

*Cryovac objects to Pechiney's preliminary instruction on "How a Patent is Obtained" because it is incomplete and is confusing with respect to the statutory presumption of validity. Cryovac's proposed jury instruction is clearer and more complete. If the Court does not adopt Cryovac's proposed jury instruction on this issue, then Cryovac proposes the following redlined version of Pechiney's instruction:*

*Pechiney's Proposed Jury Instruction with Cryovac's changes…*

### How a Patent is Obtained

The U.S. Patent and Trademark Office is the agency of our government that examines patent applications and issues patents. When an applicant for a patent files an application with the Patent Office, the application is assigned to a Patent Examiner. The Patent Examiner examines the application, including the claims, to determine whether or not the described invention meets the requirements for patentable inventions under the U.S. Patent Laws.

The Examiner reviews files of prior work of others in the form of patents and publications. This type of material is called "prior art." Documents found in this search of prior works are called "references."

The Patent Examiner advises the applicant of his or her findings in a paper called an "office action." The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, by making changes or amendments to the claims, or by submitting new claims. If the Examiner concludes that the legal requirements have all been satisfied, he or she "allows" the claims and a patent is issued.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution." The record of papers relating to the patent prosecution is referred to as the prosecution history, the file history, or the file wrapper. The prosecution history becomes available to the public when the patent issues.

Sometimes in a court case such as this one, you are asked to decide whether the patent should have been allowed at all by the Patent Office. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of

Page 17

**REDACTED -- Public Version, filed 5/15/06**

the prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question is invalid.

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a government examiner. There are several reasons for this. For example, there may be facts or arguments that the Examiner did not consider, such as prior art that was not located by the Patent Office or provided by the applicant. Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner. There is, of course, also the possibility that mistakes were made or important information was overlooked. Examiners have a lot of work to do, and no process is perfect. That said, it is important to remember that the patent is presumed valid and that the burden is on Pechiney to prove invalidity by clear and convincing evidence.

.

I.    Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction

### D.    The Parts of a Patent:

**Pechiney's Instruction**

**D.    The Parts of a Patent**

You have been provided with a copy of the '419 patent. Please refer to this patent as I identify its different sections.

A patent includes two basic parts: first, a written description of the invention, which may include drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

The cover page of the '419 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the '419 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are the drawings. The '419 patent has one drawing, which appears as Figure 1 on the next page. A drawing depicts various aspects or features of the invention. It is described in words later in the patent specification.

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '419 patent begins at column 1, line 1, and continues to column 9, line 4. It includes a background section, a summary of the invention, definitions, and a detailed description of the invention, including some examples.

Page 19

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts, referred to as "claim limitations." In the '419 patent, the claims begin at column 9, line 6 and continue to the end of the patent, at column 12, line 7.

In this case, we will be concerned only with claim 11 of the '419 patent. Claim 11 begins at the bottom of column 9 and goes to line 9 of column 10. Pechiney contends that claim 11 was invalid.

The language of this patent claim may not be clear to you, or the parties may dispute its meaning. I will instruct you [now/at the end of the case] about the meaning of some of the language in this claim. You must use the meanings I give you when you decide the issue of invalidity.

AUTHORITY:     ABA §§ 2.3 [modified for '419 patent and by adding last two paragraphs], 2.4 [last two paragraphs].

### Cryovac's Objection

*Cryovac objects to Pechiney's preliminary instruction on "The Parts of a Patent" because it is inconsistent with the Court's claim construction ruling, and improperly contains Pechiney's contentions, which do not belong in this instruction. Cryovac's jury instructions do not suffer from these problems. If the Court does not adopt Cryovac's proposed jury instruction, however, Cryovac provides the following redlined version of Pechiney's proposed jury instruction to better conform it with the Court's claim construction rulings and remove Pechiney's contentions:*

DB01:2095760.2                                                                                    063527.1001

*__Pechiney's Proposed Jury Instruction with Cryovac's changes...__*

**The Parts of a Patent**

You have been provided with a copy of the '419 patent. Please refer to this patent as I identify its different sections.

A patent includes two basic parts: first, a written description of the invention, which may include drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

The cover page of the '419 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the '419 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are the drawings. The '419 patent has one drawing, which appears as Figure 1 on the next page. A drawing depicts various aspects or features of the invention. It is described in words later in the patent specification.

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '419 patent begins at column 1, line 1, and continues to column 9, line 4. It includes a background section, a summary of the invention, definitions, and a detailed description of the invention, including some examples.

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts, referred to as "claim limitations." In

DB01:2095760.2                                                    063527.1001

the '419 patent, the claims begin at column 9, line 6 and continue to the end of the patent, at column 12, line 7.

In this case, we will be concerned only with claim 11 of the '419 patent. Claim 11 begins at the bottom of column 9 and goes to line 9 of column 10. I have already determined the meaning of claim 11 and ~~Pechiney contends that claim 11 was invalid.~~ ~~The language of this patent claim may not be clear to you, or the parties may dispute its meaning.~~ I will instruct you [now/at the end of the case] about the meaning ~~of some of the language in this claim.~~ that I have determined. You must use the meanings I give you when you decide the issue of invalidity.

DB01:2095760.2

063527.1001

I.    Cryovac's Objections/Comments To Pechiney's Preliminary Jury Instruction

E.    Video and Glossary:

**Pechiney's Instruction**

E.    **Video and Glossary**

I will now show you a video about the patent system in the United States.

**[Show Federal Judicial Center video "An Introduction to the Patent System."]**

You will hear many of the terms used in the video during this trial. They are summarized in a glossary of patent terms which will be given to you shortly along with a copy of these preliminary instructions. Feel free to refer to this glossary throughout the trial.

AUTHORITY:        1993 USDC Del. [generally]; 2004 IPAS Del.

## GLOSSARY OF PATENT TERMS

| | |
|---|---|
| Application | The initial papers filed in the United States Patent and Trademark Office (also called the Patent Office or PTO) by an applicant for a patent. These papers typically include a specification, drawings and the oath (declaration) of the applicant. |
| Assignment | Transfer of ownership rights in a patent or patent application from one person or company to another. |
| Claims | That part of a patent which defines the metes and bounds of the invention and the scope of the patent owner's exclusive rights during the life of the patent. These are found at the end of the patent specification in the form of numbered paragraphs. |
| Disclosure of description | That part of the patent specification which explains how the invention works and usually includes a drawing. |
| Examiner | Person employed by the Patent Office having expertise in a technical area who reviews (examines) patent applications to determine whether the claims of a patent application are patentable over the prior art before the examiner and whether the disclosure adequately describes the invention. |
| File wrapper or Prosecution history | The written record of proceedings between the applicant and the Patent Office. It includes the original patent application and subsequent communications between the Patent Office and applicant. |
| Office action | Communication from the Patent Examiner regarding the specification of a patent application and/or the claims pending in the patent application. |
| Ordinary skill in the art | The level of experience, education, and/or training that those individuals who work in the area of the invention possess. |
| Prior art | Any information which is used to describe public, technical knowledge prior to the invention by applicant or more than a year prior to the filing date of the patent application. Prior art may include patents, publications, presentations, and products. |
| References | Any item of prior art used to determine patentability. |
| Specification | That part of the patent application or patent which describes the invention and concludes with one or more claims. The specification includes the written text, the claims, and the drawings. |

AUTHORITY:    1993 USDC Del. [modified by rearranging and adding "Office action" and "Ordinary skill in the art"]; AIPLA ["Office action" and "Ordinary skill in the art"].

**REDACTED -- Public Version, filed 5/15/06**

<u>Cryovac's Objection</u>

Cryovac objects to Pechiney's preliminary instruction on "Video and Glossary" because it is redundant to Pechiney's other instructions on patent law and the patent system and needlessly time consuming. Cryovac's proposed jury instructions on the patent system clearly and adequately inform the jury regarding the patent system. Furthermore, Pechiney's proposed Glossary contains the term "Assignment," which is not applicable to this case. Also, Pechiney's glossary definition for "Ordinary skill in the art" is confusing because it describes generally the skill level for everyone in the field, rather than focus on the **ordinary** person in the field. As explained in the Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.5, "[a] person of ordinary skill is a person of **average** education and training in the field." [emphasis added]

DB01:2095760.2

063527.1001

## II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 1.    General Introduction:

**Pechinev's Instruction**

## I.    General Instruction

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions. You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read. You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if the defendant is liable.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole. .

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

AUTHORITY:  Uniform Jury Instructions in the United States District Court for the District of Delaware (Rev: 1/18/06) ("Uniform Del.").

