II.     Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

## 15.1    Compensatory Patent Damages:

<u>**Pechiney's Instruction**</u>

**15.1    Compensatory Patent Damages**

If you find that claim 11 of the '419 patent was valid, then Cryovac is entitled to damages adequate to compensate for Pechiney's infringement.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent is entitled to damages adequate to compensate for the infringement, but these damages may not be less than what a reasonable royalty would be for the use made of the invention by the infringer. In determining damages, you must decide how much financial harm Cryovac suffered by reason of the infringement. You must decide the amount of money that Cryovac would have made had Pechiney not infringed.

Damages are only to compensate Cryovac, to put Cryovac into the financial position it would have been in if Pechiney had not infringed. You may not add anything to the amount of damages to punish Pechiney, or to set an example. Cryovac has the burden of proving each element of its damages by a preponderance of the evidence.

It is not relevant to the question of damages whether Pechiney benefited from, realized profits from, or even lost money as a result of the acts of infringement. The only issue is the amount necessary to adequately compensate Cryovac for Pechiney's infringement. Adequate compensation should return Cryovac to the position it would have occupied had there been no infringement. You must consider the amount of injury suffered by Cryovac without regard to Pechiney's gains or losses from the infringement.

AUTHORITY:     1993 USDC Del. § 6.1 [modified]; 2004 IPAS § 5.2 [modified and
                        expanded]; ABA § 11.2 [adding last paragraph]; AIPLA Damages § 1
                        [generally].

DB01:2095760.2                                                                      063527.1001

**Cryovac's Objection**

Cryovac objects to this instruction 15.1 because the final sentence in the instruction is redundant to the first sentence of that same paragraph and may be confusing to the jury. Cryovac's instruction 6.2 follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.2, and is a much more concise summary of the current law on compensatory patent damages.

DB01:2095760.2                                                                063527.1001

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 15.2    Date Damages Begin and End:

__Pechiney's Instruction__

### 15.2    Date Damages Begin and End

Cryovac can recover damages for infringement that occurred only after Cryovac gave notice to Pechiney of its patent rights and before the term of the '419 patent expired.

The term of the '419 patent expired on March 21, 2006. Cryovac cannot recover any damages for any infringement that occurred after that date. After a patent's term has expired, anyone can freely practice the claimed invention. You must not award any damages to Cryovac for any infringement of the '419 patent that occurred after March 21, 2006.

The date on which patent damages begin to be calculated is the date that Cryovac first gave notice to Pechiney of its claim of patent infringement. It is Cryovac's burden to prove by a preponderance of the evidence that it gave notice to Pechiney and when it gave that notice.

Cryovac can give notice in two ways. The first way is to give notice to the public in general. Cryovac can do this by placing the word "patent" or the abbreviation "PAT." with the number of the '419 patent on substantially all the products it sold that included the patented invention. This type of notice is effective from the date Cryovac began to mark substantially all of its products that use the patented invention with the patent number. If Cryovac did not mark substantially all of its products that use the patented invention with the patent number, then Cryovac did not provide notice in this way.

A second way Cryovac can provide notice of its patent is to tell Pechiney that Pechiney is infringing the '419 patent and to identify Pechiney's products that are infringing. This type of notice is effective from the time it is given.

As I said, Cryovac may recover damages only from the time it gave notice of its patent, either by the marking of products or by telling Pechiney of its infringement. If you find that Cryovac did not do either of these before beginning this lawsuit, then Cryovac can only recover damages for infringement that occurred after it sued Pechiney on September 20, 2004, and before the term of the patent expired on March 21, 2006.

AUTHORITY:     2004 IPAS Del. § 5.4 [generally]; ABA § 11.3 [adding second paragraph]; AIPLA Damages § 2 [modified for this case and combination with other instructions].

### Cryovac's Objection

*Cryovac objects to this instruction 15.2 because it contains incorrect statements on the law of damages. Pechiney's proposed instruction repeatedly limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."*

*Cryovac also objects to this proposed instruction because Pechiney never indicated in discovery, in its responses to contention interrogatories, or in its expert reports that it was asserting that Cryovac had not notified Pechiney of its infringement before the lawsuit was filed.*

**REDACTED**

*Proposed Final*

*Pretrial Order § III at page 10.) Cryovac objects to Pechiney adding the contention that they did not have notice now because doing so prejudices Cryovac by depriving Cryovac of the*

DB01:2095760.2                                                                          063527.1001

*opportunity to have taken discovery on this issue and by depriving Cryovac of the opportunity to have presented evidence on this issue in the Final Pretrial Order.  See Proposed Final Pretrial Order § X. H. at pages 18-19.*

.

**REDACTED -- Public Version, filed 5/15/06**

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 15.3    Burden of Proof:

**Pechiney's Instruction**

### 15.3    Burden of Proof

Cryovac has the burden of proving damages by a preponderance of the evidence. Cryovac is only entitled to damages that it can prove with reasonable certainty.

Reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Cryovac's right to recover. On the other hand, Cryovac is not entitled to speculative damages. That is, you should not award any amount for loss that, although possible, is remote or the result of mere conjecture or guessing. You may base your evaluation of reasonable certainty on opinion evidence.

Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

AUTHORITY:    1993 USDC Del. § 6.3 [modified for clarity]; 2004 IPAS Del. § 5.3 [modified for clarity].

**Cryovac's Objection**

*Cryovac objects to this instruction 15.3 because the instruction stresses a limitation on damages, in contrast to the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.3 and 5.3, respectively), which expresses an entitlement to damages that are proven. The Uniform Jury Instructions are thus consistent with the patent statute, 35 U.S.C. § 284, which provides that "[U]pon finding for the claimant the court **shall** award the claimant damages adequate to compensate for the infringement...." [emphasis added]*

*The third paragraph in this instruction is also a misstatement of the law. Contrary to Pechiney's instruction, any doubts the jury has regarding the computation of the amount of damages should be resolved against the Defendant **Pechiney** and in favor of the Plaintiff **Cryovac**. See 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.3, and the cases cited therein.*

*Cryovac also objects to this instruction because Pechiney disingenuously omitted the word "wholly" from modifying the word "remote" in the second paragraph of its proposed instruction. Both the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware use the phrase "wholly remote."*

*Cryovac's proposed instruction follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.3, which is an accurate summary of the current law relating to the parties' burdens in proving patent damages.*

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

15.4    Two Types of Damages--Lost Profits and Reasonable Royalty:

**Pechiney's Instruction**

15.4    **Two Types of Damages--Lost Profits and Reasonable Royalty**

There are two methods for computing damages for patent infringement. The first method is lost profits. The second is called a reasonable royalty. These methods are alternatives for computing damages. If you find that claim 11 of the '419 patent was valid, you must award either lost profits or a reasonable royalty for each infringing sale of these products that Pechiney made after receiving notice of the '419 patent and before the term of the '419 patent expired. You cannot, however, award Cryovac both lost profits and a reasonable royalty for the same sale. And you cannot award Cryovac either lost profits or a reasonable royalty for any sales that Pechiney made after the term of the '419 patent expired on March 21, 2006.

Briefly, lost profits damages compensate the patent owner for the additional profits that it would have made if the accused infringer had not infringed. You may hear this referred to as the "but for" test. I will discuss lost profits in more detail shortly.

I will also discuss reasonable royalty later in more detail. Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner for the nonexclusive right to practice the patent and that the owner should expect to receive. A reasonable royalty is the minimum amount of damages that a patent owner may recover.

In determining damages, you should first determine whether or not Cryovac has proven its entitlement to lost profits. If you find that Cryovac is not entitled to lost profits, then you should calculate damages based upon a reasonable royalty.

AUTHORITY:    2004 IPAS Del. § 5.5 [expanded]; ABA § 11.4 [expanded]; AIPLA
Damages § 3 [expanded].

### Crvovac's Objection

Cryovac objects to this instruction 15.4 because it contains incorrect statements on the

law of damages.  Twice in the first paragraph of Pechiney's proposed instruction limits the term

for damages to the time at which the '419 expires.  This conflicts with the 1993 and 2004

Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of

Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated

Entry/Head Start."

Cryovac also objects to this proposed instruction because Pechiney never indicated in

discovery, in its responses to contention interrogatories, or in its expert reports that it was

asserting that Cryovac had not notified Pechiney of its infringement before the lawsuit was filed.

Cryovac objects to Pechiney adding this contention now, as set it is set forth in the first

paragraph of this instruction, because doing so prejudices Cryovac, as explained more fully in

Cryovac's Objection to Pechiney's Jury Instruction 15.2, supra, and in the Proposed Final

Pretrial Order § X. H. at pages 18-19.

Cryovac's proposed instruction is a more concise and accurate summary of the two types

of damages, which are explained in detail in later instructions.

DB01:2095760.2                                                    063527.1001

## II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 15.5    Entire Market Value Rule:

**Pechiney's Instruction**

### 15.5    Entire Market Value Rule

The "entire market value rule" allows for the recovery of damages based on the value of an entire product containing several features, even though only one feature is patented, when the patented feature constitutes the basis for consumer demand for the product. So, if you find that Cryovac has proven by a preponderance of the evidence that customers demanded a ClearShield product because of the features recited in claim 11 of the '419 patent, you may award damages based on the value of the entire product. However, if you find that customer demand for ClearShield products was based on something other than the patented features, you should award damages based only on the value of the patented features to the customer and not the value of the entire product.

AUTHORITY:        1993 USDC Del. § 6.4 [modified]; 2004 IPAS Del. § 5.6.

**Cryovac's Objection**

*Cryovac objects to this instruction 15.5 because the entire market value rule is not applicable in the present case, since the entire ClearShield product is patented. That is, there is no part of ClearShield products that is not covered by claim 11 of the '419 patent. Cryovac also objects to this instruction because Pechiney never indicated in discovery, in its responses to contention interrogatories, or in its expert reports that it was asserting that Cryovac had not notified Pechiney of its infringement before the lawsuit was filed. Cryovac objects to Pechiney adding the contention now because doing so prejudices Cryovac. See Cryovac's Objection to Pechiney's Jury Instruction 15.2, supra, and in the Proposed Final Pretrial Order § X. H. at pages 18-19.*

**REDACTED -- Public Version, filed 5/15/06**

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 15.6    Lost Profits--in General:

<u>Pechiney's Instruction</u>

### 15.6    Lost Profits--in General

I will first instruct you about lost profit damages. Simply stated, lost profit damages are the profits Cryovac lost because of the infringement. They are not the profits Pechiney actually made.

Cryovac says that it lost profits because Pechiney's infringement took away sales that Cryovac would have made. This is called lost profits due to lost sales.

Cryovac has the burden to show that it was more probable than not that but for the infringement, Cryovac would have made all the sales or a portion of the sales that Pechiney made of the ClearShield products before the term of the '419 patent expired. You must determine what the customers who purchased ClearShield products would have done if the infringement had not occurred. That is, you must determine which of Pechiney's profits from sales of ClearShield products derive from the invention recited in claim 11 of the '419 patent, and not from other features of the ClearShield products.

Remember, if you find that Pechiney proved that claim 11 of the '419 patent was invalid, there can be no damages of any kind. Also, you cannot award any damages for profits lost because of sales Pechiney made after the term of the '419 patent expired on March 21, 2006.

AUTHORITY:        2004 IPAS Del. § 5.7 [generally]; ABA § 11.5 [generally]; AIPLA
                  Damages § 4 [expanded].

