

## CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

N. Richard Powers
Counsel

TEL (302) 888-6316
FAX (302) 658-5614
EMAIL npowers@cblh.com
REPLY TO Wilmington Office

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

WEB www.cblh.com

May 24, 2006

*VIA CM/ECF*
Honorable Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325
Lockbox 10
Wilmington, DE 19801

Re: *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, No. 04-1278-KAJ: **Pechiney's Submission on the Conduct Cryovac Must Prove to Prevail on its Tortious Interference Claims**

Dear Honorable Judge Jordan:

In their respective tortious interference jury instructions, Pechiney and Cryovac agree that Cryovac must prove that Pechiney used wrongful means to interfere. Cryovac asks the Court to instruct the jury that Pechiney's infringement of the '419 patent, without more, satisfies that element. Under Delaware's choice-of-law principles, however, Kansas law should apply, because that is where the alleged wrongful conduct took place, where National Beef is located and where the allegedly lost sales were made. Kansas law requires proof that the defendant acted with actual malice. Furthermore, even if the Court does not apply Kansas law, Cryovac's position that patent infringement, without more, establishes that Pechiney's conduct was improper or wrongful is not supported by the law in the states with far fewer and less significant contacts to this lawsuit.

I. **Delaware's Choice-of-Law Rules Dictate that Kansas Law Governs the Tortious Interference Claims.**

Delaware's choice-of-law rules apply the law of the state with the most significant relationship to the occurrence and the parties. *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). The Delaware Supreme Court has adopted the factors outlined in the Restatement (Second) of Conflict of Laws for determining which state has the most significant contacts to the alleged tort. *Id.* These factors are: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered." Rest. 2d Conflict of Laws § 145.

The single most important factor applied by Delaware courts for determining which state has the most significant relationship to claims involving tortious interference or an analogous tort is "the place where the conduct causing the injury occurred." *Corning Inc. v. SRU Biosystems, LLC,*

292 F. Supp. 2d 583, 585 (D. Del. 2003); *Integral Res. Ltd. v. Istil Group, Inc.*, 2004 WL 2758672, *3-4 (D. Del. Dec. 2, 2004), *aff'd* 155 Fed. Appx. 69, 73 (3d Cir. Nov. 23, 2005); Rest. 2d Conflict of Laws § 145, cmt. e. The next most important factor is the place where the injury occurred, which has been defined as the place where the contract "that is the subject of [the] unlawful conduct was negotiated and performed." *Integral Res. Ltd.*, 2004 WL 2758672, at *3-4. The parties' domicile, standing alone, is given the least weight in the choice-of-law analysis. *Id.* at *3-4; *Corning Inc.*, 292 F. Supp. 2d at 585 n.1; Rest. 2d. Conflict of Laws § 145, cmt. e.

Under these principles, Kansas law should govern, because almost all of the relevant conduct occurred in Kansas – (1) the face-to-face negotiations between Pechiney and National Beef occurred in Kansas (including the negotiations that took place on January 14, 2004, the day Cryovac claims that National Beef entered into a contract with Cryovac), (2) the National Beef packaging facilities at which Pechiney partially supplanted Cryovac are located in Kansas, (3) the pre-sale trial runs of ClearShield for National Beef's benefit were all run at National Beef's facilities in Kansas, and (4) the packaging sold by Pechiney to National Beef was all shipped to National Beef's Kansas facilities. By contrast, the parties' only connection with South Carolina is that that is the state where Cryovac is located, and it is arguable that Cryovac's injuries occurred there (although it is equally arguable that they occurred in Kansas, where Cryovac's lost sales would have been made and where Pechiney's sales were actually made).[1] Delaware has even less of a connection to the facts in this dispute, since its only connection is as the state where the parties are incorporated. Similarly, Missouri's only relevant connection is that it is the location of the corporate headquarters of non-party National Beef (although National Beef's factories and offices where the alleged wrongful conduct took place are located in Kansas).[2]

