## CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington DE 19899
TEL (302) 658 9141
FAX (302) 658 5614

**N. Richard Powers**
Counsel

TEL (302) 888-6316
FAX (302) 658-5614
EMAIL npowers@cblh.com
REPLY TO Wilmington Office

1990 M Street, NW, Suite 800
Washington DC 20036
TEL (202) 331 7111
FAX (202) 293 6229

Wells Fargo Center
South Tower, Suite 3150
355 South Grand Avenue
Los Angeles CA 90071
TEL (213) 787 2500
FAX (213) 687 0498

WEB www.cblh.com

May 24, 2006

**VIA CM/ECF**
Honorable Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street, Room 6325
Wilmington, DE 19801

Re:   *Cyrovac, Inc. v. Pechiney Plastic Packaging, Inc.*, No. 04-1278-KAJ: Pechiney's Submission on Causation

Dear Honorable Judge Jordan:

In their respective jury instructions, the parties dispute the proof required on the essential element of causation for Cryovac's tortious interference claims. Under Cryovac's instructions, Cryovac would satisfy the element of causation by simply showing that any conduct of Pechiney caused National Beef to begin buying from Pechiney, even proper, non-actionable conduct, such as offering packaging for a lower price than that offered by Cryovac. Cryovac's proposed instructions would therefore preclude the jury from considering other possible causes, such as (1) competitive activities by Pechiney that are lawful and privileged (making presentations to National Beef, offering favorable terms upon which products would be sold to National Beef and testing Pechiney's products in National Beef's plants) and (2) Cryovac's own conduct (such as failing to disclose to either National Beef or Pechiney during the five-month bidding process for National Beef's business that Cryovac believed that it had a binding requirements contract with National Beef, even though Cryovac knew that Pechiney was bidding for that business and also knew during the bidding process that National Beef did not believe itself bound to buy from Cryovac). To establish a claim for tortious interference, however, the law requires that the plaintiff must prove that the defendant's wrongful or improper conduct was the direct or proximate cause of the third-party's breach of contract or failure to enter into a contract, and not some other cause, including legitimate and proper conduct of the defendant. Pechiney's instructions follow this legal requirement by providing that Cryovac must prove that it was Pechiney's allegedly wrongful conduct, the infringement of the '419 patent, that caused National Beef to either breach a binding requirements contract with Cryovac or to refuse to enter into a binding requirements contract with Cryovac.[1]

---

[1] As explained in Pechiney's Submission on the Conduct Cryovac Must Prove to Prevail on its Tortious Interference Claims, also filed today, infringement of the '419 patent alone, without proof of malice, does not establish wrongful means.

Honorable Kent A. Jordan
May 24, 2006
Page 2

The courts have uniformly held that to prevail on a claim for tortious interference, the plaintiff must establish that the defendant's wrongful conduct was the cause of a third-party's breach of a contract or refusal to enter into a contract. *See L&M Enters., Inc. v. BEI Sensors & Sys. Co.,* 45 F. Supp. 2d 879, 886-88 (D. Kan. 1999) (finding that an element of tortious interference with prospective business advantage is "damages suffered by plaintiff as a direct or proximate cause of defendant's misconduct"); *Acorn USA Holdings LLC v. Premark Int'l, Inc.,* 2003 WL 22861168, *3 (Del. Super. Ct. July 16, 2003) (stating that tortious interference with contract requires "a subsequent breach caused by [defendant's] wrongful conduct"); *Dangeles v. Muhlenfeld,* 548 N.E.2d 45, 52 (Ill. Ct. App. 1989) (same); *Schott v. Beussink,* 950 S.W.2d 621, 628-29 (Mo. Ct. App. 1997) ("A defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach."); *Commerce Nat'l Ins. Servs., Inc. v. Buchler,* 120 Fed. Appx. 414, 418-19, 2004 WL 2786315 (3d Cir. 2004) (holding that "under Delaware law, a plaintiff must show ... intentional, *wrongful* interference which induces or causes a breach or termination of the relationship or expectancy") (citation omitted) (unpublished opinion).

