# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BRUCE M. STARGATT
BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK W. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK

NEILLI MULLEN WALSH
JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302.571.5029
DIRECT FAX: 302.576.3402
enorman@ycst.com

LISA A. ARMSTRONG
GREGORY J. BABCOCK
JOSEPH M. BARRY
SEAN M. BEACH
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
KARA HAMMOND COYLE
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
RICHARD S. JULIE
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL

KAREN E. LANTZ
TIMOTHY E. LENGKEEK
ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
KRISTEN R. SALVATORE (PA ONLY)
MICHELE SHERRETTA
MONTÉ T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER (SC ONLY)
JOHN E. TRACEY
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
ELENA C. NORMAN
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

May 24, 2006

**BY CM/ECF AND HAND DELIVERY**
The Honorable Kent A. Jordan
J. Caleb Boggs Federal Building
844 N. King Street
Room 6325, Lockbox 10
Wilmington, DE 19801

Re:   Cryovac Inc. v. Pechiney Plastic Packaging, Inc.
      C.A. No. 04-1278-KAJ

Dear Judge Jordan:

We submit this letter on behalf of plaintiff Cryovac, Inc., further to the Court's directive at the May 15, 2006, pre-trial conference that each party prepare a three-page submission stating its position regarding certain disputed aspects of the proposed tortious interference jury instructions.[1] In this letter, we address the issue of what Cryovac must prove to establish the causation element of tortious interference.[2] Cryovac submits that the element requires proof that Pechiney's conduct as a whole -- as opposed to an intervening cause or entity -- caused National Beef to breach a requirements contract or contracts with Cryovac. *See, e.g., Cryovac Proposed Final Jury Instruction* 3.5.3 ("You, the jury, must then determine whether Pechiney was responsible for National Beef's failure to perform the alleged contract or contracts with Cryovac as agreed.") (D.I. 326 at 65.) Consistent with applicable law, this instruction would allow the jury to find the causation element satisfied by proof that Pechiney's bidding for business with National Beef caused National Beef to breach its requirement contract or contracts with Cryovac. In contrast, Pechiney submits that Cryovac must

---

[1] Cryovac is simultaneously submitting a separate three-page brief on the separate disputed issue of what is legally required to prove the "without justification" element of tortious interference. That is the specific disputed issue that was raised by the parties at the May 15, 2006, pre-trial conference. The parties thereafter agreed that the issue briefed herein also impacts presentation of the proof to the jury and should be raised at this time as well.

[2] The references to "tortious interference" in this submission refer to claims for both tortious interference with contract and tortious interference with prospective relations.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Kent A. Jordan
May 24, 2006
Page 2

specifically prove that Pechiney's *patent infringement* was the conduct that caused National Beef to breach its contract or contracts with Cryovac. *See, e.g. Pechiney's Instruction No. 16.11*.[3] (D.I. 323 at 12.) Pechiney's formulation of the standard is not legally supportable.[4]

Well-settled case law and the standard model jury instructions establish that: (i) proof of causation for a claim of tortious interference focuses on defendant's conduct as a whole (i.e., Pechiney's conduct in bidding for business with National Beef), and not a specific aspect of defendant's conduct (such as Pechiney's infringement of Cryovac's patent); and (ii) the "causation" element of the tortious interference claim is separate and distinct from the "without justification" element of the claim. The two elements are not interdependent. We explain below each of these two legal bases supporting Cryovac's formulation of the causation standard.

First, the law requires proof that the <u>defendant's own conduct as opposed to someone or something else</u> caused the interference with the contract and the resulting loss. The causation standard ensures that a defendant is not liable for conduct which only indirectly or tangentially leads to claimed losses, but that the defendant has played a "substantial part" in the losses incurred. *See* W. Page Keeton, *Prosser and Keeton on The Law of Torts*, § 129 at 989 (5th ed. 1984).

The causation standard that Pechiney urges goes far beyond the proper requirement that defendant's conduct led to the contractual breaches. For example, the American Bar Association, *Model Jury Instructions: Business Torts Litigation*, states the general formulation of the causal relationship element as follows: "You, the jury, must determine whether the defendant was responsible for the refusal of [National Beef] to perform the contract with the plaintiff. This means that, before you can decide in favor of the plaintiff, you must find . . . that, <u>but for the actions of the defendant</u>, the contract that was not performed would have otherwise been performed." § 1.3.1 (emphasis added). The model instructions continue in this vein, instructing the jury that the defendant's conduct will be the "proximate cause of the plaintiff's loss or damage . . . if you find that it was a substantial factor in causing that loss or damage. *Id.* § 1.3.4.d. Neither of these model instructions relating to causation even alludes to whether or not defendant's conduct was justified. Similarly, causation is not addressed in connection with the justification element of the tort in the model instructions.

