1    Can anybody tell me that?

2            MR. PATRAS:  I don't know whether there is a

3    specific sale of the exact identical structure to what is

4    in the second opinion letter as opposed to this different

5    category of structure which includes different compositions

6    and different thicknesses.

7            THE COURT:  Then give it to me on the basis you

8    want to give it to me, which sounds like the second set of

9    circumstances.  I need to know, I just want to know, did the

10   letter come out before or after you started marketing this

11   new kind of ClearShield?

12           MR. PATRAS:  My understanding is that it came

13   out before, Your Honor, but I would need to check.  I don't

14   want to misstate something.

15           THE COURT:  How can you check that?  Can you

16   check that now?  Can you get somebody out looking, finding,

17   helping me out on that point?

18           MR. CASSLING:  I'm not sure, Your Honor, that we

19   have that information here.

20           There is the issue, too, of the Philips opinion

21   and the change to this one.

22           THE COURT:  Sure.  And that deals with opinion

23   number three; but I'm focussed on opinion number two, and if

24   somebody wants to go downstairs and get their cell phone and

25   walk outside and hope they get a signal and call somebody

2a7dbb75-0f53-4ba2-8763-3f1ea0891a6b

1   does not foreclose Cryovac from attacking it on

2   cross-examination and saying it really is not worthy of you

3   giving credence, and it doesn't say, it doesn't shed light

4   on their state of mind earlier, at the beginning point in

5   time, which is an important measuring point.

6           All right.  You had to stand up through all

7   that, Mr. Patras.  Sorry about that.

8           MR. PATRAS:  That's all right.

9           THE COURT:  Do you have an answer to the

10  question?

11          MR. PATRAS:  She is checking on the specifics,

12  but getting to I think the same point you just addressed

13  here at the end, Your Honor, I can tell you that the first

14  sales of any ClearShield product were in March 2004.  So the

15  Spadt opinion letter is within nine months of there being

16  any sale of any product.  That is not the date necessary

17  for the change in structure but of any ClearShield product

18  at all, so any changed structure would have been sold for

19  the first time after March of 2004.

20          THE COURT:  Well, I could hear something that

21  changes my mind, I guess; but for planning purposes, to get

22  things moving, I think you should be understanding that

23  I'm going to let those things in and you can go after them

24  hammer-and-tongs on cross, but it makes more sense to me,

25  more logical sense to me that under these circumstances, the

1    facts of this case, it's appropriate to allow the defense to

2    put that in front of a jury.

3                All right.  That takes care of that.

4                Mr. Farabow.

5                MR. PATRAS:  Thank you, Your Honor.

6                MR. FARABOW:  Your Honor, may I respond to two

7    points?

8                THE COURT:  Sure.

9                MR. FARABOW:  One is if Your Honor is interested

10   in hearing why I said it's a one-sentence opinion, I'd be

11   glad to explain it or I can just show it at the trial.

12   Whichever you would rather see.

13               THE COURT:  Well, I'm happy to have you make

14   your record here, sir.

15               MR. FARABOW:  Additionally, I would like to say

16   since Your Honor has indicated that you are going to let

17   the opinions in, we would like to, and expect to, do the

18   EchoStar investigation of those opinions.  We would like to

19   know any communications that Pechiney had with Mr. Spadt

20   about the opinions, any communications that there were with

21   Pechiney about why they needed additional opinions.

22               It's been said it's because of a change of

23   composition.  We think it is because of the inadequacy of

24   the first opinion.  Our plan would be to look at Mr. Spadt's

25   records, to look at records of Jenner, to look at records of

2a7dbb75-0f53-4ba2-8763-3f1ea0891a6b

1    that.  They don't have the right at this point.  They could

2    have taken this deposition a long time ago and they had the

3    right if they came in.  And if we had asserted privilege --

4    they'll never know whether we would have asserted privilege

5    because they never took the deposition, but if they had,

6    they would have had the opportunity to come before Your

7    Honor then for relief.

8              THE COURT:  Okay.  I have your positions.

9              Mr. Farabow, I'll give you the last crack on

10   that one.

11             MR. FARABOW:  Your Honor, we're not trying to

12   take any depositions.  What we want to do is see the

13   documents that Pechiney had knowledge of with regard to

14   these later opinions.

15             MR. CASSLING:  We're already providing them,

16   Your Honor.

17             THE COURT:  It sounds to me like you are getting

18   what you say you want.  No?

19             MR. FARABOW:  That's fine, Your Honor.

20             THE COURT:  Okay.  What do we have?

21             MR. PATRAS:  Your Honor, the report from home

22   base is that the first spec sheet that included both the

23   difference in thickness and difference in composition of

24   the outer layers is dated October 22nd of 2004.  So, two or

25   three months before Mr. Spadt's opinion letter.  That's the

Page 27

1    specification date as opposed to a first sales date.

2              THE COURT:  And you don't know when it was first

3    marketed?  That's what I'm hearing?

4              MR. PATRAS:  (Shaking head no.)

5              THE COURT:  All right.

6              MR. PATRAS:  That was the first the

7    specification existed is my understanding, Your Honor.

8              THE COURT:  Let's move to the next discussion

9    point, which is one from Pechiney.  We just handled one from

10   Cryovac.  Let's take one from Pechiney.

11             MR. CASSLING:  Yes, Your Honor.

12             If I could, Your Honor, the one I would like to

13   address is the motion in limine dealing with Mr. Deily who

14   is a senior Cryovac executive.  They have told us they want

15   to put Mr. Deily on the stand to testify as to two separate

16   issues.

17             Issue No. 1, they want Mr. Deily to testify that

18   Curwood's products, the product not even made by Cryovac,

19   are unacceptable to customers generally.  And they want

20   Mr. Deily to testify as to trade usage.  Specifically, they

21   want Mr. Deily to tell the jury that trade usage in the

22   industry equates the terms "supply agreement" with "binding

23   requirements contract."

24             Mr. Deily has only worked, during his entire

25   career, for Cryovac.  He can certainly testify.  And I