IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYOVAC, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| vs. | ) | Civil Action No. 04-1278-KAJ |
| | ) | |
| PECHINEY PLASTIC PACKAGING, INC., | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

**PRELIMINARY JURY INSTRUCTIONS**

Members of the jury:

Now that you have been sworn, I have the following preliminary instructions for your guidance during the presentation of the case. What I am about to say is intended to introduce you to the trial and principles that you will apply to evaluate the evidence that you will hear. I will also give you detailed instructions on the law at the end of the trial.

As I mentioned earlier, when we were choosing you for this jury, this is a case involving patent infringement and allegations of tortious interference with contract. The parties are Cryovac, Inc., the plaintiff, and Pechiney Plastic Packaging, the defendant. Cryovac owns U.S. Patent Number 4,755,419, granted to a gentleman named Gautam P. Shah by the United States Patent and Trademark Office. You may hear that patent referred to during the trial as "the '419 patent" for short, or "the Shah patent," or "the patent in suit." I'll tell you more about the specifics of the dispute in a few moments. First, let me tell you about your role as jurors and some principles of patent law.

**Duty of Jury**

It will be your duty to find what the facts are from the evidence as presented at the trial. You, and you alone, are the judges of the facts. You will have to apply those facts, as you find

them, to the law I will provide to you at the close of the evidence. You must follow my instructions on the law whether you agree with them or not.

Nothing I may say or do during the course of the trial is intended to indicate what your verdict should be.

**Evidence**

The evidence from which you will find the facts will consist of the testimony of witnesses, and the documents and other things admitted into evidence. In addition, the evidence may include certain facts as agreed to by the parties or as I instruct you.

Certain things are not evidence.

1. Statements, arguments, and questions by lawyers are not evidence.

2. Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered into evidence are not admissible under the Rules of Evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection, you should ignore the question or document in question. If I overrule an objection and allow the matter into evidence, treat the testimony or document like any other evidence. If I instruct you that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this does occur during the trial, I will try to clarify the issue for you at that time.

3. I reemphasize, you should not consider testimony and documents I have excluded and not admitted into evidence.

4. Anything you see or hear outside the Courtroom is not evidence and must be

disregarded. You are to decide this case solely on the evidence presented here in the Courtroom.

There are two kinds of evidence: direct and circumstantial. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. I will give you further instructions on these as well as other matters at the end of the case, but have in mind that you may consider both kinds of evidence.

It will be up to you to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.

**Patents**

Now let's talk about patents. Don't worry. This will not be the only time we discuss the principles of law you are going to be dealing with, but it is my effort at an introduction.

Patents are documents that represent rights granted by our government. This is the '419 patent, the one at issue in this case. It relates to certain types of multilayer plastic films used in packaging, including the packaging of meat. The '419 patent was issued, as all United States patents are, by the United States Patent and Trademark Office, which you may hear referred to as the "PTO." The PTO is an agency of the federal government. The government is authorized by the United States Constitution to enact patent laws and issue patents to protect inventions. Inventions that are protected by patents may be products, compositions, or methods for doing something, or for using or making a product or composition.

**How a Patent is Obtained**

The PTO examines patent applications and, as to each application, decides whether to

3

issue a patent. When an applicant for a patent files an application with the PTO, the application is assigned to a Patent Examiner. The Patent Examiner examines the application, including the language at the end of the applications, where the applicant says precisely what it is that he or she claims to be the invention that should be protected. Not surprisingly, we call that final statement of what is being claimed the "claims." The Patent Examiner determines whether or not the described invention meets the requirements for patentable inventions under the U.S. Patent Laws.

The Examiner reviews files of prior work of others in the form of patents and publications. This type of material is called "prior art." Documents found in this search of prior works are called "references."

