IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CRYOVAC, INC., | ) | |
| Plaintiff/Counter-Defendant | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 04-1278-KAJ |
| PECHINEY PLASTIC PACKAGING, INC. | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |
| | ) | |

## JOINT PROPOSED JURY INSTRUCTIONS

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____/s/ Elena C. Norman_____
John W. Shaw (No. 3362)
Michele Sherretta (No. 4651)
Elena C. Norman (No. 4780)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com

_Attorneys for Cryovac, Inc._

Dated: June 19, 2006

**CONNOLLY BOVE LODGE & HUTZ LLP**

_____/s/ N. Richard Powers_____
N. Richard Powers (No. 494)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
rpowers@cblh.com

_Attorneys for Pechiney Plastic Packaging, Inc._

# **TABLE OF CONTENTS**

1.   GENERAL INSTRUCTIONS ................................................................. 1

     1.1   INTRODUCTION & JURORS' DUTIES  [AGREED] ......................... 1

     1.2   DUTIES AS JURORS  [AGREED] ...................................................... 2

     1.3   EVIDENCE DEFINED  [AGREED] ..................................................... 4

     1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE  [AGREED] ........... 5

     1.5   CONSIDERATION OF EVIDENCE  [AGREED] ................................ 6

     1.6   STATEMENTS OF COUNSEL  [AGREED] ...................................... 7

     1.7   CREDIBILITY OF WITNESSES  [AGREED] .................................... 8

     1.8   EXPERT TESTIMONY  [AGREED] ................................................. 10

     1.9   NUMBER OF WITNESSES  [AGREED] .......................................... 11

     1.10  BURDENS OF PROOF  [AGREED] ................................................. 12

2.   PATENT INSTRUCTIONS – WILLFUL INFRINGEMENT ......................... 13

     2.1   WILLFUL INFRINGEMENT  [Disputed matter in brackets] ............ 13

     2.2   ADVICE OF COUNSEL  [AGREED] .............................................. 18

     2.3   WILLFUL INFRINGEMENT – GOOD FAITH RELIANCE
           (Cryovac Proposed Jury Instruction) .................................................. 20

3.   TORTIOUS INTERFERENCE WITH CONTRACT  [AGREED] ................... 22

     3.1   INDUCING BREACH OF CONTRACT – ELEMENTS
           OF LIABILITY [Disputed matter in brackets] ...................................... 23

     3.2   REQUIREMENT OF A CONTRACT/THE TEST FOR A
           REQUIREMENTS CONTRACT [Disputed matter in brackets] .......... 25

     3.3   COURSE OF PERFORMANCE, COURSE OF DEALING,
           OR USAGE OF TRADE  [Disputed matter in brackets] ..................... 28

     3.4   REQUIREMENT OF KNOWLEDGE  [AGREED] ............................ 29

| 3.5 | REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT [AGREED] | 30 |
|---|---|---|
| 3.6 | REQUIREMENT OF "MALICE"  (Pechiney Proposed Jury Instruction) | 31 |
| 3.7 | PROPER OR IMPROPER INTERFERENCE DEFINED [Disputed matter in brackets] | 32 |
| 3.8 | UNLAWFUL MEANS EMPLOYED (Cryovac Proposed Jury Instruction) | 33 |
| 3.9 | REQUIREMENT THAT THE BREACH BE PROXIMATELY CAUSED BY PECHINEY'S CONDUCT:  CAUSAL RELATIONSHIP GENERALLY  [Disputed matter in brackets] | 34 |
| 3.10 | BREACH DEFINED  [AGREED] | 35 |
| 3.11 | BREACH REQUIRED  [AGREED] | 36 |
| 3.12 | PROXIMATE CAUSE DEFINED  [Disputed matter in brackets] | 37 |
| 4. | TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE  [Disputed matter in brackets] | 38 |
| 4.1 | ELEMENTS OF LIABILITY  [Disputed matter in brackets] | 40 |
| 4.2 | EXISTENCE OF RELATIONSHIP – GENERALLY [Disputed matter in brackets] | 42 |
| 4.3 | KNOWLEDGE REQUIREMENT  [Disputed matter in brackets] | 43 |
| 4.4 | REQUIREMENT OF INTENT/INTENT DEFINED/ PROOF OF INTENT [Disputed matter in brackets] | 44 |
| 4.5 | REQUIREMENT OF "MALICE" (Pechiney Proposed Jury Instruction) | 45 |
| 4.6 | PROPER OR IMPROPER INTERFERENCE DEFINED [Disputed matter in brackets] | 46 |
| 4.7 | UNLAWFUL MEANS EMPLOYED (Pechiney proposed jury instruction) | 47 |
| 4.8 | CAUSATION REQUIREMENT [Disputed matter in brackets] | 48 |
| 4.9 | DAMAGE TO PLAINTIFF PROXIMATELY RESULTING FROM CONDUCT [AGREED] | 49 |
| 4.10 | COMPETITION AS PROPER OR IMPROPER INTERFERENCE [Disputed matter in brackets] | 50 |

5.    PATENT INSTRUCTIONS – VALIDITY ................................................................ 52

    5.1    VALIDITY [AGREED]................................................................................ 52

    5.2    PRESUMPTION OF VALIDITY (Cryovac Proposed Jury Instruction) ............ 53

    5.3    THE WRITTEN DESCRIPTION REQUIREMENT [AGREED] ...................... 54

    5.4    ENABLEMENT [Disputed matter in brackets]................................................. 55

    5.5    ANTICIPATION – GENERALLY [Disputed matter in brackets]....................... 57

    5.6    CLAIM CONSTRUCTION
           [Reflects Court's Claim Construction Rulings].................................................... 59

    5.6.1  LIMITATIONS OF THE CLAIM AT ISSUE
           [Alternative to Preserve Record on Appeal] ........................................................ 60

    5.7    "COMPRISING" [AGREED] ........................................................................ 61

    5.8    PRIOR ART – DATE OF INVENTION [Disputed matter in brackets] ............. 62

    5.9    PRIOR ART – BURDEN (Cryovac Proposed Jury Instruction) .......................... 64

    5.10   ANTICIPATION REQUIRES AN ENABLING DISCLOSURE
           (Cryovac Proposed Jury Instruction) .................................................................... 65

    5.11   OBVIOUSNESS [AGREED] ......................................................................... 66

    5.12   SCOPE AND CONTENT OF THE PRIOR ART [AGREED] ........................... 67

    5.13   DIFFERENCES OVER THE PRIOR ART [AGREED]...................................... 68

    5.14   LEVEL OF ORDINARY SKILL [AGREED] ................................................... 69

    5.15   MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS
           [AGREED]........................................................................................................ 70

    5.16A  OBVIOUSNESS – HINDSIGHT (Cryovac alternative) ..................................... 71

    5.16B  OBVIOUSNESS – HINDSIGHT (Pechiney alternative)..................................... 72

    5.17   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS [AGREED]......... 73

