## 4.8    CAUSATION REQUIREMENT [Disputed matter in brackets]

You, the jury, must determine whether Pechiney was responsible for preventing Pechiney from entering into a [business opportunity/four-year requirements contract][42] with National Beef.

In other words, you must decide whether, except for Pechiney's infringement of the '419 patent, Cryovac was reasonably certain to have entered into a [contract/binding four-year requirements contract][43] with National Beef.

Pechiney's conduct will be deemed to be responsible for Cryovac's failure to enter into a [contract/four-year requirements contract][44] with National Beef if it was substantial factor in causing Cryovac not to fulfill its expectancy with National Beef.

**Authority:**    (Causation: Generally), at 75.  American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.5.1 (4th ed. 2005) and § 2.5.2, (Substantial Factor) at 76.

---

[42] *See* notes 31-32, *supra.*

[43] *See* notes 31-32, *supra.*

[44] *See* notes 31-32, *supra.*

DB01:2126702.1                                                                                      063527.1001

## 4.9    DAMAGE TO PLAINTIFF PROXIMATELY RESULTING FROM CONDUCT [AGREED]

You must also consider whether Pechiney's infringement of the '419 patent was the proximate cause of damages to Cryovac stemming from loss a National Beef.

If you find that Pechiney's infringement of the '419 patent was not the proximate cause of damage to Cryovac, your verdict will be for Pechiney.

In this regard, Pechiney's conduct will be deemed to be the proximate cause of Cryovac's loss or damage if you find that it was a substantial factor in causing the loss or damage. It need not be the only cause. The conduct will be a substantial factor in causing the loss or damage if it had such an effect in producing the loss that reasonable people would regard it as a cause of the loss or damage. In resolving this issue, you may consider the number of other contributing factors, whether Pechiney's infringement created a condition or chain of events that was continuous and active up to the time of the damage to plaintiff, and the lapse of time between Pechiney's infringement and the damage to Cryovac.

Should you find Cryovac liable for interfering with Cryovac's expectancy of a contractual relationship with Pechiney you will then determine the damages that Cryovac is entitled to under the instructions I will give you.

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.8.1 (Generally), at 84, § 2.8.3 (Substantial Factor), at 86 (4th ed. 2005)

## 4.10    COMPETITION AS PROPER OR IMPROPER INTERFERENCE
### [Disputed matter in brackets]

I will now instruct you as to a defense that Pechiney is raising to Cryovac's Interference

with Prospective Business Advantage Claim.  Pechiney bears the burden of proving this defense

by a preponderance of the evidence.

Pechiney asserts that its conduct was proper because it occurred during the course of

competition between Pechiney and Cryovac.  The law recognizes that a person is justified in

causing a third party not to enter into a contract with the person's competition as long as the

conduct relates to competition between the two competitors and the person is acting, at least in

part, to advance his or her own commercial interests in such competition, and as long as the

person does not use wrongful means to compete.

You must first determine, then, whether Pechiney's conduct relates to competition

between Pechiney and Cryovac for National Beef's business.  If you find that it does, then you

must determine whether Pechiney's purpose was, at least in part, to advance Pechiney's interest

in competing with Cryovac.  For example, if you find that Pechiney was seeking to acquire the

business diverted from Cryovac for itself, then as long as Pechiney's conduct was at least in part

directed to that end, the fact that you may find it was also motivated by other reasons does not

make it improper in the eyes of the law.

[You are entitled to conclude that Pechiney's infringement of the '419 patent defeats this

competitive privilege defense.][45]

---

[45] Pechiney objects to this portion of the instruction.
    Cryovac submits that it is proper, fair and consistent with the comment to ABA Model
Rule § 2.9.2

**Authority:**    American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 2.9.2 (Competition as Proper of Improper Interference at 91 & Comment at 92 (4th ed. 2005)): Restatement (Second) Torts § 768.

## 5.    PATENT INSTRUCTIONS – VALIDITY

### 5.1    VALIDITY  [AGREED]

Pechiney contends that claim 11 of the '419 patent is invalid for failure to satisfy the

legal requirements of patentability.  In particular, Pechiney contends that claim 11 is invalid for

anticipation, obviousness, lack of enablement and lack of a written description.  I will instruct

you on each of these defenses.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.

## 5.2     PRESUMPTION OF VALIDITY[46] (Cryovac Proposed Jury Instruction)

The granting of a patent by the United States Patent Office carries with it the presumption that the patent's subject matter is new, useful and constitutes an advance that was not, at the time the invention was made, obvious to one of ordinary skill in the art. The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

The presumption of validity carries with it a presumption that the Patent Office Examiner did his duty and knew what claim he was allowing. Therefore, the challenger's burden is especially difficult when the prior art was before the Patent Office Examiner during prosecution of the application.

**Authority:**     2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.1, citing 35 U.S.C. § 282; *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988); *Tristrata Technology, Inc. V. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003); *A1-Site Corp. v. VIS Intern. Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999) ("The 'presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the Examiner did his duty and knew what claims he was allowing' . . . Therefore, the challenger's burden is especially difficult when the prior art was before the Patent Office Examiner during prosecution of the application.")

