IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CRYOVAC, INC.,<br><br>        Plaintiff/Counter-Defendant<br><br>    v.<br><br>PECHINEY PLASTIC PACKAGING, INC.<br><br>        Defendant/Counter-Plaintiff. | )<br>)<br>)<br>)<br>)   Civil Action No. 04-1278-KAJ<br>)<br>)<br>)<br>)<br>) |

## JOINT PROPOSED JURY INSTRUCTIONS

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

_____/s/ Elena C. Norman_____
John W. Shaw (No. 3362)
Michele Sherretta (No. 4651)
Elena C. Norman (No. 4780)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
enorman@ycst.com

_Attorneys for Cryovac, Inc._

Dated: June 21, 2006

**CONNOLLY BOVE LODGE & HUTZ LLP**

_____
N. Richard Powers (No. 494)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899-2207
(302) 658-9141
rpowers@cblh.com

_Attorneys for Pechiney Plastic Packaging,
Inc._

## TABLE OF CONTENTS

1.    GENERAL INSTRUCTIONS .................................................................. 1

    1.1    INTRODUCTION & JURORS' DUTIES ............................................ 1

    1.2    DUTIES AS JURORS ................................................................. 2

    1.3    EVIDENCE DEFINED ............................................................... 4

    1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE ............................... 5

    1.5    CONSIDERATION OF EVIDENCE ............................................... 6

    1.6    STATEMENTS OF COUNSEL .................................................... 7

    1.7    CREDIBILITY OF WITNESSES ................................................. 8

    1.8    EXPERT TESTIMONY ............................................................. 9

    1.9    NUMBER OF WITNESSES ....................................................... 10

    1.10   BURDENS OF PROOF .............................................................. 11

2.    PATENT INSTRUCTIONS – WILLFUL INFRINGEMENT ........................ 12

    2.1    WILLFUL INFRINGEMENT ....................................................... 12

    2.2    ADVICE OF COUNSEL ............................................................. 14

3.    TORTIOUS INTERFERENCE WITH CONTRACT ................................... 15

    3.1    INDUCING BREACH OF CONTRACT – ELEMENTS OF LIABILITY ......... 16

    3.2    REQUIREMENT OF A CONTRACT ............................................. 17

    3.3    COURSE OF PERFORMANCE, COURSE
         OF DEALING, OR USAGE OF TRADE ........................................ 18

    3.4    REQUIREMENT OF KNOWLEDGE ............................................. 19

    3.5    REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT ....... 20

    3.6    PROPER OR IMPROPER INTERFERENCE DEFINED ...................... 21

    3.7    UNLAWFUL MEANS EMPLOYED ............................................... 22

3.8     REQUIREMENT THAT THE BREACH BE PROXIMATELY
        CAUSED BY PECHINEY'S CONDUCT:  CAUSAL RELATIONSHIP
        GENERALLY.............................................................................................. 23

3.9     BREACH DEFINED ...................................................................................... 24

3.10    BREACH REQUIRED .................................................................................. 25

3.11    PROXIMATE CAUSE DEFINED .................................................................. 26

4.  TORTIOUS INTERFERENCE WITH PROSPECTIVE
    CONTRACTUAL RELATIONS.............................................................................. 27

4.1     ELEMENTS OF LIABILITY.......................................................................... 28

4.2     EXISTENCE OF RELATIONSHIP – GENERALLY ......................................... 29

4.3     KNOWLEDGE REQUIREMENT ................................................................... 30

4.4     REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT ....... 31

4.5     PROPER OR IMPROPER INTERFERENCE DEFINED ................................. 32

4.6     UNLAWFUL MEANS EMPLOYED ............................................................... 33

4.7     CAUSATION REQUIREMENT...................................................................... 34

4.8     DAMAGE TO PLAINTIFF PROXIMATELY
        RESULTING FROM CONDUCT.................................................................... 35

4.9     COMPETITION AS PROPER OR IMPROPER INTERFERENCE .................. 36

5.  PATENT INSTRUCTIONS – VALIDITY ..................................................................... 38

5.1     VALIDITY ................................................................................................... 38

5.2     ENHANCED BURDEN ................................................................................ 39

5.3     ENABLEMENT ........................................................................................... 40

5.4     ANTICIPATION – GENERALLY .................................................................. 41

5.5     CLAIM CONSTRUCTION
        [Reflects Court's Claim Construction Rulings]..................................... 42

5.6     "COMPRISING" ......................................................................................... 43

5.7     PRIOR ART – DATE OF INVENTION ......................................................... 44

| | 5.8 | PRIOR ART – BURDEN | 45 |
|---|---|---|---|
| | 5.9 | ANTICIPATION REQUIRES AN ENABLING DISCLOSURE | 46 |
| | 5.10 | OBVIOUSNESS | 47 |
| | 5.11 | SCOPE AND CONTENT OF THE PRIOR ART | 48 |
| | 5.12 | DIFFERENCES OVER THE PRIOR ART | 49 |
| | 5.13 | LEVEL OF ORDINARY SKILL | 50 |
| | 5.14 | MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS | 51 |
| | 5.15 | OBVIOUSNESS – HINDSIGHT | 52 |
| | 5.16 | OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS | 53 |
| | 5.17 | OBVIOUS TO TRY | 54 |
| | 5.18 | INDEPENDENT INVENTION BY OTHERS | 55 |
| 6. | | PATENT DAMAGES | 56 |
| | 6.1 | DAMAGES – GENERALLY | 56 |
| | 6.2 | PATENT DAMAGES – GENERALLY | 57 |
| | 6.3 | COMPENSATORY PATENT DAMAGES IN GENERAL | 58 |
| | 6.4 | PATENT DAMAGES - BURDEN OF PROOF | 59 |
| | 6.5 | DATE PATENT DAMAGES BEGIN | 60 |
| | 6.6 | TWO TYPES OF PATENT DAMAGES – LOST PROFITS AND REASONABLE ROYALTY | 61 |
| | 6.7 | PATENT LOST PROFITS – GENERALLY | 62 |
| | 6.8A | PATENT LOST PROFITS – CRYOVAC'S COMPETING PRODUCT | 63 |
| | 6.8B | PATENT LOST PROFITS – PANDUIT APPROACH | 64 |
| | 6.9 | DEMAND | 67 |
| | 6.10 | PATENT LOST PROFITS – ACCELERATED ENTRY/HEAD START | 68 |
| | 6.11 | REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES | 70 |

DB01:2128863.1                                                                         063527.1001

6.12    FACTORS FOR DETERMINING REASONABLE
        ROYALTY FOR PATENT DAMAGES ................................................ 71

6.13    PATENT DAMAGES INTEREST ..................................................... 73

7.    DAMAGES FOR BUSINESS TORT CLAIMS ............................................ 74

7.1    GENERALLY ................................................................................. 74

7.2    DAMAGES:  IMPOSSIBILITY OF PRECISE
        CALCULATION NO BAR TO RECOVERY ..................................... 75

7.3    RECOVERABLE ELEMENTS OF DAMAGES ................................. 76

8.    DELIBERATIONS AND VERDICT ........................................................ 77

1.      **GENERAL INSTRUCTIONS**

1.1      **INTRODUCTION & JURORS' DUTIES**

Members of the jury, now that you have heard all the evidence in the case, it is time for me to instruct you about the law that you must follow in deciding this case.

Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer, however, I would encourage you to focus your attention on me while the instructions are being read.  You will be able to take your copies with you into your deliberations and refer to them at that time, if necessary.

I will start by explaining your duties and the general rules that apply in every civil case.

Then I will explain some rules that you must use in evaluating particular testimony and evidence.

I will explain the positions of the parties and the law you will apply in this case.

Finally, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

## 1.2    DUTIES AS JURORS

Members of the Jury, it is important that you bear in mind the distinction between your duties and my duties.  You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  You are the sole judges of the facts.  It is your judgment, and your judgment alone, to determine what the facts are, and nothing I have said or done during this trial was meant to influence your decisions about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide (1) whether Cryovac has shown by clear and convincing evidence that Pechiney's infringement is willful, (2) whether Pechiney has proven by clear and convincing evidence that claim 11 of the '419 patent is invalid, (3) whether Cryovac has shown by a preponderance of the evidence that Pechiney tortiously interfered with Cryovac's contract or contracts with National Beef; or its expectation of entering into a relationship with National Beef, and (4) the damages to which Cryovac is entitled.

Now, as far as my duty is concerned, I have the duty of advising you about the law that you should apply to the facts as you find them.  You are not to consider whether the principles I state to you are sound or whether they accord with your own views about policy.  You are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  You must accept them despite how you feel about their wisdom.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

DB01:2128863.1

063527.1001

### 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts. Their questions and objections are not evidence. My legal rulings are not evidence. My comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions the lawyers asked. I may also have ruled that you could not see some of the exhibits that the lawyers wanted you to see. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

DB01:2128863.1                                                                                         063527.1001

## 1.4    DIRECT AND CIRCUMSTANTIAL EVIDENCE

You have heard the terms direct and circumstantial evidence.

Direct evidence is evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. If a witness testified that she saw it raining outside, and you believed her, that would be direct evidence that it was raining.

Circumstantial evidence is a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

DB01:2128863.1                          063527.1001

## 1.5    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of

your everyday experience with people and events, and give it whatever weight you believe it

deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you

are free to reach that conclusion.

Authority:     Uniform Jury Instructions in the United States District Court for the District of
Delaware.

## 1.6    STATEMENTS OF COUNSEL

A further word about statements and arguments of counsel. The attorney's statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection.

The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from evidence in the record. It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.

DB01:2128863.1                                                                                                063527.1001

## 1.7     CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  You should consider each witness' means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness' biases, prejudices, or interests; the witness' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony he or she gave at trial.  You have the right to distrust such witness' testimony in other particulars and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth.  People may tend to forget some things or remember other things inaccurately.  If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

This instruction applies to all witnesses.

- 8 -

## 1.8    EXPERT TESTIMONY

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## 1.9    NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.

Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

## 1.10    BURDENS OF PROOF

Cryovac must prove its claim of willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable. The burden to prove a fact by clear and convincing evidence is a heavier burden than the burden to prove that fact by a preponderance of the evidence.

Cryovac has the burden to prove that Pechiney tortiously interfered with Cryovac's contracts by a preponderance of the evidence. That means Cryovac must produce evidence that, when considered in light of all of the facts, leads you to believe that what Cryovac claims is more likely true than not. To put it differently, if you were to put Cryovac's and Pechiney's evidence on the opposite sides of a scale, the evidence supporting Cryovac's claims would have to make the scales tip somewhat on its side.

Pechiney is arguing that Cryovac's patent is not valid. [A patent, however, is presumed to be valid unless proven otherwise.][1] Accordingly, Pechiney has the burden to prove the '419 is not valid by clear and convincing evidence.

Finally, keep in mind that "proof beyond a reasonable doubt" does not play any part in this case and you should, therefore, not consider it at all in your deliberations.

---

[1]Cryovac believes this language should remain in the instruction. Pechiney maintains that this language should be excluded based on the Court's ruling that the jury should not be instructed on the presumption of validity.

DB01:2128863.1                                                                                                 063527.1001

2.    **PATENT INSTRUCTIONS – WILLFUL INFRINGEMENT**

   2.1    **WILLFUL INFRINGEMENT**

Earlier in this case before the jury was convened, I considered what was covered by claim 11 of the '419 patent and then compared what the claim covered to the ClearShield® products Pechiney manufactures and sells. I determined that Pechiney's ClearShield® products except DZ-9004-1 did, in fact, infringe claim 11 of Cryovac's '419 patent.

Cryovac contends that Pechiney's infringement was also "willful." My determination that Pechiney infringed does not establish that Pechiney's infringement was willful. Whether Pechiney's infringement was willful or not is an independent decision that you, the jury, must make.

When a company such as Pechiney becomes aware that a patent may have relevance to its activities, that company has a duty to exercise due care and investigate whether or not its activities infringe any valid claim of that patent before the initiation of any possible infringing activity.

To establish willful infringement, Cryovac must prove two things with clear and convincing evidence:

1.    That Pechiney was aware of the '419 patent, and

2.    That Pechiney proceeded with its infringing activities without having a reasonable good faith belief that the '419 patent was invalid or that the patent was not infringed.

No single fact alone determines whether infringement was willful or not willful. To determine whether Pechiney acted with a reasonable good faith belief or whether Pechiney

willfully infringed the patent, you must consider all of the facts, including the strength of the defenses raised by Pechiney in this trial and the following factors:

1.  In designing the product accused of infringement, whether Pechiney intentionally copied Cryovac's invention as described in the '419 patent or whether Pechiney instead tried to "design around" the patent by designing a product that Pechiney believed did not infringe the patent claims. Evidence of copying can be evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims, even if unsuccessful, can be evidence that the infringement was not willful.

2.  When Pechiney became aware of the patent, whether Pechiney formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Defendant obtained and followed the advice of a competent lawyer before the initiation of any possible infringing activity. The obtaining and following of counsel's advice may be evidence that infringement was not willful.

DB01:2128863.1                                    063527.1001

## 2.2    ADVICE OF COUNSEL

One consideration in your determination of whether or not Pechiney's infringement was willful is whether Pechiney obtained and followed the competent advice of a lawyer. The obtaining and following of a lawyer's advice can be evidence that infringement was not willful.

In evaluating Pechiney's reliance on the advice of a lawyer, you should consider when Pechiney obtained the advice, the quality of the information Pechiney provided to the lawyer, the competence of the lawyer's opinion, and whether or not Pechiney relied in good faith upon the advice.

Advice is competent if it was based upon a reasonable examination of the facts and law relating to  infringement issues, consistent with the standards and practices generally followed by competent lawyers. You should consider both the qualifications of the person giving the opinion and the content of the opinion.

Reliance on a lawyer's opinion was reasonable if the opinion provided the kind of analysis that would give the defendant confidence that a proper opinion had been reached. Because lawyers' opinions usually describe infringement in terms of probabilities rather than certainties, reliance on an opinion stating that a product might be found to infringe a patent would not necessarily be unreasonable.