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 1 "General Introduction" because the last paragraph thereof is incomplete in that it does not accurately specify what the jury is to decide. Cryovac's proposed jury instruction includes a more complete statement of what the jury needs to decide.*

DB01:2095760.2                                                                      063527.1001

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 9.2    Cryovac's Contentions:

**Pechiney's Instruction**

9.2    **Cryovac's Contentions**

Cryovac, the plaintiff in this case, has asserted three separate contentions, or claims, against Pechiney, the defendant in this case.

First, Cryovac contends that Pechiney's infringement of claim 11 of the '419 patent was willful. Cryovac has the burden to prove willful infringement by clear and convincing evidence.

Second, Cryovac claims that Pechiney tortiously interfered with two contracts formed on March 20, 2003, and January 14, 2004, between Cryovac and National Beef.

Finally, Cryovac claims that even if there was no contract between Cryovac and National Beef that Pechiney tortiously interfered with Cryovac's prospective contractual relations with National Beef.

Cryovac contends that it is entitled to damages for patent infringement caused by Pechiney's actions and damages for tortious interference caused by Pechiney's actions.

Cryovac must prove all of the elements of tortious interference by a preponderance of the evidence.

You must decide whether Cryovac has proved any of these contentions and what amount of damages, if any, Cryovac has proved for patent infringement and for tortious interference.

AUTHORITY:    ABA § 4.2 [modified for this case].

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 9.2 because it is incomplete and inaccurate with respect to Cryovac's contentions. It is also redundant in repeating the burden of proof for certain issues and is incomplete and unfair in leaving out the burden of proof for other issues in*

*order to obtain a tactical advantage for Pechiney. Also, this instruction is not called for in Your Honor's standard jury instructions or in the 1993 or 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware. However, if the Court does give an additional instruction on Cryovac's contentions after evidence is presented, Cryovac provides the following redlined version of Pechiney's instruction that more accurately and completely states Cryovac's contentions in a clearer, more organized and fairer manner that includes the burden of proof for all issues.*

### *Pechiney's Proposed Jury Instruction with Cryovac's changes...*

### Cryovac's Contentions

Cryovac, the plaintiff in this case, has asserted three separate ~~contentions, or~~ claims~~,~~ against Pechiney, the defendant in this case.

First, Cryovac contend~~eds, and the Court found, that when Pechiney made and sold plastic film bags under the trademark "ClearShield," Pechiney infringed claim 11 of Cryovac's '419 patent. With respect to this contention, Cryovac also maintains~~ that Pechiney's infringement of claim 11 of the '419 patent was willful. Cryovac has the burden to prove <u>that Pechiney's infringement was</u> willful ~~infringement~~ by clear and convincing evidence.

Second, Cryovac claims that Pechiney tortiously interfered with two contracts formed on March 20, 2003, and January 14, 2004, between Cryovac and National Beef. <u>Cryovac has the burden to prove this claim by a preponderance of the evidence, which is a lower standard of proof than clear and convincing evidence.</u>

~~Finally~~<u>Third</u>, Cryovac claims that even if there was no contract between Cryovac and National Beef that Pechiney tortiously interfered with Cryovac's prospective contractual

DB01:2095760.2                                           063527.1001

relations with National Beef. The lower preponderance of the evidence standard of proof is applicable to this claim as well.

As a defense to this lawsuit, Pechiney, the defendant, contends that claim 11 of the '419 patent is invalid. However, because the '419 patent was issued by the U.S. Patent Office, the '419 patent is entitled to a presumption of validity. Accordingly, the law places the burden on Pechiney to prove that the '419 patent is invalid by clear and convincing evidence. Cryovac contends that Pechiney has not met that high burden of proof.

If you find that Pechiney has not proven that Cryovac's '419 patent is invalid, then Cryovac is entitled to damages for patent infringement. Cryovac would also be entitled to damages for tortious interference if you find for Cryovac on either of Cryovac's tortious interference claims. ~~Cryovac contends that it is entitled to damages for patent infringement caused by Pechiney's actions and damages for tortious interference, caused by Pechiney's actions.~~

~~Cryovac must prove all of the elements of tortious interference by a preponderance of the evidence.~~

~~You must decide whether Cryovac has provedn any of these contentions and what amount of damages, if any, Cryovac has proved for patent infringement and for tortious interference.~~

DB01:2095760.2                                                                                                          063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 9.3    Pechiney's Contentions:

**Pechiney's Instruction**

**9.3    Pechiney's Contentions**

Pechiney denies that any infringement of claim 11 of the '419 patent was willful. Pechiney contends that it acted on the good faith belief that it did not infringe claim 11. Pechiney has no burden of proof to meet regarding willful infringement.

Pechiney contends that claim 11 of the '419 patent was invalid for a number of reasons that I will tell you about shortly. You must decide whether Pechiney has proved by clear and convincing evidence that claim 11 was invalid.

Pechiney contends that its dealings with National Beef were proper and were justified and privileged.

Pechiney contends that Cryovac and National Beef did not have a contract.

Pechiney also contends that even if there was a contract between Cryovac and National Beef, Pechiney did not know there was such a contract.

If you decide that Cryovac has not proved that it had a contract with National Beef, or that Pechiney had knowledge of that contract, or that Pechiney improperly interfered with that contract or a prospective contract between Cryovac and National Beef, then you must find for Pechiney on the tortious interference claims. Pechiney has no burden of proof to meet regarding its dealings with National Beef.

AUTHORITY:        ABA § 4.3 [modified for this case].

**REDACTED -- Public Version, filed 5/15/06**

### Cryovac's Objection

Cryovac objects to Pechiney's instruction no. 9.3 because the second paragraph thereof misleadingly implies that the Judge is advocating that the patent is invalid. Pechiney's proposed instruction is also repetitive of the preliminary instructions, and it is not called for in Your Honor's standard jury instructions or in the 1993 or 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware. Pechiney's instruction is also redundant in repeating the burden of proof for certain issues and incomplete and unfair in leaving out the burden of proof for other issues.

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**9.4    Summary of Issues:**

**Pechiney's Instruction**

**9.4    Summary of Issues**

To prevail on any one of the claims for which it has the burden of proof, a party must prove every essential element of that claim. If Cryovac has failed to establish even one essential element of a claim by failing to meet the standard for the amount of evidence required to prove that element, you should find for Pechiney as to that claim.

If you find for Cryovac on a claim, then you must consider whether Pechiney has established the essential elements of an affirmative defense that relates to that claim. Pechiney has the burden to prove the essential elements of its defenses, but you need not consider whether Pechiney has met this burden unless you first find for Cryovac on the related claim.

Pechiney has no burden to prove that it did not willfully infringe claim 11 of the '419 patent, or that it did not improperly interfere with a contract or prospective contract between Cryovac and National Beef. The burdens of proving willful infringement and tortious interference are Cryovac's.

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 9.4 because it is not actually a summary of the issues but rather is a confusing, unnecessary, and unfair restatement of Pechiney's contentions concerning only selected burdens of proof. Instructions on the burdens of proof are more appropriately already found in the preliminary jury instructions in the "nature of the case" instruction and in the "burdens of proof" instruction.*

*It is also confusing as to what is meant in Pechiney's instruction (third paragraph) when it refers to Pechiney having "no burden" of proof regarding an issue.*

Pechiney's proposed instruction (second paragraph) also contains an unnecessary legal term ("affirmative defenses") which may confuse the jury. The second sentence of the second paragraph of the instruction is also confusing and inaccurate because the Court has already found infringement. Thus, the jury needs to consider whether Pechiney has carried its burden of proof with regard to invalidity.

Moreover, the entire instruction is superfluous in light of the other instructions already summarizing the parties' contentions and burdens of proof, and is not called for by Your Honor's standard jury instructions or in the 1993 or 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware. Pechiney also does not provide any authority justifying its proposed instruction.

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

10.    **Burdens of Proof:**

**Pechiney's Instruction**

10.    **Burdens of Proof**

Cryovac has the burden of proving its claim of willfulness against Pechiney by clear and convincing evidence. Clear and convincing evidence is evidence that produces a firm belief or conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence and requires a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard. This standard does not, however, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Cryovac has the burden of proving its charge of tortious interference by what is called a preponderance of the evidence. That means that Cryovac has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence for each of these claims one at a time on the opposite sides of a scale, the evidence supporting Cryovac's claim would have to make the scales tip somewhat on its side.

Pechiney is urging that claim 11 of Cryovac's patent was invalid. Pechiney has the burden of proving that claim 11 of the '419 patent was invalid by clear and convincing evidence.