<u>**Cryovac's Objection**</u>

*Cryovac objects to this instruction 15.6 because it contains incorrect statements on the law of damages. The third and fourth paragraph of Pechiney's proposed instruction limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."*

*Cryovac also object to this instruction because the fourth paragraph is repetitive. Both parties' first damages instruction on general damages for patent infringement already states that if the patent is found invalid, the jury will not determine damages. To unnecessarily repeat such an instruction here would prejudice Cryovac.*

*Cryovac further objects to this instruction because it is confusing and misleading. The third paragraph of the instruction implies that there are patented and non-patented features of the ClearShield product. However, there is no part of ClearShield that is not covered by claim 11 of the '419 patent. Therefore, this portion of the instruction is not applicable in the present case.*

*Cryovac's proposed instruction on this issue follows the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.7, which gives a more concise and accurate general summary of the current law on lost profits.*

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**15.7    Lost Profits Due to Lost Sales:**

**Pechinev's Instruction**

**15.7    Lost Profits Due to Lost Sales**

[This instruction to be modified if jury not to consider availability of noninfringing alternatives and/or to consider lost sales of Cryovac product not covered by '419 patent.]

Lost sales are those sales, if any, that Cryovac lost because of Pechiney's infringement during the term of the '419 patent.

To prove that it lost sales, Cryovac must prove that it was more probable than not that it would have made additional sales if Pechiney had not made the infringing sales.

In order to recover lost profits damages for the sales that Pechiney made, Cryovac must prove the following:

1.    There was a demand for products with the features recited in claim 11 of the '419 patent;

2.    Cryovac had the ability to meet the market demand;

3.    No acceptable non-infringing substitutes were available; and

4.    The amount of the profit Cryovac would have made but for Pechiney's sales.

Cryovac may receive damages for lost sales only on those products that compete with Pechiney's products that I found were infringing. Cryovac may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

AUTHORITY:        2004 IPAS Del. § 5.8 [modified]; ABA § 11.6 [expanded].

**Cryovac's Objection**

DB01:2095760.2                                                            063527.1001

*Cryovac objects to this instruction 15.7 because it contains incorrect statements on the law of damages. The first paragraph of Pechiney's proposed instruction limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."*

*Cryovac also objects to this instruction because the third paragraph of the instruction states that "Cryovac must prove" the four <u>Panduit</u> factors. This conflicts with the Federal Circuit's decisions in <u>State Industries, Inc. v. Mor-Flo Industries, Inc.</u>, 883 F.2d 1573, 1577 (Fed. Cir. 1989) and <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1548 (Fed. Cir. 1995) ("If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable"). Moreover, this proposed instruction conflicts with this Court's holding on page 26 of its April 17, 2006 Opinion that "damages for lost profits may be awarded, even where there are non-infringing alternatives, based on patentee's previous share of the market."*

*Finally, Cryovac objects to this instruction because the last sentence of the fourth paragraph regarding "other products or services that might be sold along with the competing product" because the issue is not applicable to the present patent damages calculation.*

*Cryovac's proposed instruction on this issue is based on the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.8, and modified in view of the case law cited above. Cryovac addresses the related "Market Share Approach" to calculating patent lost profits in its proposed instruction 6.8, which is based on the AIPLA's Model Patent Jury Instructions (Version 1.1, February 2006), Instruction 2.9 (citing Federal Circuit case law).*

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

## 15.7.1  Demand:

**Pechiney's Instruction**

### 15.7.1  Demand

[This instruction to be modified if jury to consider sales of Cryovac product not covered by '419 patent.]

One of your considerations when deciding whether Cryovac lost sales was the demand for products having the features recited in claim 11 of the '419 patent.  Demand for the patented product can be proven by significant sales of Pechiney's products containing the patented features.  However, if you find that Pechiney generated new or different markets by sales efforts or by creating demand because of features other than those recited in claim 11 of the '419 patent, the sales of Pechiney's products cannot establish a demand for the patented product.

AUTHORITY:        AIPLA Damages § 6 [deleting reference to plaintiff's patented product].

**Cryovac's Objection**

*Cryovac objects to this instruction 15.7.1 because Pechiney's issues of fact and expected proofs (exhibit 3 to the jointly-filed Proposed Final Pretrial Order) did not identify any proof that would suggest this was an issue.  Nor did Pechiney's responses to contention interrogatories or its expert reports suggest this was an issue or contention being made by Pechiney.  Therefore, this instruction should not be considered by the jury in this case.*

DB01:2095760.2                                                                                                                  063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**15.7.2  Manufacturing and Marketing Ability:**

**Pechiney's Instruction**

**15.7.2  Manufacturing and Marketing Ability**

Another of your considerations when deciding whether Cryovac lost sales is whether or not Cryovac has proved that it had the manufacturing capacity and the marketing capability to make the sales it says it lost.

Cryovac must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for Pechiney's infringement.

Cryovac also must prove that it had the capability to market and sell the additional patented products.

AUTHORITY:        ABA § 11.6.1; AIPLA Damages § 9.

**Cryovac's Objection**

*Cryovac objects to this instruction 15.7.2 because Pechiney's issues of fact and expected proofs (exhibit 3 to the jointly-filed Proposed Final Pretrial Order) did not identify any proof that would suggest this was an issue.  Nor did Pechiney's responses to contention interrogatories or its expert reports suggest this was an issue or contention being made by Pechiney.  Therefore, this instruction should not be considered by the jury in this case.*

DB01:2095760.2                                                                      063527.1001

II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 15.7.3  Absence of Acceptable Non-Infringing Substitutes:

**Pechiney's Instruction**

#### 15.7.3  Absence of Acceptable Non-Infringing Substitutes

[This instruction to be deleted if jury not to consider whether acceptable noninfringing alternatives to patented product were available.]

Another consideration in determining whether or not Cryovac lost sales due to Pechiney's infringement is whether, if Pechiney's infringing products were not available, some or all of the people who bought from Pechiney would have bought a different, non-infringing product from Pechiney or from somebody else, rather than buy from Cryovac. In that regard, you should consider a product sold by one of Cryovac's licensees to be a non-infringing product.

A non-infringing substitute is a product that is or can be sold competitively in the marketplace, but which does not infringe the '419 patent. A product does not infringe a patent when it either (a) is sold based on a license under that patent, or (b) does not include all the features required by the patent. An acceptable non-infringing substitute is available if, during the damages period, a competitor, or Pechiney, had all the necessary equipment, materials, know-how, and experience to design and manufacture the substitute and customers would have accepted the substitute such that Pechiney could have sold the substitute instead of making its infringing sales at the time those infringing sales were made. If you determine that Pechiney's customers would just as likely have purchased a non-infringing acceptable product, then Cryovac has not shown it lost those sales but for Pechiney's sales.

In deciding whether or not people who bought from Pechiney would have bought a non-infringing product from Pechiney or somebody else, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not

have bought a non-infringing product. You must consider the specific purchasers of ClearShield products, not purchasers generally.

AUTHORITY:          ABA § 11.6.2 [expanded]; AIPLA Damages § 7 [modified].

**Cryovac's Objection**

*Cryovac objects to this instruction 15.7.3 because it misstates the law on this issue. The 2004 Delaware Model Jury Instruction 5.8 is a more accurate and concise statement of the law on this issue. Cryovac's proposed instruction 6.7 follows that model instruction on the issue of the absence of acceptable non-infringing alternatives.*

DB01:2095760.2                                                                                                    063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**15.8    Amount of Lost Profits:**

**Pechiney's Instruction**

**15.8    Amount of Lost Profits**

[Subject to Pechiney's In Limine Requests regarding lost profits.]

If Cryovac has proved that it lost profits due to infringement by Pechiney during the term of the '419 patent, then you are to determine the amount of profits that Cryovac lost. Cryovac must prove the amount of its lost profits to a reasonable probability. That is, the amount of lost profits damages should not include amounts that are merely speculative. Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

Cryovac is permitted to calculate its lost profits on lost sales by computing the lost revenue for its competing product and then subtracting from that figure the amount of additional costs and expenses that it would have incurred in making those lost sales, including but not limited to cost of goods, sales costs, packaging, shipping, etc. Certain fixed costs such as taxes, insurance, rent and administrative overhead may not vary with increases in production or scale. These are called fixed costs. Any costs which do not vary with increased production or scale should not be subtracted from the lost revenue when determining damages.

Remember that no lost profits are permitted for lost sales occurring after the expiration of the term of the '419 patent on March 21, 2006.

AUTHORITY:        ABA § 11.8 [first paragraph, deleting reference to defendant's records];
                  AIPLA Damages § 10 [second paragraph].

063527.1001

**Cryovac's Objection**

Cryovac objects to this instruction 15.8 because the first paragraph both omits an important rule of law and includes a misstatement of the law.

First, as reflected in Instruction 5.3 of the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, the first paragraph needs to include the statement that "[m]ere difficulty in ascertaining damages is not fatal to [Cryovac]'s right to recover" damages resulting from Pechiney's infringement, and that the jury "may base [its] evaluation of reasonable certainty on opinion evidence."

Second, contrary to Pechiney's instruction in the last sentence of that paragraph, any doubts the jury has regarding the computation of the amount of damages should be resolved against the Defendant **Pechiney** and in favor of the Plaintiff **Cryovac**. See 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.3, and the cases cited therein.

Additionally, the last paragraph in the instruction is also a misstatement of the law, since it limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."

DB01:2095760.2                                      063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 15.9    Reasonable Royalty:

**Pechiney's Instruction**

### 15.9    Reasonable Royalty

If you find that Cryovac has proved lost profits as a result of Pechiney's infringing sales, then the damages award, if any, to Cryovac should be those lost profits.

If, however, you find that claim 11 of the '419 patent was valid but that Cryovac has not proved that it should recover lost profits, or has only proved lost profits for some of Pechiney's infringing sales, then for those infringing sales for which you do not award lost profits, you should determine the amount Cryovac has proved to be a reasonable royalty.

A reasonable royalty is the minimum permissible measure of damages set by the patent laws. It is not necessarily the actual measure of damages, but is merely the floor below which damages should not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty. You may not award a reasonable royalty for any sales made after the term of the '419 patent expired on March 21, 2006.

AUTHORITY:    1993 USDC Del. § 6.10 [generally]; 2004 IPAS Del. § 5.14 [generally]; ABA § 11.9 [expanded]; AIPLA Damages § 13 [generally].

**Cryovac's Objection**

*Cryovac objects to this instruction 15.9 because the third paragraph is a misstatement of the law, since it limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."*

Cryovac also objects to this instruction 15.9 because the second paragraph thereof is inconsistent with the patent law presumption of validity and misdescribes the jury's task. It is not the jury's role to find the patent valid. The patent is presumed valid. The 2004 Delaware Model Jury Instruction 5.14 and 5.14.1 are more accurate and concise statements of the law on this issue. Cryovac's proposed instruction 6.11 and 6.12 follow those model instructions on the issue of reasonable royalty.

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

**15.9.1  What is a Reasonable Royalty?:**

**Pechiney's Instruction**

**15.9.1  What is a Reasonable Royalty**

A royalty is an amount of money that someone pays a patent owner in exchange for rights to make, use, or sell the claimed invention.

A reasonable royalty is the royalty that would be reasonable for the infringer to pay and for the patent owner to accept for use of a patent that they both know is valid and that the infringer wants to use.  It is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Cryovac and Pechiney, with both parties operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

You are to decide what a reasonable royalty would be based on circumstances as of the time just before Pechiney began selling the infringing products.  You should assume that Pechiney and Cryovac knew all pertinent information at the time of the hypothetical negotiation. You should also assume that Cryovac was willing to grant Pechiney a license to sell the patented invention and that Pechiney was willing to pay for that license.  You may consider in your determination of reasonable royalty damages any actual profits by Pechiney after that time, but only if you determine that those profits were foreseeable at the time the infringement began.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Pechiney's use of the patented invention, including the opinion testimony of experts.

AUTHORITY:    1993 USDC Del. § 6.10 [generally]; 2004 IPAS Del. § 5.14 [generally]; ABA § 11.9.1 [generally]; AIPLA Damages §§ 14 [generally], 16 [generally].