II. **Under Kansas Law, Cryovac Must Prove Malice to Prevail on its Tortious Interference Claims. Even Under South Carolina and Delaware Law, Cryovac Must Prove that Pechiney Acted with an Improper Motive.**

"[C]laims for tortious interference with a contract and prospective business advantage require proof of malice under Kansas law." *L&M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000); *see also Turner Halliburton Co.*, 722 P.2d 1106, 1115 (Kan. 1986). Moreover, Kansas law requires proof of "actual malice," rather than mere legal malice for all tortious interference claims. *L&M Enter., Inc.*, 231 F.3d at 1288; *Dodson Aviation, Inc. v. Raytheon Aircraft Co.*, 124 P.3d 1083 (Table), 2005 WL 3527064, * 8 (Ct. App. Kan. Dec. 23, 2005). Under Kansas law, "actual malice" is defined as "actual evil-mindedness or specific intent to injure." *Turner*, 722 P.2d at 1113.[3]

---

[1] To the extent that the injury is felt in both Kansas and South Carolina, this factor favors application of Kansas law as the greatest significance is placed on the location where the defendant's conduct occurred. Rest. 2d Conflict of Laws § 145, cmt. f.
[2] A detailed list of the relevant contacts for each state is attached as Exhibit 1 to this letter.
[3] Because actual malice is required to prevail on a tortious interference claim under Kansas law, a finding of willful infringement would not ordinarily be sufficient for Cryovac to prevail on its

Honorable Kent A. Jordan
May 24, 2006
Page 3

South Carolina law also emphasizes the defendant's wrongful intent, requiring proof that defendant acted without justification and for an improper purpose. *A Fisherman's Best, Inc. v. Recreational Fishing Alliance,* 310 F.3d 183, 195-96 (4th Cir. 2002) (finding under South Carolina law that defendant did not tortiously interfere where it did not have an "improper purpose" that predominated over its legitimate purposes); *DeBerry v. McCain,* 274 S.E.2d 293, 296 (S.C. 1981) (finding no tortious interference where the defendant did not intentionally cause the injury or act without justification). Even Delaware substantive law requires courts to examine whether the defendant acted with "illicit motives." *Am. Orig. Corp. v. Legend, Inc.,* 689 F. Supp. 372, 381 (D. Del. 1981).[4]

Kansas law should be applied, because all of the most significant contacts to this dispute arose in Kansas. Under that law, Cryovac should be required to show that Pechiney acted with actual malice in acquiring National Beef's business. In the alternative, if the Court decides to apply South Carolina, Delaware or Missouri law, the Court should require at a minimum proof that Pechiney acted with an improper purpose or with illicit motives, a standard of proof higher than that required to show willful infringement and certainly higher than that required to show non-willful infringement.

Very truly yours,

/s/ N. Richard Powers

N. Richard Powers

Attachments
cc:   Clerk of the Court
      John W. Shaw, Esquire (via hand delivery and CM/ECF)
      Ford F. Farabow, Esquire (via e-mail)

466586

---

tortious interference claims. *See Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1572 (Fed. Cir. 1996) (stating that "bad faith is not required for a finding of willful infringement").

[4] Cryovac's citations to dicta in Missouri cases in its objections to Pechiney's jury instructions are unavailing. (*See* D.I. 326, p. 144, 147.) Neither of the cases cited by Cryovac even addressed whether the improper or wrongful conduct element of tortious interference was satisfied by showing a mere violation of a statute without any improper purpose or intent. In fact, the court found that the defendant did *not* act improperly or without justification in both of the cases cited by Cryovac. *See Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737, 743 (Ct. App. Mo. 1984); *Community Title Co. v. Roosevelt Fed. Savings,* 796 S.W.2d 369, 374 (Mo. 1990). Indeed, Cryovac has not cited one case in which a court has held that violation of a statute, without more, is sufficient to establish the state of mind necessary to prevail on its tortious interference claims.