The authorities that Cryovac relies on to support its jury instructions on causation and its objections to Pechiney's instructions support Pechiney's position, not Cryovac's. (*See, e.g.,* D.I. 326, at Tab A 65-66, Tab B 149-50.) In support of its causation instruction for tortious interference with contract, 3.5.3, Cryovac cites American Bar Association, *Model Jury Instructions: Business Torts* § 1.4.3 c. The authority listed for that model instruction holds that tortious interference requires that the allegedly wrongful conduct be the cause of the breach. *See Fitzpatrick v. Catholic Bishop,* 916 F.2d 1254, 1256 (7th Cir. 1990) (stating that tortious interference requires "breach of contract caused by defendant's wrongful conduct"); *Merrill Lynch Futures, Inc. v. Miller,* 686 F. Supp. 1033, 1040 (S.D.N.Y. 1988) ("A plaintiff must plead and prove that 'but for the unlawful actions of defendant, the contract would have been performed.'") (citation omitted); 45 Am. Jur. 2d *Interference* § 10 ("To establish causation in a tortious interference action, the plaintiff must prove that the defendant's wrongful or unlawful conduct proximately caused the injury alleged, although it need not be the sole cause.") Likewise, Cryovac's causation instruction for tortious interference with prospective economic advantage relies on model jury instructions that do not reference any authority that supports Cryovac's position. For example, the ABA Model Jury Instruction § 2.5.1 cites *Lyon v. Campbell,* 707 A.2d 850, 860 (Ct. App. Md. 1998), but the court in this case held that, "To establish causation in a tortious interference action, the plaintiff must prove that the defendant's wrongful or unlawful conduct proximately caused the injury alleged."

In the context of this case, Cryovac's proposed instructions on causation would require the jury to find in Cryovac's favor even if Pechiney was able to prove (1) that it won National Beef's business because it offered National Beef better terms, conduct that is fully protected by the competitive privilege; (2) that it would have won the business even if it had not infringed the '419 patent, based on its ability to offer non-infringing packaging at a lower price than that offered by Cryovac; and (3) that Cryovac's own actions were responsible for the loss of National Beef's business. On the issue of causation, Pechiney intends to prove that it could have offered National Beef a non-EVOH version of ClearShield that Cryovac admits would not infringe its patent, and that National Beef decided to buy from Pechiney because Pechiney offered better

Honorable Kent A. Jordan
May 24, 2006
Page 3

pricing, not because National Beef had any desire for an EVOH bone-in packaging product. In addition, Pechiney intends to show that National Beef would have continued to buy from Cryovac if Cryovac had offered National Beef competitive pricing, so that it was Cryovac's conduct, not Pechiney's, that caused Cryovac to lose National Beef's business. Finally, Pechiney intends to show that Cryovac's failure to tell either National Beef or Pechiney that it believed it had a binding requirements contract with National Beef – despite its knowledge that Pechiney was bidding for that business and despite its knowledge that National Beef did not believe itself to be bound by such a contract – was also a direct and proximate cause of its loss of National Beef's business. Accordingly, Cryovac's proposed causation instructions are improper because they would direct the jury to find that Cryovac had satisfied the causation element even if Cryovac lost National Beef's business due to Pechiney's lawful competitive activities, rather than to any wrongful conduct by Pechiney.

In a case raising a similar issue concerning causation, *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 1153-54 (Del. 1981), a group of automobile body repair shops sued an insurance company for tortious interference with prospective business opportunities. The plaintiffs' claims were based on allegations that the insurance company improperly coerced its insureds to have their repair work done by a select group of competing repair shops. The court affirmed the verdict for the insurance company, finding that the plaintiffs had failed to establish that the alleged wrongful conduct of the defendant was the proximate cause of their loss. The court found instead that the plaintiffs' own "pricing policies were the proximate cause of their loss of business from defendant's insureds and claimants." 428 A.2d at 1154. Specifically, the trial court below had concluded after hearing the evidence that "plaintiffs' loss of prospective business was due less to defendant's channeling of its insureds and claimants to the favored shops than to plaintiffs' deliberate decision not to compete with the favored shops on repair prices." *Id.*

Similarly here, Pechiney intends to show that Cryovac's loss of National Beef's business was due to Cryovac's own decision not to offer a pricing proposal that was competitive with Pechiney's proposal, and not to any improper conduct by Pechiney. If the evidence introduced at trial proves Pechiney's contention, the jury should find, if properly instructed, that Cryovac has not established the element of causation necessary to prevail on its tortious interference claims. As discussed above, Cryovac must show that some wrongful or improper conduct on the part of Pechiney was the direct or proximate cause of National Beef's alleged breach of contract or refusal to enter into a contract. The only wrongful or improper conduct Cryovac has alleged in this case is Pechiney's infringement of the '419 patent. The jury instructions should therefore provide that to prevail on its claims for tortious interference, Cryovac must show that Pechiney's infringement of the '419 patent directly or proximately caused National Beef to breach an existing contract or refuse to enter into a contract.

Honorable Kent A. Jordan
May 24, 2006
Page 4

                                    Very truly yours,

                                    */s/ N. Richard Powers*

                                    N. Richard Powers

cc:    Clerk of the Court
        John W. Shaw (via hand delivery & CM/ECF)
        Ford F. Farabow (via e-mail)

466575