Case law also makes clear the proper formulation of the causation standard. For example, in *H.J., Inc. v. Int'l Telephone & Telegraph Corp.*, 867 F.2d 1531, 1548 (8th Cir. 1989), the court held that defendant's simple act of bidding against plaintiff for a contract (as the evidence will show Pechiney did here) was sufficient to satisfy the "causation" element for a tortious interference claim.

---

[3] Pechiney argues that the conduct that caused the breach of contract must have been willful and malicious infringement – not mere infringement. Cryovac disagrees. The parties' dispute on that issue is addressed in the submission that Cryovac submits simultaneously herewith. *See* n. 1, *supra*.

[4] While Pechiney appeared to indicate at the May 15, 2006 pretrial conference its position that Kansas law governs the tortious interference jury instructions, Pechiney cites Kansas, Missouri and Delaware law in support of its proposed jury instructions. Pechiney has never asserted that choice of law is determinative of the causation element of tortious interference. Like Pechiney, Cryovac relies on precedent from different jurisdictions insofar as the laws of the jurisdictions potentially applicable here do not materially differ for claims of tortious interference. *See e.g.*, Memorandum Opinion April 17, 2006 D.I. 306.

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Kent A. Jordan
May 24, 2006
Page 3

Nothing more was required to establish causation. The court concluded that "[t]here is no question that [defendant's] lower price induced customers of [plaintiff] to buy hoists from [defendant]...." Similarly, in *Conoco Inc. v. Inman*, 774 F.2d 895 (8th Cir. 1985), the court determined that the causation element for a claim for tortious interference was satisfied where defendant Conoco had interfered with plaintiff's long-standing business relationship with a third-party oil company by bidding against plaintiff for third-party contracts. *Id.* at 907. Thus, conduct such as "bidding" for a competitive contract which leads to a breach of a contract with plaintiff can serve as proof of "causation" for a tortious interference claim.[5]

Second, whether or not defendant's conduct was "justified" – including the question of whether defendant's conduct included an improper motive, or improper means (such as patent infringement) -- is not relevant to the element of causation. Each is a separate and independent element of the tort. For example, in the *H.J., Inc. v. Int'l Telephone & Telegraph Corp.* case referenced above, even though the court determined that the causation element was satisfied by defendant's bidding for a contract competitive to plaintiff's contract, the court explained that it needed to separately conclude that defendant acted without justification to uphold the defendant's liability for tortious interference. This it did, by concluding that defendant's acts constituted an "attempted monopolization" which satisfied the without justification element of the tortious interference claim. 867 F.2d at 1548 (defendant's conduct was wrongful because conduct was "intended illegally to restrain competition")(internal citation omitted). The court in *Conoco Inc. v. Inman*, applied the same legal standard, but reached the opposite result on the facts, concluding that Conoco was not liable for breach of tortious interference with business relationships because, although plaintiff had proved causation, it had not proved that "Conoco's conduct was not justified." 774 F.2d at 907.

In sum, Pechiney's attempt to argue that causation must be linked to only one aspect of defendant's conduct, and to combine the "causation" and the "without justification" elements of the prima facie case for tortious interference is not legally supportable. The jury is entitled to conclude that the causation element of Cryovac's tortious interference claim will be satisfied if it finds that Pechiney's conduct -- here, the bidding for a contract with National Beef -- caused the breach of Cryovac's contract or contracts with National Beef.

Respectfully submitted,

Elena C. Norman (#4780)

---

[5] *See also V.C. Video, Inc. v. National Video, Inc.*, 755 F.Supp. 962, 971 (D. Kan. 1990) (causation lacking where no evidence of defendant's participation in third party's decision to breach contract); *Tri-Continental Leasing Co. v. Neidhardt*, 540 S.W.2d 210, 215 (Mo. Ct. App. 1976) ("[T]o establish liability in a tortious interference with contract case, the plaintiff must show that the defendant's acts caused the breach. And we find that other jurisdictions have characterized the causation element as requiring a showing that the defendant was 'a moving cause' in the breach."); compare *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc.*, 307 F.3d 197, 220 (3d. Cir. 2002) (causation lacking where plaintiff "failed to produce sufficient evidence to prove that any third parties acted on a letter sent by [defendant]").