The Patent Examiner advises the applicant of his or her findings in a paper called an "office action." The Examiner may "reject" the claims if he or she believes they do not meet the requirements for patentable inventions. The applicant may respond to the rejection with arguments to support the claims, by making changes or amendments to the claims, or by submitting new claims. If the Examiner concludes that the legal requirements have all been satisfied, he or she "allows" the claims and a patent is issued.

This process, from the filing of the patent application to the issuance of the patent, is called "patent prosecution." The record of papers relating to the patent prosecution is referred to as the prosecution history, or the file history, or the file wrapper. When a patent issues, the prosecution history for that patent becomes available to the public.

Sometimes in a court case such as this one, you are asked to decide whether the patent should have been allowed at all by the Patent Office. A party accused of infringement is entitled to challenge whether the asserted patent claims are sufficiently new or non-obvious in light of the

prior art or whether other requirements of patentability have been met. In other words, a defense to an infringement lawsuit is that the patent in question never should have been issued. We say of such an improperly issued patent that it is "invalid."

You may wonder why it is that you would be asked to consider such things when the patent has already been reviewed by a Patent Examiner working for the PTO. There are reasons we permit the validity of a patent to be challenged. For example, there may be facts or arguments that the Examiner did not consider, such as prior art that was not located by the PTO or provided by the applicant. Also, because the patent application process is private, other interested people do not have the opportunity to present materials to the examiner. There is the possibility that mistakes were made or important information was overlooked. No process is perfect, including the process for granting patents.

Now, what exactly is the right that the owner of a valid patent gets because he or she owns the patent? It is the right, for the life of the patent, to prevent others from making, using, offering for sale, selling, or importing the invention covered by the patent in the United States. In other words, the patent gives the patent owner a right to exclude others from taking advantage of the invention covered by the patent. If you wanted to think of an analogy, you could think of it being something like putting a fence around a piece of real property. The owner can say "keep out." When someone intrudes on a patent owner's exclusive right, we call that intrusion "infringement."

**Earlier Ruling on Infringement**

In this case, I made a ruling before trial that certain products made by Pechiney, namely plastic bags that you will probably hear referred to by the trade name "ClearShield," do infringe

upon Cryovac's rights under the '419 patent. However, that does not end the dispute between the parties. Far from it. We are here because there continue to be issues in dispute that you are needed to help sort out.

**Contentions of the Parties**

Cryovac has accused Pechiney of willfully infringing the '419 patent. Please note that my earlier ruling was simply that there had been infringement, but it will be for you, the jury, to decide whether that infringement was willful, as Cryovac claims, or not willful, as Pechiney contends. Cryovac also asserts that Pechiney willfully and knowingly caused one of Cryovac's customers, a business called National Beef, Inc., to breach two sales contracts it had with Cryovac.

Pechiney responds: (a) that it did not willfully infringe Cryovac's patent, (b) that Cryovac's patent is invalid, (c) that Cryovac never had a binding contract with National Beef, (d) that Pechiney did not, and could not have known of the existence of a binding contract between Cryovac and National Beef because National Beef did not believe itself to be bound by such a contract, and (e) that Pechiney merely exercised its legal right to seek and win National Beef's business for itself.

**Burdens of Proof**

Now, I need to speak with you for a moment about the burdens of proof that the parties have in this case. This is a civil case, and, given the types of claims and defenses that have been raised, you will be asked to consider two different standards or levels of proof.

First, there is a standard of proof that we call "preponderance of the evidence." Cryovac says that Pechiney tortiously interfered with Cryovac's contracts with National Beef. Well,

Cryovac has the burden of proving that claim by a preponderance of the evidence. That means Cryovac must produce evidence that, when considered in light of all of the facts, leads you to believe that what Cryovac claims about tortious interference is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence about this issue on opposite sides of a scale, the evidence supporting Cryovac's tortious interference claim would have to make the scales tip somewhat in Cryovac's favor.