    5.18   OBVIOUS TO TRY [Cryovac's Proposed Jury Instruction] .............................. 75

    5.19   INDEPENDENT INVENTION BY OTHERS [AGREED]................................. 76

6.    PATENT DAMAGES ...................................................................... 77

    6.1    PATENT DAMAGES – GENERALLY  [AGREED] ......................................... 77

    6.2    COMPENSATORY PATENT DAMAGES IN GENERAL  [AGREED] ........... 78

    6.3    PATENT DAMAGES - BURDEN OF PROOF  [AGREED] ............................. 79

    6.4    DATE PATENT DAMAGES BEGIN  [AGREED] ........................................... 80

    6.5    TWO TYPES OF PATENT DAMAGES – LOST PROFITS
           AND REASONABLE ROYALTY  [AGREED] ................................................. 81

    6.6    PATENT LOST PROFITS – GENERALLY  [AGREED] .................................. 82

    6.7    PATENT LOST PROFITS – CRYOVAC'S COMPETING PRODUCT
           [AGREED]........................................................................................................ 83

    6.8A    PATENT LOST PROFITS – PANDUIT APPROACH
             [Disputed matter in brackets] ...................................................................... 84

    6.8B    DEMAND  [AGREED] ..................................................................................... 86

    6.9A    PATENT LOST PROFITS – ACCELERATED ENTRY/HEAD START
             (Cryovac Proposed Jury Instruction) ..................................................... 87

    6.9B    DATE DAMAGES END (Pechiney Proposed Jury Instruction) ........................ 89

    6.10    REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES
             [AGREED]........................................................................................................ 90

    6.11    FACTORS FOR DETERMINING REASONABLE
             ROYALTY FOR PATENT DAMAGES  [AGREED].......................................... 92

    6.12    PATENT DAMAGES INTEREST  [AGREED].................................................. 94

    6.13    CURATIVE INSTRUCTION  [AGREED].......................................................... 95

7.    DAMAGES FOR BUSINESS TORT CLAIMS ............................................... 96

    7.1    GENERALLY  [AGREED]................................................................................ 96

    7.2    DAMAGES:  IMPOSSIBILITY OF PRECISE CALCULATION NO
           BAR TO RECOVERY  [AGREED]................................................................... 97

    7.3    RECOVERABLE ELEMENTS OF DAMAGES
           [Disputed matter in brackets]................................................................ 98

7.4    DATE TORTIOUS INTERFERENCE DAMAGES BEGIN
(Pechiney Proposed Jury Instruction) .................................................................... 99

7.5    MITIGATION/LOST VOLUME SELLER......................................................... 100

8.    DELIBERATIONS AND VERDICT……………………………………………......102

DB01:2126702.1                                                                                                                063527.1001

## 1.    GENERAL INSTRUCTIONS

### 1.1    INTRODUCTION & JURORS' DUTIES[1]  [AGREED]

Members of the jury, now that you have heard all the evidence in the case, it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[1] The "Introduction" section (including the paragraphs on the duties of jurors) was taken from the Jury Instructions on Judge Jordan's Chambers website at pages 1-2.

DB01:2126702.1                                                                      063527.1001

### 1.2    DUTIES AS JURORS [AGREED]

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties. You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. You are the sole judges of the facts. It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide (1) whether Cryovac has shown by clear and convincing evidence that Pechiney's infringement is willful, (2) whether Pechiney has proven by clear and convincing evidence that claim 11 of the '419 patent is invalid, (3) whether Cryovac has shown by a preponderance of the evidence that Pechiney tortiously interfered with Cryovac's contract or contracts with National Beef; or its expectation of entering into a relationship with National Beef, and (4) the damages to which Cryovac is entitled.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them. You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy. You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. You must accept them despite how you feel about their wisdom. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

**Authority**:     Uniform Jury Instructions in the United States District Court for the District of Delaware.

DB01:2126702.1

063527.1001

### 1.3    EVIDENCE DEFINED[2]  [AGREED]

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[2] The "Evidence Defined" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at pages 2-3.

## 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE[3]   [AGREED]

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[3] The "Direct and Circumstantial Evidence" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 3.

## 1.5    CONSIDERATION OF EVIDENCE[4]  [AGREED]

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

Authority:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[4] The "Consideration of Evidence" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 4.

## 1.6    STATEMENTS OF COUNSEL[5] [AGREED]

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[5] The "Statements of Counsel" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 4.

## 1.7    CREDIBILITY OF WITNESSES[6]  [AGREED]

You are the sole judges of each witness's credibility.  You should consider each witness'
means of knowledge; strength of memory; opportunity to observe; how reasonable or
unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been
contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on
the witness stand; and all circumstances that, according to the evidence, could affect the
credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably
possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your
duty and privilege to believe the testimony that, in your judgment, is most believable and
disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself
whether there is evidence tending to prove that the witness testified falsely about some important
fact, or, whether there was evidence that at some other time the witness said or did something, or
failed to say or do something that was different from the testimony he or she gave at trial.  You
have the right to distrust such witness' testimony in other particulars and you may reject all or
some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that
the witness was not telling the truth.  People may tend to forget some things or remember other
things inaccurately.  If a witness has made a misstatement, you must consider whether it was

---

[6] The "Credibility of Witnesses" section is taken directly from the Jury Instructions on Judge
Jordan's Chambers website at pages 4-5.

simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

**Authority**:     Uniform Jury Instructions in the United States District Court for the District of Delaware.

## 1.8    EXPERT TESTIMONY[7]  [AGREED]

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

**Authority**:    Uniform Jury Instructions in the United States District Court for the District of Delaware.

---

[7] The "Expert Testimony" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at page 6.

063527.1001

## 1.9    NUMBER OF WITNESSES[8]  [AGREED]

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

---

[8] The "Number of Witnesses" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website.

DB01:2126702.1                                                                                                      063527.1001

## 1.10    BURDENS OF PROOF  [AGREED]

Cryovac must prove its claim of willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.  The burden to prove a fact by clear and convincing evidence is a heavier burden than the burden to prove that fact by a preponderance of the evidence.

Cryovac has the burden to prove that Pechiney tortiously interfered with Cryovac's contracts by a preponderance of the evidence.  That means Cryovac must produce evidence that, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not.  To put it differently, if you were to put Cryovac's and Pechiney's evidence on the opposite sides of a scale, the evidence supporting Cryovac's claims would have to make the scales tip somewhat on its side.

Pechiney is arguing that Cryovac's patent is not valid.  A patent, however, is presumed to be valid unless proven otherwise.  Accordingly, Pechiney has the burden to prove the '419 is not valid by clear and convincing evidence.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

**Authority**:    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 1.3, citing *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

DB01:2126702.1                                                                                              063527.1001

## 2.    PATENT INSTRUCTIONS – WILLFUL INFRINGEMENT

### 2.1    WILLFUL INFRINGEMENT  [Disputed matter in brackets]

Earlier in this case before the jury was convened, I considered what was covered by claim 11 of the '419 patent and then compared what the claim covered to the ClearShield® products Pechiney manufactures and sells.  I determined that Pechiney's ClearShield® products except DZ-9004-1 did, in fact, infringe claim 11 of Cryovac's '419 patent.

Cryovac contends that Pechiney's infringement was also "willful."  My determination that Pechiney infringed does not establish that Pechiney's infringement was willful.  Whether Pechiney's infringement was willful or not is an independent decision that you, the jury, must make.