---

[46] Pechiney opposes this instruction on the ground that it is redundant and confusing to tell the jury about the presumption of validity. As the Federal Circuit has stated, "the presumption of invalidity and heightened burden of proving invalidity 'are static and in reality different expression of the same thing–a single hurdle to be cleared.' " See *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (quoting *Am. Hoist & Derrick Co. v. Sausa & Sons, Inc.*, 725 F.3d 1350, 1360 (Fed. Cir. 1984)).

### 5.3    THE WRITTEN DESCRIPTION REQUIREMENT  [AGREED]

Pechiney contends that claim 11 of the '419 is invalid because it lacks an adequate written description.  The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as a patent.  The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the applicant made the invention having each of the elements described in the claims.

Therefore, to prove a claim invalid for lack of an adequate written description, Pechiney must prove that the patent application does not reasonably convey to a person of ordinary skill in the art that Mr. Shah had possession of the invention (at the time of the application) as that invention was finally claimed in the issued patent.  No particular form of written description is required.

Pechiney bears the burden of establishing by clear and convincing evidence that the '419 patent lacked an adequate written description of the invention covered by claim 11 at the time the application was filed.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.2, citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (citing *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985)).

### 5.4    ENABLEMENT  [Disputed matter in brackets]

Pechiney also contends that claim 11 of the '419 patent is invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the full scope of the claimed invention.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the full scope of the claimed invention without undue experimentation.  Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art.  Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention.  Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

[Where the specification in the patent provides guidance in selecting the operating parameters that would yield the claimed result, it is fair to conclude that the experimentation required to make a particular embodiment is not 'undue.'][47]

---

[47] Cryovac maintains that the next to last paragraph of this instruction is needed in light of *PPG Indus., Inc. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1565 (Fed. Cir. 1996) ("Where the specification provides 'guidance in selecting the operating parameters that would yield the **(continued on next page)**

063527.1001

For Pechiney to prove that claim 11 is invalid due to lack of an enabling disclosure, Pechiney must prove by clear and convincing evidence that one of ordinary skill in the art upon reading the '419 patent at the time Mr. Shah's patent application was filed could not have practiced the full scope of Mr. Shah's claim 11 invention without undue experimentation.

---

claimed result . . . it is fair to conclude that the experimentation required to make a particular embodiment is not 'undue' ' ".) Pechiney contends that the next to last paragraph is irrelevant because the specification must enable the full scope of the claim, not merely one embodiment. *National Recovery Techs. Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1195-96 (Fed. Cir. 1999); *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1213-14 (Fed Cir. 1991). Cryovac points out that Pechiney's point is made elsewhere in the instruction, e.g., in the second and last paragraphs.

063527.1001

### 5.5    ANTICIPATION – GENERALLY [Disputed matter in brackets]

[Pechiney contends that the invention covered by claim 11 of the '419 patent is invalid because it was anticipated by the Fant '562 patent, the Fant film and its prior invention and use, and the Allied Film.][48]  A person cannot obtain a patent on an invention if someone else has already made the same invention.  In other words, the invention must be new.  If it is not new, we say that it was "anticipated" by the prior art.  "Prior art" is the legal term used to describe what others had done in the field before the invention was made, and may include patents and publications.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider not only what is expressly stated or present in the item of prior art, but also what is inherently present.  Something is inherent in an item of prior art if it is always present in the prior art or the natural result of an operation taught in the prior art.  Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.

An invention that is "anticipated" by the prior art is not entitled to patent protection.  To prove that an invention is "anticipated," Pechiney must prove by clear and convincing evidence

---

[48] Cryovac believes that this statement does not belong in the jury instructions.  Rather, Pechiney's counsel should include it in closing argument.  Pechiney maintains that this instruction helps the jury to understand the instruction and the law they are meant to apply.  Pechiney notes that this approach has been adopted by the Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 10.8.

that a single piece of prior art describes or discloses all of the limitations of the claimed invention.

DB01:2126702.1

063527.1001

**5.6    CLAIM CONSTRUCTION  [Reflects Court's Claim Construction Rulings]**

It is the Court's duty under the law to define what the claimed invention is.  I have made

my determination and I will now instruct you on the meaning of claim 11 of the '419 patent.

You must use the meaning that I give you for each patent term to make your decision as to

whether a prior art reference anticipates all elements of the claimed invention.  You must ignore

any different definitions used by the witnesses or the attorneys.  The meaning of the term

"oriented" in claim 11 of the '419 patent is:

> "heated and stretched to realign the molecular configuration, this
> stretching accomplished by a racking or blown bubble process."

The meaning of the term "arranged symmetrically" in claim 11 of the '419 patent is:

> "putting the layers in a desired symmetrical order when the film is
> viewed in cross-section, so that the layers are in the same order on
> each side of the core of the film, for example c/d/b/a/b/d/c.  This
> claim phrase limits only the arrangement of the layers, and does
> not require precise identity in the thickness of the layers or the
> amounts of recited components or additives that may be included
> in the layers."

If you are not sure what is meant by any other term  in claim 11 that is not defined here,

you should use the ordinary meaning of the term in the context of the specification and drawing

of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent.

The ordinary meaning is the meaning that the term would have had to a person of ordinary skill

in the art of multilayer film packaging at the time of the invention described in claim 11 of the

'419 patent.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 3.3.2, citing *Tristrata Technology, Inc. v. ICN Pharma., Inc.*,
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).  See also Judge Jordan's Opinion and
Order dated April 13, 2006 regarding claim construction in this case.