That Pechiney's lawyer's opinion on infringement of the '419 patent turned out to be different from my determination on infringement does not make the lawyer's advice regarding the '419 patent incompetent. Whether or not the lawyer may have made errors in reaching the conclusion, or factors justifying the opinion may later have been shown to be incorrect may or may not be relevant to a determination that reliance on the lawyer's advice was or was not reasonable.

- 14 -

3.      **TORTIOUS INTERFERENCE WITH CONTRACT**

I will now instruct you on the tortious interference claims in this case.

In addition to its claims against Pechiney for patent infringement, Cryovac also contends that Pechiney interfered with two contracts between Cryovac and National Beef.

The law recognizes that one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Cryovac alleges that Pechiney tortiously interfered with two separate packaging contracts that existed between Cryovac and National Beef, one dated March 2003 and one dated January 2004, both of which obligated National Beef to purchase the goods identified in the contracts from Cryovac.

Pechiney contends that Cryovac and National Beef were not operating under any binding contract. Pechiney also contends that even if Cryovac and National Beef had a valid contract, Pechiney had no knowledge of this contract. Pechiney further contends that Pechiney's conduct was proper.

- 15 -

### 3.1    INDUCING BREACH OF CONTRACT – ELEMENTS OF LIABILITY

For Cryovac to recover on this claim against Pechiney, Cryovac must prove, by a preponderance of the evidence, that each of the following six elements have been met:

1.    At the time of Pechiney's acts, there was at least one binding contract between Cryovac and National Beef, dated March 2003 and/or January 2004;

2.    Pechiney either knew of the existence or, under the circumstances, should have known of the existence, of at least one contract between Cryovac and National Beef;

3.    That the acts of Pechiney in inducing National Beef to breach at least one contract with Cryovac were intentional within the meaning of the word intent, which I will provide you with later in my instructions;

4.    That the conduct of Pechiney was improper under the factors I will instruct you to consider;

5.    That, as a proximate result of Pechiney's improper conduct, National Beef was induced to breach at least one contract with Cryovac; and

6.    That, as a direct and proximate result of Pechiney's infringement, Cryovac was damaged.

I will now explain each of these elements.

## 3.2    REQUIREMENT OF A CONTRACT

One of the elements Cryovac must prove to prevail on its tortious interference with contract claim against Pechiney is that Cryovac was party to at least one binding contract with National Beef that was in effect at the time of Pechiney's alleged interference, and that at least one contract was breached as a result of Pechiney's infringement.

A contract may be defined simply as an oral or written agreement, which the law will enforce, to do or not do a particular thing.  If all of the basic elements required by law for there to be a binding contract are present, including at least the quantity of goods the buyer agrees to purchase from the seller, or that the buyer is required to buy all of its requirements of the goods identified in the contract exclusively from the seller, a contract is deemed valid.  A contract is considered to be in full force and effect if, at the time in question, the agreement was in effect between the parties.

To determine whether at least one contract existed between Cryovac and National Beef, you must determine whether the parties intended to enter into a contract, and if so, what the terms of that contract were.  This inquiry should be conducted from the vantage point of an objectively reasonable person in the position of the contracting parties.[2]  For this inquiry, you may look to the language the parties used during the negotiations and in the agreement, including the parties' course of dealing, course of performance, trade usages in the industry, and any other evidence presented at this trial.

---

[2]  Cryovac has edited this sentence to make it clear that the jury must determine both whether the parties intend to enter a contract as well as what the terms of that contract were.  That concept had been contained in the following two paragraphs, which the Court deleted.

- 17 -

### 3.3     COURSE OF PERFORMANCE, COURSE OF DEALING, OR USAGE OF TRADE

A course of performance or course of dealing between the parties or usage of trade may be used to ascertain whether the parties intended to enter into an agreement, the meaning of the parties' agreement, the meaning of specific terms of the agreement, and may supplement or qualify the terms of the agreement.  This inquiry should be conducted from the vantage point of an objectively reasonable person in the position of the contracting parties.

A "course of performance" is a sequence of conduct between the parties to a particular transaction that exists if (1) the agreement of the parties with respect to the transaction involves repeated occasions for performance by a party; and (2) the other party, with knowledge of the performance and opportunity for objection to it, accepts the performance or acquiesces in it without objection.

A "course of dealing" is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

A "usage of trade" is any practice or method of dealing having such regularity of observance in a place or trade as to justify an expectation that it will be observed with respect to the transaction in question.

DB01:2128863.1

063527.1001

### 3.4   REQUIREMENT OF KNOWLEDGE

To find for Cryovac, you must also find that Pechiney knew of the existence of at least one contract between Cryovac and National Beef. The requirement of knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of at least one contractual relationship between Cryovac and National Beef. This is sometimes referred to as "constructive knowledge."

- 19 -

### 3.5    REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT

Cryovac must show that Pechiney intended to induce National Beef to breach at least one contract with Cryovac. Conduct is intentional if it was done deliberately, with the purpose of inducing National Beef to breach at least one contract with Cryovac.  If you find that Pechiney's conduct was not intentional, then you must find for Pechiney.

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act.  Ordinarily it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence.  Although witnesses may see and hear, and be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing.

Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of contrary evidence, draw an inference that Pechiney, by Pechiney's conduct, intended the natural and probable consequences of its acts.

DB01:2128863.1                                                                    063527.1001

### 3.6     PROPER OR IMPROPER INTERFERENCE DEFINED

The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.     The nature of Pechiney's conduct;

2.     Pechiney's motives for its conduct;

3.     The interests of Cryovac with which Pechiney's infringement interfered;

4.     The interests sought to be advanced by Pechiney;

5.     The social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6.     The proximity or remoteness of Pechiney's infringement to the interference claimed by Cryovac; and

7.     The relationship among Cryovac, National Beef, and Pechiney.

How you balance these various factors and the weight, if any, you decide to give to each, is for you to decide.

### 3.7     THE NATURE OF PECHINEY'S CONDUCT

I have already held in this case that Pechiney infringed the '419 patent. While infringement is unlawful because it violates a statute, an infringer may possibly have believed in good faith that its actions were non-infringing. You may or may not believe that Pechiney proceeded with conscious disregard of Cryovac's patent rights. However, if you were to decide that Pechiney proceeded in good faith and that its infringement was unintentional, you could not then find that Pechiney's infringement alone, [without other evidence of improper conduct],[3] would be sufficient to establish that Pechiney's conduct was "improper" as is required for Cryovac to prevail on its claim for tortious interference with contract.

---

[3] Cryovac contends that this language should be added. Pechiney contends that the language should be excluded because it is contrary to the Court's ruling on improper conduct. This language would change the meaning of the instruction proposed by the Court and suggest that unintentional infringement could be improper conduct.

### 3.8    REQUIREMENT THAT THE BREACH BE PROXIMATELY CAUSED BY PECHINEY'S CONDUCT:  CAUSAL RELATIONSHIP GENERALLY

You, the jury, must determine whether Pechiney was responsible for a refusal of National Beef to perform at least one contract with Cryovac.  This means that, before you can decide in favor of Cryovac, you must find, by a preponderance of the evidence that, but for improper conduct by Pechiney, at least one contract that was not performed would otherwise have been performed.