In determining whether any fact in issue has been proved you may, unless I instructed you otherwise, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Keep in mind that "proof beyond a reasonable doubt" does not play any part in this civil case and you should, therefore, not consider it at all in your deliberations.

DB01:2095760.2                                      063527.1001

AUTHORITY:          1993 USDC Del. § 1.3 [modified for parties, clarity and combination with
                    other instructions]; 2004 IPAS Del. § 1.3 [modified for parties, clarity and
                    combination with other instructions].

**Cryovac's Objection**

  *Cryovac objects to Pechiney's instruction no. 10 because it is not organized well and*

*therefore is confusing. Pechiney's "Burdens of Proof" instruction also addresses only **selected***

*burdens of proof, while omitting others. Cryovac's proposed instruction, which follows the more*

*recent 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District*

*of Delaware is clearer and shorter. If the Court does not adopt Cryovac's proposed instruction,*

*Cryovac provides the following redlined version of Pechiney's instruction, which is more*

*complete and better organizes the information therein to make it less confusing. The portion of*

*the redlined instruction dealing with the damages burden of proof is taken from the 2004*

*Uniform Jury Instructions for the Patent Cases in the U.S. District Court for the District of*

*Delaware, Instruction 5.3.*

**_Pechiney's Proposed Jury Instruction with Cryovac's changes…_**

**Burdens of Proof**

  Cryovac has the burden of proving its claim that Pechiney's infringement was willful of

willfulness against Pechiney by clear and convincing evidence. Pechiney is urging that claim 11

of Cryovac's patent was invalid. Pechiney has the burden of proving that claim 11 of the '419

patent was invalid by clear and convincing evidence. Clear and convincing evidence is evidence

that produces a firm belief or conviction that the truth of a factual contention is highly probable.

Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of

the evidence and requires a greater degree of persuasion than is necessary to meet the

DB01:2095760.2          063527.1001

preponderance of the evidence standard. This standard does not, however, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.

Cryovac has the burden of proving its charge of tortious interference <u>claims</u> by what is called a preponderance of the evidence. That means that Cryovac has to produce evidence which, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence for each of these claims one at a time on the opposite sides of a scale, the evidence supporting Cryovac's claim would have to make the scales tip somewhat on its side. This is a lower burden than proof by clear and convincing evidence.

~~Pechiney is urging that claim 11 of Cryovac's patent was invalid. Pechiney has the burden of proving that claim 11 of the '419 patent was invalid by clear and convincing evidence.~~*[sentence moved earlier in the instruction]*

<u>Regarding damages. Cryovac has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. Any doubts regarding the computation of the amount of damages should be resolved against the defendant Pechiney and in favor of the plaintiff Cryovac.</u>

In determining whether any fact in issue has been proved you may, unless I instructed you otherwise, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Keep in mind that "proof beyond a reasonable doubt" does not play any part in this civil case and you should, therefore, not consider it at all in your deliberations.

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

## 12.    The Claim of the Patent in Suit:

**Pechiney's Instruction**

### 12.    The Claim of the Patent in Suit

Before you can decide whether claim 11 of Cryovac's patent was invalid you will have to understand about patent claims. The claims of a patent are the numbered sentences at the end of the patent. The claims are "word pictures" intended to define, in words, the boundaries of the invention described and illustrated in the patent. The claims define what the patent owner owns and what the patent owner may prevent others from making and selling.

In this case, you are to consider only claim 11 of the '419 patent, which begins at the bottom of column 9 of the patent.

Claims are usually divided into parts, called "limitations." For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

AUTHORITY:    1993 USDC Del. § 3.1 [modified for validity, clarity and combination with other instructions]; 2004 IPAS § 3.2.1 [modified for validity, clarity and combination with other instructions]; ABA § 6 [generally and last paragraph]; AIPLA Infringement § 1 [modified to limit to validity].

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 12 because it is confusing. The underlying uniform instruction was written for the situation where infringement would be decided by the jury. Pechiney's rewrite thereof confuses the infringement concepts of the underlying instruction with validity concepts. Additionally, the chair example in the last paragraph of that instruction is not helpful to the jury and has no bearing on the case before the jury.*

DB01:2095760.2                                    063527.1001

## II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 12.2    Limitations of the Claim at Issue:

**Pechinev's Instruction**

### 12.2    Limitations of the Claim at Issue

You must use the definitions of the words used in claim 11 that I provide to you in your consideration of the invalidity issues. I have defined two terms in claim 11.

The term "**oriented**" as used in claim 11 of the '419 patent means, with reference to a polymeric material, "*heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process.*"

The term "**arranged symmetrically**" as used in claim 11 of the '419 patent means "*putting the layers in a desired symmetrical order when the film is viewed in cross-section, so that the layers are in the same order on each side of the core of the film, for example c/d/b/a/b/d/c. This claim phrase limits only the arrangement of the layers, and does not require precise identity in the thickness of the layers or the amounts of recited components or additives that may be included in the layers.*"

The term "**core layer**" as used in claim 11 of the '419 patent means "*the layer in a multilayer film surrounded by an equal number of layers on both sides.*"

If you are not sure what is meant by any term in claim 11 that I have not defined, you should use the ordinary meaning of the term in the context of the specification and drawing of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent. The ordinary meaning is the meaning that the term would have had to a person of ordinary skill in the art of multilayer film packaging at the time of the invention described in claim 11 of the '419 patent.

DB01:2095760.2                                                                                                           063527.1001

**REDACTED -- Public Version, filed 5/15/06**

AUTHORITY:      ABA § 6.6 [first sentence]; AIPLA Infringement § 2 [generally]; *Phillips v. AWH Corp.* 415 F.3d 1303, 1313 (Fed. Cir. 2005); *Cryovac Inc. v. Pechiney Plastic Packaging, Inc.*, Civil Action No. 04-1278-KAJ (D. Del. Apr. 13, 2006); Cryovac's Initial Brief on Claim Construction, Oct. 19, 2005.

**Cryovac's Objection**

     *Cryovac objects to Pechiney's instruction no. 12.2 because it does not accurately reflect the Court's construction of claim terms in its April 13, 2006 Opinion and Order. Specifically, the Court did not construe "core layer" as set forth in Pechiney's proposed instruction. The fifth paragraph of Pechiney's proposed instruction also misstates the jury's role regarding the meaning of claim terms. The jury should not be construing claim terms.*

Page 40

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**12.2.1  Limitations of the Claim at Issue [Alternative]:**

**Pechiney's Instruction**

**12.2.1  Limitations of the Claim at Issue [Alternative]**

In your determinations of whether Pechiney's infringement of claim 11 of the '419 patent was willful and whether claim 11 was valid, you should apply the following definitions to these terms:

The term "**oriented**" as used in claim 11 of the '419 patent means, with reference to a polymeric material, "*heated and stretched to realign the molecular configuration.*"

The term "**arranged symmetrically**" as used in claim 11 of the '419 patent means "*putting the layers in a desired symmetrical order when the film is viewed in cross-section, that is, putting the layers in an order so that the geometrical center line of the core layer is the geometrical center line of the film and there is correspondence in the size (thickness) and composition of layers on opposite sides of the core layer resulting in the corresponding layers being mirror images of each other with the same thickness and the same chemical composition.*"

The term "**core layer**" as used in claim 11 of the '419 patent means "*the layer in a multilayer film surrounded by an equal number of layers on both sides.*"

If you are not sure what is meant by any other term in claim 11 that is not defined here, you should use the ordinary meaning of the term in the context of the specification and drawing of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent. The ordinary meaning is the meaning that the term would have had to a person of ordinary skill in the art of multilayer film packaging at the time of the invention described in claim 11 of the '419 patent.

DB01:2095760.2                                                                                          063527.1001

AUTHORITY:          Defendant's [Proposed] Order Construing Claim Language, Oct. 19, 2005;
                    Cryovac's Initial Brief on Claim Construction, Oct. 19, 2005.

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 12.2.1 because the definitions set forth in*

*Pechiney's instruction* **contradict** *the Court's construction of claim terms in its April 13, 2006*

*Opinion and Order. The fifth paragraph of Pechiney's instruction also misstates the jury's role*

*regarding the meaning of claim terms. The jury should not be construing claim terms.*

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 12.3    Comprising:

**Pechiney's Instruction**

### 12.3    "Comprising"

[Subject to Cryovac agreeing to Pechiney's instruction 12.2.]

The beginning portion, or preamble, of claim 11 of the '419 patent uses the word "comprising." "Comprising" is a term of art used in patent claim language which means that the named elements are essential, but other elements may be added and still form a product within the scope of the claim.