DB01:2095760.2                                                                    063527.1001

**REDACTED -- Public Version, filed 5/15/06**

<u>**Cryovac's Objection**</u>

*Cryovac objects to this instruction 15.9.1 because it includes a misstatement of the law in the last sentence of the third paragraph, and is not supported by the authority that Pechiney cites for this proposed instruction. Rather, the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 5.14, which Cryovac proposes (Cryovac Instruction 6.11) on this issue, is an accurate, concise statement of the current law on reasonable royalties for patent damages.*

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 15.9.2  Factors for Determining a Reasonable Royalty:

**Pechiney's Instruction**

### 15.9.2  Factors for Determining a Reasonable Royalty

In deciding the value of a reasonable royalty, you may consider the factors that Cryovac and Pechiney would have considered in setting the amount Pechiney should pay.

I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

[NOTE: DELETE FACTORS NOT SUPPORTED BY EVIDENCE IN THE CASE]

a.    Royalties other licensees paid to Cryovac under the '419 patent.

b.    Royalties Pechiney or others paid for the use of other patents comparable to the '419 patent.

c.    Whether Cryovac had a policy of licensing or not licensing the '419 patent or other patents.

d.    Whether Cryovac and Pechiney are competitors.

e.    Whether being able to use the patented invention helps in making sales of other products or services.

f.    The profitability of the products made using the '419 patent, and whether they were commercially successful or popular.

g.    The advantages and benefits of using the patented invention over products not claimed in the '419 patent.

h.    The extent of Pechiney's use of the patented invention and the value of that use to Pechiney.

i.    The portion or percentage of the profit or selling price that is customarily paid in the plastic bag industry for use of patented inventions comparable to the inventions claimed in the '419 patent.

j.    The portion of the profit from sales of ClearShield products that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements, the manufacturing process, business risks, or features or improvements developed by Pechiney.

DB01:2095760.2                                                                                            063527.1001

k.      Expert opinions as to what would be a reasonable royalty.

l.      Other economic factors that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

AUTHORITY:      1993 USDC Del. § 6.11 [generally]; 2004 IPAS Del. § 5.14.1 [generally]; ABA § 11.9.1 [modified for clarity]; AIPLA Damages § 15 [generally].

### Cryovac's Objection

*Cryovac objects to this instruction 15.9.2 because the 2004 Uniform Jury Instruction for Patent Cases in the U.S. District Court for the District of Delaware Instruction 15.14.1 fully addresses this topic and Cryovac sees no reason or benefit to deviate from this model instruction.*

DB01:2095760.2                                                            063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### 15.10   Total Patent Infringement Damages:

**Pechiney's Instruction**

### 15.10   Total Patent Infringement Damages

After making your findings concerning lost profits damages and reasonable royalty damages for patent infringement, if any, you should arrive at a total damages amount to award to Cryovac for patent infringement.  This amount should include the amount of lost profits damages for patent infringement that Cryovac has proved.  It also should include the reasonable royalty damages for that portion of the patent infringement for which Cryovac did not prove lost profits damages.

You should not award both lost profits and a reasonable royalty for the same sale of an infringing product by Pechiney.

AUTHORITY:          ABA § 11.10 [modified by adding last paragraph].

**Cryovac's Objection**

*Cryovac objects to this instruction 15.10 because the instruction is confusing and unnecessary.  The instruction is confusing because neither party included on its proposed special verdict form a question about "total patent infringement damages."  Cryovac notes that the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware does not include any instruction for "Total Patent Infringement Damages."*

## II.    Cryovac's Objections/Comments To Pechiney's Final Jury Instruction

### 15.11    Closing Statement--Patent Infringement Damages:

**Pechiney's Instruction**

### 15.11    Closing Statement Patent--Infringement Damages

In determining the issue of damages for patent infringement, remember that the law does not permit an award of a greater sum than the monetary loss which Cryovac actually suffered as a result of Pechiney's alleged infringement. The law also does not permit an award of damages for any patent infringement occurring after the expiration of the term of the patent. If, following my instructions, you find that Cryovac is entitled to damages, in fixing the amount of those damages you may not include or add to an otherwise fair award any sum for purposes of punishing Pechiney or to set an example.

You should also not include any interest amount in your damages calculation. It is my job to award interest. You should not consider interest in any way.

Remember that the fact that I have instructed you regarding damages should not be construed as suggesting which party should prevail in this case or that I have any opinion one way or the other. I am giving you these instructions on damages only to guide you in the event that the evidence leads you to find in favor of Cryovac.

AUTHORITY:    1993 USDC Del. §§ 6.12 [modified for clarity and by adding paragraph on interest], 6.13 [modified for clarity]; 2004 IPAS Del. §§ 5.15 [modified], 5.16 [generally].

**Cryovac's Objection**

*Cryovac objects to Pechiney's proposed instruction because the first sentence of the first paragraph stresses a limitation on damages, in contrast to both the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instruction*

Page 125

*6.1 and 5.2, respectively), which require an award of damages adequate to compensate Cryovac for Pechiney's infringement as mandated by the patent statute. 35 U.S.C. § 284.*

*Cryovac further objects to this instruction 15.11 because the second sentence in the first paragraph is a misstatement of the law, since it limits the term for damages to the time at which the '419 expires. This conflicts with the 1993 and 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court for the District of Delaware (Instructions 6.8 and 5.10, respectively) regarding "Lost Profits-Accelerated Entry/Head Start."*

DB01:2095760.2

063527.1001

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

### Pechiney's Instruction No. 16. Tortious<br>Interference with a Contractual Relationship – Generally

I will now instruct you on the tortious interference claims in this case.

In addition to its claims against Pechiney for patent infringement, Cryovac also contends that Pechiney interfered with two contracts that Cryovac had with National Beef.

The law recognizes that one who intentionally and improperly causes a third party to breach a contract with another party is responsible to that party for the loss suffered as a result of the third party's breach of contract.

Cryovac alleges that Pechiney tortiously interfered with two separate packaging contracts that existed between Cryovac and National Beef, one dated March 2003 and one dated January 2004, both of which obligated National Beef to purchase the goods identified in the contracts from Cryovac.

Pechiney contends that Cryovac and National Beef were not operating under a binding and enforceable contract. Pechiney also contends that even if Cryovac and National Beef had had a valid contract, Pechiney had no knowledge of this contract. Pechiney further contends that Pechiney's conduct in selling ClearShield products to National Beef was proper.

**Authority:**    See *e.g.*, American Bar Association, *Model Jury Instructions: Business Torts Litigation*, at 8 (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 16. Tortious<br>Interference with a Contractual Relationship—Generally

1.    This instruction is not proper. In particular, the language in the third paragraph, which begins "the law recognizes that one who intentionally and improperly…" does not conform to the language of *Restatement (Second) of Torts* (1979) § 766, cited in American Bar Association, *Model Jury Instructions: Business Torts*

*Litigation*, § 1.1, at 4-5. The paragraph should read: "<u>The law recognizes that one who intentionally and improperly interferes with the performance of a contract. . .between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability to the other from the failure of the third person to perform the contract.</u>" Pechiney's instruction does not make it clear that an element of the prima facie case is that Pechiney must have <u>intentionally interfered</u> with the contract or contracts between Cryovac and National Beef, not, as Pechiney's instruction suggests, that Pechiney <u>intentionally caused National Beef to breach</u> the contract or contracts between Cryovac and National Beef.

2.    In fourth paragraph beginning "<u>Pechiney contends,</u>" references to "<u>contract</u>" are improper. The references should be to "<u>contract or contracts,</u>" to conform to Cryovac's allegation that two separate packaging contracts are at issue.

3.    Also in fourth paragraph, references to "<u>binding and enforceable</u>" contract are not proper. Bindingness and/or enforceability of the contract that was allegedly tortiously interfered with is not a prima facie element of this tort. <u>See</u> <u>e.g.</u> <u>Agranoff v. Miller</u>, 1999 Del. Ch. LEXIS 78 (Del. Ch. 1999) (requirement of tort is that plaintiff show existence of contract, not binding and enforceable contract). The enforceability issue Pechiney seeks to raise is a statute of frauds defense, which Pechiney lacks standing to raise as a third-party to the contracts at issue. <u>See</u> UCC § 2-201, cmt. 4. Moreover, Pechiney is precluded from raising the enforceability/statute of frauds defense because this affirmative defense was never plead. <u>See</u> F.R.C.P. 8(c).

Page 128

**REDACTED -- Public Version, filed 5/15/06**

4.    The final sentence of the instruction improperly limits Pechiney's alleged

interfering conduct to that of "<u>selling ClearShield products</u>."  This imposes a

limitation that is not consistent with Cryovac's allegations or the ABA model

instruction that damage be caused by Pechiney's "<u>conduct</u>."

**Pechiney's Instruction No. 16.1. Tortious
Interference with a Contractual Relationship --Elements of Liability**

For Cryovac to recover on this claim against Pechiney, Cryovac must prove, by a

preponderance of the evidence, that each of the following six elements have been met:

1.    At the time of Pechiney's acts, there was at least one binding contract between

      Cryovac and National Beef, dated March 2003 and/or January 2004;

2.    Pechiney either knew or, under the circumstances, should have known of the

      existence of a binding contract between Cryovac and National Beef;

3.    Pechiney intentionally interfered with a binding contract between Cryovac and

      National Beef;

4.    There was no justification for Pechiney's conduct;

5.    Pechiney's allegedly unjustified conduct in willfully and maliciously infringing

      the Cryovac patent was the cause of National Beef's breach of a binding contract

      with Cryovac; and

6.    Cryovac suffered injury as a result of Pechiney's conduct.

I will now explain each of these elements.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation,*
§ 1.3.1 (Inducing Breach of Contract: Elements of Liability: Generally), at 8 (4th ed. 2005)
[modified]; *See Acorn USA Holdings LLC v. Premark Int'l, Inc.,* 2003 WL 22861168, *3 (Del.
Super. Ct. July 16, 2003) (stating that tortious interference with contract requires "a subsequent
breach caused by [defendant's] wrongful conduct"); *Dangeles v. Muhlenfeld,* 548 N.E.2d 45 (Ill.
Ct. App. 1989) (same); *Schott v. Beussink,* 950 S.W.2d 621, 628-29 (Mo. Ct. App. 1997) ("A
defendant is justified in inducing a contract's breach, unless the defendant uses improper means
to induce the breach of contract.").

DB01:2095760.2                                                                        063527.1001

### Cryovac's Objection to Pechiney Instruction 16.1  Tortious
### Interference with a Contractual Relationship—Elements of Liability

1.  The elements of the tortious interference with contract claim do not conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1, at 8-9.  The reference to "binding" contract in the first element should be to a "valid" contract, in accordance with the ABA model instruction.

2.  It is inappropriate and unbalanced to repeat the validity language (or, according to Pechiney, bindingness), in elements 2, 3 and 5 of the tort.

3.  The third element does not conform to the ABA instruction, such that the required intent relates to "the acts of Pechiney in inducing National Beef to breach its contract with Cryovac", not, as Pechiney suggests, that "Pechiney intentionally interfered with a binding contract."

4.  Consistent with the ABA instruction, the fourth element should require proof that "the conduct of Pechiney was improper under the factors I will instruct you to consider", not, as Pechiney suggests, that "there was no justification for Pechiney's conduct."  Pechiney's instruction misstates the law; justification is a defense to the tort.  Moreover, the instruction does not indicate that the burden of proving justification - if raised as a defense - rests with Pechiney.  In addition, the Court should instruct the jury that they need not consider this issue at all, insofar as infringement of the '419 patent has been found, which determines the element of improper conduct in Cryovac's favor, as a matter of law.