The other standard of proof you'll need to consider is called "clear and convincing evidence." In this case, Pechiney is arguing that Cryovac's patent is not valid. When a party challenges the validity of a patent, as Pechiney is doing here, it bears a higher burden of proof than proof by a preponderance of the evidence. Pechiney must present clear and convincing evidence that the patent is invalid in order to prevail on this issue. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.

Cryovac also faces this higher burden of proof as to one of its claims. In order for Cryovac to prevail on its accusation that Pechiney's infringement of the '419 patent was willful, Cryovac must prove by clear and convincing evidence that that was the case.

Some of you may have heard the of "proof beyond a reasonable doubt." That is a standard in criminal cases and it does not apply in this civil case. You should, therefore, put it out of your mind entirely in considering whether or not the parties have met their burdens of proof in this case.

At the end of the case, I will give you further instructions on the law that you will apply in determining whether the parties have proven their claims and defenses.

**The Parts of a Patent**

I'm going to speak to you for a few moments now about the parts of a patent, and I'll ask the parties to assist me by projecting on the screen the front page of the '419 patent.

A patent includes two basic parts: first, a written description of the invention, which may include drawings and which is referred to as the "specification" of the patent; and, second, the patent claims.

The cover page of the '419 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventor's name, the filing date, the assignee, and a list of the prior art publications considered in the Patent Office in issuing the patent.

The specification of the '419 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.

Next are the drawings. The '419 patent has one drawing, which appears as Figure 1 on the next page. A drawing depicts various aspects or features of the invention. It is described in words later in the patent specification.

The written description of the invention appears next. In this portion of the patent, each page is divided into two columns, which are numbered at the top of the page. The lines on each page are also numbered. The written description of the '419 patent begins at column 1, line 1, and continues to column 9, line 4. It includes a background section, a summary of the invention, definitions, and a detailed description of the invention, including some examples.

The specification is followed by one or more numbered paragraphs. These are called the claims. The claims may be divided into a number of parts, referred to as "claim limitations." In

8

the '419 patent, the claims begin at column 9, line 6 and continue to the end of the patent, at column 12, line 7.

In this case, we will be concerned only with claim 11 of the '419 patent. Claim 11 begins at the bottom of column 9 and goes to line 9 of column 10. I will instruct you at the end of the case about the meaning of some of the language in this claim, and you must use the meanings I give you in your deliberations.

**Glossary**

I'm going to provide to you now, however, [during the break we are about to take,] a short glossary of some of the words I've used in talking about patents, words like "prior art" and "specification" and "patent claims."

**Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, bring it to my attention promptly. There are important reasons for this, including the need for you to keep an open mind throughout the presentation of evidence.

Again, do not reach any conclusion as to the claims until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

If you wish to, you may take notes during the evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law. My Courtroom Second, do not read or listen to anything touching on this case that is not admitted into evidence.

9

By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case. Please don't do any sleuthing on the internet, for example. You are to decide the case upon the evidence presented to you here in court.

deputy will arrange for pens, pencils, and paper. If you do take notes, take them with you each time you leave the courtroom and please leave them in the jury room when you leave at night. And remember that they are for your own personal use -- they are not to be given or read to anyone else.

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. However, you should not assume that the transcripts will be available for your review during your deliberations. Nor should you consider notes that you or fellow jurors may take as a kind of written transcript. Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of the testimony during your deliberations. Here are some other specific points to keep in mind about note taking:

1. Note-taking is permitted, not required. Each of you may take notes. No one is required to take notes.

2. Be brief. Do not try to summarize all of the testimony. Notes are for the purpose of refreshing memory. They are particularly helpful when dealing with measurements, times, distances, identities, and relationships. Over-indulgence in note-taking may be distracting. You, the jurors, must pass on the credibility of witnesses; hence, you must observe the demeanor and appearance of each person on the witness stand to assist you in passing on his or her credibility.

Note-taking must not distract you from that task. If you wish to make a note, you need not sacrifice the opportunity to make important observations. You may make your note after having made an observation itself.