When a company such as Pechiney becomes aware that a patent may have relevance to its activities, that company has a duty to exercise due care and investigate whether or not its activities infringe any valid claim of that patent [before the initiation of any possible infringing activity.][9]

---

[9] Pechiney proposes deletion of the clause "before the initiation of any possible infringing activity" from the instruction. *See, Transmatic, Inc. v. Gulton Indus., Inc.*, 849 F. Supp. 526, 537 (E.D. Mich. 1994), *aff'd in relevant* part, 53 F.3d 1270 (Fed. Cir. 1995); *see also, Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996) (affirming finding of no willful infringement after considering opinion letter where infringer did not consult patent attorney for eight months after receiving notice that it was infringing); *Polysius Corp. v. Fuller Co.*, 709 F. Supp. 560, 577 (E.D. Pa 1989).  This language is also inconsistent with the Court's ruling on Cryovac's Second Request *in Limine*.

Cryovac maintains that the clause is required by the following Federal Circuit authority: *Underwater Devices Inc. v. Morrison-Knudson Co.,* 717 F.2d 1380, 1389-1390 (Fed. Cir. 1983) ("Where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing . . . .  Such an affirmative duty includes, *inter alia*, the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity.") (emphasis in original). **(continued on next page)**

To establish willful infringement, Cryovac must prove two things with clear and convincing evidence:

1.      That Pechiney was aware of the '419 patent, and

2.      That Pechiney proceeded with its infringing activities without having a reasonable good faith belief [that the '419 patent was invalid or][10] that the patent was not infringed.

No single fact alone determines whether infringement was willful or not willful. To determine whether Pechiney acted with a reasonable good faith belief or whether Pechiney willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Pechiney in this trial and the following factors:

---

*Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 828 (Fed. Cir. 1989) (the "critical date" "employed in determining willfulness" was "the date infringement began" when infringer knew of patent before product launch); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1259 (Fed. Cir. 1997) ("The district court could only rely on those four opinions [of counsel] received prior to marketing [Defendant's] infringing [] product in determining the reasonableness of [the infringer's] actions."); *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals,* 149 F. Supp. 2d 659, 662, 663 (S.D. Ind. 2001) ("The willfulness of allegedly infringing activity is determined as of the date the activity began or the date on which the alleged infringer became aware of the patent, whichever is later.") (citing *Jurgens v. McKasy,* 927 F.2d 1552, 1562 (Fed. Cir. 1991)).

The cases cited by Pechiney do not hold the contrary. Rather, they stand for the proposition that "the issue of willfulness raises questions of credibility as well as weight, and findings thereon are not readily reversed." *Sensonics, supra,* 81 F.3d at 1571.

This language is also consistent with the Court's ruling on Cryovac's Second Request in *Limine.* D.I. 341 at 22 ("So, if I understand the state of the law, it is you can't have just after-the-fact opinions because the Court won't accept that since you start measuring at the time of notice.")

[10] Cryovac proposes the deletion of the clause "that the '419 patent was invalid or" because Pechiney only relied on non-infringement opinions as was acknowledged by Pechiney's counsel at the May 25, 2006 Pretrial Conference [D.I. 341 at 10-11 and 22]. Pechiney maintains that the statement should be included. It represents settled law and was taken from the 2004 Uniform Jury instructions for Patent Cases in the U.S. District Court for the District of Delaware, Instruction 3.13. Whether or not Pechiney received an opinion of invalidity, the jury can still infer that Pechiney had a good faith belief that the patent was invalid.

- 14 -

1.     In designing the product accused of infringement, whether Pechiney intentionally copied Cryovac's invention as described in the '419 patent or whether Pechiney instead tried to "design around" the patent by designing a product that Pechiney believed did not infringe the patent claims. Evidence of copying can be evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims, even if unsuccessful, can be evidence that the infringement was not willful.

2.     When Pechiney became aware of the patent, whether Pechiney formed a good faith belief [that the patent was invalid or][10] that the patent was not infringed, including whether Defendant obtained and followed the advice of a competent lawyer [before the initiation of any possible infringing activity.][11] The obtaining and following of counsel's advice may be evidence that infringement was not willful.

---

[11] Pechiney proposes deletion of the clause "before the initiation of any possible infringing activity" from the instruction. *See, Transmatic, Inc. v. Gulton Indus., Inc.*, 849 F. Supp. 526, 537 (E.D. Mich. 1994), *aff'd in relevant* part, 53 F.3d 1270 (Fed. Cir. 1995); *see also, Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1571 (Fed. Cir. 1996) (affirming finding of no willful infringement after considering opinion letter where infringer did not consult patent attorney for eight months after receiving notice that it was infringing); *Polysius Corp. v. Fuller Co.*, 709 F. Supp. 560, 577 (E.D. Pa 1989). This language is also inconsistent with the Court's ruling on Cryovac's Second Request *in Limine*.

Cryovac maintains that the clause is required by the following Federal Circuit authority: *Underwater Devices Inc. v. Morrison-Knudson Co.*, 717 F.2d 1380, 1389-1390 (Fed. Cir. 1983) ("Where, as here, a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing .... Such an affirmative duty includes, *inter alia*, the duty to seek and obtain competent legal advice from counsel *before* the initiation of any possible infringing activity.") (emphasis in original); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 828 (Fed. Cir. 1989) (the "critical date" "employed in determining willfulness" was "the date infringement began" when infringer knew of patent before product launch); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1259 (Fed. Cir. 1997) ("The district court could only rely on those four opinions [of **(continued on next page)**

- 15 -

3.    [Whether Pechiney actually relied on the legal opinions it obtained as

legitimate advice as to whether ClearShield products infringed Cryovac's

patent, or whether Pechiney merely sought the legal opinions for their

potential evidentiary value in future litigation, which could suggest that

Pechiney did not rely on the opinions of counsel in good faith and may be

evidence that infringement was willful.][12]

4.    [Whether Pechiney learned of the '419 patent through its own diligence or

only by notice from Cryovac is a relevant factor in the totality of the

circumstances determining willfulness.][13]

---

counsel] received prior to marketing [Defendant's] infringing [] product in determining the
reasonableness of [the infringer's] actions."); *Eli Lilly and Co. v. Zenith Goldline
Pharmaceuticals*, 149 F. Supp. 2d 659, 662, 663 (S.D. Ind. 2001) ("The willfulness of allegedly
infringing activity is determined as of the date the activity began or the date on which the alleged
infringer became aware of the patent, whichever is later.") (citing *Jurgens v. McKasy*, 927 F.2d
1552, 1562 (Fed. Cir. 1991)).

The cases cited by Pechiney do not hold the contrary. Rather, they stand for the
proposition that "the issue of willfulness raises questions of credibility as well as weight, and
findings thereon are not readily reversed." *Sensonics, supra*, 81 F.3d at 1571.

This language is also consistent with the Court's ruling on Cryovac's Second Request in
*Limine*. D.I. 341 at 22 ("So, if I understand the state of the law, it is you can't have just after-
the-fact opinions because the Court won't accept that since you start measuring at the time of
notice.")

[12] Cryovac proposes the addition of this subparagraph 3 to reflect the Federal Circuit's decision
in *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed.
Cir. 2006) ("Mr. Bremer also offered additional testimony from which a jury could have inferred
that he did not rely on the legal opinions as legitimate advice as to whether Versaport II
infringed, but rather sought legal opinions for their potential evidentiary value on the issue of
willful infringement in future litigation. This could have suggested to the jury that U.S. Surgical
did not rely on any opinions of counsel in good faith."). Pechiney maintains that this paragraph
should be excluded because it is unbalanced and prejudicial and because no evidence has been
presented that the opinions of counsel Pechiney received were only sought for their evidentiary
value.