### 5.6.1    LIMITATIONS OF THE CLAIM AT ISSUE
### [Alternative to Preserve Record on Appeal][49]

In your determinations of whether Pechiney's infringement of claim 11 of the '419 patent was willful and whether claim 11 was valid, you should apply the following definitions to these terms:

The term "**oriented**" as used in claim 11 of the '419 patent means, with reference to a polymeric material, "heated and stretched to realign the molecular configuration."

The term "**arranged symmetrically**" as used in claim 11 of the '419 patent means "putting the layers in a desired symmetrical order when the film is viewed in cross-section, that is, putting the layers in an order so that the geometrical center line of the core layer is the geometrical center line of the film and there is correspondence in the size (thickness) and composition of layers on opposite sides of the core layer resulting in the corresponding layers being mirror images of each other with the same thickness and the same chemical composition."

The term "**core layer**" as used in claim 11 of the '419 patent means "the layer in a multilayer film surrounded by an equal number of layers on both sides."

---

[49] Pechiney understands that the Court has made its decision on claim construction. This alternative jury instruction is included herein by Pechiney merely to preserve its record on appeal.

## 5.7     "COMPRISING"  [AGREED]

The beginning portion, or preamble, of claim 11 of the '419 patent uses the word "comprising." "Comprising" is a term of art used in patent claim language which means that the named limitations are essential, but other limitations may be added and still form a product within the scope of the claim.

For example, a claim to a table comprising a tabletop, legs and glue would cover a table that includes each of those elements, even if the table also includes additional limitations such as wheels on the table's legs.

Based on this explanation, if you find a prior art reference included all of the limitations of claim 11 of the '419 patent, the fact that it may also have included additional limitations is irrelevant.

**AUTHORITY:**     1993 USDC Del. § 3.11 [generally]; 2004 IPAS Del. § 3.3.3 [modified for clarity]; ABA § 6.5.1 [modified for clarity].

### 5.8    PRIOR ART – DATE OF INVENTION  [Disputed matter in brackets]

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is March 21, 1986. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There is, however, an exception under which art dated before the application filing date is not prior art. This occurs when the inventor on the patent conceived of and reduced to practice the invention before the date of the art. [Conception requires that the inventor have conceived of every limitation of the claimed invention.][50] Art dated after the reduction to practice is not prior art to the patent claims.

---

[50] Pechiney maintains that this sentence is required by Federal Circuit authority in *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2003); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). Cryovac, on the other hand, believes this point is already **(continued on next page)**

To establish an actual reduction to practice, Cryovac must show: (1) Mr. Shah had constructed an embodiment of his invention that met all the limitations of the claim, and (2) that he determined the invention would work for its intended purpose.

[Once the invention has been shown to work for its intended purpose, reduction to practice is complete. This is the date of invention.][51]

**Authority:**    Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1.

---

made in the third paragraph of the instruction and that repeating it in the fifth paragraph makes the fifth paragraph more difficult to understand.

[51] The last paragraph is from the Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1 based on *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998) ("In order to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the [claim]; and (2) he determined that the invention would work for its intended purpose."). Cryovac maintains that this last paragraph from the model instruction is needed to make sure the jury understands the Federal Circuit test for determining when an invention was actually reduced to practice. Pechiney contends that the last paragraph is an incomplete statement of the law because conception is required for reduction to practice. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1314 (Fed. Cir. 2001).

### 5.9    PRIOR ART – BURDEN[52] (Cryovac Proposed Jury Instruction)

Because of the statutory presumption of patent validity, Pechiney bears the burden of proving by clear and convincing evidence that the art Pechiney relies on is prior to Mr. Shah's date of invention.

A reference, publication, patent, or public knowledge or use that is dated after the inventor reduces his invention to practice (i.e., the inventor makes his invention and the invention is shown to work for its intended purpose), cannot invalidate the inventor's patent claim.

---

[52] Cryovac maintains that this jury instruction from the Federal Circuit Bar Association's Model Patent Jury Instructions, Instruction 10.6.1 is needed to ensure that the jury applies the correct law set forth in *Loral Fairchild v. Matsushita Elec. Indus. Co., Ltd.*, 266 F.3d 1358, 1361 (Fed. Cir. 2001) ("Because of statutory presumption of patent validity, 35 U.S.C. § 282, at trial Toshiba and NEC would bear the burden of proving by clear and convincing evidence that the Erb reference was published prior to Loral's reduction to practice."). Pechiney contends that the first paragraph of this Jury instruction is contrary to Federal Circuit law because an instruction on the presumption of validity is redundant and unnecessary, given that the jury has already been instructed that invalidity must be proven by clear and convincing evidence. See *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004) (quoting *Am. Hoist & Derrick Co. v. Sausa & Sons, Inc.*, 725 F.3d 1350, 1360 (Fed. Cir. 1984)). Pechiney contends that the second paragraph is redundant because it has already been stated in instruction 5.8. Pechiney further contends that it is an incorrect statement of the law because there is no reduction to practice without conception. *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1314 (Fed. Cir. 2001).

**5.10    ANTICIPATION REQUIRES AN ENABLING DISCLOSURE[53]
(Cryovac Proposed Jury Instruction)**

[If prior art does not provide enough information to enable one of ordinary skill to make

the invention of claim 11 of the '419 patent, then that prior art cannot invalidate the claim by

anticipation.  To be enabling means the prior art must disclose particular materials and a

particular methodology to produce the claimed invention such that one of ordinary skill in the art

could practice the claimed invention.]