### 3.9     BREACH DEFINED

Breach of contract means the failure of a party to a contract to perform any promise that forms the whole or part of the contract.  A breach may occur with regard to either an express or implied provision of the contract.  An express provision is one that is specially agreed to by the parties either orally or in writing.  An implied provision is one that is recognized by the parties to exist and bind them in their actions despite the fact that it was not specifically spelled out or agreed to by the parties to the contract.  An implied provision often arises out of terms that were expressly set forth in the contract and agreed to by the parties, and an implied promise constitutes a valid part of the contract.

DB01:2128863.1                                                            063527.1001

### 3.10    BREACH REQUIRED

For Cryovac to prevail on its claim against Pechiney, you must find that at least one contract has been breached. This means you must find that National Beef failed to perform as agreed under a contract either by virtue of the express conditions of such a contract or as may be implied from the express provisions, in accordance with the definitions of express and implied contractual provisions for which I have already instructed you.

DB01:2128863.1                                                                                                      063527.1001

### 3.11    PROXIMATE CAUSE DEFINED

If you find that Cryovac did suffer the losses claimed, you must then determine whether Pechiney's improper conduct was the proximate cause of Cryovac's loss or damage.

In this regard, Pechiney's improper conduct will be considered to be the proximate cause of Cryovac's loss or damage if improper conduct was a substantial factor in causing that loss or damage. It need not be the only cause.

The conduct will be a substantial factor in causing loss or damage if it had such an effect in producing the loss that reasonable men and women would regard it as a cause of the loss or damage, considering a number of other contributing factors, such as whether Pechiney's improper conduct created a condition or chain of events that was continuous and active up to the time of the damage to Cryovac, and the lapse of time between Pechiney's improper conduct and the damage to Cryovac.

Should you find Pechiney liable for procuring or causing a breach of Cryovac's contract, you will then determine the damages that Cryovac is entitled to under the instructions I will give you.

4.    **TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**

The law recognizes that everyone has a right to establish and conduct a lawful business, free from unjustified interference, and is entitled to the protection of organized society, through the courts, whenever that right is unlawfully invaded.

In this case, if you find that Cryovac did not form a contract with National Beef in January, 2004, Cryovac seeks to recover money damages from Pechiney for alleged interference with Cryovac's prospective contractual relations with National Beef. That is, Cryovac contends that, because of Pechiney's improper conduct, Cryovac was prevented from entering into a binding supply contract with National Beef and as a result Cryovac suffered monetary loss. The question for you to decide is whether Cryovac's right to such an expectancy has in fact been invaded and whether, under all the factors I will instruct you to consider, any such invasion was improper.

In these charges, I will give you the applicable legal principles upon which you are to determine this question.

### 4.1    ELEMENTS OF LIABILITY

To find liability for interference with prospective contractual advantage, you, the jury, must find from a preponderance of the evidence:

1.  Cryovac had a reasonable expectancy of entering into a binding supply contract with National Beef;

2.  Pechiney knew or should have known of Cryovac's expectancy of a contractual relationship with National Beef;

3.  Pechiney acted intentionally to prevent a supply contract between Cryovac and National Beef;

4.  Pechiney's conduct was improper under the factors I will instruct you to consider;

5.  Pechiney's conduct caused the loss of a supply contract between Cryovac and National Beef; and

6.  Pechiney's improper conduct proximately caused Cryovac to not secure a supply contract with National Beef.

If you find that Pechiney has proved each of these elements by a preponderance of the evidence, then you will consider the question of the amount of money damages under instructions I will give you.

- 28 -

### 4.2    EXISTENCE OF RELATIONSHIP – GENERALLY

Cryovac contends that at the time of Pechiney's conduct, there existed an expectancy of a binding supply contract between Cryovac and National Beef.  You must first determine whether such an expectancy existed.

In determining this question, the expectancy need not be evidenced by a contract.  It is sufficient if you find from the evidence that there were either prior dealings or a prior course of conduct between Cryovac and National Beef from which there would be a reasonable expectation of a supply contract between Cryovac and National Beef.  Cryovac must show this expected benefit with some degree of specificity, such that it is  a realistic expectation, but it need not be shown with certainty, because prospective things in nature are necessarily uncertain. The law requires more than a mere hope of optimism; what is required is a reasonable likelihood or probability.

### 4.3    KNOWLEDGE REQUIREMENT

To find for Cryovac, you must also find that Pechiney knew of the existence of an expectancy of a supply contract with National Beef.  To have knowledge means that Pechiney has information concerning an expectancy by Cryovac of a supply contract with National Beef, which was discovered by Pechiney or was brought to Pechiney's attention by others.

In this regard, knowledge may be found to exist if, from the facts and circumstances of which Pechiney had knowledge, Pechiney should have known of the existence of an expectancy by Cryovac of a supply contract with National Beef.

## 4.4    REQUIREMENT OF INTENT/INTENT DEFINED/PROOF OF INTENT

You, the jury, must determine whether Pechiney intended to prevent Cryovac from entering into a supply contract with National Beef.

Intent is defined by the law as that purpose or aim or state of mind with which a person acts or fails to act.  Ordinarily it is reasonable to infer that a person intends the natural and probable consequences of his or her acts.

Intent may be proved by indirect or circumstantial evidence.  Although witnesses may see and hear, and be able to give direct evidence of what a person does or fails to do, they do not likewise see and hear what a person intends to do or intends to refrain from doing.

Thus, in making your determination about whether Pechiney's actions were intentional, you may look at Pechiney's objective conduct and, in the absence of contrary evidence, draw an inference that Pechiney, by Pechiney's conduct, intended the natural and probable consequences of its acts.

DB01:2128863.1    063527.1001

### 4.5     PROPER OR IMPROPER INTERFERENCE DEFINED

The determination of whether Pechiney's conduct was or was not improper depends upon your consideration of all of the facts and circumstances of the case, and a balancing of the following factors:

1.      The nature of Pechiney's conduct;

2.      Pechiney's motives for its conduct;

3.      The interests of Cryovac with which Pechiney's infringement interfered;

4.      The interests sought to be advanced by Pechiney;

5.      The social interests in protecting Pechiney's freedom of action and Cryovac's contractual interests;

6.      The proximity or remoteness of Pechiney's infringement to the interference claimed by Cryovac; and

7.      The relationship among Cryovac, National Beef, and Pechiney.

How you balance these various factors and the weight, if any, you decide to give to each, is for you to decide.

### 4.6    THE NATURE OF PECHINEY' CONDUCT

I have already held in this case that Pechiney infringed the '419 patent. While infringement is unlawful because it violates a statute, an infringer may possibly have believed in good faith that its actions were non-infringing. You may or may not believe that Pechiney proceeded with conscious disregard of Cryovac's patent rights. However, if you were to decide that Pechiney proceeded in good faith and that its infringement was unintentional, you could not then find that Pechiney's infringement alone, [without other evidence of improper conduct],[4] would be sufficient to establish that Pechiney's conduct was "improper" as is required for Cryovac to prevail on its claim for tortious interference with contract.