For example, a claim to a table comprising a tabletop, legs and glue would cover a table that includes each of those elements, even if the table also includes additional elements such as wheels on the table's legs.

Based on this explanation, if you find a prior art reference included all of the components of claim 11 of the '419 patent, the fact that it may also have included additional components is irrelevant.

AUTHORITY:    1993 USDC Del. § 3.11 [generally]; 2004 IPAS Del. § 3.3.3 [modified for clarity]; ABA § 6.5.1 [modified for clarity].

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 12.3 because it is confusing as written and unnecessarily long. Pechiney agreed in the jointly-filed claim construction chart that the Court should adopt the Federal Circuit's previously articulated definition of "comprising." See, Genentech Inc. v. Chiron Corp., 112 F.3d 495, 501 (Fed. Cir. 1997). Therefore, Cryovac suggests that instead of Pechiney's longer instruction, the following paragraph be used, since it is clearer and reflects the previous agreement of the parties:*

Page 43

**REDACTED -- Public Version, filed 5/15/06**

The beginning portion, or preamble, of claim 11 of the '419 patent uses the word "comprising." "Comprising" is a term of art used in patent claim language which means that the named elements are essential, but other elements may be added and still form a product within the scope of the claim. For example, in claim 11 the oriented coextruded film having at least seven layers arranged symmetrically must have the elements or characteristics stated in subparagraphs (a) through (d), but may *also* have other characteristics.

Authority:    *Genentech Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).

.

.

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

13.    Invalidity--in General:

**Pechiney's Instruction**

### 13.    Invalidity—in General

I will next discuss in more detail the standards by which the legal adequacy of a patent specification, both the disclosure and the claims, is to be judged. Pechiney contends that claim 11 of the '419 patent was invalid.

For a patent to be valid, the invention claimed in the patent must be new, useful and nonobvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you when we discuss Pechiney's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Pechiney has challenged the validity of claim 11 of the '419 patent and contends that it failed to satisfy the legal requirements of patentability. Pechiney has the burden to prove the invalidity of claim 11 by clear and convincing evidence. When the validity of a patent has been put at issue, it is the responsibility of the jury to determine patentability, especially where the particular prior art has not been considered by the Patent Office Examiner.

I will now explain to you each of Pechiney's grounds for invalidity in detail. In making your determination as to invalidity, you should consider only claim 11.

AUTHORITY:      1993 USDC Del. § 4.1 [generally]; 2004 IPAS Del. §§ 4 [generally], 4.1 [generally]; ABA § 9 [expanded].

## Cryovac's Objection

*Cryovac objects to Pechiney's instruction no. 13 because it ignores the statutory presumption of validity for issued U.S. patents and infers that the '419 patent is not presumed valid. Cryovac's instruction, which follows the 2004 Delaware instruction, accounts for this presumption of validity. If the Court does not adopt Cryovac's instruction on this issue, Cryovac provides the following redlined version of Pechiney's instruction that is more accurate in that it is consistent with the current state of the law in general and the statutory presumption of validity in particular.*

## *Pechiney's Proposed Jury Instruction with Cryovac's changes…*

**Validity—in General**

I will next discuss in more detail the standards by which the legal adequacy of a patent specification, both the disclosure and the claims, is to be judged. Pechiney contends that claim 11 of the '419 patent was invalid.

~~For a~~ _A_ patent is presumed to be valid_. That is_, the invention claimed in the patent ~~must~~ is presumed to be new, useful and nonobvious. It is presumed that a ~~A~~ patent ~~cannot take away from people their right to use~~ does not cover what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "nonobvious" have special meanings under the patent laws. I will explain these terms to you when we discuss Pechiney's grounds for asserting invalidity.

The invention claimed in a patent is presumed to ~~must also~~ be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed

invention, the Patent Office requires the patent owner to must provide the public with a complete description in the patent of the invention and how to make and use it.

Pechiney has challenged the validity of claim 11 of the '419 patent and contends that it failed to satisfy the legal requirements of patentability. Pechiney has the burden to prove the invalidity of claim 11 by clear and convincing evidence. When the validity of a patent has been put at issue, it is the responsibility of the jury to determine whether the party asserting invalidity has shown invalidity by clear and convincing evidence. patentability, especially where the particular prior art has not been considered by the Patent Office Examiner. I will now explain to you each of Pechiney's grounds for invalidity in detail. In making your determination as to invalidity, you should consider only claim 11.

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.1    Written Description:

**Pechiney's Instruction**

### 13.1    Written Description

Pechiney contends that claim 11 of the '419 patent was invalid because the patent lacked an adequate written description to support this claim.

The patent law requires that the description in the patent specification of the invention must be complete to ensure that the inventor was in possession of the invention at the time the patent application was filed. This is referred to as the "written description requirement."

To satisfy the written description requirement, the patent must describe each and every limitation of a patent claim, although the exact words found in the claim need not be used. The written description requirement is satisfied if a person of ordinary skill in the field reading the patent application as originally filed would recognize that the patent application described the invention as finally claimed in the patent.

Pechiney bears the burden of establishing by clear and convincing evidence that the '419 patent lacked an adequate written description of the invention covered by claim 11 at the time the application was filed.

If you find that Pechiney has proved that it is highly probable that the '419 patent did not contain an adequate written description of each and every limitation of claim 11, then you must find that claim 11 was invalid.

AUTHORITY:        ABA § 3.2.4 [expanded]; AIPLA Written Description Requirement [third
                  paragraph].

DB01:2095760.2    063527.1001

### Cryovac's Objection

*Cryovac objects to Pechiney's instruction no. 13.1 because it contains incorrect*
*statements of the law (the first sentence in the third paragraph and the fifth paragraph), and*
*includes Pechiney's contentions in the jury instruction (fifth paragraph). Pechiney's instruction*
*also omits the "clear and convincing" burden of proof which the jury should apply in deciding*
*the written description issue. Cryovac's instruction on written description, which follows the*
*2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of*
*Delaware, is written in plainer language and more accurately describes the current state of the*
*law on the written description requirement. If the Court does not adopt Cryovac's proposed*
*instruction on written description, Cryovac suggests deleting the first sentence of the third*
*paragraph, the fifth paragraph, and adding the following sentences regarding the burden of*
*proof to the end of Pechiney's proposed instruction:* "For Pechiney to prove that the '419 patent
is invalid for failure to satisfy the written description requirement, the evidence must be clear and
convincing. If Pechiney does not carry this burden, then you must find for Cryovac on this
issue."

DB01:2095760.2                                                                                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.2    Enablement:

**Pechiney's Instruction**

### 13.2    Enablement

[This instruction to be given only if jury to decide whether claim 11 was enabled.]

Pechiney also contends that claim 11 of the '419 patent was invalid because the patent specification lacked an enabling disclosure.

The patent laws require that the written description of the invention claimed in a patent must contain enough detail to teach, or enable, persons skilled in the field of the invention to make and use the full scope of the invention. This is referred to as the enablement requirement. If the patent does not enable a skilled person to practice the product or process of a patent claim, then the claim is invalid. The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

In considering whether or not the written description of a patent meets the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain.

The fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that a patent's written description does not meet the enablement requirement. A written description is enabling so long as undue experimentation is not needed to make or use the invention. A permissible amount of experimentation is that amount that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

The enablement defense does not require proof that the inventor intended to withhold information; all that is required is a failure to teach how to practice the invention. In other words, if a person of ordinary skill in the art could not carry out the process without undue experimentation, the patent claim is invalid.

For a patent claim to be enabled for purposes of validity, the written description must enable persons of skill in the field of the invention to make and use the full scope of the claimed invention. The scope of a validly enabled patent claim cannot be greater than the scope of the disclosure telling how to make and use the invention claimed. Put another way, an enabling disclosure also must inform persons skilled in the art about the boundaries of the claimed invention so they know what the patent does and does not cover.

Pechiney contends that claim 11 of the '419 patent was invalid for lack of enablement. If you find that Pechiney has proven by clear and convincing evidence that the written that the written description of the '419 patent did not enable a skilled person to make and use the full scope of all products covered by claim 11 without undue experimentation, then you must find that the claim was invalid.

AUTHORITY:    1993 USDC Del. § 4.2 [expanded and modified]; 2004 IPAS § 4.3 [expanded and modified]; ABA § 9.1.2 [expanded]; AIPLA Enablement [generally]; *Nat'l Recovery Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999).