5.  The fifth element does not conform to the ABA model instruction, for several reasons.  In particular, the issue of causation is not, as Pechiney states, that Pechiney's infringement caused breach of contract, but that Pechiney's conduct

DB01:2095760.2

063527.1001

induced National Beef to breach its contract or contracts with Cryovac. Moreover, Pechiney's insertion of the language to the effect that its infringement must have been "<u>willful</u>" and "<u>malicious</u>" is improper and unsupported by the law. Pechiney should also phrase causation in terms of "<u>proximate causation</u>" in accordance with the ABA model, and, as stated above, remove the reference to the "<u>binding</u>" contract with Cryovac.

6.  References to "<u>contract</u>" should be changed to "<u>contract</u>" or "<u>contracts</u>" throughout the instructions, to conform to Cryovac's allegations in this case.

DB01:2095760.2                                                                 063527.1001

### Pechinev's Instruction No. 16.2.  Requirement of a Contract

One of the elements Cryovac must prove by a preponderance of the evidence to prevail on its tortious interference with contract claim is that Cryovac was party to a binding contract with National Beef that was in effect at the time of Pechiney's alleged interference.

A contract is a legally binding agreement between two or more parties.  A contract for the sale of goods exists if the parties have evidenced an intent to be bound and have reached agreement on at least the quantity of goods the buyer agrees to purchase from the seller or that the buyer is required to buy all of its requirements of the goods identified in the contract exclusively from the seller.

Whether a binding contract exists, and the terms of that contract, may be ascertained from the language used in the alleged contract, the parties' course of performance, their course of dealing, and applicable usages of the trade, in that order.  I will explain each of these terms to you in a moment, as well as how you are to apply them.       .

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1.a (Requirement of a Contract) at 10 (4th ed. 2005) [modified]; UCC § 2-201, cmt. 1; UCC § 2-306; UCC § 1-303.

### Cryovac's Objection to Pechiney Instruction 16.2.  Requirement of Contract

1.    The first paragraph of this instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1.a, at 10 (first paragraph).  The proper issue for the jury is not, as Pechiney suggests, that contract was in effect at the time of Pechiney's alleged "<u>interference</u>" but that it was in effect at the time of Pechiney's "<u>actions complained of</u>."  Folding interference requirement into the instruction regarding the requirement of a contract is unbalanced and inappropriate.  It improperly states the applicable law

that Pechiney's <u>conduct</u> lead to the contractual breach -- not its infringement. Reference to "binding" contract should be reference to "valid" contract in accordance with ABA model instruction.

2.    Definition of "contract" is not consistent with American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1.a, at 10 and UCC 2-204. Moreover, UCC 2-201 (statute of frauds provision) does not apply. It was not plead in this action or raised in response to Cryovac's contention interrogatories. Moreover, as a third-party to the contract or contracts between Cryovac and National Beef, Pechiney would not have standing to raise this defense in any event. <u>See</u> Cryovac's Objection to Instruction No. 16, <u>supra</u>.

3.    Pechiney's instruction is also incomplete, as it fails to include all of the basic contract principles that will apply here. Thus, even if Pechiney's instruction in a modified form were to be accepted, additional instructions should be added relating to contract formation. *See e.g.,* Comment to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1.a, at 11 (Requirement of Contract) ("If basic contract law issues are to be decided, a series of paragraphs explaining each of the elements of a contract and process of interpretation must be inserted in this charge.") Refer to <u>Cryovac Proposed Instructions 3.3.1</u> (Intent to Enter into a Contract); <u>3.3.2</u> (Test For a Requirements Contract). <u>See also</u> <u>3.3.6</u> (Cautionary Instruction). <u>See also</u> Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware, Rev. 8/1/2003, § 19.2 (meeting of the minds; "mutual assent is not a subjective or personal understanding of the [contractual] terms by either party; Rather, mutual assent must be shown by

DB01:2095760.2

063527.1001

words or acts of the parties in a way that represents a mutually understood intent."). <u>See also</u> 3 *Fed. Jury Prac. & Inst.* § 126.20 (Parol Evidence; "The agreement may consist of both written and oral promises. The oral portions of the agreement may be enforced and damages awarded for breach of the agreement, just as though those portions had appeared in the written agreement."); § 126.01 (Elements of Contract Formation; "A contract for sale may be made in any manner sufficient to show agreement, including language or conduct by both parties which recognizes the existence of such a contract. . .Even though one or more terms are left open, a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.").

DB01:2095760.2

063527.1001

### Pechiney's Instruction No. 16.3.  Use of Extrinsic Evidence to Construe Contract

A course of performance or course of dealing between the parties or usage of trade may be used to ascertain the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement.  A course of performance is also relevant to show a waiver or modification of any term inconsistent with the course of performance.

**Authority:** UCC, Section 1-303(e) and (f).

### Cryovac's Objection to Pechiney Instruction 16.3: Use of Extrinsic Evidence to Construe Contract

1.      Pechiney's instruction fails to make clear that extrinsic evidence should be used to ascertain the parties' intent, and that such inquiry should be conducted from the vantage point of an objectively reasonable person.  The instruction also fails to make clear that the extrinsic evidence supplements the language the parties used in the contract itself.  See Cryovac Instruction 3.3.1 Intent to Enter Into a Contract, and authorities cited as support for that instruction.

DB01:2095760.2                                                            063527.1001

**Pechiney's Instruction No. 16.4.  Definitions of Types of Extrinsic Evidence**

A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

A "usage of trade" is any practice or method of dealing having such regularity of observance in a place or trade as to justify an expectation that it will be observed with respect to the transaction in question.

**Authority:** UCC, Section 1-303(a), (b) and (c).                  .

**Cryovac's Objection to Pechiney Instruction 16.4:
Definitions and Types of Extrinsic Evidence**

1.    Pechiney's course of performance instruction fails to explain to the jury that course of performance exists where two parties have begun to perform a contract. It further fails to explain that course of performance may be considered both to determine whether an agreement exists and to explain and supplement the written terms of the agreement.  See Cryovac Instruction 3.3.4 Course of Performance.

2.    Pechiney's course of dealing instruction fails to explain that course of dealing may be considered both to determine whether an agreement exists and to explain

DB01:2095760.2                                                                                          063527.1001

and supplement the written terms of the contract.  <u>See</u> <u>Cryovac Instruction 3.3.3</u> <u>Course of Dealing</u>.

3.    Pechiney's usage of trade instruction does not explain that trade usage may be considered both to determine whether an agreement exists and to explain and supplement the written terms of the agreement.  <u>See</u> <u>Cryovac Instruction 3.3.5</u> <u>Trade Usages In Industry.</u>

DB01:2095760.2                                                                                                                063527.1001

## Pechiney's Instruction No. 16.5.  Rules for Applying Extrinsic Evidence

Unless you find from the parties' course of performance that they have waived or agreed to modify an express term of their written contract, then you must, whenever reasonable, construe the express terms of the written agreement and any applicable course of performance, course of dealing, and usage of trade as consistent with each other.  Where there is a conflict between the parties' express terms and the other types of extrinsic evidence, then you must follow the parties' express written terms, unless you find that those terms have been modified or waived by the parties' course of performance.  Where the parties' express terms and course of performance are consistent, then you must apply those in preference to their course of dealing and usage of trade.  Finally, where the parties' express terms, course of performance and course of dealing are consistent, then you must apply those in preference to the usage of trade.

**Authority:**    UCC, Section 1-303(e) and (f).

## Cryovac's Objection to Pechiney Instruction 16.5:  Rules for Applying Extrinsic Evidence

1.  This instruction is unnecessary insofar as waiver and modification are not issues in this case.  Pechiney has never raised these issues or otherwise asserted that such issues must be resolved in this case.

2.  This instruction is unnecessary insofar as Pechiney has never asserted that there is a conflict between the parties' express terms and the other types of extrinsic evidence.

3.  The final two sentences of this instruction are acceptable to Cryovac.

063527.1001

## Pechiney's Instruction No. 16.6.  Requirement of Knowledge

In order to establish tortious interference with contract, Cryovac must also prove by a preponderance of the evidence that Pechiney knew or had reason to know of the existence of a binding contract between Cryovac and National Beef.  The requirement of knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of a binding contractual relationship between Cryovac and National Beef.

If you find that, even though there was a valid and binding contract between Cryovac and National Beef, Pechiney did not know of its existence, then you must conclude that Pechiney did not tortiously interfere with that contract.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.2 (Requirement of Knowledge) at 15 (4th ed. 2005); *DP-Tek, Inc. v. AT&T Global Info. Solutions Co.,* 891 F. Supp. 1510, 1519-20 (D. Kan. 1995); *Preston v. Preston,* 823 S.W.2d 48, 49-50 (Mo. Ct. App. 1991).

## Cryovac's Objection to Pechiney Instruction 16.6:  Requirement of Knowledge

1.    The instruction does not conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.2, at 15.  For example, language regarding "binding" contract at the end of the first paragraph should be removed. This reference is unbalanced and inappropriate; moreover, as stated above, the requirement of a "binding" contract is not an element of this tort.

2.    The paragraph beginning "If you find that, even though. . ." is improper.  It does not appear in American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.2, at 15; it is unbalanced, and unnecessarily repeats purported elements of the claim found in Pechiney Instructions 16 and 16.1.

DB01:2095760.2

063527.1001

### Pechiney's Instruction No. 16.7.  Requirement of Intent

Cryovac must show by a preponderance of the evidence that Pechiney intended to cause National Beef to breach a binding contract with Cryovac. Conduct is intentional if done deliberately, with the purpose of causing National Beef to breach a binding contract with Cryovac.

If you find that Pechiney did not intend to cause National Beef to breach a binding contract with Cryovac, then you must find for Pechiney.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a at 17 (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 16.7:  Requirement of Intent

1.  The first paragraph fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a, at 17.  References to "binding" contract are inappropriate, unbalanced, and not even an element of this tort.  The requirement of intent should be the intent to "<u>induce</u>" National Beef to breach its contract or contracts with Cryovac, not the intent to "<u>cause</u>" National Beef to breach its contract or contracts with Cryovac.

2.  The  second paragraph of the instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a, at 17. Again, the reference to a "<u>binding</u>" contract is improper; "<u>If you find that the defendant's conduct was not intentional</u>," should be substituted for Pechiney's "<u>If you find that Pechiney did not intend to cause National Beef to breach a binding contract with Cryovac.</u>"

DB01:2095760.2                                    063527.1001

3.  Paragraph improperly fails to define "Intent," in accordance with American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.b (Intent Defined), at 18.

4.  Paragraph fails to explain that jury's focus should be on defendant's objective conduct, in accordance with American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.c (Proof of Intent), at 19.

5.  Instruction fails to contain summary instruction in accordance with American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.e (Summary of Requirement of Intent), at 22.

6.  New Instruction regarding Intent for Unlawful Acts should be inserted here to instruct the jury that intent element in this case is already satisfied because the Court has already determined that Pechiney infringes the '419 patent. See American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.f, (Unlawful Acts) at 23 and Cryovac Proposed Instruction 3.5.2 Intent – Unlawful Acts.

### Pechiney's Instruction No. 16.8.  Requirement of "Malice"

To find for Cryovac, you must find that Pechiney acted with malice.  Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse—that is, the willful violation of a known right.  In proving malice, it is not necessary for Cryovac to prove that Pechiney acted with hatred, ill will, or spite.

On the other hand, if you find that Pechiney had a proper purpose for its conduct, you must find for Pechiney on this claim.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.d (4th ed. 2004).[modified]; *L & M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284 (10th Cir. 2000).

### Cryovac's Objection to Pechiney Instruction 16.8:  Requirement of Malice

1.    This instruction is unnecessary because, under a choice of law analysis malice is not an element of tortious interference with contract.  Thus, the entire instruction should be deleted.

2.    In the event the Court determines that malice is an element of tortious interference with contract, Cryovac objects to the form of this instruction due to the confusion engendered by the use of the word "malice."  As the ABA Model Jury Instructions suggest, this confusion can be avoided by inserting the definition of malice – the doing of a harmful act, without justification or excuse – that is, the willful violation of a known right – into the instruction on intent.  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.d, at 20; *See also* Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware, Rev. 8/1/2003, § 12.7.