        3.       Do not use your notes, or any other juror's notes, as authority to persuade fellow jurors. In your deliberations, give no more and no less weight to the views of a fellow juror just because that juror did or did not take notes. As I mentioned earlier, your notes are not official transcripts. They are not evidence, and they are by no means a complete outline of the proceedings or a list of the highlights in the trial. They are valuable, if at all, only as a stimulant to your memory. Your memory is what you should be relying on when it comes time to deliberate and render your verdict in this case. You therefore are not to use your notes as authority to persuade fellow jurors of what the evidence was during the trial.

        4.       Do not take your notes away from court. I repeat, at the end of each day, please leave your notes in the jury room. At the conclusion of the case, after you have used your notes in deliberations, a court officer will collect and destroy them, to protect the secrecy of your deliberations.

**Some Logistical Information**

        1.       Temperature -- dress in layers. It is difficult for our landlord, the Government Services Administration, to maintain a constant temperature in the building. That is particularly true when the seasons are changing and the temperature outside can be erratic. So bring a sweater or jacket you can wear if the air conditioning is overdone but which you can take off if things get too warm.

2. Jury Stickers -- Please wear the stickers you've been given that identify you as jurors. We don't have specialized access for you to the elevators or other common areas in the building. You will be sharing those with the representatives of the parties and others who have business with the Court. Everyone wants to help you maintain the appropriate detachment you must have in order to avoid being influenced by things outside the courtroom. By wearing your stickers, you help the parties and others to preserve that detachment. And please, do not be offended if the attorneys or court personnel or others involved in the trial seem stand-offish when you see them in the elevators or elsewhere in the building. Again, they are not trying to be unfriendly, but they are obligated to avoid contact with you outside the context of the presentations in the courtroom.

3. Security System and Timeliness -- You'll recall that when you came into the building today, you had to go through a security screening system. If you had a cell phone, you had to check that in with one of the Court Security Officers. Such screening can cause delays, so please plan your arrival time at court in a manner that will allow you to be in the jury room before 9:00 a.m. each day of trial so that you can all come in and be seated together in the jury box promptly at 9:00. I should note that, sometimes, the other participants in this proceeding may cause you to wait. You will have done your part and arrived in the morning or after a break so that we can begin on time and yet you will be left in the jury room. I promise that I will do my utmost to hold such delays to the absolute minimum. We may be able to eliminate them entirely, but there are times during the course of a trial when matters arise which could not reasonably have been anticipated and which require the Court's attention. For example, the attorneys may have a legal issue which they help resolving and in which it would not be appropriate to have you

involved. If we have to deal with matters outside your presence, please be patient. Likewise, if I am required to deal with other proceedings, I ask your indulgence. Neither the Court nor the parties mean you any disrespect by a delay. On the contrary, your willingness to serve and the sacrifice of your time is deeply appreciated by all of us involved in these proceedings.

4.     Schedule -- A few additional words about the daily schedule: as I mentioned, we will begin taking testimony each day at 9:00 a.m. We will plan to have a break at mid-morning (at about 10:30), to recess for a one-hour lunch at approximately 12:30, to have a mid-afternoon break (at about 3:00), and to conclude the taking of testimony by 4:30 p.m. sharp. You can plan that you will be able to leave court each day by 4:30.

**Course of the Trial**

The trial will now begin. First, each side may make an opening statement. An opening statement is neither evidence nor argument. It is an outline of what that party intends to prove, and is presented to help you follow the evidence as it is offered.

After the opening statements, the plaintiffs will present their witnesses, and defendants may cross-examine them. Then the defendants will present their witnesses, and plaintiffs may cross-examine them. Both sides may offer documents in evidence.

When all the evidence is in, the attorneys will make their closing arguments to summarize and interpret the evidence for you and I will give you instructions on the law. You will then retire to deliberate on your verdict.