[13] Pechiney proposes the addition of this subparagraph 4 to reflect the following case law: *Braun,
Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 823 (Fed. Cir. 1992); *Studiengesellschaft Kohle*
**(continued on next page)**

- 16 -

>   5.     [Whether Pechiney applied for its own patents on its products is a relevant
>
>   factor you should consider in your determination of willfulness.][14]

---

*m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987); *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988). Cryovac's own case, *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997), emphasizes the relevance of a defendant's inquiry as evidence of good faith: "[T]he primary consideration is whether the infringer, acting in good faith and *upon due inquiry*, had sound reason to believe that it had the right to act in the manner that was found to be infringing."

Cryovac objects to this instruction because it is inconsistent with recent Federal Circuit precedent, which focuses the willfulness inquiry on whether the infringer had a good faith basis for believing that its conduct would not violate another's patent and not on how the infringer learned of the patent. *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997) ("[T]he primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing.").

[14] Pechiney proposes the addition of this subparagraph 5 to reflect the following case law: *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985); *Union Carbide Corp. v. Tarancon Corp.*, 742 F. Supp. 1565, 1576 (N.D. Ga. 1990); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987); *aff'd*, 862 F.2d 1564 (Fed. Cir. 1988).

Cryovac objects to this instruction because it is not applicable to the facts of this case and therefore is unnecessary and potentially confusing to the jury. See Proposed Pretrial Order, Exhibit 3 at pages 7-9 wherein Pechiney set forth its expected proofs regarding the willfulness issue. This section does not contain any proof regarding any Pechiney patents. Moreover, no legal opinion Pechiney obtained suggested that Pechiney was justified in believing that it was not infringing Cryovac's patent because Pechiney had its own patents covering the infringing product.

Pechiney's proposed instruction is also a misstatement of the law on this issue and is misleading. Pechiney states that: "Whether Pechiney **applied for** its own patents on its products is a relevant factor you should consider in your determination of willfulness." [emphasis added.] However, **all three** cases cited by Pechiney as authority for this proposed instruction only discuss an infringer's belief based on its own **issued patents** and "patentably distinct claims"– not merely patent **applications** that have only been filed. Contrary to the authority cited by Pechiney, in the present case Pechiney **abandoned** all of the patent applications it filed with the U.S. Patent Office that Pechiney argues covered its infringing product, and consequently none of those applications ever resulted in a valid, issued patent with any "patentably distinct claims." Therefore, the jury instruction is inapposite. Pechiney's instruction is also inconsistent with Federal Circuit precedent, which focuses the willfulness inquiry on whether the infringer had a good faith basis for believing that its conduct would not violate another's patent and not on how the infringer learned of the patent. *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997) ("[T]he primary consideration is whether the infringer, **(continued on next page)**

## 2.2    ADVICE OF COUNSEL  [AGREED]

One consideration in your determination of whether or not Pechiney's infringement was willful is whether Pechiney obtained and followed the competent advice of a lawyer. The obtaining and following of a lawyer's advice can be evidence that infringement was not willful.

In evaluating Pechiney's reliance on the advice of a lawyer, you should consider when Pechiney obtained the advice, the quality of the information Pechiney provided to the lawyer, the competence of the lawyer's opinion, and whether or not Pechiney relied in good faith upon the advice.

Advice is competent if it was based upon a reasonable examination of the facts and law relating to infringement issues, consistent with the standards and practices generally followed by competent lawyers. You should consider both the qualifications of the person giving the opinion and the content of the opinion.

Reliance on a lawyer's opinion was reasonable if the opinion provided the kind of analysis that would give the defendant confidence that a proper opinion had been reached. Because lawyers' opinions usually describe infringement in terms of probabilities rather than certainties, reliance on an opinion stating that a product might be found to infringe a patent would not necessarily be unreasonable.

That Pechiney's lawyer's opinion on infringement of the '419 patent turned out to be different from my determination on infringement does not make the lawyer's advice regarding the '419 patent incompetent. Whether or not the lawyer may have made errors in reaching the conclusion, or factors justifying the opinion may later have been shown to be incorrect may or

---

acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing.").

may not be relevant to a determination that reliance on the lawyer's advice was or was not

reasonable.

**Authority:**    1993 USDC Del. § 3.18 [generally]; 2004 IPAS Del. § 3.13 [generally]; ABA § 8 [generally]; *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 n.9, 830 (Fed. Cir. 1992); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 666 F. Supp. 674 (D. Del. 1987), aff'd , 862 F.2d 1564 (Fed. Cir. 1988).

**2.3     WILLFUL INFRINGEMENT – GOOD FAITH RELIANCE[15]**
**(Cryovac Proposed Jury Instruction)**

To defend against willful infringement, in addition to obtaining a competent opinion of

counsel prior to the start of the infringing activity, the infringer must rely on that competent

opinion in good faith when proceeding with the infringing activities.

The primary consideration is whether the infringer, acting in good faith and upon due

inquiry, had sound reason to believe that it had the right to act in the manner that was found to be

infringing.

The timing of the opinion of counsel can play a role in whether the infringer reasonably

relied on the opinion of counsel.  [For example, if the opinion is obtained after the infringing

---

[15] Cryovac maintains that this jury instruction is needed in light of the following Federal Circuit
authorities:  *SRI Intern., Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1464-65
(Fed. Cir. 1997) ("[T]he primary consideration is whether the infringer, acting in good faith and
upon due inquiry, had sound reason to believe that it had the right to act in the manner that was
found to be infringing."); *Underwater Devices Inc. v. Morrison-Knudson Co.,* 717 F.2d 1380,
1389-1390 (Fed. Cir. 1983) ("Where, as here, a potential infringer has actual notice of another's
patent rights, he has an affirmative duty to exercise due care to determine whether or not he is
infringing . . . .  Such an affirmative duty includes, *inter alia,* the duty to seek and obtain
competent legal advice from counsel *before* the initiation of any possible infringing activity.")
(emphasis in original); *Applied Medical Resources Corp. v. United States Surgical Corp.,* 435 F.3d
1356, 1365 (Fed. Cir. 2006) ("Mr. Bremer also offered additional testimony from which a jury
could have inferred that he did not rely on the legal opinions as legitimate advice as to whether
Versaport II infringed, but rather sought legal opinions for their potential evidentiary value on the
issue of willful infringement in future litigation.  This could have suggested to the jury that U.S.
Surgical did not rely on any opinions of counsel in good faith.").
     Pechiney contends that the two examples in this instruction should be excluded.  The first
example, in the second sentence of the third paragraph, is unnecessary and contrary to the Court's
ruling on Cryovac's Second Request in *Limine.*  The second example, in the fourth paragraph, is
unnecessary, and Cryovac has presented no evidence related to this example.
     Cryovac responds that this language is consistent with the Court's ruling on Cryovac's
Second Request in *Limine.*  D.I. 341 at 22 ("So, if I understand the state of the law, it is you can't
have just after-the-fact opinions because the Court won't accept that since you start measuring at
the time of notice.")

activity begins, it cannot have been reasonably relied upon before beginning the infringing activity.