---

[53] Cryovac maintains that this jury instruction is needed in order that the jury apply the correct
law as set forth in the following decisions:  *Constant v. Advanced Micro Devices, Inc.*, 848 F.2d
1560, 1569 (Fed. Cir. 1988) ("A printed publication must also be enabling."); *Novo Nordisk
Pharmaceuticals, Inc. v. Bio-Technology General Corp.*, 424 F.3d 1347, 1355-56 (Fed. Cir.
2005) ("The 1981 Pavlakis article discloses the production of ripe hGH protein in an enabling
manner because it discusses particular materials and a particular methodology to produce the
hGH protein"); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354-55 (Fed. Cir.
2003).  Pechiney maintains that the instruction contains incorrect statements of the law.  The
question is whether the prior art enables the disclosure of the prior art, not the full scope of the
patentee's claimed invention.  *Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 314, F.3d 1313,
1354 (Fed. Cir. 2003).

DB01:2126702.1    063527.1001

## 5.11    OBVIOUSNESS [AGREED]

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made by the inventor.  Unlike anticipation, obviousness may be shown by considering more than one item of prior art.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Pechiney.

2.    Identify the differences, if any, between claim 11 of the '419 patent and the prior art identified by Pechiney.

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the '419 patent was made.

4.    Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8, citing *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000); *Arkie Lures v. Gene Lerew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 0l-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

**5.12    SCOPE AND CONTENT OF THE PRIOR ART  [AGREED]**

In arriving at your decision on the issue of whether or not claim 11 of Mr. Shah's '419

patent invention would have been obvious to one of ordinary skill in the art, you must first

determine the scope and content of the prior art.  This means that you must determine what prior

art is reasonably pertinent to the particular problem that Mr. Shah faced.  Prior art is reasonably

pertinent if it is in the same field as Mr. Shah's invention or is from another field that a person of

ordinary skill would look to in trying to solve the problem Mr. Shah was trying to solve.  Prior

art includes the following:

1.    Patents that issued before the inventor's date of invention;

2.    Patents having a publication date before the inventor's date of invention;

3.    U.S. Patents that have a filing date prior to the inventor's date of
      invention;

4.    Anything that was publicly known or publicly used by others in this
      country before the inventor's date of invention; and

5.    Anything that was made or built or any process that was used in this
      country by another person before the inventor's date of invention, where
      the thing made or built or the process used was not abandoned, suppressed
      or concealed.

- 67 -

## 5.13    DIFFERENCES OVER THE PRIOR ART  [AGREED]

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Claim 11 must be considered in its entirety.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.2, citing *Tristrata Technology, Inc. v. ICN Pharma, Inc.,* C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

DB01:2126702.1                                                      063527.1001

## 5.14    LEVEL OF ORDINARY SKILL  [AGREED]

Next, you are to determine the level of ordinary skill in the art to which the claimed

invention pertains at the time the claimed invention was made.  Factors to be considered in

determining the level of ordinary skill in the pertinent art include the educational level and

experience of persons working in the inventor's field, the types of problems encountered in the

art, the prior art patents and publications, the activities of others and prior art solutions to the

problems encountered by the inventor, and the sophistication of the technology.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the
District of Delaware, Instruction 4.8.3, citing *Tristrata Technology, Inc. v. ICN Pharma., Inc.,*
C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

**5.15    MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS [AGREED]**

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Absolute predictability of success however, is not required. All that is required is a reasonable expectation of success. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art. The suggestion to combine need not be expressed. The suggestion or motivation to modify prior art teachings may be found in the prior art references themselves, the knowledge of one skilled in the art or the nature of the problem to be solved.

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.4, which cite *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys. Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997); *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

DB01:2126702.1                                                                                                     063527.1001

## 5.16A   OBVIOUSNESS – HINDSIGHT (Cryovac alternative)

[The question of obviousness is simple to ask but difficult to answer.  A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claim in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation.  It is wrong to use the '419 patent as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.  Instead, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.]

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.5, citing *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999); *Tristrata Technology, inc. v. ICN Pharma., Inc.*, C.A. No. 0l-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

### 5.16B   OBVIOUSNESS – HINDSIGHT (Pechiney alternative)

[In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today, or what was learned from the teachings of the '419 patent. You should not use the '419 patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill at the time the invention was made. You must presume that this person would have known about all the relevant prior art.][54]

---

[54] Pechiney proposes using this instruction on hindsight taken from the ABA Patent Litigation Jury Instructions at 9.8.  Pechiney maintains that its proposed instruction is preferable because it is more concise and more clear than Cryovac's proposed instruction and because Cryovac's instruction wrongly implies that it is difficult to find obviousness.

### 5.17    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS  [AGREED]

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must also consider the following objective evidence that may tend to show the non-obviousness of claim 11:

1.    Commercial success or lack of commercial success of products covered by claim 11 of the '419 patent;

2.    A long-felt need in the art that was satisfied by the invention of claim 11 of the '419 patent;

3.    The failure of others to make the invention;

4.    Copying of the invention by others in the field;

5.    Unexpected results achieved by the invention;

6.    Praise of the invention by others in the field;

7.    Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

8.    Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue.  For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in claim 11 of the '419 patent, then any commercial success may have no relation to the issue of obviousness.  Cryovac has the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness.