---

[4] Cryovac contends that this language should be added. Pechiney contends that the language should be excluded because it is contrary to the Court's ruling on improper conduct. This language would change the meaning of the instruction proposed by the Court and suggest that unintentional infringement could be improper conduct.

### 4.7    CAUSATION REQUIREMENT

You, the jury, must determine whether Pechiney was responsible for preventing Cryovac from entering into a supply contract with National Beef.

In other words, you must decide whether, except for Pechiney's improper conduct, Cryovac was reasonably certain to have entered into a supply contract with National Beef.

Pechiney's conduct will be deemed to be responsible for Cryovac's failure to enter into a supply contract with National Beef if it was a substantial factor in causing Cryovac not to fulfill its expectancy with National Beef.

### 4.8    DAMAGE TO PLAINTIFF PROXIMATELY RESULTING FROM CONDUCT

You must also consider whether any improper conduct by Pechiney was the proximate cause of damages to Cryovac stemming from loss a National Beef.

If you find that improper conduct by Pechiney was not the proximate cause of damage to Cryovac, your verdict will be for Pechiney.

In this regard, Pechiney's conduct will be deemed to be the proximate cause of Cryovac's loss or damage if you find that it was a substantial factor in causing the loss or damage.  It need not be the only cause.  The conduct will be a substantial factor in causing the loss or damage if it had such an effect in producing the loss that reasonable people would regard it as a cause of the loss or damage.  In resolving this issue, you may consider the number of other contributing factors, whether Pechiney's infringement created a condition or chain of events that was continuous and active up to the time of the damage to plaintiff, and the lapse of time between Pechiney's infringement and the damage to Cryovac.

Should you find Cryovac liable for interfering with Cryovac's expectancy of a contractual relationship with Pechiney you will then determine the damages that Cryovac is entitled to under the instructions I will give you.

- 35 -

### 4.9     COMPETITION AS PROPER OR IMPROPER INTERFERENCE

I will now instruct you as to a defense that Pechiney is raising to Cryovac's Interference

with Prospective Contractual Relations Claim.  Pechiney bears the burden of proving this

defense by a preponderance of the evidence.

Pechiney asserts that its conduct was proper because it occurred during the course of

competition between Pechiney and Cryovac.  The law recognizes that a person is justified in

causing a third party not to enter into a contract with the person's competition as long as the

conduct relates to competition between the two competitors and the person is acting, at least in

part, to advance his or her own commercial interests in such competition, and as long as the

person does not use wrongful means to compete.

You must first determine, then, whether Pechiney's conduct relates to competition

between Pechiney and Cryovac for National Beef's business.  If you find that it does, then you

must determine whether Pechiney's purpose was, at least in part, to advance Pechiney's interest

in competing with Cryovac.  For example, if you find that Pechiney was seeking to acquire the

business diverted from Cryovac for itself, then as long as Pechiney's conduct was at least in part

directed to that end, the fact that you may find it was also motivated by other reasons does not

make it improper in the eyes of the law.

You are entitled to conclude that improper conduct by Pechiney defeats this competitive

privilege defense.

I have already held in this case that Pechiney infringed the '419 patent.  While

infringement is unlawful because it violates a statute, an infringer may possibly have believed in

good faith that its actions were non-infringing.  You may or may not believe that Pechiney

proceeded with conscious disregard of Cryovac's patent rights.  However, if you were to decide

that Pechiney proceeded in good faith and that its infringement was unintentional, you could not then find that Pechiney's infringement alone, [without other evidence of improper conduct],[5] would be sufficient to establish that Pechiney's conduct was "improper" as is required for Cryovac to prevail on its claim for tortious interference with contract.

---

[5] Cryovac contends that this language should be added.  Pechiney contends that the language should be excluded because it is contrary to the Court's ruling on improper conduct.  This language would change the meaning of the instruction proposed by the Court and suggest that unintentional infringement could be improper conduct.

5.    **PATENT INSTRUCTIONS – VALIDITY**

   **5.1    VALIDITY**

Pechiney contends that claim 11 of the '419 patent is invalid for failure to satisfy the legal requirements of patentability.  In particular, Pechiney contends that claim 11 is invalid for anticipation, obviousness and lack of enablement.  I will instruct you on each of these defenses.

## 5.2     ENHANCED BURDEN

The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.

Therefore, the challenger's burden is especially difficult when the prior art was before the Patent Office Examiner during prosecution of the application.

DB01:2128863.1                                                                                                      063527.1001

### 5.3    ENABLEMENT

Pechiney also contends that claim 11 of the '419 patent is invalid because the patent specification lacked an enabling disclosure.

Patent law requires that the disclosure or written description portion of a patent be sufficiently detailed to enable those skilled in the art to practice the full scope of the claimed invention.  The purpose of this requirement is to ensure that the public, in exchange for the patent rights given to the inventor, obtains from the inventor a full disclosure of how to carry out the invention.

To meet this requirement, the patent disclosure must allow a person of ordinary skill in the art to practice the full scope of the claimed invention without undue experimentation. Because descriptions in patents are addressed to those skilled in the art to which the invention pertains, an applicant for a patent need not expressly include information that is commonly understood by persons skilled in the art.  Similarly, a patent need not contain a working example so long as the patent discloses enough information to enable a person of ordinary skill in the art to practice the invention.  Moreover, the fact that some experimentation may be required for a skilled person to practice the claimed invention does not mean that the specification is not enabling.  A specification is enabling so long as undue experimentation is not needed.

For Pechiney to prove that claim 11 is invalid due to lack of an enabling disclosure, Pechiney must prove by clear and convincing evidence that one of ordinary skill in the art upon reading the '419 patent at the time Mr. Shah's patent application was filed could not have practiced the full scope of Mr. Shah's claim 11 invention without undue experimentation.

### 5.4    ANTICIPATION – GENERALLY

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If it is not new, we say that it was "anticipated" by the prior art. "Prior art" is the legal term used to describe what others had done in the field before the invention was made, and may include patents and publications. Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made. It is not necessary that the prior art has been available to every member of the public. It must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider not only what is expressly stated or present in the item of prior art, but also what is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or the natural result of an operation taught in the prior art. Inherent anticipation does not require that a person of ordinary skill in the art at the time would have recognized the inherent disclosure.

An invention that is "anticipated" by the prior art is not entitled to patent protection. To prove that an invention is "anticipated," Pechiney must prove by clear and convincing evidence that a single piece of prior art describes or discloses all of the limitations of the claimed invention.

**5.5    CLAIM CONSTRUCTION  [Reflects Court's Claim Construction Rulings]**

It is the Court's duty under the law to define what the claimed invention is.  I have made

my determination and I will now instruct you on the meaning of claim 11 of the '419 patent.

You must use the meaning that I give you for each patent term to make your decision as to

whether a prior art reference anticipates all elements of the claimed invention.  You must ignore

any different definitions used by the witnesses or the attorneys.  The meaning of the term

"oriented" in claim 11 of the '419 patent is:

> "heated and stretched to realign the molecular configuration, this
> stretching accomplished by a racking or blown bubble process."