### Cryovac's Objection

*Cryovac objects to Pechiney's instruction no. 13.2 because it contains incorrect statements of the law and includes Pechiney's contentions. Furthermore, unlike Cryovac's proposed instruction, Pechiney's instruction does not follow the more current, more balanced, and more accurate 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court*

*for the District of Delaware. If the Court does not adopt Cryovac's proposed instruction on enablement, Cryovac suggests deleting the last three paragraphs of Pechiney's instruction to remove the incorrect statements of law and Pechiney's contentions, which are already found in the "nature of the case" instructions. Cryovac further suggests adding the following more correct articulation of the burden of proof in place of the last paragraph of Pechiney's proposed instruction 13.2:* "For Pechiney to prove that the '419 patent is invalid for failure to satisfy the enablement requirement, the evidence must be clear and convincing. If Pechiney does not carry this burden, then you must find for Cryovac on this issue."

DB01:2095760.2                                                                                              063527.1001

II.        **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.3    The Prior Art:

**Pechiney's Instruction**

### 13.3    The Prior Art

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art."

The prior art to the '419 patent includes the following:

First, anything that was invented by another person in this country before the date of invention of the subject matter of claim 11 of the '419 patent, if the other person did not abandon, suppress, or conceal his or her prior invention.

Second, anything that was publicly known or used in the United States by someone other than the inventor before the date of invention of the subject matter of claim 11 of the '419 patent.

Third, anything that was in public use or on sale in the United States more than one year before the application for the '419 patent was filed, that is, before March 21, 1985.

Fourth, anything that was described in a patent granted on an application filed in the United States before the date of invention of the subject matter of claim 11 of the '419 patent.

Fifth, anything that was patented or described in a printed publication anywhere in the world before the date of invention of the subject matter of claim 11 of the '419 patent, or before March 21, 1985, which was one year before the application for the '419 patent was filed.

AUTHORITY:    1993 USDC Del. § 4.8.1 [generally]; 2004 IPAS Del. § 4.8.1 [generally]; ABA § 9.3 [rearranged and modified for clarity].

Page 53

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

**Cryovac's Objection**

*Cryovac objects to Pechiney's instruction no. 13.3 because the first paragraph of the instruction confuses the statutory presumption of validity owed to issued U.S. patents. This portion of Pechiney's proposed instruction makes it sound like the jury is determining in the first instance whether the invention claimed in the patent is new and unobvious. Pechiney's instruction, thus, obscures the fact that the U.S. Patent Office already made that determination and that the jury should be deciding whether Pechiney has shown by clear and convincing evidence that the U.S. Patent Office's determination was wrong. Cryovac's proposed jury instructions correctly explain this aspect of U.S. patent law.*

DB01:2095760.2                                                                                          063527.1001

II.     **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.3.1  Prior Art--Date of Invention:

**Pechiney's Instruction**

**13.3.1  Prior Art --Date of Invention:**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.  Subject to Pechiney's In Limine Request No. 4.]

Many of the different categories of prior art refer to the date at which the inventor made the invention.  This is called the "date of invention."

Under the patent laws, the date of invention for the '419 patent is the date that the patent application was filed describing all the features and limitations of the claimed invention.  That date was March 21, 1986.

AUTHORITY:          ABA § 9.3.1 [modified]; *Invitrogen Corp. v. Clontech Labs. Inc.*, 429 F.3d 1052, 1064 (Fed. Cir. 2005); *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1314 (Fed. Cir. 2001); *Singh v. Brake*, 222 F.3d 1362, 1367 (Fed. Cir. 2000); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1367 (Fed. Cir. 1999); *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576-78 (Fed. Cir. 1996).

**Cryovac's Objection**

*Cryovac objects to both of Pechiney's alternative instruction nos. 13.3.1 because they both include incorrect statements of well-settled patent law principles.  The first instruction completely ignores the fact that a patentee may establish a date of invention prior to the application filing date.  The second instruction misstates what the Federal Circuit has held must be shown to prove an actual reduction to practice.  See Cooper v. Goldfarb, 154 F.3d 1321, 1327 ("In order to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the [claim]; and (2) he determined that the invention would work for its intended purpose.")  Cryovac's*

*proposed instructions (5.8, 5.9, and 5.10), from the Federal Circuit Bar Association's Model*

*Patent Jury Instruction 10.6.1, and Federal Circuit precedent, on the other hand, are clear and*

*accurate statements of the law relevant to this case on determining a date of invention prior to*

*the patent's filing date.*

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**13.3.2  Prior Art—Prior Public Use or Knowledge:**

**Pechiney's Instruction**

**13.3.2  Prior Art—Prior Public Use or Knowledge**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

The prior public use of a claimed invention may be prior art to the patent claims under two different circumstances.  The first is where the invention was publicly known or used by someone other than the inventor before the date of invention by the inventor on the patent.  The second is where the inventor, the patent owner, or anyone else publicly used the invention more than one year before the application for the patent was filed.

In both circumstances, the public use or knowledge must have been in the United States.  Prior public use or knowledge of the claimed invention outside the United States is not prior art to a patent claim.

If the inventor or the patent owner used the invention for commercial purposes, that use will be prior art even if it was done in secret.

Use or knowledge by someone other than the inventor or patent owner may be prior art if it was before the date of invention by the inventor on the patent, or more than one year before the filing of the application for the patent.  In either case, a prior use by someone other than the inventor or the patent owner will not be prior art unless it was public.  Private or secret knowledge or use by another is not prior art.

If the prior use was more than one year before the filing date of the application for the patent, then the date of invention for the patent claim is irrelevant.  A public use more than one year before the patent application was filed will be prior art regardless of the date of invention.

063527.1001

To be considered public, prior art need not have been available to every member of the public. It only must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents. An invention is publicly used if it is used by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor or patent owner.

In this case, Pechiney relies on *[to be inserted later]* as a prior public use.

AUTHORITY:     2004 IPAS § 4.5 [generally and regarding public availability]; ABA
               § 9.3.5 [expanded and rearranged]; AIPLA Anticipation § 3 [regarding
               public use].

## Cryovac's Objection

*Cryovac objects to Pechiney's instruction no. 13.3.2 because it contains incorrect statements of the law (third paragraph, first sentence of the fourth paragraph, fifth paragraph, and last paragraph), it confuses 35 U.S.C. §§ 102(a) and 102(b), it ignores the law that the use and knowledge referred to in the instruction must be a public use or public knowledge. Soundscriber Corp. v. U.S., 360 F.2d 954, 960 (Ct. Cl. 1966). Pechiney's proposed instruction also contains Pechiney's contentions, which are more appropriately found in the nature of the case instruction and are repetitive here.*

*Pechiney's instruction is also confusing because it includes statements about legal issues not in the case. See Proposed Pretrial Order, Exhibit 3 at pages 3-6 wherein Pechiney set forth its expected proofs regarding invalidity. This section does not identify any specific public use by Cryovac more than a year before the filing date as an issue in this case. Nor does Pechiney's Exhibit 3 thereto identify any expected proof on that issue.*

*Cryovac also objects to Pechiney not identifying what prior art Pechiney is relying on ("Pechiney relies on [to be inserted later] as prior public use...) and Pechiney's seeming*

*reservation of rights in its proposed jury instruction. Cryovac's proposed jury instruction is a
clearer, more accurate statement of the current law regarding anticipation by prior public use or
public knowledge.*

DB01:2095760.2                                                                                                063527.1001

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 13.3.3  Prior Art--Prior Printed Publication:

**Pechiney's Instruction**

**13.3.3  Prior Art—Prior Printed Publication**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

Printed publications from anywhere in the world are prior art to the '419 patent if the printed publications were published, either before the inventor made the claimed invention or more than one year before the application for the '419 patent was filed.

A document is a printed publication if it was reasonably accessible to that portion of the public most likely to use it.  It is not necessary that the publication be available to every member of the public.  Thus, publications may include not only such things as books, periodicals or newspapers, but also publications that are not as widely available to the public, such as trade catalogues, journal articles or scholarly papers that are distributed or available to those skilled in the field of the invention.

The date that a printed publication becomes prior art is the date that it becomes available to the public.  Published patent applications are printed publications as of their publication dates.

If a printed publication was published more than one year before the application for the '419 patent was filed, then that publication will be prior art, regardless of the date of invention for the patent claims.  The date of invention is irrelevant to this category of prior art.

In this case, Pechiney relies on *[to be inserted later]* as a prior art printed publication to claim 11 of the '419 patent.

AUTHORITY:        ABA § 9.3.8.