3.    This instruction is unnecessary because the conduct at issue is improper per se; this Court has already determined that Pechiney infringed the '419 patent.

Page 143

4.    The second paragraph of the instruction improperly uses the term "proper purpose" without definition or discussion of what that term means.

5.    This instruction is also improper insofar as it is duplicative of Pechiney's next instruction, "Proper or Improper Interference Defined".

6.    A new instruction should be inserted stating that any element of malice has already been satisfied because the court has already determined that Pechiney infringes the '419 patent. See, e.g., American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful means employed). Pechiney's conduct constitutes improper interference as a matter of law because it is independently actionable conduct. See *Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W. 2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W. 2d 737, 743 (Ct. App. Mo. 1984) ("Wrongful means would generally entail either an illegal act or an act that is actionable in and of itself.").

### Pechiney's Instruction No. 16.9. Proper or Improper Interference Defined

Cryovac must also prove by a preponderance of the evidence that Pechiney's conduct was improper. The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1. the nature of Pechiney's conduct, including whether Pechiney willfully and maliciously infringed Cryovac's patent;

2. Pechiney's motive;

3. Cryovac's interests with which Pechiney interfered;

4. the interest that Pechiney sought to advance;

5. the social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6. the proximity or remoteness of Pechiney's conduct to the interference claimed by Cryovac; and

7. the relationship among Cryovac, National Beef, and Pechiney.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35-37 (4th ed. 2005); *See* Restatement (Second) of Torts, § 767.

### Cryovac's Objection to Pechiney Instruction 16.9: Proper or Improper Interference Defined

1. This instruction is not necessary insofar as the Court has already determined that Pechiney infringed the '419 patent. This constitutes improper conduct as a matter of law. *See* American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful Means Employed), at 37. Pechiney's conduct constitutes improper interference as a matter of law because it is independently

DB01:2095760.2

063527.1001

actionable conduct. <u>See</u> *Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W. 2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W. 2d 737, 743 (Ct. App. Mo. 1984) ("Wrongful means would generally entail either an illegal act or an act that is actionable in and of itself.").

2.   If not deleted, this instruction is inappropriate insofar as it fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35 (4th ed. 2005). The first sentence of the instruction referring to Cryovac's burden of proof is duplicative and unbalanced.

3.   The first element should be limited to "<u>the nature of Pechiney's conduct</u>" in accordance with the ABA instruction, and should not include the language "<u>whether Pechiney willfully and maliciously infringed Cryovac's patent</u>." Whether Pechiney's conduct was willful and/or malicious is not relevant to the business tort claims in this action.

4.   Moreover, because this Court has already determined that Pechiney infringed the '419 patent, that should be added as an additional factor for the jury to consider if the Court does not conclude, as Cryovac submits, that such establishes improper conduct by Pechiney as a matter of law.

5.   A new instruction should be inserted explaining that improper interference already has been established because the Court has already determined that

Pechiney infringes the '419 patent. <u>See</u> American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful Means Employed), at 37. Pechiney's conduct constitutes improper interference as a matter of law because it is independently actionable conduct. See *Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W. 2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W. 2d 737, 743 (Ct. App. Mo. 1984) ("Wrongful means would generally entail either an illegal act or an act that is actionable in and of itself.").

DB01:2095760.2

063527.1001

### Pechiney's Instruction No. 16.10.  Pechiney's Motive

Should you find that Pechiney acted solely to injury Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interests of Pechiney's own), then you must find that Pechiney's conduct was improper, regardless of any justification Pechiney may claim.  Some ill will on the part of Pechiney is permissible, providing Pechiney acted in substantial part with a proper purpose in mind.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.4. (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 16.10:  Pechiney's Motive

1.    This instruction is unnecessary and should be deleted, insofar as this Court has already found that Pechiney infringed the '419 patent.  As stated above, such constitutes improper conduct as a matter of law.  See American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful Means Employed), at 37.

DB01:2095760.2                                              063527.1001

### Pechiney's Instruction No. 16.11. Requirement
### That the Breach Be Proximately Caused by the Defendant's Conduct

If you find that Cryovac has proved, by a preponderance of the evidence, that Pechiney

engaged in improper conduct by willfully and maliciously infringing Cryovac's patent, you must

then determine whether that improper conduct was the reason National Beef failed to perform the

alleged contract with Cryovac as agreed. This means that, before you can decide in favor of

Cryovac, you must find by a preponderance of the evidence that, but for willful and malicious

infringement by Pechiney of Cryovac's patent, the binding contract that was not performed

would otherwise have been performed.


**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*,
§ 1.3.4.c (Causal Relationship: Generally) at 26 (4th ed. 2005) [modified]; *See Acorn USA
Holdings LLC v. Premark Int'l, Inc.*, 2003 WL 22861168, *3 (Del. Super. Ct. July 16, 2003)
(stating that tortious interference with contract requires "a subsequent breach caused by
[defendant's] wrongful conduct"); *Dangeles v. Muhlenfeld*, 548 N.E.2d 45 (Ill. Ct. App. 1989)
(same); *Schott v. Beussink*, 950 S.W.2d 621, 628-29 (Mo. Ct. App. 1997) ("A defendant is
justified in inducing a contract's breach, unless the defendant uses improper means to induce the
breach of contract.").


### Cryovac's Objection to Pechiney Instruction 16.11: Requirement
### That the Breach Be Proximately Caused by the Defendant's Conduct

1.    This instruction fails to conform with American Bar Association, *Model Jury

Instructions: Business Torts Litigation*, § 1.3.4.c (Causal Relationship: Generally)

at 26 (4th ed. 2005). In this regard, reference to proof by preponderance standard

in first sentence of instruction is improper. This does not conform to the ABA

instruction, and is unbalanced and repetitive (particularly, in light of the fact that

the preponderance standard appears later in this instruction).

2.    Second, the jury need not find, as Pechiney suggests, that improper conduct of

"infringement" led to the contractual breach. Rather, the requirement set forth in

the ABA instruction is whether "the defendant was responsible" for National

Beef's refusal to perform the contract with Cryovac.

3.    Third, as described above (even though beyond the proper scope of this

instruction), infringement itself constitutes improper conduct.  See American Bar

Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3

(Unlawful Means Employed), at 37.  It is not necessary for Cryovac to

demonstrate, as the language suggested by Pechiney dictates, that Pechiney has

"willfully and maliciously" infringed Cryovac's patent.  Whether Pechiney's

conduct was willful and malicious is not relevant to the business tort claims.

4.    Finally, the reference to the "binding" contract in the last sentence of Pechiney's

instruction is not a requirement of the tort.  The "binding" language makes the

instructions unbalanced and unnecessarily repeats purported elements of the claim

found in Pechiney's Instructions 16 and 16.1.

063527.1001

REDACTED -- Public Version, filed 5/15/06

### Pechiney's Instruction No. 16.12.  Breach Defined

Breach of contract means the failure of a party to a contract, in the absence of legal excuse or impossibility of performance, to perform any promise that forms the whole or a material part of the contract.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.a at 24 (4th ed. 2005)[modified].

### Cryovac's Objection to Pechinev Instruction 16.12:  Breach Defined

1.    This instruction fails to conform to the ABA instruction, because it does not explain that a breach may occur with regard to either an express or implied provision of the contract, and it fails to explain those terms.  <u>See</u> American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.a at 24 (4th ed. 2005).

### Pechiney's Instruction No. 16.13.  Breach Required

For Cryovac to prevail on its claim against Pechiney, you must find that the contract in question was breached.  This means you must find that National Beef failed to perform as agreed under the contract.

In this case, Cryovac contends that its contract with National Beef required National Beef to buy all of its flexible packaging products from Cryovac and that National Beef's purchase of ClearShield products from Pechiney was a breach by National Beef of this contract.

If you find that National Beef was allowed to buy products from someone other than Cryovac, then your verdict must be for Pechiney.

**Authority:**   American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.b at 25 (4th ed. 2005)[modified].

### Cryovac's Objection to Pechiney Instruction 16.13:  Breach Required

1.      This instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.b, at 25.

2.      Omit last paragraph – no precedent for this provision.  Provision is unbalanced.

3.      The instruction does not conform to Cryovac's allegations in this case, insofar as Cryovac asserts that its "contract or contracts" with National Beef were interfered with.  Cryovac's claim of tortious interference therefore is not, as the instruction suggests, limited to interference with one contract.

DB01:2095760.2                                                                        063527.1001

### Pechiney's Instruction No. 16.14.  Proximate Cause

If you find that Cryovac did suffer the losses claimed, and that Pechiney willfully and maliciously infringed Cryovac's '419 patent, you must then determine whether Pechiney's wrongful conduct was the proximate cause of Cryovac's losses.  In this regard, Pechiney's infringement will be considered to be the proximate cause of Cryovac's losses if the infringement was a substantial factor in causing those losses.  It need not be the only cause.

Conduct will be a substantial factor in causing loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss, considering a number of other contributing factors, such as whether Pechiney's infringement created a condition or chain of events that was continuous and active up to the time of the damage to Cryovac, and the lapse of time between Pechiney's infringement and the damage to Cryovac.

**Authority:**   American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.d at 24 (4th ed. 2005)[modified].

### Cryovac's Objection to Pechiney Instruction 16.14:  Proximate Cause

1.    This instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.4.d, at 27.  Again, there properly is no requirement for Cryovac to establish that Pechiney "willfully and maliciously infringed Cryovac's '419 patent", much less a specific instruction to that effect in the proximate cause instruction.  Willful and malicious conduct is not an issue relevant to Cryovac's business tort claims.

2.    Again, the proper focus for the jury is on whether Pechiney's conduct, not Pechiney's infringement was a cause of Cryovac's loss or damage.  The improper

DB01:2095760.2                                        063527.1001

**REDACTED -- Public Version, filed 5/15/06**

reference to infringement as opposed to conduct appears throughout Pechiney's proximate cause instruction.

3.    Pechiney's reference to Cryovac's "loss" should be to "loss or damage" consistent with the language of the model ABA instruction.

DB01:2095760.2

063527.1001

<u>**Pechiney's Instruction No. 17.  Damages for Tortious Interference with Contract**</u>

If you find that Cryovac has proven that Pechiney more probably than not interfered with an existing contract between Cryovac and National Beef by proving each and every element of the tortious interference claims Cryovac is asserting, and that Pechiney's actions were not justified, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac sustained from National Beef's breach of its contract.

Cryovac has the burden of proving to a reasonable certainty any damages it suffered. Additionally, Cryovac is not permitted to recover for any damages that could reasonably have been avoided or for amounts that could reasonably have been lessened.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.1 at 46-47 (4th ed. 2005)[modified]; ABA Torts Litigation § 6.II.A.2 at 243-244.

**Cryovac's Objection to Pechiney Instruction 17:**
**<u>Damages for Tortious Interference with Contract</u>**

1.  This instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.1 (Compensatory Damages: Generally), at 46.  Consistent with the model instruction, the first sentence of the first paragraph should begin "<u>Should you find . . .</u>" not "<u>If you find that Cryovac has proven. . .</u>"  Reference to Cryovac's burden in this sentence, as well as second paragraph of Instruction 17 is duplicative, unbalanced and inconsistent with the ABA model instruction.

2.  Much of the instruction is duplicative of Pechiney Instructions 16 and 16.1, which purport to set forth the elements of the tort.  Repeating the language is unnecessary and unbalanced.

DB01:2095760.2                                                                                   063527.1001

**REDACTED -- Public Version, filed 5/15/06**

3.  The mitigation concept introduced in last sentence of instruction is inappropriate. In addition to the fact that language regarding mitigation does not appear in the ABA general rule regarding the definition of Compensatory Damages, mitigation is not an issue in this case.  It was not raised as a defense in Pechiney's Answer, Amended Answer, or Contention Interrogatories.