Another example of not relying on the opinion of counsel in good faith is if Pechiney paid little attention to the opinion letters or was not concerned about its potential infringement, but rather sought legal opinions for their potential evidentiary value on the issue of willful infringement in future litigation.  This could suggest that the infringer did not rely on the opinions of counsel in good faith.]

- 21 -

3.    **TORTIOUS INTERFERENCE WITH CONTRACT [AGREED]**

I will now instruct you on the tortious interference claims in this case.

In addition to its claims against Pechiney for patent infringement, Cryovac also contends that Pechiney interfered with two contracts between Cryovac and National Beef.

The law recognizes that one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Cryovac alleges that Pechiney tortiously interfered with two separate packaging contracts that existed between Cryovac and National Beef, one dated March 2003 and one dated January 2004, both of which obligated National Beef to purchase the goods identified in the contracts from Cryovac.

Pechiney contends that Cryovac and National Beef were not operating under any binding contract. Pechiney also contends that even if Cryovac and National Beef had a valid contract, Pechiney had no knowledge of this contract. Pechiney further contends that Pechiney's conduct was proper.

**Authority:**    *See e.g.*, American Bar Association, *Model Jury Instructions: Business Torts Litigation*, §§ 1.1-1.8, at 3-8 (4th ed. 2005); Restatement (Second) of Torts (1979), § 766.

**3.1     INDUCING BREACH OF CONTRACT – ELEMENTS OF LIABILITY**
**[Disputed matter in brackets]**

For Cryovac to recover on this claim against Pechiney, Cryovac must prove, by a preponderance of the evidence, that each of the following six elements have been met:

1.     At the time of Pechiney's acts, there was at least one binding contract between Cryovac and National Beef, dated March 2003 and/or January 2004;

2.     Pechiney either knew of the existence or, under the circumstances, should have known of the existence, of at least one contract between Cryovac and National Beef;

3.     That the acts of Pechiney in inducing National Beef to breach at least one contract with Cryovac were intentional within the meaning of the word intent, which I will provide you with later in my instructions;

4.     That the conduct of Pechiney was improper under the factors I will instruct you to consider;

5.     That, as a proximate result of Pechiney's conduct in [willfully and maliciously][16] infringing Cryovac's '419 patent, National Beef was induced to breach at least one contract with Cryovac; and

---

[16] Pechiney maintains that this language should be included in the instruction because Cryovac must show that Pechiney acted willfully and maliciously and because mere innocent infringement is not sufficient to satisfy this element. *See L & M Enter., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000); *Dodson Aviation, Inc. v. Raytheon*, 124 P.3d 1083 (Table), 2005 WL 3527064, *8 (Ct. App. Kan. Dec. 13, 2005). Pechiney contends that Cryovac is unable to cite any case law in which a court has found that an innocent violation of a statute that provides for strict liability was sufficient to show that the conduct was improper for tortious interference.

Cryovac disagrees. In its submission to the Court dated May 24, 2006, Cryovac demonstrated that it is not required to show that Pechiney acted willfully or maliciously. [D.I. **(continued on next page)**

6.      That, as a direct and proximate result of Pechiney's infringement, Cryovac was

damaged.

I will now explain each of these elements.

**Authority:**      American Bar Association, *Model Jury Instructions: Business Torts Litigation,*
§ 1.3.1 (Inducing Breach of Contract: Elements of Liability: Generally), at 8 (4th ed. 2005).

---

336] The Court rejected Pechiney's argument that Cryovac must show that Pechiney acted with
actual malice. [D.I. 342] That aspect of the decision was not changed by the Court's later
decision on Pechiney's Motion for Clarification. [D.I. 348]

### 3.2    REQUIREMENT OF A CONTRACT/THE TEST FOR A REQUIREMENTS CONTRACT [Disputed matter in brackets]

One of the elements Cryovac must prove to prevail on its tortious interference with contract claim against Pechiney is that Cryovac was party to at least one binding contract with National Beef that was in effect at the time of Pechiney's alleged interference, and that at least one contract was breached as a result of Pechiney's infringement.

A contract may be defined simply as an oral or written agreement, which the law will enforce, to do or not do a particular thing. If all of the basic elements required by law for there to be a binding contract are present, [including at least the quantity of goods the buyer agrees to purchase from the seller, or that the buyer is required to buy all of its requirements of the goods identified in the contract exclusively from the seller][17] a contract is deemed valid. A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties.

To determine whether at least one contract existed between Cryovac and National Beef, the first question you must answer is whether the parties intended to enter into a contract. [This inquiry should be conducted from the vantage point of an objectively reasonable person in the position of the contracting parties.][18] To determine intent, you may look to the language the

---

[17] Cryovac disagrees with the language stating that the contract must contain a quantity term. Here, UCC § 2-201 (the statute of frauds provision) does not apply. The statute of frauds was not plead in this action or raised in response to Cryovac's contention interrogatories. Moreover, as a third-party to the contract or contracts between Cryovac and National Beef, Pechiney would not have standing to raise this defense to enforceability in any event. *See* UCC § 2-201, cmt. 4, F.R.C.P. 8(c).

Pechiney believes that this language based on U.C.C. §§ 2-201, cmt. 1 and 2-306, should be included in the instruction because it is a concise and correct statement of the law.

[18] Cryovac contends that this language is proper because contract interpretation is based on an objective theory. *See SBC Interactive, Inc. v. Corporate Media Partners,* 1997 Del. Ch. LEXIS **(continued on next page)**

- 25 -

parties used during the negotiations and in the agreement, including the parties' course of

dealing, course of performance, [and] trade usages in the industry, [and any other evidence

presented at this trial].[19]

Here, Cryovac alleges that it had two requirements contracts with National Beef. [The

test for whether a parties' contract is a requirements contract is [whether the contract objectively

demonstrates that][20] the buyer committed to purchase all or some portion of its requirements of

the identified goods from the seller. The promise to purchase exclusively from one supplier may

---

180, at *13, note 13 (Del. Ch. Dec. 24, 1997). Subjective understanding of contractual intent is
not relevant to proving the parties' objective manifestation of intent. *See also Nycal Co. v. Inoco
P.L.C.*, 988 F. Supp. 296, 302 (S.D.N.Y. 1997). In contrast, other types of extrinsic evidence –
such as course of dealing, course of performance, and trade usages, are objective and therefore
(where appropriate) acceptable forms of extrinsic evidence.
    Moreover, Pechiney cannot raise its new "subjective understanding" theory at this late
stage. That theory was not disclosed in discovery or the Pre-Trial Order. Finally, throughout its
direct examinations, Cryovac has been careful not to frame questions in such a way as to elicit
evidence of "subjective" contractual understanding. Pechiney opened the door to such testimony
during cross-examination. While such evidence may be proper for certain purposes, proof of
contractual meaning is not one of those purposes.
    Pechiney contends that this language should be excluded because it does not match the
evidence that has been presented by both parties in this case. The Court has found that the
alleged agreements here are ambiguous, and has allowed the jury to consider extrinsic evidence
of the facts and circumstances surrounding the alleged formation of a contract. (Trial Tr. 767:2-
768:9). *See Audiotext Comms. Network, Inc. v. US Telecom, Inc.*, Civ. A. No. 94-23 95-CTV,
1995 WL 36543, *4 (D. Kan., Jan. 9, 1995). Cryovac waived any objection to extrinsic evidence
of the subjective understanding of the contracting parties by presenting the same sort of evidence
in its case.