- 73 -

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.6, which cites *ISCO Int'l v. Conductus, Inc.*, C.A. No. 01-487-GMS; *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999) ("The patentee bears the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness."); *In re Huang*, 100 F.3d 135, 139 (Fed. Cir. 1996).

**5.18    OBVIOUS TO TRY  [Cryovac's Proposed Jury Instruction]**

[The evidence might indicate to you that what Mr. Shah did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time Mr. Shah made the invention.][55]

**Authority:**    2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware, Instruction 4.8.7, citing *Tristrata Technology, Inc. v. ICN Pharma., Inc.*, C.A. No. 01-150-JJF, D.I. 165 (D. Del. Nov. 21, 2003).

---

[55] Pechiney maintains that this instruction is redundant and unnecessary because the jury will have already been instructed that obviousness requires a reasonable expectation of success. Furthermore, the obvious to try language is confusing, as the Federal Circuit has recognized. *See Mediachem, S.A. v. Rolabe, S.L.,* 437 F.3d 1157, 1167 (Fed. Cir. 2006) (" '[T]he meaning of this maxim is sometimes lost.' " (quoting *In re O'Farrell*, 853 F.2d 894, 903 (Fed. Cir. 1988)).

Cryovac submits that this instruction from the 2004 Uniform Jury Instructions for Patent Cases in the U.S. District Court of the District of Delaware is necessary in light of the following Federal Circuit authorities: *Uniroyal, Inc. v. Rudkin-Wiley Corporation*, 837 F.2d 1044, 1053 (Fed. Cir. 1988) ("the district court in its validity discussion has erred in other respects. It appears to have applied the often rejected obvious-to-try standard . . . ."); *In re O'Farrell*, 853 F.2d 894, 902 (Fed. Cir. 1988) ("They argue that the rejection amounts to the application of a standard of 'obvious to try' to the field of molecular biology, a standard which this court and its predecessors have repeatedly rejected as improper grounds for a § 103 rejection.")

063527.1001

### 5.19    INDEPENDENT INVENTION BY OTHERS  [AGREED]

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of claim 11 of the '419 patent was contemporaneously invented by others. Evidence of contemporaneous invention is probative of the level of knowledge in the art at the time the invention was made.

**Authority:**    *In re Merck & Co.*, 800 F.2d 1091, 1098 (Fed. Cir. 1986) ("contemporaneous invention is probative of 'the level of knowledge in the art at the time the invention was made.' ")

063527.1001

## 6.    PATENT DAMAGES

### 6.1    PATENT DAMAGES – GENERALLY  [AGREED]

If, after considering all of the evidence and the law as I have stated it, you have

determined that clear and convincing evidence shows that claim 11 of the '419 patent is invalid,

then your verdict should be for Pechiney and you need go no further in your deliberations.  If

claim 11 of the '419 patent is valid, you must then turn to the issue of damages.

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for
the District of Delaware 2004, Instruction 5.1.

DB01:2126702.1                                                                          063527.1001

## 6.2    COMPENSATORY PATENT DAMAGES IN GENERAL  [AGREED]

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.  Damages are compensation for all losses suffered as a result of the infringement.  You may not add anything to the amount of damages to punish Pechiney or to set an example.

It is not relevant to the question of damages whether Pechiney benefited from, realized profits from, or even lost money as a result of the acts of infringement.  It is also not relevant if Pechiney did not foresee that it would cause Cryovac damage at the time that it infringed claim 11.  The only issue is the amount necessary to adequately compensate Cryovac for Pechiney's infringement.  Adequate compensation should return Cryovac to the position it would have occupied had there been no infringement.

**Authority:**     Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.2.

## 6.3    PATENT DAMAGES - BURDEN OF PROOF  [AGREED]

Cryovac has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty.  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Cryovac's right to recover.  On the other hand, Cryovac is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture.  You may base your evaluation of reasonable certainty on opinion evidence.  Any doubts regarding the computation of the amount of damages should be resolved against Pechiney and in favor of Cryovac.

## 6.4    DATE PATENT DAMAGES BEGIN  [AGREED]

Cryovac can only recover damages for patent infringement that occurred after the filing of the lawsuit.

DB01:2126702.1                                    063527.1001

### 6.5    TWO TYPES OF PATENT DAMAGES – LOST PROFITS AND REASONABLE ROYALTY  [AGREED]

There are two types of damages for patent infringement.

The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.

The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive for the nonexclusive right to practice the patent.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

These methods are alternatives for computing damages.  If you find that claim 11 of the '419 patent is valid, you must award Cryovac either lost profits or a reasonable royalty for each infringing sale of these products.  You cannot, however, award Cryovac both lost profits and a reasonable royalty for the same sale.

**Authority:**    AIPLA's Model Patent Jury Instructions (Version 1.1, February 2006), Instruction 12.2; The Federal Circuit Bar Association Model Patent Jury Instructions, Instruction 12.2.

### 6.6    PATENT LOST PROFITS – GENERALLY  [AGREED]

In this case, Cryovac is seeking lost profits as its patent damages.  Lost profits damages are the profits Cryovac asserts it lost because of Pechiney's infringement.  They are not the profits Pechiney actually made.  Cryovac's lost profits may be in several forms, but are commonly in the form of lost sales.  In this case, Cryovac must establish that the infringement caused its lost profits.  Thus, Cryovac must show that "but for" the infringement, Cryovac would have made the sales or profits that were allegedly lost.