The meaning of the term "arranged symmetrically" in claim 11 of the '419 patent is:

> "putting the layers in a desired symmetrical order when the film is
> viewed in cross-section, so that the layers are in the same order on
> each side of the core of the film, for example c/d/b/a/b/d/c.  This
> claim phrase limits only the arrangement of the layers, and does
> not require precise identity in the thickness of the layers or the
> amounts of recited components or additives that may be included
> in the layers."

If you are not sure what is meant by any other term  in claim 11 that is not defined here,

you should use the ordinary meaning of the term in the context of the specification and drawing

of the '419 patent to determine what the inventor intended to cover by claim 11 of the patent.

The ordinary meaning is the meaning that the term would have had to a person of ordinary skill

in the art of multilayer film packaging at the time of the invention described in claim 11 of the

'419 patent.

### 5.6    "COMPRISING"

The beginning portion, or preamble, of claim 11 of the '419 patent uses the word "comprising." "Comprising" is a term of art used in patent claim language which means that the named limitations are essential, but other limitations may be added and still form a product within the scope of the claim.

For example, a claim to a table comprising a tabletop, legs and glue would cover a table that includes each of those elements, even if the table also includes additional limitations such as wheels on the table's legs.

Based on this explanation, if you find a prior art reference included all of the limitations of claim 11 of the '419 patent, the fact that it may also have included additional limitations is irrelevant.

### 5.7     PRIOR ART – DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called the "date of invention."

I will now explain to you how to determine this date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is March 21, 1986. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There is, however, an exception under which art dated before the application filing date is not prior art. This occurs when the inventor on the patent conceived of and reduced to practice the invention before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

To establish an actual reduction to practice, Cryovac must show:  (1) Mr. Shah had constructed an embodiment of his invention that met all the limitations of the claim, and (2) that he determined the invention would work for its intended purpose.

### 5.8    PRIOR ART – BURDEN

Pechiney bears the burden of proving by clear and convincing evidence that the art Pechiney relies on is prior to Mr. Shah's date of invention.

A reference, publication, patent, or public knowledge or use that is dated after the inventor reduces his invention to practice (i.e., the inventor makes his invention and the invention is shown to work for its intended purpose), cannot invalidate the inventor's patent claim.

## 5.9    ANTICIPATION REQUIRES AN ENABLING DISCLOSURE

If prior art does not provide enough information to enable one of ordinary skill to make an embodiment of the invention of claim 11 of the '419 patent, then that prior art cannot invalidate the claim by anticipation.  To be enabling means the prior art must disclose particular materials and a particular methodology to produce an embodiment of the claimed invention such that one of ordinary skill in the art could practice the claimed invention.

- 46 -

### 5.10   OBVIOUSNESS

In order to be patentable, an invention must not have been obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made by the inventor.  Unlike anticipation, obviousness may be shown by considering more than one item of prior art.

To determine obviousness or non-obviousness of the claimed subject matter of each of the patents in suit, you should take the following steps:

1.     Determine the scope and content of the prior art relied upon by Pechiney.

2.     Identify the differences, if any, between claim 11 of the '419 patent and the prior art identified by Pechiney.

3.     Determine the level of ordinary skill in the pertinent art at the time the invention of the '419 patent was made.

4.     Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

- 47 -

## 5.11    SCOPE AND CONTENT OF THE PRIOR ART

In arriving at your decision on the issue of whether or not claim 11 of Mr. Shah's '419 patent invention would have been obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art.  This means that you must determine what prior art is reasonably pertinent to the particular problem that Mr. Shah faced.  Prior art is reasonably pertinent if it is in the same field as Mr. Shah's invention or is from another field that a person of ordinary skill would look to in trying to solve the problem Mr. Shah was trying to solve.  Prior art includes the following:

1.    Patents that issued before the inventor's date of invention;

2.    Patents having a publication date before the inventor's date of invention;

3.    U.S. Patents that have a filing date prior to the inventor's date of invention;

4.    Anything that was publicly known or publicly used by others in this country before the inventor's date of invention; and

5.    Anything that was made or built or any process that was used in this country by another person before the inventor's date of invention, where the thing made or built or the process used was not abandoned, suppressed or concealed.

DB01:2128863.1                                                                                                  063527.1001

## 5.12   DIFFERENCES OVER THE PRIOR ART

You must next consider the differences, if any, between the prior art and the claimed invention. Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Claim 11 must be considered in its entirety.

DB01:2128863.1

063527.1001

### 5.13    LEVEL OF ORDINARY SKILL

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level and experience of persons working in the inventor's field, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, and the sophistication of the technology.

DB01:2128863.1                                                      063527.1001

### 5.14    MOTIVATION TO COMBINE & EXPECTATION OF SUCCESS

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Absolute predictability of success however, is not required. All that is required is a reasonable expectation of success. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art. The suggestion to combine need not be expressed. The suggestion or motivation to modify prior art teachings may be found in the prior art references themselves, the knowledge of one skilled in the art or the nature of the problem to be solved.

### 5.15    OBVIOUSNESS – HINDSIGHT

The question of obviousness is simple to ask but difficult to answer. A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention. If you find the available prior art shows each of the elements of the claims in suit, you must determine whether it would then have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the claim in suit.

The difficulty that attaches to all honest attempts to answer this question can be attributed to the strong temptation to rely on hindsight while undertaking this evaluation. It is wrong to use the '419 patent as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit. Instead, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

DB01:2128863.1                    063527.1001

### 5.16    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS

In making your decision as to the obviousness or non-obviousness of the claimed invention, you must also consider the following objective evidence that may tend to show the non-obviousness of claim 11:

1. Commercial success or lack of commercial success of products covered by claim 11 of the '419 patent;

2. A long-felt need in the art that was satisfied by the invention of claim 11 of the '419 patent;

3. The failure of others to make the invention;

4. Copying of the invention by others in the field;

5. Unexpected results achieved by the invention;

6. Praise of the invention by others in the field;

7. Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

8. Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

However, there must be a connection between the evidence showing any of these factors and the claimed invention if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, salesmanship or the like, or is due to features of the product other than those claimed in claim 11 of the '419 patent, then any commercial success may have no relation to the issue of obviousness. Cryovac has the burden of showing that a nexus exists between the claimed features of the invention and the objective evidence offered to show non-obviousness.

### 5.17    OBVIOUS TO TRY

The evidence might indicate to you that what Mr. Shah did was obvious to try.  If so, this does not indicate the patent is invalid for obviousness.  "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time Mr. Shah made the invention.

- 54 -

## 5.18    INDEPENDENT INVENTION BY OTHERS

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of claim 11 of the '419 patent was contemporaneously invented by others. Evidence of contemporaneous invention is probative of the level of knowledge in the art at the time the invention was made.

DB01:2128863.1                                                                063527.1001

6.      **PATENT DAMAGES**

6.1      **DAMAGES – GENERALLY**

I am turning now to the question of damages and what can be considered in determining an award of money in this case for Cryovac's claims of infringement and tortious interferences, respectively.

The fact that I will instruct you regarding damages should not be construed as intimating any view of the Court as to which party is entitled to prevail in this case. Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of the plaintiff.