<u>**Cryovac's Objection**</u>

*Cryovac objects to Pechiney's instruction 13.3.3 because it is confusing and does not follow the clearer 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, which were the basis of Cryovac's instruction on this topic. Cryovac also objects to Pechiney not identifying what prior art Pechiney is relying on ("Pechiney relies on [to be inserted later] as a prior art printed publication...) and Pechiney's seeming reservation of rights in its proposed jury instruction no. 13.3.3.*

DB01:2095760.2                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.3.4  Prior Art--Prior Patents:

**Pechiney's Instruction**

**13.3.4  Prior Art—Prior Patents**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

An issued patent may be prior art to a patent claim under a number of different circumstances.

First, a patent issued anywhere in the world, like a printed publication, may be prior art to a patent claim if the patent issued before the inventor conceived and made the claimed invention.

Second, a patent issued anywhere in the world more than one year before the application for the '419 patent was filed may be prior art to claim 11, regardless of the date of invention of the subject matter of claim 11 of the '419 patent.  The date of invention is irrelevant to this category of prior art.

Third, a U.S. patent may be prior art to a patent claim even if the patent issued after the date of invention of the claimed invention.  This occurs when another person filed the patent application for that U.S. patent before the inventor conceived and made the claimed invention.

In this case, Pechiney relies on *[to be inserted later]* as a prior art patent to claim 11 of the '419 patent.  The application for the *[to be inserted later]* patent was filed on *[to be inserted later]*, which was before the application for the '419 patent was filed on March 21, 1986.

AUTHORITY:        ABA § 9.3.10 [modified for clarity].

**Cryovac's Objection**

*Cryovac objects to Pechiney's proposed instruction 13.3.4 because it refers to when the inventor "conceived" the invention (second and fourth paragraph), which unnecessarily*

Page 62

*introduces an additional legal concepts into the jury instruction which is not at issue in this case, and would likely confuse the jury. (Cryovac has consistently argued for an earlier reduction to practice. The elements Cryovac needs to prove in this regard are more accurately set forth in Cryovac Proposed Instruction 5.9 and the Federal Circuit case law cited as authority therefore. Those elements do not include "conception.")  Cryovac further objects to Pechiney not identifying what prior art Pechiney is relying on ("Pechiney relies on [to be inserted later] as a prior art patent..." and "The application for the [to be inserted later] patent was filed on [to be inserted later], which was before the application for the '419 patent...") and Pechiney's seeming reservation of rights in its proposed jury instruction no. 13.3.4.*

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**13.3.5  Prior Art--Prior Invention:**

<u>**Pechiney's Instruction**</u>

**13.3.5  Prior Art--Prior Invention:**

[This instruction to be given if jury to decide whether references Pechiney relies upon are prior art.]

An invention made by another person before the inventor on the '419 patent made the invention is prior art to claim 11, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduced an invention to practice before the inventor on the '419 patent, then the reduction to practice by the other person will be prior art to claim 11. It is not necessary that the second inventor know of the earlier invention.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise

**REDACTED -- Public Version, filed 5/15/06**

used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, Pechiney contends that *[to be inserted later]* was a prior invention to claim 11 of the '419 patent.

AUTHORITY:        ABA § 9.3.9.

**Cryovac's Objection**

*Cryovac objects to this instruction 13.3.5 because the third paragraph of the instruction is unnecessary and confusing. Cryovac also objects to Pechiney not identifying what prior art Pechiney is relying on ("Pechiney contends that [to be inserted later] was a prior invention...") and Pechiney's seeming reservation of rights in its proposed jury instruction no. 13.3.5. Cryovac's proposed jury instruction on prior invention, which follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, is a clearer statement of the current law on prior invention.*

DB01:2095760.2                                                                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.4    Anticipation/Lack of Novelty:

**Pechiney's Instruction**

### 13.4    Anticipation/Lack of Novelty

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. Under the U.S. patent laws, an invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a claim of a patent must prove anticipation by clear and convincing evidence. In this case, Pechiney contends that the invention of claim 11 of the '419 patent was anticipated.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

The prior art need not describe an invention as preferred or desirable to be an anticipating reference. A prior art reference's disclosure includes not only embodiments it says are preferred, but also any embodiments described or inferred as inferior.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the

Page 66

complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider not only what is expressly stated or present in the item of prior art, but also what is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or the natural result of an operation taught in the prior art. Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.

A prior public use of a patented invention that was accidental, unrecognized, or unappreciated can still be an invalidating anticipation, even if the user did not intend to use the invention, or even realize he or she had done so.

I have told you that you are to interpret the term "oriented" in claim 11 of the '419 patent as meaning "heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process." For the purpose of anticipation, you are to interpret "oriented" as meaning that the molecular configuration was realigned. You are not to consider whether an oriented film product in the prior art was heated or was stretched by a racking or blown bubble process. How a product in the prior art was made is not relevant to whether the prior art product anticipated a patent claiming the same product.

To prove anticipation of claim 11 of the '419 patent, Pechiney does not need to prove that a product in the prior art was made by heating and stretching or by a racking or blown bubble process or by any other particular process. The anticipating product could have been made by the process described in the '419 patent, by a different process, or by some unknown process.

In this case, Pechiney contends that claim 11 of the '419 patent was invalid because it was anticipated by *[to be inserted later]*. If you find that Pechiney has proved that it is highly probable that claim 11 was anticipated, then you must find that the claim was invalid.

AUTHORITY:    2004 IPAS Del. § 4.5 [expanded]; ABA § 9.6 [expanded]; AIPLA Anticipation § 1 [expanded and modified for combination with other instructions]; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1317 (Fed. Cir. 2006); *In re Fulton*, 391 F.3d 1195, 1200-01 (Fed. Cir. 2004).

**Cryovac's Objection**

*Cryovac objects to this instruction 13.4 because the sixth, seventh, eighth, and ninth paragraphs of Pechiney's proposed instruction include misstatements of the law and unnecessary legal concepts not applicable to this case. Pechiney's proposed instruction is also confusing, unnecessarily long, and inconsistent with the Court's April 13 and April 17, 2006 Opinions and Orders concerning the claim construction for the claim term "oriented." Pechiney's instruction also improperly recites Pechiney's contentions in such a way that Pechiney's proposed instruction applies the law to Pechiney's version of the facts. Cryovac also objects to Pechiney not identifying what prior art Pechiney is relying on ("... '419 patent was invalid because it was anticipated by [to be inserted later]") and Pechiney's seeming reservation of rights in its proposed jury instruction no. 13.4.*

*Cryovac's clearer, more concise proposed instruction, which follows 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 4.5, does not suffer from these problems.*

DB01:2095760.2                                                                                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.5    Obviousness:

**Pechiney's Instruction**

**13.5    Obviousness**

An inventor also is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a person of ordinary skill in the art who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claim is invalid. Pechiney has the burden of proving by the highly probable standard that claim 11 of the '419 patent was invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether the invention would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the '419 patent. You should not use the '419 patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made. You must presume that this person would have known about all the relevant prior art.

In determining whether or not these claims would have been obvious, you should make the following determinations:

Page 69

First, what is the scope and content of the prior art that Pechiney is relying upon?

Second, what differences, if any, are there between the invention of claim 11 of the '419 patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention of the '419 patent was made?

Fourth, are there any objective indications of obviousness or nonobviousness?

Against this background, you must decide whether or not the subject matter covered by claim 11 of the '419 patent would have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

AUTHORITY:    1993 USDC Del. §§ 4.8 [generally], 4.8.5 [generally]; 2004 IPAS Del.
               §§ 4.8 [generally], 4.8.5 [generally]; ABA § 9.8; AIPLA Obviousness §§ 1
               [generally], 6 [generally].

## Cryovac's Objection

*Cryovac objects to this instruction 13.5 because it contains misstatements of the law (see second paragraph of the instruction), is unnecessarily long yet incomplete, and would be confusing and misleading to a jury. For example, Pechiney's proposed instruction tells the jury:* "The question is, would it have been obvious for a person of ordinary skill in the art who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claim is invalid." *This is simply not the law, as it ignores the requirement that there must be a motivation to combine prior art and a reasonable expectation of success.*

DB01:2095760.2                                                                 063527.1001

**REDACTED -- Public Version, filed 5/15/06**

Cryovac's more concise, yet more complete, proposed instruction, which follows 2004
Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of
Delaware, Instruction 4.8, is a much clearer, **accurate** summary of the law regarding
obviousness and does not suffer from any of the problems inherent in Pechiney's proposed
instruction.

DB01:2095760.2    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**13.5.1  The Scope and Content of the Prior Art:**

**Pechiney's Instruction**

**13.5.1  The Scope and Content of the Prior Art**

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art. You must decide whether this prior art was reasonably relevant to the particular problem the inventor was attempting to solve in making the invention covered by claim 11 of the '419 patent. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

You must consider all disclosures of the prior art, including express or inherent disclosures of embodiments that were not preferred.