DB01:2095760.2                                      063527.1001

### Pechiney's Instruction No. 17.1.  Recoverable
### Elements of Damages for Interference with Contract

In determining the amount of damages, if any, for Pechiney's interference with the contract between Cryovac and National Beef, you may consider whether Cryovac suffered any measurable loss of profits by reason of Pechiney's conduct.  You should be guided by the rule that Cryovac is entitled to any profits that Cryovac would, with reasonable certainty, have enjoyed, were it not for the breach of its contract by National Beef.

For lost profits to be recovered, there must be a reasonable basis for computing them.  In making these calculations, you may consider Cryovac's past earnings and losses, based on National Beef's actual purchases and Cryovac's actual expenses.  However, you should consider those past profits and losses in light of the uncertainties and contingencies by which they probably would have been affected.  For example, you may take into consideration future uncertainties such as increased competition and increased operating costs. You should also consider all of the other evidence concerning National Beef's actual current packaging requirements, such as National Beef's current purchases of packaging products from all sources, and any normal increase or decrease in business that might have been reasonably expected in the light of past developments and existing conditions.  Losses and profits that are mere guesses, speculative, remote, or uncertain should not be considered.

In calculating the amount of profits Cryovac may have lost, you should subtract any costs for expenses that Cryovac saved by not having to perform under its contract with National Beef. Cryovac is permitted to calculate its lost profits on lost sales by computing the lost revenue from the contract with the National Beef and then subtracting from that figure the amount of additional costs and expenses that it would have incurred in making those lost sales, including but not limited to the cost of the goods, sales costs, packaging, shipping, etc.

DB01:2095760.2                                                              063527.1001

In addition to lost profits, Cryovac is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce its damages and to recover business it lost due to Pechiney's wrongful conduct.

Whether or not Pechiney actually anticipated or contemplated that these losses would occur is not a relevant factor for you to consider.

If you find that Cryovac is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that Cryovac has sustained any substantial damages, then you may return a verdict for Cryovac on this claim and fix the amount of the damages in a nominal sum such as one dollar. Such a verdict would determine the rights of the parties, and I can then issue orders directing their future conduct. Unlike damages for patent infringement, there is no minimum amount of damages that must be awarded if you find that Pechiney tortiously interfered with a contract between Cryovac and National Beef. Your verdict on the amount of damages for tortious interference is a separate consideration from your verdict on liability.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.3 (4th ed. 2004) [modified]; American Bar Association, *Model Jury Instructions: Business Torts Litigation*, §§ 1.5.3, 2.10[2]  (3d ed. 1996) [modified]; ABA Torts Litigation § 6.II.A.3 [generally].

**Cryovac's Objection to Pechiney Instruction 17.1**
**Recoverable Elements of Damages for Interference with Contract**

1.  This instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.3 (Recoverable Elements of Damages), at 49; the instruction is balanced in favor of Pechiney. Among other things, the phrase "and losses" which appears twice in the second paragraph, is not in accordance with the most recent version of the ABA instructions. Other language and concepts which have no basis in the model instruction should be

Page 158

**REDACTED -- Public Version, filed 5/15/06**

removed.  The sentence regarding "no minimum damages" at the end of instruction has no basis in most recent version of ABA model instructions and is unbalanced.

DB01:2095760.2                                                        063527.1001

### Pechiney's Instruction No. 17.2.  Duty to Mitigate Damages

The injured party must make a reasonable effort, whether successful or not, to minimize the losses it suffers as a result of the defendant's conduct.  To mitigate a loss means to take steps to reduce the loss.  If an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have reduced it under the same circumstances.  This reduction, however, must be measured with reasonable probability.

**Authority:**    Delaware Pattern Jury Instructions, Civil § 22.26 (2000) [modified]; ABA Torts Litigation § 6.II.A.2 at 243-244.

### Cryovac's Objection to Pechiney Instruction 17.2:  Duty to Mitigate Damages

1.      Cryovac objects to this instruction in that "failure to mitigate" is a defense that has not been raised in this case and has therefore been waived.  It was not raised in Pechiney's Answer, Amended Answer, or Contention Interrogatories.

2.      If the Court concludes that this defense was not waived, this instruction is improper because Cryovac is a lost volume seller.  See Cryovac Instruction 7.4 Mitigation/Lost Volume Seller.

### Pechiney's Instruction No. 18.
### Tortious Interference with Prospective Contractual Relations

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference, and is entitled to the protection of organized society, through the courts, whenever that right is unlawfully invaded.

In this case, if you find that Cryovac did not have a binding contract with National Beef, Cryovac seeks damages from Pechiney for alleged interference with Cryovac's prospective contractual relations with National Beef. That is, Cryovac contends that, because of Pechiney's wrongful conduct, Cryovac was prevented from entering into a binding four-year requirements contract for various food packaging products with National Beef as of January 14, 2004, and as a result Cryovac suffered monetary loss.

Pechiney contends that Cryovac did not have a reasonable expectation that it would have a binding four-year contract with National Beef that would prevent National Beef from buying goods from Pechiney, that Pechiney had no knowledge or reason to know of any such expectation, that Pechiney did not engage in any wrongful conduct in negotiating with National Beef for its business, and that Pechiney's conduct was protected by the competitive privilege.

**Authority:** American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.1 (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 18:
### Tortious Interference With Prospective Contractual Relations

1.  This instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 2.2.1 (Theory of Interference with Prospective Advantage), at 70. Among other things, adjective "<u>binding</u>" should not appear before "<u>contract</u>". Remove adjective "<u>wrongful</u>" before "<u>conduct</u>". Reference to "<u>alleged interference with Cryovac's prospective contractual</u>

Page 161

relations with National Beef" and specific reference to binding four-year requirements contract should be changed to "alleged interference with Cryovac's prospective business relationship with National Beef," to be consistent with ABA model instruction. Pechiney's instruction misstates the law, and is inconsistent with Cryovac's allegations in this case which are based on alleged interference with a business relationship or contract expectancy with National Beef.

2.     Pechiney's summary of what the parties are contending is unbalanced.

DB01:2095760.2                                                                    063527.1001

## Pechiney's Instruction No. 18.1.  Elements of Liability

To find liability for interference with prospective advantage, you, the jury, must find that Cryovac has proven, by a preponderance of the evidence, each of the following:

1.  Cryovac had a reasonable expectation that it would have secured a binding four-year requirements contract with National Beef in the future;

2.  Pechiney, at the time the acts complained of were committed, knew of this expected contractual relationship between Cryovac and National Beef, or under the circumstances should have known of it;

3.  Pechiney acted intentionally to prevent Cryovac from getting a binding four-year requirements contract with National Beef;

4.  Pechiney's conduct was improper and unjustified under the factors I will instruct you to consider;

5.  Pechiney's willful and malicious infringement of the '419 patent was the cause of Cryovac not securing a binding four-year requirements contract with National Beef; and

6.  As a direct and proximate result of Pechiney's infringement of the '419 patent, Cryovac suffered damage.

If you find that Cryovac has proved each and every one of these elements by a preponderance of the evidence, then you must consider the question of the amount of money damages, if any, to award to Cryovac under instructions I will give you.

If you find that Cryovac has failed to prove even one of these elements, then you must find for Pechiney and against Cryovac.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.2 (4th ed. 2005) [modified]; ABA Torts Litigation § 2.II [generally]

## Cryovac's Objection to Pechiney Instruction 18.1:  Elements of Liability

1.    The instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.2 (Elements of Liability), at 71.

   (a)    The first element should state that plaintiff had a business relationship or reasonable expectancy;

   (b)    The second element should clarify that knowledge is not confined to the time the acts complained of were committed, and requirement is knowledge of "relationship or expectancy", not knowledge of contract;

   (c)    The third element should be "Pechiney acted to either end the relationship or prevent the expectancy"; it should not be limited to "acted intentionally to prevent Cryovac from getting a binding four-year requirements contract with National Beef";

   (d)    The fourth element is unnecessary because improper conduct is not an element of a tortious interference with prospective relations cause of action in Delaware.  See Memorandum Opinion in this case, dated April 17, 2006, at 17.

   (e)    The fifth element is improper--the proper question is whether Pechiney's conduct caused National Beef not to enter into contract or continue relationship with Cryovac, not whether causation resulted from Pechiney's infringement of the '419 patent.  In addition, there is no requirement that Cryovac prove that Pechiney's conduct was "willful and malicious" with respect to the business torts.

Page 164

(f)      Finally, the sixth element again improperly states that Cryovac must prove that damages resulted from Pechiney's <u>infringement</u> of the '419 patent. As stated in the ABA model instruction, the correct issue is whether Pechiney's <u>conduct</u> – not infringement per se – caused Cryovac to sustain damages.

2.      Pechiney's language that "<u>if you find that Cryovac has failed to prove even one of these elements</u>. . ." is not set forth in American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 2.2.2 (Elements of Liability), at 71, and is unbalanced.

DB01:2095760.2                  063527.1001

## Pechiney's Instruction No. 18.2.  Expectancy Requirement

Cryovac contends that at the time of Pechiney's conduct, there existed an expectation of a binding four-year requirements contract between Cryovac and National Beef.  You must first determine whether such an expectancy existed.

In determining this question, the expectancy need not be evidenced by a contract.  It is sufficient if you find from the evidence that either prior dealings or a prior course of conduct between Cryovac and National Beef would have created a reasonable expectation of a future binding four-year requirements contract between Cryovac and National Beef.  Cryovac must show this expected contract with some degree of specificity, such that it was a realistic expectation, but it need not be shown with absolute certainty.

More than a mere hope or optimism is needed.  Although the law does not require a certainty, it does require a reasonable likelihood or probability of economic benefit from a valid prospective contract between Cryovac and National Beef.

For you to find for Cryovac on this claim, Cryovac must have proven by a preponderance of the evidence that there was a reasonable probability that it would have had a binding four-year requirements contract with National Beef under which National Beef would have purchased all of its flexible packaging products from Cryovac and none from Pechiney.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.3.1 (4th ed. 2005) [modified]; ABA Torts Litigation § 2.II.A [generally].

## Cryovac's Objection to Pechiney Instruction 18.2:  Expectancy Requirement

1.    The first and second paragraphs fail to include expectancy of a contract or expectation of a business relationship.

2.    The word "<u>absolute</u>" in the last sentence of the second paragraph is improper.  It is not set forth in American Bar Association, *Model Jury Instructions: Business*

DB01:2095760.2                                                                        063527.1001

*Torts Litigation,* § 2.2.2 (Elements of Liability), at 71.  Consistent with § 2.2.2, the phrase "<u>because prospective things in nature are necessarily uncertain</u>" should be added to the end of second paragraph.

3.  The language of the next paragraph fails to conform to the ABA model instruction, § 2.2.2, at 71, which provides that:  "<u>The law requires more than mere hope or optimism; what is required is a reasonable likelihood or probability</u>."

4.  The last paragraph is inappropriate.  It does not appear in § 2.2.2, at 71.  In addition, language states standard that is more stringent than what Cryovac is required to prove.  Cryovac must show that it had an expectancy of a contract or expectation of a business relationship.  It need not show, as Pechiney's instruction suggests, that "<u>there was a reasonable probability that it would have had a binding four-year requirements contract with National Beef under which National Beef would have purchased all of its flexible packaging products from Cryovac and none from Pechiney</u>."  This instruction misstates Cryovac's claim.

Page 167

### Pechiney's Instruction No. 18.3.  Knowledge Requirement

In order for you to find for Cryovac, you must also find that Pechiney knew or had reason to know that Cryovac had a reasonable expectation of entering into a binding four-year requirements contract with National Beef.  Knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of Cryovac's expectancy of a binding four-year requirements contract with National Beef.