[19] Cryovac's position that subjective understanding – which Pechiney seeks to use to prove
contractual meaning -- is not relevant to contractual understanding as set forth above. *See id.*
    Pechiney maintains that this language should be included because the Court has found
that the alleged agreements here are ambiguous, and has allowed the jury to consider extrinsic
evidence of the facts and circumstances surrounding the alleged formation of a contract. (Trial
Tr. 767:2-768:9). *See Audiotext Comms. Network, Inc. v. US Telecom, Inc.*, Civ. A. No. 94-23
95-CTV, 1995 WL 36543, *4 (D. Kan., Jan. 9, 1995). Cryovac waived any objection to extrinsic
evidence of the subjective understanding of the contracting parties by presenting the same sort of
evidence in its case. This language is therefore consistent with the evidence that will have been
presented to the jury.

[20] Cryovac's position is set forth in note 18. Pechiney's position is set forth in note 18, *supra*.

be implicit or explicit. No specific words are required to create a requirements contract. The test is what the parties [objectively] agreed. As I explained, to determine what the parties [objectively] agreed, you may look to the language of the alleged contracts, the parties' communications while negotiating the contracts, as well as other types of circumstances such as course of dealing, course of performance, [and] trade usages in the industry [and any other evidence presented at this trial.][21] The appropriate question therefore is whether, based on all these types of evidence [objectively reasonable] persons in the position of Cryovac and National Beef would understand that they were entering into a requirements contract or contracts].[22]

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.1.a (Requirement of a Contract) at 10 (4th ed. 2005) [modified]; UCC § 2-201, cmt. 1; UCC § 2-306 UCC § 1-303.

---

[21] Cryovac's position is set forth in note 18, *supra.* Pechiney's position is set forth in note 19, *supra.*

[22] Cryovac asserts that this language relating to a requirements contract is both legally accurate and necessary to help the jury focus on the central issue: whether a requirements contract exists.

　　Pechiney maintains that this section of the instruction is unnecessary and confusing to the jury because it is duplicative of the language proposed by Pechiney in the second paragraph of this instruction. Pechiney's language is more concise and is a correct statement of the law based on Sections 2-201, cmt. 1, and 2-306 of the U.C.C.

### 3.3    COURSE OF PERFORMANCE, COURSE OF DEALING, OR USAGE OF TRADE  [Disputed matter in brackets]

A course of performance or course of dealing between the parties or usage of trade may be used to ascertain whether the parties intended to enter into an agreement, the meaning of the parties' agreement, the meaning of specific terms of the agreement, and may supplement or qualify the terms of the agreement.  This inquiry should be conducted from the vantage point of [an objectively reasonable person in the position of][23] the contracting parties.

A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

A "usage of trade" is any practice or method of dealing having such regularity of observance in a place or trade as to justify an expectation that it will be observed with respect to the transaction in question.

**Authority**:    UCC, Section 1-303(a), (b) (c), (e) and (f).

---

[23] Cryovac contends that this language is necessary to convey the proper legal standard:  that the contract should be interpreted by an "objective" standard.  *See* note 18, *supra.*

Pechiney contends that this language should be excluded for the reasons set forth in note 18, *supra.*

### 3.4    REQUIREMENT OF KNOWLEDGE [AGREED]

To find for Cryovac, you must also find that Pechiney knew of the existence of at least

one contract between Cryovac and National Beef.  The requirement of knowledge may be found

to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should

have known of the existence of at least one contractual relationship between Cryovac and

National Beef.  This is sometimes referred to as "constructive knowledge."

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*,
§ 1.3.2 (Requirement of Knowledge) at 15 (4th ed. 2005); Cryovac submits that the following
cases are instructive on the issue of knowledge:  *Professional Investors Life Ins. Co., Inc. v.
Roussel*, 528 F. Supp. 391, 398 (D. KS. 1981) (finding "sufficient evidence from which
defendant's knowledge of plaintiff's contract" could be inferred for purposes of tortious
interference claim; evidence included facts such as defendants' business and social
relationships.); *D56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 916 (N.D. Ill. 1997); *Guard-Lite
Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E. 2d 445, 450 (N.Y. 1980); *Howard v.
Youngman*, 81 S.W. 3d 101,114 (Mo. Ct. App. 2002) (facts and circumstances known to
defendant may be sufficient to find knowledge despite a lack of knowledge of particulars of
contract).

Pechiney contends that the following cases are instructive:  *DP-Tek, Inc. v. AT&T Global
Info. Solutions Co.*, 891 F. Supp. 1510, 1519-20 (D. Kan. 1995); *Preston v. Preston*, 823 S.W.2d
48, 49-50 (Mo. Ct. App. 1991).

063527.1001

### 3.5    REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT [AGREED]

Cryovac must show that Pechiney intended to induce National Beef to breach at least one contract with Cryovac. Conduct is intentional if it was done deliberately, with the purpose of inducing National Beef to breach at least one contract with Cryovac. If you find that Pechiney's conduct was not intentional, then you must find for Pechiney.

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act. Ordinarily it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence. Although witnesses may see and hear, and be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing.

Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of contrary evidence, draw an inference that Pechiney, by Pechiney's conduct, intended the natural and probable consequences of its acts.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, §§ 1.3.3.b; 1.3.3.a, at 17; § 1.3.3.c, at 19 (4th ed. 2005).

### 3.6    REQUIREMENT OF "MALICE"  (Pechiney Proposed Jury Instruction)

[To find for Cryovac, you must find that Pechiney acted with malice.  Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse — [that is, the willful violation of a known right].[24]  In proving malice, it is not necessary for Cryovac to prove that Pechiney acted with hatred, ill will, or spite.][25]

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.3.3.d (4th ed. 2004) [modified].

---

[24] Even if malice were an element of the tort, Cryovac contends that this is an improper statement of the standard.  The proper statement is set forth in the Court's instruction 3.7 regarding "Proper or Improper Interference Defined." *See, e.g., OMB Police Supply Inc. v. Elbeco, Inc.,* 2001 U.S. Dist. LEXIS 8310 at *13 (D. Kan. May 10, 2001).  Even under Kansas law (the only potentially applicable jurisdiction to require malice) any requirement that Cryovac prove malice can be satisfied by proof of "wrongful means" alone.  The requested language is unbalanced and prejudicial.
    Pechiney maintains that the language should be included because it is a part of Instruction 1.3.3.d of the ABA Model Jury Instructions and for the reasons stated in note 16, *supra.*

[25] Pechiney contends that Instruction 1.3.3.d of the ABA Model Jury Instructions should be included in the instructions for the reasons set forth in note 16, *supra.*  Pechiney relies on the following case: *L & M Enter., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284 (10th Cir. 2000).
    Cryovac contends that this instruction is an improper statement of the law. *See also* Cryovac's submission to the Court, dated May 24, 2006, and the cases cited therein. [D.I. 336].