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.7.

DB01:2126702.1                                                                    063527.1001

## 6.7    PATENT LOST PROFITS – CRYOVAC'S COMPETING PRODUCT [AGREED]

Cryovac need not sell the patented invention to qualify for lost profits damages.  Rather,

to adequately compensate Cryovac for Pechiney's infringement, Cryovac's damages include

Cryovac's lost profits on competing products not covered by the infringed claim.


**Authority:**    *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995) ("The
language of the Patent Act recognizes that the value of a claim to the patentee, and the extent of
harm from infringement, do not depend on whether the patentee markets the claimed device.  To
adequately compensate for infringement of the right to exclude, as Section 284 requires,
'damages' includes lost profits on competing products not covered by the infringed claims.")

063527.1001

### 6.8A    PATENT LOST PROFITS – PANDUIT APPROACH
### [Disputed matter in brackets]

Cryovac is claiming that it lost sales because of Pechiney's infringement.  To get lost

profits as actual damages, the patent owner must demonstrate that there was a reasonable

probability that, but for the infringement, it would have made the infringer's sales.  A standard

way of proving lost profits is for the patent owner to show:

1.    there was demand for the patented product;

2.    Cryovac had the ability to meet the market demand;

3.    no acceptable non-infringing substitutes were available; and

4.    the amount of profit Cryovac would have made.

[If there are other ways to show that Pechiney's infringement in fact caused Cryovac's

lost profits, that is acceptable as well.][56]

[An acceptable substitute not on the market during the period of infringement may

nonetheless be acceptable if Pechiney had the necessary materials, equipment, know-how and

experience, and economic incentive to make it.][57]

Cryovac need not negate every possibility that purchasers of Pechiney's infringing

products might have bought another product or no product at all.  The mere existence of a

---

[56] Cryovac submits that this sentence is needed in light of the Federal Circuit's holding that the Panduit approach is not the only acceptable test for lost profits.  *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) ("If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable").  Pechiney maintains that this sentence should not be included because it is irrelevant and confusing to the jury.  Cryovac has not presented any evidence of lost profits under any theory other than the Panduit approach set forth in Instruction 6.8A.  Cryovac disagrees.  The evidence in the record establishes that Cryovac lost sales to National Beef and Smithfield (Packerland) because of Pechiney's sales of ClearShield.

[57] Pechiney maintains that this sentence should be included as required by the Federal Circuit in *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999).

competing device does not make that product an acceptable substitute. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute.

In proving its damages, Cryovac's burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Cryovac would have made some or all of the infringing sales, and it is reasonably probable what amount Cryovac would have netted from the denied sales, then Pechiney is liable for the lost profits of those infringing sales.

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.8, modified in light of the Federal Circuit's decisions in *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989) and *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) ("If there are other ways to show that the infringement in fact caused the patentee's lost profits, there is no reason why another test should not be acceptable").

## 6.8B    DEMAND  [AGREED]

One of your considerations when deciding whether Cryovac lost sales was the demand for products having the features recited in claim 11 of the '419 patent. Demand for the patented product can be proven by significant sales of Pechiney's products containing the patented features. However, if you find that Pechiney generated new or different markets by sales efforts or by creating demand because of features other than those recited in claim 11 of the '419 patent, the sales of Pechiney's products may not establish a demand for the patented product.

**Authority:**    AIPLA Damages § 6 [deleting reference to plaintiff's patented product].

## 6.9A    PATENT LOST PROFITS – ACCELERATED ENTRY/HEAD START
### (Cryovac Proposed Jury Instruction)

[As another part of your lost profits analysis, you must determine whether Cryovac has

lost and will loose more sales to Pechiney after the '419 patent expired on March 21, 2006, than

it would have lost if Pechiney first began selling its infringing product after the patent expired.

In considering Cryovac's contention on head-start damages, you should be aware that after the

patent is expired all parties, including Pechiney, can rightly sell a product with features covered

by the expired patent.

In order to recover damages under this rule, Cryovac must prove by a preponderance of

evidence that by infringing Cryovac's patent, Pechiney has made and will make sales after the

expiration date of the patent that it would not have made had Pechiney waited until the day the

patent expired to begin marketing the patented product.

If you find that Pechiney had made and will make a greater number of post-expiration

sales than it would have made if it began selling its product after the patent expired, then you

may award Cryovac lost profits on these additional sales provided Cryovac can also show:

(i) that it would have made the additional sales Pechiney has and will make because of

Pechiney's early entry into the market, and (ii) a reasonable calculation of the amount of

damages.

In considering the element of future profits, you should determine whether or not

Pechiney's infringement of the '419 patent prevented Cryovac from earning profits that it would

have earned but for that infringement.  In determining whether or not any part of Cryovac's

damages constitute future profits, you may consider the past experience of Cryovac and Pechiney

in that business, the competition Cryovac would have had, and the general market conditions.