## 6.2    PATENT DAMAGES – GENERALLY

If, after considering all of the evidence and the law as I have stated it, you have determined that clear and convincing evidence shows that claim 11 of the '419 patent is invalid, then your verdict should be for Pechiney and you need go no further in your deliberations.  If claim 11 of the '419 patent is valid, you must then turn to the issue of damages.

DB01:2128863.1                                                                                                                063527.1001

### 6.3    COMPENSATORY PATENT DAMAGES IN GENERAL

Patent law provides that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement. You may not add anything to the amount of damages to punish Pechiney or to set an example.

It is not relevant to the question of damages whether Pechiney benefited from, realized profits from, or even lost money as a result of the acts of infringement. It is also not relevant if Pechiney did not foresee that it would cause Cryovac damage at the time that it infringed claim 11. The only issue is the amount necessary to adequately compensate Cryovac for Pechiney's infringement. Adequate compensation should return Cryovac to the position it would have occupied had there been no infringement.

DB01:2128863.1

063527.1001

### 6.4    PATENT DAMAGES - BURDEN OF PROOF

Cryovac has the burden of proving damages by a preponderance of the evidence and is entitled to all damages that can be proven with reasonable certainty. On the one hand, reasonable certainty does not require proof of damages with mathematical precision. Mere difficulty in ascertaining damages is not fatal to Cryovac's right to recover. On the other hand, Cryovac is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture. You may base your evaluation of reasonable certainty on opinion evidence. Any doubts regarding the computation of the amount of damages should be resolved against Pechiney and in favor of Cryovac.

DB01:2128863.1                                    063527.1001

### 6.5    DATE PATENT DAMAGES BEGIN

Cryovac can only recover damages for patent infringement that occurred after the filing of the lawsuit.

DB01:2128863.1                                                            063527.1001

## 6.6    TWO TYPES OF PATENT DAMAGES – LOST PROFITS AND REASONABLE ROYALTY

There are two types of damages for patent infringement.

The first type of patent damages is lost profits.  Briefly, lost profits damages compensate the patent owner for the additional profits it would have made if the accused infringer had not infringed.  You may hear this referred to as the "but for" test.

The second type of patent damages is called reasonable royalty.  Generally, the patent laws define a reasonable royalty as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive for the nonexclusive right to practice the patent.  A reasonable royalty is the minimum amount of damages that a patent owner may recover.

These methods are alternatives for computing damages.  If you find that claim 11 of the '419 patent is valid, you must award Cryovac either lost profits or a reasonable royalty for each infringing sale of these products.  You cannot, however, award Cryovac both lost profits and a reasonable royalty for the same sale.

DB01:2128863.1                                                                                    063527.1001

### 6.7    PATENT LOST PROFITS – GENERALLY

In this case, Cryovac is seeking lost profits as its patent damages.  Lost profits damages are the profits Cryovac asserts it lost because of Pechiney's infringement.  They are not the profits Pechiney actually made.  Cryovac's lost profits may be in several forms, but are commonly in the form of lost sales.  In this case, Cryovac must establish that the infringement caused its lost profits.  Thus, Cryovac must show that "but for" the infringement, Cryovac would have made the sales or profits that were allegedly lost.

DB01:2128863.1                                                                                063527.1001

### 6.8A    PATENT LOST PROFITS – CRYOVAC'S COMPETING PRODUCT

Cryovac need not sell the patented invention to qualify for lost profits damages. Rather, to adequately compensate Cryovac for Pechiney's infringement, Cryovac's damages include Cryovac's lost profits on competing products not covered by the infringed claim.

DB01:2128863.1

063527.1001

### 6.8B    PATENT LOST PROFITS – PANDUIT APPROACH

Cryovac is claiming that it lost sales because of Pechiney's infringement. To get lost profits as actual damages, the patent owner must demonstrate that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales. A standard way of proving lost profits is for the patent owner to show:

1.    there was demand for the patented product;

2.    Cryovac had the ability to meet the market demand;

3.    no acceptable non-infringing substitutes were available; and

4.    the amount of profit Cryovac would have made.

[The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the accounting period. Switching to a noninfringing substitute after the accounting period does not alone show availability of the noninfringing substitute during this critical time. When an alleged alternative is not on the market during the accounting period, one may reasonably infer that it was not available as a noninfringing substitute at that time. The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period. Mere speculation or conclusory assertions will not suffice to overcome the inference.][6]

---

[6] This jury instruction comes directly from the Federal Circuit's decision in *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) ("The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the 'accounting period.' . . . . Switching to a noninfringing substitute after the accounting period does not alone show availability of the noninfringing substitute during this critical time . . . . When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it not available as a noninfringing substitute at that time . . . The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period . . . . Mere speculation or conclusory assertions will not suffice to overcome the inference.")

[If Pechiney demonstrates that it could have chosen to market a noninfringing alternative and that it would have done so had it known that it was infringing Cryovac's patent, the sales Pechiney made of the infringing products were not sales that Cryovac would otherwise have made.][7] [The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the accounting period. Switching to a noninfringing substitute after the accounting period does not alone show availability of the noninfringing substitute during this critical time. When an alleged alternative is not on the market during the accounting period, one may reasonably infer that it was not available as a noninfringing substitute at that time. The accused infringer has the burden to overcome this inference by showing that the substitute was available during the accounting period.][8]

[An available technology not on the market during the infringement can constitute a noninfringing alternative. An acceptable non-infringing substitute will be considered available if the infringer can establish that the necessary equipment, materials, know how, and experience

---

[7] This sentence comes from Federal Circuit's decision in *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999). It has been modified only to add the names of the parties in this case.

[8] This jury instruction comes directly from the Federal Circuit's decision in *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) ("The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, i.e., the "accounting period."… Switching to a noninfringing substitute after the accounting period does not alone show availability of the noninfringing substitute during this critical time.… When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it not available as a noninfringing substitute at that time.… The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.… Mere speculation or conclusory assertions will not suffice to overcome the inference.")

existed to produce the non-infringing substitute during the accounting period. Market sales provide significant evidence of the availability of a non-infringing alternative. ][9]

Cryovac need not negate every possibility that purchasers of Pechiney's infringing products might have bought another product or no product at all. The mere existence of a competing device does not make that product an acceptable substitute. To be an acceptable non-infringing substitute, a proposed competitive substitute must have been acceptable to the actual purchasers of the infringing products. However, consumer demand for the unique advantages of a patented invention, as opposed to an alleged non-infringing substitute, may suggest that there is no acceptable non-infringing substitute.

In proving its damages, Cryovac's burden of proof is not an absolute one, but rather a burden of reasonable probability. If it is reasonably probable that Cryovac would have made some or all of the infringing sales, and it is reasonably probable what amount Cryovac would have netted from the denied sales, then Pechiney is liable for the lost profits of those infringing sales.

---

[9] The first and third sentences of this paragraph are taken directly from *Grain Processing*, 185 F.3d at 1351. The second sentence contains language taken from *Grain Processing*, 185 F.3d 1353-54 and is a correct statement of the law summarizing the elements required by the Federal Circuit to establish that a noninfringing alternative that was not on the market during the period of infringement was available.