The prior art that you considered for anticipation purposes is also prior art for obviousness purposes.

In examining the prior art, you should take into account not only what it expressly discloses or embodies, but also anything that was inherent in that prior art.

AUTHORITY:    1993 USDC Del. § 4.8.1 [generally]; 2004 IPAS Del. § 4.8.1 [generally]; ABA § 9.8.1 [modified by adding last two paragraphs]; AIPLA Obviousness §§ 2, 6 [last paragraph]; *In re Napier*, 55 F.3d 610, 613 (Fed. Cir. 1995); *Merck & Co., Inc. v. Biocraft Labs., Inc.*, 874 F.2d 804, 807 (Fed. Cir. 1989); *In re Grasselli*, 713 F.2d 731, 739 (Fed. Cir. 1983).

**Cryovac's Objection**

*Cryovac objects to this instruction 13.5.1 because it includes misstatements of the law, is incomplete, misleading, and confusing. In particular, the second, third and fourth paragraphs of the instruction are legally wrong with respect to what prior art the jury should consider. For example, contrary to the implication of Pechiney's instruction, when determining the scope and*

content of the prior art the jury is **not** limited to considering the prior art relied on by Pechiney

for anticipation. Rather, there is prior art not relied on by Pechiney that teaches **against**

Mr. Shah's invention, which is also relevant. Also contrary to Pechiney's instructions, the jury

is not required to consider "all disclosures of the prior art," which of course would be

impossible for the jury to do. Similarly, it is incorrect and misleading for Pechiney to state that

in determining obviousness the jury should take into account "anything that was inherent in that

prior art." This confuses the concepts of inherent anticipation and obviousness and is contrary

to the law regarding motivation to combine and expectation of success. See 2004 Uniform Jury

Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction

4.8.4.

     Cryovac's more concise, yet more complete, proposed instruction regarding the scope

and content of the prior art follows the 2004 Uniform Jury Instructions for Patent Cases in the

U.S. District Court for the District of Delaware, Instruction 4.8.1. Cryovac's instruction is a

much clearer, **accurate** summary of the law regarding this aspect of obviousness and does not

suffer from any of the problems inherent in Pechiney's proposed instruction.

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 13.5.3  Level of Ordinary Skill:

<u>**Pechiney's Instruction**</u>

**13.5.3  Level of Ordinary Skill**

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention at the time the invention was made.  This person is presumed to know all of the prior art, not just what the inventor may have known.  When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

AUTHORITY:        1993 USDC Del. § 4.8.3 [generally]; 2004 IPAS Del. § 4.8.3 [generally]; ABA § 9.8.3.

<u>**Cryovac's Objection**</u>

*Cryovac objects to this instruction 13.5.3 because the last sentence in the first paragraph is unnecessary and ambiguous because the obviousness determination is made based on prior art available* **in the field of the invention**--*not "all" prior art in existence as implied in Pechiney's proposed instruction.  On the other hand, Cryovac's much more concise proposed instruction follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 4.8.3, which is a more accurate, unbiased recitation of the law on this issue.*

DB01:2095760.2                                    063527.1001

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 13.5.4  Objective Indications Concerning Obviousness:

**Pechiney's Instruction**

13.5.4  **Objective Indications Concerning Obviousness:**

You also must consider what are referred to as objective indications of nonobviousness. If established by Cryovac, these factors weigh in favor of finding that the invention would not have been obvious.  Some of these indications of nonobviousness are:

Commercial success or lack of commercial success of products covered by claim 11 of the '419 patent;

A long-felt need that was satisfied by the invention recited in claim 11 of the '419 patent;

Failed attempts by others before Gautam Shah's work to make the invention;

Copying of the invention by others in the field;

Unexpected results achieved by the invention;

Praise of the invention by Pechiney or others in the field;

The taking of licenses under the '419 patent by others;

Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

The presence of any of these objective indications may suggest that the invention was not obvious.  However, these objective indications are only relevant to obviousness if there is a connection, or nexus, between the evidence showing any of them and the invention recited in claim 11 of the '419 patent.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those recited

Page 75

in claim 11 of the '419 patent, then any commercial success may have no relation to the issue of obviousness.

AUTHORITY:    1993 USDC Del. §§ 4.8.4 [modified for clarity and combination with other instructions], 4.8.6 [generally], 4.8.7 [generally]; 2004 IPAS Del. § 4.8.6 [modified for clarity]; ABA § 9.8.4 [modified for clarity and combination with other instructions]; AIPLA Obviousness § 8 [generally].

**Cryovac's Objection**

*Cryovac objects to this instruction 13.5.4 because the last paragraph is confusing and misstates the law with respect to the effect of objective indications of nonobviousness. Cryovac's instruction on this issue follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 4.8.6, which is a more accurate, unbiased recitation of the law on this issue.*

Page 76

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**13.5.5  Independent Invention by Others:**

Pechiney's Instruction

**13.5.5  Independent Invention by Others**

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of claim 11 of the '419 patent was also invented independently by other persons, either before the inventor of the '419 patent or at about the same time.  Just as the failure of others to make the invention can be evidence of unobviousness, independent making of the invention by persons other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

AUTHORITY:    1993 USDC Del. § 4.8.9 [first paragraph; AIPLA Obviousness § 9 [generally].

**Cryovac's Objection**

*Cryovac objects to this instruction 13.5.5 because it is not relevant to any issue that will be decided by the jury in this case and it is redundant since the substance of the instruction is already included in other proposed instructions.  Cryovac also notes that this instruction was removed from the uniform instructions and does not appear in the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware.  However, if the Court adds an instruction on "Independent Invention by Others," the proposed language by Pechiney should be changed to clarify that the only proper timeframe to consider when making an obviousness determination is at or **before** the inventor's date of invention--never after the date of invention.  Throughout Pechiney's proposed instruction 13.6.5, Pechiney uses the ambiguous phrase "**or at about the same time,**" which strongly implies that the jury can consider points in time after the inventor's date of invention, which is inconsistent with the*

Page 77

REDACTED -- Public Version, filed 5/15/06

*patent statute, which requires that the obviousness determination be made "at the time the*

*invention was made." 35 U.S.C. § 103(a).*

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**13.5.6  Determination of Obviousness:**

<u>**Pechiney's Instruction**</u>

**13.5.6  Determination of Obviousness**

Pechiney contends that the invention recited in claim 11 of the '419 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of *[to be inserted later]* combined with *[to be inserted later]*. If you find that Pechiney has provided clear and convincing evidence of obviousness, then you must find that the claim was invalid for obviousness.

I have told you that you are to interpret the term "oriented" in claim 11 of the '419 patent as meaning "heated and stretched to realign the molecular configuration, this stretching accomplished by a racking or blown bubble process." For the purpose of obviousness, you are to interpret "oriented" as meaning only that the molecular configuration was realigned. You are not to consider whether an oriented film product in the prior art was heated or was stretched by a racking or blown bubble process. To prove that claim 11 of the '419 patent was invalid for obviousness, Pechiney does not need to prove that a product in the prior art was made by heating and stretching or by a racking or blown bubble process or by any other particular process. How a product in the prior art was made is not relevant to whether its existence would have made a later claimed invention obvious.

AUTHORITY:         ABA § 9.8.5 [first paragraph]; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1317 (Fed. Cir. 2006).

**Cryovac's Objections**

Cryovac objects to this instruction 13.5.6 because it is inconsistent with the Court's April 13 and April 17, 2006 Opinions and Orders regarding the proper claim construction of "oriented."

Cryovac also objects to this instruction because it is unnecessary, duplicative, and confusing, since the substance of this instruction is already contained in other proposed instructions. In that regard, Cryovac notes that there is also no "Determination of Obviousness" instruction in the 1993 or 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware.

Cryovac also objects to Pechiney not identifying what prior art Pechiney is relying on for its obviousness argument ("...made in light of [to be inserted later] combined with [to be inserted later]") and Pechiney's seeming reservation of rights in its proposed jury instruction.

Cryovac also objects to this instruction because it distorts the law regarding Pechiney's burden on the issue of obviousness. Cryovac suggests that the following is a more accurate explanation of the application of that burden of proof for this issue:

For Pechiney to prove that the '419 patent is invalid for failure to satisfy the non-obviousness requirement, the evidence must be clear and convincing. If Pechiney does not carry this burden, then you must find for Cryovac on this issue.