If you find that Pechiney did not or could not have known of Cryovac's expectation of a binding four-year requirements contract with National Beef, your verdict must be for Pechiney.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.4 (Knowledge) at 74 (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 18.3:  Knowledge Requirement

1.      The instruction fails to conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.4,1 (Knowledge:  Generally), at 74. The instruction should state that Pechiney must have known about "business relationship or expectancy" not, as Pechiney suggests, about existence of expectancy of "binding four-year requirements contract with National Beef."

2.      The second paragraph – "if you find that Pechiney did not or could not have known of Cryovac's expectation of a binding four-year contract. . ." is inconsistent with American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 2.4.1, at 74.  This instruction is also unbalanced.

DB01:2095760.2                                                                                                      063527.1001

### Pechiney's Instruction No. 18.4.  Intentional Interference

Cryovac must show by a preponderance of the evidence that Pechiney intended to prevent Cryovac from entering into a binding four-year requirements contract with National Beef.  Conduct is intentional if done deliberately, with the purpose of preventing Cryovac from entering into a binding four-year requirements contract with National Beef.  Ordinarily, it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

In making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of evidence to the contrary, you may infer from Pechiney's conduct, or lack of conduct, that Pechiney intended the natural and probable consequences of its actions.

If you find that Pechiney's conduct was not intentional, because it was not done deliberately or knowingly for the purpose of preventing Cryovac from entering into a binding four-year requirements contract with National Beef, then you must find for Pechiney.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.6 (Intentional Interference) at 77-81 (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 18.4:  Intentional Interference

1.  Reference in first sentence to Cryovac's burden of proof by a preponderance of the evidence is improper and does not conform to American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.6 (Intentional Interference) at 77 (4th ed. 2005).  Stating Cryovac's burden in this introductory paragraph is unnecessary, repetitive and unbalanced, and does not appear in the model instruction.

2.  Pechiney's statement that requirement that "Pechiney intended to prevent Cryovac from entering into a binding four-year requirements contract with

DB01:2095760.2
063527.1001

National Beef," should be changed to requirement that "Pechiney intended to prevent Cryovac from continuing from continuing or acquiring the business relationship or expectancy with National Beef." The more general statement proposed by Cryovac conforms to the ABA model instruction and is an accurate characterization of the legal standard – which does not require specific intent to interfere with entering into a particular contract. For an alternative formulation consistent with correct standard, see Cryovac Instruction 4.5.1 Intent. Similarly, the reference to the "binding four-year requirements contract" should also be removed from the third paragraph of Pechiney's instruction, and replaced with language requiring proof of interference with "business relationship or expectancy between Cryovac and National Beef."

3.    The portion of the instruction covering the method of proving intentional interference should be fleshed out or included in a separate instruction, consistent with American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.6.2 (Proof of Intentional Interference) at 80 (4th ed. 2005). The description of proof of intentional interference in Pechiney's instruction is incomplete.

DB01:2095760.2                                                                                  063527.1001

### Pechiney's Instruction No. 18.5.  Requirement of "Malice"

To find for Cryovac, you must also find that Pechiney acted with malice.  Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse -- that is, the willful violation of a known right.  Should you find that Pechiney acted solely to injure Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interest of Pechiney's own), then you must find for Cryovac, regardless of any justification Pechiney may claim.  Some ill will on the part of Pechiney is permissible, providing that Pechiney acted in substantial part with a proper purpose in mind.

**Authority:**  ABA Torts §§ 1.03[4][d] (modified), 1.04[3] (modified); *L&M Enter., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284 (10th Cir. 2000).

### Cryovac's Objection to Pechiney Instruction 18.5:  Requirement of Malice

1.  Malice is not an element of this tort.  Pechiney fails to cite to a malice instruction from the ABA model instructions relating to the tort of tortious interference with prospective advantage.

2.  Even if malice were an element of this tort, Pechiney's instruction is unnecessary because the conduct at issue is improper per se because it is independently actionable.  (See citation below.)

3.  Even in the event the Court were to determine that malice is an element of tortious interference with prospective relations, Cryovac objects to the form of this instruction due to the confusion engendered by the use of the word "malice."  As the ABA Model Jury Instructions suggest, this confusion can be avoided by inserting the definition of malice -- the doing of a harmful act, without

Page 171

justification or excuse – that is, the willful violation of a known right – into the instruction on intent. American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.d (Requirement of "Malice" [Optional] for Tortious Interference with Contract Claim), at 20; *See also* Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware, Rev. 8/1/2003, § 12.7.

4.    The second paragraph has no definition or discussion of "proper purpose".

5.    This instruction is duplicative of Pechiney's next instruction, "Proper or Improper Interference Defined" (which, like malice, is not an element of Cryovac's prima facie case for a claim of tortious interference with prospective relationship).

6.    Should the Court determine malice to be an element of tortious interference with prospective relationship, a new instruction should be added stating that the element of malice has already been satisfied because the Court has already determined that Pechiney has infringed the '419 patent. See, e.g., American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful Means Employed). Pechiney's conduct constitutes improper interference as a matter of law because it is independently actionable conduct. See *Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W. 2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W. 2d 737, 743 (Ct.

**REDACTED -- Public Version, filed 5/15/06**

App. Mo. 1984) ("Wrongful means would generally entail either an illegal act or
an act that is actionable in and of itself.").

.

DB01:2095760.2                                                                                              063527.1001

## Pechiney's Instruction No. 18.6.  Proper or Improper Interference Defined

Cryovac must next prove by a preponderance of the evidence that Pechiney's conduct was improper. The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case and a balancing of the following factors:

1.    the nature of Pechiney's conduct, including whether Pechiney willfully and maliciously violated Cryovac's patents;

2.    Pechiney's motive;

3.    Cryovac's interests with which Pechiney interfered;

4.    the interest that Pechiney sought to advance;

5.    the social interests in protecting Pechiney's freedom of action and Cryovac's interests;

6.    the proximity or remoteness of Pechiney's conduct to the interference claimed by Cryovac;

7.    the relationship among Cryovac, National Beef and Pechiney.

**Authority:**  Restatement (Second) Torts, § 767.

### Cryovac's Objection to Pechiney Instruction 18.6:
### Proper or Improper Interference Defined

1.    This instruction is unnecessary, insofar as improper interference is not an element of tortious interference with prospective contractual relations.  See Memorandum Opinion in this case, dated April 17, 2006, at 17.

2.    This instruction fails to conform American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35 (4th ed. 2005). The first sentence of the instruction stating Cryovac's burden of proof is duplicative and unbalanced.

3.    The first element should be limited to "the nature of Pechiney's conduct" in accordance with the ABA instruction, and should not include the language "whether Pechiney willfully and maliciously infringed Cryovac's patent." Whether Pechiney's conduct was willful and/or malicious is not relevant to the business tort claims in this case.

4.    Moreover, this Court has already determined that Pechiney infringed the '419 patent. That should be added as an additional factor in the list of factors for the jury to consider, if the Court does not conclude, as Cryovac submits, that such establishes improper conduct by Pechiney as a matter of law.

5.    If not incorporated into the above instruction, a new instruction should be added here stating that the element of improper conduct has already been satisfied as a matter of law, because the court has already determined that Pechiney infringed the '419 patent. Pechiney's conduct constitutes improper interference as a matter of law because it is independently actionable conduct. *See Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W.2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W.2d 737, 743 (Ct. App. Mo. 1984) ("Wrongful means

Page 175

**REDACTED -- Public Version, filed 5/15/06**

would generally entail either an illegal act or an act that is actionable in and of itself.").

.

### Pechiney's Instruction No. 18.7. Pechiney's Motive

Should you find that Pechiney acted solely to injury Cryovac (that is, purely out of a sense of spite and a desire to harm Cryovac for its own sake, and not to further any legitimate interests of Pechiney's own), then you must find that Pechiney's conduct was improper, regardless of any justification Pechiney may claim. Some ill will on the part of Pechiney is permissible, providing Pechiney acted in substantial part with a proper purpose in mind.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.4. (4th ed. 2005).

### Cryovac's Objection to Pechiney Instruction 18.7: Pechiney's Motive

1.    This instruction is unnecessary, insofar as this Court has already found that Pechiney infringed the '419 patent. As stated above, such constitutes improper conduct as a matter of law. See American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3 (Unlawful means employed). Moreover, it is unnecessary because, as stated above, improper conduct is not even one of the elements of a prima facie case for tortious interference with prospective advantage. The motive instruction does not appear in sections of the American Bar Association, *Model Jury Instructions: Business Torts Litigation* (4th ed. 2005) covering tortious interference with prospective advantage.

## Pechiney's Instruction No. 18.8.  Causation Requirement

You must determine whether Pechiney was responsible for causing National Beef not to enter into a binding four-year requirements contract with Cryovac.

In other words, you must decide whether, except for Pechiney's infringement of the '419 patent, National Beef was reasonably certain to have entered into a binding four-year requirements contract with Cryovac.

If you find that National Beef more likely than not would not have entered into a binding four-year requirements contract with Cryovac even if Pechiney had not infringed the '419 patent, your verdict should be for Pechiney.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.5.1 (4th ed. 2005); *See Commerce Nat'l Ins. Servs., Inc. v. Buchler*, 120 Fed. Appx. 414, 418-19, 2004 WL 2786315 (3d Cir. 2004) (holding that "under Delaware law, a plaintiff must show …intentional, *wrongful* interference which induces or causes a breach or termination of the relationship or expectancy") (citation omitted) (unpublished opinion); *L&M Enters., Inc. v. BEI Sensors & Sys. Co.*, 45 F. Supp. 2d 879, 886-88 (D. Kan. 1999) (finding that plaintiff could not prevail on a tortious interference with prospective business advantage where wrongful conduct did not cause the loss of the plaintiff's prospective business relationship).

## Cryovac's Objection to Pechiney Instruction 18.8:  Causation Requirement

1.    This instruction misstates the law.  The issue is not whether Pechiney's infringement of the '419 patent was the cause of damages, but whether Pechiney's conduct was the cause of damages.

2.    The result that would have occurred absent the breach should be redefined as whether or not Cryovac was reasonably certain to have entered into the relationship or fulfilled the expectancy with National Beef, not whether but for conduct "National Beef was reasonably certain to have entered into a binding four-year requirements contract with Cryovac".  That is consistent with the ABA

model instruction § 2.5.1 (Causation: Generally). In any event, as discussed above, bindingness is not even an element of the tort.

3.      The third paragraph of the instruction is unnecessary, unbalanced, and is not supported by the ABA model instruction cited by Pechiney in support of this instruction.

**Pechiney's Instruction No. 18.9.  Competition as Proper or Improper Interference**

Pechiney asserts that its conduct was proper because it occurred during the course of competition between Pechiney and Cryovac.  The law recognizes that a person is justified in causing a third party not to enter into a contract with the person's competition as long as the conduct relates to competition between the two competitors and the person is acting, at least in part, to advance his or her own commercial interests in such competition, and as long as the person does not use wrongful means to compete.

You must first determine, then, whether Pechiney's conduct relates to competition between Pechiney and Cryovac for National Beef's business.  If you find that it does, then you must determine whether Pechiney's purpose was, at least in part, to advance Pechiney's own commercial interest in obtaining National Beef's business.

For example, if you find that Pechiney was seeking to acquire the business diverted from Cryovac for itself, then as long as Pechiney's conduct was at least in part directed to that end, the fact that you may find it was also motivated by other reasons does not make it improper in the eyes of the law.

If you find that Pechiney's conduct was motivated solely by bad faith or ill will, and not at all for the advancement of competitive interests, you must find that the conduct was not justified and that it was improper.

**Authority:**  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.9.2 (4th ed. 2005); Restatement (Second) Torts § 768; *Weldrep Bros. Beauty Supply, Inc. v. Wynn Beauty Supply Co., Inc.,* 992 F.2d 59 (4th Cir. 1993).