### 3.7    PROPER OR IMPROPER INTERFERENCE DEFINED  [Disputed matter in brackets]

The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.    The nature of Pechiney's conduct, [including whether Pechiney willfully and maliciously infringed Cryovac's patent];[26]

2.    Pechiney's motives for its conduct;

3.    The interests of Cryovac with which Pechiney's infringement interfered;

4.    The interests sought to be advanced by Pechiney;

5.    The social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6.    The proximity or remoteness of Pechiney's infringement to the interference claimed by Cryovac; and

7.    The relationship among Cryovac, National Beef, and Pechiney.

How you balance these various factors and the weight, if any, you decide to give to each, is for you to decide.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined), at 35-37 (4th ed. 2005); *See* Restatement (Second) of Torts, § 767.

---

[26] Cryovac contends that this language should be excluded, insofar as willful and malicious infringement is not an element of this tort. *See id.* and Cryovac's May 24, 2004 submission to Court [D.I. 336]. The requested language is also repetitive, unbalanced and prejudicial.

Pechiney contends that this language should be included for the reasons stated *supra* at note 16.

- 32 -

**3.8     UNLAWFUL MEANS EMPLOYED (Cryovac Proposed Jury Instruction)**

[Should you find that the means employed by Pechiney to interfere with the contractual relationship between Cryovac and National Beef were unlawful in and of themselves, then you may find that Pechiney's conduct was improper.][27]

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3. (Unlawful Means Employed), at 37 (4th ed. 2005).

---

[27] Cryovac contends that this instruction should be included, as per the cited ABA model instruction, § 767 cmt. c of the Restatement (Second) of Torts, and this Court's May 25, 2006 Order, at 3 (finding that, even under Kansas law, "Cryovac can establish that Pechiney acted without justification by showing that Pechiney engaged in 'conduct specifically in violation of statutory provisions or contrary to established public policy.' ") [D.I. 342]

Pechiney objects to this instruction because Pechiney's infringement should be balanced with the other factors related to whether its conduct is improper, as set forth in Instruction 3.7. Pechiney objects to this instruction because it is duplicative of Instruction 3.7 as proposed by Pechiney. Furthermore, the language "unlawful in and of themselves" is vague and prejudicial.

063527.1001

**3.9     REQUIREMENT THAT THE BREACH BE PROXIMATELY CAUSED BY PECHINEY'S CONDUCT:  CAUSAL RELATIONSHIP GENERALLY [Disputed matter in brackets]**

You, the jury, must determine whether Pechiney was responsible for the refusal of National Beef to perform at least one contract with Cryovac.  This means that, before you can decide in favor of Cryovac, you must find, by a preponderance of the evidence that, but for [willful and malicious][28] infringement by Pechiney of Cryovac's '419 patent, at least one contract that was not performed would otherwise have been performed.

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.c (Causal Relationship: Generally), at 26 (4th ed. 2005).

---

[28] Cryovac contends that this language should not be included insofar as willful and malicious infringement is not an element of this tort.  *See* note 24, *supra.*

Pechiney contends that this language should be included for the reasons stated *supra* at note 16.

### 3.10    BREACH DEFINED  [AGREED]

Breach of contract means the failure of a party to a contract to perform any promise that forms the whole or part of the contract.  A breach may occur with regard to either an express or implied provision of the contract.  An express provision is one that is specially agreed to by the parties either orally or in writing.  An implied provision is one that is recognized by the parties to exist and bind them in their actions despite the fact that it was not specifically spelled out or agreed to by the parties to the contract.  An implied provision often arises out of terms that were expressly set forth in the contract and agreed to by the parties, and an implied promise constitutes a valid part of the contract.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.a (Breach Defined), at 24 (4th ed. 2005).

DB01:2126702.1                                                          063527.1001

### 3.11    BREACH REQUIRED  [AGREED]

For Cryovac to prevail on its claim against Pechiney, you must find that at least one of the contracts in question has been breached.  This means you must find that National Beef failed to perform as agreed under at least one of the contracts either by virtue of the express conditions of the contract or as may be implied from the express provisions, in accordance with the definitions of express and implied contractual provisions for which I have already instructed you.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.b (Breach Required), at 25 (4th ed. 2005)

### 3.12    PROXIMATE CAUSE DEFINED  [Disputed matter in brackets]

If you find that Cryovac did suffer the losses claimed, you must then determine whether Pechiney's [willful and malicious][29] infringement of the '419 patent was the proximate cause of Cryovac's loss or damage.

In this regard, Pechiney's infringement will be considered to be the proximate cause of Cryovac's loss or damage if the infringement was a substantial factor in causing that loss or damage.  It need not be the only cause.

The conduct will be a substantial factor in causing loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss or damage, considering a number of other contributing factors, such as whether Pechiney's infringement created a condition or chain of events that was continuous and active up to the time of the damage to Cryovac, and the lapse of time between Pechiney's infringement and the damage to Cryovac.

Should you find Pechiney liable for procuring or causing a breach of Cryovac's contract, you will then determine the damages that Cryovac is entitled to under the instructions I will give you.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.4.d at (Breached Defined), 24 and § 1.5.1 (Compensatory Damages), at 46 (4th ed. 2005) [modified].

---

[29] Cryovac objects to this language, for the reasons set forth in note 24, *supra*.  Pechiney believes that the language should be included for the reasons stated *supra* at note 16.

4.    **TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**
**[Disputed matter in brackets]**

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference, and is entitled to the protection of organized society, through the courts, whenever that right is unlawfully invaded.

In this case, if you find that Cryovac did not form a contract with National Beef in January, 2004, Cryovac seeks to recover money damages from Pechiney for alleged interference with Cryovac's prospective contractual relations with National Beef. That is, Cryovac contends that, because of Pechiney's [malicious and willful infringement][30], Cryovac was prevented from [a business opportunity with National Beef/entering into a four-year requirements contract for various food packaging products with National Beef as of January 14, 2004][31], and as a result Cryovac suffered monetary loss. The question for you to decide is whether Cryovac's right to such an expectancy has in fact been invaded and whether, under all the factors I will instruct you to consider, any such invasion was improper.

---

[30] Cryovac objects to this language for the reasons stated at note 24, *supra*. Pechiney contends that this language should be included for the reasons stated in note 16, *supra*.

[31] Pechiney contends that the language must refer to a prospective contractual relationship, rather than a "business" relationship. Cryovac has not presented evidence relating to alleged tortious interference with any "business" relationship between Cryovac and National Beef other than a four year requirements contract. Indeed, in the Pretrial Order, Cryovac took the position, with respect to its prospective contractual relations claim, that it would prove the expectation of a requirements contract. (*See*, D.I. 308, Ex. 2 at 7.) Furthermore, the language Cryovac proposes is vague, confusing to the jury and prejudicial.
  Cryovac contends that its burden is to demonstrate that Pechiney interfered with a reasonable probability of a business expectancy with National Beef. This is consistent with the ABA Model Rules, as well as the same Exhibit to the Pre-trial Order that Pechiney relies upon. (*See*, D.I. 308, Ex. 2 at 7.) ("Cryovac will prove that it had a reasonable probability of a business relationship with National Beef.")

063527.1001

In these charges, I will give you the applicable legal principles upon which you are to determine this question.

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.1, (Theory of Interference with Prospective Advantage), at 70 (4th ed. 2005).