Cryovac cannot rely upon mere speculation.][58]

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instructions 5.10 and 5.13 relying on *Mars v. Conlux*, 818 F. Supp. 707 (D. Del. 1993); *Amsted Industries Inc. v. National Castings, Inc.*, 1990 WL 106548*20 (N.D. Ill.) ("BIC Leisure allows the plaintiff the opportunity to show that by engaging in pre-expiration infringement, the defendant acquired a share of the market which it would not have enjoyed had it waited until the day after the patent expired to begin marketing the patented product.")  *BIC Leisure Products, Inc. v. Windsurfing International Inc.*, 687 F. Supp. 134, 138 (S.D.N.Y. 1988) (post expiration damages caused by accelerated reentry permitted); *TP Orthodontics, Inc. v. Professional Positioners Inc.*, 1990 WL 268846 (E.D. Wisc.) ("Plaintiff should not be precluded from amplifying this evidence at trial and using the accelerated reentry approach as a lens through which to view damages.").

---

[58] Pechiney contends that this instruction should be excluded because it is irrelevant and confusing to the jury.  Cryovac has not presented any evidence to support a claim of lost profits based on the market share approach.

**6.9B    DATE DAMAGES END (Pechiney Proposed Jury Instruction)[59]**

Cryovac can recover damages for infringement that occurred only up until the term of the '419 patent expired.

The term of the '419 patent expired on March 21, 2006. Cryovac cannot recover any damages for any infringement that occurred after that date. After a patent's term has expired, anyone can freely practice the claimed invention. You must not award any damages to Cryovac for any infringement of the '419 patent that occurred after March 21, 2006.

---

[59] Pechiney's proposed jury instruction is incorrect as a matter of law. Numerous authorities permit post-expiration damages where pre-expiration infringement causes the patent owner to lose post-expiration profits it would not have lost had the infringer waited until expiration to begin the infringing conduct. *Amsted Industries Inc. v. National Castings, Inc.*, 1990 WL 106548*20 (N.D. Ill.) ("BIC Leisure allows the plaintiff the opportunity to show that by engaging in pre-expiration infringement, the defendant acquired a share of the market which it would not have enjoyed had it waited until the day after the patent expired to begin marketing the patented product.") *BIC Leisure Products, Inc. v. Windsurfing International Inc.*, 687 F. Supp. 134, 138 (S.D.N.Y. 1988) (post expiration damages caused by accelerated reentry permitted); *TP Orthodontics, Inc. v. Professional Positioners Inc.*, 1990 WL 268846 (E.D. Wisc.) ("Plaintiff should not be precluded from amplifying this evidence at trial and using the accelerated reentry approach as a lens through which to view damages."); Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instructions 5.10 and 5.13 relying on *Mars v. Conlux*, 818 F. Supp. 707 (D. Del. 1993).

Pechiney maintains that this instruction is correct given the facts of this case. Cryovac has presented no evidence of lost profits damages under either a market share or accelerated reentry approach.

## 6.10    REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES [AGREED]

In this case, Cryovac alternatively seeks damages in the amount of a reasonable royalty for Pechiney's sales of infringing ClearShield® products. A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Cryovac and Pechiney, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be February-March 2004 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Pechiney was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Pechiney. You must also assume that Cryovac would have been willing to grant a license. Finally, you must assume that both Cryovac and Pechiney knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Pechiney's use of the patented invention, including the opinion testimony of experts.

DB01:2126702.1                                     063527.1001

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.14.

## 6.11    FACTORS FOR DETERMINING REASONABLE ROYALTY FOR PATENT DAMAGES  [AGREED]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    The royalties received by Cryovac for the licensing of others under the '419 patent;

2.    The rates paid by Cryovac, Pechiney, or others for the use of other patents comparable to the '419 patent;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Cryovac's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Cryovac and Pechiney, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of Pechiney, the existing value of the invention to Cryovac as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the '419 patent and the length of the licenses;

8.    The established profitability of the product made under the patent, its commercial success and its current popularity;

9.  The utility and advantages of Cryovac's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Cryovac, and the benefits to those who have used the invention;

11. The extent to which Pechiney has made use of the invention, and any evidence that shows the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Pechiney;

14. The opinion testimony of qualified experts; and

15. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.14.1.

- 93 -

### 6.12    PATENT DAMAGES INTEREST  [AGREED]

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

**Authority:**    Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware 2004, Instruction 5.15.

## 6.13     CURATIVE INSTRUCTION  [AGREED]

The fact that I have instructed you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of the plaintiffs.

7.    **DAMAGES FOR BUSINESS TORT CLAIMS**

### 7.1    GENERALLY[60]  [AGREED]

Should you find that Pechiney is liable for procuring or causing a breach of at least one contract between Cryovac and National Beef, and that Pechiney's conduct was neither justified nor privileged, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from that breach of its contract or contracts with Pechiney.

Similarly, should you find that Pechiney is liable for interfering with Cryovac's business relationship or expectancy of business relationship with National Beef, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from the loss of such expectancy.

---

[60] American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.5 (Compensatory Damages), at 46-47 (4th ed. 2005).

### 7.2    DAMAGES:  IMPOSSIBILITY OF PRECISE CALCULATION NO BAR TO RECOVERY[61]  [AGREED]

If you find that Cryovac has in fact suffered damage to its business or property, the fact that the precise amount of damage may be difficult to ascertain does not impair Cryovac's right to recover damages.  Although you may not render a verdict based upon mere speculation or guesswork, Cryovac is allowed some reasonable leeway in its method and proof of damage.