DB01:2128863.1                    063527.1001

## 6.9    DEMAND

One of your considerations when deciding whether Cryovac lost sales was the demand for products having the features recited in claim 11 of the '419 patent. Demand for the patented product can be proven by significant sales of Pechiney's products containing the patented features. However, if you find that Pechiney generated new or different markets by sales efforts or by creating demand because of features other than those recited in claim 11 of the '419 patent, the sales of Pechiney's products may not establish a demand for the patented product.

DB01:2128863.1

063527.1001

## 6.10    PATENT LOST PROFITS – ACCELERATED ENTRY/HEAD START

[As another part of your lost profits analysis, you must determine whether Cryovac has lost and will lose more sales to Pechiney after the '419 patent expired on March 21, 2006, than it would have lost if Pechiney first began selling its infringing product after the patent expired.  In considering Cryovac's contention on head-start damages, you should be aware that after the patent is expired all parties, including Pechiney, can rightly sell a product with features covered by the expired patent.

In order to recover damages under this rule, Cryovac must prove by a preponderance of evidence that by infringing Cryovac's patent, Pechiney has made and will make sales after the expiration date of the patent that it would not have made had Pechiney waited until the day the patent expired to begin marketing the patented product.

If you find that Pechiney had made and will make a greater number of post-expiration sales than it would have made if it began selling its product after the patent expired, then you may award Cryovac lost profits on these additional sales provided Cryovac can also show: (i) that it would have made the additional sales Pechiney has and will make because of Pechiney's early entry into the market, and (ii) a reasonable calculation of the amount of damages.

In considering the element of future profits, you should determine whether or not Pechiney's infringement of the '419 patent prevented Cryovac from earning profits that it would have earned but for that infringement.  In determining whether or not any part of Cryovac's damages constitute future profits, you may consider the past experience of Cryovac and Pechiney in that business, the competition Cryovac would have had, and the general market conditions.

DB01:2128863.1                                                                                                                                                     063527.1001

Cryovac cannot rely upon mere speculation.]

## 6.11    REASONABLE ROYALTY AS A MEASURE OF PATENT DAMAGES

In this case, Cryovac alternatively seeks damages in the amount of a reasonable royalty for Pechiney's sales of infringing ClearShield® products.  A royalty is an amount of money that someone pays a patent owner to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall.  Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Cryovac and Pechiney, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused products.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be February-March 2004 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants.  You must assume that the person negotiating on behalf of Pechiney was willing to take a license and would have known that the asserted claims were valid, enforceable and infringed by Pechiney.  You must also assume that Cryovac would have been willing to grant a license.  Finally, you must assume that both Cryovac and Pechiney knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for Pechiney's use of the patented invention, including the opinion testimony of experts.

063527.1001

## 6.12    FACTORS FOR DETERMINING REASONABLE ROYALTY FOR PATENT DAMAGES

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1.    The royalties received by Cryovac for the licensing of others under the '419 patent;

2.    The rates paid by Cryovac, Pechiney, or others for the use of other patents comparable to the '419 patent;

3.    The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;

4.    Cryovac's established policy and marketing program to maintain its patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.    The commercial relationship between Cryovac and Pechiney, such as whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

6.    The effect of selling the patented specialty in promoting sales of other products of Pechiney, the existing value of the invention to Cryovac as a generator of sales of its non-patented items, and the extent of such derivative or convoyed sales;

7.    The duration of the '419 patent and the length of the licenses;

8.    The established profitability of the product made under the patent, its commercial success and its current popularity;

- 71 -

9.    The utility and advantages of Cryovac's patented inventions over the old modes or devices, if any, that had been used for working out similar results;

10.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Cryovac, and the benefits to those who have used the invention;

11.    The extent to which Pechiney has made use of the invention, and any evidence that shows the value of that use;

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or comparable inventions;

13.    The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Pechiney;

14.    The opinion testimony of qualified experts; and

15.    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

### 6.13    PATENT DAMAGES INTEREST

None of the parties' calculations include interest.  Therefore, in arriving at your damages calculation, you should not consider interest in any way because it is the function of the Court to award interest.

DB01:2128863.1                                                           063527.1001

7.    **DAMAGES FOR BUSINESS TORT CLAIMS**

**7.1    GENERALLY**[10]

Should you find that Pechiney is liable for procuring or causing a breach of at least one contract between Cryovac and National Beef, and that Pechiney's conduct was neither justified nor privileged, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from that breach of its contract or contracts with Pechiney.

Similarly, should you find that Pechiney is liable for interfering with Cryovac's business relationship or expectancy of business relationship with National Beef, then you may award such damages as will reasonably compensate Cryovac for the losses Cryovac has sustained from the loss of such expectancy.

---

[10] American Bar Association, *Model Jury Instructions: Business Torts Litigation,* § 1.5 (Compensatory Damages), at 46-47 (4th ed. 2005).

## 7.2    DAMAGES:  IMPOSSIBILITY OF PRECISE CALCULATION NO BAR TO RECOVERY[11]

If you find that Cryovac has in fact suffered damage to its business or property, the fact that the precise amount of damage may be difficult to ascertain does not impair Cryovac's right to recover damages.  Although you may not render a verdict based upon mere speculation or guesswork, Cryovac is allowed some reasonable leeway in its method and proof of damage.

Although the law places a burden upon Cryovac to prove such facts as will enable you, the jury, to arrive at the amount of damages with reasonable certainty, it is not necessary that Cryovac prove the amount of those damages with mathematical precision.  It is required that Cryovac present only such evidence as might reasonably be expected to be available under the circumstances.

You are permitted to determine the amount of damage by estimation or approximation, as long as a reasonable basis for such estimate or approximation is shown with reasonable certainty. You may use any formula or theory for determining damages that is based upon the evidence in the case and that you believed to be reasonable; you are not bound to reject a formula or theory simply because it does not measure damages to the exact dollar and cent.

---

[11] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.2 (Impossibility of Precise Calculation No Bar to Recovery), at 48 (4th ed. 2005).

063527.1001

### 7.3     RECOVERABLE ELEMENTS OF DAMAGES[12]

In determining the amount of compensatory damages, you may consider whether Cryovac suffered any measurable loss of profits by reason of Pechiney's conduct. You should be guided by the rule that Cryovac is entitled to any profits that Cryovac would, with reasonable certainty, have enjoyed, were it not for Pechiney's tortious interference with contract or tortious interference with contractual relations, you are entitled to consider Cryovac's past earnings in its business and, in particular, those past earnings resulting from contracts of the nature of the contract in this case. You should also consider all of the other evidence concerning general economic and competitive conditions that you may find to have a bearing on the issue of lost profits.

---

[12] American Bar Association, *Model Jury Instructions: Business Torts Litigation*, § 1.5.3 (Recoverable Elements of Damages), at 49 (4th ed. 2005).

8.    **DELIBERATIONS AND VERDICT**

How you conduct your deliberations is up to you. But, however you conduct those deliberations, please remember that your verdict must represent the considered judgment of each juror.

It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because the opinion of your fellow jurors, or forth the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges — judges of the facts, not me. Your sole interest is to seek the truth from the evidence in that case. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form. You will then return to the courtroom, your foreperson will give the form to my Deputy Clerk and your verdict shall be announced.