DB01:2095760.2                                                                                          063527.1001

II.   **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 14.   Willful Infringement:

**Pechiney's Instruction**

### 14.   Willful Infringement

Cryovac contends that Pechiney willfully infringed claim 11 of the '419 patent. I have already determined that Pechiney's products infringed claim 11 of the '419 patent, but you must independently decide whether or not Cryovac has proven, by clear and convincing evidence, that Pechiney's infringement was willful. Willfulness is a determination about Pechiney's state of mind. My determination that Pechiney infringed does not establish that Pechiney's infringement was willful. Whether Pechiney's infringement was willful or not is an independent decision that you, the jury, must make.

When a person becomes aware that a patent may have relevance to his or her activities, that person has a duty to exercise due care to investigate whether or not his or her activities or proposed activities will infringe any valid claim of the patent. Cryovac must prove that Pechiney willfully infringed by the higher burden of clear and convincing evidence.

To establish willful infringement by Pechiney of the '419 patent, Cryovac must prove two things with clear and convincing evidence:

1.    that Pechiney actually knew of the '419 patent; and

2.    that Pechiney had no good faith basis for believing either:

(a) that its ClearShield products did not infringe claim 11 of the '419 patent, or

(b) that claim 11 of the '419 patent was invalid.

To determine whether Pechiney acted with a good faith belief that it did not infringe claim 11 of the '419 patent or that claim 11 was invalid, or whether Pechiney willfully infringed claim 11 of the '419 patent, you must consider all of the facts and circumstances, including the

strength of the defenses raised by Pechiney in this trial. No single fact alone determines whether infringement was willful or nonwillful. The significance of each fact depends upon the totality of the circumstances.

Among the facts you should consider in your determination of willfulness are:

a.      Whether Pechiney learned of the '419 patent through its own diligence or by receiving a notice from Cryovac;

b.      Whether Pechiney applied for its own patents for its products;

c.      Whether Pechiney ever obtained licenses under other parties' patents to make its products;

d.      Whether Cryovac told Pechiney about the '419 patent and, if so, when that occurred and how Pechiney acted after receiving notice;

e.      Whether Pechiney obtained and followed the advice of a lawyer; and

f.      Whether Pechiney tried to avoid infringement by designing around the claims of the '419 patent.

The issue of willful infringement is relevant to the amount of damages to which Cryovac is entitled. If you decide that Pechiney willfully infringed claim 11 of the '419 patent, then it is my job to decide whether or not to award increased damages to Cryovac.

AUTHORITY:      1993 USDC Del. § 3.18 [generally]; 2004 IPAS Del. § 3.13 [generally]; ABA § 8 [generally]; AIPLA Willful Infringement [generally]; *Golden Blount, Inc. v. Robert H. Peterson Co.*, 2006 WL 335607 (Fed. Cir. Feb. 15, 2006); *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1190 (Fed. Cir. 1998); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed. Cir. 1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987).

063527.1001

### Cryovac's Objection

Cryovac objects to this instruction 14 because it contains misstatements of the law and/or misleading statements regarding what Cryovac must prove for willful infringement. Pechiney's proposed instruction is also unnecessarily long and is ambiguous as to the timeframe in which the jury should be determining the infringer's state of mind (first, third, and fourth paragraphs). In cases such as this one in which the infringer had notice of the patent prior to beginning the infringing activity, the Federal Circuit has held that the proper time to assess the infringer's conduct, for purposes of a willfulness determination, is **when the infringing activity began** and not at some later point. See, e.g., Underwater Devices Inc. v. Morrison-Knudsen Co., 717 F.2d 1380, 1390 (Fed. Cir. 1983); Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 828 (Fed. Cir. 1989)(the "critical date" "employed in determining willfulness" was "the date infringement began" when infringer knew of patent before product launch); Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1259 (Fed. Cir. 1997) ("The district court could only rely on those four opinions [of counsel] received prior to marketing [Defendant's] infringing [] product in determining the reasonableness of [the infringer's] actions."); Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, 149 F.Supp.2d 659, 662, 663 (S.D. Ind. 2001)("The willfulness of allegedly infringing activity is determined as of the date the activity began or the date on which the alleged infringer became aware of the patent, whichever is later.") (citing Jurgens v. McKasy, 927 F.2d 1552, 1562 (Fed. Cir. 1991)).

Pechiney's proposed instruction also refers numerous times to the jury considering whether Pechiney believed claim 11 was invalid. However, the only opinion of counsel Pechiney obtained prior to beginning its infringing activity was a noninfringement opinion that did not

Page 83

address or question the validity of the '419 patent at all, making those references in Pechiney's instruction on the validity of the '419 patent irrelevant and confusing.

Factor "e" in the fifth paragraph of Pechiney's instruction is objectionable because it omits the important facts that the "advice of a lawyer" must **also** be competent, obtained before initiating the infringing activity, and relied upon in good faith by the infringer. The fifth paragraph also omits an important additional consideration: whether Pechiney actually relied in good faith on the legal opinion it obtained as legitimate advice as to whether ClearShield products infringed Cryovac's patent, or whether Pechiney merely sought the legal opinions for their potential evidentiary value in future litigation.

Finally, the last paragraph of Pechiney's proposed instruction is unnecessary and potentially prejudicial. The jury's job is to determine whether Pechiney's infringement was willful based on the facts presented to the jury during the trial and the applicable law. It is not relevant to the jury's decision on willfulness what **other** decisions the judge will **later** make based on that jury decision, and having that information could improperly influence how the jury decides the willfulness issue.

Cryovac's proposed general jury instruction on willful infringement, which updates the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 3.13, by taking into account the Federal Circuit's recent decision in Applied Medical Resources Corp. v. United States Surgical Corp., 435 F.3d 1356, 1365 (Fed. Cir. 2006), does not suffer from the problems found in Pechiney's proposed instruction and provides an accurate summary of the current state of the law on willfulness.

DB01:2095760.2                                                                                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

14.1    Knowledge of the Patent:

**Pechiney's Instruction**

**14.1    Knowledge of the Patent**

Your determination of willfulness should consider how Pechiney learned about the '419 patent. Whether Pechiney learned of the '419 patent through its own diligence or only by notice from Cryovac is a relevant factor in the totality of the circumstances determining willfulness. Finding a patent and proceeding to study it can indicate that an accused infringer did not ignore the relevant patents in the field.

AUTHORITY:    *Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 823 (Fed. Cir. 1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987), *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988).

**Cryovac's Objections**

*Cryovac objects to this instruction 14.1 because it is inconsistent with recent Federal Circuit precedent, which focuses the willfulness inquiry on whether the infringer had a good faith basis for believing that its conduct would not violate another's patent and not on how the infringer learned of the patent. SRI Intern., Inc. v. Advanced Technology Laboratories, Inc., 127 F.3d 1462, 1464-65 (Fed. Cir. 1997) ("[T]he primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing.").*

DB01:2095760.2                                                                    063527.1001

## II.     Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 14.2     Licenses:

**Pechiney's Instruction**

### 14.2     Licenses

That an accused infringer believes its products require licenses under some patents but not others is a strong factor against a finding of willful infringement.

A patent license is a legal right from a patent owner that gives the license holder the right to make a product covered by the patent without getting sued for infringement under the patent.

Whether Pechiney obtained licenses from other patent owners is a relevant factor you should consider in your determination of willfulness. Seeking licenses can indicate that an accused infringer takes a realistic approach to patents and determines when it does or does not need a patent license to avoid infringement.

AUTHORITY:          *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 867 (Fed. Cir. 1985);
*Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.,* 666 F. Supp. 674,
689, 694 (D. Del. 1987), *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988).

**Cryovac's Objections**

*Cryovac objects to this instruction 14.2 because it is not a correct statement of the law. It is also not applicable to the facts of this case and therefore is unnecessary and potentially confusing to the jury. See Proposed Pretrial Order, Exhibit 3 at pages 7-9 wherein Pechiney set forth its expected proofs regarding the willfulness issue. This section does not contain any proof regarding licenses. Moreover, no legal opinion Pechiney obtained suggested that Pechiney was justified in believing that it was not infringing Cryovac's patent because Pechiney had obtained licenses from other patent owners.*

Page 86

Indeed, subsequent to the cases Pechiney relies on for authority for this instruction, the Federal Circuit made clear that practicing under another's patent is not a legitimate defense to a charge of patent infringement. *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002) ("This court made unequivocally clear in *Baxter* that there is no 'practicing the prior art' defense to literal infringement." (citing *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995).)

Pechiney's instruction is also inconsistent with recent Federal Circuit precedent, which focuses the willfulness inquiry on whether the infringer had a good faith basis for believing that its conduct would not violate another's patent and not on how the infringer learned of the patent. *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997) ("[T]he primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing.").

063527.1001