DB01:2095760.2                                                                                                                      063527.1001

**Cryovac's Objection to Pechiney Instruction 18.9:**
**Competition as Proper or Improper Interference**

1.    The proposed instruction fails to include the instruction that any unlawful conduct by Pechiney would defeat the competitive privilege. See American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.9.2 (Competition as Proper or Improper Interference), at 91. And, because the Court has already determined infringement of the '419 patent as a matter of law, this issue should not go to the jury in any event. Pechiney's conduct constitutes improper interference as a matter of law because it is independently actionable conduct. See *Community Title Co v. Roosevelt Federal Savings & Loan Assoc.*, 796 S.W.2d 369, 373 (Mo. 1990) ("Improper means, for purposes of intentional interference with contractual relations or business expectancy, are those means which are independently wrongful, notwithstanding injury caused by the interference."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W. 2d 737, 743 (Ct. App. Mo. 1984) ("Wrongful means would generally entail either an illegal act or an act that is actionable in and of itself.").

2.    The proposed instruction fails to state that Pechiney has the burden of proof on its defense of competitive privilege.

3.    The third paragraph is unbalanced and should be deleted.

4.    The word "solely" in the last paragraph should be deleted. It contradicts the "at least in part" language of the first paragraph.

DB01:2095760.2    063527.1001

**Pechiney's Instruction No. 18.10. Damage to Plaintiff Proximately Resulting from Conduct**

You must also consider whether Pechiney's infringement of the '419 patent was the

proximate, or direct, cause of damages to Cryovac.

If you find that Pechiney's infringement of the '419 patent was not the proximate cause

of damage to Cryovac, your verdict must be for Pechiney.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation,*
§ 2.8[1]- [3] (3d ed. 1996) modified]; ABA Torts Litigation § 2.II.D [generally].


### Cryovac's Objection to Pechiney Instruction 18.10:
### Damage to Plaintiff Proximately Resulting from Conduct

1.      As explained above, the proper requirement for Cryovac to prove is that

Pechiney's "conduct" caused damage to Cryovac, not whether, as Pechiney

suggests, "infringement of the '419 patent" was the cause of damages.  Need to

expand definition of proximate cause, in terms of substantial factor, to assist jury.

See American Bar Association, *Model Jury Instructions: Business Torts*

*Litigation,* § 2.8.3 (proximate cause explained in terms of "substantial factor")

(4th ed. 2005).  See also Cryovac Instruction 4.5.4 Proximate Cause of Injury.

### Pechiney's Instruction No. 19.  Damages for
### Tortious Interference with Prospective Contractual Relations

Now I will turn to the question of damages and what can be considered in determining an award of money in this case for Cryovac's claim against Pechiney of tortious interference with a prospective contract.  By including damages in these instructions, I do not wish to suggest or imply anything about the issue of liability or about whether any damages have been proved in this case.

If you find that Pechiney did not interfere with an existing contract between Cryovac and National Beef, but that it did interfere with a reasonable expectancy of a binding four-year requirements contract between Cryovac and National Beef, then it is my duty to tell you what damages Cryovac would be entitled to recover.  By including these instructions to you on damages, I do not wish to suggest or imply anything about the issue of liability or about whether any damages have been proved in this case, or that I have any opinion one way or the other.

The damages amount for the claim of tortious interference with a prospective contract will be the sum that you believe, from the evidence, will fairly and reasonably compensate Cryovac for any damage Cryovac has suffered by reason of the acts complained of and for the anticipated profits of which Cryovac was deprived, provided they are of such a nature to be beyond the speculative stage.

In order for Cryovac to recover any damages on this claim, you must find that Cryovac has proven each of the following requirements:

1.      Pechiney's actions were a direct cause of the damages Cryovac seeks;

2.      Cryovac has proven the existence of damages with a reasonable certainty; and

3.      Cryovac could not reasonably have avoided or lessened the damages.

Page 183

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.10[1]- [2] [modified] (3d ed. 1996); ABA Torts Litigation § 6.II.A.2 [generally].

### Cryovac's Objection to Pechiney Instruction 19:  Damages for Tortious Interference with Prospective Contractual Relations

1.    The last sentence of paragraph 1 and the last sentence of paragraph 2 are identical and are also unnecessary as duplicative of other instructions.

2.    The first sentence of the second paragraph is unnecessary.

3.    The last paragraph, regarding what Cryovac has to prove, is also duplicative of other instructions and unbalanced.  In addition, mitigation is not an issue in this case, as set forth above.  Pechiney did not raise that defense in its Answer, Amended Answer or Contention Interrogatories.

4.    The instruction improperly refers to interference with a prospective binding four-year requirements contract as opposed to a more general reference to interference with a business expectancy or relationship.  As set forth above, this is improper and not consistent with the ABA model instructions.

DB01:2095760.2                                                                                                              063527.1001

### Pechiney's Instruction No. 19.1.  Compensatory Damages

In determining the damages, if any, to award to Cryovac if you find that Pechiney interfered with a prospective binding four-year requirements contract between Cryovac and National Beef, you may consider whether Cryovac suffered any measurable loss of profits as a result of Pechiney's conduct.  In this case, Cryovac claims that its business was affected because of a loss of profits it would have earned but for Pechiney's conduct.

For lost profits to be recovered, there must be a reasonable basis for computing them.  In making these calculations, you may consider Cryovac's past earnings and losses, based on National Beef's actual purchases and Cryovac's actual expenses.  However, you should consider those past profits and losses in light of the uncertainties and contingencies by which they probably would have been affected.  For example, you may take into consideration future uncertainties such as increased competition and increased operating costs. You should also consider all of the other evidence concerning National Beef's actual current packaging requirements, such as National Beef's current purchases of packaging products from all sources, and any normal increase or decrease in business that might have been reasonably expected in the light of past developments and existing conditions. Losses and profits that are mere guesses, speculative, remote, or uncertain should not be considered.

Damages, if any, should be restricted to such losses, if any, as were proved by facts from which their existence is logically and legally inferable.  The general rule on the subject of damages is that all damages resulting necessarily, immediately, and directly from the wrong are recoverable, but not those that are contingent and uncertain or mere speculation.

DB01:2095760.2    063527.1001

Although a qualified person may make estimates concerning probable profits or losses of a going business, you should, in weighing all such evidence, take into consideration, among other things:

1.      The truth or falsity of the basis of such estimates;

2.      The knowledge or lack of knowledge of the witness of all of the conditions on which the estimate is based;

3.      Whether the facts assumed as a basis for an estimate rest upon actual accounts and records kept in the ordinary course of business rather than in uncertain recollections; and

4.      The witness's knowledge in the particular line of business about which he or she testified.

From all of the evidence in this case bearing on the subject, you should determine for yourselves the probability or improbability, and the amount, of profits Cryovac anticipated.

Difficulty or uncertainty in ascertaining or measuring the precise amount of any damages does not preclude recovery, and you, the jury, should use your best judgment in determining the amount of such damages, if any, based upon the evidence.  Any doubts you may have regarding the computation of the amount of damages should be resolved against Cryovac and in favor of Pechiney.

That Pechiney did not actually anticipate or contemplate that these losses would occur is not a relevant factor for you to consider.

If you find that Cryovac is entitled to a verdict in accordance with these instructions, but you do not find that the evidence before you is sufficient to show that Cryovac has sustained any substantial damages, then you may return a verdict for Cryovac on this claim and fix the amount

DB01:2095760.2                                                                                    063527.1001

of the compensatory damages in a nominal sum such as one dollar. Such a verdict would determine the rights of the parties, and I can then issue orders directing their future conduct. Unlike damages for patent infringement, there is no minimum amount of damages that must be awarded if you find that Pechiney tortiously interfered with a prospective contract between Cryovac and National Beef. Your verdict on the amount of damages for tortious interference is a separate consideration from your verdict on liability.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.10[2] (3d ed. 1996)[modified].

### Cryovac's Objection to Pechiney Instruction 19.1: Compensatory Damages

1.    The entire instruction is duplicative of instruction on damages for tortious interference with contract and duplicative of instructions on the elements of the tortious interference with prospective relations claim. Cryovac's comments and objections to those other instructions apply equally to this instruction.

2.    The second paragraph of the instruction improperly includes examples without a balancing example in favor of Cryovac.

3.    This instruction contradicts Pechiney's other damages instructions.

4.    The instruction defines the requirement of interference too narrowly, as interference with a "<u>prospective binding four-year requirements contract</u>". This is not consistent with ABA Model Instruction of 2.10.2 (Compensatory Damages), at 99 ("if you should find the issues in favor of the plaintiff. . .").

DB01:2095760.2

063527.1001

**REDACTED -- Public Version, filed 5/15/06**

II.    **Cryovac's Objections/Comments To Pechiney's Final Jury Instruction**

20.    **Deliberations and Verdict**

**Pechiney's Instruction**

**20.    Deliberations and Verdict**

I will now end by explaining some things about your deliberations in the jury room and about your possible verdicts.

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges--judges of the facts. Your sole interest is to seek the truth from the evidence in the case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your

foreperson fill in, date, and sign the form.  You will then return to the courtroom, your

foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

Once you start deliberating, do not talk to the Jury Officer, to my Deputy Clerk, or to me,

or to anyone else except each other, about this case.  If you have any questions or messages, you

must write them down on a piece of paper, sign them, and then give them to the Jury Officer.

The question will be given to me, and I will respond as soon as I can.  I may have to talk to the

lawyers about what you have asked, so it may take some time to get back to you.  Any questions

or messages normally should be sent to me through your foreperson, who by custom of this

Court is Juror Number 1.

One more thing about messages.  Do not ever write down or tell anyone else how you

stand on your votes.  For example, do not write down or tell anyone else that you are split 6-2, or

4-4, or whatever your vote happens to be.  That should stay secret until you are finished.

AUTHORITY:        Uniform Del.

### Cryovac's Objection

*Cryovac objects to this instruction because Your Honor's standard jury instructions*

*found on your chambers website fully address all these topics and Cryovac sees no reason or*

*benefit to deviate from those instructions.*

Page 189

**REDACTED -- Public Version, filed 5/15/06**

<u>**20.1    Duty to Deliberate**</u>

<u>**Pechiney's Instruction**</u>

**20.1    Duty to Deliberate**

You are now free to talk about the case in the jury room. In fact, it is your duty to consult with each other, to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement, if you can do so without violence to your individual judgment. Do not ever change your mind just because other jurors see things differently, or just to get the case over with.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. You should feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

AUTHORITY:      1993 USDC Del. § 7.3 [modified for clarity]; 2004 IPAS Del. § 6.3 [modified by adding last sentence of first paragraph].

<u>**Cryovac's Objection**</u>

*Cryovac objects to this instruction because Your Honor's standard jury instructions found on your chambers website fully address all these topics and Cryovac sees no reason or benefit to deviate from those instructions.*

DB01:2095760.2                                                                                                                    063527.1001

**REDACTED -- Public Version, filed 5/15/06**

### 20.2    Court Has No Opinion:

**Pechiney's Instruction**

**20.2    Court Has No Opinion**

I want to finish by cautioning you again that nothing I have said or done during this trial, nothing about these instructions, and nothing in the form of the verdict was meant to suggest or convey to you what I think your verdict should be or to influence your decision in favor of either party. What the verdict shall be is the sole and exclusive duty and responsibility of the jury. You must decide the case yourselves based solely on the evidence presented.

AUTHORITY:    Uniform Del.; 1993 USDC Del. §§ 7.2 [modified for clarity and combination with other instructions], 7.4 [modified for clarity]; 2004 IPAS Del. § 6.4 [modified for clarity].

**Cryovac's Objection**

*Cryovac objects to this instruction because Your Honor's standard jury instructions found on your chambers website fully address all these topics and Cryovac sees no reason or benefit to deviate from those instructions.*

DB01:2095760.2

063527.1001