**4.1     ELEMENTS OF LIABILITY  [Disputed matter in brackets]**

To find liability for interference with prospective contractual advantage, you, the jury, must find from a preponderance of the evidence:

1.     Cryovac had a reasonable expectancy of entering into a [business opportunity with National Beef/that it would have secured a binding four-year requirements contract with National Beef in the future];[32]

2.     Pechiney knew or should have known of this expectancy of contractual relationship between Cryovac and National Beef;

3.     Pechiney acted intentionally to prevent the [business opportunity/Cryovac from getting a binding four-year requirements contract] with National Beef[33];

4.     Pechiney's conduct was improper under the factors I will instruct you to consider;

5.     Pechiney's conduct caused the loss of the [business opportunity/four-year requirements contract] with National Beef; and

---

[32] Pechiney contends that this language should reference a four-year requirements contract. Cryovac has not presented evidence relating to alleged tortious interference with any business opportunity or expectancy other than a four-year requirements contract with National Beef. In the Pre-Trial Order, Cryovac took the position, with respect to its prospective contractual relations claim, that it would prove the expectation of a requirements contract. (*See*, D.I. 308, Ex. 2 at 7.)  Furthermore, the language Cryovac proposes is vague, confusing to the jury and prejudicial.
     Cryovac's position is set forth at note 31, *id.*

[33] Pechiney's position is set forth at note 32, *supra.*  Cryovac's position is set forth at note 31, *supra.*

6.   Pechiney's [willful and malicious][34] infringement of Cryovac's '419 patent proximately caused Cryovac to [lose its business expectancy/not secure a four-year requirements contract] with National Beef.

If you find that Pechiney has proved each of these elements by a preponderance of the evidence, then you will consider the question of the amount of money damages under instructions I will give you.

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.2.2 (4th ed. 2005) [modified].

---

[34] Pechiney contends that this language should be included for the reasons stated at note 16, *supra.*
     Cryovac's position is set forth in note 24, *supra.*

## 4.2    EXISTENCE OF RELATIONSHIP – GENERALLY
### [Disputed matter in brackets]

Cryovac contends that at the time of Pechiney's conduct, there existed an expectancy of a [business opportunity/expectation of a binding four-year requirements contract][35] between Cryovac and National Beef.  You must first determine whether such an expectancy existed.

In determining this question, the expectancy need not be evidenced by a contract.  It is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct between Cryovac and National Beef from which there would be a reasonable expectation of [future economic benefit/a future four-year requirements contract] between Cryovac and National Beef.  Cryovac must show this expected benefit with some degree of specificity, such that it is  a realistic expectation, but it need not be shown with certainty, because prospective things in nature are necessarily uncertain.  The law requires more than a mere hope of optimism; what is required is a reasonable likelihood or probability.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.3.1 (Existence of Relationship), at 72 (4th ed. 2005) [modified].

---

[35] Cryovac's position is set forth at note 31, *supra.*  Pechiney's position is set forth at note 32, *supra.*

## 4.3     KNOWLEDGE REQUIREMENT  [Disputed matter in brackets]

To find for Cryovac, you must also find that Pechiney knew of the existence of the

[expectancy of a business opportunity/prospective contract] with National Beef.  To have

knowledge means that Pechiney has information concerning the [expectancy of a business

opportunity/prospective contract], which was discovered by Pechiney or was brought to

Pechiney's attention by others.

In this regard, knowledge may be found to exist if, from the facts and circumstances of

which Pechiney had knowledge, Pechiney should have known of the existence of Cryovac's

expectancy of a [business opportunity/binding four-year requirements contract] with National

Beef.

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*,
§ 2.4 (Knowledge) at 74 (4th ed. 2005). *See also* American Bar Association, *Model Jury
Instructions: Business Torts Litigation*, § 1.3.2 (Requirement of Knowledge) at 15 (4th ed. 2005);
Cryovac submits that the following cases are also instructive on the issue of knowledge:
*Professional Investors Life Ins. Co., Inc. v. Roussel*, 528 F. Supp. 391, 398 (D. KS. 1981)
(finding "sufficient evidence from which defendant's knowledge of plaintiff's contract" could be
inferred for purposes of tortious interference claim; evidence included defendants' business and
social relationships.); *D56, Inc. v. Berry's Inc.*, 955 F. Supp. 908, 916 (N.D. Ill. 1997); *Guard-
Lite Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E. 2d 445, 450 (N.Y. 1980); *Howard v.
Youngman*, 81 S.W. 3d 101,114 (Mo. Ct. App. 2002) (facts and circumstances known to
defendant may be sufficient to find knowledge despite a lack of knowledge of particulars of
contract).
     Pechiney contends that the following cases are instructive: *DP-Tek, Inc. v. AT&T Global
Info. Solutions Co.*, 891 F. Supp. 1510, 1519-20 (D. Kan. 1995); *Preston v. Preston*, 823 S.W.2d
48, 49-50 (Mo. Ct. App. 1991).

### 4.4     REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT [Disputed matter in brackets]

You, the jury, must determine whether Pechiney intended to prevent Cryovac from fulfilling its [business opportunity with National Beef/entering into four-year requirements contract with National Beef.][36]

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act. Ordinarily it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence. Although witnesses may see and hear, and be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing.

Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of contrary evidence, draw an inference that Pechiney, by Pechiney's conduct, intended the natural and probable consequences of its acts.

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.b (4th ed. 2005). American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.a at 17 (4th ed. 2005). American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.c (Proof of Intent), at 19 (4th ed. 2005).

---

[36] Cryovac's position is set forth at note 31, *supra.* Pechiney's position is set forth at note 32, *supra.*

### 4.5     REQUIREMENT OF "MALICE" (Pechiney Proposed Jury Instruction)

[To find for Cryovac, you must find that Pechiney acted with malice. Malice, as used in this instruction, refers to the intentional doing of a harmful act without justification or excuse—that is, [the willful violation of a known right.][37]  In proving malice, it is not necessary for Cryovac to prove that Pechiney acted with hatred, ill will, or spite.][38]

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.3.3.d (4th ed. 2004) [modified].

---

[37] *See* note 24, *supra.*

[38] *See* note 25, *supra.*

### 4.6    PROPER OR IMPROPER INTERFERENCE DEFINED
### [Disputed matter in brackets]

The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.    The nature of Pechiney's conduct, [including whether Pechiney willfully and maliciously infringed Cryovac's patent];[39]

2.    Pechiney's motives for its conduct;

3.    The interests of Cryovac with which Pechiney's infringement interfered;

4.    The interests sought to be advanced by Pechiney;

5.    The social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6.    The proximity or remoteness of Pechiney's infringement to the interference claimed by Cryovac; and

7.    The relationship among Cryovac, National Beef, and Pechiney.

How you balance these various factors and the weight, if any, you decide to give to each, is for you to decide.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.2 (Proper or Improper Interference Defined) at 35-37 (4th ed. 2005); *See* Restatement (Second) of Torts, § 767.

---

[39] *See* note 26, *supra.*

**4.7     UNLAWFUL MEANS EMPLOYED (Pechiney proposed jury instruction)**

[Should you find that the means employed by Pechiney to interfere with the expectancy of [a business opportunity/contract][40] between Cryovac and National Beef were unlawful in and of themselves, then you may find that Pechiney's conduct was improper.][41]

**Authority:**     American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.4.3. at 37 (4th ed. 2005).

---

[40] *See* note 31, *supra.*

[41] *See* note 27, *supra.*