Although the law places a burden upon Cryovac to prove such facts as will enable you, the jury, to arrive at the amount of damages with reasonable certainty, it is not necessary that Cryovac prove the amount of those damages with mathematical precision.  It is required that Cryovac present only such evidence as might reasonably be expected to be available under the circumstances.

You are permitted to determine the amount of damage by estimation or approximation, as long as a reasonable basis for such estimate or approximation is shown with reasonable certainty. You may use any formula or theory for determining damages that is based upon the evidence in the case and that you believed to be reasonable; you are not bound to reject a formula or theory simply because it does not measure damages to the exact dollar and cent.

---

[61] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.2 (Impossibility of Precise Calculation No Bar to Recovery), at 48 (4th ed. 2005).

### 7.3    RECOVERABLE ELEMENTS OF DAMAGES[62]
### [Disputed matter in brackets]

In determining the amount of compensatory damages, you may consider whether Cryovac suffered any measurable loss of profits by reason of Pechiney's conduct. You should be guided by the rule that Cryovac is entitled to any profits that Cryovac would, with reasonable certainty, have enjoyed, were it not for Pechiney's tortious interference with contract or tortious interference with contractual relations, you are entitled to consider Cryovac's past earnings in its business and, in particular, those past earnings resulting from contracts of the nature of the contract in this case. You should also consider all of the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of lost profits.

[In addition to lost profits, Cryovac is entitled to recover any reasonable costs it incurred in an effort to mitigate or reduce damages and to recover business Cryovac lost due to Pechiney's wrongful conduct. As a result, you may consider Cryovac's expenses in determining the amount of compensatory damages.][63]

---

[62] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.3 (Recoverable Elements of Damages), at 49 (4th ed. 2005).

[63] For the reasons set forth below at Section 7.5, *infra*, Cryovac contends that Pechiney is not entitled to a mitigation instruction. However, in the case that Pechiney obtains a mitigation instruction, Cryovac submits that the instructions should also include the language set forth in this paragraph.

063527.1001

### 7.4    DATE TORTIOUS INTERFERENCE DAMAGES BEGIN
### (Pechiney Proposed Jury Instruction)

[Cryovac can only recover damages for tortious interference that occurred after the filing of the lawsuit.][64]

---

[64] Pechiney maintains that this instruction should be included as required by 35 U.S.C. § 287. Section 287 states that if a patentee, such as Cryovac, fails to mark its products that are covered by the patent-in-suit, "no damages shall be recovered by the patentee in any action for infringement," until the patentee notified the infringer of the infringement  Here, Pechiney asserts that there is no dispute that Cryovac did not mark and did not notify Pechiney of infringement until the filing of the complaint.  As a result, Cryovac cannot recover any damages in this "action for infringement," including tortious interference damages, that occurred before the filing of the complaint in this case.

    Cryovac disagrees with Pechiney's interpretation of the statute and objects to the inclusion of this instruction.  Moreover, Pechiney is precluded from raising this theory of damages at this late stage of the case.  Pechiney never disclosed this damages theory during discovery or in its Pre-Trial Order.  Pechiney disclosed this theory of the case for the first time during trial.

### 7.5    MITIGATION/LOST VOLUME SELLER

[Generally, the measure of damages for one who is harmed by a breach of contract is tempered by a rule requiring that the injured party make a reasonable effort, whether successful or not, to minimize the losses suffered.  To mitigate a loss means to take steps to reduce the loss.  Generally, if an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have produced under the same circumstances.  This reduction, however, must be measured with reasonable probability.][65]

[Here, however, the general rule does not apply.  Pechiney is not entitled to raise the defense of mitigation because Cryovac is a "lost volume seller."   A "lost volume seller" is one whose supply of particular goods exceeds the market demand for such goods.  Because, regardless of whether there has been a breach of contract, such seller is in a position to satisfy all buyers who are willing to deal with him or her, typical damage provisions do not adequately compensate him or her for the profits lost as a result of the lost sales opportunity stemming from a contractual breach.  If a "lost volume seller" resells the goods it expected to sell to the original buyer to a third-party, it usually deprives itself of a sale to that third party that it would have enjoyed absent the contractual breach.

Therefore special damages rules apply in the case of a lost volume seller.  The measure of damages for a "lost profit seller" is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages, due

---

[65] Cryovac contends that mitigation is not an issue in this case.  Pechiney did not raise that defense in its Answer, Amended Answer or Contention Interrogatories.  Even if the defense theoretically could apply, it is not applicable because Cryovac is a lost volume seller.

Pechiney maintains that mitigation is an issue in this case, and that the issue was included as an affirmative defense in its Amended Answer.

allowance for costs reasonably incurred, and due credit for payments or proceeds of resale. Incidental damages include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach.],[66]

    **Authority**:    Delaware Pattern Jury Instructions, Civil § 22.26 (2000); 67A Am. Jur. 2d *Sales* §1004 (2004) ("defining lost volume seller"); UCC § 2-708 and § 2-710.

---

[66] Cryovac submits that the above authorities support this instruction in its entirety.
    Pechiney contends that the second and third paragraphs are unnecessary and duplicative of the first paragraph proposed by Cryovac.

    063527.1001

8.    **DELIBERATIONS AND VERDICT**[67]

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.

---

[67] The "Deliberation and Verdict" section is taken directly from the Jury Instructions on Judge Jordan's Chambers website at pages 7-9.